UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, JANE DOE 2, and JANE DOE 3 | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Cause No. 6:16-cv-173 JURY TRIAL DEMANDED |
| BAYLOR UNIVERSITY | § § | |
| Defendant. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

This case arises from Defendant's deliberately indifferent response to three events of student-on-student sexual assault and subsequent sex-based harassment. Investigation and media reports indicate these three important cases are but a handful of many in what has been a historic and extensive history of abuse and conscious disregard by Defendant.   Defendant's failure to promptly and appropriately investigate and respond to the assaults allowed a condition to be created that substantially increased Plaintiffs' chances of being sexually assaulted, as well as others.   Moreover, Defendant's failure to promptly and appropriately investigate and respond to these assaults furthered sexual harassment and a hostile

environment, effectively denying Plaintiffs, and other female students, access to educational opportunities. This action alleges violations of Title IX and, there under, Clery Act violations. This action alleges additional pendent claims arising under state law, including breach of contract and negligence. In support thereof, Plaintiffs would show the Court as follows:

## I.

## PARTIES

1.     Plaintiff Jane Doe 1[1] is a cisgender female. At all material times Jane Doe 1 was living in the County of McLennan, State of Texas. At the time of events complained of herein, Jane Doe 1 was a student attending Baylor University.

2.     Plaintiff Jane Doe 2 is a cisgender female. At all material times Jane Doe 2 was living in the County of McLennan, State of Texas. At the time of events

---

[1] "Jane Doe" has been substituted for Plaintiffs' names for all causes of action brought through this Complaint which would otherwise publish important privacy interests of all parties. Plaintiffs fear for their personal safety, as well as that of their family and friends as a result of this Complaint. On information and belief others who have made similar charges against at this University and who have made their names publicly known in connection with these same allegations have received physical threats, have been stalked including being assaulted while on campus and/or have been subject to an internet social media harassment. Fairly applying this concern, the Complaint also identifies the perpetrators as Assailant 1, 2 and 3. Finally, the Complaint does not use the Plaintiffs' administrators' names but identifies them as "Administrator" or by their titles as opposed to naming the staff of Defendant University and the members of its Board of Regents as Defendants. Upon consultation with counsel for the Defendant, Plaintiffs will file a Motion to Proceed with Fictitious Names.

complained of herein, Jane Doe 2 was a student attending Baylor University, as well as a tenant of Baylor University.

3.     Plaintiff Jane Doe 3 is a cisgender female.  At all material times Jane Doe 3 was living in the County of McLennan, State of Texas.  At the time of events complained of herein, Jane Doe 3 was a student attending Baylor University as well as a tenant of Baylor University.

4.     Defendant, Baylor University, is an educational institution in the County of McLennan, State of Texas.  Baylor University may be served through its Acting President, David E. Garland at Pat Neff Hall, Suite 100, Waco, Texas 76798. During all material times, Baylor University received federal funding for its academic programs and activities.

## II.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

6.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by

law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

7.      Plaintiffs bring this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.  This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution.

8.      Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law including breach of contract and negligence.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all Parties reside or resided in this district and the events giving rise to the claims occurred in this district.

## III.

## APPLICABLE LAW

10. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 168l(a), states that:

> "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance .... "

11. Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106. 19. 34 C.F.R. § 106.8(b) which provides:

> " ... A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

12. In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

13.     In *Davis v. Monroe County Board. of Education*, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

14.     *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is:

    a) "deliberately indifferent to sexual harassment of which the recipient has actual knowledge," and

    b) "the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."

*Davis*, 526 U.S. at 1669-76.

15.     Title IX jurisprudence as well as Department of Education regulations have long recognized that a single event of rape constitutes harassment so severe, pervasive and objectively offensive that it deprives its victims of access to the educational opportunities provided by the school:

> "The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical.  Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe.  For instance, a single instance of rape is sufficiently severe to create a hostile environment."

U.S. Department of Education, Office of Civil Rights, "Dear Colleague" Letter of April 4, 2011.

16.     Regardless, in the circumstances giving rise to the claims of these Plaintiffs, and others, a significant history student of student harassment, resulting from deliberate indifference, has been allowed to continue at the Defendant University for many years.

17.     Texas law provides protections for students and requires the exercise of reasonable care on the part of the University.

18.     Texas law provides for the protection of invitees from foreseeable criminal harm.

19.     Texas law also provides for a cause of action of breach of contract.  Plaintiffs have and continue to have an educational contract with the Defendant University that included agreements and duties to provide adequately for their safety, to adequately and in compliance with law report instance of sexual assault and/or harassment the breach of which cause the damages claimed herein.

## IV.

## <u>FACTS</u>

20.    For months now, the Defendant University has been the subject of numerous media reports concerning rampant sexual assault on campus, often perpetrated by athletes, including players on the football team.

21.    The Waco Tribune has reported a timeline of this unfortunate saga which, upon information and belief, sets forth important and relevant events.   *See* http://www.wacotrib.com/news/higher_education/timeline-baylor-sexual-assault-controversy/article_abf21ab8-2267-51bf-84d8-6268f4222af0.html (accessed June 14, 2016).

22.    Suffice it to say that the Defendant, its staff, and highest officers have permitted a campus condition rife with sexual assault and completely lacking the basic standards of support for victims as required by federal and state law.

## A.    COMMON ALLEGATIONS

23.    At all material times, the Defendant University was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq.* for its activities including financial aid and research grants among other sources.

24.    The Defendant University implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiffs' constitutional, statutory, and common-law rights.

25.     The Defendant University is responsible for providing the security of its students and guests which it does through "Public Safety," in effect a private police force.

26.     The Defendant University is responsible for ensuring that all of its employees are properly trained and supervised to perform their jobs.

27.     The Defendant University is responsible for the acts and omissions of its employees, agents, part-time student workers and tenants.

28.     The Defendant University received reports from each of the Plaintiffs concerning the events of sexual abuse and the sexual harassment they experienced while at an academic activity at the Defendant University.

29.     The Defendant University failed to adequately investigate each and every one of the events the Plaintiffs reported in violation of Title IX.

30.     The Defendant University failed to investigate each and every one of the assaults the Plaintiffs endured of which Defendant had either actual or constructive notice at the time they happened.

31.     Upon information and belief, the Defendant University failed to report the criminal acts involved in the reports it received from each of the Plaintiffs in violation of its obligations under the Clery Act.

32.     The Defendant University failed to report the criminal acts involving sexual assault reports involving other victims that it received in violation of its obligations under the Clery Act.

33.     Incredibly, the Defendant reported to the Department of Education zero (0) incidents of sexual assault from 2008-2011. *See* http://www.usnews.com/news/us/articles/2016-02-18/critics-challenge-baylor-claim-of-no-sex-offenses-in-4-years (accessed June 14, 2016).

34.     The Defendant University failed to provide a safe academic environment for the Plaintiffs; faced with the Plaintiffs' and other student reports of rape, the Defendant University's response, and its officials' conduct, was such that future reasonable students in Plaintiffs circumstances would be, and in fact were, chilled from reporting sexual harassment.

35.     The Defendant University employees, including high ranking officials, conspired amongst themselves, and with other University employees, with the common purpose of violating the Clery Act in relation to the reports of sexual assault that the Plaintiffs provided them within a timely manner.

36.     The extensive detail of the Plaintiffs' reports of sexual assault, as well as the numerous reports of others, to these administrators, all of whom were high-level,

policy-setting employees of Defendant, did not cause any change in the sexually hostile environment at the University as is averred throughout this Complaint.

37.    The Defendant University employees, including high ranking officials, conspired amongst themselves, and with other University employees, with the common purpose of violating the Plaintiffs' rights under Title IX and the Clery Act including, but not limited to, violating their right to be informed that they could and should report the sexual assault allegations to the police and Defendant's duty to report the offense.

38.    The Defendant University employees took several overt acts in furtherance of their common goal, including misleading the Plaintiffs, concealing meaningful facts from Plaintiffs, lying to the Plaintiffs, misrepresenting their actions to the Plaintiffs, failing to prosecute, investigate and report the Plaintiffs' claims, as well as the related crimes and generally failing to provide the Plaintiffs with a safe academic environment free from sexual harassment.

39.    At all times relevant to this Complaint, Defendant failed to protect Plaintiffs, and others, as it negligently discharged its duty to provide safety to the students and guests of the University.

40.     What is more, the Defendant University, despite direction from the Department of Education and its legal requirements, did not have a Title IX coordinator until November, 2014.

41.     As a direct and proximate result of the harassing educational environment created by Defendant's deliberately indifferent response to the sexual assault and subsequent harassment of each and all of the Plaintiffs, as well as violations of their state and federal legal rights, Plaintiffs have suffered and continue to suffer untold psychological damage, profound emotional distress, permanent loss of standing in their community and damage to their reputations, and their future relationships have been negatively affected.

42.     Plaintiffs have required ongoing counseling and elevated levels of medication to address their depression and anxiety caused by Defendant's conduct and the resulting harassing educational environment.

43.     Plaintiffs have also been deprived of meaningful treatment, including medical and psychological support, as a result of Defendant's conduct and the resulting medical environment which they caused.

44.     Plaintiffs have also been deprived of a normal college education due to Defendant's conduct and the resulting educational environment which they caused.

45.     Plaintiffs have also been damaged by missed educational opportunities. Also, their future earning capabilities have been damaged by Defendant's conduct and the resulting hostile educational environment which they caused.

## B. ALLEGATIONS OF JANE DOE 1

46.     Jane Doe 1 was enrolled at the University in January 2014 as a Biology pre-medical major, and received several scholarships and forms of financial aid assistance

47.     Jane Doe 1 resided at the University owned, University Parks.

48.     Jane Doe 1 was sexually assaulted by Assailant 1 on April 26, 2014.

49.     Assailant 1 is/was a player on the Defendant University football team.

50.     The sexual assault took place at the University Parks.

51.     Jane Doe 1 first reported the sexual assault approximately two days later to a Defendant University physician.

52.     The Defendant's physician mis-informed Jane Doe 1 and concealed from Jane Doe 1 as to her options to further report the incident, accommodations she was entitled to under Title IX, and further investigatory actions that could be taken by the University.

53.    Jane Doe 1 also reported the sexual assault to the Baylor advocacy center during the period of final exams, but no official action was taken by the University and Jane Doe 1 was left to cope with the situation alone and in fear.

54.    Jane Doe 1 was manipulated into not pursuing her rights.

55.    Jane Doe 1's knowledge of the failed grievance mechanism, coupled with her personal history of abuse, led her to endure a sexually harassing environment for months.

56.    Jane Doe 1 struggled in her course work due to the heavy anxiety and depression she faced.

57.    Jane Doe 1 would see Assailant 1 at football games, would become upset and would be forced to leave.

58.    Jane Doe 1 would see Assailant 1 about campus, and her friends, when around, would shield her vision to prevent her great emotional harm, often to no avail.

59.    Jane Doe 1 ultimately performed poorly in many classes, including failing a few, despite having been, prior to the sexual assault against her, an above average student.

60.    For much of her time at the University, Jane Doe 1 has been on academic probation.

61.    As a result of her inability to perform academically under the duress she experienced, Jane Doe 1's scholarships were taken away.

62.    Jane Doe 1 has paid for classes and then paid to re-take them.

63.    Jane Doe 1 is obligated on substantial student debt with little academic credit to show for it.

64.    Jane Doe 1 stopped attending the University after the Fall, 2015, due to the expense, the lack of progress, and lack of accommodation by the University.

65.    Jane Doe 1 now makes monthly payments on her student debt and works more than 40 hours a week.

## C. ALLEGATIONS OF JANE DOE 2

66.    Jane Doe 2 was enrolled at the University in August 2004 in the honors interdisciplinary studies program, and a recipient of both merit and need based scholarships, among other financial aid and loans.

67.    At the time of her sexual assault, Jane Doe 2 was under the age of 18.

68.    Jane Doe 2 resided at the Collins Dormitory.

69.    Jane Doe 2 was sexually assaulted by Assailant 2 on September 4, 2004.

70.    The sexual assault took place at a house a few blocks from campus.

71.    Jane Doe 2 first reported the sexual assault a few days later to the Chaplain at her Baylor University dormitory.

72.    The Dorm Hall Director was also informed during these conversations.

73.    Baylor Police Department was called and a report was taken.

74.    The Baylor Police Department officer mis-informed Jane Doe 2 and concealed from Jane Doe 2 about the consequences to her for filing a report, effectively discouraging Jane Doe 2 from naming Assailant 2.

75.    The Baylor Police Department officer failed to list several important facts on the report despite being provided them in the interview.

76.    Jane Doe 2 was told that a police investigator would call her but she does not recall every having heard from them.

77.    Jane Doe 2 also reported the incident to the Baylor Health Center personnel and a physical exam was performed, but no rape kit was prepared.

78.    Jane Doe 2 went on with no support from the University.

79.    Jane Doe 2 would see Assailant 2, including in a particular campus building, causing her to run in fear.  To this date, Jane Doe 2 cannot enter that campus building without sudden onset fear.

80.    At one point, Assailant 2 snuck up behind Jane Doe 2 while on campus causing her to scream and flee into the nearby office of one of her professors, and Assistant Dean.   During this episode, Jane Doe 2 reported the incident to the Assistant Dean.

81.    At a later meeting, the Dean suggested that Jane Doe 2 withdraw from the University given her now consistent academic struggles.

82.    Jane Doe 2 was able to attend free counseling sessions at the University Counseling Center, but was forced to discontinue her sessions when advised that she had used up all of her allotted sessions, and therefore, would have to seek treatment elsewhere.

83.    Jane Doe 2 still has nightmares of Assailant 2 on top of her naked body.

84.    Ultimately taking the advice of the Dean, and not being informed of her rights under Title IX or other benefits available to her, Jane Doe 2 was suspended from the University with the loss of her scholarships and financial aid, along with debt and little academic progress to show for it.

85.    In May 2008, Jane Doe 2 moved out of state.

86.     After a lot of mental healing and with incredible personal strength, Jane Doe 2 decided that she would return to Baylor in order to not let the whole experience permanently ruin her life.

87.     In the Summer of 2015, Jane Doe 2 consolidated her student loans in order to bring them current, and permit her to borrow to complete her education.

88.     The Defendant permitted Jane Doe 2 to resume her studies in the Fall of 2015 but would not allow her grade forgiveness for the failed courses during her earlier attendance following the assault, even when provided with the horrific reasons for her personal academic struggles, and even though Defendant was fully aware of the circumstances.

89.     The Vice-Provost, despite being informed of the sexual assault, said that accommodations could not be made of the earlier grades because Jane Doe 2 could not be trusted to not perform poorly in school again.

90.     Jane Doe 2 was assigned two classes in the building where Assailant 2 had earlier approached her, a building that caused her severe emotional upset whenever in the building.

91.     Jane Doe 2 was harassed and stalked by a neighbor off campus and reports to the University were met with misdirection.

92.    In the Spring of 2016, the media controversy arose concerning the Defendant's rampant policy of ignoring sexual violence, which caused Jane Doe 2 to struggle with fear and anxiety and she avoids being on campus.

93.    At this point, Jane Doe 2 is now suspended from the University.

94.    Jane Doe 2 has filed an appeal of her suspension but the Defendant denies having received it.

95.    Despite having re-submitted the appeal, the Defendant has done nothing to follow up.

96.    The atmosphere and environment of sexual harassment that existed, at least in 2004 when Jane Doe 2 was sexually assaulted, continued up and through Jane Doe 2's recent 2015 suspension.

97.    As a result of Defendant University's actions and inactions, Jane Doe 2 has suffered severe physical and mental health impairments for over a decade.

## D. ALLEGATIONS OF JANE DOE 3

98.    Jane Doe 3 enrolled at the Defendant University in the Fall of 2012 as an engineering major.

99.    Jane Doe 3 resided at the dormitory known as Teal Residential College on campus when her sexual assault first occurred.

100.   Jane Doe 3 was attending the University on, in part, a sixty thousand dollar scholarship awarded for academic merit.

101.   Jane Doe 3 was sexually harassed and assaulted by Assailant 3 starting in the Fall of 2013 and continuing through the December, 2015.

102.   Jane Doe 3 and Assailant 3 were both staff members in the University dormitories.

103.   Jane Doe 3 was an office assistant at the dorm but was forced to resign because continuing to work in the location of the assault was distressing.

104.   Jane Doe 3 was left on her own to find other employment on campus to satisfy her work study commitment.

105.   Assailant 3 was, during some of the relevant time, an assistant to the highest officials in the University.

106.   At the time of these incidents, the Defendant University had no Title IX coordinator to whom Jane Doe 3 could report.

107.   Starting in the Fall, 2014, Jane Doe 3 attended counseling sessions at the Baylor Counseling Center until after her free allotted sessions were used and then continued these sessions at her own expense.   After the free sessions, the Clinic encouraged Jane Doe 3 to seek help elsewhere.

108.   Jane Doe 3 reported the sexual assaults to the counseling center and the health center.

109.   At times, Jane Doe 3 would have periodic absences and her grades would suffer.

110.   One professor who was made aware of the situation pressed Jane Doe 3 for details making her very uncomfortable.

111.   Jane Doe 3 would later hear that Assailant 3 had attempted to sexually assault another person.

112.   Ultimately, Jane Doe 3 informed the Baylor Police Department of the situation where a case number was assigned and purportedly the investigation remains open.

113.   The Defendant' physician mis-informed Jane Doe 1 as to her options to further report the incident, accommodations she was entitled to under Title IX, and further investigatory actions that could be taken by the University.

114.   The lack of knowledgeable staff and the non-existence of a Title IX office substantially impaired Jane Doe 3's higher education experience and has severely impaired her physical and mental health and well-being.

# V.

## CAUSES OF ACTION

### COUNT 1:

### VIOLATION OF TITLE IX

### 20 U.S.C. § 1681, *et seq.*

115.   The sex-based harassment articulated in this complaint was so severe, pervasive, and objectively offensive that it deprived Plaintiffs of access to educational opportunities or benefits provided by the school.

116.   The Defendant created and/or subjected Plaintiffs to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because:

  a) Plaintiffs were a member of a protected class;
  b) Plaintiffs were subjected to sexual harassment in the form of a sexual assault by another student;
  c) Plaintiffs were subjected to harassment based on their sex; and
  d) Plaintiffs were subjected to a hostile educational environment created by the Defendant's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

117.   Defendant and its officials had actual knowledge of the sexual assaults and the resulting harassment of Plaintiffs created by its failure to investigate and discipline Plaintiffs' attackers in a timely manner and consistent with federal and state law.

118.   The Defendant's failure to promptly and appropriately respond to the alleged sexual harassment resulted in Plaintiffs, on the basis of their sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the Defendant's education program in violation of Title IX.

119.   Defendant failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment, and instead acted with deliberate indifference towards Plaintiffs.

120.   Defendant persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiffs.

121.   Defendant engaged in a pattern and practice of behavior designed to discourage and dissuade students and guest students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

122.   This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

123.   Plaintiffs have suffered emotional distress and psychological damage, and their character and standing in the community has suffered from the harassment

fostered as a direct and proximate result of Defendant's deliberate indifference to their rights under Title IX.

## Count 2:

## TEXAS TORT LAW - Negligence

124.   Defendant owed Plaintiffs a duty of reasonable care.

125.   Defendant breached these duties in multiple ways including:

a.   Failing to proper hire, train and retain officers, staff and faculty as to proper methods to deal with reports of sexual abuse, investigate same and accommodate victims in a manner that would permit them to without undue hindrance, complete their higher education;

b.   Failing to properly and timely report incidents of claims sexual assault;

c.   Failing to provide adequate counseling and assistance to victims of sexual assault;

d.   Failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault prevention, reporting and investigation;

e.   Failing to discover, develop and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault;

f.   Failing to investigate and/or monitor persons accused of sexual assault to ensure additional events did not occur;

g.   Failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus;

h.   Failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault;

i.   Tolerating sexual assailants on campus despite reports to the highest levels of their identities;

j.   Failing to adopt education programs to promote awareness of rape, acquaintance rape, and other sex crimes;

k.     Failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible;

l.     Failing to adopt and enforce procedures students should follow if they become sexual assault victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported;

m.     Failing to inform victims that they have the option of reporting the sexual assault to law enforcement authorities and that they will receive assistance from the institution in the process;

n.     Failing to notify sexual assault victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault;

o.     Failing to put in place an accurate routine procedures to notify the campus community about serious criminal activity that is likely to be a threat to students and employees;

p.     Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct.

q.     Failing to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities; and

r.     Failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment.

126.   The above enumerated breaches of duties were the proximate cause of substantial injury and damage to each Plaintiff, as more specifically described herein.

127.   These damages include, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; each Plaintiff has suffered and continues to suffer spiritually. Each Plaintiff was prevented and will

continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 3:

### TEXAS LAW - Breach of Contract

128.   Plaintiffs had valid enforceable contracts with Defendant as academic enrollees and also as residents living in on-campus housing.

129.   Defendant breached this contract in failing to adequately warn Plaintiffs of the dangerous sexual assault conditions on campus that has been allowed to metastasize in light of the failed reporting, cover up, and non-existent investigation procedures and student support activities.

130.   Defendant also breached this contract by failing to provide an adequately safe living and educational environment for Plaintiffs.

131.   As a result of these breaches of contract, Plaintiffs suffered damages which were foreseeable, and for which recovery is now requested.

## VI.

## <u>REQUEST FOR PERMANENT INJUNCTION</u>

132.   Plaintiffs seek a mandatory injunction ordering the Defendant to refrain from unlawful discrimination and/or retaliation, ordering Defendant to undertake and rectify any and all Title IX violations and/or inequities, ordering Defendant and its athletic department to refrain from creating and condoning a hostile sexual harassment and/or discrimination environment against individuals on the basis of sex by immediately ceasing deliberate indifference to sexual assaults; and cease interference with the disciplinary process in favor of students who were charged with sexual assault.

## VII.

## <u>ATTORNEYS FEES</u>

133.   Plaintiffs request award of their reasonable and necessary attorneys' fees for this action.  *See, e.g.*, 42 U.S.C. §§ 1983 & 1988.  Plaintiffs also request reasonable and necessary attorneys' fees for their breach of contract claim.

## VIII.

## <u>JURY DEMAND</u>

134.   Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## IX.

## RELIEF REQUESTED

135.   For the foregoing reasons, the Plaintiffs respectfully request that the Court enter judgment against Defendant consistent with the relief requested herein, and for any and all relief Plaintiffs may show they are entitled including actual damages, compensatory damages, nominal damages, punitive damages, court and litigation costs, expert fees, attorneys fees, statutory interest and injunctive relief.

Dated this 15th day of June, 2016.

Respectfully submitted,

BRAZIL & DUNN, L.L.P.

 _/s/  Chad W. Dunn_
Chad W. Dunn - attorney in charge
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
Abbie J. Kamin
(Mtn. *Pro Hac Vice* Forthcoming)
State Bar No. 24092608
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068

Telephone: (281) 580-6310
Facsimile: (281) 580-6362
chad@brazilanddunn.com

**DUNNAM & DUNNAM, L.L.P.**
Jim Dunnam
State Bar No. 06258010
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Facsimile: (254) 753-7434
jimdunnam@dunnamlaw.com

ATTORNEYS FOR PLAINTIFFS