IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 6:16-CV-00173-RP |
| | § | |
| | § | |
| BAYLOR UNIVERSITY, | § | |
| Defendant. | § | |

## DEFENDANT BAYLOR UNIVERSITY'S POST-HEARING BRIEF ON PRIVATE THIRD-PARTY RECORDS

Pursuant to the Court's request for additional briefing at the hearing on June 16, 2017, Defendant Baylor University hereby submits this supplemental brief on the production of private third-party student records, explaining what discovery is reasonable and proportionate and what discovery is still improper.

**I.     Baylor agrees to produce a spreadsheet detailing all sexual assaults brought to its attention since 2003, to the extent the records are available and still exist.**

At the hearing on the parties' discovery disputes, Plaintiffs' counsel suggested that what they really need is data showing trends over time.  Baylor agrees to produce a spreadsheet containing the following information for sexual assaults allegedly committed by Baylor students[1] that were reported to Baylor, to the extent the records are available and still exist regarding those reports:

- Date of alleged assault;
- Date alleged assault was reported to a Baylor employee;
- Whether alleged victim was Baylor student;
- Gender of alleged victim;
- Gender of alleged assailant;

---

[1] Where it is unclear whether the alleged assailant was a Baylor student or not, that information will also be provided.

- Whether Baylor knew the identity of the alleged victim;
- Whether Baylor knew the identity of the alleged assailant;
- Whether the alleged victim asked Baylor to keep the alleged assailant's identity confidential;
- The location where the alleged assault occurred;
- How Baylor learned of alleged assault;
- The specific offices or type of Baylor personnel who were made aware of the alleged assault;[2] *and*
- Disposition of the complaint.

The proposed spreadsheet will cover the period from January 1, 2003 through February 2016, the month of the last alleged assault in this case. The categories listed above will provide a comprehensive overview of available information while protecting student privacy, thus avoiding the necessity of sending FERPA notices. Given the expansive time period, preparation of the spreadsheet will be time-consuming. Baylor requests 30 days in which to prepare the spreadsheet for files dating back to 2011. For the period from 2003 to 2010, because those files are older and may be difficult to retrieve, Baylor requests an additional 30 days to add those files to the spreadsheet. If Baylor can produce the information earlier, it will do so.

## II.     Production of private non-party records will cause harm to third parties and is premature at this stage of the litigation.

Beyond the data points that will be identified in the spreadsheet, the particular details of non-party assaults are not relevant to Plaintiffs' claims.[3] More importantly, disclosing the details

---

[2] Baylor reiterates its objection to the production of counseling and medical records of non-party students and notes the restrictions placed on Baylor's counsel with respect to such records. *See* Dkt. No. 97 at 15-16; Dkt. 100 at 6; *see generally* 2016 DEAR COLLEAGUE LETTER: PROTECTING STUDENT MEDICAL RECORDS (highlighting the importance of preserving confidentiality of student medical records and disallowing, even in cases involving a specific student, access, use, or disclosure of that student's "medical records as part of the litigation without a court order, a subpoena, or the student's written consent, unless the lawsuit in question relates directly to the student's medical treatment or the payment for that treatment"). Thus, Baylor will not be able to advise whether a Baylor counselor or physician was informed of an assault unless such information appears in the records of another department. Baylor, however, will review files from the Title IX Office, Judicial Affairs, the Student Conduct Administration Office, and the Baylor University Police Department.

---

of particular assaults will cause great harm to non-parties.  It will expose intimate and painful details of non-party students' lives and violate the express wishes of many students who specifically asked that their alleged assailants *not* be told of the allegations against them.  By separate motion, Baylor is seeking permission to tender *in camera* a detailed summary of alleged sexual assaults at Baylor for one full academic year, and next week it will seek to tender *in camera* examples of specific student sexual assault files.  Review of the summary and records will fully inform the Court about (i) the private details that may emerge in a sexual assault investigation (such as sexual history, childhood sexual assaults, and mental health struggles) and (ii) the myriad of reasons why some victims decline to authorize investigations that would result in notification to their alleged assailants.

Further, requiring disclosure of the actual files containing the names and details of particular assaults could discourage future victims from reporting and seeking help—one of the very ills Plaintiffs are purportedly trying to address in this lawsuit. And as Baylor has explained before, even the fact of receiving a FERPA notice could be traumatic and result in an undesired disclosure to family members of a previously undisclosed assault.  *See Hobbs v. Gonzaga Univ.*, No. CV-10-0292-EFS, 2011 U.S. Dist. LEXIS 116064, *3 (E.D. Wash. Sept. 27, 2011).  The potential chilling effects of Plaintiffs' requests should not be viewed lightly.

A "significantly heavier burden" is placed "on a party seeking access to student records." *Rios v. Read*, 73 F.R.D. 589, 598 (E.D.N.Y. 1977).  And here, Plaintiffs will have access to (i) a

---

[3] In particular, none of the information is relevant to Plaintiffs' post-reporting claims, which will stand or fall on each Plaintiff's own facts.  *Dibbern v. Univ. of Mich.*, No. 12-15632, 2015 U.S. Dist. LEXIS 42303, *13 (E.D. Mich. April 1, 2015); *see also* Dkt. 78 at 20-21 (finding limitations applied to early post-reporting claims because Plaintiffs would have known about Baylor's allegedly indifferent response at the time of the response).  The information in the chart is potentially relevant only under the "heightened risk" theory.  Baylor again respectfully asserts that the "heightened risk" theory is not cognizable.

---

detailed spreadsheet; (ii) the ten files of the Plaintiffs; (iii) Baylor's official policies and procedures; (iv) communications regarding Baylor's development of policies and procedures and its administrative response to evolving Title IX standards over time; and (v) and the ability to depose Baylor personnel responsible for responding to and investigating sexual assaults—all the information they should need to prove an official policy if one existed.  Under the circumstances, Plaintiffs' insistence on obtaining private third-party assault files, along with counseling and medical records, is both disproportionate to the needs of the case and embarrassing and oppressive to the third parties.  *See* FED. R. CIV. P. 26(b)(2)(C), (c)(1).  If, after receiving the information described above, Plaintiffs believe "that further information is necessary to present [their] case, [they] may file a properly-supported motion seeking such discovery, justifying the intrusion on the non-parties' lives." *Hobbs*, 2011 U.S. Dist. LEXIS 116064, *4.

Regarding Plaintiffs' own medical and counseling files, Baylor's medical and counseling staff placed copies in sealed envelopes, and Baylor delivered the records to Plaintiffs' counsel on Friday, June 23.  Plaintiffs' counsel have not yet responded to Baylor's requests that the Plaintiffs provide a date certain for producing relevant records to Baylor.  Until counsel for both parties have access to these records, counsel will be unable to proceed with depositions of the Baylor responders, the Plaintiffs, and the alleged assailants.[4]  Until the facts about the Plaintiffs' specific circumstances are explored, neither the parties nor the Court can know which non-party records *might* be relevant to the Plaintiffs' claims.

Even in the Tenth and Eleventh Circuits—the only Circuits to recognize pre-assault claims—the courts have focused on particular programs or similarly situated occurrences, not

---

[4] Plaintiffs' own medical and counseling records are relevant in two respects.  First, the Plaintiffs claim that they were mistreated or misinformed by medical or counseling personnel.  Second, the records are related to Plaintiffs' claim that they experienced emotional harm.

university-wide discovery.  *See Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1184 (focusing on alleged practices within a football recruiting program) (10th Cir. 2007); *Doe v. Bibb Cty. Sch. Dist.*, No. 15-14361, 2017 U.S. App. LEXIS 8854, at *10 (11th Cir. May 22, 2017) (requiring "sufficiently similar" circumstances for non-party assaults to impose Title IX liability and finding that, unlike *Simpson*, "there is no similar lack of control over discrete groups of students known—or even encouraged—to engage in sexual misconduct").  *Simpson* also limited the inquiry to the knowledge of officials who were deemed to be final policymakers for the respective program in which the assaults occurred. *See Simpson*, 500 F.3d at 1177, 1184 (explaining that Title IX funding-recipient liability requires "that the institution itself, rather than its employees (or students) be the wrongdoer").  Relatedly, just last week the Fifth Circuit— which has not recognized a pre-assault "policy" claim under Title IX—reinforced the fact that Title IX liability rests on an official decision by the funding recipient not to take corrective action in response to known abuse.  *See Salazar v. San Antonio Ind. Sch. Dist.*, No. 15-50558, 2017 U.S. App. LEXIS 10649, *23-24 (5th Cir. June 15, 2017).

In sum, if an official policy does not emerge from the Plaintiffs' ten cases, then they should not be allowed to fish through non-party files looking for one.  And even if the suggestion of a policy were to appear, Plaintiffs' discovery requests should be limited to the particular programs relevant to their own cases (if any), similarly situated occurrences, and the conduct of officials with knowledge of their claims and the authority to take corrective action.

Finally, this Court has recognized the prudence of staging discovery, even when the requested discovery is relevant, when initial discovery could eliminate the need for later discovery.  *Hernandez v. Baylor Univ.*, No. 6:16-CV-69-RP, 2017 U.S. Dist. LEXIS 65671, at *10-13 (W.D. Tex. May 1, 2017); *see also* Fed. R. Civ. P. 26(d)(3).  Given the extremely

sensitive nature of this case and the number of non-parties whose private files are at stake, Baylor asks the Court to take a similar approach here.  The "low-hanging fruit" should be gathered first.  *See Hernandez*, 2017 U.S. Dist. LEXIS 65671 at \*13.  It is reasonable and wise to focus on the information described above before opening the Pandora's box of private non-party files, implicating FERPA, and disrupting the lives of hundreds of former and current Baylor students.[5]

In closing, other than the information described above, disclosure of non-party student records is not appropriate at this stage of the litigation.  Baylor prays that the Court will grant its motion for protection and deny Plaintiffs' motions to compel.

Respectfully submitted,

Lisa A. Brown
Texas Bar No. 03151470
**THOMPSON & HORTON LLP**
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas  77027-7554
(713) 554-6741
(713) 583-7934 fax
lbrown@thompsonhorton.com

Holly G. McIntush
Texas Bar No. 24065721
400 West 15th Street, Suite 1430
Austin, Texas  78701
(512) 615-2350
(512) 682-8860 fax
hmcintush@thompsonhorton.com

---

[5] As Baylor has previously noted, assuming for the sake of argument Plaintiffs' inaccurate statement that 125 Baylor students were the victims of sexual assault between fall 2011 and spring 2015, *see* Dkt. 94 at 3 n.14, producing these records would implicate the rights of *at least* 250 people (125 alleged victims, 125 alleged assailants)—just for these three years.

WEISBART SPRINGER HAYES LLP
212 Lavaca Street, Suite 200
Austin, Texas  78701
512.652.5780
512.682.2074 fax

By:  /s/ Julie A. Springer
       Julie A. Springer
       State Bar No. 18966770
       jspringer@wshllp.com
       Sara E. Janes
       State Bar No. 24056551
       sjanes@wshllp.com

**COUNSEL FOR DEFENDANT
BAYLOR UNIVERSITY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was served upon all counsel of record on June 23, 2017, via the Court's ECF/CMF electronic service system as follows:

Mr. Chad W. Dunn (Attorney in Charge)         *Via ECF:  chad@brazilanddunn.com*
Mr. K. Scott Brazil                           *Via ECF:  scott@brazilanddunn.com*
**BRAZIL & DUNN, L.L.P.**
4201 Cypress Creek Parkway, Suite 530
Houston, Texas  77068


Mr. Jim Dunnam                                *Via ECF:  jimdunnam@dunnamlaw.com*
**DUNNAM & DUNNAM, L.L.P.**
4125 West Waco Drive
Waco, Texas  76710
P. O. Box 8418
Waco, Texas  76714-8418


/s/ Julie A. Springer
Julie A. Springer