IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, et al, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 6:16-CV-00173-RP |
| | § | |
| BAYLOR UNIVERSITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT BAYLOR UNIVERSITY'S BRIEF IN SUPPORT**
**OF PRIVILEGE-RELATED REDACTIONS**

TO THE JUDGE OF THE HONORABLE COURT:

In accordance with this Court's orders (ECF 175), Defendant Baylor University files this brief in support of its redactions related to the attorney-client privilege.

**I.      Introduction and Brief Procedural History**

Plaintiffs have objected to some of Baylor's redactions relating to the protection of privileged information. Baylor requested that Plaintiffs provide examples of redactions that they believed were inappropriate. On Wednesday, August 23, 2017, Plaintiffs' counsel provided examples of documents that had been redacted for privilege.[1] Some of the documents in question had been redacted prior to this Court's ruling regarding the attorney-client privilege. ECF 168. In light of this Court's ruling on privilege and in light of Plaintiffs' objections,

---

[1]      Redacted versions of the documents are attached as Exhibit A. The same documents also are submitted for *in camera* inspection with transparent redactions (Exhibit B) and in an unredacted form (Exhibit C). ECF 175. Baylor's privilege log is attached as Exhibit D.

Baylor's counsel reviewed the challenged redactions as well as all other documents that it had redacted or withheld for privilege in its prior production.  The review included all withheld or redacted documents even if not identified by the Plaintiffs.  Subsequently, Baylor voluntarily withdrew several previous assertions of privilege and produced updated copies to Plaintiffs on September 1.  The documents fall into two categories: (1) communications with attorneys in Baylor's Office of General Counsel ("OGC"); and (2) communications with those attorneys and Ketchum, a public relations firm that was retained by OGC in August 2015 in order to provide strategic advice regarding public communications that could impact anticipated and pending litigation.

## II.     Standard

The attorney–client privilege "protects from disclosure confidential communications made to obtain a lawyer's professional advice and assistance." *SEC v. Brady*, 238 F.R.D. 429, 438 (N.D. Tex. 2006). To invoke the privilege, a party must establish: "(1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing a legal opinion or legal services, or assistance in some legal proceeding." *Advanced Tech. Incubator, Inc. v. Sharp Corp*., 263 F.R.D. 395, 397 (W.D. Tex. 2009) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)). The privilege "protects two types of communication, those made by a client to his lawyer for the purposes of obtaining legal advice and those made by the attorney to the client in the course of giving legal advice." *Id.* at 397–98.

## III.     The redacted communications between client representatives and the Office of General Counsel are protected by the attorney-client privilege.

In the corporate setting, the attorney-client privilege attaches to communications between corporate employees and in-house counsel that facilitate the rendition of legal advice or services. *Stoffels v. SBC Communications, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009).  "Fundamentally,

legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct. It requires a lawyer to rely on legal education and experience to inform judgment." *In re City of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) (internal citations omitted). Baylor asserts that the following communications are privileged:

**Exhibit A-1:**  Plaintiffs challenge an email from Bethany McCraw, associate dean for student judicial affairs, to Christopher Holmes, who was Baylor's associate general counsel. McCraw seeks Holmes' advice regarding whether Baylor's policies comply with a federal statute.[2] *See* Ex. B-1. The Supreme Court has recognized that communications related to corporate counsel's efforts to ensure compliance with legal requirements are privileged and "valuable." *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981).  The email is protected by the attorney-client privilege.

**Exhibit A-2:**  Plaintiffs challenge an email from Baylor's Associate Vice President for Human Resources, John Whelan, to Baylor General Counsel Charles Beckenhauer and Associate General Counsel Doug Welch and several senior administrators.[3]  The email seeks advice regarding revisions to a draft human resources policy regarding "consensual relationships." *See* Ex. B-2 at BU 011864-65.  This type of policy implicates compliance with federal civil rights laws.  An attorney's evaluation of the legality, enforceability, and advisability of this type of policy draws upon his or her legal training and professional judgment and thus is privileged.

---

[2]    The other email recipient was Baylor's then police chief, Jim Doak.

[3]    The other recipients of the email were all within the privilege: the Senior Vice President of Operations & Chief Financial Officer; the Executive Vice President and Provost; Vice Provost; Chief of Staff in the Office of the President; Assistant VP, Operational Planning and Budget Director; Director of Payroll; Director of Personnel Budgeting & Payroll Services; Director of Compensation & Benefits; Director, HR Compliance & Data Management; and Director of Talent Management.  The individuals' names are on Baylor's privilege log.

**Exhibit A-3:**   Plaintiffs challenge redactions relating to a request for legal advice regarding a potential United States Department of Justice grant application and the legal implications of complying with the grant's requirements.   The redactions in this email chain include both communications among client representatives regarding the need for legal advice and communications with OGC attorneys.[4]   Other emails within this chain that do not involve legal advice have not been redacted, even where OGC attorneys are copied.

Communications between non-attorney corporate employees are privileged when a corporate client shares information with non-attorney employees to relay information requested by attorneys or when they were made for the purpose of securing legal advice.  *Nalco Co. v. Baker Hughes Inc.*, 2017 WL 3033997, at *3 (S.D. Tex. July 18, 2017) (internal citations omitted). "'[S]o long as the information is relayed for the purpose of obtaining legal counsel' and it meets the other requirements for maintaining privilege, then even if an attorney does not author or directly receive the communication it is still protected."  *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 2013 WL 6002166, at *3 (S.D. Tex. Nov. 12, 2013) (citation omitted).  Thus, the original March 15, 2011, email between corporate representatives discussing information that needed to be provided to the OGC and/or advice received from OGC attorney is privileged.  *See* Ex. B-3 at Bates BU 011930-31.

The March 15, 2011, email from Holmes provides legal advice regarding the grant's requirements and it requests additional factual information that Holmes needed   to provide

---

[4]      The client representatives are Lisa McKethan, Director of Baylor's Office of Sponsored Programs; Lori Genuous, Director of Wellness & Facilitator for the Sexual Assault Work Team; Rosemary Townsend, Director of Business Affairs & Community Relations; Misty Schrank, Grant Coordinator, Office of Sponsored Programs; and Jan Nimmo, Assistant VP for Research.

further advice.[5]  *See* Ex. B-3 at Bates BU 011930.  Rosemary Townsend's reply of the same date repeats some of the information Holmes requested.  *See* Ex. B-3 at Bates BU 011936.  The March 16, 2011, email from Holmes updates the client on the status of his investigation and review of one of the legal issues.  *See* Ex. B-3 at Bates BU 011940.  The redacted portion of Townsend's March 25, 2011 email refers back to this legal question.  *See* Ex. B-3 at Bates BU 011949.  Finally, Holmes's March 25, 2011 email provides his answer/advice.  *See* Ex. B-3 at Bates BU 011951.

**Exhibit A-4:** Plaintiffs challenge redactions involving emails between the Chief of Staff in the Office of the President (Dr. Karla Leeper) and General Counsel Beckenhauer and OGC attorney Holmes regarding bias-motivated incident reporting and complaint procedures.  Such procedures provide a method for enforcing federal civil rights laws applicable to universities, including Title VI and Title IX.  Leeper sought legal advice regarding the proposed procedures. *See* Ex. B-4 at Bates BU 011956. The emails between Leeper and Leslie Hahner, an assistant professor and member of the President's Diversity Counsel, discuss the advice that Holmes and Beckenhauer provided.  *See* Ex. B-4 at Bates BU011960.

**Exhibit A-5:** The emails in Exhibit A-5 contain legal advice regarding Title IX compliance in the wake of the 2011 Dear Colleague Letter regarding new federal guidance pertaining to sexual assault investigations.  In the October 19, 2011 emails, Dr. Martha Lou Scott (associate VP of student life) seeks advice from OGC attorney Holmes regarding Title IX reporting procedures.  *See* Ex. B-5 at Bates BU 02170.  In the October 28, 2011, email, Holmes

---

[5]    In addition to the corporate representatives included on the original email, Holmes' reply includes Associate General Counsel Kit Riehl; Vice President of Student Life, Dr. Kevin Jackson; and Associate Vice President of Student Life, Dr. Martha Lou Scott.

provides advice regarding the letter generally.[6]   Because the subject line of this email references

Holmes' legal analysis, the subject line is redacted from subsequent replies by the client

representatives.  *See* Ex. B-5 at Bates BU 012173-74, 12268-70.  Holmes was acting in his

capacity as a legal advisor and not as an administrator on policy matters.

The redacted portion of the January 4, 2012, email from Holmes to Dr. John Whelan, the

new Title IX Coordinator, and Whelan's reply on January 5 discuss Holmes' advice regarding

Title IX procedures and staffing.  *See* Ex. B-5 at Bates BU 012173-74. Because the Dear

Colleague Letter states that Title IX Coordinator "should not have other job responsibilities that

may create a conflict of interest," the inquiry and response are tied to compliance with a federal

statute and required the exercise of legal expertise.  *See* April 4, 2011, Dear Colleague Letter at

p. 7, *available at* www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf.

**Exhibit A-6:**  The redacted portion of a January 30, 2016, email between then Baylor

President Ken Starr and Vice President for Constituent Engagement, Dr. Tommye Lou Davis,

contains a legal question that Starr wishes Davis to pose to OCG attorney Holmes.  *See* Ex. B-6

at Bates BU 012363.  This email chain also includes Brad Toben, Dean of Baylor's law school.

It does not include anyone outside of the corporate privilege.

**IV.**     **Communications between the Office of General Counsel and its agent/consultant, and materials prepared by both entities, are protected by the attorney-client privilege and the work-product doctrine.**

Plaintiffs challenge redactions related to Ketchum, a public relations firm.  In certain

contexts, communications with outside agencies such as accountants or public relations firms

may be protected by the attorney-client privilege.  *See, e.g.*, *United States v. Kovel*, 296 F.2d

---

[6]     All of the recipients were corporate representatives within the corporate privilege; their positions are identified in connection with earlier exhibits.

918, 922 (2d Cir. 1961); *In re Grand Jury*, 265 F. Supp. 2d 321, 330-31 (S.D.N.Y. 2003). Attorneys are entitled to "outside help" in the rendition of legal advice, including when "they [a]re not skilled at public relations." *In re Grand Jury*, 265 F. Supp. 2d at 326. "'An attorney's duties do not begin inside the courtroom door. He or she cannot ignore the practical implications of a legal proceeding for the client." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1043 (1991) (plurality op.). Indeed, "in some circumstances, the advocacy of a client's case in the public forum will be important to the client's ability to achieve a fair and just result in pending or threatened litigation," and such advocacy may not "prudently be conducted in disregard of its potential legal ramifications." *In re Grand Jury*, 265 F. Supp. 2d at 330.

As a result, "the ability of lawyers to perform some of their most fundamental client functions—such as (a) advising the client of the legal risks of speaking publicly and of the likely legal impact of possible alternative expressions, (b) seeking to avoid or narrow charges brought against the client, and (c) zealously seeking acquittal or vindication—would be undermined seriously if lawyers were not able to engage in frank discussions of facts and strategies with the lawyers' public relations consultants." *Id.* From August 2015 until October 2016, Ketchum and OGC did just that, as Ketchum was retained "for the purposes of assisting [OGC] in giving legal advice to [Baylor] and assisting [Baylor] in anticipation of litigation." *See* Ex. E. Under Ketchum's engagement agreement, "[a]ll communications between Ketchum and any attorney, employee, agent or professional consultant of [Baylor] or [OGC] shall be regarded as confidential and privileged and covered by [Baylor's] attorney[-]client privilege and the attorney work product doctrine." *Id.*

***Communications with Ketchum are protected by the attorney-client privilege because Ketchum provided OGC with services essential to its representation of Baylor and because***

7

***Ketchum personnel were "functional employees" of Baylor.*** When public relations advice is vital to an attorney's ability to handle the client's legal issues, confidential communications with the PR firm for that purpose are privileged. *In re Grand Jury*, 265 F. Supp. 2d at 330-31. Similarly, when a corporation's public relations consultants become integral parts of the team assigned to deal with issues that are intertwined with the corporation's litigation and legal strategies, they become the functional equivalent of employees and fall within the scope of privilege. *See In re Bieter Co.*, 16 F. 3d 929, 938-40. (8th Cir. 1994) (consultant was "functional equivalent" of land developer's employee notwithstanding "independent contractor" status); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001) (attorney-client privilege extended to litigation-related communications with PR firm hired by company to respond to lawsuits because PR firm was "functional equivalent" of company's employee).  Under *Upjohn*, "there is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice." *In re Copper*, 200 F.R.D. at 219.  Ketchum's services were critical to OGC's ability to provide legal counsel to Baylor, and the firm's commitment to assist OGC in rendering legal advice related to public communications in an effort to manage actual and threatened litigation made Ketchum staff the functional equivalent of Baylor employees.

   ***Ketchum materials are protected by the attorney work-product doctrine.*** "[T]he work product doctrine is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *In re Grand Jury*, 265 F. Supp. 2d at 332 (internal quotation marks omitted).  It extends to documents created by an attorney's agent where the agent and the attorney and client "worked closely together in discussing the information to be provided to the

public, all with a view to the impact on future litigation . . . [and] in an effort to foster a public environment that was less likely to lead to further litigation." *Pemberton v. Republic Servs., Inc.*, 308 F.R.D. 195, 201 (E.D. Mo. 2015).  Ketchum was retained in anticipation of litigation in August 2015 following the rape conviction of a Baylor football player.  This Court previously ruled that Baylor reasonably anticipated litigation in the fall semester of 2015.  ECF 168.   An entity must be able to confide in experts it has retained for purposes of litigation management without worrying that its communications will be divulged in the exact type of litigation they were seeking to manage or avoid.  *See In re Grand Jury*, 265 F. Supp. 2d at 330-31; *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (attorney work product is not waived "simply because the attorney provides the work-product to a public relations consultant whom he has hired and who maintains the attorney's work-product in confidence").

Baylor does not contend that all communications between Baylor personnel and Ketchum are privileged.  To the contrary, Baylor has produced more than 75 documents with Ketchum that reflect purely public relations advice.  But Baylor contends that the advice and discussions with counsel regarding Baylor's efforts to prepare for and avoid anticipated and pending litigation are privileged.  Baylor contends that the following communications are privileged:

**Exhibit A-7:**  Baylor has asserted privilege for a redacted March 7, 2016, email from Baylor's Associate Vice President for Marketing Communications Karen Kemp to Dr. Jackson (VP of student life) and OGC attorney Holmes.  The email lays out detailed advice from Ketchum regarding Jackson's testimony before the Texas Legislature regarding Baylor's response to allegations of sexual assault.  *See* Ex. B-7 at Bates BU 012469-70.  The email was forwarded to Ketchum representatives James Donnelly and Courtney Wohrman, who were advising Baylor on strategic communications related to potential litigation.

9

**Exhibit A-8:**  This redacted email from Kemp to Ketchum representatives, OGC attorney

Holmes, and other Baylor personnel lays out strategic information for consideration by in-house

counsel and its agent regarding the potential impact of media communications on anticipated

litigation against Baylor.[7]  *See* Ex. B-8 at Bates BU 012486-87.

**Exhibit A-9:**  The redacted email from Kemp to Holmes and other Baylor personnel[8]

contains a proposed response to media inquiries regarding allegations against a former Baylor

football player, for review and approval by OGC attorney Holmes.  *See* Ex. B-9 at Bates BU-

012514.  The proposed response was forwarded to Board of Regents Chairman Richard Willis.

**Exhibit A-10:**  The redacted April 13, 2016, email from Ketchum representative James

Donnelly was sent two weeks after the *Hernandez* lawsuit was filed against Baylor (*see* C.A. No.

16-0069-RP) and asks for advice from Holmes regarding Ketchum's plan and proposed public

responses to a media article about Baylor.  *See* Ex. B-10 at Bates BU 012520.

**Exhibit A-11:**  The final challenged redaction is of an email from Woodruff to the

Ketchum consultants, Holmes, and several other Baylor employees.  In the email, Woodruff

provides factual information necessary for Holmes and Ketchum to provide legal advice and

strategy regarding communications surrounding a prayer vigil for victims of sexual assault

planned by students and former students, including Jane Doe 8.

## V.     Conclusion & Prayer

For the foregoing reasons, Baylor respectfully requests that the Court overrule any

objections raised by Plaintiffs to the challenged redactions for privilege.

---

[7]     The others are President Starr, Davis, Jackson, Ramsower, Todd Still (dean of Baylor's
Theological Seminary), Randy Woodruff (Assistant VP for Internet Services & Associate VP for
Electronic Marketing Communications), and Tonya Lewis (Director of Media Communications).

[8]     Davis, Ramsower, and Athletic Director Ian McCaw.

Respectfully submitted,

*/s/ Lisa A. Brown*_____
Lisa A. Brown
State Bar of Texas No. 03151470
**THOMPSON & HORTON LLP**
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas  77027-7554
(713) 554-6741
(713) 583-7934 fax
lbrown@thompsonhorton.com

Holly G. McIntush
State Bar of Texas No. 24065721
400 West 15th Street, Suite 1430
Austin, Texas  78701
(512) 615-2350
(512) 682-8860 fax
hmcintush@thompsonhorton.com

**WEISBART SPRINGER HAYES LLP**

Julie A. Springer
State Bar of Texas No. 18966770
jspringer@wshllp.com
Sara E. Janes
State Bar of Texas No. 24056551
sjanes@wshllp.com

212 Lavaca Street, Suite 200
Austin, Texas  78701
512.652.5780
512.682.2074 fax

**ATTORNEYS FOR DEFENDANT
BAYLOR UNIVERSITY**

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was served upon all

counsel of record on September 5, 2017, via the court's electronic filing system as follows:

Mr. Chad W. Dunn (Attorney in Charge)      *Via ECF:  chad@brazilanddunn.com*
Mr. K. Scott Brazil                        *Via ECF:  scott@brazilanddunn.com*
**BRAZIL & DUNN, L.L.P.**
4201 Cypress Creek Parkway, Suite 530
Houston, Texas  77068


Mr. Jim Dunnam                             *Via ECF:  jimdunnam@dunnamlaw.com*
**DUNNAM & DUNNAM, L.L.P.**
4125 West Waco Drive
Waco, Texas  76710
P. O. Box 8418
Waco, Texas  76714-8418



                                    */s/ Holly McIntush*
                                    Holly G. McIntush


922201

12