IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, § <br> JANE DOE 3, JANE DOE 4, § <br> JANE DOE 5, JANE DOE 6, § <br> JANE DOE 7, JANE DOE 8, § <br> JANE DOE 9, AND JANE DOE 10 § <br> § <br> *Plaintiffs,* § <br> § <br> vs. § <br> § <br> BAYLOR UNIVERSITY § <br> § <br> *Defendant.* § | Cause No. 6:16-cv-173-RP <br> **JURY TRIAL DEMANDED** |

**PLAINTIFFS' MOTION TO COMPEL AND
REQUEST FOR IN CAMERA REVIEW OF IAN McCAW MATERIALS**

TO THE HONORABLE ROBERT PITMAN:

COME NOW JANE DOES 1-10, Plaintiffs herein, who move to compel non-party Ian McCaw ("McCaw") to produce and/or provide documents and testimony being withheld.

**I.  INTRODUCTION & BACKGROUND FACTS**

On January 30, 2018, Plaintiffs served a Subpoena Duces Tecum on non-party McCaw, former Athletic Director of Baylor University, pursuant to Federal Rules of Civil Procedure 34(c) and 45.[1] On March 2, 2018, McCaw responded to the subpoena with Ian McCaw's Objections and Responses to Plaintiffs' Subpoena Duces Tecum and Motion to Quash,[2] which included two general objections

---

[1] ECF 267.

[2] See Exhibit A. Currently the Court is faced with several motions by Baylor and counsel, some now known to have been hired by Baylor for non-parties, which wholesale object to and seek to quash subpoenas to non-parties. Plaintiffs have issued over a dozen subpoenas so far and expect to issue several dozen more. Absent Court intervention, the Court could soon be faced with dozens more motions by Baylor and Baylor retained counsel for non-parties concerning every one of these subpoenas. Given the similarity of issues in this motion to those just filed and anticipated, the present motion presents the Court with an opportunity to get ahead of discovery obstruction before it fills the docket.

1

and multiple objections to 31 of the 36 specific requests for documents. McCaw noted 12 categories of documents withheld on the grounds of attorney-client privilege, two groups withheld on grounds of joint-defense privilege, and two sets withheld on FERPA grounds.[3] Multiple emails were fruitlessly exchanged between counsel for McCaw and counsel for Plaintiffs concerning the document issue, and it was not disclosed that McCaw's lawyer was being paid for by Baylor University until his deposition.[4] It being apparent that this document issue would not be resolved absent briefing, and hoping to avoid bothering the Court with another of Baylor's tactics to withhold information, and also in order to keep the current schedule, Plaintiffs proceeded with the deposition anyway. McCaw's deposition was taken on June 19, 2018, in Lynchburg, Virginia, where McCaw currently serves as Athletic Director of Liberty University. As it turned out, McCaw's deposition testimony was dramatically in opposition to Baylor's positions before this Court and in its public relations campaign.

Now, with the benefit of McCaw's testimony, the Court should order production of his materials withheld by Baylor's lawyers. First, the Court should review the small number of documents McCaw possesses, which were either heavily redacted or wholly withheld, *in camera*, and order production, without redaction, as appropriate. Also, the witness should be ordered to provide oral or

---

[3] *Id.*

[4] See Exhibit B, Deposition of Ian McCaw, 227:23-228:2. Apparently seeking to conceal its conduct even longer, Baylor notified Plaintiffs' counsel yesterday that it intends to designate portions of the McCaw deposition as "confidential" or "attorneys eyes only" under the Court's Protective Order (ECF 156), despite Baylor having only designated one issue as such during McCaw's actual deposition. Given this, the deposition has been filed under seal. Under the terms of the Court's order, the transcript must be held in confidence, in full, for 15 days which Baylor will use to come up with reasons to conceal portions of testimony from the public that have nothing to do with legitimately protecting student privacy. Baylor's past conduct indicates it will be overly inclusive as to what it chooses to so designate, and the Court will be faced with another motion it will unfortunately have to resolve.

written testimony on the subjects he was instructed not to answer during his deposition. The Court should also revisit its earlier order and require production of the McCaw separation agreement.[5]

Before turning to the specific discovery matters in this motion and because of the massive obstruction that is being orchestrated by Baylor to conceal what McCaw labels a "conspiracy" at the highest level at Baylor, it is essential for the Court to be made aware of just some of the underpinnings behind Baylor's actions. Baylor and Baylor-retained counsel for non-parties have repeatedly made relevance and proportionality objections including in response to the non-party subpoenas. Very little is produced without a court order. By going forward with McCaw's deposition despite the road blocks, damning testimony was elicited, even when protected by a Baylor-paid attorney. This testimony reveals much about the breadth of what Baylor is attempting to conceal and who is directing this concealment. These actions, which Plaintiffs are peeling back like layers of an onion, go directly to Plaintiffs' causes of action concerning both post-reporting conduct and what McCaw says is an "elaborate plan that essentially scapegoated the black football players and the football program for being responsible for what was a decades-long, university-wide sexual assault scandal"[6] and go directly to the pattern of conduct that created a heightened risk to Plaintiffs and other Baylor female students.

McCaw served as the Athletic Director of Baylor University from 2003 until May 2016.[7] McCaw did not receive *any* Title IX training at Baylor until 2014.[8] McCaw was beloved at Baylor and was responsible for dramatic improvement across athletics programs during his tenure. At the time of the departure of Briles and Starr in late spring of 2016, McCaw was offered the opportunity to continue on as Baylor's Athletic Director.[9] McCaw testified how efforts to be transparent were

---

[5] *See* ECF 122. Unlike that of many others involved, McCaw's statements on this ordeal are only now coming to light, likely because of gag provisions in his separation agreement.
[6] Exhibit B 75:13-22.
[7] *Id.* 17:10-11.
[8] *Id.* 23:5-13.
[9] *Id.* 148:18-19.

scrubbed, and how instead "intentional" efforts by regents "deflect[ed] attention away from their own failures and the other failures across campus,"[10] how regents "changed the centerpiece of the story," and how four-time Baylor Regent Chair Richard Willis "directed the Pepper Hamilton presentation to – and shaped it to accomplish the goals he was seeking."[11] Although urged to remain, McCaw refused to continue on as Baylor Athletic Director because he "was disgusted at that point with the regents, the racism, the phony finding of fact" and because he "did not want to be part of some Enron cover-up scheme."[12] McCaw is clear as to the members of this conspiracy, naming Pepper Hamilton,[13] six Baylor Regents,[14] at least two senior Baylor administrators,[15] as well as Baylor's General Counsel.[16] McCaw expressed disgust at the coordinated effort to conceal the University-wide failures by instead focusing exclusively on African-Americans to "scapegoat[] the black football players and the football program for being responsible for what was a decades-long, university-wide sexual assault scandal[17] – with racially charged labels like "300 pound black football player" being freely thrown around to the exclusion of other instances of University-wide misconduct.[18] Already revealed is the $15.1 million payment to Briles and his recommendation letter, which coupled with Baylor's offer that McCaw remain on as A.D., reveal Baylor's real attitude about any of their wrongdoing.[19] After the athletic

---

[10] *Id.* 70:20-23;
[11] *Id.* 76:3-14
[12] *Id.* 159:24–160:2; 160:17-18.
[13] *Id.* 92:22-23.
[14] *Id.* 71:20-72:1. McCaw named as Regent conspirators Buddy Jones, Dary Stone, Richard Willis, David Harper, Ron Murff and Cary Gray.
[15] *Id.* 72:2-6. McCaw named Reagan Ramsower and Kevin Jackson.
[16] *Id.* 92:24-93:2.
[17] *Id.* 75:17-22.
[18] *Id.* 133:1-6.
[19] *Id.* 79:6–80:5; 86:3-5. McCaw says Briles left because "they needed a scapegoat," and that the regents had long sought for a reason to justify getting rid of Starr, who "was calling for complete transparency relative to a Pepper Hamilton report." See also https://www.star-telegram.com/sports/spt-columns-blogs/mac-engel/article170806572.html; and https://sportsday.dallasnews.com/college-sports/collegesports/2018/03/30/baylor-paid-ex-coach-art-briles-151-million-after-dismissal-amid-schools-sexual-assault-scandal-ken-starr-got-45-million

department was made out to be the sole scapegoat for Baylor's sexual assault problems, McCaw continued to work at Baylor in a non-administrative role until November 2016, then he moved to Liberty University at the recommendation of former Baylor Coach Grant Teaff and after Liberty conducted its own investigation of McCaw's acts at Baylor.[20]

Back at Baylor, prior to the Baylor Board of Regents Findings of Fact being issued, McCaw was directly told by Pepper Hamilton attorneys that they were looking at three potential outcomes with their report – a "detailed document," a "summary report," or "to whitewash the whole thing."[21] McCaw testified that ultimately a trip by a select number of Regents and Chris Holmes, Baylor's General Counsel, to visit the Pepper Hamilton offices in Pennsylvania office, resulted in the strategy of Regent Cary Gray writing "false" and "misleading finding of fact skewed to make the football program look bad to cover up the campus-wide failings."[22] The Baylor Board of Regents ultimately adopted these Findings, carefully omitting details of the who, what, when and where of non-athletic related failures, yet highlighting specifics only in the football section of the Findings.

As one example of the cover-up, McCaw told how, prior to a Board of Regents meeting regarding the Margolis-Healy report,[23] Ramsower told him "if [Baylor Police] Chief Doak was still here, we wouldn't fire him. We'd have to execute him."[24]  Instead, Doak was given a celebratory

---

[20] *Id.* 166:18-25.

[21] *Id.* 85:1-3. McCaw spoke directly with Gina Smith of Pepper Hamilton, and he "asked what the final work product they would provide to the university. She said it would be up to the regents. They may want a detailed document. They may want a summary report, or they may ask us [Pepper Hamilton] to whitewash the whole thing." *Id.* 84:1-85:3. *See also Id.* 94:18 – 95:6.

[22] *Id.* 78:5-15; McCaw testified "[Gray] was very involved in" a "conspiracy to develop this concept to try and turn a longstanding campus-wide sexual assault scandal into a football problem." 81:19-82:4.

[23] Margolis-Healy was hired by Baylor to conduct an investigation into Baylor's compliance with Title IX, the Clery Act and Violence Against Women Act. *See id.* 33:3-6. According to McCaw, who learned of Margolis-Healey's findings in 2014, the "scathing report" revealed "hundreds of violations of Clery, Title IX, and the Violence Against Women Act." *Id.*

[24] *Id.* 205:19-20.

retirement party and public praise.[25] McCaw testified how Doak and others discouraged reporting and systematically buried rape reports, concealed them from McCaw when they involved sports, causing McCaw to only learn of them through ESPN.[26] McCaw said that one recording even reveals a Police dispatcher putting a young women reporting her rape on hold to order himself a meal.[27] Contradicting the false narrative that football was the entire problem, Patty Crawford relayed to McCaw that "she had had upwards of approximately 300 cases since she'd arrived at Baylor, and she had not detected any pattern relative to student athletes within that number."[28]

McCaw was encouraged to join the conspiracy by lying about when a sports-related rape had been reported to and made known to Baylor officials. After its prior PR firm Ketchum quit, the head of the new PR firm, Glenn Bunting, personally encouraged McCaw to tell this lie, a scheme Bunting promised would be "mutually beneficial" to Baylor and McCaw.[29] McCaw's response was direct - he told Bunting "that's not true." McCaw then explained the real truth, concluding "so I'm not going to agree to what he proposed and he hung up on me."[30] In addition to having been told by Pepper Hamilton that a "whitewash" might be ordered by the regents, McCaw reported that he became suspicious that a cover-up was underway when Holmes at one point pulled Baylor's Senior Associate Athletic Director for Internal Affairs Paul Bradshaw aside and said, "don't worry. They aren't after you."[31] Importantly, despite all of his damaging testimony to Baylor, McCaw did not attempt to hide his own responsibility and readily admitted that the athletic department was not blameless.[32]

---

[25] *Id.* 198:2-200:10.
[26] *Id.* 196:22-197:10 and 143:12-25.
[27] *Id.* 202:5-15.
[28] *Id.* 52:1-5.
[29] *Id.* 180:20-182:2.
[30] *Id.* 181:13-182.2.
[31] *Id.* 83:18-23.  Left out of the loop and refusing to lie, McCaw was also blocked from involvement and knowing the reasons for the terminations of Athletic personnel Tom Hill and Collin Schillinglaw, individuals over whom McCaw had the hire/fire authority.  Ex. A.  146:20-148:4.
[32] *Id.* 96:10-17.

McCaw testified to many more damaging recollections for Baylor as reflected in his entire deposition filed under seal, and this testimony should further inform the Court of reasons behind Baylor's orchestrated suppression of discovery. It is clear from previous filings that Baylor has refused to cooperate with Plaintiffs' efforts to obtain personal communications of Regents and employees, both current and former, then hired them counsel, then had both those attorneys and Baylor's attorneys object to the requests, thus postponing Plaintiffs' access to these materials until after the filing of motions, responses and replies and the Court having to rule.[33]

There is much now at stake before the Court that will ultimately determine whether the light of truth will be allowed to shine. Baylor has spent tens of millions of dollars trying to blame the sexual assault problem completely on football while at the same time secretly paying and recommending them. McCaw explained the cover up motivation - "It's bad for business . . . It's bad for Baylor's brand, bad for admission, bad for tuition revenue. And obviously you know Baylor is heavily reliant – it does not have a large endowment, so it's heavily reliant on tuition revenue. So if there's a dip in admissions, a dip in tuition revenue, that severely affects the university."[34]

The Court should take this opportunity to strike down the machinations of Baylor to conceal Mr. McCaw's testimony and documents as set forth below, and make clear to all that the truth will not be concealed. Unfortunately, without Court intervention and a clear message from the Court, Plaintiffs foresee these same issues coming before the Court again and again. As long as Baylor believes it can get away with its cover up, Baylor will do so. Absent arresting Baylor's obstruction, Plaintiffs will be forced to continue to take depositions without documents on the deponent, and

---

[33] *E.g.* ECF 334, 335 & 337 filed by Doak and Nicholson and Baylor on 16 subpoenas. Plaintiffs have thus far been contacted by a handful of outside counsel who are collectively representing most of the Baylor officials under subpoena. Most, if not all, are being paid by Baylor.
[34] *Id.* 209:21-210:10.

7

perhaps ultimately try this case without complete discovery or request further postponement – both positive options for Baylor.

## II.    ARGUMENT

The recent deposition reveals four categories of information that Plaintiffs now seek:

**1.     McCaw's report.**  Following the release of the Board's findings, McCaw gave a report to the Board about his response to what he had been told were the results of the Pepper Hamilton investigation.[35]  The statement was typewritten and he read from it, a practice he routinely followed in presentations to the Board.[36]  This written report of what McCaw read to the Board was, incredibly, withheld from production by Baylor's paid-for attorney even though McCaw testified that the typewritten statement had nothing to do with legal advice.

**2.     McCaw's document production.** McCaw's attorney only produced 137 redacted pages for Mr. McCaw.  For example, McCaw specifically noted that a large section of one page from his notes was redacted from production under attorney-client privilege, but McCaw testified the redacted portion contained no attorney-client matters.[37]  However, at Baylor's direction at the deposition, his counsel instructed McCaw not to answer questions about the redaction and other withheld documents.  McCaw complied with Baylor objections and instruction from his Baylor-paid counsel, apparently over his own personal beliefs about their responsiveness. The Court should review all of the 137 pages that were redacted and determine whether the redactions were appropriate.  Anyway,

---

[35] *Id.* 137:6-144:7.
[36] *Id.*
[37] *See* Exhibit C. Bates: Ian0000098.  *See* Ex B. 287:3-290:22. Mr. McCaw testified that Baylor redacted portions of this document of what Holmes said did not pertain to legal advice (289:4-7) yet the lawyer Baylor paid for McCaw instructed him not to answer questions about the redaction (288:18-22).

the Court should review IAN000098 to ensure, as has happened numerous occasions, that Baylor did not redact the information simply because it was helpful to Plaintiffs' case.[38]

Also, some 100 pages of materials were entirely withheld according to McCaw, on advice of his Baylor-paid attorney.[39] The log is imprecise so as to prevent argument concerning their production. Given the small size of these materials, Plaintiffs request *in camera* review by the Court.

**3.    McCaw separation materials.**  Plaintiffs previously sought production of McCaw's settlement agreement with Baylor and the Court denied the request and held, "Plaintiffs are welcome to re-urge the issue with the Court."[40] Since the Court's ruling, the media has publicly reported that Mr. McCaw was paid $761,059 in severance pay, according to IRS Form 990 filed by Baylor.[41] McCaw testified that this lump sum amount publicly reported was "not entirely" accurate.[42] The lawyer Baylor paid for instructed McCaw not answer follow up questions. The extent of McCaw's testimony concerning the ongoing cover-up at Baylor of university-wide Title IX failings ensures that McCaw's testimony will be critical at trial. The fact that Baylor paid McCaw money goes to credibility determinations the jury will need to make. Whatever non-disclosure provisions the document includes are also relevant. Anyway, the public report since the Court's earlier ruling let the cat out of the bag. Plaintiffs should learn the full extent of payments Baylor paid to Mr. McCaw in its efforts to quiet his

---

[38] Interestingly, McCaw also noted that while only nine pages of text messages (much of this is redacted) were produced by Baylor from McCaw, that only covered three months, and McCaw made clear that he had to turn in his phone twice for collection of his electronic communications as part of the investigation. Ex. B. 320:5-9. This is another reason why Plaintiffs must be allowed to obtain the PH files directly from PH's custodian.
[39] *Id.* 227:13-24.
[40] ECF 146 at p. 10.
[41] http://www.wacotrib.com/news/higher_education/baylor-paid-briles-million-starr-million-after-removal-amid-sexual/article_2bdda9a0-43d6-5e13-94dc-72b28c1db737.html (accessed June 26, 2018)
[42] Exhibit B, 163:10-17.

testimony.  For the same reasons, Plaintiffs should also receive the short settlement agreement Mr. McCaw and Dr. Ramsower negotiated.[43]

4.      **Communications between McCaw's lawyer and Baylor.**  Despite Baylor's attempt to pay off McCaw and thereby influence his testimony by hiring him a lawyer, Mr. McCaw's testimony was devastating to Baylor's positions in this case and its propaganda efforts.  The credibility of Mr. McCaw will certainly be tested at trial.  Plaintiffs should be able to discover the communications between Baylor and McCaw's counsel since they clearly implicate the veracity of McCaw's testimony and Baylor's efforts to conceal the truth.  There is no such privilege for these requests and it cannot be argued that Baylor/McCaw carry a common interest given how irreconcilable McCaw's testimony is from the public statements and Court filings by Baylor.  Plaintiffs (or at least the Court) should be able to review communications between Baylor's counsel and McCaw's counsel to determine the extent to which Baylor attempted to influence his testimony.

## CONCLUSION

For the foregoing reasons, Plaintiffs request an order to compel.

Respectfully submitted,

 /s/ Chad W. Dunn
BRAZIL & DUNN, L.L.P.
Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
chad@brazilanddunn.com

AND

---

[43] *Id.* 164:25-165:25.

>DUNNAM & DUNNAM, L.L.P.
>Jim Dunnam
>State Bar No. 06258010
>4125 West Waco Drive
>Waco, Texas 76710
>Telephone: (254) 753-6437
>Facsimile: (254) 753-7434
>jimdunnam@dunnamlaw.com
>
>ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing has been filed by ECF and sent to counsel of record via electronic notification on June 27, 2018.

>/s/Chad W. Dunn
>CHAD W. DUNN

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel have conferred extensively on the issues raised in this motion. These matters were discussed on the record at the deposition attached as Exhibit B. Further conferences would be futile.

>/s/Chad W. Dunn
>CHAD W. DUNN