UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| JANE DOE 1, ET AL )<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>BAYLOR UNIVERSITY, )<br>)<br>    Defendants. )<br>) | Civil Action No. 6:16-cv-173-RP |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL
RELATING TO IAN McCAW'S MATERIALS**

Defendant Baylor University responds as follows to Plaintiffs' motion to compel production or to seek *in camera* review of certain documents redacted or withheld by Ian McCaw (Dkt. 363):

I. **Overview**

Plaintiffs' motion presents what should be a straightforward question: whether certain documents contain privileged or confidential student information. Instead, this question is buried under a sideshow of baseless conspiracy theories, hearsay, and rank speculation that is aimed, apparently, at potential jurors and the public. Although such testimony is not relevant to the question at hand and would not be admissible under the rules of evidence at trial due to McCaw's lack of first-hand knowledge, Plaintiffs were so eager to publicize the information from the safe perch of PACER that they ordered an expedited copy of the deposition transcript and rushed to publish it the next day, violating this Court's confidentiality order along the way.

Counsel's attack is all the more remarkable because it bears no relationship to the claims in Plaintiffs' lawsuit. The Third Amended Complaint focuses on ten women and their specific allegations of assault. *See, e.g.*, Dkt. 56 at ¶¶ 36-37, 41. The 46-page complaint contains *no allegations or claims* about the Pepper Hamilton investigation *or* the Board of Regents' handling of, or response to, the Pepper Hamilton investigation. Dkt. 56. The lawsuit does not allege any relationship between the conducting

of the Pepper Hamilton investigation and the Plaintiffs' alleged assaults, some of which date more than a decade prior to the investigation. *Id.*, ¶¶ 54, 75, 107, 124, 152, 176-177, 192, 211, 235. This lawsuit is not about the investigation, decisions made in the wake of the investigation, or disputes within the Baylor family about whether Art Briles should have been let go. Nonetheless, Plaintiffs' counsel has devoted extreme attention to the minutiae of Briles's and McCaw's departures, the hiring of a new football coach in 2016, McCaw's experiences at Liberty University, among other irrelevant subjects (*see, e.g.*, Dkt. 363, exh. B at 146-154, 158, 152-153, 159-172, 187-189) – a curious use of deposition time, given Plaintiffs' counsel admission that most of the plaintiffs have "zero to do with athletics" (Dkt. 94 at 3) and given this Court's prior ruling disallowing certain discovery regarding Briles' and McCaw's separations (Dkt. 146 at 10). That Plaintiffs' counsel has some alternate agenda is underscored by the simple fact that, during McCaw's day-long deposition, counsel never asked McCaw any questions about Plaintiffs' alleged assaults or Baylor's handling of their reports.

Below, Baylor addresses Plaintiffs' false allegations and insinuations about discovery in general and the McCaw subpoena in particular.

## II.     Plaintiffs violated the Court's confidentiality order.

Under section 7 of the Court's confidentiality order (Dkt. 156), depositions are deemed confidential for a period of 15 days to enable the parties to review and designate portions or pages that might contain confidential information – a necessary safety net in cases involving sensitive information such as intimate information involving nonparty students. During McCaw's deposition, Baylor's counsel reminded Plaintiffs' counsel that student names are "confidential" and would be designated as such in the transcript.[1] Under the Court's order, student information is automatically confidential unless the student has consented to disclosure or a court order permits use of the

---

[1] Dkt. 353, exh. B at 67. Counsel also issued one claw-back designation. *Id.* at 168.

information.[2]  Subsequently, when the McCaw transcript was delivered on June 26, 2018, Baylor reminded opposing counsel that Baylor would review the transcript and prepare a written designation. Exh. A.

The next morning, Plaintiffs' counsel filed their motion to compel, liberally quoting from the deposition transcript. *See* Dkt. 363 at 2-7.  Plaintiffs' counsel also used the transcript in two additional pleadings filed the same day.  *See* Dkt. 365 and 366.  The issue is not whether the Plaintiffs ultimately revealed confidential information in their filings.  Rather, the issue is respect for a process that is designed to ensure that no confidential is released before the parties have had the opportunity to review the transcript.

Plaintiffs' counsel's accusation that Baylor will use the Court's confidentiality order to "conceal" deposition testimony is factually baseless (Dkt. 363 at 2, n. 4) and is easily rebutted by Baylor's limited objections at the deposition (*see, e.g.*, Dkt. 353, exh. B at 67, 277, 16).  The accusation also is rebutted by the Court's order itself, which allows designations only for limited reasons. Plaintiffs' counsel's false accusation of concealment also is ironic, given Plaintiffs' counsel's withholding of Plaintiffs' records based on a frivolous privacy objection.  Dkt. 244.  Although the Court overruled Plaintiffs' objection on May 6, 2018, Plaintiffs' counsel still has fully not complied with that order, which requires them to produce unredacted records.  Dkt. 301; Exh. B (email to Plaintiffs' counsel requesting unredacted records).  In particular, Plaintiffs' counsel still has not produced Plaintiffs' unredacted social media posts.  Additionally, most Plaintiffs have yet to produce any text messages or emails from their personal email accounts – information requested by Baylor more than a year ago.  Baylor's motion to compel regarding deficiencies in Plaintiffs' production

---

[2]   *See* Dkt. 156, ¶ 7, second paragraph.

remains pending.  Dkt. 257.  Needless to say, Plaintiffs' counsel continues to apply a double standard when it comes to discovery in this case.[3]

### III.     The McCaw subpoena was handled in accordance with the rules of civil procedure.

To date, Plaintiffs have sent more than 50 nearly identical, overly broad subpoenas to current and former Baylor employees and regents, all of which seek categories of information that the Court previously ruled is beyond the scope of discovery, including, for example, documents relating to non-sexual student misconduct.  *See, e.g.*, Dkt. 265-269, 313-327, 348-354, 369-375, 386-415; *see also* Dkt. 381 (Baylor's motion for protection).  Plaintiffs attack Baylor for filing motions to protect privileged information sought by the subpoenas, and they appear to question the subpoena recipients themselves for seeking legal assistance to respond to the subpoenas.[4]  Plaintiffs apparently would prefer that the recipients respond to the confusing subpoenas "as is," without assistance of counsel, because it increases the likelihood that the individuals will inadvertently produce Baylor's privileged information, which is exactly what occurred in February 2018 when a former athletics employee provided Plaintiffs with copies of Baylor emails stamped "attorney-client communication."[5]

As discussed in McCaw's response to Plaintiffs' motion to compel, Plaintiffs served McCaw with duplicate subpoenas for the same documents.  Dkt. 385.  On February 15, 2018, after the first

---

[3]  Plaintiffs' counsel continue to ignore the scale of Baylor's production burdens as compared to their own.  So far, Baylor has incurred $2 million in discovery costs to produce information requested by Plaintiffs, and production of additional data is ongoing.  Dkt. 336, exh. A. In addition to a pre-production review of all documents to identify privileged documents and creating a privilege log for them—which is typical and required in all "big document" cases—Baylor has had to conduct additional reviews that are not typical in litigation due to Baylor's obligation to comply with FERPA.  Contrary to Plaintiffs' motion, a party's assertion of privilege and the time associated with the processing of a large volume of data do not constitute obstruction.

[4]  Some of the recipients have paid for their own attorneys to respond to the subpoenas.  *See, e.g.*, Dkt. 383.  Others requested that Baylor cover the legal costs associated with hiring an attorney due to the fact that the subpoenas relate to their Baylor employment.

[5]  Plaintiffs' counsel contends that Baylor's sole remedy for such disclosures is to designate privileged documents after the fact – *after* Plaintiffs' counsel has scrutinized the material.  Dkt. 283.

subpoena was issued, Baylor filed a motion for protection, explaining that the subpoena sought information protected by the attorney-client privilege, work product, and FERPA.  Dkt. 282, pp. 4-5 and Dkt. 282, exh. A.  The focus of Baylor's motion was communications that were made *while McCaw was still Baylor's athletic director* and communications made as a result of anticipated or pending litigation, including a civil action in which McCaw was a co-defendant (Cause No. 6:16-CV-00069).  McCaw also is identified in an on-going lawsuit against Baylor that alleges that McCaw mishandled a female athlete's rape allegation in 2013 (Cause No. 6:17-CV-00125-RP).   McCaw's response to the subpoena specifically identified what was being withheld and why.  Dkt. 385 at 2, exh. A.

Plaintiffs' counsel professes shock that anyone would question their subpoena.  However, the attorney-client privilege extends beyond current employees to communications in the possession of former employees and generally protects communications with a former employee if the communication relates to knowledge obtained or conduct that occurred during the course of employment or if the communication concerns conversations which were themselves privileged and which occurred during the employment relationship.  *See generally United States ex rel. Hunt v. Merck-Medco Managed Care, LLC*, 340 F.Supp.2d 554, 558 (E.D. Pa. 2004) (citing *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 40-41 (D. Conn. 1999)); *Gershman Properties, LLC v. Liberty Mut. Fire Ins. Co.*, 2015 WL 12748325, at *1 (N.D. Tex. Oct. 9, 2015).  Some communications also may be protected by the work-product doctrine. *See Hanover Ins. Co.v. Plaqumines Parish Gov't*, 304 F.R.D. 494 (E.D. La. 2015).

Because Baylor is the owner of the privilege, counsel for Baylor properly communicated with counsel for McCaw to determine whether McCaw retained privileged or confidential information when he left Baylor.  Rules 26 and 45 expressly recognize a party's right to protect privileged or confidential information that may be in a non-party's possession.[6]  The rights afforded by the rules

---

[6] *See Bounds v. Capital Area Family Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (M.D. La. 2016); *Ass'n of Am. Physicians & Surgs., Inc. v. Tex. Med. Bd.*, 2008 WL 2944671, at *1 (E.D. Tex. July 25,

would be meaningless if the party could not make this inquiry.[7]  In this case, Baylor and McCaw continue to have a common interest with respect to the confidential documents that pertain to his employment or litigation in which they are involved.

In May 2018, after Plaintiffs issued a deposition notice with a duplicate subpoena, Baylor asked Plaintiffs whether they would agree that the prior briefing was sufficient and that any court ruling would apply to all of the requests, saving the parties' and the Court's time and resources.  Exh. C. Plaintiffs' counsel responded: *"I see no need for you all to further brief this issue with the Court."*  *Id.*  It is now apparent, however, that Plaintiffs desired further briefing all along, but only in the context of a post-deposition motion to compel orchestrated to maximize media coverage of unrelated issues.

Plaintiffs' counsel also falsely suggests improper conduct by counsel, repeatedly referring to McCaw's counsel as "Baylor-retained" or "Baylor paid-for" counsel as part of the alleged "machinations of Baylor to conceal" or "influence" McCaw's testimony.  Dkt. 363 at 3, 7, 8, 9, 10. These serious charges against McCaw's counsel and Baylor's counsel are completely false.  Separate counsel for current or former employees is a common practice to assist those who face legal burdens as a result of their employment.  Under the State Bar of Texas rules, McCaw's attorneys have an ethical obligation to exercise independent judgment on behalf of their client.  *See* Texas Disciplinary Rule of Professional Conduct 1.06, Comment 12.  Plaintiffs' counsel's false and cynical allegation of improper influence is strongly refuted by the deposition transcript itself.  As Plaintiffs themselves note, McCaw's testimony is "dramatically" contrary to Baylor's position. Dkt. 363 at 2.  Yet counsel is eager to put

---

2008); *see also* Fed. R. Civ. P. 45(c)(3)(A)(iii) (subpoena must be quashed if it "requires the disclosure of privileged or other protected matter . . .").

[7]  Of course, in some instances, it will not be possible for any inquiry to take place, either because the individual declines to speak with the former employer about the documents that the individual retained or because the time provided for compliance in the subpoena is too short for the individual to locate the information.

these accusations in the public record precisely because McCaw's testimony is not what one would expect of someone being advised by a "Baylor paid-for" lawyer.

Near its end, Plaintiffs' motion finally identifies the documents or categories of documents that are being sought. Baylor responds to Plaintiffs' complaints as follows.

*McCaw's communication with the Board of Regents.* McCaw's motion and testimony demonstrate that McCaw spoke about the sexual assault findings in a meeting with the board of regents and Baylor's legal counsel in May 2016 – *after* Pepper Hamilton's presentation to the board, *after* the *Hernandez* lawsuit was filed, and while Baylor was under threat of additional litigation. Dkt. 363, exh. B, p. 138. Baylor's assertion of privilege and work-product was proper. *See also* Dkt. 168 at 15-16 (court order acknowledging that Baylor reasonably anticipated in litigation in the fall semester of August 2015).

*McCaw's notes regarding a conversation with the general counsel.* McCaw was questioned about a conversation with Chris Holmes, Baylor's deputy general counsel who now serves as general counsel. Dkt. 363, exh. B, pp. 287-289. McCaw made a four-sentence note of the conversation while he was athletic director. At the deposition, Plaintiffs' counsel showed McCaw a redacted copy of the note. The exhibit states "Chris Holmes then said [*redacted*]." Dkt. 363, exh. B at 287:8-13. The note in question originally was produced by McCaw's counsel in March, prior to the Court's FERPA redaction order of May 6, 2018 (Dkt. 300.) Subsequent review of the unredacted version indicates that the redacted portion is a FERPA redaction and identifies an alleged victim and an accused student. Baylor has requested that McCaw's counsel reproduce the note in accordance with the Court's recent redaction order.

*McCaw's separation agreement.* Plaintiffs have not provided the Court with any cogent argument for reversing its prior ruling regarding this document. *See* Dkt. 146 at 10-11 and 13. The Court previously acknowledged the public policy that favors settlement of legal disputes, and it observed that only one plaintiff (Doe 1) alleges an assault by an athlete and that "[n]one" of her allegations

"involve athletic staff." Dkt. 146 at 10. The Court previously reviewed this document *in camera*, and no further review is necessary.

*Documents between counsel.* As to the communications between Baylor's counsel of record and McCaw's lawyer, these communications have dealt only with whether documents requested in the subpoenas are subject to FERPA, attorney-client privilege, or the work-product doctrine. Plaintiffs are not entitled to discover these communications because privileged or confidential information may reveal the content of the documents at issue and because the information is not relevant. As to any attorney fee bills or invoices involving a non-party or Baylor, the information is protected by the attorney-client privilege and work-product doctrine and is not relevant.

*Other documents.* As for documents pertaining to any assertion of privilege or FERPA by Baylor, including assertions of privilege relating to this litigation or other litigation involving Baylor and McCaw, should the Court determine that *in camera* review is needed, Baylor of course will comply.

**IV.** **McCaw's fanciful and false conspiracy claims are not based on first-hand knowledge and are irrelevant to the question presented in Plaintiffs' motion.**

Plaintiffs' gratuitous discussion of McCaw's conspiracy theory has nothing to do with the request for documents at issue. It is plain that the purpose of Plaintiffs' highlighting McCaw's theory is simply to put his allegations into the public record. Therefore, Baylor is entitled to respond.

The centerpiece of Plaintiffs' motion is McCaw's bizarre and unsubstantiated belief that the Board of Regents "scapegoated" Art Briles and black football players to cover up a "university-wide sexual assault scandal." Dkt. 363 at 3. Plaintiffs' argument collapses under the weight of its own inconsistency. The Board of Regents' 13-page Findings of Fact, quite soberly and seriously, recognized "[i]nstitutional failures at every level" of administration during the three years reviewed by Pepper Hamilton. Dkt. 93-3 at 2, 4-5. Just three of the thirteen pages specifically examined the football program. The written findings are the opposite of a cover-up of any kind.

Plaintiffs also continue to complain about the summary nature of the findings of fact, dismissing the regents' concerns about the privacy rights of third parties. Yet in a similar case arising prior to the Baylor investigation, the U.S. Department of Education expressly cautioned the University of Virginia against disclosure of an overly detailed investigation report. *See* U.S. Dep't of Educ., Technical Assistance to Attorney General of Virginia at 3 (July 2, 2015) (www2.ed.gov/policy/gen/guid/fpco/doc/letter-to-va-attorney-general-mark-herring.pdf). Further, the specificity of the findings is immaterial. As previously noted, the Third Amended Complaint does not contain a single allegation about the Pepper Hamilton investigation. Further, the Plaintiffs are receiving the actual underlying student sexual assault files in discovery, so they will be able to see for themselves how complaints were handled over time.

Plaintiffs and McCaw also take issue with the particularized findings regarding the athletic department. Their observation ignores the simple fact that the trigger for the initial investigation was a sexual assault conviction of a football player. Ian McCaw was perhaps more sensitive to issues regarding problems in the Athletic Department because he was, after all, its director. Unfortunately, it has led him to attack, without evidence, members of the Board of Regents who sought nothing more than a fair and impartial investigation of the most serious of subject matters. To further discredit the Board, McCaw now claims that the alleged conspiracy was racially motivated – a cynical and preposterous charge that would deserve no attention but for its reckless repetition by Plaintiffs' counsel in a federal court pleading.

In repeating McCaw's baseless accusation, Plaintiffs' motion repeatedly fails to note that much of McCaw's testimony is speculation and double or triple hearsay regarding matters of which he has no personal knowledge. McCaw admitted that he has *no personal knowledge* of alleged statements

regarding black athletes or coaches.[8]  McCaw has *no personal knowledge* of a police dispatcher allegedly not taking an assault report.[9]  McCaw has *no personal knowledge* regarding preparation of the investigatory Findings of Fact or regent conversations with Pepper Hamilton.[10]  McCaw's attempts to criticize specific board members also ring hollow – two were not even on the Board at the time of the investigation, and he speculates that another regent must have authored the Findings of Fact merely because that regent happens to be a lawyer.  McCaw's testimony is replete with amorphous opinions prefaced with "I think," "I believe," and his "understanding."[11]  Indeed, in several instances, McCaw's testimony was based solely on something he read in a newspaper or in Ken Starr's book.[12]  McCaw's statements regarding conspiracies, racism, and scapegoating are false conjecture of the first order.

Elsewhere, Plaintiffs omit details that provide important context for McCaw's testimony.  In particular, while quick to cite criticisms of former Baylor police chief Jim Doak,[13] Plaintiffs' motion neglects the testimony that shows that Baylor addressed concerns about the police department.  In 2014, Baylor retained Title IX consultant Margolis Healy & Associates to assess Baylor's compliance with Title IX and other laws.  Dkt. 363, exh. B at 33:3-22, 34:2-25; *see also* Dkt. 97, exh. F (Margolis Healy report regarding Title IX).  McCaw testified that the regents were briefed regarding the Margolis review in July 2014 and that, subsequently, Baylor hired a full-time Title IX coordinator, "ramp[ed]

---

[8]   *See, e.g.,* Dkt. 363, exh. B at 342:14-25 ("Q: So you don't have personal knowledge of whether that statement was made?"  "A: Correct.") and 343:7-13 ("Q: And you don't have personal knowledge of any conversation where that was said?  It's something you heard from him? A: Correct.").

[9]   McCaw testified that he was a "[t]old a story" about a dispatcher from 2013 and did not know who the dispatcher was.  Dkt. 363, exh. B at 202:3-21.

[10]  *E.g. id.* at 134:2-5 (admitting that he had not "heard or seen any other memo or email or documentation from regents about the Pepper Hamilton report and their reflections on it").

[11]  *E.g. id.* at 71:22-25, 75:17, 77:8, 79:6-25, 132, 133.

[12]  *E.g. id.* at 79-16-17 ("If you read his book, Bear Country, you can get good detail on that."); *id.* at 74:3 ("I read about that in the newspaper").

[13]  Dkt. 363 at 5 and 195:5-8.

up" training on Title IX, and reconfigured the police department.[14]  Dkt. 363, exh. B at 33:3-22, 34:2-25, 35:2-7, 38:9-16, 50:19-25, 200:5-10.  By July 2014, Doak was no longer employed by Baylor.

In short, long before Baylor retained Pepper Hamilton to investigate the university's handling of specific assault cases, Baylor had *already* taken numerous and extensive steps to prevent sexual assault on campus and to encourage reporting of assaults. While Pepper Hamilton found serious administrative failings during three specific school years, many of those deficiencies had already been corrected *prior* to commencement of the investigation, including, for example, the hiring of a full-time Title IX coordinator in November 2014 and the adoption of a new Title IX policy in August 2015. *See* Dkt. 93-3 (Findings of Fact).  Plaintiffs also continue to misstate the scope of the investigatory findings, which are limited to three specific school years.  *See* Dkt. 93-3 at 1.

The conspiracy theory is further undone by Plaintiffs' counsel's contention that the regents orchestrated a conspiracy to scapegoat athletics in order to preserve tuition revenue.  McCaw and Plaintiffs' counsel never explain why the Board of Regents would target the financially successful and popular football program, particularly with the retired police chief as a convenient potential "scapegoat."  At his deposition, McCaw was asked:  "So why not, if you know, why doesn't the university just make Doak the scapegoat?  He's gone.  He's already left. Why you and Briles and the football department?"  McCaw's response?  "I don't know."  Dkt. 363 at 206:1-6.

Plaintiffs' counsel also provides a misleading description of McCaw's testimony regarding a conversation that McCaw had with the Bunting public relations firm in October 2016 (post-Pepper Hamilton and after this lawsuit was filed).  Plaintiffs' motion alleges that McCaw "was encouraged to

---

[14] Margolis found in 2014 that "while the University has taken significant steps to comply with the guidance from OCR," the University could do more and specifically would be better served with a more strategic, comprehensive and integrated approach to its Title IX policies and procedures. Dkt. 97, exh. F.  McCaw's testimony shows that Baylor took the recommendations to heart and immediately began to implement them.

join the conspiracy by lying" about when Baylor learned about a particular rape report. Dkt. 363 at 6. McCaw's testimony shows that Bunting did not ask McCaw to lie. Rather, according to McCaw's testimony, McCaw was asked to admit that he had learned of a rape allegation in 2013 and that he did not report it at the time. This is the opposite of a cover-up. *See* Dkt. 363, exh. B at 181:13-18 and 182-183. At his deposition, McCaw admitted that he did learn of a rape allegation in 2013, and he acknowledged that he did not personally report it when it came to his attention from a coach. Rather, McCaw alleged that he advised the coach to contact the Office of Judicial Affairs. Dkt. 363, exh. B at 181:22-25, 183:13-23.

In sum, this lawsuit is not about how the Pepper Hamilton investigation was conducted or whether Baylor should or should not have made decisions affecting Art Briles or Ian McCaw. The question is whether any of the ten Plaintiffs was subjected to a sexually harassing educational environment in violation of Title IX. What did *they* experience, which school officials did *they* interact with, and what policies and procedures were in use at the time of their alleged assaults? The Plaintiffs' discovery requests and motions have veered far off the path of relevance and proportionality. It is time for the sideshow and disparagement to stop and for the focus of the case to return to the Plaintiffs.

Defendant prays that the Court will deny Plaintiffs' motion. Defendant further prays for such other and further relief, at law or in equity, to which it may be entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By:     /s/ *Lisa A. Brown*
       Lisa A. Brown

State Bar of Texas No. 03151470
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas  77027-7554
(713) 554-6741 (telephone)
(713) 583-7934 (fax)
lbrown@thompsonhorton.com

Holly G. McIntush
State Bar of Texas No. 24065721
400 West 15th Street, Suite 1430
Austin, Texas  78701-1648
(512) 615-2351
(512) 682-8860 fax
hmcintush@thompsonhorton.com

**WEISBART SPRINGER HAYES LLP**

Julie A. Springer
State Bar of Texas No. 18966770
jspringer@wshllp.com
Sara E. Janes
State Bar of Texas No. 24056551
sjanes@wshllp.com
212 Lavaca Street, Suite 200
Austin, Texas 78701
(512) 652-5780
(512) 682-2074 fax

**Certificate of Service**

I certify that on July 5, 2018, a copy of this document was served on the following counsel of record using the Court's e-filing system.

| | |
|---|---|
| Mr. Chad W. Dunn | Mr. Jim Dunnam |
| chad@brazilanddunn.com | jimdunnam@dunnamlaw.com |
| Mr. K. Scott Brazil | DUNNAM & DUNNAM, L.L.P. |
| scott@brazilanddunn.com | 4125 West Waco Drive |
| BRAZIL & DUNN, L.L.P. | Waco, Texas 76710 |
| 4201 Cypress Creek Parkway, Suite 530 | P. O. Box 8418 |
| Houston, Texas 77068 | Waco, Texas 76714-8418 |

                                                      /s/ Lisa A. Brown
                                                      Lisa A. Brown

4825-4613-6428