AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Western District of Texas

| | | |
|---|---|---|
| JANE DOE 1 ET AL. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   6:16-CV-173-RP |
| | ) | |
| BAYLOR UNIVERSITY | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Kristi M. Kirk, LPC
145 Lakeland Park Circle, Mart Texas 76664

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See SCHEDULE A OF THE SUBPOENA TO KRISTI M. KIRK, LPC

| Place: Dunnam & Dunnam, LLP<br> 4125 West Waco Drive<br> Waco, Texas 76710 | Date and Time:<br><br> 09/10/2018 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   08/21/2018

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Chad Dunn |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Jane Doe 1, Jane Doe 2 Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, Jane Doe 8, Jane Doe 9, Jane Doe 10 , who issues or requests this subpoena, are:

Chad Dunn, 4201 Cypress Creek Parkway, Houston, Texas 77068, chad@brazilanddunn.com, 281-580-6310

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   6:16-CV-173-RP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

| Print | Save As... | Add Attachment | | Reset |

# UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| **JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, JANE DOE 6, JANE DOE 7, JANE DOE 8, JANE DOE 9, AND JANE DOE 10** | § § § § § | |
| *Plaintiffs*, | § § | **Cause No. 6:16-cv-173-RP** |
| **vs.** | § § § | **JURY TRIAL DEMANDED** |
| **BAYLOR UNIVERSITY** | § § § | |
| *Defendant*. | § § | |

## PLAINTIFFS' NOTICE OF ISSUANCE OF
## SUBPOENA *DUCES TECUM* TO
## KRISTI M. KIRK, LPC

TO:     Kristi M. Kirk, LPC, 301 Old Hewitt Road, Unit C, Waco, Texas 76712.

Please take notice that, pursuant to Rules 26, 34, and 45 of the Federal Rules of Civil Procedure and Local Rule 26.1, Plaintiffs, through their attorneys, will issue and serve subpoena *duces tecum* on the following non-party requesting production of documents, electronically stored information, and tangible things specified in the attachment annexed hereto as SCHEDULE A, in his/her possession, custody and control, with such materials to be produced to Dunnam & Dunnam, LLP, 4125 West Waco Drive, Waco, Texas 76710, on or before the 10th of September, 2018 at 12:00 p.m., CST.

Respectfully submitted,

 */s/* Chad W. Dunn

**BRAZIL & DUNN, L.L.P.**
Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
chad@brazilanddunn.com


**DUNNAM & DUNNAM, L.L.P.**
Jim Dunnam
State Bar No. 06258010
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Facsimile: (254) 753-7434
jimdunnam@dunnamlaw.com

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of August 2018, a true and correct copy of the foregoing

was served via electronic mail on the following counsel of record:

**<u>Via Electronic Mail</u>**
Lisa A. Brown
Texas Bar No. 03151470
**THOMPSON&HORTON LLP**
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027-7554
(713) 554-6741 (telephone)
(713) 583-7934 (facsimile)
lbrown@thompsonhorton.com

**<u>Via Electronic Mail</u>**
Holly G. McIntush
Texas Bar No. 24065721
**THOMPSON&HORTON LLP**
400 West 15th Street, Suite 1430
Austin, Texas 78701-1648
(512) 615-2351 (telephone)
(512) 682-8860 (facsimile)
hmcintush@thompsonhorton.com


 */s/*Chad W. Dunn
CHAD W. DUNN

## SCHEDULE A OF THE SUBPOENA TO KRISTI M. KIRK, LPC

## INSTRUCTIONS

If any responsive document was, but no longer is, in your possession, custody or control, state whether it:

a.   is missing or lost;
b.   has been destroyed;
c.   has been transferred, voluntarily or involuntarily, to others; or
d.   has been otherwise disposed of.

In each instance, explain the circumstances surrounding any authorization for such disposition(s) and the date of such disposition(s).

If you claim a privilege or exemption from discovery for any of the requests, please produce all requested documents which are not privileged. For any document withheld because of a claim of privilege, please state:

a.   the author of the document;
b.   to whom the document was sent, including copies;
c.   the date of the document;
d.   the subject matter of the-document; and
e.   the basis for the claim of privilege with respect to such document or portion thereof.

In the event that your answer to any discovery request is "not applicable" or any similar phrase or answer, please explain in detail why that discovery request is not applicable.

In the event that your answer to any discovery request is "don't know" or "unknown" or any similar phrase or answer, please explain in detail all efforts made by the named party or their representatives to obtain the response to that discovery request.

Attached to this subpoena is a copy of a Stipulated Order Regarding Discovery of Electronically Stored Information (ECF-176) entered in this lawsuit and you are requested to produce documents in accordance with the specifications set forth therein (see Section 5 "THIRD-PARTY ESI DISCOVERY"). Said Order is incorporated herein.

Also attached to this subpoena are protective orders entered by the Court governing confidential documents and communications (ECF-155; ECF-156).  Your responses should comply with these orders. The Court issues discovery orders ongoing.  It is recommended that you check with the Court's docket or contact counsel to determine any other orders that may affect your response.

Also attached to this subpoena is the Court's Order of May 6, 2018 (ECF-300), which includes the Court's orders as to "Personally Identifiable information," and you are directed to this order as to information that governed by the Family Educational Rights and Privacy Act (FERPA)(20 U.S.C. § 1232g).

The redacted documents should feature a designated pseudonym for each student (e.g., "Male Student 1," "Male Student 2," and "Male Student 3") so that it is clear to Plaintiffs when a particular student's name appears more than once.

## **DEFINITIONS**

1.     The use of your name and/or "you", and any full or abbreviated name or pronoun referring to you means yourself and where applicable, your agents, officers, directors, employees, partners, corporate parent, subsidiaries or affiliates, and all others acting in concert therewith.

2.     The use of a proper name and any full or abbreviated name or pronoun referring to that person means that individual and where applicable, its agents, officers, directors, employees, partners, corporate parent, subsidiaries or affiliates, and all others acting in concert therewith.

3.     The term "defendant", including the term "Baylor", and any full or abbreviated name or pronoun referring to them means and refers to Baylor University and, where applicable, its current and/or former agents, officers, directors, Regents, prior Regents, employees, advisors, consultants, partners, faculty, corporate parent, subsidiaries, affiliates, departments and all others acting in concert therewith.

4.     The term "Board of Regents" means and refers to the Baylor University Board of Regents (see https://www.baylor.edu/boardofregents/), and committees thereof, and all current and former members of the same since January 1, 2004.

5.     The term "Regents' Findings" means and refers to the "Baylor University Board of Regents Findings of Fact" announced on or about May 26, 2016 – See https://www.baylor.edu/thefacts/doc.php/266596.pdf

6.     The term "Pepper Hamilton" means and refers to Pepper Hamilton LLP, Attorneys at Law, and any of their current and/or former attorneys, employees, agents, or independent contractors, and those acting in concert with them.

7.     The term "Pepper Hamilton Investigation" means and refers to the investigation conducted by Pepper Hamilton beginning on or about August 2015 relating to Baylor.

8.     The term "Title IX" means and refers to Public Law 92-318, Statutes at large 86 STATE 235 and 20 USC § 1681.

9.     The term "Baylor Title IX" means and refers to the consideration, adoption, development, implementation, interpretation, training and enforcement of and relating to Title IX and Prohibited Conduct under Title IX Policy at Baylor, and allegations of violations of Title IX and Prohibited Conduct under Title IX Policy at Baylor.

10.    The term "Baylor Big XII Investigation" means and refers the investigation by the Big XII Conference of Baylor as it relates to Baylor Sexual Assault, Baylor Sexual Harassment, or Baylor Title IX.

11.    The term "Baylor NCAA Investigation" means and refers to the NCAA investigation of Baylor as it relates to Baylor Sexual Assault, Baylor Sexual Harassment, or Baylor Title IX.

12.    The term "Jeremy Counseller Investigation" means and refers to the internal investigation

conducted by Baylor Law Professor Jeremy Counseller in 2015 concerning Title IX and sexual assault related issues at Baylor.

13. The term "Margolis Healy Investigation" means and refers to all Margolis Healy assessments, studies and investigations conducted by Margolis Healy, including but not limited to those conducted in 2014 and 2016, concerning campus and student safety, Title IX and sexual assault related issues at Baylor.

14. The term "Jeremy Counseller" means and refers to Baylor Law Professor Jeremy Counseller and any attorneys, employees, agents, or independent contractors, and those acting in concert with them, working for him relating to the Jeremy Counseller Investigation.

15. The term "Ketchum" means and refers to Ketchum Inc., its current and/or former agents, officers, directors, employees, advisors, consultants, partners, corporate parent, subsidiaries or affiliates, and those acting in concert with them.

16. The term "Baylor-Ketchum" means and refers to Ketchum in so far as relating to its relationship with Baylor.

17. The term "Bunting" means and refers to G.F.Bunting+CO, its current and/or former agents, officers, directors, employees, advisors, consultants, partners, corporate parent, subsidiaries or affiliates, and those acting in concert with them.

18. The term "Baylor-Bunting" means and refers to Bunting in so far as relating to its relationship with Baylor.

19. The term "Margolis Healy" means and refers to Margolis Healy, its current and/or former agents, officers, directors, employees, advisors, consultants, partners, corporate parent, subsidiaries or affiliates, and those acting in concert with them.

20. The term "Baylor-Margolis Healy" means and refers to Margolis Healy in so far as relating to its relationship with Baylor.

21. The term "Clery Act" means and refers to the Crime Awareness and Campus Security Act of 1990 (Title II of Public Law 101-542) and its amendments in 1992, 1998, 2000 and 2008.

22. The term "Baylor Clery Act" means and refers to Baylor's adoption, implementation, interpretation, enforcement and allegations of violations of the Clery Act at Baylor.

23. The term "Survivor Support Group" means and refers to any Baylor student survivor support and/or advocacy group existing to support survivors and/or to raise awareness related to any conduct prohibited under Title IX as defined herein.  This term includes Survivor Support Groups that were started by Baylor University, sanctioned by Baylor University and/or groups started by Baylor students.  This term includes Survivor Support Groups existing both off and on campus, including Facebook and online groups, and includes groups with student and non-student members.

24.     The term "Baylor Survivor" means and refers to any current and/or former student, employee and/or faculty of Baylor University that was or claims to be the victim of any conduct prohibited under Title IX as defined herein since January 1, 2004.

25.     Communicate or communication—means all documents relating or referring to any contact, oral or written, formal or informal, at any time or place, electronic or otherwise, under any circumstances whatsoever, whereby any information of any nature was transmitted or received.

26.     Date – means the exact day, month and year, if known, or if not known the best approximation thereof which shall be explicitly indicated as an approximate date.

27.     The connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a request all responses or documents that might otherwise be construed as outside its scope.

28.     Document and documents - shall be used in their broadest sense and shall include all written, printed, typed, recorded and graphic matter, as well as all electronically stored information, of every kind and description, both originals and copies, and all attachments and appendices thereto. Without limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, communications, correspondence, electronic mail, letters, telegrams, telexes, messages, memoranda, records, reports, books, summaries or other records of telephone conversations or interviews, summaries or other records of personal conversations, minutes or summaries or other records of meetings and conferences, summaries or other records of negotiations, other summaries, diaries, diary entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, financial statements, work sheets, work papers, drafts, graphs, maps, charts, tables, accounts, analytical records, consultants' reports, appraisals, bulletins, brochures, pamphlets, circulars, trade letters, press releases, notes, notices, marginal notations, notebooks, telephone bills or records, bills, statements, records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, canceled checks, letters of credit, envelopes or folders or similar containers, vouchers, analyses, studies, surveys, transcripts of hearings, transcripts of testimony, expense reports, microfilm, microfiche, x-rays, operative reports, history and physical reports, input and output charts, articles, speeches, tape or disc recordings, sound recordings, video recordings, film, tape, photographs, images, punch cards, programs, data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer stored, or electronically stored matter or information, however and by whomever produced, prepared, reproduced, disseminated, or made. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft of a non-identical copy is a separate document within the meaning of this term. When a document may be in the form of electronic communication, this request is not limited to only official Baylor email accounts, but extends to personal email accounts wherein the subject matter falls within the area of inquiry. Document includes text messages and text messages include such messages from any device regardless of whether such device was provided by Baylor. The term "document" includes electronically stored information ("ESI").

29.  The terms "document" and "documents" include all matter within the foregoing description that is within your possession, custody or control, or within the possession, custody or control of any agent or attorney for you. Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession or custody of the document, or the right to secure the document or a copy thereof from any person or public or private entity having physical possession thereof.

30.  Electronically Stored Information ("ESI") shall mean all those documents, materials or tangible things described in the Federal Rules of Civil Procedure and the Court's orders concerning ESI. The Court has and continues to issue orders concerning ESI. You are advised to review the Court's orders concerning ESI (and any other issue). Counsel who issued this subpoena are available to provide you any such orders should you require. You are required to collect ESI in compliance with the Rules and the orders in effect governing this case.

31.  The term "identify" or "identification," unless otherwise specified, means: when used in reference to a natural person: the person's full name, present or last known business address, present or last known home address, telephone number, and any other information which may be helpful in locating or determining the whereabouts of such person; when used in reference to any form of entity: the full legal name and form of entity, the law under which it exists, its present or last known address and telephone number, and the name and address of its registered agent; when used in reference to a document: its date, its author, the type of document, the nature and substance of the document, the person to whom the document was sent, its present location, and the name, address, and telephone number of its present custodian; when used in reference to a communication: its date, identification of the persons transmitting and receiving information, the nature and substance of the communication, and any documents relating to or evidencing the communication.

32.  The terms "relating to", "concerning" and "regarding" are used in their broadest sense, and include anything that, directly or indirectly, generally or specifically, concerns, constitutes, refers to, relates to, regards, pertains to, describes, deals with, reflects, analyzes, mentions, depicts, characterizes, reports, recites, discusses, evidences, constitutes, or is in any way relevant to the subject.

33.  When the term "between" is used in connection with a document, record or communication, this includes anything to which you were a party directly or indirectly, and also anything between others to which you obtained or received a copy.

34.  Sexual Assault –means both of the following:

   a.  Non-Consensual Sexual Penetration: Any act vaginal or anal penetration, however slight, by a person's penis, finger, other body part, or an object, or oral-genital contact, without consent;

   b.  Non-Consensual Sexual Contact: Any intentional touching of a person's breasts, buttocks, groin, genitals, or other intimate parts without consent. Touching may be over or under clothing and may include the respondent touching the complainant, the respondent making the complainant touch the respondent or another person, or the respondent making the complainant touch the complainant's own body.

35.    Sexual Harassment: Sexual harassment is any unwelcome sexual advance, requests for sexual favor, and/or other verbal or physical conduct of a sexual nature when one of the conditions outlined in (1), (2), or (3), below, is present. Gender-Based Harassment: Gender-based harassment includes harassment based on gender, sexual orientation, gender identity, or gender expression, which may include acts of aggression, intimidation, or hostility, whether verbal or non-verbal, graphic, physical, or otherwise, even if the acts do not involve contact of a sexual nature, when one of the conditions outlined in (1), (2), or (3), below, is present. (1) Submission to, or rejection of, such conduct is made implicitly or explicitly a term or condition of a person's instruction, academic standing, employment, or participation in any University program, activity, or benefit. (2) Submission to, or rejection of, such conduct by an individual is used as a basis for evaluation in making academic or personnel decisions. (3) Such conduct creates a hostile environment. A hostile environment exists when the conduct is sufficiently severe, persistent, or pervasive that it unreasonably interferes with, limits, or deprives an individual from participating in or benefiting from the University's educational, employment, and/or campus-residential experience when viewed through both a subjective and objective standard. A hostile environment can be created by persistent or pervasive conduct or by a single or isolated incident, if sufficiently severe. The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the conduct is physical. A single incident of sexual assault, for example, may be sufficiently severe to constitute a hostile environment. In contrast, the perceived offensiveness of a single verbal or written expression, standing alone, is typically not sufficient to constitute a hostile environment. Sexual Harassment: • May be blatant and intentional and involve an overt action, a threat or reprisal, or may be subtle and indirect, with a coercive aspect that is unstated. • Does NOT have to include intent to harm, be directed at a specific target, or involve repeated incidents. • May be committed by anyone, regardless of gender, age, position, or authority. While there is often a power differential between two persons, perhaps due to differences in age, social, educational, or employment relationships, harassment can occur in any context. • May be committed by a stranger, an acquaintance, or someone with whom the complainant has an intimate or sexual relationship. • May be committed by or against an individual or may be a result of the actions of an organization or group. • May occur by or against an individual of any sex, gender identity, gender expression, or sexual orientation. • May occur in the classroom, in the workplace, in residential settings, or in any other context. • May be a one-time event or may be part of a pattern of behavior. • May be committed in the presence of others or when the parties are alone. • May affect the complainant and/or third parties who witness or observe harassment.

36.    "Baylor Sexual Assault" means and refers allegations of Sexual Assault of Baylor students (current and former), faculty (current and former), and employees (current and former).

37.    "Baylor Sexual Harassment" means and refers to Sexual Harassment of Baylor students (current and former), faculty (current and former), and employees (current and former).

38.    "Conduct code violation" means any act that violates Baylor's Student Conduct Code or would constitute "misconduct" under Baylor's Student Conduct Code.

    a.  "Misconduct" refers to personal behavior on or off campus that:
       i.  Interferes with Baylor's pursuit of its educational and Christian objectives,
      ii.  Fails to exhibit a regard for the rights of others,
     iii.  Shows disrespect for the safety of persons and property, and/or
     iv.  Violates or attempts to violate, university rules, regulations, and policies or violates, or attempts to violate, local, state, federal or international law.

39.    Prohibited Conduct under Title IX Policy—Sex discrimination, sexual violence, sexual harassment, dating relationship violence, domestic violence, stalking, sexual exploitation, sexual harassment, sexually inappropriate conduct, retaliation, and sexual assault as defined herein.

40.    Complainant - refers to the individual(s) who has been the subject of prohibited conduct, regardless of whether that individual makes a complaint or seeks disciplinary action.

41.    Time Period: Unless otherwise noted, requests are for materials from May 1, 2004 to the present date.

42.    Record of Title IX investigations means and refers to investigations, including those conducted by internal and external investigators, and hearings including but not limited to Administrative Hearings, Student Conduct Board Hearings, Adjudicator Hearings, Appeal Hearings, Provost Hearings, Human Resources Hearings and Presidential Hearings, and tangible evidence presented or received during the investigations or hearings and the summary of the investigation and/or hearing constitutes the record.

43.    The use of the terms Cenikor means the Cenikor Foundation and where applicable, its agents, officers, directors, employees, partners, corporate parent, subsidiaries or affiliates, and all others acting in concert therewith.

44.    You are directed to exclude from this request any individual counseling records of any person, regardless of being otherwise responsive to a request.

## ITEMS TO BE PRODUCED

1.      Produce all communications and documents pertaining to Baylor Sexual Assault, including but not limited to the following:
   - communications and documents exchanged by you and anyone else pertaining to Baylor Sexual Assault; and
   - all tapes, recordings and notes of interviews, both before (including preparation) and after, relating to interviews, questions and requests for information by anyone or in connection with Baylor Sexual Assault.

2.      Produce all communications and documents pertaining to Baylor Sexual Harassment, including but not limited to the following:
   - communications and documents exchanged by you and anyone else pertaining to Baylor Sexual Harassment; and
   - all tapes, recordings and notes of interviews, both before (including preparation) and after, relating to interviews, questions and requests for information by anyone or in connection with Baylor Sexual Harassment.

3.      Produce all communications and documents pertaining to Title IX and Baylor Title IX, including but not limited to the following:
   - communications and documents exchanged by you and Baylor;
   - communications and documents between you and anyone else pertaining to Title IX and Baylor Title IX; and
   - all tapes, recordings and notes of interviews, both before (including preparation) and after, relating to interviews, questions and requests for information by anyone or in connection with Title IX and Baylor Title IX.

4.      Produce all communications and documents pertaining to the Pepper Hamilton Investigation, including but not limited to the following:
   - communications and documents exchanged by you and Pepper Hamilton;
   - communications and documents between you and anyone else pertaining to the Pepper Hamilton Investigation; and
   - all tapes, recordings and notes of interviews, both before (including preparation) and after, relating to interviews, questions and requests for information by Pepper Hamilton or in connection with the Pepper Hamilton Investigation.

5.      Produce all communications and documents pertaining to the Jeremy Counseller Investigation, including but not limited to the following:
   - communications and documents exchanged by you and Jeremy Counsellor; communications and documents between you and anyone else pertaining to the Jeremy Counseller Investigation; and
   - all tapes, recordings and notes of interviews, both before (including preparation) and after, relating to interviews, questions and requests for information by Jeremy Counseller or in connection with the Jeremy Counseller Investigation.

6.      Produce all communications and documents pertaining to the Margolis Healy Investigation, including but not limited to the following:

- communications and documents exchanged by you and Margolis Healy;
- communications and documents between you and anyone else pertaining to the Margolis Healy Investigation; and
- all tapes, recordings and notes of interviews, both before (including preparation) and after, relating to interviews, questions and requests for information by Margolis Healy or in connection with the Margolis Healy Investigation.

7. Produce all communications and documents pertaining to the Baylor Big XII Investigation, including but not limited to the following:
   - communications and documents exchanged by you and anyone else pertaining to the Baylor Big XII Investigation; and
   - all tapes, recordings and notes of interviews, both before (including preparation) and after, relating to interviews, questions and requests for information by anyone or in connection with the Baylor Big XII Investigation.

8. Produce all communications and documents pertaining to the Baylor NCAA Investigation, including but not limited to the following:
   - communications and documents exchanged by you and anyone else pertaining to the Baylor NCAA Investigation; and
   - all tapes, recordings and notes of interviews, both before (including preparation) and after, relating to interviews, questions and requests for information by anyone or in connection with the Baylor NCAA Investigation.

9. Produce all communications and documents pertaining to the Baylor Clery Act, including but not limited to the following:
   - communications and documents exchanged by you and anyone else pertaining to the Baylor Clery Act; and
   - all tapes, recordings and notes of interviews, both before (including preparation) and after, relating to interviews, questions and requests for information by anyone or in connection with the Baylor Clery Act.

10. Produce all communications and documents pertaining to Baylor's response to Baylor Sexual Assault, Baylor Sexual Harassment, Baylor Title IX, the Jeremy Counseller Investigation, the Pepper Hamilton Investigation, the Baylor Big XII Investigation, the Baylor NCAA Investigation, Baylor Clery Act and the Regent's Findings, including but not limited to Ketchum's involvement in that response. For purposes of this request, "response" includes action taken and also not taken but contemplated.

11. Produce all communications and documents pertaining to Baylor's response to Baylor Sexual Assault, Baylor Sexual Harassment, Baylor Title IX, the Jeremy Counseller Investigation, the Pepper Hamilton Investigation, the Baylor Big XII Investigation, the Baylor NCAA Investigation, Baylor Clery Act and the Regent's Findings, including but not limited to Bunting's involvement in that response. For purposes of this request, "response" includes action taken and also not taken but contemplated.

12. Produce all communications and documents pertaining to Baylor's response to Baylor Sexual Assault, Baylor Sexual Harassment, Baylor Title IX, the Jeremy Counseller Investigation, the Pepper Hamilton Investigation, the Baylor Big XII Investigation, the Baylor NCAA

Investigation, Baylor Clery Act and the Regent's Findings, including but not limited to Margolis Healy's involvement in that response.  For purposes of this request, "response" includes action taken and also not taken but contemplated.

13.  Produce all communications and documents pertaining the relationship between Ketchum and Baylor University as it relates to Baylor Sexual Assault, Baylor Sexual Harassment, Baylor Title IX, the Jeremy Counseller Investigation, the Pepper Hamilton Investigation, the Baylor Big XII Investigation, the Baylor NCAA Investigation, Baylor Clery Act and the Regent's Findings.

14.  Produce all communications and documents pertaining to the cessation of the Baylor-Ketchum relationship.

15.  Produce all communications and documents pertaining the relationship between Bunting and Baylor as it relates to Baylor Sexual Assault, Baylor Sexual Harassment, Baylor Title IX, the Jeremy Counseller Investigation, the Pepper Hamilton Investigation, the Baylor Big XII Investigation, the Baylor NCAA Investigation, Baylor Clery Act and the Regent's Findings.

16.  Produce all communications and documents pertaining to the establishment and cessation of the Baylor-Bunting relationship.

17.  Produce all communications and documents pertaining the relationship between Margolis Healy and Baylor as it relates to Baylor Sexual Assault, Baylor Sexual Harassment, Baylor Title IX, the Jeremy Counseller Investigation, the Pepper Hamilton Investigation, the Baylor Big XII Investigation, the Baylor NCAA Investigation, Baylor Clery Act and the Regent's Findings.

18.  Produce all communications and documents pertaining to the establishment and cessation of the Baylor-Margolis Healy relationship.

19.  Produce all communications and documents pertaining to a claim of gender-based discrimination alleged by a student (current or former), faculty (current or former), or staff (current or former) of Baylor University.

20.  Produce all communications and documents used in the "document-based interviews" referenced in the Regent's Findings.

21.  If your position related to Baylor has changed since June 2015, produce all communications and documents concerning the alteration of that relationship, including separation from Baylor and any settlement, termination, resignation, confidentiality and non-disclosure agreements.

22.  If anyone other than you are paying any portion of your expenses or are providing you compensation in connection with your compliance with this subpoena, including reimbursement, produce all communications and documents related to all fee agreements, bills, statements, cleared checks of financial payments and reimbursements concerning the attorneys representing you in connection with this case.

23.    Produce all communications and documents related to any Baylor Survivor Support Group.

24.    Produce all communications and documents with and related to members of Baylor Survivor Support Groups.

25.    Produce all communications and documents with and from Baylor victims of Title IX prohibited conduct as defined herein.

26.    Produce all communications and documents related to the "detailed and comprehensive presentation" made by Pepper Hamilton to the Board of Regents as referenced in the Regents' Findings.

27.    Produce all communications and documents related to the Baylor Special Committee of the Board of Regents referenced in the Regents' Findings, including but not limited to the "detailed and specific information and regular updates" provided by Pepper Hamilton.

28.    Produce all communication and documents related to and forming the basis of the conclusion in the Regents' Findings that "Baylor's efforts to implement Title IX were slow, ad hoc, and hindered by lack of institutional support and engagement by senior leadership."

29.    Produce all communications and documents related to and forming the basis of the conclusion in the Regents' Findings that Baylor acted in a manner that "constituted retaliation against a complainant for reporting sexual assault."

30.    Produce all communications and documents related to and forming the basis of the conclusion in the Regents' Findings that Baylor officials took actions "that directly discouraged complainants from reporting or participating in student conduct processes, or that contributed to or accommodated a hostile environment."

31.    Produce all communications and documents related to and forming the basis of the conclusion in the Regents' Findings that "In some instances, administrative responses and campus processes caused significant harm to complainants."

32.    Produce all communications and documents related to and forming the basis of the conclusion in the Regents' Findings that "Actions by a University administrator within BUPD and an administrator within an academic program contributed to, and in some instances, accommodated or created a hostile environment, rather than taking action to eliminate a hostile environment."

33.    Produce all communications and documents related to and forming the basis of the conclusion in the Regents' Findings that "Once aware of a potential pattern of sexual violence, the University failed to take prompt and effective action to protect campus safety and protect future victims from harm."

34.    Produce all communications and documents related to and forming the basis of the conclusion in the Regents' Findings that "Baylor failed to consider patterns, trends or climate-related concerns that would enable the University to take prompt and responsive action to individual

and community concerns."

35.     Produce all communications and documents related to and forming the basis of the conclusion in the Regents' Findings that "Baylor failed to identify, eliminate, prevent or address a potential hostile environment in individual cases, and took insufficient steps with respect to both individual complainants and broader community remedies."

36.     Produce all communications and documents related to and forming the basis of the conclusion in the Regents' Findings that "Prior to the 2014-2015 academic year, institutional failures at every level of Baylor's administration directly impacted the response to individual cases and the Baylor community as a whole."

37.     Produce all communication and documents related to and forming the basis of the conclusion in the Regents' Findings that "Baylor University lacked a proactive compliance function that would have identified the nature of the risks attendant to sexual and gender-based harassment and violence and interpersonal violence, the likelihood of occurrence, and the adequacy of existing controls to ensure an informed and effective institutional response."

38.     Produce all communication and documents related to and forming the basis of the conclusion in the Regents' Findings that "In pursuing some investigations, some Baylor administrators engaged in conduct that could be perceived as victim-blaming, focusing on the complainant's choices and actions, rather than robustly investigating the allegations, including the actions of the respondent."

39.     Produce all communications and documents related to and forming the basis of the conclusion in the Regents' Findings that "In many instances, student conduct investigators conducted cursory investigations into allegations of sexual assault and failed to identify and interview readily apparent witnesses or gather relevant evidence."

40.     Produce all communications and documents related to and forming the basis of the conclusion in the Regents' Findings that "The University's approach to issues related to alcohol or other drug use by students created barriers to reporting sexual assault or sexual violence."

41.     Produce all communications and documents related to and forming the basis of the conclusion in the Regents' Findings that "Once aware of a potential pattern of sexual violence, the University failed to take prompt and effective action to protect campus safety and protect future victims from harm."

42.     Produce all communications and documents related to and forming the basis of the conclusion in the Regents' Findings that "In some instances, administrative responses and campus processes caused significant harm to complainants."

43.     Produce all of your ESI that returned in searches of the terms included in the Court's attached order.

44.     Produce all communications and documents between you and Baylor, between you and Baylor's attorneys, between your attorneys and Baylor's attorneys since your separation from Baylor.

45. Produce all communications and documents pertaining to Baylor's or your documents retention policy.

46. Produce all communications and documents that refer to the retention or destruction or erasing or removal of communications, documents and/or tangible items that pertain to Baylor, regardless of whether they were actually destroyed or erased or removed.

47. Produce all communications and documents which form the basis, in whole or in part, of each specific finding set forth in the Regents' Findings.

48. Produce all communications and documents concerning or mentioning any or all of the Plaintiffs in this lawsuit.

49. Produce all communications and documents concerning or mentioning any another lawsuit or claimant which alleged that the school was or is violating Title IX.

50. Produce all communications and documents in your possession concerning or mentioning any or all of the alleged assailants in this lawsuit.

51. Produce all communications and related to records of Title IX Investigations as defined herein in your possession.

52. Produce all communications and documents that reflect an agreement by you to hold confidential any information or materials relating to Baylor University.

53. Produce all communications and documents to which David Garland was a party during the time he was Interim President of Baylor in 2016 and 2017 relating to Sexual Assault or Misconduct or to the retention or destruction or erasing or removal of communications, documents and/or tangible items.

54. Produce all communications and documents including tapes, recordings and/or notes concerning same of communications between you and an alleged victim of Sexual Assault.

55. Produce all communications and documents relating to Title IX, Sexual Assault and Sexual Harassment training considered, adopted, developed, offered, implemented, and received in connection with Baylor.

56. Produce all communications and documents, including underlying data, for any and all surveys and studies relating to Baylor Title IX, Baylor Sexual Assault, and Baylor Sexual Harassment.

57. Produce all communications and documents relating to any disciplinary action taken or considered against any alleged victim of Baylor Sexual Assault or Baylor Sexual Harassment within 6 month of either the reporting of same or the date of the alleged underlying alleged assault or harassment.

58.    Produce all communications and documents relating to the need for and providing of counseling services to any student of Baylor University related to Title IX, Baylor Title IX, Sexual Assault, Baylor Sexual Assault, Sexual Harassment and Baylor Sexual Harassment.

59.    Produce all communications, documents, contracts and agreements between Cenikor, Baylor, the McLennan County District Attorneys Office, the Waco Police Department, Kristi Kirk, Patrice Wills and any other provider of counseling services or anticipated counseling services relating to Title IX, Baylor Title IX, Sexual Assault, Baylor Sexual Assault, Sexual Harassment and Baylor Sexual Harassment.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

JANE DOE 1, et al.,                    §
                                       §
            Plaintiffs,                §
                                       §
v.                                     §          6:16-CV-173-RP
                                       §
BAYLOR UNIVERSITY, et al.,             §
                                       §
            Defendants.                §

## ORDER

Before the Court is the parties' Joint Motion Concerning "Personally Identifying Information," which involves a dispute between Plaintiffs and Defendant regarding what information may be redacted under the Family Educational Rights and Privacy Act as "personally identifying information." (Dkt. 289).

## I. OVERVIEW

Plaintiffs in this suit allege that they were sexually assaulted by fellow students at Baylor University ("Baylor"). (Third Am. Compl., Dkt. 56, ¶¶ 54–55, 75, 107, 124–25, 152–53, 178–79, 192–93, 211–12, 235–36). They seek, through discovery, certain materials protected under the Family Educational Rights and Privacy Act ("FERPA"). FERPA prohibits the release of educational records containing "personally identifiable information" absent written consent from the student or his parents, a judicial order directing such disclosure, or a lawfully issued subpoena. 20 U.S.C. § 1232(g). When disclosure is pursuant to a judicial order or subpoena, parents and students must be notified in advance of the disclosure. *Id.* If Baylor were to redact "personally identifiable information" from the educational records Plaintiffs seek before disclosing those records, FERPA

1

would no longer require notice to affected students.[1] The parties thus seek guidance from the Court on what information is deemed "personally identifiable" under FERPA.

## II. DISCUSSION

The Code of Federal Regulations states that "personally identifiable information" includes, but is not limited to:

(a) The student's name;
(b) The name of the student's parent or other family members;
(c) The address of the student or student's family;
(d) A personal identifier, such as the student's social security number, student number, or biometric record;
(e) Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or
(f) Information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates.

34 C.F.R. § 99.3. Plaintiffs therefore contend that only the following information can and should be redacted as "personally identifiable information": name, nickname, date of birth, passport, driver's license or other identification number, local and home address, and phone number(s). (Mot., Dkt. 289, at 2). Baylor, in contrast, maintains that because personally identifiable information includes "[o]ther information that, alone or in combination, is linked or linkable to a specific student," the university is unable to prevent disclosure of such information merely by redacting the items on Plaintiffs' "checklist." (*Id.* at 3).

Plaintiffs offer no argument regarding the import of the regulatory provisions protecting "information that, alone or in combination, is linked or linkable to a specific student." (*See* Mot., Dkt. 289, at 1–2). They focus instead on Baylor's allegedly overzealous redacting, arguing that the university is motivated not by a desire to protect its students' privacy but instead by the desire to "delay meaningful discovery in this case." (*Id.* at 2).

---

[1] The records would still be protected by the confidentiality and protective orders previously entered in this case and would be marked attorneys' eyes only.

The Court agrees that the scope of Baylor's proposed redactions exceeds that required by FERPA. (*See* Proposed Redactions, Dkt. 290-1, at 2 ("The fact that a student goes by [his or her] last name, when combined with other details in the statement, allows members in the school community to identify [him or her]"); ("Showing early graduation date substantially narrows pool of potential [individuals] and allows [him or her] to be identified"); ("Shared major, combined with dates and other details in statement[,] identifies both [individuals]")). It also agrees, however, with Baylor's contention that "personally identifiable information," as defined by FERPA, clearly includes more information than a student's name; nickname; date of birth; passport, driver's license or other identification number; local and home address; and phone number(s). The parties' motion is therefore **GRANTED IN PART** and **DENIED IN PART**, as described in detail below.

### III. GUIDANCE

Notwithstanding any of the Court's prior orders, the following shall apply to this case:

1. Student records produced by Baylor are subject to the provisions of FERPA only insofar as they contain "personally identifiable information."

2. Redaction of "personally identifiable information" from education records may eliminate the need for Baylor to issue FERPA notices as described in the previously entered protective order.

3. "Personally identifiable information," for purposes of FERPA, includes students' names, nicknames, and social media names; dates of birth; passport, driver's license or other identification number; residential address; email address; phone numbers; and, if applicable, judicial or criminal identification numbers. "Personally identifiable information" is also contained in media that visually depicts students' faces, including photographs and videos. The term encompasses other details in education records that, individually or in combination, would allow identification of the student.[2]

---

[2] Baylor suggests that "personally identifiable information" includes details that would make an identity "easily traceable." That is not the standard in the Code of Federal Regulations, and the Court declines to adopt it here. Baylor may only redact details that "would allow a reasonable person in the school community" to "to identify the student with

These include names of roommates and romantic partners; organizations, sports, and activities in which the student participated; the names of graduate schools or internships sought; the names of courses, professors, or advisors; the student's employer and/or work locations; student hometowns, home states, or home countries; parents' professions; and the months and day of the student's birth (whether or not accompanied by the student's birth year).

4. In some instances, redaction will be insufficient to protect the identity of non-party students. In those instances, Baylor shall continue to provide a FERPA notice in accordance with the procedures outlined in the previously entered confidentiality and protective order.

5. Any tangible thing that can be excised or redacted of personally identifiable information, including the information listed in paragraph 3 of this section, shall be produced in response to a request without notice to the affected student. Such records shall be marked as attorneys' eyes only.

6. Any tangible thing that cannot be de-identified through the excision or redaction of personally identifiable information shall be produced only after notice has been provided to the affected student(s) in accordance with the previously entered confidentiality and protective order.

7. After receiving redacted records subject to this order, any party may file a motion seeking review of the scope of redactions. The Court will determine whether to remove certain redactions, whether to require the issuance of a FERPA letter to the affected non-party student, or whether to take other action necessary to ensure compliance with FERPA.

**SIGNED** on May 6, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

reasonable certainty." *See* 34 C.F.R. § 99.3. The university may not, for example, redact graduation dates and/or majors because they "significantly narrow[]" the pool of potential identities. (*See* Proposed Redactions, Dkt. 290-1, at 2).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

JANE DOE 1, JANE DOE 2,                    §
JANE DOE 3, JANE DOE 4,                    §
JANE DOE 5, JANE DOE 6,                    §
JANE DOE 7, JANE DOE 8,                    §
JANE DOE 9, AND JANE DOE 10                §     Cause No. 6:16-cv-173-RP-JCM
                                           §     JURY TRIAL DEMANDED
            *Plaintiffs,*                   §
                                           §
vs.                                        §
                                           §
BAYLOR UNIVERSITY                          §
                                           §
            *Defendant.*                    §

## STIPULATED ORDER REGARDING
## DISCOVERY OF ELECTRONICALLY STORED INFORMATION

This Order governs discovery of electronically stored information ("ESI") in this case.

The parties specifically agree that:

**1.      SCOPE AND PHASING OF DISCOVERY**

a.      The parties agree that discovery of ESI will be reasonable and proportional to what is at issue in the case.

b.      Only ESI created or received between January 1, 2003 and June 15, 2016 will be preserved and produced. The foregoing date limitations, however, do not prevent the parties from contending that relevant evidence arose or exists outside the date limitations.

c.      Attached as Exhibit A is a list of the custodians (or general job titles or descriptions of custodians) for whom ESI should be preserved and produced. The parties will add or remove custodians from this list as reasonably necessary as the litigation progresses.

1

e.      The parties agree to phase the production of ESI in the order custodians are listed in Exhibit A. ESI and tangible items provided to Pepper Hamilton will be marked with a Bates range in this format: PH#######.  Other ESI, not provided to Pepper Hamilton, will be collected as part of the search described herein and will be separately bates labeled, as described herein.

Following the initial production, the parties will continue to meet and confer to prioritize the order and necessity of subsequent productions.

## 2.      SEARCH

The parties agree to meet and confer about the methods they will use to (1) search ESI to identify information that is subject to production, and (2) filter out ESI that is not subject to discovery. The parties will cooperate in the development of appropriate search methodology and criteria, including the potential use of computer-assisted search methodologies and other analytics-based search and filtering tools.  The parties will discuss whether the use of analytics could be appropriate in this case.  The parties have agreed that the search queries listed in the attached Exhibit B will be applied to each custodian's non-Pepper Hamilton ESI along with any other search queries ordered by the Court or later agreed to by the parties.

## 3.      PRODUCTION FORMATS

a.      The parties agree to produce documents in native or tagged image file format ("TIFF"), as detailed below. If particular documents warrant a different format, the parties will cooperate regarding the mutually acceptable production of such documents in an alternative format. A party that receives a document produced in TIFF or other format may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format.

2

b.      Documents available only in paper or hardcopy format shall be scanned into electronic format and produced via a secure file transfer protocol ("FTP") site or other secure medium, as provided herein.  Black and white paper documents shall be scanned as TIFF files. Documents that contain color (*i.e.*, non-black-and-white) photographs, or graphic images shall be scanned in color as 300 dpi single-page JPEG files with the quality setting at high.

c.      Unless otherwise required herein, all documents shall be produced as 300 dpi single-page TIFF files, using CCITT Group IV compression. Each page shall be branded with a unique Bates number, which shall not obliterate, conceal, interfere with, or alter in any information from the source document. The Bates numbering convention shall be in the format "PY_########" or "PH_########" where "PY" represents an appropriate prefix for each party, "PH" represents materials provided to Pepper Hamilton and "########" represents the eight-digit sequential number of the document being produced.  The images shall be accompanied by: (1) an Opticon or IPRO cross-reference file that associates each Bates number with its corresponding single-page image file; and (2) a "text load file" containing comma delimited, double-quotation qualified ASCII text that will populate fields in a searchable flat database environment, containing one line for each document and fields for first and last Bates number. The text generated by Optical Character Recognition (OCR) shall be saved in a text file named for the first Bates number of the document and saved in the same directory as the images. (*e.g.*, PY_00000001.tif and PY_00000001.txt).

d.      Word, WordPerfect, and PDF documents shall be converted to images and produced consistent with these specifications. The text load file accompanying the images shall contain the filename of the document as a metadata field.  The extracted text from each document will be used

in place of OCR text, unless the document contains redactions, in which case OCR text may be provided.

e.      Parent-child relationships (the association between emails and attachments) will be preserved, and attachments to e-mails will not be eliminated from the parent e-mail. Email attachments will be consecutively produced with the parent email, and families will be associated using attachment range metadata. Email and attachments should be converted to single-page images and produced consistent with these specification, except that the text load file shall contain, in addition to first and last Bates numbers and delimited fields that capture the data in each of the following metadata fields: To, From, CC, BCC, Subject, date sent, time sent, and, for emails captured from Microsoft Outlook or Lotus Notes, Conversation Index. The text file accompanying the TIFF images shall contain the extracted text from the email. If any part of the email is redacted, OCR text may be provided in place of extracted text. Attachments shall be processed as though they were separate documents, and the text load file shall include a field in which the party shall identify, for each email, the BBates range of any attachment.

f.      Excel files and other spreadsheets and digital photographs shall be produced in native file format in a separate folder on the production media, and the text load file shall contain a field that identifies the file path of the native file corresponding to each document.  Spreadsheets should not be imaged, but a placeholder image with Bates number must be included to represent the spreadsheet.

g.      Embedded files shall be treated as though they were separate files, except that the text load file shall include a field in which the party shall identify, for each document containing an

embedded file, the Bates range of any such embedded file. This Bates range may be identified in the same field as the Bates range of an email attachment.

h.      A party is only required to produce a single copy of a responsive document. Parties may globally de-duplicate stand-alone documents or entire document families using hash value matching (such as MD5 or SHA-1 values). ESI that is not an exact duplicate may not be removed. Paper documents shall not be eliminated as duplicates of responsive ESI. To the extent that the parties de-duplicate stand-alone electronic documents against an e-mail attachment, the attachment to the e-mail must be the document that is produced.

i.      Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced even if part of families

j.      If a party converts paper documents into electronic format, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. For each document the title or subject, and date should be captured as metadata.  If the document was originally an email, and this now only exists as paper form, the to / from / cc / date and subject should be captured as metadata too.

k.      The parties will make reasonable efforts to identify as exception files those documents that cannot be produced or imaged due to technical difficulties (such as corruption, password

protection, digital rights management, or proprietary software associated to the file). Identified exception files will be listed on a log that includes each file's name, custodian, and reason for the exception.

l.      The parties will make reasonable efforts to ensure that documents produced in native form are decrypted (or that passwords are supplied).

m.      Any media used for production of documents will be encrypted by the producing party. The producing party will contemporaneously transmit the encryption key or password to the receiving party under separate cover.

**4.      DOCUMENTS PROTECTED FROM DISCOVERY**

a.      Non-Waiver of Protection.  Pursuant to Fed. R. Evid. 502(d), any party's production of documents covered by an applicable privilege or protection shall not constitute a waiver of the privilege or protection with respect to those documents or the subject matter of those documents in this case or any other federal or state proceeding. Nothing in this paragraph shall require a party to produce documents that are protected from disclosure. This paragraph shall be interpreted to provide the greatest protection allowed by Federal Rule of Evidence 502, or otherwise permitted by law. Moreover, nothing in this agreement shall prevent the parties from challenging admissibility of the produced documents at trial.

b.      Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.  Nothing herein is intended to serve as a waiver by any party to challenge any materials redacted or withheld as a result of the review allowed in the prior sentence.

c.    Privilege Logs.  A party that withholds ESI or documents on the grounds of attorney-client privilege, work product protection, or any other privilege shall provide the following information:

(1) a listing of such ESI and documents in electronic spreadsheet format providing as much objective metadata as is reasonably available (e.g., document control number, date, author(s), recipient(s), file type, etc.; "objective metadata" does not include substantive content from, or a subjective description of the document or ESI being withheld) and an indication of the privilege and/or protection being asserted; and

(2) a description by category of ESI and documents that the withholding party asserts are privileged or protected.

d.    Responsive communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

e.    "Clawback" of Documents.  Any Party that inadvertently discloses or produces a document or ESI that it considers privileged or otherwise protected from discovery will give written notice to the Receiving Party, identifying the document or ESI in question, the asserted privilege or protection, and the grounds therefor.

Upon receipt of notice of the assertion of privilege or protection over produced documents or ESI, the receiving party will:

(1) to whatever extent it contests the assertion of privilege or protection, promptly so notify the producing party, and maintain the contested documents and ESI in confidence pending resolution of the contest by the parties or the Court; and

(2) to whatever extent the receiving party does not contest the assertion of privilege or protection, promptly certify in writing to the producing party that it has returned or destroyed the

applicable document(s) and/or ESI, and has made reasonably diligent efforts to identify and destroy each copy thereof and all information derived therefrom (normally reasonable diligence will not include disaster recovery media).

f.      The Parties agree to meet and confer to address undue burdens related to this requirements, if any.  The privilege log will be produced in accordance with the timing specified by the Federal Rules of Civil Procedure. In the event of a contested assertion of privilege or protection over produced documents that cannot be resolved amicably after meeting and conferring in good faith, either party may bring the contest to the attention of the Court by motion.

## 5.    THIRD-PARTY ESI DISCOVERY

a.      A party that issues a non-party subpoena (the "Issuing Party") will include a copy of this Stipulated Order with the subpoena, and will request that non-parties produce documents in accordance with the specifications set forth herein.  Non-parties may assert any objections they maintain to the terms of this Order and the Court will separately rule on those objections, if any.

b.      The Issuing Party will produce any documents obtained under a subpoena to all other parties. Any documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such documents are received by the Issuing Party. If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other parties.

c.      If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other parties.

d.     The parties may decide to meet and confer regarding cost sharing arrangements for third party discovery but are under no obligation to do so.

**6.     MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties, by the Court for good cause shown, or for any other reason the Court deems appropriate.  Each of the parties reserve the right to seek modification of this order is deemed necessary.


Entered August % ž2017.


_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

AGREED CUSTODIANS
Lyons, Gabrielle*
Trevathan, Edwin
Holgersson, Migdalia
Ivy, Becky
Dorrell-Ritter, Sarah*
McCraw, Bethany*
Ramsower, Reagan*
Doak, Jim*
Crawford, Patty*
Murdock, David*
Davis, Tommye Lou*
Counseller, Jeremy*
Fogleman, Lori
McCaw, Ian*
Jackson, Kevin*
Starr, Ken*
Toben, Brad*
Noble, Michael
Scott, Martha Lou*
Garland, David
Jackson, Chad*
Alejandro, Juan*
Cooper, Trenia
Knowles, Kandy*
Wigtil, Brad*
Genous, Lori
McGregor, F.B. (Bob)
Tucker, Kristen
Whelan, John*
Jarrell, Sarah
Briles, Art*
Briles, Kendal*
Holmes, Chris*
Nicholson, Brian*
Shillinglaw, Colin*
Deats, Shelley*
Priest, Pattilin
Splane, Sonya

Wall, Cynthia
Beckenhauer, Charlie*
Bennett, Phil*
Blount, Norris*
Bradshaw, Paul*
Cano, Elisabeth
Childers, Mark*
Clements, Randy
Garner, Brian
Gochis, Cheryl*
Hogue, Tiffany*
Jarvis, Jennifer
Jobson, Marci*
Jobson, Paul*
Kazadi, Kaz*
Lebby, Jeff*
Leeper, Karla*
MacLemore, Don*
McPherson, Sarah
McRary, Ian*
Miller, Keith*
Patulski, Todd*
Post, Nancy*
Rogers, Mike*
Torres-Smith, Katherine
Walls, Candice*
Walter, Janelle*
Yeary, Wes*
 * Denotes Pepper Hamilton Custodians

The following custodians are not agreed and counsel will continue to meet and confer concerning these persons (and any others that may be identified in discovery).  Counsel will present the issue to the Court, if and when it is necessary.

Stone, Dary
Murff, Ronald
Gray, Cary
Harper, David
Willis, Richard
Jones, Neal T (Buddy)
Sloan, Robert
Remaining Baylor Executive Council Members

Marsh, James
Welch, Doug
Davis, Molly
Helpert, Kevin
Robertson, Tyler
Rogers, Lauri
Frost, Melvin
Hall, Yoshiko
Howell, Brent
Kamperman, Carrolle
Gray, J. Cary
Harper, David
James, Lee Ann
Kroll, Sydney
Kucera, Jeannette
Maggard, Judy
Mosser, Ali
Stern, Sharon
Ternus, Marsha K
Thompson, Amber
Wooten, Cheryl

# EXHIBIT B

## Search Terms

Each of the Plaintiff's names
Each of the Alleged Assailant's names
Assault*
Clery Act
consent* /s sex
dating /s violence
dear colleague letter with reference to sex
deserved /s it
disciplinary /s sex
expel*
failure /s action
failure /s identify
failure /s prioritize
failure /s respond
finding /s implement
Galluccie
Gender /s Harassment
Gender /s Harrassment
Harrassment
Harassment
her /s dress
her /s fault
hostile environment
immoral
inbread
insidious
Intimate Partner Violence
Mea Culpa
multiple /s partners
Non-consensual
pattern /s conduct
pattern /s violence
penetration
Pepper
Pepper Hamilton
Pervert*
PH
P-H
pre-marital
preservation /s evidence
prior /s conduct

prior /s sex
promiscuous
Rape*
redact /s name
Sex / Sexual
Sex Act
Sexual Activity
Sexual Assault
Sexual Contact
Sexual Exploitation
Sexual Harrassment
Sexual Harassment

Skank*
Sleazy
slut*
stalk*
stripper
tart
Title IX
title ix /s compliance
tramp
victim blaming
Violence Against Women Reauthorization
Act / VAWA
whore


**Misspellings are intended and include correct spellings**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1 *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 6:16-CV-173-RP |
| | § | |
| | § | |
| BAYLOR UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

## AMENDED PROTECTIVE ORDER

The Protective Order entered on August 1, 2016 (Dkt. 8) is amended as follows:

1.     When filing pleadings, motions, or other documents with the Court, the parties shall use pseudonyms to identify the Plaintiff "Jane Does" and the alleged assailants who are referenced in Plaintiffs' complaint. Exhibits that contain the true names of these individuals or that contain other identifying information shall be redacted before filed. If redacted documents are filed, the party shall file unredacted copies under seal.

2.     The true names of the Plaintiffs and the alleged assailants shall remain confidential, and neither party nor their representatives shall publicly identify these individuals as parties or witnesses in this case. Defendant shall provide a copy of this Order to university personnel and experts who are involved in the defense of the case and who have a need to know the true names of the Plaintiffs and the alleged assailants and their status as parties or witnesses in this lawsuit. Defendant shall have the duty to reasonably ensure that such personnel and witnesses consent to be bound by this Order and shall be responsible upon breach of such duty. Likewise, the Plaintiffs shall provide a copy of this Amended Protective Order to Plaintiffs'

experts and who have a need to know the true names of the Plaintiffs or the alleged assailants and their status as parties or witnesses in this lawsuit. Plaintiffs shall have the duty to reasonably ensure that such experts consent to be bound by this Order and Plaintiffs shall be responsible upon breach of such duty.

3.　　Counsel for the Plaintiffs and Defendant may disclose the true names of the Plaintiffs and the alleged assailants to (i) the alleged assailants themselves, and (ii) to actual or potential deponents or witnesses and their counsel, during the course of, or to the extent necessary in preparation for, deposition, trial testimony in this action, or to the extent necessary to determine whether the individual possesses knowledge of facts that are relevant in this action. Before disclosing the true names of the Plaintiff(s) and/or alleged assailants(s) to any such person, counsel shall provide a copy of this Amended Protective Order and the attached Exhibit A. The person must sign the Acknowledgement and Agreement, a copy of which will be retained by the party that obtains it.

4.　　During the deposition of a Plaintiff, third-party witnesses, and any individuals identified as an alleged assailant in the complaint, counsel for the parties may use the true name of a Plaintiff or alleged assailant; however, the witness must be provided a copy of this Amended Protective Order and the Acknowledgement and Agreement (attached hereto as Exhibit A). The witness must sign the Acknowledgement, which will be attached as an exhibit to the deposition.

5.　　Nothing in this Amended Protective Order shall preclude either party from using the true name of a Plaintiff or alleged assailant in a subpoena seeking records regarding that Plaintiff or alleged assailant. Any subpoena issued to a third party in connection with this action that contains the true name of a Plaintiff or alleged

assailant shall be accompanied by the Confidentiality Order attached hereto as Exhibit B.

**SIGNED** on July 31, 2017.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1 *et al*, | § | |
|       Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 6:16-CV-00173-RP |
| | § | |
| | § | |
| BAYLOR UNIVERSITY, | § | |
|       Defendant. | § | |

**ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND BY
AMENDED PROTECTIVE ORDER**

I, _____[*print full name*] acknowledge that I have been authorized to receive the names of one or more individuals whose identities are confidential pursuant to a federal court order signed by U.S. District Judge Robert Pitman in Civil Action No. 6:16-CV-00173-RP. These individuals are current or former Baylor University students who are identified in the action as "Jane Doe" or an alleged assailant.

Attached to this Acknowledgment is a copy of an Amended Protective Order signed by U.S. District Judge Robert Pitman on July 31, 2017.  I declare under penalty of perjury that I have read the Amended Protective Order, and I agree that I will abide by and be bound by its terms. Specifically, I solemnly promise not to disclose these names to any person or entity except to my own legal counsel or in accordance with the Amended Protective Order.

I understand and acknowledge that failure to comply could expose me to sanctions and punishment from the Court.

I further agree to submit to the jurisdiction of the United States District Court for the Western District of Texas for the purpose of enforcing the terms of the Amended Protective Order, even if such enforcement proceedings occur after the conclusion of the lawsuit.

Signature:_____

Address:_____

Phone Number:_____

Date: _____

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1 *et al*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 6:16-CV-00173-RP |
| | § | |
| | § | |
| BAYLOR UNIVERSITY, | § | |
| Defendant. | § | |

**CONFIDENTIALITY ORDER**

It is hereby ORDERED as follows:

1. Any person or entity that receives a subpoena in this action that identifies a current or former Baylor University student ("student") shall hold the name of the student in strict confidence along with any of the student's personal identifiers (date of birth, social security number, address).

2. A copy of this Confidentiality Order shall be affixed to the subpoena.

3. The individual or entity that is served with the subpoena shall not disclose the name of the student to any other person except to the limited extent necessary to comply with the subpoena.

4. Any person who violates this order may be found in contempt of Court.

**SIGNED** on July 31, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF
TEXAS WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1 *et al*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 6:16-CV-00173-RP |
| | § | |
| | § | |
| BAYLOR UNIVERSITY, | § | |
| Defendant. | § | |

## CONFIDENTIALITY AND PROTECTIVE ORDER

Before the Court is the joint motion of the parties for the entry of a Confidentiality and Protective Order ("Protective Order). It is hereby **ORDERED** as follows:

**1.     Classified Information**

"Classified Information" means any information of any type, kind or character that is designated as "Confidential" or "Attorneys' Eyes Only" by any of the supplying or receiving persons, whether it be a document, information contained in a document, information revealed during a deposition, information revealed in an interrogatory answer, or otherwise.

**2.     Qualified Persons**

a.     The following individuals are authorized to review "Classified Information" designated as "Confidential."

    i.     retained counsel for the parties in this litigation and their respective staffs;

    ii.     actual or potential independent experts or consultants (and their administrative or clerical staff) engaged in connection with this litigation (which shall not include the current employees, officers, members, or agents of parties or affiliates of parties) who, prior to any disclosure of Classified Information to such persons, have signed a document agreeing to be bound by the terms of this Protective Order (such signed document to be maintained by the attorney retaining such person);

    iii.     this Court and its staff and any other tribunal or dispute resolution officer duly appointed or assigned in connection with this litigation;

    iv.     arbitrators or mediators;

   v.     the party, if a natural person;

   vi.    if the party is an entity, such officers or employees of the party who are
          actively involved in the prosecution or defense of this case who, prior to
          any disclosure of Confidential Information to such person, have signed a
          document agreeing to be bound by the terms of this Protective Order (such
          signed document to be maintained by the attorney designating such
          person);

   vii.   litigation vendors, court reporters, and other litigation support personnel;

   viii.  any person who was an author, addressee, or intended or authorized
          recipient of the Confidential Information and who agrees to keep the
          information confidential, provided that such persons may see and use the
          Confidential Information but not retain a copy.

   ix.    Such other person as this Court may designate after notice and an
          opportunity to be heard.

b.  All student records disclosed by a party pursuant to another parties' request for
    production shall be designated "Attorneys' Eyes Only." Information designated
    as "Attorneys' Eyes Only" shall be reviewable by: (1) retained counsel for the
    parties in this litigation and their respective staffs; (2) actual or potential
    independent experts or consultants (and their administrative or clerical staff)
    engaged in connection with this litigation (which shall not include the current
    employees, officers, members, or agents of parties or affiliates of parties) who,
    prior to any disclosure of Classified Information to such persons, have signed a
    document agreeing to be bound by the terms of this Protective Order (such signed
    document to be maintained by the attorney retaining such person); and (3) this
    Court, its staff, and any other tribunal or dispute resolution officer duly appointed
    or assigned in connection with this litigation. In the event a party deems it
    necessary to disclose an affected student's information to their client or another
    person they deem necessary, the party shall file a motion with the Court seeking
    such relief.

## 3.    Designation Criteria

a.  *Nonclassified Information*. Classified Information shall not include information
    that:

    i.    is in the public domain at the time of disclosure, as evidenced by a written
          document;

    ii.   is a matter of public record as reflected in a publicly available judicial,
          court, or police record (with the exception of any portion of a police
          record that contains the details of a sexual assault);

    iii.  becomes part of the public domain through no fault of the recipient, as
          evidenced by a written document;

    iv.   the receiving party can show by written document was in its rightful and
          lawful possession at the time of disclosure; or

v.     lawfully comes into the recipient's possession subsequent to the time of disclosure from another source without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party.

b.     *Classified Information*. A party shall designate as Classified Information only such information that the party in good faith believes in fact is confidential based on the terms of this Protective Order. The information that may be designated as Classified Information is (i) information subject to a protective order in other litigation, (ii) portions of documents, including police reports, that provide the specific details of sexual assaults, (iii) counseling, mental health, and medical files, (iv) personnel files, (v) personal information that is protected by statute provided the statute is identified with production,; (vi) proprietary financial information, and documents and information that fall under the protection of Family Educational Rights and Privacy Act ("FERPA"), including information that identifies current or former Baylor University students and consists of a student's academic, educational, counseling, health, or disciplinary information, including information pertaining to a student's allegations of sexual assault or sexual harassment (hereinafter "Student Information"). "Identify" means that the document or information identifies a student by name or contains details that would make the student's identity easily traceable. "Student" as used in the Protective Order includes current and former students.

c.     *Attorneys' Eyes Only*. The designation "Attorneys' Eyes Only" shall be reserved for the "Student Information" under Section 2(b) unless the affected student has consented to the disclosure of his or her information as stated in Section 4 of this Order or the Court has otherwise entered an order permitting the use of the student's information.

d.     *Ultrasensitive Information*. At this point, the parties do not anticipate the need for higher levels of confidentiality as to ultrasensitive documents or information. However, in the event that a court orders that ultrasensitive documents or information be produced, the parties will negotiate and ask the court to enter an ultrasensitive information protocol in advance of production to further protect such information.

## 4.   Student Information

a.     Before producing Student Information in response to a discovery request, Baylor shall provide affected students with written notice of the discovery request in accordance with FERPA, 20 U.S.C. § 1232g and 34 C.F.R. §99.31(a)(9)(i) & (ii). Baylor shall provide the written notice via certified mail with return receipt requested. Affected students shall receive a copy of the discovery request, this Order, and a notice that informs the students of their right to either (i) object to the disclosure or (ii) provide written consent to the disclosure and use of his or her information, thereby removing any designation of Classified Information relating to that student's information.

b.     Prior to sending a FERPA notice, Baylor shall provide Plaintiffs' counsel with an exemplar of the notices to be used. If no objection has been filed within three days, Baylor shall use that notice except for the addition of a date and recipient name and address. If Plaintiffs object to the form or content of the notice, the

parties shall meet and confer. If the parties cannot resolve their differences, the parties may seek relief from the Court.

c.    The written notice by Baylor shall advise students that they may object either by submitting a confidential written objection to Baylor or by filing a confidential written objection directly with the Court. In either case, the student must object within 10 days of receipt of the notice of the discovery request. Baylor shall provide in its written notice the name and contact information of the person who will receive the student's objections. The written notice shall advise that, should a student wish to lodge an objection directly with the Court, he or she may do so by emailing pitman_chambers@txwd.uscourts.gov. The written notice shall also advise students: "You may, if you wish, hire an attorney, but you do not need to do so in order to register an objection via either of the mechanisms described above."

d.    If Baylor receives an objection, it shall file that objection with the Court within three business days of receipt of the objection. Baylor shall file the objection ex parte and under seal, attaching an unredacted copy of the student records at issue as an exhibit along with a copy of the notice letter sent to the student. Baylor's counsel shall also notify all counsel of receipt of an objection submitted to Baylor within three business days of receipt of the student's objection. Counsel for Baylor shall not disclose the objecting student's name, but shall inform counsel for the other parties as to the basis of the student's objection, if known.

e.    If a student consents to disclosure, Baylor shall produce the affected student's Student Information without redaction.

f.    Upon receipt of a written objection from a student, whether directly or via a sealed, ex parte filing by Baylor, the Court shall perform an *in camera* review of the records in question. The Court shall determine whether the student's information should be produced and, if so, under what conditions.

g.    The failure by an affected student to consent or object to the disclosure of his or her student information within the required ten-day time period will be deemed consent if, and only if, Baylor (1) receives a receipt or other evidence that a certified mail letter was successfully delivered; and (2) confirms with Court personnel that no objection was lodged directly with the Court. If those conditions are met, Baylor shall produce the affected student's information with no redactions.

h.    If the conditions detailed above are not met, a student's failure to consent or object shall be deemed an objection. Within three days, Baylor shall file an ex parte, sealed copy of the student records in question with the Court. The Court shall perform an *in camera* review of the records in question and determine whether the student's information should be produced and, if so, under what conditions. Baylor's counsel shall also notify all counsel of record that it has submitted records to the Court under this provision, but shall not identify the student's name.

i.    The provisions in Section 4 of this Order apply to the individual identified by the Plaintiffs as alleged assailants in the Complaint. In addition to receiving a copy of the discovery request, a copy of this Order, and Baylor's notice, alleged assailants also will receive a copy of the most recent version of Plaintiffs' Complaint.

**5.**     **Use of Classified Information**

All Classified Information provided by any party or nonparty in the course of this litigation shall be used in litigation by the receiving party solely for the purpose of preparation, trial, and appeal of litigation and for no other purpose, and shall not be disclosed, except in accordance with the terms hereof. In the event that a party receives a subpoena to produce another party's Classified Information in connection with other litigation, the recipient of the subpoena shall notify all other parties. Finally, nothing in this order is intended to preclude Baylor University, or the other parties, from using their own information, such as student education records, in the course of their regular or personal business operations. Likewise, nothing in this order is intended to preclude an individual party from using their own personal information, such as the individual's own health or financial records, in the course of conducting their own personal affairs.

**6.**     **Marking of Documents**

Documents that fall within the definition outlined in Paragraph 3(b) of this Protective Order to be provided in this litigation may be designated by the producing person or by any party as Classified Information by marking each page of the documents so designated with a stamp at the bottom of the page that does not deface the content of the document indicating that the information is "Confidential" or "Attorneys' Eyes Only." In lieu of marking the original of a document, if the original is not provided, the designating party may mark the copies that are provided. Additionally, in the event of a photograph, device, or object that cannot easily be marked, the designating party shall use any other reasonable method to indicate to the receiving parties that the information is confidential.  Originals shall be preserved for inspection.

**7.**     **Disclosure at Depositions**

Information disclosed at (a) the deposition of a party or one of its present or former officers, directors, employees, agents, consultants, representatives, or independent experts retained by counsel for the purpose of this litigation, or (b) the deposition of a nonparty may be designated by any party as Classified Information if the information disclosed meets the requirements set forth in Section 3 by indicating on the record at the deposition that the testimony is "Confidential" or "attorneys' eyes only" and is subject to the provisions of this Order.

The portions of a deposition addressing Student Information or containing the true names of the Plaintiffs shall constitute and be designated as Classified Information unless the student whose information is at issue has given written consent to the disclosure or use of his or her information or the court has otherwise entered an order permitting the use of the student's information.

Any party may also designate information, so long as it falls within the definition outlined in Paragraph 3(b) of this Protective Order, disclosed at a deposition as Classified Information by notifying all parties in writing not later than 15 days of receipt of the transcript of the specific pages and lines of the transcript that should be treated as Classified Information thereafter. Each party shall attach a copy of each such written notice to the face of the transcript and each copy thereof in that party's possession, custody, or control. All deposition transcripts shall be treated as Confidential for a period of 15 days after initial receipt of the transcript.

To the extent possible, the court reporter shall segregate into separate transcripts information designated as Classified Information with blank, consecutively numbered pages

being provided in a nondesignated main transcript. The separate transcript containing Classified Information shall have page numbers that correspond to the blank pages in the main transcript.

Counsel for a party or a nonparty witness shall have the right to exclude from depositions any person who is not authorized to receive Classified Information pursuant to this Protective Order, but such right of exclusion shall be applicable only during periods of examination or testimony during which Classified Information is being used or discussed.

## 8. Disclosure to Qualified Persons

a.   *To Whom*. Classified Information shall not be disclosed or made available by the receiving party to persons other than Qualified Persons except as necessary to comply with applicable law or the valid order of a court of competent jurisdiction; ***provided, however***, that in the event of a disclosure compelled by law or court order, the receiving party will so notify the producing party as promptly as practicable (if at all possible, prior to making such disclosure). The producing party shall have the right to pursue a court-ordered protective order prohibiting or limiting the production of this Classified Information.

b.   *Retention of Copies During This Litigation.* Hard copies of   Classified Information shall be maintained only in the offices of counsel for the receiving party and, to the extent supplied to experts described in subparagraph 2(a)(ii), in the offices of those experts. Copies of documents and exhibits containing Classified Information may be prepared by independent copy services, printers, or illustrators for the purpose of this litigation. Parties who are individuals have a right to access counseling, mental health, and medical files, as well as documents and information that fall under the protection of the Family Educational Rights and Privacy Act ("FERPA"), which have been produced in this litigation without the designation "Attorneys' Eyes Only," but such access shall be obtained only:

(i) in the office of the party's retained counsel; (ii) by means of encrypted email which the receiving party will not print out or download and which the receiving party will delete promptly after completing the task for which the information was received; or (iii) by means of a cloud-based file sharing service to which access is restricted based on the party's provision of identifying information or a password. A party receiving information pursuant to section (iii) will not print, download, or otherwise retain copies of this information. Nothing in this paragraph shall limit the use of a party to their own records.

c.   Each party's counsel shall maintain a log of all copies of Classified Information which that party delivers to any Qualified Persons.

## 9. Unintentional Disclosures

Documents or deposition excerpts unintentionally produced without designation as Classified Information later may be designated and shall be treated as Classified Information from the date written notice of the designation is provided to the receiving party.

If a receiving party learns of any unauthorized disclosure of Classified Information, the party shall immediately, upon learning of such disclosure, inform the producing party of all pertinent facts relating to such disclosure and shall make all reasonable efforts to prevent disclosure by each unauthorized person who received such information. A receiving party who responds in this manner after learning of an unauthorized disclosure of Classified Information

shall not be in violation of this order. In the event of a dispute over whether a disclosure was intentional or whether the receiving party responded promptly and reasonably, the parties must arrange for a conference with the Court before the preparation and submission of motion for enforcement, sanctions, or contempt. If the Court cannot resolve all or part of the issues raised without a written submission and response, the issues to be addressed and a schedule for briefing will be set in the conference. Counsel for the party raising the discovery issue must advise the Court, in writing, that counsel have conferred in a good-faith effort to resolve the matters in dispute.

## 10.  Documents Produced for Inspection Prior to Designation

In the event documents are produced for inspection prior to designation, the documents shall be treated as Classified Information during inspection. At the time of copying for the receiving parties, Classified Information shall be marked prominently "Confidential" or "Attorneys' Eyes Only" as described in Paragraphs 5(a) and 6 by the producing party.

## 11.  Consent to Disclosure and Use in Examination

Nothing in this order shall prevent disclosure beyond the terms of this order if each party designating the information as Classified Information consents to such disclosure or if the court, after notice to all affected parties and nonparties, orders such disclosure. Nor shall anything in this order prevent any counsel of record from utilizing Classified Information in the examination or cross-examination of any person who is indicated on the document as being an author, source, or recipient of the Classified Information, irrespective of which party produced such information.

## 12.  Challenging the Designation

a.  *Classified Information*.  A party shall not be obligated to challenge the propriety of a designation of Classified Information at the time such designation is made, and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as Classified Information, the parties shall first try to resolve the dispute in good faith on an informal basis, such as by production of redacted copies. If the dispute cannot be resolved, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as Classified Information. The designating party shall then have 14 days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain Classified Information unless and until the Court orders otherwise. Failure to move for an order shall constitute a termination of the status of such item as Classified Information.

b.  *Qualified Persons*. In the event that any party in good faith disagrees with the designation of a person as a Qualified Person or the disclosure of particular Classified Information to such person, the parties shall first try to resolve the dispute in good faith on an informal basis. If the dispute cannot be resolved, the objecting party shall have 14 days from the date of the designation or, in the event particular Classified Information is requested subsequent to the designation of the Qualified Person, 14 days from service of the request to move the court for an order denying the disposed person (a) status as a Qualified Person, or (b) access to particular Classified Information. The objecting person shall have the burden of demonstrating that disclosure to the disputed person would expose the

objecting party to the risk of serious harm. Upon the timely filing of such a motion, no disclosure of Classified Information shall be made to the disputed person unless and until the Court enters an order preserving the designation.

## 13.    Manner of Use in Proceedings

In the event a party wishes to use any Classified Information in affidavits, declarations, briefs, memoranda of law, or other papers filed in this litigation, the party shall file a redacted version as the public filing and either (i) file an unredacted copy of the material along with a motion to file the material under seal with the Court *or* (ii) file an unredacted version provisionally under seal with the Court. If a party files a motion to seal the information, any other party may oppose the request. If a party files an unredacted version provisionally under seal, any other party that wishes to keep the unredacted version filed permanently under seal may file a motion to that effect in accordance with the local rules of Court. The party filing the unredacted version with the Court provisionally under seal may oppose any motion to permanently seal the unredacted version of the material.

## 14.    Filing Under Seal

The clerk of this Court is directed to maintain provisionally under seal all documents, transcripts of deposition testimony, answers to interrogatories, admissions, and other papers filed provisionally under seal in this litigation that have been designated, in whole or in part, as Classified Information by any party to this litigation consistent with the sealing requirements of the Court until, and if, the Court determines that the documents should be filed publicly and not under seal.

## 15.    Return of Documents

Not later than 120 days after conclusion of this litigation and any appeal related to it, any Classified Information, all reproductions of such information, and any notes, summaries, or descriptions of such information in the possession of any of the persons specified in paragraph 2 (except subparagraph 2(a)(iii)) shall be returned to the producing party or destroyed, except as this court may otherwise order or to the extent such information has been used as evidence at any trial or hearing. Notwithstanding this obligation to return or destroy information, counsel may retain attorney work product, including document indices, so long as that work product does not duplicate verbatim substantial portions of the text of any Classified Information.

## 16.    Ongoing Obligations

Insofar as the provisions of this Protective Order, or any other protective orders entered in this litigation, restrict the communication and use of the information protected by it, such provisions shall continue to be binding after the conclusion of this litigation, except that (a) there shall be no restriction on documents that are used as exhibits in open court unless such exhibits were filed under seal, and (b) a party may seek the written permission of the producing party or order of the court with respect to dissolution or modification of this, or any other, protective order.

## 17.    Duty to Ensure Compliance

Any party designating any person as a Qualified Person shall have the duty to provide any Qualified Person designated by that party with a copy of this Protective Order, a written request that the Qualified Person comply with this Protective Order, and a written warning that

failure to follow this Protective Order could result in legal action and sanctions, including financial penalties.

## 18.    Waiver

Pursuant to Federal Rule of Evidence 502, neither the attorney-client privilege nor work product protection is waived by disclosure connected with this litigation.

## 19.    Modification and Exceptions

The parties may, by stipulation, provide for exceptions to this order and any party may seek an order of this court modifying this Protective Order.

**SIGNED** on July 31, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE