IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al.*, | § § | |
| Plaintiffs, | § § | 6:16-CV-173-RP |
| v. | § § | *Consolidated with* |
| | § | 6:17-CV-228-RP |
| BAYLOR UNIVERSITY, | § § | 6:17-CV-236-RP |
| Defendant. | § § | |

**MOTION OF PEPPER HAMILTON LLP OBJECTING TO THE PRODUCTION OF DOCUMENTS AND FOR SPECIFIC RELIEF PURSUANT TO THE COURT'S ORDER DATED MARCH 7, 2019 (DKT. 597)**

The Court's order dated March 7, 2019 (Dkt. 597) requires non-party law firm Pepper Hamilton LLP ("Pepper") to "(1) complete production in response to the subpoena and file a notice with this Court certifying the production to Plaintiffs is complete, or (2) file a motion with this Court detailing any objections to production and requesting specific relief." Order at 2. Plaintiffs served the subpoena in question on Pepper nearly two years ago, on March 29, 2017 (the "Subpoena"). For the reasons below, Pepper has elected option (2), and it objects to the production of documents on both factual and jurisdictional grounds.

The essence of Pepper's factual objection is that Pepper has not been counsel to Baylor University since February 2017, when the principal lawyers who had represented Baylor resigned from Pepper and moved to the Cozen O'Connor LLP law firm; that all of the documents sought by the Subpoena have been in the possession of Baylor's current counsel at Cozen for more than two years; that Pepper is not representing any party to this action; that Pepper lacks sufficient knowledge of the litigation to know what redactions may appropriately be made to the documents; and that any and all issues touching on production of documents should be addressed with Cozen

(which has knowledge of the materials) or with Baylor's counsel in the litigation, Thompson & Horton LLP (which also has all of the documents, is familiar with the Court's rulings on discovery, work product, and privilege issues, and would have to conduct the privilege review and redaction process consistent with those rulings.)  The jurisdictional objection is that the Subpoena was served on Pepper in the Eastern District of Pennsylvania, and that is the proper court to resolve any disputes about the Subpoena.

Pepper seeks the following specific relief:  (a) an order that the Court does not have jurisdiction to rule on the Motion to Compel, because any motion seeking enforcement of the Subpoena must be filed in the Eastern District of Pennsylvania; (b) if the Court disagrees and finds that it has jurisdiction, then an order (i) that Pepper does not need to produce any documents in response to the Subpoena and (ii) that any issues that Plaintiffs may have with the production of documents must be addressed with Cozen and Thompson & Horton, not with Pepper.

None of the facts set forth in this Motion are new to Plaintiffs.  Pepper advised Plaintiffs' counsel nine months ago that it had transferred the subpoenaed documents to Cozen before the Subpoena was served.  Plaintiffs therefore have long known that there is no factual basis for the predicate for their Motion – that "there is no reason to believe that Baylor is in possession of all of [Pepper's] file" (Motion at 2-3, Dkt. 328).  If there are any problems with Baylor's document production, Pepper is not the place to which Plaintiffs should turn; they should take up any issues with Cozen and Thompson & Horton.

## **FACTS**

<u>Pepper Stopped Representing Baylor When the Two Attorneys Responsible for Representation of Baylor Resigned as Partners of the Firm</u>.  Baylor retained Pepper to conduct an independent and external review of reports of alleged sexual assault involving student athletes and the University's response to those reported incidents.  As part of its representation of Baylor, Pepper

-2-

put a litigation hold into place.  Declaration of James K. Mowbray ("Mowbray Decl."), Exh. A and B (emails from Pepper's Office of General Counsel confirming the litigation hold).  But Pepper's work for Baylor ended on February 6, 2017, more than two years ago, when Gina Maisto Smith and Leslie Gomez, who managed Pepper's representation of Baylor, resigned as partners of Pepper, joined Cozen, and took the Baylor representation with them.  Pepper has not represented Baylor since February 6, 2017.  Declaration of M. Duncan Grant ("Grant Decl.") ¶ 2.

Also on February 6, 2017, Christopher Holmes, Baylor's general counsel, directed Pepper to transfer all of Pepper's Baylor-related files to Cozen so that Mss. Smith and Gomez could continue their representation of Baylor at their new firm.  Grant Decl. ¶ 3; Mowbray Decl. ¶ 4.  In response to Mr. Holmes' request, Hope Comisky, a partner with Pepper and a member of Pepper's Office of General Counsel, sent emails to Pepper information technology, records, and legal personnel on February 10 and 14, 2017, advising them that all files relating to the Baylor matters had to be transferred to Cozen and that procedures to that effect were being implemented.  Grant Decl. ¶ 4; Mowbray Decl. ¶ 4 and Exh. A and B.

Pepper Transferred a Full Set of its Baylor-Related Hard Copy Files and Electronic Data to Cozen.  James Mowbray, Pepper's Records Administrator, was responsible for overseeing the transfer of both the hard copy and electronic Baylor files to Cozen.  Mowbray Decl. ¶¶ 1-2.  He managed the assembly and transfer of the hard copy files himself, and he asked Jerrick Lisondra to manage the transfer of the electronic files.  *Id.* ¶ 3. With respect to the hard copy files, Pepper sent its Baylor-related paper documents to an outside vendor; the vendor scanned every page of the files; and Pepper delivered the hard copies and associated scans, which were contained on disks, to Cozen on a rolling basis.  *Id.* ¶ 5.  Pepper transferred more than 25 boxes of hard copy files to Cozen, consisting of all hard copy files in Pepper's possession, with the exception of one duplicate set of a portion (not all) of the documents, which Pepper kept at the request of one of its lawyers and which

is now located in an off-site storage facility. *Id.* ¶¶ 7-9. Mr. Mowbray sent letters to Mss. Smith and Gomez confirming that transfer of the paper files on February 24 and March 20, 2017. *Id.* ¶ 6.

Mr. Lisondra, who is a Systems Administrator / Developer with Pepper, handled the transfer of the electronic data files to Cozen. Mowbray Decl. ¶ 3; Declaration of Jerrick J. Lisondra ("Lisondra Decl.") ¶ 2. He created a data room and gave access to Cozen IT manager Terry Kufen on February 6, 2017. Lisondra Decl. ¶¶ 3, 5. Mr. Lisondra began uploading all Baylor-related electronic files into the data room on February 13, 2017, and he completed the upload on February 22, 2017. An activity log for the data room shows that Mr. Kufen accessed electronic files from the data rooms on February 14, 23, and 24, March 2, and April 10, 2017, and that Pepper closed the data room four and a half months later, on August 23, 2017. Lisondra Decl. ¶ 5 and Exh. A. In accordance with its usual protocols, Pepper retained an archival copy of the electronic data on tapes at an off-site disaster recovery site, from which the data can be restored. The archival set of electronic data contains a very, very substantial volume of material. Lisondra Decl. ¶ 7.

Cozen received *all of the hard copy documents* that Pepper sent to it, and downloaded *all of the electronic files* from the Pepper data room. *See* Declarations of Terry Kufen and Joseph Tate, and Exh. A to both (Exh. A confirms that the files downloaded by Cozen match those uploaded by Mr. Lisondra, as shown in his log). Cozen then gave Thompson & Horton access to those same documents, and the Cozen and Thompson & Horton lawyers have been reviewing them for purposes of production and redaction. Through that process, Baylor has produced 659 documents with 1,143 Bates labeled pages, and has logged 4,973 documents, consisting of 43,292 Bates labeled pages, in multiple privilege logs. Cozen and Thompson & Horton attorneys are working with additional documents, and they anticipate producing and logging more documents. *See* Declaration of Holly G. McIntush and Exh A to her Declaration.

<u>Pepper Advises Plaintiffs That Cozen O'Connor Has All of the Documents</u>.

Plaintiffs served the Subpoena on Pepper on March 29, 2017, by delivering it to Pepper's office in Philadelphia, Pennsylvania.  Grant Decl. ¶ 1.  Pepper's then-General Counsel, Thomas Zemaitis, sent Plaintiffs' counsel a letter on April 11, 2017 making timely Rule 45 objections to the Subpoena (Dkt. 328-2).  In those objections, Pepper advised Plaintiffs that "the principal attorneys who worked on the relevant engagement, and who are in the best position to respond to the requests contained in the subpoena, are now with a different law firm" (Dkt. 328-2, at 3, ¶ Sixteenth). Plaintiffs have thus known for nearly two years that they were seeking documents from the wrong law firm.  The Subpoena then lay dormant for more than a year, until June 6, 2018, when Plaintiffs filed their Motion to Compel (Dkt. 328).  Baylor responded to the Motion on June 13, 2018 (Dkt. 332).  Believing that the Motion had been filed in the wrong court and thus that this Court lacked jurisdiction over the Motion, Pepper did not respond to the Motion.

Within the following two weeks, however, counsel for Plaintiffs and M. Duncan Grant, a member of Pepper's Office of General Counsel, communicated by phone and email about the Subpoena and the Motion to Compel.  In a June 27, 2018 email (Grant Decl., Exh. B), Mr. Grant informed Plaintiffs' counsel of the following facts:

- Mss. Smith and Gomez, who were lead counsel for Baylor, had left Pepper as of February 6, 2017 and moved their practices, including the Baylor matters, to Cozen, at which point Pepper no longer represented Baylor;

- Baylor had directed Pepper to transfer all its Baylor files to Cozen, which Pepper did before the Subpoena was served on Pepper on March 29, 2017;

- an internal directive had been sent to all pertinent Pepper personnel advising them that all Baylor files had to be transferred to Cozen;

- all of Pepper's hard copy Baylor-related files and a full set of Pepper's electronic files had been transferred to Cozen beginning in February 2017, with the process completed by

>> March 20, 2017, nine days before the Subpoena was served on Pepper; and
>
> ● Pepper had retained an archival copy of the electronic documents, but Pepper is not the right target for the Subpoena or for the Motion to Compel.

Mr. Grant concluded the June 27, 2018 email by asking counsel to withdraw the Motion to Compel, but Plaintiffs did not do so.

Plaintiffs have thus known for nine months that Cozen has had all of the subpoenaed documents for two years, yet they continue to pursue a law firm that no longer represents Baylor and that has no client with which to consult about appropriate redactions to the documents.

As set forth above, Cozen and Thompson & Horton have been working with the documents that originated in the Pepper files, and they have produced and logged the vast bulk of them. They expect to produce and log a few additional documents. See Declarations of Terry Kufen, Joseph Tate, and Holly G. McIntush and the exhibits to those declarations.

<u>Pepper is a Pennsylvania Limited Liability Partnership, With Limited Western District of Texas Contact</u>. The Court has permitted Pepper to object to the Subpoena on jurisdictional grounds (Dkt. 597 at 2), and Pepper does so object. Pepper is a Pennsylvania limited liability partnership, with its principal office in Philadelphia, Pennsylvania, and the Subpoena was served on Pepper there. Pepper does not maintain an office in the State of Texas. Since the departure of Mss. Smith and Gomez more than two years ago, Pepper has not regularly conducted business within the Western District of Texas. Grant Decl. ¶¶ 1, 10. Mr. Grant's canvass of all of Pepper's partners and "of counsel" lawyers has shown that since Mss. Smith's and Gomez's departure, Pepper has represented one client in one action in this Court and another client in a case pending in the Bankruptcy Court for the Western District. Pepper lawyers were admitted *pro hac vice* in both matters, but neither lawyer was ever physically present at the courthouse in Waco in those

matters. No Pepper partners or "of counsel" lawyers have spent substantial time within the Western District of Texas on client matters since Mss. Smith and Gomez left Pepper. Grant Decl. ¶ 11.

## ARGUMENT

Pepper Should Be Granted Relief Because All of the Relevant Materials Have Been Transferred to Cozen. Pepper no longer represents a client in this action. A full set of the Pepper hard copy and electronic files was transferred to Cozen more than two years ago, before the Subpoena was served on Pepper. The attached declarations leave no doubt that Cozen and Thompson & Horton have all of the documents that originated in the Pepper files, and that they have produced and logged a very large volume of documents.

If Plaintiffs have questions about the production of Baylor documents in this action, they should address them with Baylor's counsel at Cozen and Thompson & Horton, not with Pepper. Although Plaintiffs' Motion to Compel suggests that Plaintiffs do not believe that Baylor has been sufficiently forthcoming with document production (Pl. Motion at 2-5, Dkt. 328), seeking documents from Baylor's former counsel at Pepper is the wrong way to resolve any issues. Pepper has no realistic way to know what redactions should be made to the documents other than asking Cozen and Thompson & Horton, who are already working with the identical documents; Pepper has no client with which to consult about any questions; and Pepper has no client that would pay it for the undoubtedly massive volume of work that would be required to analyze what passages need to be redacted. The Court has already ordered that Baylor is entitled to have work product material redacted from its document production (Dkt. 168 at 19, reconfirmed at Dkt 582 at 7-8). If the Court were to order Pepper to produce the documents, Plaintiffs and their counsel should be ordered to pay Pepper for its time charges incurred in making appropriate work product redactions.

For those reasons, if the Court takes jurisdiction over the Motion to Compel, the Motion should be denied, and the Court should grant the following specific relief: The Court

should order that Pepper does not need to produce any documents in response to the Subpoena and that any issues that Plaintiffs may have with the production of documents must be addressed with Cozen and Thompson & Horton, not with Pepper.

<u>The Court Lacks Jurisdiction Over the Motion to Compel</u>.  The Court lacks jurisdiction to determine the Motion to Compel, and requiring Pepper to comply with it would be unduly burdensome for Pepper.

*First*, Pepper is not subject to the Court's jurisdiction in the current circumstances. Rule 45(c)(2)(A) permits a subpoena to command production of documents only "at a *place within 100 miles of where the person resides, is employed, or regularly transacts business in person . . . .*" (emphasis added).  As shown in the Grant Declaration, Pepper does not reside within 100 miles of Waco, has no employees within 100 miles of Waco, and does not regularly transact business within 100 miles of Waco (Grant Decl. ¶¶ 10-11).  Two of its lawyers have been episodically involved in actions in this Court and in the Bankruptcy Court Grant Decl. ¶ 11), but that does not constitute regularly transacting business.  Rule 45's "regularly transacts business" requirement is analogous to the test for personal jurisdiction, and requires "sufficiently continuous and systematic contacts" with the forum state.  *See Benchmark Insurance v. Johnson Bros Construction,* No. 5:15-MC-0412-RP, 2015 U.S. Dist. LEXIS 183096 *2 (W.D. Tex. 2015) (Pitman, J.) (a San Antonio company, located more than 200 miles from Houston, but having a post office box in Houston, did not "regularly transact business" for compliance with "Rule 45(c)'s geographical limit.").

The Southern District of New York has held that five business trips over two years, which is analogous to Pepper's minimal contacts with the Western District, did not amount to regularly transacting business under Rule 45.  *M'Baye v. N.J. Sports Prod.*, 246 F.R.D. 205 (S.D.N.Y. 2007) (non-party British citizen, who took five business trips to New York over a two-year period and transacted business via telephone and email, was not "regularly transacting business for

purposes of the subpoena" under Rule 45, and thus could not be compelled to come to New York for a deposition). Where the contacts are far more substantial than Pepper's are here, the result may be different. *See Halliburton Energy Services v. M-I LLC,* 2006 U.S. Dist. LEXIS * 4 (N.D. Tex. 2006) (non-party German resident was required to appear in Houston for a deposition, because traveling to Houston 40 days per year amounted to "regularly transact[ing] business" in Houston under Rule 45).

Pepper's Philadelphia office, where the Subpoena was served, is more than 1,000 miles from Waco. Plaintiffs' assertion in the Motion to Compel that Pepper was "still doing work in Waco through its partners' at the time Plaintiffs issued the subpoena" (Dkt. 597 at 1) is erroneous. The Subpoena was issued served on Pepper on March 29, 2017, but ever since the departure of Mss. Smith and Gomez on February 6, 2017, seven weeks before the Subpoena was served, Pepper has not regularly conducted business within the Western District of Texas. Grant Decl. ¶¶ 10-11.

*Second*, enforcement proceedings must be instituted in the Eastern District of Pennsylvania, where the Subpoena was served, rather than here. Rule 45(d)(3)(A) permits a motion to enforce a subpoena to be filed only in "the court for the district where compliance is required," and under Rule 45(c)(2)(A), which is mentioned immediately above, that court is the Eastern District of Pennsylvania. *See* 28 U.S.C. § 118(a) (Philadelphia County is in the Eastern District of Pennsylvania). By filing the Motion to Compel here, Plaintiffs went to the wrong court.

*Third*, requiring Pepper to comply with the Subpoena would unduly burden Pepper, in violation of Rule 45(d)(3)(A)(iv). That rule requires a court to modify a subpoena that "subjects a person to undue burden." The undue burden standard is met where compliance with the subpoena would be "unreasonable and oppressive." A district court in Texas has ruled that the test for determining whether a subpoena is unduly burdensome includes "(1) the relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document

request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006).  Under the *Brady* test, although the Pepper documents are presumably relevant (element (1)), Plaintiffs have no need for them, because Cozen and Thompson & Horton have all of them (element (2)), and the request is extremely broad (element (3)).  Most importantly, the burden on Pepper, in terms of having to redact work product information from a massive volume of documents, would be extreme (element (6)).  Pepper acknowledges that without undue burden, it could retrieve the archived electronic documents, upload them to a thumb drive, and produce them in un-redacted form, but that misses the point.  Pepper does not have adequate knowledge of the issues in the litigation, and it has no client with which to consult or from which to receive payment for the huge amount of work that would be required to redact work product information from so many documents.  Such work is already being undertaken by Cozen and Thompson & Horton; there is no reason to require that the work be done twice.

*Finally*, Plaintiffs have known for nearly two years, since Pepper served objections to the Subpoena, that Pepper was no longer representing Baylor (Dkt. 328-2, at 3, ¶ Sixteenth).  Mr. Grant's June 27, 2018 email to Plaintiffs' counsel (Grant Decl., Exh. B) reconfirmed that Mss. Smith and Gomez had left Pepper and joined Cozen on February 6, 2017 and advised Plaintiffs that Cozen had the Pepper documents.  Having been informed of those facts, Plaintiffs had no proper reason to continue to pursue Pepper with the Subpoena and then with their Motion to Compel.

## **CONCLUSION**

For the reasons set out above, Pepper Hamilton LLP respectfully requests that the Court grant Pepper's Motion and order that the Court does not have jurisdiction to rule on the Motion to Compel.  If the Court concludes that it has jurisdiction, Pepper requests that the Court order that Pepper does not need to produce any documents in response to the Subpoena and that

any issues that Plaintiffs may have with the production of documents must be addressed with Cozen and Thompson & Horton, not with Pepper.

Respectfully submitted,

*By: /s/ William D. Cobb, Jr.*
WILLIAM D. COBB, JR.
Texas Bar No. 04444150
wcobb@cobbmartinez.com

COBB MARTINEZ WOODWARD PLLC
1700 Pacific Avenue, Suite 3100
Dallas, Texas 75201
(214) 220-5201
(214) 220-5251 (Fax)

Dated:  March 15, 2019                           *Attorneys for Pepper Hamilton LLP*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing has been served upon counsel of record via the court's electronic case filing system and/or facsimile on March 15, 2019.

*/s/ William D. Cobb, Jr.*
WILLIAM D. COBB, JR.
