IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

JANE DOE 1, JANE DOE 2, JANE DOE 3,      §
JANE DOE 4, JANE DOE 5, JANE DOE 6,      §
JANE DOE 7, JANE DOE 8, JANE DOE 9,      §
JANE DOE 10, JANE DOE 11, JANE DOE      §
12, JANE DOE 13, JANE DOE      §
14, AND JANE DOE 15      §      Cause No. 6:16-cv-173-RP
                                                       §      JURY TRIAL DEMANDED
                    *Plaintiffs,*      §
                                                       §
vs.      §
                                                       §
BAYLOR UNIVERSITY      §
                                                       §
                    *Defendant.*      §

**PLAINTIFFS' RESPONSE TO DEFENDANT'S AMENDED MOTION TO COMPEL**

TO THE HONORABLE ROBERT PITMAN:

    COME NOW JANE DOE 1-15, Plaintiffs herein, and file this Response to Defendant's

Amended Motion to Compel (ECF 605), and in support would show the Court the following:

    **I.        Introduction and Background** - Plaintiffs have been and are in compliance with

discovery.[1] For each of the issues Baylor raises, Plaintiffs herein provide direct and adequate

explanations for the state of production. Baylor's original and amended motions present disorganized

run-ons of purported production failures, as if the smoke of a confused narrative will lead one to

conclude there is fire. Much of the documentation complained of as "missing" is documentation

Baylor concedes *it already has.* The remaining complaints largely stem from Baylor's inability to accept

that assault victims do not retain every communication with their assailants. Plaintiffs have been young

women trying to put their lives back together.  During relevant time periods, Plaintiffs were coping

---

[1] Plaintiffs have thus far produced over 122,000 pages of discovery, some 115,000 pages since the
filing of Baylor's original motion to compel.

with the trauma of rape, and as such they did not systematically keep their emails and records. This *does not* equate to improperly resisting discovery.

II.    **Baylor's Complaints** – To hopefully streamline issues for the Court, Plaintiffs have organized this response by combining Baylor's complaints into categories.

1.    **Plaintiffs' communications** - First, Baylor complains that Plaintiffs have failed to provide all third-party communications. As an initial matter, it must be noted that Plaintiffs' communications with Baylor and third parties *are helpful to Plaintiffs'* litigation position in this case, and Plaintiffs have every incentive to, and have, produced what they possess. Plaintiffs utilized multiple phones, computers, e-mail platforms and addresses, so that some thus far have been unobtainable is understandable. But as for Plaintiffs' communications *with Baylor*, Baylor's retention systems should have all of those materials. As Baylor knows, many Plaintiffs were locked out of their Baylor email accounts after graduation, and Baylor itself did not retain email accounts for at least three Jane Does.

Baylor complains that Plaintiffs have failed to produce a privilege log, but then avoids analysis of Plaintiffs' position that the burden to log all post-suit, attorney-client communications is not supported, as such materials are not likely admissible and are not discoverable under attorney-client, attorney work-product, and common-benefit privileges. Is Baylor going to log all of its communications with its attorneys? The State of Texas tried to impose such a burden on the plaintiffs in the Voter ID case, and the District Court correctly rejected this effort.[2] There is more than enough relevant discovery to occupy counsel in this case, and the Court should reject this transparent effort to impose unnecessary burdens on Plaintiffs and Plaintiffs' counsel.

Next, Baylor claims that Jane Doe 8 did not produce text or Facebook messages until March 2019. *This is false.* It is worth noting that Baylor's first request for production was a set addressed to

---

[2] See *Veasey v. Texas,* 2:13-cv-0193 (S.D. TX.)(Dkt. Entry Dated June 6, 2014).

Jane Does 1-10. Jane Doe 8's messages in the private Facebook group message composed of sexual assault survivors *were produced* by Jane Doe 3, who just happened to be the first Plaintiff with the group message - so Jane Doe 3's production of the message thread was produced for all in the group, *including Jane Doe 8*. Plaintiffs have explained this to Baylor via writing, phone, and in person on several occasions. Despite Baylor's arguments otherwise, these messages do not change from person to person – they are *group* messages. Similarly, the private Facebook messages between Jane Doe 3 and Jane Doe 8 *were produced by Jane Doe 3*. Both the sexual assault survivor private group messages and the private direct messages between Jane Doe 3 and Jane Doe 8 were reproduced without redactions after the Court's order last year.[3] Prior to March 2019, Baylor also had private direct messages between Jane Doe 6 and Jane Doe 8, and emails summarizing Jane Doe 8's Facebook activity - including daily updates, posts, tags and comments that were emailed to Jane Doe 8's *Baylor email address*. Text messages, emails and social media messages were also provided to Baylor by Jane Doe 8 at the time of the Title IX "investigation." Jane Doe 8 did not retain all these communications. Luckily Jane Doe 3 and Jane Doe 6 did, so Baylor *did receive* all the messages that it complains about and was able to question Jane Doe 8 about them at her deposition. Baylor complains simply to complain.

Baylor also complains that Plaintiffs have not complied with the ESI format, however the ESI order does not, by its own terms, include the Plaintiffs. Baylor's complaint centers around production of 45,210 pages of material for Jane Doe 8.[4] Much of this production is from her Baylor.edu and personal email accounts. These were produced, at Baylor's request, in accordance with the ESI protocol despite the plain language of the ESI order. Nevertheless, Baylor continues to complain about specific messages despite the responses given them below:

      a.   Messages produced in Baylor's Exhibit C (ECF 605-3): Baylor states the dates and times of the messages are not visible. Private messages between Jane Does 8 and Jane

---

[3] ECF 301.

[4] ECF 605 at 2.

Doe 3 were produced in two formats using the Facebook messenger platform. Baylor's Exhibit C (ECF 605-3) contains screenshots that show the messages how they appear to the user. Jane Doe 3's production, attached hereto, represents the messages as they appear when they are captured and preserved as a Facebook download.[5] The messages are converted to transcript form showing the date and time of each message. What is not captured on the download / transcript format are embedded images. The transcript version does however provide a time and date stamp placeholder for embedded images. It is the embedded screenshots of other messages that Baylor complains as "missing." In this instance, **Baylor does in fact have the images, dates, and times. All complained-of messages were sent.**

b. Baylor's Exhibit E (ECF 605-5), private messages between Jane Doe 8 and Jane Doe 4: Baylor complains that the date and time stamp is not always visible. A review of this exhibit will show that for each message the date and time stamp are visible and if the message went longer than the page, the next page included the last visible line of the message ensuring the entire message was captured.

c. Baylor's Exhibit A (ECF 605-1) "missing content": The content is not missing. This Exhibit contains excerpts from the private Facebook sexual assault survivor group message, private Facebook messages between Jane Doe 3 and Jane Doe 8, as well as private messages between Jane Doe 8 and other non-parties. As previously explained downloaded versions of message transcripts do not include images or screenshots. Many of the images Baylor states are missing are however found in Baylor's Exhibit C (ECF 605-3).

The above has been communicated to Baylor repeatedly. The Court should deny the motion.

**2.    Unexplained redactions –** Plaintiffs have already complied with the Court's order regarding redacted non-party student names.[6] Although Baylor complains the redactions are "unexplained,"[7] Plaintiffs' counsel have previously explained these multiple times noting "The redactions contained in Jane Doe 3's and Jane Doe 6's social media records are non-responsive communications and communications post 5/30/2016 and are hardly what can be considered 'significant' as Jane Doe 3's approximately *235* pages of social media records contain *8* redactions and Jane Doe 6's *50* pages contain *13*."[8] None of the redactions include the non-party student names that were the subject of ECF 301. The redactions complained of in Baylor's Exhibit A (ECF 605-1) contain messages that are

---

[5] *See* Exhibit G (Jane Doe 3:336-368).
[6] ECF 301.
[7] Baylor attached for the Court's consideration its August 29, 2018 letter to Plaintiffs' regarding their issues with Plaintiffs' production, but failed to mention or produce Plaintiffs' response. See Ex. G
[8] *Id.*

not responsive to Baylor's requests and messages post-May 30, 2016.  For example, page 182 contains messages post-May 30, 2016 and the redaction on page 368 is the start of an unrelated message with an unknown person. The redactions complained of in Baylor's Exhibit B (ECF 605-2) include messages not responsive and messages post-May 30, 2016. The messages are not "unexplained" and do not consist of material the subject of the Court's Order (ECF 301).

   **3.  Unexplained Omissions -** What Baylor labels as "missing content" are in most cases a date and timestamp placeholder for images that *are not retained* on the downloaded version of Facebook private messages. As Baylor points out, the embedded screenshots (photos of text messages) provided by Jane Doe 8 (ECF 605-3) are the "missing content" that is reflected in Baylor's Exhibit A (ECF 605-1). Baylor's Exhibit A (ECF 605-1) contains the transcript version of the private message downloads. Baylor's assumption that Jane Doe 8 and Jane Doe 3 omitted material regarding relevant conversations, and Baylor's inference about Jane Doe 3 in their motion are both inaccurate.[9] *The Jane Does have produced what they have.* Jane Doe 3 deleted messages from her rapist, and Plaintiff's counsel has told Baylor this over and over.[10] As Baylor also knows, some Jane Doe 3 messages were automatically deleted per user settings prior to litigation. Further, Baylor has refused three offered dates for Jane Doe 3's deposition where it could question her about this and any other messages.[11]

   Additional messages referenced by Baylor have also been provided, such as the sexual assault survivor group private messages produced by Jane Doe 3. Baylor's claim to not have received the messages from Jane Doe 3 or Jane Doe 8 for May 2016 is bizarre since Baylor's own exhibits include the very messages from these Jane Does in May 2016.[12]

---

[9] ECF 605 at 4, footnote 2
[10] See ECF 605-15, email from Eleeza Johnson.
[11] See Exhibit F (e-mail from Jim Dunnam on Aug 21, 2018), email from Eleeza Johnson on July 6, 2018, and email from Jim Dunnam on June 6, 2018).
[12] Baylor's Exhibits A, B, E, F (ECF 605-1, 605-2, 605-5, 605-6).

**4. Jane Doe 8's Facebook messages -** With respect to this complained-of category, Baylor has these messages as well - *Plaintiffs have provided them.* What does it matter whether it was downloaded by Jane Doe 1 or 3 or 9? *They are the exact same.* Baylor's claim that redactions remain in the survivor group private message by Jane Doe 3 *is false.*

**5. Emails and Text Messages Between Plaintiffs –** Here Baylor complains that Jane Doe 8 produced messages with Jane Doe 1 and Jane Doe 4 that were not also produced by Jane Does 1 and 4. Again, Baylor *has the messages.* Baylor repeatedly insults Plaintiffs by continuing to doubt them by referring to their claims as "alleged interactions." Evidently, Plaintiffs' counsel should stand at a copier all day and make duplicates for Baylor of what Baylor already has been given by Plaintiffs? As for the complained of messages, Jane Doe 1 and Jane Doe 4 have produced the messages they were able to retrieve. Jane Doe 1 testified in her deposition that she did not keep all of her text messages, and that she has been through multiple phones.  Plaintiffs are not withholding any text messages between Jane Doe 1 and Jane Doe 8 pre-May 31, 2016.

Baylor complains that Jane Doe 1 has not produced text messages between herself and Jane Doe 6 and that Doe 1 testified that she still possessed those messages. Doe 1's testimony was that she still has text messages between her and Doe 6, but did not think they pre-dated the June 3, 2016 survivor demonstration. As Baylor is aware, Plaintiffs believe that should such communications exist, they would be protected as privileged. Messages post-anticipation of litigation have been withheld. The remainder have not been withheld. Baylor further complains of an email between Jane Doe 6 and the Title IX office that generically references text messages from sexual assault survivors. The emails between Jane Doe 6 and the Title IX office *are emails that Baylor has.* The communications including text messages Jane Doe 6 references in the email include messages post-anticipation of litigation.

Baylor complains that Jane Doe 2 did not produce all communications regarding harassment from May 2016 (messages Jane Doe 2 testified during her deposition that she did not send to Patty

Crawford) and requests that Jane Doe 2 produce all messages she has with Crawford. Jane Doe 2 *has produced* all the messages she was able to retrieve. Again, to the extent they ever existed, messages between Jane Doe 2 and Crawford would be *on Baylor's email system*. In fact, Baylor has already produced some of such messages to Plaintiffs. These complaints that (1) Baylor wants documents on its own system that it has already produced to Plaintiffs, and (2) Baylor wants duplicates of documents Baylor already possesses by virtue of them having been produced to Baylor by a different Jane Doe, should be contrasted with (3) over 24 months and dozens of motions obstructing discovery by Baylor.

**6. Communications after May 31, 2016 -** Baylor's original motion to compel *did not* include complaints regarding Plaintiffs' post-May 31, 2016 communications with one another. The statements from Plaintiffs' original response that Baylor references relate to Plaintiffs' objections to production of fee agreements. The exact date that Plaintiffs *signed* fee agreements is irrelevant; Plaintiffs enjoyed an attorney-client relationship before formal engagement agreements were signed.  Even if that were not true, Plaintiffs enjoyed a joint-interest privilege before they first reached out to lawyers.[13]  Baylor cannot show a likelihood of obtaining discoverable and/or admissible evidence in communications between Plaintiffs. Even if it could, whatever was recovered would be inadmissible under Rule 403. Regardless, Baylor is not entitled to receive Plaintiffs' communications with one another once the first Plaintiff anticipated retaining counsel in this case. If the Court orders such discovery, the same should apply to all of Baylor's internal communications, including with all PR firms, with other Plaintiff's and third-party lawyers, and its insurers up to the same time period that is compelled from Plaintiffs.

**7. Engagement letters -** Plaintiffs' position is unchanged - Plaintiffs are willing to provide their engagement agreements if Baylor does the same. Certainly, these will ultimately be relevant to the attorneys' fees recoverable in this case. Ordinarily, this discovery would take place after judgment,

---

[13] See *Veasey v. Texas,* 2:13-cv-0193 (S.D. TX.)

but so long as it is mutual, Plaintiffs agree to produce them now, so long as it includes *all* counsel Baylor has engaged in this matter, including all attorneys Baylor has hired to represent third-party witnesses and employees.  To the extent any of this discovery is relevant *before* judgment, it is to show (1) the extent to which Baylor would go to coverup its wrongdoing and to gloss over the "reforms" it has supposedly undertaken and (2) the extent and expense to which Baylor has gone to influence and control the testimony of its current and former employees.

**8.  MCAT score for Jane Doe 4** - Jane Doe 4 has searched her records and communications and does not have a copy of her MCAT score. Applications to medical schools are submitted electronically and scores are automatically released to the AMCAS, The American Medical College Application Service which is the Association of American Medical College's centralized medical school application processing service. Jane Doe 4 has been deposed. She was questioned about the MCAT, including when she took it, when and how she studied for it, and about her score, to which she responded that her score "…was around probably a little less than average for medical students."[14]

**9.  Communications with law enforcement agencies and the Department of Education** - The Court will recall that Baylor takes the position that any of its communications with law enforcement should not be produced and the Court agreed.[15] Despite this, Baylor contends that such communications by Plaintiffs' should be produced. Even with this disproportionality, communications that Plaintiffs have between themselves and law enforcement and the Department of Education *have been produced*. Plaintiffs are not withholding any communications. Plaintiffs do not recall having communicated with the Department of Education unless it involved a student loan, and Baylor should have those.

---

[14] Exhibit E (Jane Doe 4 Deposition 151:3-5).
[15] ECF 146 and ECF 565.

10.     **Attorneys' fees -** Plaintiffs have set forth their position above on the production of their attorney fee agreements. Federal Rule of Civil Procedure 54(d) specifically provides that a party moving for fees, after judgment is entered, shall "disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made."[16] Courts have been working to reduce post-dispute litigation of fee disputes. Such discovery can and should be undertaken after judgment. If the Court orders attorney fee production at this time, it would waste valuable resources and consume attorney and Court time dealing with the myriad of redactions that would be necessary. Indeed, Baylor's hourly billings could take a year or more to review and redact — time that should be spent by Baylor actually complying with Courts production orders. Absent considerable redaction, one party would be able to track attorney activities in real time, thus exposing work-product and trial strategy. The Court should hold discovery on attorneys' fees until post-judgment.  In the event the Court disagrees, the production should be made by both sides.

11.     **Use and Misuse of Information -** In evaluating Baylor's motion, the Court might be informed of the nature of what is ongoing in discovery outside of motions. As expected, each Jane Doe is enduring 10 to 12 hours sitting through depositions and breaks. What is unexpected, is the level of abuse being hurled upon them, as Baylor attempts to brand a scarlet letter on someone unfortunate enough to be raped. Time is spent delving into lists a Jane Doe exchanged with girlfriends about boys they found cute or dated or kissed since high school. A psychological assessment performed prior to a Jane Doe donating a kidney to a stranger is fruit for discussion. Deposition questions probe every college/high school email, text and personal Facebook messages that Baylor deams as prurient, devoting hours of depositions over issues that have nothing to do with the resolution of this case, but instead belittle, harass, and further traumatize. Baylor forces each Jane Doe

---

[16] Fed. R. Civ. P. 54(d).

(most who have spent years trying to suppress or forget) to re-live the most miniscule details of their

assaults. Even those Plaintiffs whose post-reporting claims have been declared barred by limitations

are forced to do so. Prior sexual assaults by a step-father now serving time in jail are also re-lived.

Space and privacy limit the litany of what is transpiring, but one must ask how these questions, eliciting

a virtual play-by-play of sexual assault, are relevant-

> Q. Can you describe how deep that penetration (of the assailant's penis) was?
> Q. Do you remember how the shorts that you were wearing fit you?[17]

> Q. So the door was ajar or open?
> Q. Were the lights on in his room?
> Q. So you are in his room and then your friends, outside the bedroom – how would they call you back out?
> Q. How many feet?
> Q. What did he say when he closed the door?
> Q. Was the light still on?
> Q. When you were in the bedroom alone with him was the door closed?[18]

> Q. What race is [ASSAILANT]?[19]

> Q. Did he pin you down at any point?
> Q. Did you walk into the room or were you dragged?[20]

> Q. And then when he asked about taking it further, you said no and started crying?
> Q. And do you recall anything he said?
> Q. He said shh?
> Q. Did you still have your underwear on at that point?
> Q. After you were crying and hyperventilating, and he says -- and he shushes you, was that when he raped you?
> Q. What happened when he was done?[21]

These are but random and all too readily found examples of what Baylor has prioritized in this case.

Although the veracity of Plaintiffs' testimony of what happened to them arguably goes to issues of

damage, it is largely irrelevant to liability issues which focus on Baylor's Title IX policies and

---

[17] *See* Exhibit A
[18] *See* Exhibit B
[19] *See* Exhibit C; for anyone interested, he was evidently Greek.
[20] *See* Exhibit D
[21] *See* Exhibit E

procedures. Because Baylor has *admitted* its policies and procedures were deficient and required no fewer than 105 remedial actions, Baylor has no other defense to this case other than to accuse all 15 of these Plaintiffs as liars and attempt to send a message that continuation of this lawsuit will result in further trauma.  The Court should give Baylor no more authority to abuse these women further with the minutia of every chat, message or diary note from even their years as minors and should deny the Motion to Compel in full, more so because Plaintiffs have already complied with their discovery obligations and will continue to do so.

### PRAYER

Plaintiffs respectfully request that this Court deny Baylor's Motion to Compel.

Respectfully submitted,

 /*s*/ Chad W. Dunn
**BRAZIL & DUNN, L.L.P.**
Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
chad@brazilanddunn.com

AND

**DUNNAM & DUNNAM, L.L.P.**
Jim Dunnam
State Bar No. 06258010
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Facsimile: (254) 753-7434
jimdunnam@dunnamlaw.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been filed by ECF and sent to counsel of record via electronic notification on April 9, 2019.

/s/Chad W. Dunn
CHAD W. DUNN