IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al.*, | § § | |
| Plaintiffs, | § § | 6:16-CV-173-RP |
| v. | § § § | *Consolidated with* 6:17-CV-228-RP |
| BAYLOR UNIVERSITY, | § § | 6:17-CV-236-RP |
| Defendant. | § § | |

**PEPPER HAMILTON LLP'S MOTION FOR RECONSIDERATION
AND / OR CLARIFICATION OF PART (1)(b) OF THE
COURT'S ORDER DATED MARCH 28, 2019 (DKT. 607)**

In its order dated March 28, 2019 (the "Order") (Dkt. 607), the Court ordered Pepper Hamilton LLP ("Pepper") to "(1) produce all materials in response to the subpoena in Pepper Hamilton's custody or control that Baylor (a) does not possess or (b) has not produced, and (2) file a notice with this Court certifying that production to Plaintiffs is complete no later than April 11, 2019." Pepper has filed the required notice relative to Part (1)(a) of the Order (Dkt. 611). This Motion seeks reconsideration or clarification of Part (1)(b) of the order.

Pepper is not a party to this action. It has not represented Baylor for more than two years. Although it retained a back-up tape of its Baylor-related electronic documents, Pepper gave Baylor's new counsel all of its electronic and hard copy documents in February and March 2017 (Declarations of James K. Mowbray and Jerrick J. Lisondra, Dkt. 601-1, 601-3). Determining whether Pepper has any documents that Baylor "has not produced," as called for by Part (1)(b) of the Order, would require a page-by-page comparison of every document that Baylor has produced. That would be a herculean task that would likely take many hundreds of hours over many months. Who would pay for such work? Surely Plaintiffs and their counsel would not want to pay for it. As

a practical matter, then, Pepper must rely on Baylor to confirm whether all necessary documents have been produced. In short, Pepper is doing its level best to comply.

To ensure its ability to comply, though, and as set forth in more detail below, Pepper requests reconsideration or clarification of the Order. Although Baylor University has possession of all of Pepper's Baylor-related documents (Part (1)(a) of the order), Pepper understands that Baylor has not produced certain documents, for the following legitimate reasons:

- As permitted by the Court, Baylor has withheld those documents that it has identified in privilege logs that it has delivered to Plaintiffs.

- The parties have stipulated, and the Court has ordered, that the date range for production of documents is January 1, 2003 through June 15, 2016 (Dkt. 176). Baylor presumably has not produced electronic documents falling outside of that date range.

- In issuing the Order, the Court was most likely not aware that Pepper had represented Baylor in three matters in addition to the investigation matter. Those matters were all opened after Plaintiffs filed their complaint in this action, and the substance of those matters was separate and distinct from, and did not overlap with, the work that Pepper Hamilton performed in the investigation.

Argument

As shown in six declarations that Pepper filed with its Motion Objecting to the Production of Documents and for Specific Relief (Dkt. 601-1, 601-2, 601-3, 601-4, 601-5, and 601-6), Cozen O'Connor received all of Pepper's Baylor-related documents more than two years ago, in February and March 2017, right after Gina Maisto Smith and Leslie Gomez left Pepper and joined Cozen. Cozen in turn shared such documents with Thompson & Horton LLP. Those law firms represent Baylor; Pepper has not represented Baylor since Mss. Smith and Gomez resigned from Pepper in February 2017.

Subject to its discovery of a few hundred documents during the course of its final review, which will be produced or logged within two days, Baylor has now produced or logged all Pepper investigative materials that are responsive to Plaintiffs' production requests and are within the date range January 1, 2003 through June 15, 2016.  Declaration of Holly G. McIntush ¶¶ 6-8.  However, there are three categories of documents in Pepper's possession that Pepper understands Baylor has not produced, but which Pepper submits that it should not have to produce to Plaintiffs in this action.  For that reason, Pepper seeks reconsideration or clarification of Part (1)(b) of the Order.

<u>Documents That Have Been Logged</u>.  There are several thousand Baylor-related documents that have not been produced to Plaintiffs because they have been logged in one of Baylor's multiple privilege logs.  Baylor has provided Plaintiffs with seven privilege logs containing 5,253 entries, representing 4,409 documents and 62,205 pages (McIntush Decl. ¶ 4).  The Court has endorsed Baylor's right to withhold work product documents (Dkt. 168 at 19, reconfirmed at Dkt. 582 at 7-8) and to redact FERPA-protected information from documents (Dkt. 300 at 3-4).  However, if read literally, Part (1)(b) of the Order could require Pepper to produce all of the documents that Baylor has logged, because Baylor "has not produced" such documents.  Yet such a reading would conflict with the Court's instruction that "the Court's prior orders addressing attorney–client privilege and work product privilege for Pepper Hamilton materials, and the scope of discovery in this litigation, also apply to production by Pepper Hamilton itself" (Dkt. 607 at 4 n.2).

Pepper submits that Plaintiffs should not and do not expect Pepper to produce documents that Baylor has logged.  If Plaintiffs have any concerns about specific items in Baylor's privilege logs, they should address those concerns with Baylor's counsel.  Pepper does not have a client with which to consult about work product or FERPA issues, nor a client that would pay

Pepper for the massive amount of time needed to review and log the very same documents that Baylor has already logged (*see* Declaration of M. Duncan Grant, ¶ 9).  A literal reading of Part (1)(b) of the Order to encompass logged documents would require Pepper to produce documents that Baylor and its counsel have withheld on work product and FERPA grounds.  That is not reasonable, does not appear to be what Plaintiffs expect, and is not likely what the Court intended.

For those reasons, Pepper requests that the Order be reconsidered or clarified by revising Part (1)(b) to read as follows (new material underlined):  "Pepper Hamilton must produce all materials in its custody or control that Baylor . . . (b) has not produced <u>or logged</u>."

<u>Documents That Fall Outside the Date Range January 1, 2003 Through June 15, 2016</u>.  The parties have stipulated that the date range for production of electronically stored information shall be January 1, 2003 through June 15, 2016 (the day this lawsuit was filed), and the Court approved and so-ordered that stipulation on August 21, 2017 (Dkt. 176).  That order encompasses all responsive electronically stored information, including documents that originated as Word, WordPerfect, and PDF documents (Dkt. 176, ¶ 3(d)).  The order further provides that any subpoena served on non-parties such as Pepper must "request that non-parties produce documents in accordance with the specifications set forth herein" (Dkt. 176, ¶ 5(a)).  One of the specifications of the order is the date range upon which the parties agreed.  It would be anomalous and inconsistent with the order itself to call on Pepper to produce documents in a broader date range than the date range upon which the parties agreed for their own discovery responses.

Pepper acknowledges that the stipulated order further provides that the date limitations "do not prevent the parties from contending that relevant evidence arose or exists outside the date limitations" (Dkt. 176, ¶ 5(a)).  That proviso appears to have been included in the stipulated order to capture the rare stray document that might be shown to be relevant, even though it falls outside of the agreed-upon date range; for example, Pepper understand that Baylor has

produced documents relating to Plaintiffs' Title IX investigations that post-date June 15, 2016. But Pepper has no way of knowing which arguably relevant documents that post-date June 15, 2016 exist and have not been produced by Baylor, and Plaintiffs have not even attempted to identify any such documents.

For those reasons, Pepper requests that the Order be reconsidered or clarified by revising Part (1)(b) to read as follows (new material underlined): "Pepper Hamilton must produce all materials in its custody or control that Baylor . . . (b) has not produced <u>or logged and that were created or received between January 1, 2003 and June 15, 2016</u>."

<u>Documents Possessed by Pepper in Matters That Are Unrelated to the Baylor Investigation</u>. This action centers upon allegations of sexual assault of the Jane Doe plaintiffs by male students, and Baylor's response to those reported incidents. Pepper conducted an independent, external review of Baylor's institutional response to Title IX and related compliance issues through the lens of specific cases. It created a specific matter for its work on the investigation – Matter 2 (*see* Grant Decl. ¶ 5; Declaration of Joseph Tate ¶ 5).[1] More than two years ago, Pepper gave Cozen its Baylor-related hard copy documents and a complete set of its Baylor-related electronic documents (*see* Dkt. 601-1 and 601-3), Cozen received all such documents (*see* Dkt. 601-4 and 601-5), and Thompson & Horton was given full access to all such documents (*see* Dkt. 601-6).

After the complaint in this action was filed on June 15, 2016, Baylor retained Pepper for additional work unrelated to the investigation, and Pepper created three additional matters, Matters 3, 4, and 5. Those matters were respectively opened at Pepper on July 15, November 14, and November 22, 2016 (Grant Decl. ¶ 6). Peppers uses a "Filesite" system to preserve documents

---

[1] As is typical at Pepper, the firm did not create a Matter 1 for the work it performed on Baylor's behalf. Grant Decl. ¶ 5. Matter 2 was thus the first Baylor matter that was created at Pepper.

that it creates or receives in its client's matters, and all of the documents in the Filesite system for Baylor Matters 3, 4, and 5 were created after June 15, 2016 (Grant Decl. ¶ 7).

The subject matter of the work that Pepper handled in its Baylor Matters 3, 4, and 5 was separate and distinct from the work that Pepper performed in its work on the investigation matter (Tate Decl. ¶ 6). Specifically, the subject matter of Matters 3, 4, and 5 was the following (Tate Decl. ¶ 5):

- Matter 3:  Provide legal advice on Title IX matters including implementation of recommendations and Title IX policies and practices.

- Matter 4:  Provide legal advice and eDiscovery support to assist Baylor for various third party investigations and litigation.

- Matter 5:  Provide legal advice and eDiscovery support to Baylor for the Office for Civil Rights investigation.[2]

The subject matters of the services that Pepper performed in Matters 3, 4, and 5 are not related to Pepper's "fact-based investigation." The only matter before the Court when it issued its August 11, 2017 ruling that Baylor had waived attorney-client privilege (Dkt. 168, at 7-14) was the investigation matter; the Court was presumably not even aware of, and did not address privilege with respect to, any other Baylor matters that Pepper handled.[3] Plaintiffs have never sought a ruling or presented any evidence that any privileges were waived in such matters.

A large percentage of Pepper's documents from Matters 3, 4, and 5 consists of privileged, work product, or confidential material. Baylor has a right to protect such documents, and Pepper has a professional responsibility not to disclose its former client's privileged, work product,

---

[2] Baylor has, however, produced underlying documents from its own files in its submission to the Office for Civil Rights. McIntush Decl. ¶ 9).
[3] Nor does Pepper have a client that would pay it for the time it would need to dedicate to review and log the very same documents that Baylor has already logged (*see* Grant Decl. ¶ 9).

and other protected material. Indeed, under the Texas rules, which apply to Pepper here, *see* Pa. R. Prof. Conduct 8.5(b) (in a matter pending before a court, the rules of the jurisdiction in which the court is located govern the conduct of Pennsylvania lawyers), even unprivileged Baylor material is exempt from disclosure to Plaintiffs. Tex. Disc. R. Prof. Conduct 1.05(a), 1.05(b) (a lawyer shall not disclose a client's "confidential information," which includes both privileged information and "all information relating to a client or furnished by the client, other than privileged information, acquired by the lawyer during the course of or by reason of the representation of the client"). Pepper would be obligated to disclose such information if ordered to so do by the Court, *see* Tex. Disc. R. Prof. Conduct 1.05(c)(4), but it submits that the Court should not order it to do so.

The burden on Pepper to review documents from Baylor Matters 3, 4, and 5 to determine which documents must be withheld in whole or in part on privilege, work product, or other grounds would be significant. Especially in light of the lack of relevance of such documents, requiring Pepper, a non-party, to conduct such a review and to create a privilege log would be inconsistent with the injunction in Federal Rule 45(d)(1) that the Plaintiffs "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

Discovery of documents in Pepper's possession in Matters 3, 4, and 5 is also outside the scope of Federal Rule 26(b)(1), which permits discovery only of "matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." The proportionality standard of Rule 26(b)(1) is not satisfied here. Baylor has logged thousands of documents, and it has already produced nearly 2.9 million pages of documents (*see* Dkt. 604-4 (Plaintiffs submit an email to the Court in which Thompson & Horton stating that as of September 18, 2018, Baylor had produced that number of pages). Within that production, Baylor has produced 1,759 documents, representing 3,538 pages, from the Pepper investigative materials. McIntush Decl. ¶ 5. To the extent Pepper received documents from Baylor that are relevant to this case, such as documents that

were submitted to the Office for Civil Rights, those documents have been produced to the Plaintiffs by Baylor. McIntush Decl. ¶ 9. The documents that Pepper created or received in its Matters 3, 4, and 5 could not possibly add anything of material value to the massive amount of discovery that has already occurred. Such documents are not needed for this action, and calling on Pepper to review them and to create a privilege log would be disproportionate to the needs of the case.

For those reasons, Pepper requests that the Order be reconsidered or clarified by revising Part (1)(b) to read as follows (new material underlined): "Pepper Hamilton must produce all materials in its custody or control that Baylor . . . (b) has not produced <u>or logged and that Pepper created or received between January 1, 2003 and June 15, 2016, excluding materials that are in Pepper Hamilton's custody or control because of its representation of Baylor in any matters other than the investigation matter that Pepper has identified as Baylor Matter 2</u>."

## Conclusion

For the reasons set forth above, non-party Pepper Hamilton LLP requests that the Court reconsider or clarify Part (1)(b) of its March 28, 2019 Order by revising it to order Pepper to produce all materials in its custody or control that Baylor has not produced or logged and that Pepper created or received between January 1, 2003 and June 15, 2016, excluding materials that are in Pepper Hamilton's custody or control because of its representation of Baylor in Matters 3, 4, and 5. Pepper could certify the completeness of such production promptly after entry of such an order.

Respectfully submitted,

*By: /s/ William D. Cobb, Jr.*
WILLIAM D. COBB, JR.
Texas Bar No. 04444150
wcobb@cobbmartinez.com

COBB MARTINEZ WOODWARD PLLC
1700 Pacific Avenue, Suite 3100
Dallas, Texas 75201
(214) 220-5201

(214) 220-5251 (Fax)

Dated:  April 11, 2019               *Attorneys for Pepper Hamilton LLP*

-9-