UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, et al, | § § § | |
| Plaintiffs, | § | Civil Action No. 6:16-CV-00173-RP |
| | § | |
| v. | § | Consolidated with |
| | § | 6:17-CV-228-RP |
| BAYLOR UNIVERSITY, | § | 6:17-CV-236-RP |
| | § | |
| Defendant. | § | |

**BAYLOR UNIVERSITY'S MOTION FOR PROTECTION REGARDING PEPPER HAMILTON'S WORK SEPARATE FROM THE INVESTIGATION**

Until their recent amended motion to compel (ECF 618), Plaintiffs' efforts at obtaining Pepper Hamilton ("Pepper") materials have focused exclusively on the Pepper investigation that began in October 2015 and culminated in May 2016. *See, e.g.*, ECF 93 at 1 (". . . Court guidance is necessary regarding whether and to what extent the file materials *regarding the Pepper Hamilton investigation* will be required to be produced."). The Court's prior ruling on waiver likewise focused exclusively on the investigation. *See, e.g.*, ECF 168 at 13-14 ("Because of these representations [about the Pepper investigation], and because of the level of detail publicly released about the investigation as a whole, the Court concludes that the *waiver encompasses the entire scope of the investigation*, and all materials, communications, and information provided to Pepper Hamilton as part of the investigation.") (emphasis added). Even Plaintiffs' original motion to compel the Pepper subpoena focused solely on the investigation, asking "that the Court overrule PH's objection in conformity with its order regarding Baylor's waiver of the attorney-client privilege"—*i.e.* the order that found waiver related to the *investigation*—and described their subpoena as seeking "*documents that make up PH's investigation*." ECF 328 at 7 (emphasis added).

Now, however, Plaintiffs are taking the position that Baylor has waived privilege on *any* work performed by Pepper for the University, even though that question has never been briefed or decided by the Court.  ECF 617, 618.  Plaintiffs' view of waiver is overly broad and unsupported by the law and facts.  Accordingly, Baylor asks for the Court's protection.

Baylor also asks for the Court's protection on a different but related matter.  The vast majority of the privileged information Plaintiffs are seeking from Pepper was created after June 15, 2016—a date that the parties agreed, and the Court ordered, would be the cutoff for ESI discovery. Although the parties are allowed to contend that relevant evidence exists after that date, Plaintiffs have yet to explain how the privileged information they now seek is relevant or proportional to the needs of the case.  They have also not asked for relief from the ESI Order.  Thus, Baylor is also asking that—at least until Plaintiffs demonstrate relevance and proportionality and obtain a different ruling from the Court as to the ESI discovery cut-off date—Plaintiffs be prohibited from seeking discovery from Pepper of ESI created after June 15, 2016.

## STATEMENT OF RELEVANT FACTS

As has been fully briefed before, Baylor hired Pepper in fall 2015 to conduct an investigation into Baylor's institutional response to Title IX and related compliance issues (the "Investigation").  *See* ECF 104 and accompanying declarations and affidavits.  The Investigation was the subject of previous privilege briefing and a hearing before the Court.  *See id.*; *see also, e.g.*, ECF 93, 168.  Baylor provided evidence, and the Court found, that "Baylor was seeking legal advice when it engaged Pepper Hamilton in September 2015" and that the "communications between Baylor and Pepper Hamilton" related to this matter "are therefore subject to the attorney-client privilege."  ECF 168 at 5, 7.  The Court also found, however, that ". . . Baylor waived the attorney-client privilege by making repeated disclosures regarding the Pepper Hamilton investigation . . . ."  ECF 168 at 13.  The Court concluded that the waiver encompassed "the entire scope of the investigation, and all materials, communications, and

information provided to Pepper Hamilton as part of the investigation." ECF 168 at 13-14. The Court did not find—and was not asked to—that Baylor had waived any privilege beyond the Investigation.

After Pepper concluded its Investigation in May 2016 and the Regents' Findings of Fact were published, Pepper was asked to perform additional legal services for Baylor that were separate from the Investigation. In particular, Baylor consulted with Pepper regarding legal issues pertaining to employment matters, pending and anticipated litigation by students and former employees, third-party investigations and anticipated litigation related thereto, and implementation of Pepper's 105 recommendations (collectively the "Other Legal Matters"). *See* ECF 532-1, ¶ 8; Ex. A (Holmes decl.), ¶ 4; Ex. B (Gomez decl.), ¶ 4. Christopher Holmes, Baylor's General Counsel, and Leslie Gomez, one of the Pepper lawyers responsible for the Other Legal Matters, have both sworn that the communications between Baylor and Pepper in connection with the Other Legal Services were made for the purpose of facilitating the rendition of professional legal services for Baylor; that the communications were confidential; that the confidential communications were not disclosed outside the privilege; and that the work done on the Other Legal Matters was in anticipation of litigation. Ex. A, ¶ 5; Ex. B, ¶ 6. As discussed below, Baylor and Pepper have consistently asserted privileges regarding these communications and work.[1]

Recent statements notwithstanding, Plaintiffs have been on notice that Pepper did other legal work for Baylor for quite some time. *Compare* ECF 532-1, ¶ 8 (September 2018 declaration of Christopher Holmes stating that, after the Investigation concluded, "Pepper Hamilton continued to

---

[1] While it is true that Baylor and Pepper were anticipating litigation in conjunction with their work on the Other Legal Matters, it is also worth noting that by May 2016, Baylor had already been named a defendant in a Title IX lawsuit. Ex. A, ¶ 6. Two more Title IX lawsuits, including this one, were filed against Baylor in June 2016. *Id.* Other lawsuits, including related employment claims, have been filed since. *Id.* Further, since July 2016, Baylor has also negotiated Title IX and related employment claims that did not ultimately result in litigation. *Id.* Baylor has also been the subject of several third-party investigations; although none of the third-party investigations have resulted in litigation to date, Baylor has also approached those investigations in anticipation that litigation might result. *Id.*

perform additional legal services for Baylor University that were separate from the sexual assault investigation" and outlining those additional legal services); *with* ECF 618-1 at 5 (April 2019 email from Plaintiffs' counsel stating, "We were unaware that PH represented Baylor in any other matters other than its investigation.").[2]  Baylor is filing this motion for protection now that Plaintiffs are contending that they are seeking discovery related to the Other Legal Matters.  *See* ECF 617 at 8 (arguing for the first time "that these 'other' matters are clearly related to the investigation and Regent Findings"); *see generally* ECF 618 (seeking to compel "non-Investigation" materials).

## ARGUMENT AND AUTHORITIES

### I.   Pepper's work is protected by the attorney-client and work-product privileges.

With the single exception of the Investigation, which was the subject of the Court's previous privilege ruling (ECF 168), all of Pepper's work for Baylor is protected by the attorney-client privilege, and all of Pepper's work (including the Investigation) is protected as work product.  The attorney-client privilege requires proof of (1) confidential communication; (2) to a lawyer; (3) for the primary purpose of securing a legal opinion, legal services, or assistance in a legal proceeding.  *U.S. v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997).  Work-product is different and encompasses "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ."  FED. R. CIV. P. 26(b)(3).  As detailed in the Statement of Facts above and in more detail in the declarations attached to this motion, Pepper's work on the Other Legal Matters meets both these standards.  *See Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex.

---

[2] Plaintiffs' confusion is not limited to the type of work Pepper did for Baylor, but also to the timing. Contrary to the assertions in Plaintiffs' response to Pepper's motion for reconsideration, *see* ECF 617 at 3-4, Pepper did not open new billing matters for Baylor "in April 2016," before the Investigation concluded, or after lawyers Gina Maisto Smith and Leslie Gomez left Pepper to join Cozen O'Connor. The declaration they cite in support of that assertion says no such thing.  *See* ECF 612-3, ¶ 5. Regardless, Baylor's arguments here apply no matter where the privileged documents reside, or which firm did the work.

2004) (party asserting privilege must provide "sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists").[3]

### A. Pepper Hamilton did not – and could not – waive Baylor's privileges.

The attorney-client privilege belongs to the client and therefore can only be waived by the client. *United States v. Hankins*, 631 F.2d 360, 365 (5th Cir. 1980). The work-product privilege, in contrast, "belongs to both the client and the attorney, either of whom may assert it. Thus, a waiver by the client of the work product privilege will not deprive the attorney of his own work product privilege, and vice versa." *In re: Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994). Thus, Plaintiffs' assertion that *Pepper* waived any privilege is legally incorrect.

It is also factually incorrect. Pepper has objected repeatedly that Plaintiffs seek privileged documents. *See, e.g.*, ECF 328-2 at 2 (". . . Pepper objects to the subpoena to the extent it seeks the production of documents that are protected against disclosure by the attorney-client privilege, the work product doctrine or any other recognized protection against disclosure."); ECF 601 (citing Court's original Pepper order and addressing burden of making appropriate work-product redactions); ECF 612 at 3 (asking for reconsideration and clarification of the Court's most recent Pepper order because it could require Pepper to produce privileged documents, contrary to the Court's prior orders).

Moreover, it is improper for Plaintiffs to seek privileged documents from Pepper without trying to obtain them directly from Baylor, the only party holding the privilege. Importantly, Baylor has consistently asserted that Pepper's non-Investigation work is privileged. *See, e.g.*, ECF 94-2 at 9-17 (objecting to RFPS as protected by both attorney-client privilege and work-product doctrine); ECF 532-1, ¶¶ 8-10 (discussing Other Legal Matters and proving up privilege for some services provided after the Investigation concluded). It would be equally improper for Plaintiffs to seek privileged

---

[3] The Court has explained the legal parameters of these privileges at length, so Baylor will not belabor them here. *See generally* ECF 168.

materials from any of Baylor's other lawyers.  Baylor's Motion for Protection thus seeks protection of these privileged communications and work product from disclosure no matter where or with which lawyers the communications or work product resides.

### B. The Court has not found – and was not asked to find – waiver beyond the investigation.

When this Court found that Baylor had waived attorney-client privilege as to the Investigation, its ruling was expressly limited to the Investigation: "Because of these representations, and because of the level of detail publicly released about the investigation as a whole, the Court concludes that the waiver encompasses the entire scope of the investigation, and all materials, communications, and information provided to Pepper Hamilton as part of the investigation."[4]  ECF 168 at 13-14. The Court's work-product analysis similarly focused on the Investigation.  *Id.* at 15 ("The evidence Baylor submitted demonstrates that its decision to hire Pepper Hamilton to investigate its Title IX compliance was not part of 'a routine practice' of the university, but was primarily motivated by its anticipation of litigation.").  The Court has not found—and has not been asked to find—that Baylor waived anything outside of the Investigation.[5]

As the Court explained in its order addressing waiver of the Investigation communications, "When a party waives the attorney-client privilege, it waives the privilege as to all communications that pertain to the same subject matter of the waived communication."  ECF 168 at 7 (quoting *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 317 (N.D. Tex. 2009)).  "Many courts make prudential distinctions between what has been revealed and what remains privileged."  *Muncy v. City of Dallas*, No. 3:99-CV-

---

[4] Plaintiffs subsequently agreed to limit production to information actually *reviewed* by Pepper Hamilton, not just information *provided* to them.  *See* ECF 173 at 2-3.

[5] Plaintiffs' motion to compel that led to the Court's waiver finding specifically stated that "Court guidance [was] necessary regarding whether and to what extent the file materials regarding the Pepper Hamilton investigation will be required to be produced" and argued that "Baylor Must Produce All Materials Concerning the Pepper Hamilton Investigation" or that, "Strictly in the Alternative, All Materials Concerning the Pepper Hamilton Investigation Must be Produced and Only Work Product and Client Communications Withheld and Logged."  ECF 93 at 1, 4, 8.

2960, 2001 U.S. Dist. LEXIS 18675, *12-13 (N.D. Tex. Nov. 13, 2001) (finding waiver with respect to advice from two attorneys about implementation of a reorganization plan, but "not constru[ing] the waiver so broadly as to encompass all documents . . . which sought outside counsel's advice about the plan"); *see also Wolff v. Biosense Webster, Inc.*, No. EP-17-CV-00328-PRM, 2018 U.S. Dist. LEXIS 133742, at *8 (W.D. Tex. Aug. 8, 2018) (citing *Muncy* and finding that drafts were "privileged to the extent not previously disclosed in the final document versions"). Here, the Court found that Baylor waived the attorney-client privilege as to the Investigation because of Baylor's repeated "representations" that "the Findings of Fact and Recommendations summarize and represent the full course of Pepper Hamilton's investigation," along with "the level of detail publicly released about the investigation as a whole." ECF 168 at 13. Baylor has not made similar representations or public statements about the Other Legal Matters. The basis for the Court's waiver finding does not exist with respect to the Other Legal Matters.

## II. Plaintiffs should be prohibited from seeking discovery created after June 15, 2016 from Pepper Hamilton.

The parties agreed, and the Court ordered, that "[o]nly ESI created or received between January 1, 2003 and June 15, 2016 will be preserved and produced." ECF 176 at 1. The discovery cut-off date is not random; it is the date this lawsuit was filed. *See* ECF 1.

Although the ESI Order states that the date limitations "do not prevent the parties from contending that relevant evidence arose or exists outside the date limitations," *id.*, Plaintiffs have yet to explain the relevance of privileged work that took place after that date, explain how it is proportional to the needs of the case, or seek relief from the stipulated order.

In light of the consolidation of lawsuits, Baylor recognizes that the negotiated date of June 15, 2016 might need to be revisited, at least with respect to Jane Doe 11, who claims an assault in 2017.[6]

---

[6] Jane Doe 11's alleged assault occurred in April 2017. *See* No. 1:17-cv-00811, ECF 1, ¶ 51. Jane Does 12, 13, 14, and 15 allege that their assaults occurred in March 2016, April and fall 2012, April 2016,

But Jane Doe 11 has yet to propound any discovery. The only thing at issue is Plaintiffs' past discovery requests – not ones yet to be written. Further, the issues presented by Jane Doe 11's case are much different than the issues regarding the other plaintiffs, both in terms of timing and in terms of scope. The parties have not conferred about the timing or scope of discovery as it relates to Jane Doe 11. That discussion, and resolution by the Court if the parties cannot agree, should occur before Plaintiffs are allowed to seek discovery outside the agreed date range from third parties. For now, based on existing orders in effect for more than a year, Baylor asks the Court to prohibit Plaintiff from seeking discovery after June 15, 2016 from Pepper, in addition to protecting the privileged nature of the materials generated as part of Other Legal Matters.

## CONCLUSION AND PRAYER

For the reasons set forth above, Baylor asks for the Court's protection from Plaintiffs' attempt to seek privileged discovery from Baylor's former law firm, Pepper Hamilton, after the discovery cutoff date agreed to by the parties and ordered by the Court. Baylor asks that the Court (i) grant this motion, (ii) determine that the Other Legal Work performed by Pepper Hamilton is protected by both the attorney-client and work-product privileges, and that those privileges have not been waived, (iii) prohibit Plaintiffs from seeking discovery from Baylor or third parties about the Other Legal Work, and (iv) prohibit Plaintiffs from seeking discovery created after June 15, 2016 from Pepper Hamilton. Baylor further requests any other relief to which it may be entitled.

---

and February 2016, respectively—all preceding the current discovery cut-off date in Jane Does 1-10. *See* No. 6:17-cv-236, ECF 14, ¶¶ 50, 78, 84, 106. The latest assault in the Jane Does 1-10 case is alleged to have occurred in February 2016. ECF 56, ¶ 254.

Respectfully submitted,

**WEISBART SPRINGER HAYES LLP**
212 Lavaca Street, Suite 200
Austin, Texas 78701
512.652.5780
512.682.2074 fax

By:   /s/ Julie A. Springer
      Julie A. Springer
      State Bar No. 18966770
      jspringer@wshllp.com
      Sara E. Janes
      State Bar No. 24056551
      sjanes@wshllp.com
      Geoffrey D. Weisbart
      State Bar No. 21102645
      gweisbart@wshllp.com


**THOMPSON & HORTON LLP**
Lisa A. Brown
Texas Bar No. 03151470
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027-7554
(713) 554-6741
(713) 583-7934 fax
lbrown@thompsonhorton.com

Holly G. McIntush
Texas Bar No. 24065721
400 West 15th Street, Suite 1430
Austin, Texas 78701
(512) 615-2350
(512) 682-8860 fax
hmcintush@thompsonhorton.com

**COUNSEL FOR DEFENDANT
BAYLOR UNIVERSITY**

## CERTIFICATE OF CONFERENCE

I conferred with Plaintiffs' counsel about the relief requested in this motion. They are opposed.

/s/ Julie A. Springer
Julie A. Springer

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was served upon all counsel of record on May 2, 2019, via the Court's ECF/CMF electronic service system as follows:

Mr. Chad W. Dunn (Attorney in Charge)     *Via ECF: chad@brazilanddunn.com*
**BRAZIL & DUNN, L.L.P.**
3303 Northland Drive, Suite 205
Austin, Texas 78731

Mr. K. Scott Brazil     *Via ECF: scott@brazilanddunn.com*
**BRAZIL & DUNN, L.L.P.**
13231 Champion Forest Drive, Suite 460
Houston, Texas 77069

Mr. Jim Dunnam     *Via ECF: jimdunnam@dunnamlaw.com*
**DUNNAM & DUNNAM, L.L.P.**
4125 West Waco Drive
Waco, Texas 76710

/s/ Julie A. Springer
Julie A. Springer