**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| JANE DOE 1, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | 6:16-CV-173-RP |
| | § | |
| v. | § | *Consolidated with* |
| | § | 6:17-CV-228-RP |
| BAYLOR UNIVERSITY, | § | 6:17-CV-236-RP |
| | § | |
| Defendant. | § | |
| | § | |

**PEPPER HAMILTON LLP'S RESPONSE TO PLAINTIFFS'
AMENDED MOTION TO COMPEL PEPPER HAMILTON AND
MOTION FOR SANCTIONS (DKT. 618)**

Plaintiffs' Amended Motion to Compel Pepper Hamilton and Motion for Sanctions (the "Motion") (Dkt. 618) misconstrues the Court's orders, misstates the facts, and disregards applicable law. The essence of the Motion is Plaintiffs' contention that non-party Pepper Hamilton LLP ("Pepper") has ignored the Court's orders and should be sanctioned for that reason (*see* Motion at 1, 2, 3, 5). But Pepper has not violated the Court's orders, and under Fifth Circuit precedent, there is no basis to sanction Pepper.

Plaintiffs identify two orders with which they say Pepper has not complied: the orders dated March 7, 2019 (Dkt. 597) and March 28, 2019 (Dkt. 607) (*see* Motion at 1 n.1, listing those two orders). In this Response, Pepper describes what the Court required in those two orders and shows why Pepper has neither ignored nor violated either of them. After addressing other positions Plaintiffs take in the Motion, Pepper sets out the applicable law, which, when applied to the actual facts, not the distorted version set forth in the Motion, demonstrates that there is no basis for sanctioning Pepper.

<u>Pepper's Compliance With the March 7, 2019 Order</u>.  The first of the two orders at issue resolved Plaintiffs' motion to compel Pepper to comply with the subpoena that Plaintiffs served on Pepper on March 29, 2017 (the "Subpoena") (Dkt. 328 and 328-1).  In the March 7 Order, the Court required Pepper to do one of two things by March 15, 2019 (Dkt. 597 at 2, bold in original):

> No later than **March 15, 2019**, Pepper Hamilton is **ORDERED** to either (1) complete production in response to the subpoena and file a notice with this Court certifying the production to Plaintiffs is complete, or (2) file a motion with this Court detailing any objections to production and requesting specific relief.

Pepper proceeded under alternative (2).  On March 15, 2019, the date called for in the Order, Pepper filed its Motion Objecting to the Production of Documents and for Specific Relief Pursuant to the Court's Order Dated March 7, 2019 (Dkt. 601).  That motion was supported by six declarations, all of which were backed up by documentary exhibits.  There is no doubt that Pepper complied in full with the March 7 Order.

<u>Pepper's Compliance With the March 28, 2019 Order</u>.  The second of the two orders resolved Pepper's Motion Objecting to the Production of Documents and for Specific Relief.  In its March 28, 2019 Order, the Court required Pepper to produce materials in two categories, depending on what Baylor possessed and what Baylor had produced, and to file a notice stating that production is complete (Dkt. 607 at 4, bold in original):

> Pursuant to the terms of this order and the Court's prior order granting Plaintiffs' motion to compel, (Dkt. 597), Pepper Hamilton is **ORDERED** to (1) produce all materials in response to the subpoena in Pepper Hamilton's custody or control that Baylor (a) does not possess or (b) has not produced, and (2) file a notice certifying that production to Plaintiffs is complete no later than **April 11, 2019**.

○     *Part (1)(a) of the March 28 Order*.  In response to Part (1)(a) of the March 28 Order, Pepper filed a Notice on April 11, 2019 in which it stated "with respect to Part (1)(a) of the

[March 28] Order only, that production is complete" (Dkt. 611).  The March 28 Order did not require Pepper to submit evidence in support of the Notice, but Pepper did so, in the Declaration of M. Duncan Grant that accompanied the Notice (Dkt. 611-1).  The Grant Declaration summarizes the factual basis for the Part (1)(a) Notice, specifically five declarations (Dkt. 601-1, 601-3, 601-4, 601-5, 601-6) that demonstrated that all of Pepper's hard copy Baylor documents were transferred to Cozen O'Connor (with the exception of a duplicate copy of a small subset of the hard copy documents that had been transferred); that all of Pepper's electronic Baylor documents were uploaded to a data room to which Cozen O'Connor had access; that Cozen O'Connor downloaded everything from the data room; and that Cozen O'Connor shared the investigatory material with Thompson & Horton so that a privilege log could be prepared and so that any non-privileged information could be produced.[1]

Plaintiffs criticize Pepper for consulting with Baylor to determine which documents Baylor possesses (Motion at 2).  Yet such a consultation was the point of the Court's order.  Without confirming that Baylor's Pennsylvania and Texas counsel had downloaded all of the electronic documents that Pepper had placed into a data room more than two years ago (*see* Dkt. 601-4, 601-5, 601-6), Pepper could not have given the required notice under Part (1)(a) of the March 28 Order.  It would not have been possible for Pepper personnel personally to review, page by page, the millions of pages that Baylor has produced to Plaintiffs, and then compare those pages with the documents

---

[1] As part of its continuing due diligence, Pepper determined three days ago, on April 29, 2019, that it had a hard drive that PwC had provided to it in March 2017, after Baylor transferred its representation to Cozen.  Joseph Tate, an attorney who was at Pepper at the time (now with Cozen) requested that PwC send a copy of the hard drive to Pepper.  The data on the hard drive is the same data described by Baylor as the "PH Collection" in its Brief in Response to Motion to Compel Pepper Hamilton and for Sanctions ("Baylor's Response Brief"), data that Plaintiffs have previously agreed Baylor does not have to produce.  See Declaration of Joseph Tate, attached as Exhibit F to Baylor's Response Brief.  The data in this hard drive provided to Pepper after Baylor transferred its work to Cozen has never been accessed.  *See* Declarations of Jerrick J. Lisondra and Jessica Kozlov Davis, attached as Exh. A and B.

in Pepper's custody, all within the 14 days allowed by the March 28 Order.  In short, Pepper has properly and fully complied with Part (1)(a) of the March 28 Order.

       ○    *Part (1)(b) of the March 28 Order.*  In response to Part (1)(b) of the March 28 Order, Pepper filed a Motion for Reconsideration and/or Clarification on April 11, 2019 (Dkt. 612). In that motion, which is pending, Pepper asked the Court to reconsider and/or clarify Part (1)(b) of the March 28 Order by revising it to read as follows (new material underlined):  "Pepper Hamilton must produce all materials in its custody or control that Baylor . . . (b) has not produced <u>or logged</u> <u>and that Pepper created or received between January 1, 2003 and June 15, 2016, excluding materials</u> <u>that are in Pepper Hamilton's custody or control because of its representation of Baylor in any</u> <u>matters other than the investigation matter on which this Court has previously found a waiver</u> <u>(generally encompassed in Baylor Matter 2).</u>"[2]

      The filing of the motion for reconsideration placed Part (1)(b) of the Order into abeyance until the Court determines whether to reconsider or clarify the Order, and thus served as a substitute for immediate compliance.  *Alexander v. Canon Cochran Management Services, Inc.*, 2010 U.S. Dist. LEXIS 122275, at *11 (E.D. La. Nov. 18, 2010) (Magistrate Judge ruling) (denying motion for contempt because party filed a motion for reconsideration that "raised significant issues concerning the . . . order").  Pepper's motion for reconsideration and/or clarification raises very significant issues concerning the March 28 Order.  As shown in that motion and in Baylor's Briefs, there are substantial questions about whether Pepper should have to produce or log the huge number of documents that Baylor has already logged; whether the date range question has been resolved by stipulation and by Court order; and whether Plaintiffs' earlier motions to compel and the Court's orders resolving such motions all referred only to Pepper's independent, external investigation, not

---

[2] The wording here is slightly different from the wording proposed in the Motion, to take account of positions that Plaintiffs have taken.

to other matters in which Pepper represented Baylor.  Because Pepper has raised significant issues in seeking reconsideration and/or clarification, there has been no violation of Part (1)(b) of the March 28 Order.

       The extreme rhetoric that Plaintiffs use in the Motion is unwarranted and lacks a factual basis.  Plaintiffs assert that Pepper is "ignoring the Court's orders,"[3] that Pepper has "flat out refused" to comply with and "continues to ignore the Court's orders,"[4] that Pepper is "rehashing rejected arguments,"[5] that Pepper has "defied this Court's orders,"[6] that Pepper and Baylor have "reached an agreement to circumvent the Court's order."[7]  None of that is accurate.  The intensity of the vocabulary that Plaintiffs use in their Motion does not alter the fact that Pepper has complied in full with the March 7 Order and Part (1)(a) of the March 28 Order, and has sought reconsideration and/or clarification of Part (1)(b) of the March 28 Order.  There are no facts supporting Plaintiffs' rhetoric; it instead appears that they are seeking to speculate about Pepper's motives.

       <u>Baylor's Document Production Has Been Extremely Thorough, but Even if it Had Not Been, Pepper Is Not a Proper Alternative Source for Documents</u>.  Plaintiffs' argument for sanctioning Pepper appears to be based principally on their contention that Baylor has not properly fulfilled its discovery obligations; Plaintiffs see Pepper as a collateral source of the materials that they believe Baylor has either withheld or improperly logged.  But there is no support in the law, and Plaintiffs cite none, for the contention that a non-party must produce records because a plaintiff believes that a defendant that possesses the same documents has not produced them.  Pepper is an

---

[3] Motion at 1.
[4] Motion at 3.
[5] Motion at 3.
[6] Motion at 3.
[7] Motion at 5.

outsider to this litigation; it has not represented Baylor since February 2017, a full 27 months ago; and it has no say in or control over what Baylor does with respect to discovery. The Baylor documents in Pepper's possession contain substantial amounts of work product and FERPA material. Pepper owes important professional obligations to Baylor to protect Baylor's confidential information. *See*, *e.g.*, Tex. Disc. R. Prof. Conduct 1.05. Baylor would necessarily have to assist and advise Pepper in making any determinations about redacting or logging Pepper's documents, but Baylor has already made those determinations with its own documents, many of which are the same as the Pepper documents, in its capacity as the defendant in this action. Only Baylor, not Pepper, may waive Baylor's privileges and protections.

One also ought not overlook, as Plaintiffs do, the fact that Baylor has produced more than 3,250,000 pages of documents and has logged nearly 67,000 pages of electronic documents and 150 hard copy working files (*see* Dkt. 613), all of which shows that Baylor has been extremely diligent in fulfilling its discovery duties. Baylor's own filings in response to the Motion demonstrate the huge amount of work that its lawyers have performed in producing and logging documents. The proportionality principles of Rule 26 and the avoidance of burden to non-parties principles of Rule 45 strongly counsel against the relief that Plaintiffs seek from Pepper, particularly in view of Baylor's diligence in dedicating a massive amount of work to fulfill its document production obligations. Pepper is not a proper proxy for Baylor or for the performance of Baylor's duties. If Plaintiffs believe that Baylor has not been forthcoming with discovery, as they apparently do, their appropriate recourse is to raise the issues with Baylor and, if necessary, with the Court. Rule 37 remains available to Plaintiffs for any such motion practice.

<u>Plaintiffs Improperly Seek to Expand the Relief That They Previously Sought</u>. Plaintiffs attempt to alter and broaden the relief that they originally requested and that the Court has granted, and now ask the Court to require Pepper to produce documents *even if they have already been*

*produced or logged by Baylor.*  Plaintiffs seek to analogize the situation to the Court's recent order that requires Plaintiffs to produce items in their custody or control even if another Plaintiff has produced the same or similar information (Dkt. 615 at 2).  That argument ignores three critical facts:

> *First*, the amount of time and work that Pepper would have to apply vastly exceeds that which the Court's order imposes on Plaintiffs.

> *Second*, the social media materials that were the subject of the Court's order pertaining to the Plaintiffs' documents could very possibly differ from Plaintiff to Plaintiff, whereas the documents that Plaintiffs now want Pepper to produce are by definition the very same documents that are in Baylor's possession.

> *Third*, and most importantly, *Pepper is not a party to this lawsuit*, and the rules that apply to non-parties are far more protective than the rules that apply to parties.  Rule 45 embodies a strong policy that non-parties, who have no interest in the outcome of a lawsuit, should not be unduly burdened with expense or inconvenience.  "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and any court order compelling production of documents "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  Fed. R. Civ. P. 45(d)(1), (d)(2)(B)(ii).  By requesting that Pepper produce and log documents that have already been produced and logged by Baylor, Plaintiffs ignore both the letter and the spirit of those parts of Rule 45.  The general rule, one that Plaintiffs would have the Court overlook, is that requiring a *non-party* to produce documents that a *party* possesses and can produce is an undue burden on the non-party.  *See, e.g., Parrish v. Premier Directional Drilling, L.P.*, 2017 WL 5139260 at *2-*3 (W.D. Tex. May 8, 2017) (granting motion to quash third-party subpoena that sought same documents as pending discovery requests propounded to party; "the parties should first

attempt to resolve their dispute regarding plaintiff's request for production to the defendant"). Plaintiffs' proposal should be denied.

As Baylor shows in its Briefs, it has spent more than $2 million on contract attorneys to enable it to produce the information Plaintiffs have requested and more than $2.5 million on e-discovery technology fees. There is no possible reason or basis to put Pepper, a non-party, to comparable expense to duplicate the same work. Rule 45 does not contemplate putting that kind of burden on a non-party.

<u>Pepper Did Not Ignore the Subpoena</u>.  Additionally, Plaintiffs contend that Pepper "at first wholesale ignor[ed] the subpoena" and "did not timely comply with Rule 45" (Motion at 1, 3). Both statements are erroneous; Pepper served Rule 45 objections in April 2017, within the time permitted by Rule 45 (Dkt. 328-2). Plaintiffs did not file a motion to compel until 14 months later, in June 2018.

<u>The Failed Meet-and-Confer is a Non-Issue</u>.   Plaintiffs express their views about a failed meet-and-confer session in which Plaintiffs and Pepper discussed ways in which Part (1)(b) of the Order could be modified by agreement (Motion at 4-6). Pepper could not disagree more ardently with Plaintiffs' descriptions of the meet-and-confer. The simple fact is that Plaintiffs proposed a solution that was not acceptable to Pepper, following which Pepper proposed a solution that was not acceptable to Plaintiffs. Lack of success in resolving a dispute does not in any way imply lack of good faith in conferring and in attempting to find a resolution.

<u>The Applicable Law Requires Denial of the Motion</u>.  Plaintiffs cite no case law and no statutes or rules in the Motion. Because the Motion arises from the Court's orders relating to the Subpoena, the source of law upon which Plaintiffs must necessarily be relying is Rule 45(g) of the Federal Rules of Civil Procedure, which provides that the Court "may hold in contempt a person who, having been served [with a subpoena], fails without adequate excuse to obey the subpoena or

an order related to it." The March 7 and March 28 Orders are orders related to the Subpoena, and thus the questions are whether Pepper failed to obey such Orders and, if it did, whether it did so without adequate excuse. As shown above, Pepper obeyed the March 7 Order, obeyed Part (1)(a) of the March 28 Order, and sought reconsideration and/or clarification of Part (1)(b) of the March 28 Order. As a result, the contempt power conferred by Rule 45(g) may not be appropriately invoked here.

The Fifth Circuit has developed a body of law that applies directly to any motion for contempt and that supports the conclusion that Pepper may not be sanctioned. According to the Fifth Circuit:

> "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford, 68 F.3d 958, 961 (5th Cir. 1995).* For civil contempt, this must be established by clear and convincing evidence. *Id.*

*Hornbeck Offshore Services, L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013). *Accord*, *Waste Management of Washington, Inc. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015). The "clear and convincing" standard has long been a part of Fifth Circuit law. *See*, *e.g.*, *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)).

It is true, of course, that Pepper had knowledge of the court's orders. The March 7 Order and Part (1)(a) of the March 28 Order were "definite and specific," but Pepper has asked the Court to reconsider or clarify Part (1)(b) of the March 28 Order so that Pepper will be able to comply with it. But the most essential element of contempt – violation of the orders – is not present here under any standard of proof, and certainly not under the Circuit's clear-and-convincing standard. That standard is a very high one:

> Clear and convincing evidence is that weight of proof which
> produces in the mind of the trier of fact a firm belief or conviction
> . . . so clear, direct and weighty and convincing as to enable the fact
> finder to come to a clear conviction, without hesitancy, of the truth
> of precise facts of the case.

*Hornbeck*, 713 F.3d at 792 (citation omitted); *accord*, *Waste Management*, 776 F.3d at 341.  Pepper has in

fact either complied with or sought reconsideration and/or clarification of every aspect of the

March 7 and March 28 Orders.  There is nothing about Pepper's conduct that could give the Court

"a firm belief or conviction . . . so clear, direct and weighty and convincing as to enable [the Court]

to come to a clear conviction, without hesitancy," that Pepper had violated the Orders.

Returning to Rule 45(g), there is another requirement that Plaintiffs cannot establish

– that any violation of the Orders, if there was one, occurred "without adequate excuse."  That

phrase has been interpreted by the Fifth Circuit in multiple contexts to mean that even if a person

has notice of a specific court order, the person is excused from complying if the person is unable to

comply.  "[A]n alleged contemnor may defend against a prima facie showing of contempt by

demonstrating a present inability to comply with the court order."  *Waste Management*, 776 F.3d at

341.  Here, the documentation that Pepper would potentially have to produce includes a great deal

of Baylor's privileged and work product material.  The protection of a client's privilege is an example

of inability to comply; as the Fifth Circuit has put it, "a party's good faith claim of attorney-client

privilege can serve as a valid defense to a finding of contempt."  *Id.* at 342. Baylor has asserted such

a privilege claim, as reflected in its logs and as to new issues raised in Plaintiff's motion as described

in  Baylor's Motion for Protection Regarding Pepper Hamilton's Work Separate from the

Investigation (Dkt. 621).

<u>Conclusion:  The Motion Must Be Denied</u>.  As detailed more fully in Baylor's Brief

in response to the Motion, the burden Plaintiffs seek to impose on Pepper would be titanic.  The

Motion reveals either a naiveté about the nature of e-discovery or a deliberate indifference to the

-10-

immense undertaking that Pepper, a non-party to this litigation, would have to carry out.  In stark contrast to Plaintiffs' theoretical "push a button" methodology (Motion at 3-4 n.12), the full cost of compliance with the Order as presently constituted – including data ingestion, processing, analysis, review, redaction, quality-control, and production – would easily reach or exceed six figures and would take many months to execute.  One quote from a reputable vendor (attached as Exh. C) shows an estimated total of nearly $130,000 in technical expenses alone, along with more than $1 million in attorney review and quality control time, for a six-month project.

The Committee Notes accompanying the 2006 Amendments to Rule 45 cite Rule 45(c) as "provid[ing] protection against undue impositions on nonparties," and explain that courts ordering compliance with subpoenas must protect persons who are not parties or officers of parties against substantial burden.  It is difficult to imagine a scenario calling out more starkly for relief under Rule 45's protections than that presented here, where Plaintiffs would have Pepper perform a carbon copy exercise of the exacting, expensive document review and production exercise already conducted by dozens of Baylor lawyers over the better part of two years.  Plaintiffs' unprecedented demand for this duplicative and expensive discovery process should not be countenanced.

For the reasons set forth above and in Baylor's Brief, non-party Pepper Hamilton LLP requests that the Court deny Plaintiffs' Amended Motion to Compel Pepper Hamilton and Motion for Sanctions, and grant Pepper such relief as the Court deems appropriate.

Respectfully submitted,

By: /s/ William D. Cobb, Jr.
WILLIAM D. COBB, JR.
Texas Bar No. 04444150
wcobb@cobbmartinez.com

COBB MARTINEZ WOODWARD PLLC
1700 Pacific Avenue, Suite 3100
Dallas, Texas 75201
(214) 220-5201

(214) 220-5251 (Fax)

Dated:  May 2, 2019                          *Attorneys for Pepper Hamilton LLP*