IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al.*, | § | |
| | § | |
| | § | 6:16-CV-173-RP |
| Plaintiffs, | § | |
| | § | *Consolidated with* |
| v. | § | 6:17-CV-228-RP |
| | § | 6:17-CV-236-RP |
| BAYLOR UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

## **ORDER**

Despite Pepper Hamilton LLP's failure to file a timely motion to quash in 2017 or respond to Plaintiffs' motion to compel in 2018, the Court allowed the firm to either certify production or raise any objections no later than March 15, 2019. (March 7th Order, Dkt. 597). On that date, Pepper Hamilton appeared for the first time before this Court and filed its Motion Objecting to the Production of Documents and for Specific Relief. (Dkt. 601). The firm objected the Court's jurisdiction and argued that it had terminated all representation of Baylor in 2017. The Court overruled those objections and ordered Pepper Hamilton to (1) produce all materials in response to the subpoena in Pepper Hamilton's custody or control that Baylor (a) does not possess or (b) has not produced, and (2) file a notice with this Court certifying complete production no later than April 11, 2019. (March 28th Order, Dkt. 607). Instead of complying with that order, Pepper Hamilton filed untimely objections raising new and complex issues that the Court must now address.

On the production deadline of April 11, 2019, Pepper Hamilton certified compliance with Part (1)(a) of the order and filed a Motion for Reconsideration and/or Clarification regarding Part

(1)(b). (Grant Decl., Dkt. 611-1, ¶ 9; Mot. Reconsid., Dkt. 612). Plaintiffs, Baylor, and Pepper Hamilton filed responsive briefing. (Dkts. 617, 623, 624, 632).[1]

Baylor and Plaintiffs then filed related motions for relief. Baylor filed a Motion for a Protective Order Regarding Pepper Hamilton's Work Separate from the Investigation, (Dkt. 621), which asserts some of the same objections raised by Pepper Hamilton. The parties filed responsive briefing. (Dkts. 635, 641). Plaintiffs have also filed an Amended Motion to Compel and Motion for Sanctions against Pepper Hamilton. (Dkt. 618). The parties filed responsive briefing. (Dkts. 622, 625, 636).

This Order addresses all three motions: Pepper Hamilton's motion to reconsider, (Dkt. 612), Baylor's motion for protection, (Dkt 621), and Plaintiffs' amended motion to compel and motion for sanctions, (Dkt. 618). The Court will resolve most of the parties' arguments in this Order and will set a hearing on June 17, 2019, to consider all outstanding issues. Pepper Hamilton and Baylor's production obligations under this Order will take effect immediately following the hearing, when the Court enters an order setting deadlines and appropriate sanctions, if any.

## I.  BACKGROUND

As the Court summarized in its most recent order, Plaintiffs first served a subpoena duces tecum to Pepper Hamilton LLP on March 24, 2017. (March 28th Order, Dkt. 607; Subpoena, Dkt. 328-1). Pepper Hamilton objected by letter to Plaintiffs on April 11, 2017. (Obj. Letter, Dkt. 328-2). On June 6, 2018, Plaintiffs filed a motion to compel Pepper Hamilton to produce all materials requested in the subpoena. (Mot. Compel, Dkt. 328). Baylor filed a response but Pepper Hamilton did not. (*See* Baylor Resp., Dkt. 332). This Court waited to rule on the motion to compel until

---

[1] The Court has not considered Plaintiffs' sur-reply, (Dkt. 632), because Plaintiffs did not seek leave to file a sur-reply as required under Local Rules. *See* W.D. Tex. Loc. CV-7(f)(1). The Court would deny leave nonetheless because the parties have already provided extensive briefing.

resolving several foundational discovery disputes, including the proper scope of discovery in this litigation, attorney-client privilege and work product privilege in the Pepper Hamilton investigation, and FERPA compliance for hundreds of thousands of pages of student records. After resolving those questions, the Court granted Plaintiffs' motion to compel on March 7, 2019. (March 7th Order, Dkt. 597). That order directed Pepper Hamilton to certify complete production to Plaintiffs or file any objections by March 15, 2019. (*Id.* at 2). Pepper Hamilton first appeared before this Court on that date, when the firm filed its Motion Objecting to the Production of Documents and for Specific Relief. (Dkt. 601). The Court overruled those objections and ordered Pepper Hamilton to (1) produce all materials in their custody or control that Baylor (a) does not possess or (b) has not produced, and (2) certify complete production no later than April 11, 2019. (March 28th Order, Dkt. 607, at 1).

On April 11, 2019, Pepper Hamilton certified that "production is complete" for Part (1)(a) because "there are no Baylor-related materials in Pepper's custody or control that Baylor does not also possess," based on conversations with Baylor's current and interim counsel. (Notice for Part (1)(a), Dkt. 611; Grant Decl., Dkt. 611-1, ¶ 9).[2]

Regarding Part (1)(b), Pepper Hamilton filed the instant Motion for Reconsideration and/or Clarification, which raises three entirely new objections to complying with the subpoena. (Mot.

---

[2] The Court will make further inquiries with Baylor at the hearing to substantiate these claims. Pepper Hamilton has submitted six declarations in support of its claim that "all of Pepper's hard copy Baylor documents were transferred to Cozen O'Connor (with the exception of a duplicate copy of a small subset of the hard copy documents that had been transferred); that all of Pepper's electronic Baylor documents were uploaded to a data room to which Cozen O'Connor had access; that Cozen O'Connor downloaded everything from the data room; and that Cozen O'Connor shared the investigatory material with Thompson & Horton so that a privilege log could be prepared and so that any non-privileged information could be produced." (Resp. Mot. Compel, Dkt. 625, at 3 (citing Grant Decl., Dkt. 601-2 (summarizing the other declarations); Mowbray Decl., Dkt. 601-1; Lisondra Decl., Dkt. 601-3; Kufen Decl., Dkt. 601-4; McIntush Decl., Dkt. 601-5)).

Reconsid., Dkt. 612). Contrary to Local Rules[3] and this Court's prior warning,[4] Pepper Hamilton did not certify that it had attempted to confer in good faith with opposing counsel before filing its motion.

In response, Plaintiffs argue that Pepper Hamilton cannot satisfy its own discovery obligations by deferring to Baylor's assurance that Baylor has produced or logged everything in its possession, and that Pepper Hamilton's newest objections seek to avoid production of materials that are "clearly related to the investigation and Regent Findings." (Pls. Resp., Dkt. 617, at 2, 8). Plaintiffs submit that Pepper Hamilton did not confer in good faith before filing as required under Local Rules, and instead "avoided conferring for days until Baylor had time to produce more material." (*Id.* at 8). Plaintiffs also question the circumstances of Baylor's "discovery" of additional documents on the eve of Pepper Hamilton's production deadline. (*Id.* at 5).

Plaintiffs suggest that sanctions are necessary to compel Pepper Hamilton to comply with the subpoena. (*See* Mot. Sanctions, Dkt. 618; Baylor Resp., Dkt. 622; Pepper Hamilton Resp., Dkt. 625; Pls.' Reply, Dkt. 636). As of April 11, 2019, when Pepper Hamilton filed the instant Motion for Reconsideration, the firm had not produced anything to Plaintiffs. (*See* Pls.' Resp. Mot. Reconsid., Dkts. 617 at 5; Mot. Sanctions, Dkt. 618, at 1). When this Court entered a second order compelling production by Pepper Hamilton, *Baylor* responded by producing hundreds of new documents. (*Id.*). Pepper Hamilton produced nothing.

Plaintiffs also raise concerns about Baylor's discovery conduct. Baylor was required to certify complete production of all Pepper Hamilton materials and Court-ordered ESI no later than September 17, 2018. (Sched. Order, Dkt. 312). On September 28, 2018, Baylor certified by email to

---

[3] "The court may refuse to hear or may deny a nondispositive motion unless the movant advises the court within the body of the motion that counsel for the parties have first conferred in a good-faith attempt to resolve the matter by agreement and, further, certifies the specific reason that no agreement could be made." W.D. Tex. Loc. CV-7(i).

[4] (*See* Order on Current and Former Employees, Dkt. 582, at 16 n.17).

Plaintiffs: "Defendant certifies that it has completed the production of all non-privileged Pepper Hamilton and other Court-ordered ESI, subject to the Stipulated Order Regarding the Discovery of Electronically Stored Information." (Hellums Email, Dkt. 618-2).

Despite this certification six months ago, *Pepper Hamilton*—not Baylor—informed the Court on April 11, 2019, of Baylor's "discovery of a few hundred documents" responsive to Plaintiffs' discovery requests. (Mot. Reconsid., Dkt. 612, at 3). Baylor confirmed this and certified four days later that it had produced the "additional documents" to Plaintiffs. (Baylor Advisory, Dkt. 613, at 1). Plaintiffs inform the Court that from April 8 through 12, Baylor supplemented its privilege log by 113 pages, with 12–24 entries per page of withheld Pepper Hamilton materials. (Mot. Sanctions, Dkt. 618, at 5). Baylor also produced "an additional 1,192 documents." (*Id.*). In a more recent filing, Plaintiffs inform the Court that "just [last] week, on May 14, 2019, Baylor produced yet another 2,356 pages of Pepper Hamilton documents." (Pls.' Reply, Dkt. 636, at 7). Based on this, Plaintiffs allege that Baylor may have withheld Court-ordered production. (*Id.*). Neither Baylor nor Pepper Hamilton have adequately explained when, how, or why these documents were suddenly discovered.[5]

The Court will address Pepper Hamilton's Motion for Reconsideration, Baylor's related Motion for Protection, and then Plaintiffs' Amended Motion to Compel and Motion for Sanctions.

## II.  PEPPER HAMILTON'S MOTION FOR RECONSIDERATION

After failing to file a timely motion to quash in 2017, failing to respond to Plaintiffs' motion to compel in 2018, and then filing a Motion Objecting to the Production of Documents and for

---

[5] Baylor argues that the new documents were produced "in light of the Court's more recent discovery rulings," and that "[i]nevitably, some tagging decisions will be changed [by Baylor attorneys finalizing privilege logs], leading to occasional supplemental productions." (Baylor Resp., Dkt. 622, at 9–10). But that explanation is not fully persuasive, particularly given the large volume of newly-produced materials and the coincidental timing of production on the eve of Pepper Hamilton's own production deadline. The Court addresses this further in Section IV(D).

Specific Relief in March 2019 that did not raise *any* substantive objections to production, such as privilege,[6] (Dkt. 601), Pepper Hamilton now raises three objections for the first time. In other words, this is not a motion for reconsideration—these are untimely objections. *See Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573, 576 (5th Cir. 2016) (finding objections untimely where party responding to subpoena neither objected "before the earlier of the time specified for compliance or 14 days after the subpoena is served" under Rule 45 . . . "nor . . . move[d] to quash until the day of the hearing on the motion to compel.").

Pepper Hamilton now seeks to avoid production of (1) materials that Baylor has already logged as privileged, (2) materials created or received after June 15, 2016, and (3) materials related to Pepper Hamilton's legal advice to Baylor on Title IX, "implementation of recommendations," "various third party investigations and litigation," and the Office for Civil Rights investigation, which Pepper Hamilton contends are "separate" from its investigation. (Mot. Reconsid., Dkt. 612, at 6, 8).

Pepper Hamilton did not raise any of these objections when the Court offered that opportunity. (March 7th Order, Dkt. 597, at 2 ("No later than March 15, 2019, Pepper Hamilton is ORDERED to either (1) complete production in response to the subpoena and file a notice with this Court certifying that production to Plaintiffs is complete, or (2) file a motion with this Court detailing any objections to production and requesting specific relief.")). Pepper Hamilton's Motion Objecting to Production did not object to producing materials that Baylor has logged as privileged, it

---

[6] Pepper Hamilton's only reference to privilege in their Motion Objecting to the Production of Documents and for Specific Relief states that Baylor's current counsel, Thompson & Horton LLP, is better suited to produce materials because it is "is familiar with the Court's rulings on discovery, work product, and privilege issues, and would have to conduct the privilege review and redaction process consistent with those rulings." (Pepper Hamilton Objections, Dkt. 601, at 2). This is not a proper assertion of privilege because it only references the Court's existing rulings; it does not contend that any other or new materials are privileged. Even if Pepper Hamilton had asserted the privilege expressly, "[b]lanket claims of privilege are disfavored." *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) (citing *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("The privilege must be specifically asserted with respect to particular documents.")).

did not object to producing materials outside of a certain time period, and it did not object to producing materials "separate from" the investigation. (*See* Pepper Hamilton Objs., Dkt. 601). All of these objections were available to Pepper Hamilton on March 15, 2019, when their objections were due. The fact that Pepper Hamilton raises these objections for the first time on reconsideration— rather than in a timely motion to quash, on in its Motion Objecting to Production filed two months ago—gives the appearance that Pepper Hamilton's objections are designed to create delay. The Court agrees that sanctions are appropriate here, and details those findings below in Section IV(B).

The Court also notes that Pepper Hamilton filed these objections in a motion for reconsideration without certifying that they had conferred in good faith with Plaintiffs to resolve or narrow any disagreement. *See* W.D. Tex. Loc. CV-7(i). Because ordering Pepper Hamilton to re-file an amended motion with the required certificate of conference would only add to the delays that Pepper Hamilton has created, the Court will rule on the motion despite the firm's failure to certify good faith conference.[7]

### A.  Legal Standard

"The scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'" *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (citing Fed. R. Civ. P. 26(b)(1)). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 820 (5th Cir. 2004)). A district court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This rule

---

[7] The Court will not make this exception again in this case. If the Court continues to receive motions that lack proper certification, or otherwise fail to comply with the Federal and Local Rules, the Court will consider whether sanctions are appropriate. See Fed. R. Civ. P. 11(c).

"confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## B.  Pepper Hamilton's New Objections

### 1. Materials That Baylor Has Logged As Privileged

As the Court stated in its last order, Pepper Hamilton waived its opportunity to object to production when it failed to respond to Plaintiffs' motion to compel or move to quash the subpoena in any federal court. (Order, Dkt. 607, at 2).[8] Even if Pepper Hamilton had not waived this objection, Pepper Hamilton's submission here is not adequate.[9] However, Baylor is the holder of the privilege and retains the right to assert the privilege on a timely basis.[10] At this stage, other than the Court's rulings on the Pepper Hamilton investigation, (*see* Dkt. 168), the Court has not considered the application of the privilege to any other materials related to Pepper Hamilton's work for Baylor. The Court will consider restricting production of materials already logged as privileged only because

---

[8] As the Court explained, although Pepper Hamilton timely served their objections to Plaintiffs within 14 days after the subpoena was served, (*see* Obj. Letter, Dkt. 328-2), the letter objection did not substitute for a filing before the Court. *See* Fed. R. Civ. P. 45(d)(2)(B). (Order, Dkt. 607, at 2). *See also Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009) ("If Isenberg believed the subpoenas were objectionable, she could have argued that she has a right or privilege in relation to the documents and filed a motion to quash the subpoenas. . . . Isenberg did not file such a motion and, therefore, waived any objection she could have raised therein.").

[9] Pepper Hamilton's new privilege objection does not make a specific showing of privilege and cites no law other than a selective quote from the Texas Disciplinary Rules of Professional Conduct. Although Pepper Hamilton is correct that a lawyer "shall not disclose a client's confidential information," (Mot., Dkt. 612, at 7 (citing Tex. Disc. R. Prof. Conduct 1.05(a), (b))), the Texas Disciplinary Rules provide in the next paragraph that "[a] lawyer may reveal confidential information . . . [w]hen a lawyer has reason to believe it is necessary to do so in order to comply with a court order." (Tex. Disc. R. Prof. Conduct 1.05(c)(4)). Here, Pepper Hamilton is subject to a series of court orders. (*See* Dkts. 597, 607). Failure to comply with a court order presents a separate set of ethical concerns, which the Court addresses below in Section IV(B).

[10] *See United States v. Hankins*, 631 F.2d 360, 365 (5th Cir. 1980) ("In this country the [attorney-client] privilege has belonged traditionally to the client, not the lawyer.") (quoting *United States v. Jones*, 517 F.2d 666, 674 (5th Cir. 1974)); *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994) ("In contrast to the attorney-client privilege, the work product privilege belongs to both the client and the attorney, either one of whom may assert it. Thus, a waiver by the client of the work product privilege will not deprive the attorney of his own work product privilege, and vice versa.").

Baylor is the holder of the privilege, not Pepper Hamilton, and Baylor has asserted that privilege by submission of privilege logs.

Ordinarily, the Court would defer to Baylor's privilege log and order Pepper Hamilton to produce only those materials that Baylor has not logged. But in light of Baylor's repeated late discovery of material and this Court's recent order rejecting all of Baylor's claimed privileges for the Ketchum materials, (*see* Dkt. 616), the Court hesitates to defer to Baylor and risk further late "discoveries" and continued unnecessary privilege disputes. The record also indicates that Baylor's recent supplemental productions have allowed Baylor to assert the privilege for materials that Baylor previously failed to disclose to Plaintiffs.

Accordingly, the Court will hear arguments from the parties at an in-person hearing on June 17, 2019, to determine (1) whether Pepper Hamilton may withhold materials that Baylor has logged as privileged dated from January 1, 2003, to June 15, 2016, and (2) what production method would be appropriate for other materials in light of that restriction. For reasons detailed below, the Court will adopt a claw back procedure for materials dated from June 15, 2016, to November 6, 2017. At the hearing, the Court will make further inquiries with Baylor to substantiate its privilege claims.

### 2. *Materials Dated After June 15, 2016*

Plaintiffs' subpoena to Pepper Hamilton seeks materials dated from "May 1, 2004 to the present date," unless otherwise noted, and "beginning in 2015 to the present" for certain categories of material. (Subpoena, Dkt. 328-1, at 12, 13). Pepper Hamilton argues that the parties' stipulated ESI Order, which limited certain ESI production to materials dated from January 1, 2003 and June 15, 2016, limits all production in this case to materials within that time period. (Mot. Reconsid., Dkt. 612, at 4). Pepper Hamilton seems to concede that they have material in their custody and control dated after June 15, 2016, that is responsive to Plaintiffs' subpoena by seeking the Court's permission to omit those materials from production.

After Pepper Hamilton raised this objection in its Motion for Reconsideration, the parties filed a series of briefs disputing whether the proper time period for discovery has changed since the original ESI Order entered in 2017. (*See, e.g.*, Dkt. 621, at 7; Dkt. 628, at 2–3, Dkt. 633, at 5). On May 20, 2019, the Court ordered that the ESI Order must be revised to include discovery for Jane Doe 11, Jane Doe 12, Jane Doe 13, and Jane Doe 14, and Jane Doe 15, whose cases are now consolidated with this action for all pre-trial proceedings, including discovery. (Order to File Amended ESI Order, Dkt. 637).

The parties have now agreed to the Amended ESI Dates of January 1, 2003, through November 6, 2017. (Dkt. 645).[11] That agreement resolves Pepper Hamilton's objection. Pepper Hamilton must comply with the same dates as all other parties to this case. Pepper Hamilton must produce all responsive materials in its custody and control to Plaintiffs that was dated, created, or received between January 1, 2003 and November 6, 2017, consistent with the terms and any restrictions under this Order, and the Court's orders following the hearing on June 17, 2019.

### 3. *Matters Other Than the Pepper Hamilton Investigation*

Also for the first time in this case, Pepper Hamilton reveals that Baylor retained the firm for legal services that are "unrelated to the investigation" yet responsive to Plaintiffs' subpoena, which Pepper Hamilton identifies as "Matters 3, 4, and 5" (together, "Other Matters"). (Mot. Reconsid., Dkt. 612, at 5). Matter 3 concerned "legal advice on Title IX matters including implementation of recommendations and Title IX policies and practices," Matter 4 concerned "legal advice and eDiscovery support to assist Baylor for various third party investigations and litigation," and Matter 5 concerned "legal advice and eDiscovery support to Baylor for the Office for Civil Rights

---

[11] "The parties agree that setting a cutoff date for ESI searches will be without prejudice to a party contending that it is entitled to discovery of topics or materials outside of this time period or contending that it is not required to search a particular custodian's ESI for a particular search term after June 15, 2016." (Joint Proposed Am. ESI Dates, Dkt. 645, at 1).

investigation." (*Id.* at 6). It is inexplicable why Pepper Hamilton is raising these objections for the first time now, on a motion to reconsider. Pepper Hamilton should have recognized and disclosed these Other Matters no later than March 15, 2019, because Pepper Hamilton was ordered to articulate any objections to production by that date and had therefore an obligation to review all potentially responsive materials before that date.[12] Pepper Hamilton offers no explanation for this timing. Again, this gives the appearance that Pepper Hamilton's objections are designed to create delay.

Pepper Hamilton argues that these Other Matters should be excluded from production for three reasons: (1) the parties' agreed ESI production dates, (2) the risk of an undue burden to Pepper Hamilton as a third party, and (3) appropriate proportionality to the needs of the case.[13]

First, the legal services for the Other Matters occurred after the original ESI end date of June 15, 2016—that issue is resolved above by the Amended ESI Dates. *See supra*, Section II(B)(2).

Second, Pepper Hamilton argues that production of materials other than the investigation materials would be unduly burdensome. (Mot. Reconsid., Dkt. 612, at 6–7). In particular, "the burden . . . to determine which documents must be withheld in whole or in part on privilege, work product, or other grounds would be significant . . . [e]specially in light of the lack of relevance of such documents." (*Id.* at 7). To assess undue burden, courts "consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which

---

[12] This is the case regardless of when Baylor's duty to disclose the Other Matters arose. The Court addresses Baylor's duties below in Section IV(D).

[13] In support of this objection, Baylor has filed its own Motion for Protection Regarding Pepper Hamilton's Work Separate from the Investigation. (Dkt. 621). Baylor asks this Court to find that Matter 3, 4, and 5 are "separate from the investigation," that Baylor's communications with Pepper Hamilton regarding these matters are protected by attorney-client privilege and work product privilege, that those privileges have not been waived, and that Plaintiffs are prohibited from seeking discovery of these Other Legal Matters. (*See id.*). The Court addresses Baylor's Motion for Protection in Section III of this Order.

the party describes the requested documents; and (6) the burden imposed." *Wiwa*, 392 F.3d at 818. "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.*

Regarding relevance, these "other" matters—"Title IX matters including implementation of recommendations and Title IX policies and practices," "legal advice and eDiscovery support to assist Baylor for various third party investigations and litigation," and "legal advice and eDiscovery support to Baylor for the Office for Civil Rights investigation"—are obviously relevant to Plaintiffs' claims that Baylor's response to student reports of sexual assault constituted sex discrimination under Title IX. (*See id.* at 6). Moreover, contrary to Baylor's submissions, (*see* Dkt. 623, at 5), the fact that Pepper Hamilton performed other work for Baylor and yet neither Baylor nor Pepper Hamilton made the Court aware of this other work until the eleventh hour does not mean that the Court deliberately excluded those other matters from discovery in this case.

Pepper Hamilton's argument about burden and proportionality assumes that any production would require *Pepper Hamilton* to "review, produce, and log millions of documents." (PH Reply, Dkt. 624, at 5). As a law firm, Pepper Hamilton should be well aware of the many creative and automated means for efficient discovery. For example, a claw back procedure would eliminate most of the burden for Pepper Hamilton. All the firm would be required to do is produce materials directly to Plaintiffs, without any review or log. Baylor would bear the burden of reviewing the materials afterwards and completing a privilege log. Other than the Court's rulings on the Pepper Hamilton investigation, (*see* Dkt. 168), the Court has not yet considered the application of the privilege for any Pepper Hamilton materials. This is because neither Baylor nor Pepper Hamilton disclosed the existence of any other responsive Pepper Hamilton materials or raised any specific privilege objections for these newly-disclosed Other Matters until this Motion for Reconsideration—after the Court had given both repeated opportunities to do so.

The information Plaintiffs request is clearly relevant to their claims and Baylor's defense. Additionally, the subpoena is reasonable in scope; it lists just 24 categories for production and requests items tailored to the facts and claims at issue with appropriate particularity. The time period of the request will be limited by the parties' agreed amended ESI dates. Considering Plaintiffs' need for materials regarding Baylor's institutional response to reported sexual assaults, and the fact that a claw back procedure will minimize the burden on Pepper Hamilton as a third party, the Court finds that production of these materials does not present an undue burden.

In its third new objection, Pepper Hamilton contends that production of these materials would be disproportionate to the needs of the case under Rule 26(b)(1), given that Baylor has already logged thousands of documents and produced over 2.9 million pages of documents to Plaintiffs, including 3,538 pages of Pepper Hamilton investigation materials. (*Id.* at 7). Pepper Hamilton argues that "Matters 3, 4, and 5 could not possibly add anything of material value to the massive amount of discovery that has already occurred." (*Id.* at 8). But given the clear relevance of these matters, the important role of Pepper Hamilton's investigation and advice in Plaintiffs' factual allegations, and the minimal burden of production for Pepper Hamilton using a claw back procedure, the Court disagrees.

The Court overrules all of Pepper Hamilton's objections in their Motion for Reconsideration/Clarification. The Court will consider restricting production of materials already logged as privileged at the hearing on June 17, 2019, only because Baylor holds the privilege and Baylor has asserted that privilege for certain materials by submitting privilege logs.

### III.  BAYLOR'S MOTION FOR A PROTECTIVE ORDER FOR THE OTHER MATTERS

Baylor has moved for a protective order barring discovery of Pepper Hamilton's work separate from the investigation because Baylor contends the Other Matters are privileged. (*See* Mot.

Protective Order, Dkt. 621).[14] As discussed above, Pepper Hamilton has waived the opportunity to assert privilege objections by failing to raise them when ordered to do so. But a law firm cannot waive its client's privilege. *See Hankins*, 631 F.2d at 365; *Jones*, 517 F.2d at 674; *In re Grand Jury Proceedings*, 43 F.3d at 972. Pepper Hamilton's waiver does not deprive Baylor of its own right to assert the privilege.

In the instant motion, Baylor asks the Court to find "that the [Other Matters] . . . [are] protected by both attorney-client and work-product privileges, and that those privileges have not been waived." (*Id.* at 8). Further, Baylor asks the Court to "prohibit Plaintiffs from seeking discovery from Baylor or third parties about [Other Matters]." (*Id.*). In support, Baylor submits declarations from Christopher Holmes, who is Baylor University's General Counsel, and Leslie Gomez, who provided legal services to Baylor as a Pepper Hamilton partner in 2015 and 2016 and then as a partner at Cozen O'Connor from 2017 to present. (*See* Holmes Decl., Dkt. 621-1; Gomez Decl., Dkt. 621-2). Plaintiffs filed a response and Baylor filed a reply. (Dkts. 635, 641).

### A. Application of the Privilege

Baylor has not met its burden for the Court to find that the Other Matters are privileged because Baylor has not identified any specific materials as privileged and only offers general allegations of privilege. (*See* Baylor Resp., Dkt. 104; Mot. Protective Order, Dkt. 621). The Court has explained Baylor's burden in previous orders. (*See* Order on Current and Former Employees, Dkt. 582, at 9–13). Rule 26(c) requires "a showing of good cause" for a protective order whereby "[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323,

---

[14] Baylor's Motion for Protection also asked the Court to limit discovery of the Other Matters because they occurred after the original ESI dates, (Mot. Protective Order, Dkt. 621, at 7–8), but that argument is moot in light of the Amended ESI Dates. (*See* Am. ESI Dates, Dkt. 645).

1326 n. 3 (5th Cir. 1978)). "A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). "A general allegation of privilege is insufficient to meet this burden." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004). Instead, "[t]he proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists." *Id.*

### 1. Attorney-Client Privilege

"For a communication to be protected under the [attorney-client] privilege, the proponent 'must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'" *Equal Empl. Opportunity Comm'n v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)). "[C]ourts generally construe the privilege narrowly because 'assertion of privileges inhibits the search for truth.'" *Id.* at 696 (citing *Navigant Consulting*, 220 F.R.D. at 477). "Determining the applicability of the privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof." *Id.* at 695 (citations omitted). "Blanket claims of privilege are disfavored." *In re Santa Fe Int'l*, 272 F.3d at 713 (quoting *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 n. 16 (5th Cir. 1999)). "The privilege must be specifically asserted with respect to particular documents." *Id.* (quoting *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982)); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 439 (N.D. Tex. 2006) ("The burden is on the party asserting the privilege to demonstrate how each document satisfies all the elements of the privilege.") (citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)). "[S]imply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege." *EEOC*, 876 F.3d at 695.

Baylor has not asserted the privilege for any particular documents or shown how the elements of the privilege would apply. The declarations from Baylor's General Counsel and outside counsel only make conclusory assertions of privilege; they do not discuss any specific privileged communications or documents. (*See, e.g.,* Holmes Decl., Dkt. 621-1, at 1 ("Baylor's communications with Pepper Hamilton in connection with these Other Legal Matters were made for the purpose of facilitating the rendition of professional legal services for Baylor."); Gomez Decl., Dkt. 621-2 ("During the course of the representation of Baylor in the Other Legal Matters, Baylor and Pepper Hamilton exchanged confidential and privileged information.")). Baylor's submissions are not sufficient for the Court to find that any specific materials are attorney-client privileged. *See In re Santa Fe Int'l.,* 272 F.3d at 713.

### 2. Work Product Privilege

Baylor's assertion of work product privilege is deficient for the same reason. Like the attorney-client privilege, "[t]he burden of establishing that a document is work product is on the party who asserts the claim." *Hodges, Grant & Kaufmann*, 768 F.2d at 721. "[T]he work product doctrine insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991).

To assert work product privilege, a party must show: "(1) the materials sought are documents or tangible things; (2) the materials sought were prepared in anticipation of litigation or for trial; (3) the materials were prepared by or for a party's representative; [and] (4) if the party seeks to show that the material is opinion work product, that party must show that the material contains the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party." *Brady*, 238 F.R.D. at 441 (citing *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 136 (E.D. Tex. 2003); *Dunn*, 927 F.2d at 873). Baylor has not made this

16

showing for any materials. Although Holmes states in his declaration that "the Office of the General Counsel consulted with Pepper Hamilton regarding . . . pending and anticipated litigation by students and former employees" and lists pending and anticipated law suits, (Holmes Decl., Dkt. 621-1, at 1–2), that evidence is not sufficient for the Court to find that *all* materials prepared as part of the Other Matters are protected attorney work product. "The work product doctrine is not an umbrella that shades all materials prepared by a lawyer . . . The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation." *El Paso Co.*, 682 F.2d at 542. Baylor's submissions do not enable the Court to determine which specific materials were actually assembled in anticipation of litigation, and which were not.

Because Baylor has not met its burden for a protective order, the Court will deny Baylor's motion for a protective order for the Other Matters. The Court therefore concludes that Pepper Hamilton must produce all responsive materials from the Other Matters in its custody and control that were dated, created, or received between January 1, 2003 and November 6, 2017, consistent with the terms and any restrictions of this Order and the order entered following the hearing on June 17, 2019. Baylor may assert any claims of privilege through the claw back procedure[15] and submission of a privilege log. *See Crosby*, 647 F.3d at 262.

### B. Waiver of Privilege

The Court has not found that any of the Other Matters are privileged at this stage. However, assuming that some materials contained in the Other Matters would be subject to privilege if Baylor made a proper showing through the claw back procedure, the Court is adequately briefed to rule on certain waiver issues in advance of further production and privilege disputes.

---

[15] A proposed claw back procedure is attached at the end of this Order. The Court will enter a final version after the hearing.

Baylor maintains that it has not waived privilege for these previously undisclosed Other Matters because Plaintiffs have not previously sought their discovery, and the Court has not found, or been asked to find, waiver of any privilege beyond the investigation. (*See* Mot. Protective Order, Dkt. 621). Plaintiffs counter that Baylor has waived the privilege by failing to disclose the Other Matters, or, in the alternative, that Baylor has at least waived the privilege for Pepper Hamilton's services implementing the 105 Recommendations by making public statements about that work. (Resp., Dkt. 635, at 4–5; *see also* Resp. Mot. Reconsideration, Dkt. 617, at 8 n.26).

### 1. Waiver by Failure to Timely Assert the Privilege

Plaintiffs argue that Baylor waived the privilege for all of the Other Matters by failing to disclose their existence and timely assert the privilege. Baylor responds that until now, "Plaintiffs' efforts at obtaining Pepper Hamilton materials have focused exclusively on the Pepper investigation that began in October 2015 and culminated in May 2016." (Mot. Protection, Dkt. 621, at 1).

It is difficult for the Court to take Baylor's submission as a good faith argument because Plaintiffs' original subpoena to Pepper Hamilton and request for production to Baylor were not limited to the investigation. The original subpoena to Pepper Hamilton sought "documents or records or communications relating to Pepper Hamilton's work for Baylor University beginning in 2015 to the present," as well as "[a]ll documents, engagement agreements, bills, statements, notes, records, recordings or any other tangible thing exchanged between Pepper Hamilton and Baylor University." (Subpoena, Dkt. 328-1, ¶¶ 1, 3). That language is not limited to the investigation. Likewise, Plaintiffs' first request for production to Baylor sought production of "Baylor's file materials pertaining to work performed by Pepper Hamilton for Baylor University" and "[a]ll documents, engagement agreement[s], bills, statement[s], notes, records, recordings or any other tangible thing exchanged between Baylor University and Pepper Hamilton." (RFP, Dkt. 94-1, ¶¶ 10–11). That request is also not limited to the investigation. Additionally, at the time of the subpoena to

18

Pepper Hamilton and the request for production to Baylor, there was no temporal restriction on discovery.[16]

A corporate client "waives the attorney-client privilege . . . by failing to assert it when confidential information is sought in legal proceedings." *Nguyen*, 197 F.3d at 206. Plaintiffs sought production of the Other Matters from Baylor on May 24, 2017, when Plaintiffs filed a Motion to Compel Responses to Plaintiffs' First Request for Production, (Dkt. 94), and a Motion to Compel Pepper Hamilton Materials, (Dkt. 93), because their RFP was not limited to the investigation and discovery had no temporal limit at the time Plaintiffs filed the motion. (*See* Mot. Compel, Dkt. 94; RFP, Dkt. 94-1, ¶¶ 10–11; Mot. Compel Pepper Hamilton Materials, Dkt. 93). Baylor's duty to disclose and assert the privilege for the Other Matters arose by the date of those motions to compel—May 24, 2017—because Plaintiffs sought to enforce the RFP. At that point, Baylor was on notice that the Other Matters were responsive and within the scope of discovery.

Baylor did not disclose the existence of the Other Matters even though they were responsive to the RFP. (*See* Resp., Dkt. 104).[17] But Baylor did assert privilege for "all materials provided to or produced by Pepper Hamilton" in its response filed on June 12, 2017. (*See* Mot. Compel Pepper Hamilton Materials, Dkt. 93, at 1; Baylor Resp., Dkt. 104, at 2). Because Baylor asserted privilege when Plaintiffs sought "all" of the Pepper Hamilton materials, without limitation to the investigation, the Court finds that Baylor did not waive the privilege for the Other Matters by failing to assert it at the time the materials were sought.

---

[16] Even though Plaintiffs' first motion to compel the Pepper Hamilton materials focused discussion on the investigation, that is likely because Plaintiffs had no way to know that Pepper Hamilton was also providing other legal services to Baylor. (*See* Mot. Compel Pepper Hamilton Materials, Dkt. 93, at 4). Plaintiffs had no way to identify and affirmatively request these Other Matters until April 2019 because Baylor and PH failed to disclose them. (*See* Resp., Dkt. 635, at 1). Nonetheless, the plain text of Plaintiffs' original subpoena and RFP was not limited to the investigation, and the Other Matters were therefore responsive to the subpoena and RFP issued in 2017.

[17] The Court will address Baylor's discovery compliance further below. *See infra*, Section IV(D).

2. <u>Waiver by Publication to a Third Party</u>

But privilege may be waived by other means. Based on the parties' submissions, the Court finds that Baylor has waived attorney-client privilege for Pepper Hamilton's services implementing the 105 Recommendations and related to the 755-page *External Report re: Completion of 105 Recommendations.* (2017 External Report, Dkt. 617-2). Baylor has waived any opportunity to challenge this finding of waiver by failing to address the significance of the report in response to Plaintiffs' argument. (*See* Pls.' Resp. Mot. Protection, Dkt. 635, at 4–5 & n.10 (citing to news coverage of Baylor's release of the 755-page report on implementation); Reply, Dkt. 641, at 5 (dismissing public statements as "two news articles")).

*a. Waiver of Attorney-Client Privilege*

Baylor waived attorney-client privilege by publishing a 755-page public report on the implementation of Pepper Hamilton's Title IX recommendations. "When relayed to a third party that is not rendering legal services on the client's behalf, a communication is no longer confidential, and thus it falls outside of the reaches of the privilege." *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999). Moreover, "selectively disclosing confidential communications" to a third party has the same effect. *Id.* "The confidentiality of a client's communications may be compromised either through the publication of evidence of the communications themselves or through the publication of evidence of attorney statements or documents that disclose the client's confidential communications." *Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir. 1992). "[D]isclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Id.* at 208 (quoting *Indus. Clearinghouse, Inc.*, 953 F.2d at 1007; *El Paso Co.*, 682 F.2d at 538).

Baylor released the 755-page *External Report re: Completion of 105 Recommendations* on

November 3, 2017. (2017 External Report, Dkt. 617-2).[18] Like the public disclosures of the Pepper

Hamilton investigation, which this Court found to constitute a waiver, Baylor's public report

regarding the "Completion" of the 105 Recommendations was intentional and provides substantial

detail of what Baylor and its employees told their legal counsel and the advice that Baylor received in

return. (*See* Order, Dkt. 168, at 8). The 2017 External Report outlines Baylor's legal obligations

under Title IX and Texas law, provides legal "assessment of completion of recommendations," and

details how Baylor's reforms were designed to meet the university's legal obligations.[19] Like the

Findings of Fact, the 2017 External Report is a "publication of evidence of the communications."

*Indus. Clearinghouse, Inc.*, 953 F.2d at 1007. The exact contents of the communications need not be

revealed to constitute waiver. *See, e.g.*, *In re Kidder*, 168 F.R.D. at 468 (finding waiver of the attorney-

client privilege where a report made a factual summary and paraphrased interviews conducted by

attorneys); *Nguyen*, 197 F.3d at 207 (affirming a district court's finding of waiver where executives

recounted communications with attorneys in depositions).

Assuming that some of these communications would have been subject to attorney-client

privilege, Baylor's extensive public disclosures waive that privilege. Because of the level of detail

publicly released about the implementation of Pepper Hamilton's recommendation, the Court

---

[18] *External Report re: Completion of 105 Recommendations* (Nov. 3, 2017), available at
https://www.baylor.edu/thefacts/doc.php/301337.pdf.

[19] *Compare Nguyen*, 197 F.3d at 207 & n.17 (finding waiver where deposition questions to executives "elicit[ed] information about the substance of [attorney-client] communication, touching on the directions given to counsel and the legal materials reviewed in addressing the question presented"); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 462 (S.D.N.Y. 1996) (finding waiver where an "85–page report for [a client] summarize[ed] in detail the facts uncovered by the law firm in the course of its investigation"); *with YETI Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2016 WL 8677303, at *1 (W.D. Tex. Dec. 30, 2016) (finding no waiver where a single email produced in discovery stated that "[w]e believe and our attorney has confirmed that we are not infringing"); *Nat'l W. Life Ins. Co. v. W. Nat'l. Life Ins. Co.*, No. A-09-CA-711 LY, 2010 WL 5174366, at *7 (W.D. Tex. Dec. 13, 2010) (finding no waiver where "communications merely note that they have sought advice from their attorneys . . . regarding [a] name change" and "do not disclose the confidential advice and the opinions of their legal counsel").

concludes that the waiver encompasses the entire scope of the implementation of Pepper Hamilton's recommendations, and all materials, communications, and information provided to Pepper Hamilton as part of the implementation of the recommendations and preparation of the 755-page *External Report re: Completion of 105 Recommendations*. (*See* 2017 External Report, Dkt. 617-2). Based on this finding, the waiver may encompass Matter 3 (defined by Pepper Hamilton as "Title IX matters including implementation of recommendations and Title IX policies and practices") either in whole or in part.

To the extent that Baylor seeks to withhold any specific communication with Pepper Hamilton or other counsel as responsive to Plaintiffs' requests for production as subject to attorney-client privilege, and not waived pursuant to this order, it must produce an itemized privilege log of these communications and request timely relief pursuant to the claw back order, which the Court will enter following the hearing on June 17, 2019.

### b.  Waiver of Work Product Privilege

The Court finds no waiver of work product privilege at this time. Waiver is more narrow in the context of work product than in the context of attorney-client privilege. Because the work product privilege exists "to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent," "the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). Disclosure typically only waives work product protection with respect to any document actually disclosed. *Brady*, 238 F.R.D. at 444. Subject matter waiver is generally limited to instances where the quality and substance of an attorney's work product have been directly placed at issue in the litigation by the party asserting the privilege. *See, e.g.*, *Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242, 255 (D.D.C. 2013) (finding waiver where a party "placed the work of his attorneys directly at issue").

Neither party has provided any detailed briefing or evidence to assist the Court in determining what materials in the Other Matters might be protected work product, or what work product protection Baylor might have waived. To the extent that Baylor has "actually disclosed" any documents to any third party, including the public, in the course of preparation and publication of the 2017 External Report (or with respect to any of the Other Matters), Baylor has waived work product privilege for those documents.

To the extent Baylor seeks to withhold any specific communication with Pepper Hamilton or other counsel as responsive to Plaintiffs' requests for production as subject to work product privilege, and not waived pursuant to this order, Baylor must produce an itemized privilege log of those materials and request timely relief pursuant to the claw back order, which the Court will enter following the hearing.

*c. Necessity of Work Product to Plaintiffs' Case*

An exception to the work-product privilege exists where a party seeking privileged materials "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). At this time, Plaintiffs have not made this showing with respect to any work product produced by Pepper Hamilton in the implementation of its Title IX recommendations and preparation of the 2017 report.

The Court will, however, allow Plaintiffs to re-urge necessity at a later date. It reminds Plaintiffs of the very high burden required to prove that they "cannot, without undue hardship, obtain" the materials they seek, or their substantial equivalent. The Court is therefore likely to only entertain narrow and specific requests for necessity where Plaintiffs have evidence demonstrating that they have been unable to obtain the information sought through other means.

\* \* \*

To summarize, Baylor has waived the privilege for all communications and any publicly-disclosed work product related to Pepper Hamilton's services implementing the 105 Recommendations and preparing the 755-page *External Report re: Completion of 105 Recommendations*. (2017 External Report, Dkt. 617-2). To the extent Baylor seeks to withhold any specific materials produced by Pepper Hamilton as subject to attorney-client privilege or work product privilege, and not waived pursuant to this order, Baylor must produce an itemized privilege log of those materials. The Court reminds the parties that when a party withholds information as privileged, they must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

## B. Third Party Investigations and Litigation

As stated above, Baylor has not met its burden for a protective order for any of the Other Matters. But Plaintiffs agree that for the "various third party investigations and litigation," also known as Matter 4, "any legal advice or client communication with Pepper Hamilton to produce such legal advice would be protected and could be logged on privilege logs." (Resp., Dkt. 635, at 6). The parties therefore agree that the third party investigations and litigation involve privileged materials and should by managed by a privilege log prepared by Baylor.

Therefore, *for third party investigations and litigation only*, also known as Matter 4, Pepper Hamilton may transfer all of the materials to Baylor for privilege review and preparation of a privilege log. Pepper Hamilton is not required to produce these materials directly to Plaintiffs as part of the claw back procedure. The Court will allow 60 days for Baylor to complete the privilege review. Baylor shall produce the privilege log and all materials not withheld to Plaintiffs no later than 60 days from the date of the Court's discovery order immediately following the hearing, and certify

to the Court that it has done so. If Baylor seeks an extension, it must demonstrate good cause to the Court.

### C. The Office for Civil Rights Investigation

Regarding the third and final Other Matter, the Office of Civil Rights ("OCR") investigation, Plaintiffs argue that "the document production that Baylor concedes that it made to the Office of Civil Rights should be produced in the exact form and format that it was given to OCR—this should take minutes for Baylor to accomplish. Any protection for the materials provided to OCR has been waived by virtue of its production to a third party—in this case a governmental unit of which there is even a lower expectation of privacy." (Pls.' Resp., Dkt. 635, at 6). Although disclosure to a third party, such as the Office of Civil Rights, would likely waive the privilege for certain communications and materials, *see Nguyen*, 197 F.3d at 207, the record is insufficient for the Court find a waiver at this stage. Pepper Hamilton shall therefore produce the OCR investigation materials directly to Plaintiffs and Baylor may assert any claims of privilege through the claw back procedure.

### D. Method of Production for the Other Matters

In summary, the Court concludes that a claw back procedure for the Other Matters (other than the third party investigations and litigation) adequately balances the interests of the parties, including the burden on Pepper Hamilton as a third party, and provides an appropriate degree of protection for privileged material. *See Seattle Times Co.*, 467 U.S. at 36 (Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required") (citing Fed. R. Civ. P. 26(c)(1)). Accordingly, for Matter 3 and Matter 5 the Court will adopt the same claw back procedure for Pepper Hamilton as the Court has adopted for other third party production. (*See* Order on Current and Former Employees, Dkt. 582, at 13; Claw Back Order, Dkt. 583). That material will be designated attorney's eyes only, consistent with the parties' Confidentiality and Protective Order. (*See* Order, Dkt. 156, ¶¶ 3(b), 6) Plaintiffs will scan and

Bates label the materials and produce them to Baylor within five days. Baylor will have two weeks to notify Plaintiffs which documents Baylor contends are privileged. In the event of a dispute over whether material is privileged, Baylor may file a motion with the Court. The full details of this claw back procedure will be specified at the end of this order. In case of any ambiguity, the details specified in the final claw back order following the hearing are controlling.

As detailed above, for the "various third party investigations and litigation" materials only, Pepper Hamilton may transfer all materials to Baylor to review and prepare a privilege log. Baylor shall produce the privilege log and all materials not withheld to Plaintiffs no later than 60 days from the date of the Court's discovery order immediately following the hearing.

If either party requires an extension for their production obligations, that party may file a motion demonstrating good cause for an extension.

Should Plaintiffs' discovery efforts give rise to information suggesting that disclosure of certain communications would outweigh the burden to Baylor or any relevant party and would play an important role in resolving material issues, Plaintiffs may raise the issue with the Court.

## IV.  THE MOTION FOR SANCTIONS

The Court next considers Plaintiffs' motion for sanctions. (*See* Mot. Sanctions, Dkt. 618; Baylor Resp., Dkt. 622; Pepper Hamilton Resp., Dkt. 625; Pls.' Reply, Dkt. 636). Having considered the parties' submissions, the record, and governing law, the Court is inclined to grant the motion and will allow Pepper Hamilton an opportunity to show cause why it should not be subject to sanctions at the hearing.

### A.  Legal Standard

"If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2). Under Rule 37, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or

respond." Fed. R. Civ. P. 37(a)(4). Rule 37(b)(2) authorizes sanctions even for "inadvertent" failure to obey a discovery order. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (citation omitted). The Fifth Circuit "has never held that willful or contumacious conduct is a prerequisite to sanctions which are less harsh than a dismissal or default judgment." *Chilcutt v. United States*, 4 F.3d 1313, 1322 (5th Cir. 1993).

Additionally, a court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Waste Mgmt. of Washington, Inc. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015). A court must find such a violation by clear and convincing evidence. *Id.* "Evidence is clear and convincing if it 'produces in the mind of the trier of fact a firm belief . . . so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of precise facts of the case.'" *Id.* (quoting *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004)). "The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *Id.* (quoting *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000)).

## B.  Pepper Hamilton's Discovery Conduct

As detailed above, Pepper Hamilton has failed to comply with the Plaintiffs' subpoena since 2017, failed to file a timely motion to quash the subpoena, failed to respond to Plaintiffs' 2018 motion to compel, and now violated a Court order to file timely objections no later than March 15,

2019. *See supra,* Section I, at 2–4; Section II, at 5–7. The record indicates that Pepper Hamilton still has not produced any materials to Plaintiffs.[20]

It appears to the Court that Pepper Hamilton failed to obey a court order to permit discovery under Rule 37. The Court ordered the firm to file any specific objections by March 15, 2019. (March 7th Order, Dkt. 597). Pepper Hamilton filed objections on March 15th based on the Court's jurisdiction and the firm's termination of its representation of Baylor. (Mot. Objecting to Production, Dkt. 601). The Court overruled those objections and ordered Pepper Hamilton to certify complete production to Plaintiffs no later than April 11, 2019. (March 28th Order, Dkt. 607). Yet Pepper Hamilton responded by refusing to produce any materials and instead filing a "Motion for Reconsideration" that raises entirely new objections based on privilege and the scope of discovery, and reveals the existence of materials never previously disclosed to the Court.[21] The Court is now left in the position of needing to resolve these issues at this late date.

In other words, Pepper Hamilton violated a court order to permit discovery when it failed to file all of its objections by the court-ordered deadline of March 15th, and then refused to comply with a court-ordered deadline to produce materials to Plaintiffs. Instead, Pepper Hamilton filed a new motion raising untimely objections that have been available to Pepper Hamilton since 2017. This violation has caused three months of delay in a case that has already been pending for three years and forced the parties to revisit issues that should have been resolved two years ago when the subpoena was first issued. This conduct increases costs for all parties and wastes public resources that are meant for adjudicating good faith disputes.

---

[20] As of April 11, 2019, when Pepper Hamilton filed the instant Motion for Reconsideration, the firm had not produced anything to Plaintiffs. (*See* Pls.' Resp. Mot. Reconsid., Dkts. 617 at 5; Mot. Sanctions, Dkt. 618, at 1). The record indicates that this remains the case.

[21] Although has Baylor argues that "Baylor told Plaintiffs a long time ago that Pepper [Hamilton] did other legal work," the record indicates that Baylor did *not* tell Plaintiffs that that other legal work was responsive to some of Plaintiffs' discovery requests. (Baylor Reply Mot. Protection, Dkt. 641, at 2).

Under Rule 37, Pepper Hamilton's "evasive or incomplete disclosure" of court-ordered production "must be treated as a failure to disclose." Fed. R. Civ. P. 37(a)(4). Although the Court need not find that Pepper Hamilton's conduct was "willful" in order to grant sanctions, *Smith & Fuller*, 685 F.3d at 488; *Chilcutt*, 4 F.3d at 1322, Pepper Hamilton's choice to assert two-year-old objections in a motion for reconsideration gives the appearance that Pepper Hamilton's objections are willfully designed to delay and complicate discovery.

Further, it appears to the Court that Pepper Hamilton has not provided an adequate excuse for its failure to obey Plaintiffs' subpoena or an order related to it. *See* Fed. R. Civ. P. 45(g). Although Pepper Hamilton argues that sanctions are improper where a motion for reconsideration raises "significant issues" concerning a court order, (Resp., Dkt. 625, at 4 (citing *Alexander v. Canon Cochran Management Services, Inc.*, 2010 U.S. Dist. LEXIS 122275, at *11 (E.D. La. Nov. 18, 2010))), the "significant issues" that Pepper Hamilton raises now were available to Pepper Hamilton before the court-ordered deadline of March 15th—in fact, they were available to Pepper Hamilton a year ago when Pepper Hamilton failed to respond to Plaintiffs' motion to compel. While "a party's good faith claim of attorney-client privilege can serve as a valid defense to a finding of contempt," *Management of Washington*, 776 F.3d at 341, Pepper Hamilton has had two years to raise specific objections based on attorney-client privilege yet chosen not to. Although the motion for reconsideration raises important privilege issues, Pepper Hamilton's choice not to raise these important substantive issues in a timely manner does not serve as a valid defense or adequate excuse. As other courts have reasoned, the failure to file a timely motion to quash indicates against finding adequate excuse. *See, e.g., Mattie T. v. Johnston*, 74 F.R.D. 498, 502 (N.D. Miss. 1976) (holding responding party in contempt for failure to comply with a subpoena where, among several factors, the party failed to file a motion to quash or modify); *Allen Bradley Co. v. Local Union No. 3 Int'l Bhd. of Elec. Workers*, 29 F. Supp. 759, 761 (S.D.N.Y. 1939) (same).

Accordingly, the Court will provide an opportunity for Pepper Hamilton to address these concerns at the hearing on June 17, 2019, before reaching a conclusion on the propriety of sanctions.

### C.  The Existence of a Pepper Hamilton Report

There is now a fact dispute about whether Pepper Hamilton ever prepared a "final" or "internal" report on the investigation that was delivered to Baylor in some form but never publicly released. (*See* Mot. Sanctions, Dkt. 618, at 8; Baylor Resp. Mot. Sanctions, Dkt. 622, at 11; Pls.' Resp. Mot. Protection, Dkt. 635, at 7; Pls.' Reply, Dkt. 636, at 8). Pepper Hamilton's emails and billing entries strongly indicate that there was, in fact, a Pepper Hamilton investigation report. Emails between Pepper Hamilton counsel Leslie Gomez and Gina Maisto Smith on May 21, 2016, discussed "drafts of the overall findings and recommendations" and "the narrative of the findings and recommendations." (Gomez and Smith Email, Dkt. 618-3). A Pepper Hamilton invoice issued on July 25, 2016 includes billing entries such as "Follow up on issues relating to release of summary of findings and recommendations," and "annotate outline of Findings with citations to investigative materials in preparation for final internal report." (Dkt. 617-1, at 3, 10). If such a report does exist, this presents additional discovery compliance issues. An evidentiary hearing will assist the Court to resolve this question.

### D.  Baylor's Discovery Conduct

The Court has also continuing concerns about Baylor's compliance with multiple discovery orders. Plaintiffs have not requested sanctions against Baylor at this time, but they allege in their briefing that Baylor may have withheld Court-ordered production. (Mot. Sanctions, Dkt. 618, at 5; Pls.' Reply, Dkt. 636, at 7). Baylor responds that their otherwise late production of Pepper Hamilton materials was properly offered in light of the Court's more recent discovery rulings. (Baylor Resp.,

Dkt. 622, at 9–10). These issues are most efficiently addressed in a live hearing. The Court will therefore ask Baylor to address the following concerns at the hearing on June 17, 2019.

First, the record indicates that Baylor should have disclosed the existence of the Other Matters as responsive to Plaintiffs' discovery requests in 2017. Plaintiffs' Motion to Compel Responses to Plaintiffs' First Request for Production of Documents, filed on May 24, 2017, sought production of "Baylor's file materials pertaining to work performed by Pepper Hamilton for Baylor University." (RFP, Dkt. 94-1, ¶ 10). It also requested "All documents, engagement agreement[s], bills, statement[s], notes, records, recordings or any other tangible thing exchanged between Baylor University and Pepper Hamilton." (*Id.* ¶ 11). The plain terms of the request for production did not limit its requests to the Pepper Hamilton investigation. However, Plaintiffs' motion to compel focused on the investigation likely because Plaintiffs had no way to know that Pepper Hamilton was also providing other legal services to Baylor. (*See, e.g.,* Mot. Compel, Dkt. 94, at 4). Additionally, at the time of that motion, there was no temporal restriction on discovery; no stipulated ESI Order had yet been entered and the parties would continue to negotiate the proper dates for discovery for another several months. Baylor's response to the motion to compel did not raise specific objections regarding Requests 10 and 11. (*See* Resp., Dkt. 100). After briefing and a hearing, the Court granted the motion to compel in part, granting Baylor "protection from requests for documents dated prior to January 1, 2003." (Order of July 26, 2017, Dkt. 146, at 13). That Order did not entitle Baylor to withhold documents after a certain date and it did not limit the scope of the RFP to Pepper Hamilton's investigation. Plaintiffs also filed a separate Motion to Compel Pepper Hamilton Materials. (Dkt. 93). Baylor's response to that motion also did not request a temporal limit on the scope of production and did not correct Plaintiffs' impression that Pepper Hamilton's only responsive work for Baylor was the investigation. (*See* Resp., Dkt. 104). The Court granted the Motion to Compel Production of Pepper Hamilton Materials on August 11, 2017. (Order, Dkt. 168).

The stipulated ESI Order limiting discovery after June 15, 2016, was not entered until later that month on August 21, 2017. (ESI Order, Dkt. 176). In sum, the record indicates that as of August 11, 2017, the Court had granted two motions to compel Baylor's responses to requests for production that inquired directly into the scope of Pepper Hamilton's work for Baylor, without temporal restriction. However, Baylor did not disclose the existence of Pepper Hamilton's "Other Matters" until May 2, 2019, when Baylor filed their Motion for a Protective Order Regarding Pepper Hamilton's Work Separate from the Investigation. (Mot., Dkt. 621).

The Court has additional concerns. Baylor's repeated discovery of materials at the eleventh hour makes this case longer, more burdensome, and more expensive for all parties. Baylor was required to certify complete production of all Pepper Hamilton materials in the university's custody and control no later than September 17, 2018. (*See* Sched. Order, Dkt. 312). On September 28, 2018, Baylor certified by email to Plaintiffs that the university "has completed the production of all non-privileged Pepper Hamilton and other Court-ordered ESI, subject to the Stipulated Order Regarding the Discovery of Electronically Stored Information." (Hellums Email, Dkt. 618-2). But Baylor has now made late productions of Pepper Hamilton materials twice, without a fully satisfactory explanation. Despite the certification six months ago, *Pepper Hamilton*—not Baylor—informed the Court on April 11, 2019, of Baylor's "discovery of a few hundred documents" responsive to Plaintiffs' discovery requests. (Mot. Reconsid., Dkt. 612, at 3). Baylor then advised the Court that it had produced these additional documents to Plaintiffs. (Baylor Advisory, Dkt. 613). The record indicates this is a substantial volume of additional documents. Plaintiffs inform the Court that from April 8 through 12, Baylor produced "an additional 1,192 documents" and supplemented its privilege log by 113 pages, with twelve to 24 entries per page of withheld Pepper Hamilton materials. (Mot. Sanctions, Dkt. 618, at 5). Most recently, Plaintiffs advise the Court that "on May 14, 2019, Baylor produced yet another 2,356 pages of Pepper Hamilton documents." (Pls.' Reply,

Dkt. 636, at 7). In sum, the record suggests that Baylor may have withheld court-ordered production. Baylor argues that the new documents were produced "in light of the Court's more recent discovery rulings," and that "[i]nevitably, some tagging decisions will be changed [by Baylor attorneys finalizing privilege logs], leading to occasional supplemental productions." (Baylor Resp., Dkt. 622, at 9–10). But that explanation is not fully persuasive, particularly given the large volume of newly-produced materials and the coincidental timing of production, on the eve of Pepper Hamilton's own production deadline.

The Court will therefore order Baylor University to appear at the hearing and address these concerns.

## V. CONCLUSION

Accordingly, counsel for Baylor University, Plaintiffs, and Pepper Hamilton LLC are **ORDERED** to appear for an in-person hearing on **June 17, 2019**, **at 9:00 a.m. CST**.

The hearing will take place in Courtroom No. 2 of the United States Courthouse located at 800 Franklin Avenue in Waco, Texas. Because this is a Waco Division case, all hearings will be held in Waco unless all parties stipulate in advance that a hearing in Austin would be more convenient.

At the hearing, the parties should be prepared to discuss all of the submissions presently before the Court regarding the Pepper Hamilton materials, in particular:

1. Whether Pepper Hamilton may withhold materials that Baylor has logged as privileged dated from January 1, 2003 to June 15, 2016, and if so, what production methods would be appropriate for other materials in light of that restriction.

2. For materials dated from June 15, 2016 to November 6, 2017, whether any of the parties propose improvements to the proposed claw back order, which is attached at the end of this Order.

3. Whether Pepper Hamilton ever prepared a final or internal report on its investigation.

4. Pepper Hamilton may show cause why it should not be subject to sanctions for failure to comply with a discovery order.

5.   Baylor University shall address the concerns raised by the Court in this Order.

Following the hearing, the Court will enter an order resolving Pepper Hamilton's motion for reconsideration, Baylor's motion for protection, and Plaintiffs' motion to compel and motion for sanctions. That order will set deadlines and appropriate sanctions, if any. Pepper Hamilton and Baylor's production obligations will take effect upon entry of that order.

**SIGNED** on June 7, 2019.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

34

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al.*, | § | |
| | § | |
| | § | 6:16-CV-173-RP |
| Plaintiffs, | § | |
| | § | *Consolidated with* |
| v. | § | 6:17-CV-228-RP |
| | § | 6:17-CV-236-RP |
| BAYLOR UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

**Proposed Claw Back Order for Hearing on June 17, 2019**

Pursuant to the order entered today, (Dkt. XXX), the Court enters the following order to govern claw back procedures for any privileged material that is inadvertently produced during production by Pepper Hamilton LLP. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required") (citing Fed. R. Civ. P. 26(c)(1)).

Pursuant to Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 502(d), the Court **ORDERS** that:

1. Pepper Hamilton shall produce to Plaintiffs in electronic format all documents and materials pursuant to the terms of the subpoena, Federal Rule of Procedure 45, and this Court's orders. (*See* Subpoena, Dkt. 328-1; Protective Order, Dkt. 156; March 7th Order, Dkt. 597; March 28th Order, Dkt. 607, Order on Pepper Hamilton Discovery Obligations, Dkt. XXX).

2. Plaintiffs shall immediately scan and Bates label every material thing provided in response to the subpoena ("received materials") in the order in which it was provided. Plaintiffs shall produce all received materials, within **seven** days of receipt, to Baylor.

3. If, upon review of the received materials, Baylor identifies a privileged communication, Baylor must notify Plaintiffs in writing within **fourteen** days of receipt.

4. Plaintiffs must promptly return, sequester, or destroy the specified information and any copies it has, in compliance with Federal Rule of Civil Procedure 26(b)(5)(B).

5. In the event of a dispute over whether material is privileged, Baylor may file a motion with the Court to designate the material as privileged. Such a motion:

    a. must be filed within **twenty-one** days of Baylor's receipt of the material;

    b. must certify, in writing, that counsel have conferred in a good-faith effort to resolve the matters in dispute pursuant to Fed. R. Civ. P. 26(c)(1) and W.D. Tex. Loc. R. CV-7(i);

    c. must include all assertions of privilege concerning material produced in response to the subpoena in <u>a single motion</u>;

    d. must identify each communication, document, or material thing for which privilege is claimed, and include a prima facie showing[22] that each satisfies all of the elements of the privilege;[23]

---

[22] The Court would accept a filing that contains a spreadsheet listing the material, the claimed privilege, and a concise statement in support of the privilege.

[23] *See, e.g., Equal Empl. Opportunity Comm'n v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)("For a communication to be protected under the [attorney-client] privilege, the proponent 'must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'"); *S.E.C. v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006) (To assert work product privilege, a party must show: "(1) the materials sought are documents or tangible things; (2) the materials sought were prepared in anticipation of litigation or for trial; (3) the materials were prepared by or for a party's representative; [and] (4) if the party seeks to show that the material is opinion work product, that party must show that the material contains the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party.") (citations omitted). The Court will not consider conclusory or generalized assertions of privilege. *See, e.g., EEOC*, 876 F.3d at 695 ("[S]imply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege.").

    e.   must certify its compliance with this Order; and

    f.   may not exceed ten pages in length. Any response to such a motion may not exceed ten pages in length. The Court will not consider replies.

6.   The Court will not consider a motion to designate material as privileged that does not comply with the requirements of this Order.

7.   Any claim of privilege not filed within **twenty-one** days of Baylor's receipt of the material will be deemed waived.

**SIGNED** on [DATE].

[NO SIGNATURE]

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE