IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al*, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 6:16-CV-00173-RP |
| | § | |
| v. | § | *Consolidated with* |
| | § | 6:17-CV-228-RP |
| BAYLOR UNIVERSITY, | § | 6:17-CV-236-RP |
| | § | |
| Defendant. | § | |

## DEFENDANT BAYLOR UNIVERSITY'S MOTION FOR PROTECTION RELATING TO SUBPOENA TO NON-PARTY G.F. BUNTING + CO.

In October 2016, faced with three pending lawsuits (including this one), complaints by former employees, and intensifying media coverage relating to Baylor's handling of student sexual assault, Baylor's Office of General Counsel ("OGC") engaged a public relations firm, G.F. Bunting + Co. ("Bunting"), to advise the university's lawyers, both internal and external, in connection with potential and pending litigation, including providing strategic communications and public relations services related to the litigation.  Exh. 1, Holmes Decl. ¶ 3-8.  Although Baylor does not contend that all of Bunting's work is privileged, many of the documents responsive to the subpoena are protected work product prepared in anticipation of litigation, and the primary motivating purpose behind the creation of those documents was to aid in pending and possible future litigation. Additionally, in the Fifth Circuit, when an attorney retains a third party professional whose expertise helps the attorney provide legal advice, the communications and documents exchanged between the attorney and third party are subject to the attorney-client privilege when reasonably related to the purpose of that retention.

Baylor acknowledges the Court's ruling on Ketchum, Dkt. 616, but believes that Bunting's materials and role in assisting Baylor's attorneys in the defense of actual or threatened litigation are different—and that Baylor will be able to demonstrate privilege with respect to these documents based on specific and applicable case law.  These key distinctions, explained below, warrant an order granting protection so that Baylor may review responsive documents and assert any applicable privileges.

## FACTUAL BACKGROUND

***Bunting subpoena procedural history.***  On July 25, 2018, Plaintiffs filed a notice with the Court stating that they intended to issue a subpoena to Bunting.  Dkt. 442.[1]  However, Plaintiffs were unsuccessful in serving Bunting (apparently due in part to a faulty address) and abandoned their efforts. Nearly a year later, on June 25, 2019, Plaintiffs' counsel contacted Baylor's counsel and stated for the

---

[1] Contrary to Rule 45, Plaintiffs did not attach a copy of the subpoena to their notice or serve Baylor with a copy of the subpoena. *See* FED. R. CIV. P. 45(a)(4).

first time that they had difficulty serving Bunting.  Exh. 2 (email from C. Dunn).  Baylor's counsel reached out to Bunting's counsel, who conferred with Plaintiffs' counsel.  Bunting's counsel agreed to accept service.  Exh. 3, Graml Decl. ¶ 4.  It is Baylor's understanding that Bunting's attorneys and Plaintiffs agreed to a compliance date of September 5, 2019.

***Relationship between Baylor and Bunting.***  As this Court previously held, "by August 2015 [Baylor] had reason to expect litigation related to its Title IX compliance."  Dkt. 168 at 14-16.  Between March 2016 and June 2016, the anticipated litigation became real litigation as three lawsuits – including this one – were filed in this Court.  *See* C.A. Nos. 6:16-0069-RP; 6:16-00173-RP; 6:16-00180-RP.  By October 2016, Baylor also was dealing with legal claims and public attacks by former Title IX coordinator Patty Crawford; an investigation by the U.S. Department of Education; a media campaign by supporters of Baylor's former football coach Art Briles; and a fourth Title IX lawsuit filed on October 11, 2016 (C.A. No. 6:16-cv-00403-RP).  Exh. 1, Holmes Decl. ¶ 4-7. Additionally, in late October 2016, Baylor reasonably anticipated litigation from Art Briles, who subsequently filed a libel suit in December 2016 against Baylor and several Baylor officials. *Id.* ¶ 11. Misinformation in the media threatened to impair Baylor's right to a fair trial by jury, disrupt the reforms Baylor was implementing, and encourage further claims and administrative actions.  *Id.* ¶ 7.

Baylor hired Bunting on October 6, 2016 to assist Baylor in responding to the misinformation and to ensure that Baylor's PR and litigation efforts supported each other to the extent practicable, thereby aiding in OGC's actual litigation efforts and efforts in anticipation of potential litigation. Holmes Decl. ¶ 8.  OGC understood that the litigation and anticipated litigation were, and would be, affected by Baylor's PR efforts and vice versa.  *Id.* ¶ 9.   The engagement letter states that Bunting will provide services "in connection with litigation and in connection with potential government investigations and/or enforcement proceedings, including strategic communications and public

2

relations services." *Id.*, Exh. 1-A, p. 1.  Bunting agreed that documents it prepared or received in connection with litigation or anticipation of litigation would be treated as confidential.  *Id.*

Throughout Bunting's engagement, Bunting, OGC, Baylor's outside lawyers, Baylor regents, and Baylor's communication staff have worked together in an environment in which each litigation decision had an actual or potential effect on PR strategy, and each PR decision had an actual or potential effect on litigation strategy.  Holmes Decl. ¶ 13.  As discussed in greater detail below, the consultations between Bunting and Baylor's attorneys have aided OGC and its outside counsel in providing legal advice to Baylor.  *Id.* ¶ 8-13.

## ARGUMENT

### I.      Legal Standard

Federal Rules of Civil Procedure 26 and 45 expressly recognize a party's right to protect privileged or confidential information that is in a non-party's possession.  A party may move for a protective order seeking to limit the scope of discovery in a non-party subpoena.  *See Garcia v. Prof'l Contract Servs., Inc.*, C.A. No. A-15-cv-585, 2017 WL 187577, at *1 (W.D. Tex. Jan. 17, 2017); *Bounds v. Capital Area Family Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (M.D. La. 2016); *see also* Fed. R. Civ. P 26(c)(1)(D).  Here, Baylor's motion is timely because it has been filed by the date of compliance agreed to by Bunting and Plaintiffs' counsel.

### II.     Certain Communications Between OGC and Bunting Are Attorney-Client Privileged.

Baylor does not seek protection for all of Bunting's work.  Many items, including certain communications relating to interviews with news organizations, presumably are not privileged and will likely be produced.[2]  This motion seeks to protect just the subset of material aimed at assisting Baylor's attorneys, both internally and externally, in advising the University on matters related to pending or

---

[2] Baylor uses the phrase "will likely be produced" because Bunting will be reviewing and processing the production, and Baylor has not yet seen Bunting's documents.

threatened litigation.  The attorney-client privilege protects confidential communications between a client and attorney (whether at a law firm or in-house) that seek legal advice, provide legal advice, or provide information to the attorney that enables giving legal advice.  *Upjohn Co., v. United States*, 449 U.S. 383, 390 (1981).  While disclosure to third parties normally waives the privilege, an exception applies for disclosures to "professionals hired to assist the lawyer in providing legal advice to the client."  *In re Hardwood P-G Inc.*, 403 B.R. 445, 458 (Bankr. W.D. Tex. 2009) (citing *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. 2003)).  Here, two related exceptions permit the application of the attorney-client privilege to OGC's communications with Bunting.

### A.       Bunting Helped Effectuate OGC's Legal Advice to Baylor.

The first exception is "for third parties who assist an attorney in rendering legal advice."  *Ferko*, 218 F.R.D. at 134; *In re Hardwood P-G Inc.*, 403 B.R. at 458.  In *United States v. Kovel*, Judge Friendly acknowledged that the practice of law is so complex that attorneys often cannot function effectively without the help of third parties.  296 F.2d 918, 921 (2d Cir. 1961).  Thus, when an attorney retains a third party whose expertise helps the attorney provide legal advice, the documents exchanged between the attorney and third party, and reasonably related to the purpose of that retention, are subject to the privilege. *Id.* at 921-22 (applying privilege to communications with an accountant).  The Fifth Circuit, "like most" circuits, has adopted the *Kovel* test.  *Milburn v. United States*, 804 F. Supp. 2d 544, 548 (W.D. Tex. 2010); *Ferko*, 218 F.R.D. at 135; *see also United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982) (citing *Kovel* with approval).  The "controlling factor" is whether the third party was necessary for the rendering of legal advice or was instead providing business advice.  *Id.* at * 1.

Under the *Kovel* test, the pertinent question is how the third party – here, Bunting – assisted Baylor's lawyers, internal and external, in rendering legal advice. Without question, the modern practice of law includes managing public communications about legal matters affecting one's clients.  "An attorney's duties do not begin inside the courtroom door.  He or she cannot ignore the practical

implications of a legal proceeding for the client." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1043-44 (1991) (invalidating bar rule that prohibited lawyer's extrajudicial statements at a press conference).  In Baylor's case, the practical implications have included managing public communications in a manner that is consistent with the strategic considerations relating to anticipated or pending litigation; ensuring that public communications are non-defamatory and compliant with privacy law; and ensuring compliance with settlement agreements and other legal obligations.  Holmes Decl. ¶ 9-10, 12-13.  In the modern media environment, the magnitude and complexity of these tasks has intensified, making outside expertise critical.  Bunting was not hired to provide "business as usual" PR activities but, rather, to provide specialized services in a litigation-intensive environment.  *Id.* ¶ 16.

The attorney-client privilege attaches to the documents and communications made pursuant to Bunting's engagement because the documents and communications aided OGC's ability to understand the PR effects of litigation decisions and the litigation effects of PR decisions, so that OGC and its outside counsel could better provide legal advice to Baylor in connection with its pending and anticipated litigation.  Holmes Decl. ¶ 9, 13.  The attorney-client privilege attaches to these communications because they were reasonably related to the purpose for which OGC hired Bunting. *Ferko*, 218 F.R.D. at 138-39; *see, e.g., In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2007 WL 854251, at *4 n.3 (E.D. La. Mar. 6, 2007) ("Merck argues that the communications consultants were acting under the direction of Debevoise attorneys and therefore any responsive materials in the possession of these third-parties are entitled to work-product and/or attorney-client protection.  The Court agrees that these materials are also protected.").  In the *Vioxx* case, the Court expressly recognized the privilege could extend to public relations consultants.  Indeed, "[t]he ability of lawyers to perform some of their most fundamental client functions … would be undermined seriously if lawyers were not able to engage in frank discussions of facts and strategies with the lawyers' public relations consultants." *Vioxx*, 2007 WL 854251, at *4 n.3 (quoting *In re Grand Jury Subpoenas Dated March 24, 2003*, 265

F.Supp.2d 321, 326 (S.D.N.Y. 2003)); *Action Ink, Inc. v. Anheuser-Busch, Inc.*, 2012 WL 12991010, at *6 (E.D. La. Nov. 9, 2012) (defendant's evidence showed that the third parties were not merely providing "'ordinary public relations advice'").  Further, no such material has been disclosed to any non-confidential, non-privileged third party by Baylor or Bunting.  Holmes Decl. ¶ 10, 13.

In its prior ruling regarding Ketchum, a different PR firm hired by Baylor, the Court declined to find privilege as to that firm, noting the absence of "any Fifth Circuit authority addressing whether communications with a public relations firm may be subject to attorney-client privilege."  Dkt. 616 at 5. The *Kovel* ruling, adopted by the Fifth Circuit, demonstrates that the attachment of privilege does not require finding a specific privilege for PR communications, nor is Baylor asking the Court to recognize such a privilege.  Here, as in *Hardwood, Ferko*, and *Vioxx*, the question is whether Baylor's OGC retained the professional, Bunting, for its expertise for the purpose of facilitating and effectuating his legal advice to Baylor.  The declaration of Baylor's General Counsel demonstrates that Bunting directly aided counsel in advising the university on critical legal matters.  Accordingly, communications and documents exchanged between the OGC, others at Baylor involved in managing and handling Baylor's litigation, Baylor's outside counsel and Bunting, are subject to the attorney-client privilege if they are reasonably related to the provision of legal advice.

B.   **Communications Between Bunting and OGC Are Privileged Because Bunting Acted as the Functional Equivalent of a Baylor Employee.**

The second, and somewhat related, exception exists for third parties, such as independent contractors or consultants, who are the functional equivalents of a client's employee and participate as members of the client's team to provide information and advice to counsel for the purpose of facilitating or effectuating legal advice.  *See Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765, 2016 WL 183476, *2-3 (D. Nev. Jan. 14, 2016) (recognizing that attorney-client privilege extends to third-parties pursuant to the "functional equivalent" doctrine and collecting cases on same); *see also FTC v. GlaxoSmithKline,* 294 F.3d 141, 148 (D.C. Cir. 2002) (holding that confidential communications

involving consultants, including public relations consultants, were privileged because they involved the rendering of legal advice and "corporate counsel worked with these consultants in the same manner as they did with full-time employees . . . and, as a result, the consultants became integral members of the team assigned to deal with issues that were completely intertwined with GSK's litigation and legal strategies").  In such cases, communications between the client's lawyers and third parties who provide information and documents to those lawyers and participate as members of the team with the primary purpose of effectuating counsel's rendition of legal advice to the client are privileged, and the privilege is not waived by the communications.  *Benson v. Rosenthal*, C.A. No. 15-782, 2016 WL 1046126, at *6 (E.D. La., March 16, 2016) (citing *In re Bieter Co.*, 16 F.3d 929, 938 (8th Cir. 1994), and numerous cases from within the Fifth Circuit); *accord Firefighters' Retirement Sys. v. Citco Group Ltd.*, C.A. No. 3:13-cv-00373, 2018 WL 23223424, at *4 (M.D. La., May 22, 2018), *adopted,* 2018 WL 5993472, at * 1 (M.D. La., Nov. 14, 2018) (quoting *Benson*; also citing *Kovel* and *Bieter* and recognizing that an attorney-client privilege can exist with third parties in these circumstances).

Here, OGC, Baylor's outside counsel, and members of Baylor's internal PR team worked closely with Bunting and its employees as integral members of the Baylor team assigned to deal with, manage, and handle Baylor's pending and anticipated litigation.  Holmes Decl. ¶ 13; *see also Vioxx*, 2007 WL 854251, at *4 n.3.  Bunting provided PR materials, information, and advice to help ensure that each legal decision was informed by the PR perspective to the extent practicable, for the primary purpose of effectuating OGC's legal advice to Baylor. *Id.*  Further, communications between OGC and Bunting have been continuous on matters critical to Baylor's positions in the various lawsuits in which Baylor has been or is involved. *Id.*  Because Bunting was acting as an integral member of the Baylor team, and for the primary purpose of effectuating and facilitating OGC's legal advice to Baylor, the communications are protected by the attorney-client privilege. *Firefighters' Retirement Sys.*, 2018 WL 23223424, at *4; *Benson*, 2016 WL 1046126, at *6.

### III.   **Baylor's and Bunting's Materials and Communications Are Protected Work Product.**

Many of the Bunting materials also are protected by the work-product privilege, which protects "documents and other tangible things that are prepared in anticipation of litigation . . . by or for [a] party or its representative (including the []party's attorney, consultant, . . . or agent)." Fed. R. Civ. P. 26(b)(3)(A).   It provides protection against disclosure of "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative or a party concerning the litigation." *Id.* at 26(b)(3)(B).   A document is prepared in anticipation of litigation when "the primary motivating purpose behind the creation of the document was to aid in possible future litigation."   *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000).   "[F]actors relevant to determining the primary motivation for creating a document [include] the retention of counsel and his involvement in the generation of the document and whether it was routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004) (punctuation omitted).

Where documents or communications are created pursuant to a defendant's engagement of a public relations firm, and they are created primarily to aid in the response to actual or potential litigation, the mere fact that the documents or communications also were intended to aid the defendant's concomitant publicity efforts does not diminish work-product protection.  *See, e.g.*, *Vioxx*, 2007 WL 854251, at *4.  Here, OGC engaged Bunting to aid in the defense of anticipated and pending litigation.[3]  Holmes Decl. ¶¶ 8, 10.  The documents and communications prepared by Bunting for Baylor were not prepared as a matter of routine practice, but rather each was prepared in response to actual or anticipated litigation.  *Id.* ¶ 10.  As a result, the primary purpose of each document or communication was to aid in litigation, and to the extent there were business benefits associated with

---

[3]   Thus, the analysis here is distinguishable from the Court's privilege ruling as to Ketchum, which did not consider Baylor's "general purpose in hiring Ketchum." Dkt. 616 at 5. The Court's prior ruling also found that the submitted communications did not reflect a litigation-related purpose.

those documents, they "cannot be considered primary." *Vioxx*, 2007 WL 854251, at *4. Holmes' declaration shows that Bunting was involved in a wide range of litigation-related and claims-related activities, including (1) reviewing or commenting on pleadings to be filed; (2) assisting OGC in analyzing media inquiries and whether and how to respond regarding pending or anticipated litigation; (3) preparing a timeline of evidence used in responding to a federal administrative investigation; (4) collaborating with outside counsel during a mediation regarding potential public comment; (5) preparing or revising media statements in light of pending or threatened litigation; (6) analyzing information in the media and its relationship to pending or anticipated litigation; and (7) communicating with outside counsel to ensure that planned PR activities would not affect pending litigation. *Id.* ¶ 10. These types of documents and communications constitute work product because their primary purpose was to aid in the defense of anticipated or pending litigation and, therefore, should be protected from discovery.

## IV.    Relief Requested as to Privileged Information

The declaration of Baylor's General Counsel demonstrates, based on his personal knowledge, that Bunting was involved in tasks that assisted OGC and its outside counsel in advising the University and responding to and managing anticipated and pending litigation. At this time, however, Baylor is unable to submit a privilege log because the requested material is in Bunting's possession and is being reviewed by Bunting's attorneys. Baylor has been informed that Bunting anticipates that it will take approximately 90 days to complete the review of materials responsive to Plaintiffs' subpoena due to the volume of information. Baylor requests an opportunity to review the documents responsive to Plaintiffs' subpoena to Bunting for privilege and, as to responsive materials that are not produced, prepare a privilege log for those materials. If a dispute needs to be presented to the Court on the privileged nature of the documents, then it will be in the context of specific documents and specific privilege log entries that will aid the parties' and Court's consideration of the issues as specifically

applied to Bunting.  This request is based on the time estimate that Bunting has provided for its review and production.

## V.    Plaintiffs Seek Information from Bunting That Is Irrelevant and/or Disproportionate to the Needs of This Litigation.

Discovery must be relevant to the claims/defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The Jane Doe lawsuits claim that Baylor is liable for specific alleged instances of sexual assault against female Baylor students by other students that allegedly occurred between September 2004 and April 2017.  Although the current ESI cut-off date is November 6, 2017, the subpoena requests information to the present date.  *See* Exh. 3, exh. 3-A, definition no. 40.  But Bunting's post-November 2017 work with Baylor has no bearing on the handling of sexual assault claims occurring prior to that date.  Third parties should comply with the same dates that apply to Baylor.  *See, e.g.*, Dkt. 653 at 9-10 ("Pepper Hamilton must comply with the same dates as all other parties to this case.").  The burden and expense of the requested discovery to Baylor and Bunting, including producing and logging, outweigh its likely benefit.  Baylor therefore requests that the Court order that Bunting does not have to produce materials that were created after November 6, 2017.

## CONCLUSION AND RELIEF REQUESTED

Baylor respectfully requests that the Court grant Baylor's Motion for Protection and (1) allow Baylor to (a) review the materials in Bunting's possession that are responsive to the subpoena, (b) assert claims of attorney-client or work product privileges to those documents, where appropriate, and (c) log any such documents on which the privileges are claimed by the date that Bunting completes its production; and (2) order that Bunting does not have to produce materials responsive to the subpoena that were created after November 6, 2017.

Respectfully submitted,

**THOMPSON & HORTON LLP**

/s/ Lisa A. Brown

Lisa A. Brown
Texas Bar No. 03151470
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027-7554
(713) 554-6741 (telephone)
(713) 583-7934 (fax)
lbrown@thompsonhorton.com

Holly G. McIntush
Texas Bar No. 24065721
400 West 15th Street, Suite 1430
Austin, Texas 78701
(512) 615-2351 (telephone)
(512) 682-8860
hmcintush@thompsonhorton.com

**WEISBART SPRINGER HAYES LLP**

Julie A. Springer
State Bar No. 18966770
jspringer@wshllp.com
Sara E. Janes
State Bar No. 24056551
sjanes@wshllp.com
Geoff Weisbart
State Bar of Texas No. 21102645
gweisbart@wshllp.com

212 Lavaca Street, Suite 200
Austin, Texas  78701
512.652.5780
512.682.2074 fax

**COUNSEL FOR DEFENDANT
BAYLOR UNIVERSITY**

## CERTIFICATE OF CONFERENCE

I hereby certify that the parties have conferred regarding this motion and that Plaintiffs are opposed to this motion.

/s/ Lisa A. Brown

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon all counsel of record on September 5, 2019, via the Court's ECF/CMF electronic service system as follows:

Mr. Chad W. Dunn (Attorney in Charge)             *Via ECF:  chad@brazilanddunn.com*
**BRAZIL & DUNN, L.L.P.**
3303 Northland Drive, Suite 205
Austin, Texas  78731

Mr. Jim Dunnam                                   *Via ECF:  jimdunnam@dunnamlaw.com*
**DUNNAM & DUNNAM, L.L.P.**
4125 West Waco Drive
Waco, Texas  76710
P. O. Box 8418
Waco, Texas  76714-8418

/s/ Lisa A. Brown

4811-3354-1028, v. 1