IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, JANE DOE 2, | § | |
| JANE DOE 3, JANE DOE 4, | § | |
| JANE DOE 5, JANE DOE 6, | § | |
| JANE DOE 7, JANE DOE 8, | § | |
| JANE DOE 9, and JANE DOE 10 | § | |
| | § | Cause No. 6:16-cv-173-RP |
| | § | JURY TRIAL DEMANDED |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | |
| | § | |
| BAYLOR UNIVERSITY | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' RESPONSE TO
DEFENDANT'S REQUEST FOR ORAL HEARING**

COME NOW PLAINTIFFS and file this Response to Defendant's Request for Oral Hearing.[1] In support therefore, Plaintiffs would show the honorable Court as follows:

**The Oral Hearing Request**

As stated several times in the past, Plaintiffs are eager to participate in any hearing the Court believes would be helpful in its deliberations. Plaintiffs' opposition to Baylor's request for an oral hearing is that it will further Baylor's problematic approach of resolving discovery disputes piecemeal, and only those that Baylor selectively wants. If the Court does want a hearing, then it should be scheduled so as to give the parties time to present *all* the discovery issues that currently may remain in dispute and *after* this current wave of production is more complete. What is produced, if anything, will better define what issues on which the parties are still in disagreement.

---

[1] ECF 704.

If the Court finds that Friday's filings are insufficient under the Court's prior order on the pending request for production issues, then Plaintiffs' counsel stand ready to respond to any questions the Court may have on any such issues.

### The Main Remaining RFP Issue

The Court will notice from last Friday's advisories that the main sticking point on the RFPs has to do with people who have asserted claims or lawsuits against Baylor. Baylor does not want to log all of its litigation and claims files for privileged information. Plaintiffs agree Baylor should not have to, at least at this time.[2] But, Plaintiffs do need to know which former employees and students have made claims, including sexual assault survivors and alleged assailants, as well as the basic subject matter of these claims.[3] These matters have to do with the credibility of testifying witnesses, data keeping on sexual assault allegations and the veracity of Baylor's defense that it has, at some point, gotten its Title IX act together, just to name a small part of the relevance of this evidence.

To bridge the competing interests, Plaintiffs proposed that Baylor make a list of all the demand letters and litigation it has had that is responsive to the RFPs and then counsel can work through that list on what needs to be produced.  If there are FERPA issues, the claimant can be identified by the same initials used in production. Yet, Baylor refuses to make such a list and instead demands that Plaintiffs tell them which claimants they are interested in when Baylor knows full well the Plaintiffs have no way of knowing who all have made claims. The Court should reject this obstruction, order

---

[2] Indeed, at July 24, 2019 hearing, Plaintiff's counsel said: "But obviously the litigation file doesn't need to be logged, which we've said – I'm saying it again now -- I said it ten minutes ago, actually. What we are interested, however, in is communications between Ms. Springer and the lawyer for the gentleman that's alleged to have assaulted our client and his lawyer. In that lawsuit, the settlement agreement that they reached agreeing not to investigate his Title IX claims, those types of things. We're not trying get litigation files or communications between Baylor and their lawyers."  See 07/24/2019 Transcript at Page 18, Lines 5-20.

[3] For example, whether Baylor referred only rape survivors assaulted by football players to attorneys and not other rape victims, this is highly probative in the case.  Also, whether Baylor was making payouts and agreements with alleged assailants while stymieing the Title IX investigations requested by the survivors is also highly relevant information.

Baylor to make a list of all such demands, letters, and claims. Then, counsel can discuss a process of production that give Plaintiffs the limited information they seek while also limiting more voluminous privilege review.

### Conferring on Requests for Production

The Court will recall that over a year ago Plaintiffs' counsel suggested that the parties go through the RFPs, one by one. Baylor and these same lawyers refused.  Instead, specific topics were distilled that, if resolved, would hopefully dislodge individual requests for production.  Then, the Court issued orders on these general topics including an eventual order overruling all of Baylor's objections because Baylor had not adequately preserved them. Baylor then transitioned to the strategy of having Ms. Springer be more vocal at Court hearings, Mr. Weisbart personally appearing, and renewed statements that they were "new" and would bring a reset of Baylor's conduct.

This pledge that a new leaf would be turned over coincided with Baylor's attempt to gain consideration of reconsideration. Baylor made clear that it did not want to follow the Court's order that said all objections were overruled except for discrete topics. When Plaintiffs' counsel tried to follow the Order in attorney conferences, Baylor insisted on going through each RFP one-by-one, even those for which the Court did not grant any reconsideration. Baylor insisted that Plaintiffs go through the same process that Plaintiffs had much proposed earlier and that Baylor had wholesale rejected more than a year ago. Despite this inconsistency, Plaintiffs' counsel went along to try to avoid yet another matter for the Court to resolve. What ensued were no less than 15 hours of in person and telephone conferences and countless exchanged emails. Baylor's proposal has basically been to take the position as if the Court has not overruled its objections except to specific topics, and therefore Plaintiffs' counsel are unreasonable to decline to reconsider the Court's standing orders that the Court did not reconsider. Plaintiffs want to start with the Court's orders and move forward. Baylor wants to start over as if the last two years and the Court's orders had not happened.

Baylor expresses frustration that Plaintiffs are unwilling to bind themselves permanently to dramatic limits in nearly every RFP, despite the Court's orders. As important, Plaintiffs cannot do so in light of the limited document production thus far made, and despite dozens of depositions that have yet to be taken that could reveal documents and materials that Baylor could thus try to shield with such an agreement. Plaintiffs' position is entirely warranted, particularly in light of Baylor's past attempts to argue that Plaintiffs were precluded from later discovery by some "King's X" in the ESI agreement.[4]

At the same time that Baylor wants Plaintiffs to concede artificial limits on the RFPs, Baylor's counsel refuses to confer about other related document production subjects, saying those could wait. There are numerous emails and letters asking Baylor to deal with those other issues. As but one example, Baylor has not instructed the numerous law firms under its employ to start responding to the current and former Baylor employee subpoenas. The Court ruled on these motions and instructed the other Baylor law firms to do things and most have done nothing as shown by the few filings in response.[5] Despite a 3-year track record of Baylor's practice in discovery, Plaintiffs worked hard to get an agreement on issues laid out in ECF 702-1 and were able to resolve, for now anyway, the vast majority of the requests. Plaintiffs then put before the Court only the RFP issues that remained at that time. For that, Plaintiffs' counsel got a late night, in court papers, chastising by Baylor's lawyers.[6]

---

[4] Recall that when Plaintiffs' counsel agreed to an initial ESI cutoff date two years ago, this was specifically stated that this was without prejudice, yet then Baylor's lawyers would argue later that this deadline was agreed and immovable. Baylor used this argument to obstruct discovery on many fronts until the Court resolved the matter. See ECF 637.
[5] ECF 582.
[6] Other than the odd stance of Baylor trying to urge it has new lawyers, looking back, the process went awry the week before last when Baylor requested that the parties seek additional time to keep talking, even though counsel had been stuck on the same issues after hours of talking. Despite this, Plaintiffs agreed to the extension and agreed to keep talking on the remaining few issues. Then, last week, after counsel spoke, emails and letter drafts from Baylor would act as though the issues that have stymied counsel for weeks were somehow agreed. When Plaintiffs informed Baylor that it viewed the process as stalled and it was time to put the remaining issues to the Court, Baylor backtracked from the agreed

**Additional Issues Raised by Baylor**

Baylor's hearing request comes on the heels of significant portions of Baylor's filings over the last two weeks making personal attacks against Plaintiffs' counsel.[7] Having appeared before many judges, the undersigned have learned that judges neither have the time nor inclination to delve into the skirmishes between lawyers. This Court has also specifically directed against the filing of anything that questions the motive of opposing counsel. For this reason, Plaintiffs did not respond to Baylor's calumnies lodged in ECF 699 and 703. However, as these assertions may factor in the Court's decisions regarding the need for a hearing, Plaintiffs feel compelled to address them, so as to not leave the Court with the impression that Plaintiffs concede Baylor's depiction of events. The actual record establishes just the opposite, and Plaintiffs have endeavored to set forth facts without reference to motive of Baylor's counsel.

Last Friday, Plaintiffs filed their advisory, electing to avoid recitation of certain conflicts and Baylor's continued obstruction. Instead, and as directed by the Court, Plaintiffs simply laid before the Court the RFP issues that still require resolution. In contrast, Baylor filed its advisory with considerable space devoted to attacks on Plaintiffs' counsel.[8] Baylor's advisory is consistent with its pattern of filing things after-hours and after Plaintiffs have made their submissions, thus foreclosing a response by Plaintiffs.

---

framework and sought to discredit counsel to the Court. Plaintiffs' filing stuck with the issues, but Baylor focused on inaccurate blame-shifting.

[7] ECF 699 and 703.

[8] Baylor complains that Plaintiffs' counsel "…have retreated from their prior representations and verbal agreements on the remaining disputes and have reverted to unreasonable positions…" and specifically call Plaintiffs' counsel out for refusal to sign a letter agreement amended and emailed by Baylor at 2:07p.m. on the day the parties' advisories were due.  This statement is false.  Baylor fails to inform the Court that Plaintiffs never represented that they were signing the letter as an agreement that would get around Court orders nor does Baylor inform the Court that its 2:07 day-of-the-deadline draft contained new and highly objectionable language that was not included in prior drafts, the new language specifically asked Plaintiffs to agree to something they had always objected to.

This summer, Baylor began consistently claiming in multiple emails to Plaintiffs that Plaintiffs' counsel are "over-reacting." Then came Mr. Weisbart's email stating: "In response to what you just filed, I plan to make sure that Judge Pitman sees my request to you to call me first if you're going to complain as you did, instead of first inquiring to find out what is really going on."[9]

First, Mr. Weisbart's recitation of facts and his opinions about the events in the case are uninformed, which is to be expected in light of his virtual absence from this case throughout the past 3 years. Other than perhaps a call or two related to matters involving Baylor Chairman Willis' trip to Mexico, Plaintiffs' counsel do not recall ever receiving a call from Mr. Weisbart about anything in this case and a quick search of Plaintiffs' email records have found no emails authored by Mr. Weisbart other than 13 emails concerning Willis-related depositions. His only notable participation on a call aside from Willis' matters was on an April 11, 2019 call with Pepper Hamilton's counsel and Baylor, a call wherein Ms. Springer took the lead in informing Plaintiffs that PH would not be providing any documents in response to the Court's order – a decision for which PH was sanctioned.[10]

It is true that Mr. Dunn did not call Mr. Weisbart before Plaintiffs' filing of ECF 698, however, the Court should know that the subject matter involved an email request that came from Ms. McIntush to Plaintiffs, and Mr. Weisbart was not even copied by Ms. McIntush on the email chain.  The undersigned do not have a habit of calling one law partner about the conduct of another, particularly one who has had no involvement in the subject matter.

And to double down on the confusion about the respective roles, Ms. Springer has since made it clear in an email as of today: "Also, in the future, *please direct your communications to me and Lisa as we are lead counsel for our respective firms.* I would be appreciative if you would copy the remaining members of our team, including Geoff, on any emails and we will do the same."

---

[9] ECF 699-1 at ¶ 2.
[10] As just another example, Mr. Weisbart did not participate in the 15+ hours of in person and telephone conferences and countless exchanged emails referenced earlier.

(emphasis added). Baylor needs to make up its mind where the buck stops, and Plaintiffs will respect that decision. And although Baylor's exclusion of Mr. Weisbart on emails has resulted in his not being included when Plaintiffs' counsel hit "Reply All," Plaintiffs will endeavor to include him in the future.

Plaintiffs were hopeful that Mr. Weisbart appearing at the first hearing on June 17, 2019 would in fact change Baylor's level of cooperation. However, Mr. Weisbart's participation since, at least from what Plaintiffs can observe, does not extend much beyond the recent Court appearances and the filing of his email. There has been no reset in Baylor's positions in dealing with discovery other than more time being devoted by Plaintiffs and stronger resistance by Baylor.

While Baylor's sudden offensive has been launched that Plaintiffs' counsel are the source of all problems, the record reflects that Plaintiffs have readily proven an ability to resolve disputes wherever resolution is possible. Whenever Baylor has not been involved in directing actions of third-parties, Plaintiffs have readily reached agreements without the need to trouble the Court - the resolution with PH of the sanctions fee issue being the most recent example.[11] When Baylor has interjected itself on third-party subpoenas, such as initially with PH and now with Bunting, third-parties have not responded until forced to by this Court. Perhaps it has been an error, but Plaintiffs' counsel have thus far resisted seeking sanctions against Baylor, to preserve or even improve the working relationship among counsel.[12] The fact that Plaintiffs have resisted multiple legitimate opportunities to seek sanctions against Baylor should speak to the sincere attempts of Plaintiffs' counsel to respect opposing counsel in the interests of completing the discovery phase.

The last 75 days have shown that Baylor's assurances that there was going to be a "reset," and that Baylor's discovery behavior of the last several years would change, have not come to pass. Although Ms. Springer recently began taking over more of the in-person presentations before

---

[11] ECF 693.

[12] At this point, the Court has mentioned the absence of sanctions requests by Plaintiffs against Baylor in two orders.  ECF 667 and 653.

the Court and leading more calls, the concomitant "we're new to the case" strategy must be considered in light of the fact that these "new" counsel (i.e. Weisbart, Springer & Hayes) have been of record for Baylor since the first hearing in Doe 1-10, have been sole counsel in Doe 11 since the start, and have been co-counsel since the inception of Doe 12-14. This summer is the second time Baylor has attempted this strategy, as can be seen in Ms. Springer's exact statement to the Court on June 16, 2017 that "we're recent to this case." The Court will recall that the 2017 "reset" came after a full year of discovery delay. As with the two years since, nothing has changed, and, unfortunately, things have gotten even worse since the "reset" in June 2019.  The sudden filing of now 3 documents in a mere 14 days attempting to villainize Plaintiffs' counsel is concerning, particularly when the submissions inaccurately depict true events.[13]

## CONCLUSION

The issues remaining for the Court at this time are reflected in Plaintiffs' ECF 702.  If the Court believes that additional briefing or detail, or an oral hearing would assist the Court in its determination of pending matters, Plaintiffs welcome the opportunity to attend a hearing in Austin on that matter.  And should the Court do so, Plaintiffs would request the opportunity to specify specific additional topics in need of resolution to add to a hearing agenda.[14]

Unfortunately, Baylor's recent strategy and filings do not bode well for a true reset. Mr. Weisbart's complaint that Mr. Dunn e-mail to Ms. McIntush was for the benefit of the Court was not followed up by a phone call to Mr. Dunn, but rather an e-mail that was filed with the Court less than an hour after it was e-mailed to Mr. Dunn. Mr. Weisbart complains that Mr. Dunn did not call him first on a matter that his co-counsel elected to not even copy Mr. Weisbart on, which is of little surprise

---

[13] Should the Court desire a more detailed point by point response to the claims of Baylor against Plaintiffs' counsel in ECFs 699 and 703, Plaintiffs will provide one.

[14] Plaintiffs conferred with counsel for Baylor on September 5, 2019, regarding adding topics to a hearing should the Court elect to conduct an oral hearing.  Baylor requested an opportunity to review that list of specific topics and thereafter note its agreement or opposition to adding those topics.

since other than to showing up at two Court hearings and involving himself to protect Chairman Willis, Mr. Weisbart has been completely uninvolved in the discovery conferences in this case and likely copied by Baylor on less than 1% of the correspondence thus far in this case. Following receipt of Mr. Weisbart's instruction that he should be the one called on matters, Plaintiffs' counsel made sure to call him and ask to confer with him on issues that have arisen this week. This was responded to with the email from Ms. Springer today that only she and Ms. Brown were the lead counsel to confer with. Plaintiffs will endeavor to comply with the bouncing ball of who to call, but Plaintiffs need to know where Baylor wants that ball to land.

As stated at the inception of this Response, Plaintiffs' counsel are not accustomed to involving the Court in these credibility attacks on counsel, and recall little similar in their 60+ years of combined practice. Plaintiffs also hope the Court will find this Response devoid of suggestions of motive by Baylor for its decisions. Plaintiffs would much prefer to only involve the Court in matters essential to the progress of this case but cannot allow aspersions on their conduct to go unanswered. Plaintiffs' attorneys do not claim to be perfect and accept some responsibility for some acrimony between counsel, particularly in light of the subject matter in this case, and they will redouble efforts in this regard. But the fact remains that when one party is obstructing discovery at all costs, there often can be little middle ground.

Respectfully submitted,

 _/s/_ Chad W. Dunn
**BRAZIL & DUNN, L.L.P.**
Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
3303 Northland Drive, Suite 205
Austin, Texas 78731
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

**AND**

**DUNNAM & DUNNAM, L.L.P.**

Jim Dunnam
State Bar No. 06258010
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Facsimile: (254) 753-7434
jimdunnam@dunnamlaw.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been filed by ECF and sent to counsel of record via electronic notification on September 6, 2019.

_/s/_Chad W. Dunn
CHAD W. DUNN