

**JIM DUNNAM**
jimdunnam@dunnamlaw.com
(254) 753-6437

January 9, 2020

Re:  *Jane Doe 1-10 v. Baylor University*; Cause No. 6:16-cv-173-RP; In the United States District Court, Western District of Texas, Waco Division

## PLAINTIFFS' LETTER BRIEF RE ECF 769

Judge Austin,

With the exception of one term, the search terms currently in dispute by Baylor were all search terms that Baylor previously agreed to with respect to Jane Does 1-10 (See ECF 176). In fact, the parties' previous agreement on the now disputed search terms was the basis of the Court's ruling over 2 years ago in ECF 222. Baylor's attempt to walk back prior agreements regarding search terms should be rejected. More importantly, the terms in dispute, when used in regard to Does 1-10 resulted in specific relevant production that otherwise would not have been made. The following are just some examples of how terms in dispute pulled documents not captured by other search terms.

The terms "**title IX**" and "**sexual assault**" resulted in Baylor producing an email from Matt Burchett and Kevin Jackson regarding a survivor vigil on Baylor campus in which certain Jane Does attended and participated. This email relates to attempts by Baylor to manipulate the messaging of those survivors (e.g. ECF 527). No Doe's or Assailant's name were included in the emails - the only search terms included in this email are Title IX and Sexual Assault, terms that Baylor would now exclude. **"Sexual Assault"** has also compelled production of communications between Kevin Jackson and Ken Starr regarding the survivor counseling services, including counseling staff to student ratios. The term "sexual assault" is the only ESI term appearing in administrator communications from 2008 discussing the lack of information related to sexual assault on the university's counseling website. "**Assault**" is the only ESI term in the "Orientation 2012" document that appears to be a presentation to new students. The document contains statistics and is about not becoming a victim. "**Stalk**" is the only term that appears in a series of emails regarding presentations to students, directed at times to female students only, by Kandy Knowles called "Stalk Talk."

"**Prior /s sex**" appears in draft edits to the University's statement on sexuality prior to 2015. "**Sex/sexual**" have likewise produced relevant documents that do not include other search terms, such as a sex and intimacy worksheet provided to students that is directly relevant to the culture at Baylor and Plaintiffs' claims involving intentional discriminatory policy and heightened risk. Yet another example are emails titled "Disciplinary Committee Training Item – Sex Offenses." **"Sex act"** and a form of **"sexual"** are the only ESI terms in a tracked changes comment on the University's Statement on Human Sexuality. **"Sexual activity" "sexual"** and **"sex"** are the only ESI terms that appear in an email thread discussing a presentation to students in fraternities regarding topics that include sex, consent and risk management.

"**Clery act**" is the only ESI term in an email exchange between McCraw and former BUPD Chief Doak regarding reporting responsibilities of the University, as with multiple other

communications regarding reporting responsibilities that only include the term "Clery Act." Of course, widely reported failures in reporting under the Clery Act are relevant to intentional discriminatory policy decisions.

"**Violence Against Women Reauthorization Act**" is the only ESI term in correspondence to survivors of "unwanted physical contact" prior to the establishment of the Title IX office. **"VAWA"** is the only ESI term in an email chain discussing Baylor's Violence Against Women Act Webpage, the definition of "consent" and having a "Baylor-centric approach" while complying with VAWA. **"Title IX"** is the only term that appears in an email between Brian Nicholson and McCraw regarding a meeting with Margolis Healy — the first firm hired to investigate and evaluate Baylor's compliance with Title IX, the Clery Act and related laws. The resulting findings of Margolis Healy, and Baylor's lack of policy changes in response, demonstrate wholesale violations of law forming a basis of Plaintiffs' claims (see ECF 549). It should also be noted that while Plaintiffs have suggested modifying this term with certain exclusions to address certain Baylor concerns, this suggestion was rejected by Baylor. **"Title ix /s resource"** is found in a communication discussing ideas for training of resident chaplains and dorm hall leaders for student dorms.

The above are just some examples, more examples being precluded by the two-page limitation on this advisory. Baylor's basis for exclusion of the search terms in dispute appears to be based on assertions that the search terms are either too broad or not applicable to Jane Does 11-15. Discovery conducted to date reveals that the requested search terms are not too broad. As set forth above, with the exception of "resource /s title ix" the disputed terms are terms previously agreed to by the parties and included in the Court's Original ESI Order ECF 176. For the original ESI time period, January 1, 2003 through June 15, 2016, these terms have been searched for the previously agreed/ordered 66 custodians. The new ESI time period for those custodians is relatively short –June 15, 2016 to November 6, 2017 –as compared to the initial time period. Given the Court's recent Order ECF 770, there are only 21 custodians that will have their ESI searched for both time periods for all ESI terms (2 from Baylor's Group A, 7 from Baylor's Group B and 12 from Baylor's Group C are new custodians that have not previously had their ESI searched).

With respect to Baylor's other requested limitations, this case is not solely restricted to how poorly Baylor responded to the claims of 15 young women that were sexually assaulted, and the new ESI time period is not relevant to only Jane Doe 11's claims. This case is also about Baylor's intentional policies of discrimination. The disputed terms are necessary, and have been proven, to capture documents relevant to core issues Baylor's intentional discriminatory policies, both formal and informal, against its female students, along with the extraordinary lengths Baylor has gone in order to protect those persons actually responsible. Baylor's 34 voting Regents unanimously determined that Baylor had "institutional failures" in connection to Title IX. The parties have had serious disagreements on the scope of discovery and relevance of production. Plaintiffs are at a disadvantage and have nothing other than the search terms to rely on to secure production related to their claims. Plaintiffs believe these terms are necessary to capture relevant documentation, and they have already done so. Those disputed are terms used to describe Title IX complaints and investigations. The terms suggested by Baylor focus on pulling documents related to implementation of the 105 Recommendations and Title IX matters for the new ESI time period which serves to limit this production to items supporting Baylor's case while trying to avoid the items that have already been shown to support Plaintiffs' theory of the case. Inclusion of the disputed terms better ensures documents are captured related to all of Plaintiffs' claims.

Respectfully,

/s/Jim Dunnam
Jim Dunnam

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been filed by ECF and sent to counsel of record via electronic notification on January 9, 2020.

/s/Jim Dunnam
JIM DUNNAM