IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al.*, | § § § | 6:16-CV-173-RP |
| Plaintiffs, | § § | *Consolidated with* |
| v. | § § | 6:17-CV-228-RP |
| | § | 6:17-CV-236-RP |
| BAYLOR UNIVERSITY, | § § | |
| Defendant. | § § | |

## ORDER

Before the Court is Baylor University's Motion to Dismiss Plaintiffs' Claims for Injunctive Relief and Punitive Damages (Dkt. 782), and the parties' responsive briefing (Dkts. 793, 799).

## I. BACKGROUND

The plaintiffs in this consolidated action are fifteen former students at Baylor University who allege that when they requested help from Baylor after sexual assault by a fellow student, the University responded with deliberate indifference. Plaintiffs assert two claims under Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex in all federally-funded educational programs. 20 U.S.C. § 1681(a). First, Plaintiffs assert a "port-reporting" claim that Baylor's response to their reports of sexual assault deprived them of educational opportunities and benefits on the basis of their gender. Second, Plaintiff assert a "heightened risk" claim that even before their own reports of sexual assault, Baylor maintained discriminatory practices in handling student reports of sexual assault—such as discouraging victims from reporting assaults and failing to investigate claims or punish assailants—which constituted a policy of intentional discrimination on the basis of gender and substantially increased Plaintiffs' risk of being sexually assaulted. (*Jane Doe 1 et al. v. Baylor University*, No. 6:16-cv-173 (W.D. Tex. Jun. 15, 2016) ("*Jane Doe 1–10*") (Am. Compl., Dkt. 56), *Jane Doe 11 v. Baylor University*, No. 6:17-CV-228-RP (W.D. Tex. Aug. 21, 2017) ("*Jane Doe*

1

11") (Compl., Dkt. 1), and *Jane Doe 12 et al. v. Baylor University*, No. 6:17-cv-236 (W.D. Tex. Sept. 1, 2017) ("*Jane Doe 12–15*") (Am. Compl., Dkt. 14)).

All fifteen plaintiffs seek "actual damages, compensatory damages, nominal damages, punitive damages, court and litigation costs, expert fees, attorneys' fees, statutory interest and injunctive relief." (*Jane Doe 1–10* (Am. Compl., Dkt. 56 ¶ 282); *Jane Doe 11* (Compl., Dkt. 1 ¶ 106), *Jane Doe 12–15* (Am. Compl., Dkt. 14 ¶ 195)). As injunctive relief, they seek a mandatory injunction that orders Baylor "to refrain from unlawful discrimination and/or retaliation, ordering Defendant to undertake and rectify any and all Title IX violations and/or inequities, ordering Defendant and its athletic department to refrain from creating and condoning a hostile sexual harassment and/or discrimination environment against individuals on the basis of sex by immediately ceasing deliberate indifference to sexual assaults; and cease interference with the disciplinary process in favor of students who were charged with sexual assault." (*Jane Doe 1–10* (Am. Compl., Dkt. 56 ¶ 279); *Jane Doe 11* (Compl., Dkt. 1 ¶ 103), *Jane Doe 12–15* (Am. Compl., Dkt. 14 ¶ 192)).

Baylor previously filed motions to dismiss with respect to all fifteen plaintiffs, but the parties' briefing and the Court's orders did not address Plaintiffs' requests for relief.[1] Baylor subsequently filed an answer in each action, (*Jane Doe 1–10* (Dkt. 88); *Jane Doe 11* (Dkt. 17), and *Jane Doe 12–15* (Dkt. 40)), and the Court then consolidated the three actions for all discovery and pretrial proceedings, designating *Jane Doe 1–10* as the lead case. (*See Jane Doe 11* (Dkt. 21)).

Baylor now moves to dismiss Plaintiffs' claims for injunctive relief and punitive damages. (Dkt. 782). The Court addresses each of these in turn.

---

[1] The Court denied Baylor's motion to dismiss the heightened risk claims for all Plaintiffs; granted Baylor's motion to dismiss the state law claims for all Plaintiffs; and granted Baylor's motion to dismiss the post-reporting claims as time-barred for five Plaintiffs. (*See Jane Doe 1–10* (Dkt. 78) (dismissing state law claims; dismissing post-reporting claims by Jane Does 2, 5, 6, and 7 as time-barred;), *Jane Doe 11* (Dkt. 14) (dismissing state law claims only), *Jane Doe 12–15* (Dkt. 35) (dismissing state law claims; dismissing Jane Doe 13's post-reporting claim as time-barred).

2

## II. INJUNCTIVE RELIEF

First, Baylor moves to dismiss Plaintiffs' individual claims for injunctive relief under Rule 12(b)(1).

### A. Legal Standards

#### 1. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case or claim for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the claims. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* The trial court is "free to weigh the evidence and satisfy itself" that subject matter jurisdiction exists. *MDPhysicians & Assocs., Inc. v. State Bd. Of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

#### 2. Injunctive Relief

"[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 874 (5th Cir. 2000) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). "A question of standing raises the issue of

whether the plaintiff is entitled to have the court decide the merits of the dispute or of particular issues." *Id.* at 869 (quoting *Cook v. Reno*, 74 F.3d 97, 98–99 (5th Cir. 1996)). "Standing is a jurisdictional requirement that focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Id.* Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Pederson*, 213 F.3d at 869 (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (citation omitted)).

To establish standing, a plaintiff must show (1) an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," (2) a "causal connection between the injury and the conduct complained of," and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Deutsch v. Annis Enterprises, Inc.*, 882 F.3d 169, 173 (5th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)) (cleaned up). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.*

A party seeking injunctive relief must also show that "there is a real and immediate threat of repeated injury." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Because an injunction is "unavailable absent a showing of irreparable injury," that requirement "cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *Lyons*, 461 U.S. at 111 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). "Merely having suffered an injury in the past is not enough; the plaintiff must show a 'real or immediate threat that the plaintiff will be wronged again.'" *Deutsch*, 882 F.3d at 173 (quoting *Lyons*, 461 U.S. at 111). At least one plaintiff must have standing to maintain a claim for an injunction. *Texas v. United States (DAPA)*, 809 F. 3d 134, 151 (5th Cir. 2015) ("One party with standing is sufficient to satisfy Article III's case-or-controversy requirement.") (quoting

4

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006), *aff'd* 136 S. Ct. 2271 (2016)).

### B. Plaintiffs' Claims for Injunctive Relief

Plaintiffs seek two types of injunctive relief: (1) "specific injunctive relief" to remedy past injuries to Plaintiffs, such as permitting them to re-take classes, removing certain grades that preclude graduate study, and removing disciplinary notations in their transcripts—for example, for alcohol use reported with their sexual assault or disciplinary actions allegedly taken in retaliation for reporting sexual assault; and (2) "Title IX policy relief" to compel future campus-wide policy, procedures for reports of student sexual violence, and related student code of conduct enforcement. (Dkt. 793 at 3–4). The Court will address the specific injunctive relief first.

1. <u>Specific Injunctive Relief</u>

Six Plaintiffs seek specific injunctive relief, which they detail in Exhibit A to their Response. (Sealed Ex. A, Dkt. 794-1). Of these, four Plaintiffs seek to remove disciplinary notations from their transcripts. Two Plaintiffs seek relief allowing them to re-take classes. One Plaintiff further seeks reinstatement of a scholarship and readmission to a specific degree program.

Baylor responds that it does not oppose Plaintiffs seeking leave to amend their complaints to add claims for specific injunctive relief to remove disciplinary notations from their transcripts, "so long as amending would not open the door to additional discovery requests from Plaintiffs and so long as Baylor would retain the ability to assert all applicable defenses such as limitations and availability of a legal remedy." (Dkt. 799 at 7). Given that Baylor does not oppose such an amendment, the Court grants Plaintiffs leave to add a claim for specific injunctive relief to remove disciplinary notations or make other revisions to Plaintiffs' existing academic records. However, the

5

Court does not find such an amendment necessary to maintain those claims because the specific injunctive relief at issue here is contemplated in Plaintiffs' complaint.[2]

Baylor moves to dismiss the remaining claims for specific injunctive relief—the claims to retake classes, reinstate a scholarship, or grant readmission to a specific degree program—arguing that they are time-barred under the two-year statute of limitations for Title IX claims.[3] The Court does not agree with Baylor that these remedies are not also contemplated in Plaintiffs' complaint. However, because the remaining claims for specific injunctive relief are requests for prospective relief that assume that certain Plaintiffs will return to Baylor, the Court believes that these claims raise the same question of mootness. The Court therefore addresses both the "Title IX Policy Relief" and the prospective specific injunctive relief together.

2. Prospective Injunctive Relief:
Title IX Policy Relief and Prospective Specific Injunctive Relief

Baylor argues that Plaintiffs lack standing for an injunction compelling future conduct because all Plaintiffs have now graduated or withdrawn from Baylor, rendering an injunction moot. (Dkt. 782, at 4–6; Ex. A; Ex. B; Ex. C).[4] Plaintiffs respond that several of them would return to Baylor if the Court were to enter injunctive relief compelling compliance with Title IX. (Dkt. 793 at 4-6). Plaintiffs do not submit any direct evidence—such as a declaration, affidavit, or deposition transcript—expressly stating that they desire to return to Baylor. But Plaintiffs do submit that Jane

---

[2] Plaintiffs seek, in relevant part: "a mandatory injunction ordering the Defendant to refrain from unlawful discrimination and/or retaliation, [and] ordering Defendant to undertake and rectify any and all Title IX violations and/or inequities . . . ." (Am. Compl., Dkt. 56 ¶ 279). The specific injunctive relief they request would arguably "rectify" alleged Title IX violations and inequities.

[3] *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759–61 (2015) (applying two-year statute of limitations for Title IX actions). The Fifth Circuit has adopted the same approach for injunctive relief arising from actions for discrimination on the basis of a protected characteristic. *See, e.g.*, *Frame v. City of Arlington*, 657 F.3d 215, 237-38 (5th Cir. 2011) (applying two-year statute of limitations to injunction claims arising from alleged disability discrimination).

[4] Baylor does not dispute that the Title IX Policy Relief is contemplated in the mandatory injunction sought in their complaints.

Doe 2 and Jane Doe 5 "have not graduated and they seek to do so," and Jane Doe 1, Jane Doe 6, and Jane Doe 14 have also "expressed a desire to return to Baylor were the Court to order compliance with Title IX at Baylor." (*Id.* at 4). For example, two Plaintiffs cite family reasons for preferring Baylor to other universities in their sealed exhibit. (Exhibit A, Dkt. 794-1). Baylor does not dispute that if some Plaintiffs re-enrolled or pursued an additional degree at Baylor, they would have standing for an injunction.

Plaintiffs' claims for prospective injunctive relief raise two questions. First, does standing exist for an injunction under Title IX when a plaintiff has graduated or otherwise left an educational institution but may seek to return? Second, if so, what standard applies to the plaintiff's likelihood of return?

### a. Standing for a Title IX Plaintiff After Graduation

Although the Fifth Circuit has not ruled directly on this question, it has indicated that a Title IX plaintiff may have standing for an injunction to compel Title IX compliance if she seeks to return to her former university. *Pederson*, 213 F.3d at 874. The Fifth Circuit addressed this issue most recently in *Pederson v. Louisiana State University*, where female students asserted an ineffective accommodation claim under Title IX and sought injunctive relief to remedy the university's alleged refusal to maintain women's fast pitch softball and soccer teams. 213 F.3d at 858. The Fifth Circuit held that claims for injunctive relief were moot as to the named plaintiffs who had graduated from LSU, but not as to putative class members who had not yet graduated and might be subject to discrimination if LSU stopped its remedial program for Title IX compliance. *Id.* at 874. The Fifth Circuit considered the graduated plaintiffs' intention to return in its analysis:

> Even assuming that any one of [the named plaintiffs] retains any NCAA eligibility at this point, they have not argued that there is any likelihood that any of them will return to LSU and attempt to play varsity sports. As is so often the case in suits for injunctive relief brought by students, graduation or impending graduation renders their claims for injunctive relief moot.

7

*Id.* (citing *DeFunis v. Odegaard*, 416 U.S. 312, 319–20 (1974); *Sapp v. Renfroe*, 511 F.2d 172, 175 (5th Cir. 1975). In both of the authorities cited by the Fifth Circuit, a legal ruling no longer had any bearing on the plaintiff's present interests. *See DeFunis*, 416 U.S. at 319–20 ("Because the petitioner will complete his law school studies . . . regardless of any decision this Court might reach on the merits of this litigation, we conclude that the Court cannot . . . consider the substantive constitutional issues."); *Sapp*, 511 F.2d at 175 (finding a claim for injunctive relief moot where "the Board's ROTC policy does not affect [the plaintiff's] present interests.")).

Although Baylor points to non-Title IX cases involving defendant high schools where courts have found that graduation rendered injunctive claims moot,[5] suits against high schools are not directly on point for this issue. Unlike high school students, university students may pause and resume their program of study or return to the same university for a second degree. Moreover, in *Pederson*, the Fifth Circuit did not treat graduation from the university as a definitive factor. The definitive question was whether, even after graduation, the plaintiffs would "benefit from a favorable ruling on the question implicating injunctive relief." 213 F.3d at 874 ("Because the named plaintiffs will not benefit from a favorable ruling on the question implicating injunctive relief, we hold that this question is moot as to them.").[6] Outside of our Circuit, other federal courts of appeals have indicated similarly that graduation from a university does not definitively bar standing.[7]

---

[5] (Dkt. 782 at 5 (citing *Bd. of Sch. Comm'r of Indianapolis v. Jacobs*, 420 U.S. 128, 129 (1975) ("[A]ll of the named plaintiffs in the action had graduated from the Indianapolis school system; in these circumstances, it seems clear that a case or controversy no longer exists between the named plaintiffs and the petitioners with respect to the validity of the rules at issue [under the First and Fourteenth Amendments] .")); *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017) ("Because Brinsdon has graduated from high school, her equitable claims [for alleged violation of her free speech rights] are moot."))).

[6] Since *Pederson*, district courts in the Fifth Circuit have not explored its application in any Title IX action involving an injunction.

[7] *See Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1303 (11th Cir. 2007); *Grandson v. Univ. of Minnesota*, 272 F.3d 568, 574 (8th Cir. 2001); *Kocsis v. Fla. State Univ. Bd. of Trustees*, 788 F. App'x 680, 685 n.3 (11th Cir. 2019).

Given that the Fifth Circuit and others have not treated graduation as a definitive bar to standing for a Title IX injunction, this Court assumes that graduation does not automatically bar Plaintiffs' standing here. However, that does not resolve the issue before the Court.

*b. Likelihood of Return*

While a Title IX plaintiff may retain standing after graduation, a party seeking an injunction must always show that "there is a real and immediate threat of repeated injury." *Deutsch*, 882 F.3d at 173 (quoting *Lyons*, 461 U.S. at 102). A Title IX plaintiff may be able to meet this burden where she can demonstrate some likelihood of return. *See Pederson*, 213 F.3d at 874 ("Even assuming that any one of [the named plaintiffs] retains any NCAA eligibility at this point, they have not argued that there is any likelihood that any of them will return to LSU and attempt to play varsity sports."); *Kocsis*, 788 F. App'x at 685 n.3 (finding that plaintiff lacked standing under *Lyons* where she "has not indicated any intent to return" and "by her own admission, the requested injunction [was intended to protect future students].").

The Court finds that Plaintiffs have not demonstrated that they are likely to return, for two reasons. First, Plaintiffs do not offer any direct evidence—such as a declaration, affidavit, or deposition transcript—expressly stating that they intend or desire to return to Baylor. Plaintiffs only submit briefing that Jane Doe 2 and Jane Doe 5 "have not graduated and they seek to do so," and that Jane Doe 1, Jane Doe 6, and Jane Doe 14 have "expressed a desire to return to Baylor were the Court to order compliance with Title IX at Baylor." Dkt. 793 at 4. Deposition evidence attached to Plaintiffs' briefing describes one Plaintiff's disappointment and frustration when Baylor denied her appeal for a failing grade and the University's course requirements effectively forced her to withdraw and transfer to another university (Dkt. 794-1 at 7-8), however, that evidence does not show that she is likely to return to Baylor. Where Title IX plaintiffs submit only that they "may" return to a university, that evidence does not show a real and immediate threat of repeated injury. *See Williams*,

9

477 F.3d at 1303 ("Williams alleges that if UGA adopts an equal and more protective sexual harassment policy . . . she *may* pursue undergraduate or graduate studies at UGA . . . Williams's claim that an equal and more protective sexual harassment policy would prevent future harm is too conjectural to warrant injunctive relief.") (emphasis added); *Grandson*, 272 F.3d at 574 ("Plaintiffs argue that [the] claims are not moot because she left UMD for financial reasons and *may* return, and because UMD may drop or fail to fund its new Division I women's ice hockey team. These arguments are wholly speculative, particularly given UMD's compliance efforts at the behest of OCR.") (emphasis added). Although Plaintiffs request the opportunity to provide further evidence if the Court finds it useful, (Dkt. 794 at 5), the Court finds Plaintiffs' initial briefing sufficient to resolve this question.

Second, although Plaintiffs offer to amend their complaint to add a plaintiff who is currently enrolled at Baylor and alleges that Title IX violations continue, (Dkt. 793 at 6), such an amendment would require further extensions to the discovery period and further delay trial in this case, which has been pending for nearly four years. A district court may deny leave to amend if it has a "substantial reason" to do so, including undue delay. *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002). The Court therefore denies Plaintiffs' request for leave to amend their complaint to add an additional plaintiff.

Accordingly, the Court grants Baylor's motion to dismiss Plaintiffs' claims for prospective injunctive relief. Plaintiffs retain their claim for specific injunctive relief to remove disciplinary notations or make other revisions to Plaintiffs' existing academic records.

### III.  PUNITIVE DAMAGES

Baylor also moves to dismiss Plaintiffs' claims for punitive damages. Although Baylor does not expressly invoke Rule 12(b)(6), the Court construes this argument to fall under this subsection

10

because Baylor argues that punitive damages are not available under Title IX "as a matter of law." Reply, Dkt. 799, at 8.

### A. Legal Standard for Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation omitted). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

## B. Plaintiffs' Claims for Punitive Damages

In *Barnes v. Gorman*, 536 U.S. 181 (2002), the Supreme Court held that punitive damages are not available in an action under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. *Id.* at 185. The Court based its analysis on the ADA and Rehabilitation Act's coextensive remedies with Title VI of the Civil Rights Act, which in turn is interpreted consistently with Title IX. *Id.*

Citing *Barnes*, many courts have concluded that Title IX does not provide for punitive damages. *See, e.g., Mercer v. Duke Univ.*, 50 F. App'x 643, 644 (4th Cir. 2002) ("[T]he Supreme Court's conclusion in *Barnes* that punitive damages are not available under Title VI compels the conclusion that punitive damages are not available for private actions brought to enforce Title IX[.]"); *Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 3:18-cv-00243, 2019 WL 2996536, at *4 (S.D. Tex. June 6, 2019), *adopted*, 2019 WL 2994638 (S.D. Tex. July 9, 2019) (citing a "plethora" of authority and holding that "punitive damages are not available for private actions brought to enforce Title IX"); *Sadeghian v. Univ. of S. Ala.*, No. 18-0009-JB-B, 2018 WL 7106981, at *20 (S.D. Ala. Dec. 4, 2018) (holding that punitive damages not available under Title IX); *Bergholz v. John Marshall Law School*, No. 18-C-3, 2018 WL 5622052, at *4 (N.D. Ill. Oct. 30, 2018) ("punitive damages are unavailable under Title VI, and because Title VI is interpreted consistently with Title IX, punitive damages are unavailable under Title IX"); *Pejovic v. State Univ. of N.Y. at Albany*, No. 1:17-cv-1092, 2018 WL 3614169, at *7 (N.D.N.Y. July 26, 2018) ("[T]he Court is persuaded that the Supreme Court's logic" in *Barnes* "does not permit the imposition of punitive damages in this [Title IX] case."); *Ayala v. Omogbehin*, C.A. No. H-16-2503, 2016 WL 7374224, at *4 (S.D. Tex. Dec. 20, 2016) ("[I]t is clear that punitive damages are not recoverable under Title IX.").

Baylor argues that overwhelming authority supports that punitive damages are not available in a Title IX action. (Dkt. 782 at 6-7). Plaintiffs respond that no binding authority prohibits such

12

damages in an intentional Title IX action. (Dkt. 793 at 6–7.) Plaintiffs ask the Court to allow a jury to consider relevant facts and then rule on the legal question of punitive damages at judgment. (*Id.*).

In general, this Court hesitates to dismiss a claim that is not foreclosed by binding authority. But Plaintiffs offer no authority that would contradict the growing consensus cited by Baylor. Although there is no binding authority on point, the case law indicates that there is no real dispute or unsettled question of law here. *Barnes* indicates that if the question came before United States Supreme Court, it is all but certain that the Supreme Court would answer that Title IX does not allow punitive damages in a private right of action under that statute. Accordingly, the Court grants Baylor's motion to dismiss Plaintiffs' claim for punitive damages.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Baylor's Motion to Dismiss Plaintiffs' Claims for Injunctive Relief and Punitive Damages (Dkt. 782), is **GRANTED**. Plaintiffs' claims for injunctive relief in the form of (1) Title IX policy relief and (2) prospective specific injunctive relief to re-take classes, reinstate a scholarship, or to be re-admitted to a specific degree program, to the extent that Plaintiffs have raised them, are **DISMISSED**.

Plaintiffs retain their claims for actual damages, compensatory damages, nominal damages, court and litigation costs, expert fees, attorneys' fees, statutory interest and specific injunctive relief to remove disciplinary notations or make other revisions to Plaintiffs' existing academic records. (*See Jane Doe 1–10* (Am. Compl., Dkt. 56 ¶ 282); *Jane Doe 11* (Compl., Dkt. 1 ¶ 106), *Jane Doe 12–15* (Am. Compl., Dkt. 14 ¶ 195)).

**IT IS FURTHER ORDERED** that the Court **GRANTS** Plaintiffs leave to amend the complaint to add a claim for specific injunctive relief consistent with the terms of this order, and **DENIES** leave to amend the complaint to add an additional plaintiff. As noted above, the Court

does not find such an amendment necessary for Plaintiffs to maintain their claims for specific injunctive relief consistent with the terms of this Order.

**SIGNED** on April 1, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE