IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, ET AL. | § | |
| | § | **6:16-CV-173-RP-AA** |
| V. | § | *Consolidated with* |
| | § | **6:17-CV-228-RP-AA** |
| BAYLOR UNIVERSITY | § | **6:17-CV-236-RP-AA** |

## ORDER

Before the Court are two motions to quash filed by non-party Jim Doak.  Dkts. 334, 514.

## I.  BACKGROUND

Jim Doak served as the Chief of Police for the Baylor University Police Department from 1986 until July 2014.[1]  On January 31, 2018, Plaintiffs served Doak with a subpoena seeking materials in response to 36 requests for production ("the First Subpoena").  Dkt. 269.  Doak filed objections with the Court ("First Objections").  Dkt. 284.  On June 5, 2018, Plaintiffs served Doak with a second subpoena seeking materials in response to 57 requests for production ("the Second Subpoena").  Dkt. 317.

On September 15, 2018, Doak filed a Motion to Quash Plaintiffs' Second Subpoena, which incorporated Doak's First Objections.  Dkt. 334.  Plaintiffs filed a response.  Dkt. 365.  Plaintiffs served Doak with a third subpoena on August 23, 2018, which commanded Doak to appear for a deposition and produce the same 57 categories of documents ("the Third Subpoena").  Dkt. 514-1.  On September 6, 2018, Doak filed Objections, a Motion for Protection, and Motion to Quash the Subpoena to Testify at a Deposition.  Dkt. 514.  Plaintiffs filed a response.  Dkt. 526.

On January 30, 2019, Doak filed an Advisory with the Court, confirming that he had served Plaintiffs with a log of potentially responsive documents and requesting a ruling on his objections,

---

[1] Dkt. 514 at 2; Dkt. 756-1.

in particular the application of FERPA to any documents in his possession ("the First Advisory"). Dkt. 595. On December 2, 2019, Doak advised the Court that he has had no recent communications with Plaintiffs and that he did not know whether the motions to quash had become moot by passage of time, intervening discovery rulings, or some other reason ("the Second Advisory"). Dkt. 723. On December 6, 2019, the Court invited third parties to file any updated briefing on a pending motion, no later than December 13, 2019. Dkt. 744. The deadline has passed and Doak has not filed any further briefing. The Court therefore turns to the two pending motions to quash. Dkts. 334, 514.

## II.  LEGAL STANDARD

"The scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'" *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (citing FED. R. CIV. P. 26(b)(1)). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004)). "Once the party seeking discovery establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted." *Allen v. Priority Energy Servs., L.L.C.*, No. MO16CV00047DAEDC, 2017 WL 7789280, at *1 (W.D. Tex. Jan. 30, 2017) (citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)). A court must quash or modify a subpoena that subjects a person to an undue burden. FED. R. CIV. P. 45(d)(3)(A)(iv). "To determine whether the subpoena presents an undue burden, we consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the

request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa*, 392 F.3d at 818. Further, "if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id*. Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (citing FED. R. CIV. P. 26(c)(1))

### III. Doak's Motions to Quash

The parties do not dispute that Doak holds relevant, responsive documents.[2] Doak offers materials for *in camera* review if necessary. Dkt. 344 at 6. He asserts objections on several grounds, including FERPA, attorney client and work product privilege, relevance, and a concern that Plaintiffs' subpoenas constitute harassment. The Court addresses the harassment claim first.

**A. Harassment**

Doak asserts that Plaintiffs' repeated subpoenas constitute "classic harassment" because they repeat certain requests and seek some material that is not relevant to him. Dkt. 514 at 5; *see also* Dkt. 344 at 3. A commonsense review of the three subpoenas and the record in this case makes clear that Plaintiffs have served identical or nearly-identical subpoenas on multiple third parties in an effort to standardize discovery requests in a case that involves a large number of third parties who

---

[2] Plaintiffs assert that Doak's responsive materials are relevant to their claims because other witnesses have testified that Doak "discourag[ed] rape victims from making reports during his tenure as Chief [of Police]" and that Doak was "at the 'epicenter' of the sexual assault crisis at Baylor." Dkt. 365 at 1. At least one former Baylor employee has testified that "if anyone were to unearth all the things that were happening in the police department, it would be devastating to the university." Dkt. 363-2, at 70-72. In their complaints, multiple plaintiffs allege facts regarding how police handled their reports of sexual assault, or how the Title IX Office interacted with the police. *See, e.g.*, Dkt. 56 ¶¶ 79-82, 118, 162-65, 184, 225-26; *Jane Doe 12–15*, Case No. 6:17-cv-236 (Dkt. 14 ¶¶ 55-56, 110, 138, 140, 151).

may hold relevant information. In Doak's case, Plaintiffs essentially served one revised subpoena (Second Subpoena, Dkt. 317), and then one subpoena duces tecum accompanying that subpoena to appear for a deposition (Dkt. 514-1). While Doak may find this irritating, it does not constitute harassment. Indeed, Plaintiffs state that they are willing to pursue production solely through the Second Subpoena. Dkt. 365 at 8.[3] The Court therefore assumes that Doak will serve responses only in response to the Second Subpoena. The Court will still consider all of Doak's objections, regardless of which subpoena he references, in order to ensure that any dispute between the parties is resolved. To the extent that the subpoena seeks information not in Doak's possession—for example, materials related to the Pepper Hamilton investigation, which began after Doak left Baylor—Doak satisfies his discovery obligations by simply advising Plaintiffs that he holds no responsive materials. The Court now turns to Doak's substantive objections, several of which have now been resolved by intervening orders.

**B. FERPA**

A large number of Doak's objections are based on the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g; 34 C.F.R. § 99.3 (FERPA). *See* Dkts. 284 (Objs. 1, 2, 7-11, 22-24, 26-35), Dkt. 344 at 1-2, 6; Dkt. 514 at 1-2, 5.

Since the filing of the motions, the Court has ruled that FERPA does not restrict production of student records in the possession of former employees. Dkt. 582 at 5. On November 11, 2018, the Court entered an Order on Current and Former Employees, which considered the application of FERPA and ruled that "[r]ecords in the possession of a former employee, or in the personal records

---

[3] The Court reminds Doak of the duty to confer in good faith to narrow the scope of any dispute before filing a motion for relief. W.D. TEX. LOC. R. CV-7(i).

of a current employee, are not 'maintained by' an educational institution or a person acting for such institution," and therefore not subject to redaction or notice requirements under the statute. *Id.* The Court denied Baylor's request for a protective order for those records and ruled that "there is no need for FERPA-like notices before unredacted disclosure to Plaintiffs." *Id.* Having reviewed Doak's briefing, the Court concludes that nothing in Doak's submissions distinguish his situation from other former employees. Even if Doak inadvertently retained FERPA-protected materials when he left Baylor, neither Doak nor Baylor have cited any legal authority that suggests that those materials remain "maintained by an educational agency or institution or by a person acting for such agency or institution" once that person concludes their employment. *See* Dkts. 282, 344, 514, 582 at 4-5. Finding no contrary authority, the Court follows its reasoning in the Order on Current and Former Employees.

The Court DENIES Doak's motion to quash with respect to FERPA. Doak shall produce the materials to Plaintiffs without redaction related to FERPA. To the extent that Doak holds any materials that contain identifying student information, the parties are ordered to designate those documents "Attorney's Eyes Only" in accordance with the Confidentiality and Protective Order (Dkt. No. 156) and the Order Amending FERPA Procedure (Dkt. 791) in this case.

### C. Attorney-Client Privilege and Work Product Privilege

Doak also objects based on Baylor's assertion of attorney-client and work product privilege for materials in the possession of former employees. *See* Dkt. 284 (Objs. 1, 2, 7-11, 22-24, 26-35); Dkt. 282 (Baylor's Motion for Protective Order Regarding Former Employees). Doak is correct that he cannot unilaterally waive Baylor's privilege. The Court has since ruled that Baylor failed to show any former employee held privileged documents. Dkt. 582 at 10-12. The Court adopted a clawback

5

procedure by which a former employee should immediately produce responsive materials to Plaintiffs, and Plaintiffs would provide a copy to Baylor for its review and timely assertion of privilege. *Id.* at 13. However, in this instance, the Court finds the clawback procedure unnecessary. A party asserting privilege must offer a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). Neither Baylor nor Doak has made any specific claim of privilege for any document in Doak's possession, other than Doak's objection to RFP 17 in the First Subpoena. *See* Objs., Dkt. 284 at 6 (seeking "Communications Between Doak and Baylor, Doak and Baylor's Attorneys, and Doak's Attorneys and Baylor's Attorneys Since Doak's Separation"). But Doak's objection indicates that he does not actually have any documents responsive to that request: "Without waiving the foregoing objection, NONE." *Id.*

Accordingly, the Court DENIES Doak's motion to quash with respect to attorney-client and work product privilege.

### D. Doak's Separation Agreement

Plaintiffs seek "all communications and documents concerning [Doak's] separation from Baylor including settlement agreements, communications, communications between your attorney and Baylor's attorneys, draft and final press releases and any other document or ESI that relates to or concerns your separation from Baylor." First Subpoena, Dkt. 269 at 12 (RFP 16); *see also id.* at 15 (RFP 36) ("All documents that reflect an agreement by you to hold confidential any information or material relating to Baylor University"). Doak states that his separation agreement is responsive to these requests, but he objects on relevance grounds. Dkt. 284 at 6.

6

The Court has ordered former employees to produce separation agreements where Baylor opposes the production but the former employee does not. *See, e.g.*, Dkt. 565 at 5 (Briles); *compare* Dkt. 800 (Holgersson). Here, Doak opposes production. Plaintiffs do not address Doak's settlement agreement in either of their responses. *See* Dkts. 365, 526. This may be because Doak does not brief this objection in his motions to quash; he only lists it in his First Objections. *See* Dkt. 284 at 6. In any event, Plaintiffs have not shown that Doak's settlement agreement is relevant to their claims. The Court therefore GRANTS Doak's motion to quash with respect to his separation agreement.

### E.     Third Party Investigations

Plaintiffs seek documents relating to the Big XII Investigation (Second Subpoena, Dkt. 317, RFPs 7, 10-13, 15, and 17) and the Baylor NCAA Investigation (*Id.,* RFPs 8, 10-13, 15, and 17). Doak argues that the Court has already ruled that Baylor need not produce these. Dkt. 344 (citing Order, Dkt. 146 at 13). Plaintiffs do not address this issue in their response. *See* Dkt. 365, 526. Doak is correct that Baylor's communications with the Big XII and the NCAA regarding those investigations are not discoverable from any party in this case, including third parties.[4] Doak's motion to quash is GRANTED as to the extent that he is in possession of any of *Baylor's* communications with the NCAA or the Big XII. The motion is DENIED to the extent that Doak seeks to avoid producing any materials solely because he previously produced them to the NCAA or Big XII. Therefore, this ruling does not protect Doak from producing any of his own records that were produced to the NCAA or Big XII as part of the document collection for those investigations. To the extent that Doak holds such materials, he must produce them.

---

[4] *See* Dkt. 565 at 4 ("The Court will grant an order that Baylor's communications with the NCAA, the Big XII and the Texas Rangers are not discoverable from any party to this case, including third parties.").

**F.  Plaintiffs' ESI Search Requests**

Doak states that "Plaintiffs are attempting to require Doak, a non-party who has been separated from Baylor since 2014, to perform detailed and lengthy ESI searches on his personal computer(s)." Dkt. 344 at 3. He asserts that this is "harassing, unreasonable and would require Doak to spend an unreasonable amount of time performing searches that would be futile, useless and unduly burdensome." *Id.*  Other than identifying requests that are duplicative, and those for which he has no responsive documents—for example, materials "pertaining to the Pepper Hamilton Investigation" (Second Subpoena, Dkt. 317, RFP 4) and "pertaining to the Jeremy Counseller Investigation" (*Id.*, RFP 5)—Doak does not identify which searches would be unreasonable, futile, useless, or unduly burdensome. *See* Dkt. 344 at 3-4. The Court has already ruled above that Doak need only serve one set of responses, and that he may respond solely to Plaintiffs' Second Subpoena. Additionally, for requests for which he has no responsive documents, Doak satisfies his discovery obligations by advising Plaintiffs so in his objections.  Absent identifications of which particular ESI searches would be unduly burdensome and the specific reasons why, the Court cannot find that the searches should be quashed.[5]

**G.     Any Other Materials**

Finally, Doak's request to provide more detailed objections and briefing is denied. *See* Dkt. 514 at 9.  Doak declined the Court's recent offer to file any updated briefing on or before December 13, 2019.  *See* Dkt. 744.

---

[5] If Doak wished to raise a cost-based objection, Rule 26 required him to raise that explicitly.  FED. R. CIV. P. 26(b)(2)(B). And even had he raised such an objection, the Court may still order production, subject to cost-sharing or other conditions. Doak did not raise such a concern, however, so the Court need not consider whether imposing any such conditions is warranted.

Doak has not filed briefing to support withholding any other responsive materials from production. Rule 26(c) requires "a showing of good cause" for a protective order whereby "[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). Doak has not met that burden for any other materials. The Court therefore orders Doak to produce any other materials in his possession that are responsive to Plaintiffs' subpoenas.

## IV. CONCLUSION

In conclusion, the Court **GRANTS IN PART AND DENIES IN PART** Doak's Motion to Quash Plaintiffs' Second Subpoena (Dkt. 334) and Doak's Objections, a Motion for Protection, and Motion to Quash the Subpoena to Testify at a Deposition (Dkt. 514). The Court **ORDERS** that Doak shall produce all materials responsive to Plaintiffs' Second Subpoena in accordance with the terms of this Order on or before **June 3, 2020**. The Court **FURTHER ORDERS** that Doak shall appear for a deposition **no later than July 31, 2020**, or at such later date if mutually agreed upon by Doak and the parties to the case.

SIGNED this 7th day of May, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE