IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, ET AL. | § | |
| | § | **6:16-CV-173-RP-AA** |
| V. | § | *Consolidated with* |
| | § | **6:17-CV-228-RP-AA** |
| BAYLOR UNIVERSITY | § | **6:17-CV-236-RP-AA** |

## ORDER

Before the Court is a motion to quash filed by non-party Brian Nicholson. Dkt. 337. Brian Nicholson served as Baylor's Vice-President of Operations and Facilities Management from September 2003 to August 2017. Dkt. 756-1 at 2. Plaintiffs allege that Nicholson also took over supervision of the Baylor University Police Department following the Margolis Healy Report. Dkt. 366 at 1. Plaintiffs served Nicholson with a subpoena duces tecum seeking materials in response to 36 requests for production ("the First Subpoena"). Dkts. 279, 291. Three months later, Plaintiffs served Nicholson with a second subpoena duces tecum seeking materials in response to 57 requests for production ("the Second Subpoena"). Dkts. 319, 325.

Nicholson has moved to quash the Second Subpoena. Dkt. 337. The parties filed responsive briefing. Dkts. 366, 429. Nicholson subsequently filed a Notice and Supplement. Dkt. 589. In late 2019, the Court ordered all third party movants with outstanding motions to advise whether their motions had become moot by passage of time, intervening discovery rulings, or some other reason. Nicholson filed an advisory stating that he has produced documents in his personal possession subject to the objections in his motion to quash, and that he has had no further communications with Plaintiffs. Dkt. 727. On December 6, 2019, the Court invited third parties to file any updated briefing on a pending motion, no later than December 13, 2019. Dkt. 744. The deadline has passed and Nicholson has not filed any further briefing.

## I.  LEGAL STANDARD

"The scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'" *Crosby v. La. Health Serv. & Indem. Co*., 647 F.3d 258, 262 (5th Cir. 2011) (citing FED. R. CIV. P. 26(b)(1)). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004)). "Once the party seeking discovery establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted." *Allen v. Priority Energy Servs., L.L.C.*, No. MO16CV00047DAEDC, 2017 WL 7789280, at *1 (W.D. Tex. Jan. 30, 2017) (citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)).  A court must quash or modify a subpoena that subjects a person to an undue burden. FED. R. CIV. P. 45(d)(3)(A)(iv). "To determine whether the subpoena presents an undue burden, we consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa*, 392 F.3d at 818.  Further, "if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id*.  Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)  (citing FED. R. CIV. P. 26(c)(1))

## II. DISCUSSION

The parties do not dispute that Nicholson holds some relevant, responsive documents. The Court addresses each of Nicholson's grounds to quash the Second Subpoena.

### A.   Harassment

Nicholson argues that Plaintiffs' Second Subpoena is duplicative of the First, that it constitutes harassment, and that "if Plaintiffs could not obtain such documents from Baylor, there is no basis to obtain them from non-party individuals like Nicholson." Dkt. 337 at 1-2. Nicholson also argues that the Second Subpoena is harassing because its requests information that Nicholson has already advised the Plaintiffs that he does not possess, such as materials related to the Jeremy Counsellor Investigation or the Pepper Hamilton Investigation. Dkt. 337 at 5. Plaintiffs do not agree that Nicholson has fully complied with the First Subpoena, and they propose to rely solely on the Second Subpoena. Dkt. 366 at 7.

As the Court recently explained in its order on non-party Jim Doak's motion to quash, a commonsense review of the multiple subpoenas and the record in this case makes clear that Plaintiffs have served identical or nearly-identical subpoenas on multiple third parties in an effort to standardize discovery requests in a case that involves a large number of third parties who may hold relevant information. In Nicholson's case, Plaintiffs served one revised subpoena (Second Subpoena, Dkt. 319). While Nicholson may find this irritating, it does not constitute harassment. And Nicholson has not explained any specific reason why compliance with the revised requests would be unduly burdensome to him.

Nicholson and his counsel are capable of reviewing the Second Subpoena to determine which requests require supplementing his First Responses, and which do not. To the extent that Plaintiffs'

3

Second Subpoena may repeat certain requests, Nicholson of course need not submit duplicate responses. To the extent that a subpoena seeks information not in Nicholson's possession—for example, materials related to the Jeremy Counsellor or Pepper Hamilton investigations—Nicholson satisfies his discovery obligations by simply advising Plaintiffs that he holds no responsive materials. The Court now turns to Nicholson's substantive objections, most of which have now been resolved by intervening orders.

### B.     FERPA and Whether Materials Are "In His Possession"

After the parties briefed Nicholson's motion to quash, the Court ruled that FERPA does not restrict production of student records in the possession of former employees. Dkt. 582 at 5. The Order on Current and Former Employees considered the application of FERPA and ruled that "[r]ecords in the possession of a former employee, or in the personal records of a current employee, are not 'maintained by' an educational institution or a person acting for such institution," and therefore not subject to redaction or notice requirements under the statute. *Id.* The Court denied Baylor's request for a protective order for those records and ruled that "there is no need for FERPA-like notices before unredacted disclosure to Plaintiffs." *Id.*

Nicholson filed a Notice and Supplement seeking guidance from the Court on this ruling. Dkt. 589. Nicholson explained that Baylor transferred his email records to an alumni email address, and Nicholson is only able to access e-mails through that source. Nicholson suggests that because he "did not create, does not use, does not maintain, does not host, and does not own the email account, the hardware, or software used to maintain the account," these records are not his personal records or in his personal possession. *Id.* at 3. Nicholson seems to mean that this email account is really Baylor's, not his. But he cites no authority for that distinction. Nicholson's continued ability

4

to access and manage the account indicates that the account is his for all intents and purposes. And he does not identify with specificity any materials that he believes to still be governed by FERPA.

The Court concludes that nothing in Nicholson's submissions distinguishes his situation from other former employees. Even if Nicholson inadvertently retained FERPA-protected materials when he left Baylor, neither Nicholson nor Baylor have cited any legal authority that suggests that those materials remain "maintained by an educational agency or institution or by a person acting for such agency or institution" once that person concludes their employment. *See* Dkts. 282, 344, 514, 582 at 4-5. Finding no contrary authority, the Court follows its reasoning in the Order on Current and Former Employees.

The Court DENIES Nicholson's motion to quash with respect to FERPA. Nicholson shall produce the materials to Plaintiffs without redaction. To the extent that Nicholson holds any materials that contain identifying student information, the parties are ordered to designate those documents "Attorney's Eyes Only" in accordance with the Confidentiality and Protective Order (Dkt. No. 156) and the Order Amending FERPA Procedure (Dkt. 791) in this case.

### C. Third Party Investigations

Plaintiffs seek documents relating to the Big XII Investigation and the Baylor NCAA Investigation. Nicholson argues that the Court has already ruled that Baylor need not produce these. Dkt. 337 at 3 (citing Order, Dkt. 146 at 13). Plaintiffs do not address this issue in their response. *See* Dkt. 366. Nicholson is correct that Baylor's communications with the Big XII and the NCAA regarding those investigations are not discoverable from any party in this case, including third parties. *See* Dkt. 565 at 4 (holding that Baylor's communications with the NCAA, Big XII and Texas Rangers are not discoverable).

Nicholson's motion to quash is GRANTED as to the extent that he is in possession of any of *Baylor's* communications with the NCAA or the Big XII.  The motion is DENIED to the extent that Nicholson seeks to avoid producing any materials solely because he may have previously produced them to the NCAA or Big XII.  Therefore, this ruling does not protect Nicholson from producing any of his own records that were produced to the NCAA or Big XII as part of the document collection for those investigations.  To the extent that Nicholson holds such materials, he must produce them.

### D.    Materials Related to Sexual and Gender-Based Harassment

Plaintiffs request communications and documents related to sexual harassment and gender-based harassment at Baylor.  *See* Second Subpoena, Dkt. 319, RFP Nos. 2, 10, 11, 12, 13, 15, 17, 19, 25, 55, 56, and 57.  Nicholson argues that this exceeds the scope of appropriate discovery because Plaintiffs seek such information "whether or not such harassment followed and was related to an assault of the student in question as required by the Court" in its Order on May 6, 2018.  Dkt. 337 at 3 (citing Order, Dkt. 302).  Although Nicholson appears to misread the Court's order as limiting discovery to materials related to Plaintiffs' assaults only, he raises an otherwise reasonable proposal to narrow the scope of production.

That Order clarified that, for purposes of complying with the Court's order directing Baylor to disclose data contained within responsive non-party medical and counseling records in the form of data spreadsheets (Dkt. 230, at 5, 8), Baylor was only required to disclose data related to non-consensual sexual penetration and non-consensual sexual contact, but not other forms of sexual and gender-based harassment.  Dkt. 302 at 4 (defining those terms).  This was because "[w]hile Title IX may, as a general matter, include sexual and gender-based harassment, Plaintiffs' claims pertain only

6

to the risk of sexual assault faced by female students at Baylor." *Id.* at 3. "Information regarding all student reports of sexual or gender-based harassment, whether or not such harassment followed and was related to an assault of the student in question, is not relevant to Plaintiffs' claims. It is therefore outside the scope of Rule 26(b), and the Court declines to order its production." *Id.* at 4.

Although the terms of that Order specifically addressed Baylor's production of non-party medical and counseling records, the Court finds that the same scope is appropriate for purposes of Nicholson's production as a matter of proportionality and relevance. Plaintiffs do not indicate any opposition to this in their Response.[1]

Nicholson's Motion to Quash is GRANTED to the extent that he may construe all requests for production that refer to "sexual harassment" or "gender-based harassment" in Second Subpoena to mean "sexual assault" as defined in the Court's Order at Dkt. 302. *See* Dkt. 302 at 4.

### E. Plaintiffs' ESI Search Requests

Nicholson states that he has completed ESI searches in response to the First Subpoena, and conducting searches for an expanded list of RFPs "would require Nicholson to spend time performing searches he already performed that would be futile and unduly burdensome because the search results produce essentially the same information that Nicholson included in his response to the first subpoena." Dkt. 337 at 4. Plaintiffs do not agree that Nicholson has fully complied with the First Subpoena, and they propose to rely solely on the Second Subpoena. Dkt. 366 at 7.

The Court has already ruled above that Nicholson need only supplement his First Responses in order to ensure complete production under the Second Subpoena, and that he need not submit

---

[1] The Court reminds Nicholson of the duty to confer in good faith to narrow the scope of any dispute before filing a motion for relief. W.D. TEX. LOC. R. CV-7(i).

duplicate responses. Additionally, for requests for which he has no responsive documents, Nicholson satisfies his discovery obligations by advising Plaintiffs so in his objections. Absent identifications of which particular ESI searches would be unduly burdensome and the specific reasons why, the Court cannot find that the searches should be quashed.[2]

### F.   Attorney-Client Privilege and Work Product Privilege

Nicholson also objects based on Baylor's attorney-client and work product privilege. Dkt. 337 at 5; *see* Dkt. 282 (Baylor's Motion for Protective Order Regarding Former Employees). He raises this objection only with respect to communications with Baylor since his departure. A party asserting privilege must offer a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). Neither Baylor nor Nicholson have identified any specific documents or made a specific showing of privilege for any document in Nicholson's possession. Accordingly, the Court DENIES Nicholson's motion to quash with respect to attorney-client and work product privilege.

### G.   Any Other Materials

Nicholson has not filed briefing to support withholding any other responsive materials from production. Rule 26(c) requires "a showing of good cause" for a protective order whereby "[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). Nicholson has not met that burden for any other

---

[2] If Nicholson wished to raise a cost-based objection, Rule 26 required him to raise that explicitly. FED. R. CIV. P. 26(b)(2)(B). And even had he raised such an objection, the Court may still order production, subject to cost-sharing or other conditions. Nicholson did not raise such a concern, however, so the Court need not consider whether imposing any such conditions is warranted.

materials. The Court therefore orders Nicholson to produce all materials in his possession that are responsive to Plaintiffs' subpoenas, which he has not already produced.

## IV. CONCLUSION

In conclusion, the Court **GRANTS IN PART AND DENIES IN PART** Nicholson's Motion to Quash Plaintiffs' Second Subpoena (Dkt. 337). The Court **ORDERS** that Nicholson shall produce all materials responsive to Plaintiffs' Second Subpoena in accordance with the terms of this Order on or before **June 19, 2020**.

SIGNED this 26th day of May, 2020.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE