IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al*, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 6:16-CV-00173-RP |
| | § | |
| v. | § | *Consolidated with* |
| | § | 6:17-CV-228-RP-AWA |
| BAYLOR UNIVERSITY, | § | 6:17-CV-236-RP-AWA |
| | § | |
| Defendant. | § | |

**BAYLOR UNIVERSITY'S OBJECTIONS AND STATEMENT OF APPEAL
REGARDING MAGISTRATE JUDGE AUSTIN'S JUNE 2, 2020 ORDER**

**WEISBART SPRINGER HAYES LLP**

Julie A. Springer
State Bar of Texas No. 18966770
jspringer@wshllp.com
Sara E. Janes
State Bar of Texas No. 24056551
sjanes@wshllp.com
Geoff Weisbart
State Bar of Texas No. 21102645
gweisbart@wshllp.com
Mia H. Storm
State Bar No. 24078121
mstorm@wshllp.com
212 Lavaca Street, Suite 200
Austin, Texas 78701
(512) 652- 5780 (telephone)
(512) 682-2074 (fax)

**THOMPSON & HORTON LLP**

/s/ *Lisa A. Brown*
Lisa A. Brown
State Bar of Texas No. 03151470
lbrown@thompsonhorton.com
Ryan H. Newman
State Bar of Texas No. 24059944
rnewman@thompsonhorton.com
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027-7554
(713) 554-6741 (telephone)
(713) 583-7934 (fax)

Holly G. McIntush
State Bar of Texas No. 24065721
hmcintush@thompsonhorton.com
8300 N. MoPac Expressway, Suite 220
Austin, TX 78759
(512) 615-2351 (telephone)
(512) 682-8860 (fax)

**COUNSEL FOR DEFENDANT
BAYLOR UNIVERSITY**

## TABLE OF CONTENTS

I.    Standard of Review ........................................................................................................2

II.   Baylor objects to the finding that Baylor "does not dispute that it intends to rely on the factual findings of the investigation, and the recommended reforms, to defend itself at trial," thereby placing Pepper's investigative and implementation work product "at issue." ........................................................................................................................................3

    A.   Baylor has never represented that it intends to rely on the factual findings or work product of the Pepper investigation to defend itself at trial..............................................3

    B.   Baylor does not intend to rely on Pepper's recommendations, or Pepper's role in the implementation of those recommendations, to defend itself at trial. ......................3

    C.   Baylor has never made an affirmative and offensive use of Pepper's work product as a defense..............................................................................................................................4

    D.   Baylor objects to the Order's repeated conflation of Pepper's investigation with Baylor's later implementation of the 105 recommendations. ..........................................6

III.  Baylor objects to the Order's conclusion that it placed Pepper's investigative work-product at issue...................................................................................................................7

    A.   The finding that two of Baylor's answers placed Pepper's investigative work product at issue is clearly erroneous and contrary to law...............................................7

        1.   Mere reference to the existence of an investigation is not the same as relying on the work product from that investigation...........................................7

        2.   Baylor's answers do not rely on or defend the quality of Pepper's investigation. ................................................................................................................8

    B.   The Order failed to correctly analyze the elements of Plaintiffs' post-reporting and heightened risk claims, leading to the clearly erroneous finding that Baylor needs Pepper's investigative work product to defend itself. .........................................10

        1.   The Order's analysis of the post-assault reporting claim is clearly erroneous and contributed to the flawed ruling on waiver..............................11

            a)   Baylor's pleadings rebut the "deliberate indifference" element of Plaintiffs' post-assault claims by relying on Baylor's internal records, not on Pepper's external investigation...................................13

            b)   The Magistrate Judge clearly erred in finding that Pepper's investigative work product is needed to disprove the "actual knowledge" element................................................................................14

            c)   The Magistrate Judge clearly erred in analogizing Pepper's investigation to the employment investigations examined under the Faragher/Ellerth affirmative defense under Title VII. ................15

            d)   The Magistrate Judge's conclusion that "advice of counsel" cases support a finding of at-issue waiver is contrary to the law................16

        2.   The Order's analysis of the heightened risk claim is clearly erroneous and contributed to the flawed ruling on waiver.......................................................19

C.      The Order's conclusion that release of the investigative work product will do little to undermine the adversary system is clearly erroneous. ................................. 22

IV.   Baylor objects to the conclusion that Baylor's reliance on its post-investigation reform efforts puts Pepper's implementation work-product at issue. .................................... 25

A.      Baylor never put Pepper's implementation efforts "at issue." ...................................... 25

B.      The Order's reliance on the "advice of counsel" and *Faragher/Ellerth* affirmative defense cases to find waiver is misplaced. .......................................... 27

V.    Baylor objects to the erroneous factual findings regarding Baylor's alleged discovery history which undergird the waiver ruling. .................................................... 28

A.      Baylor did not "hide the ball" in a sea of raw data. ............................................ 28

B.      Baylor objects that the Order repeated Plaintiff's unsupported false narrative regarding Baylor's discovery conduct. ................................................ 29

C.      Baylor objects to the finding that Baylor hid a draft report. ............................... 30

VI.   To the extent any waiver is upheld, Baylor objects to the failure to connect the scope of the waiver to the information found to be "at issue." ........................................... 30

A.      The waiver finding as to implementation should not have been extended to Pepper's investigation. .......................................................... 31

B.      The waiver finding cannot extend to Pepper work product that was never transmitted to Baylor. ............................................................... 32

VII.  Baylor objects to the Court's denial of its motion for leave to amend the Jane Doe 11 answer as clearly erroneous. ....................................................... 33

A.      Baylor's amendment is not futile. .......................................................... 34

B.      Baylor's amendment is not contrary to the interests of justice. .................................. 35

TO THE HONORABLE JUDGE PITMAN:

The Magistrate Judge's order granting Plaintiffs' motion to compel the production of protected work product contains numerous significant factual and legal errors. *See* Dkt. 845 (the Order). First, in finding waiver related to an internal investigation that Pepper Hamilton conducted during the 2015-2016 school year regarding Baylor's handling of past sexual assault complaints, the Order repeatedly—and mistakenly—states that Baylor will rely on this investigation as part of its defense. Baylor's defense will rely on records prepared by Baylor personnel in response to Plaintiffs' alleged assaults, *not* the Pepper investigation. The Order fails to recognize the distinction between the internal investigations by Baylor personnel in response to specific student reports and Pepper's external investigation that assessed how Baylor personnel responded to student reports. Because Baylor does not intend to—and will not—place the Pepper investigation "at issue" in its defense, the *Faragher/Ellerth* cases on which the Order relies are inapplicable. It is up to Baylor, not the Plaintiffs or even the Court, to determine how it will defend these cases. It is error to assume that Baylor will rely on the Pepper investigation when Baylor affirmatively disclaimed any intent to do so and articulated how it will defend these cases without reliance on Pepper's investigative work product.

Second, the Order incorrectly found waiver related to Baylor's implementation of new policies and reforms after the Pepper investigation. Again, Baylor does not intend or need to rely on the "advice of counsel" regarding its policies and reforms to defend itself. The policies in place during the period applicable to each plaintiff must be judged on their own merit, and Baylor will not attempt to buttress those policies by arguing that they were designed with the help of counsel. However, even if the Order were correct in concluding that Baylor invoked an "advice of counsel" defense regarding implementation of reforms in 2016 and 2017, it erroneously extended the waiver finding to Pepper's investigation. That investigation and Baylor's subsequent reforms are factually and legally distinct, yet the Order improperly conflates them. Other errors include:

1

- misapplying circuit law on waiver and ordering a broad subject matter waiver that is based in part on the misstatement of facts in the record;

- failing to fully examine the essential elements of Plaintiffs' claims, leading to the erroneous conclusion that work product is necessary for Baylor to defend itself; and

- disregarding Rule 15's liberal pleading standard and denying Baylor leave to amend its answer in Jane Doe 11, despite the absence of prejudice to Plaintiffs.

Finally, the incredibly broad scope of the waiver of Pepper's work product is not tailored to the information found to have been placed at issue. The waiver extends even to Pepper and Cozen documents never shared with Baylor. Contrary to Fifth Circuit case law, the Order lacks the required particularized findings necessary to explain the relationship between the significant issues and the materials to be disclosed. The Court should reverse the finding of waiver for the reasons stated below.[1]

## I.     Standard of Review

When a magistrate judge decides a non-dispositive matter, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." FED. R. CIV. P. 72(a). A magistrate judge's factual findings are clearly erroneous when, after reviewing the evidence, the district court is left with the definite and firm conviction that a mistake was made. *Sparling v. Doyle,* 2016 WL 236266, at *2 (W.D. Tex. Jan 20, 2016). "A legal conclusion is contrary to law when a magistrate judge fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Arroyo v. Oprona, Inc.*, 2017 WL 1106318, at * 1 (S.D. Tex. Mar. 24, 2017). Legal conclusions are reviewed under a *de novo* standard. *Sparling,* 2016 WL 236266, at *2.

---

[1] Additionally, Baylor incorporates by reference the arguments set forth in its response opposing Plaintiffs' Motion to Compel Pepper Hamilton's work product (Dkt. 805) and Motion for Leave to Amend Jane Doe 11's Answer (Dkt. 815), as well as the arguments of counsel at the May 5, 2020 hearing (Dkt. 837).

II.   **Baylor objects to the finding that Baylor "does not dispute that it intends to rely on the factual findings of the investigation, and the recommended reforms, to defend itself at trial," thereby placing Pepper's investigative and implementation work product "at issue."**

A.   **Baylor has never represented that it intends to rely on the factual findings or work product of the Pepper investigation to defend itself at trial.**

The Magistrate Judge's conclusion that Baylor waived the work product protection for Pepper's investigation is based on a clearly erroneous factual finding that undergirds the entire Order—specifically, that Baylor "does not dispute that it intends to rely on the factual findings of the investigation" to defend itself at trial.   Dkt. 845 at 25.   The Order references one citation for this factual assertion, Dkt. 805 at 2 (Baylor's Response to Plaintiffs' Motion to Compel Pepper Hamilton Work Product), which actually states the opposite—"[c]ritically, Baylor is not relying on the investigation as a defense in any way."   Dkt. 805 at 2.   At the hearing on Plaintiffs' Motion, Baylor again stressed that it will not rely on the investigation or the findings in any way. Dkt. 837 at 5:11-15. Despite the express representation in its pleadings and oral argument, the Magistrate Judge found that Baylor "does not dispute" it will rely on the factual findings at trial and that Baylor will "explicitly rely on evidence that the university conducted an investigation, though performed solely by Pepper Hamilton."   Dkt. 845 at 25.   Baylor has not and will not rely on evidence that Pepper conducted an investigation.   These factual findings—central to the Court's waiver analysis—are directly contradicted by the record and clearly erroneous.   Dkt. 845 at 25.

B.   **Baylor does not intend to rely on Pepper's recommendations, or Pepper's role in the implementation of those recommendations, to defend itself at trial.**

In support of the finding that Baylor has waived the work product protection as to Pepper's implementation work, the Order concludes that Baylor does not dispute it will rely on the recommended reforms to defend itself at trial.   Again, the Order relies on a single statement where Baylor stated that it will "rely on its own implementation efforts" and not those of Pepper.   Dkt. 845 at 2.   At the hearing, Baylor's counsel made clear that Baylor will not offer evidence of the 105

3

recommendations or Pepper's role in the implementation of those recommendations.  Dkt. 837 at 10:17-19.  Rather, Baylor will introduce evidence of the policies actually implemented—and how Baylor personnel followed those policies when responding to alleged assaults, including Jane Doe 11's. *Id.* at 11:3-14.  This is a critical distinction overlooked by the Order.  As explained below, to effect an "at issue" waiver of work product, the holder of the privilege must *directly* place that work product at issue.  Baylor has not done so and the Court's finding to the contrary is clearly erroneous.

### C.   Baylor has never made an affirmative and offensive use of Pepper's work product as a defense.

Plaintiffs, not Baylor, have repeatedly sought to place Pepper's investigation at issue,[2] identifying, for example, questions that they believe Baylor's witnesses should answer regarding the "Finding[s] of failure" found by Pepper.[3]  Missing from their argument and the Order is evidence that *Baylor* itself has relied on the "Finding[s] of failure" *and the work product behind them* to defend itself in this litigation.  To the contrary, Baylor has repeatedly explained that the findings are not dispositive of Plaintiffs' claims and pointed to other evidence in the record to support its defense.  *See, e.g.*, Dkt. 46 at 22 n.13; No. 6:17-CV-236, Dkt. 40 at 6-7; *see also* 837 at 11:1-14.

The Court's finding of waiver is based on a misapplication of circuit law that precludes waiver unless there is evidence that the party made an *affirmative and offensive* use of the party's work product.  Moreover, the Court ignores, without legal basis, Baylor's express statement that it will *not* defend the quality of Pepper's investigation or otherwise rely upon it at trial, nor will it rely on Pepper's advice or work on the implementation of the recommended reforms.  The law is clear: "at-issue" waiver does not occur unless the party expressly relies on the existence or absence of the party's privileged communications.  *See In re Itron*, 883 F.3d 553, 564 (5th Cir. 2018) (citing *United States v. Newell*, 315

---

[2]  *See, e.g.*, Dkt. 22 at 14 (complaining about Baylor's "refus[al] to provide the slightest details of its conduct – conduct that Pepper Hamilton has called a 'fundamental failure'").

[3]  *See* Dkt. 845 at 12 (quoting Dkt. 792 at 2).

F.3d 510, 525 (5th Cir. 2002).[4]   In the context of a lawyer-conducted investigation, this Court previously held that the party must "directly" invoke the *quality* and *substance* of the attorney's work product.  *See* Dkt. 168 at 8, 17 (citing *Feld v. Fireman's Fund Ins. Co.*, 991 F.Supp.2d 242, 255 (D.D.C. 2013)).

The Order's analysis veers off course by repeatedly and erroneously referencing the importance of the work product to *Plaintiffs'* case.[5]   But "'[r]elevance is *not* the standard for determining whether or not evidence should be protected from disclosure as privileged, . . . even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.'"   *Itron*, 883 F.3d at 561 (quotation omitted).  Plaintiffs cannot induce a waiver of Baylor's work product by *their* reliance on the Pepper investigation or *their* selection of legal theories or *their* questions at depositions.[6]   *Compare Edwards v. KB Home*, No. 3:11-CV-00240, 2015 WL 4430998, at *1 (S.D. Tex. July 18, 2015) (attorney-client privilege waived when litigant "place[s] information protected by it in issue through some affirmative act for his own benefit") *with In re Grand Jury Proceedings*, 219 F.3d 175, 192 (2d Cir. 2000) ("[The witness] was answering the government's questions, not putting up his own defense.").   Thus, the Magistrate Judge's reference to Baylor Regents not being able to answer *Plaintiffs'* deposition questions is misplaced.

---

[4]   *See also In re Burlington N., Inc.*, 822 F.2d 518, 533 (5th Cir. 1987) (no waiver unless party's argument "explicitly relies" on the existence or absence of privileged communications).

[5]   *See, e.g.*, Dkt. 845 at 20 (stating that Pepper's work product is "potentially relevant" because the knowledge and intent of the regents are "central liability facts" under the "theories *Plaintiffs* are pursuing") (emphasis added) and 34 n.23 ("To have a fair chance of proving *their case*, then, Plaintiffs arguably have a compelling need to obtain the Pepper Hamilton materials to demonstrate what the Regents knew, and how they made their policy decisions") (emphasis added).  The Order suggests that Plaintiffs need to "question[] the integrity, scope and conduct of the investigation" and to "criticize" "the work of Pepper Hamilton," *id.* at 26.  The Order also expresses concern about the ability of Baylor witnesses to answer *Plaintiffs'* questions at depositions.  *Id.* at 26-27.

[6]   The Magistrate Judge points to the number of times Pepper Hamilton has been mentioned in briefing before this Court (Dkt. 845 at 31), but this has been largely in discovery briefing.  Baylor's efforts *to protect* Pepper's work product in no way puts the merits of the investigation "at issue."

5

In short, Plaintiffs may not test the accuracy of Pepper's assessment of Baylor's policies or practices in the absence of Baylor itself asserting a defense that the assessment was accurate. *Mir v. L-3 Comm'cns Integrated Sys.*, 315 F.R.D. 460, 472 (N.D. Tex. 2016). "At issue" waiver occurs only when the *holder of the privilege* places the party's work product at issue. *See Itron,* 883 F.3d at 553, 561, 564. Baylor—not Plaintiffs or even the Court—is the master of Baylor's defense. *Cf. Mir,* 315 F.R.D. at 472 ("Nothing compels Defendant to put an excuse at issue in this case. … it fundamentally remains that injecting an excuse into this case is simply a matter of strategic choice….").

### D. Baylor objects to the Order's repeated conflation of Pepper's investigation with Baylor's later implementation of the 105 recommendations.

A critical factual error that infects the entirety of the Order's waiver analysis is the repeated conflation of Pepper's investigation with the post-investigation implementation of Pepper's recommendations. They are not one and the same. Baylor engaged Pepper in the fall of 2015 to review Baylor's institutional response to Title IX, an engagement that involved assessing how Baylor employees had handled past reports of sexual assault during a three-year period. Dkts. 104-3, 93-3 at 1; *see also* Dkt. 99-7 at ¶ 3, Dkt. 104-5 at ¶ 3. In May 2016, Pepper's attorneys prepared a list of recommended reforms to Baylor. Dkt. 93-4. After Pepper's investigation and after the issuance of the recommendations, Pepper began to assist Baylor's administration and employee task forces with the implementation of policy reforms. Dkt. 621-2 at ¶ 4.

As discussed in Section III.B.1 below, because Baylor is not relying on Pepper's investigation to show it acted reasonably in response to Plaintiffs' reports, it was contrary to law to summarily extend any waiver finding as to *implementation* to the work product related to the *investigation*. Thus, at a minimum, it was clear error for the Magistrate Judge to fail to make distinct factual findings and legal conclusions specific to the waiver of Pepper's work product as to the investigation and as to the implementation. *Cf. Grigson v. Farmers Grp., Inc.*, No. 1:17-CV-0099-LY-AWA, 2019 U.S. Dist. LEXIS 135233, at *7 (W.D. Tex. Aug. 12, 2019) (subject matter waiver only occurs when the work product

6

at issue is the *direct subject of the litigation*).  Given the importance of the distinction between the two, this appeal analyzes the waiver findings separately.

**III.    Baylor objects to the Order's conclusion that it placed Pepper's investigative work-product at issue.**

      **A.    The finding that two of Baylor's answers placed Pepper's investigative work product at issue is clearly erroneous and contrary to law.**

The Magistrate Judge found waiver as to Pepper's investigation work product based primarily on Baylor's Answer in *Jane Doe 11*, which the Order characterizes as "repeatedly referenc[ing] the Pepper Hamilton investigation and implementation of reforms."  Dkt. 845 at 11.[7]  The Order also references a shorter passage in Baylor's Answer in *Jane Does 12-15* which merely referenced the investigation as a historical fact, equating references to the fact of the investigation in the Answers to "rais[ing] a defense."  *Id.*  This reasoning is flawed for at least two reasons.

      **1.    Mere reference to the existence of an investigation is not the same as relying on the work product from that investigation.**

The Order cites *Hegar* for the proposition that "when a party refers to work product in its pleadings it is 'relying on' work product."  Dkt. 845 at 16 (citing *Hager v. Bluefield Reg'l Med. Ctr., Inc.,* 170 F.R.D. 70, 79 (D.D.C. 1997)).  But the *Hegar* holding is much more limited: "in the context of expert witnesses, the near absolute protection given by the courts to opinion work product must give way when a litigant puts his attorney's opinions into direct issue by designating his lawyer as an expert witness."  *Id.* at 78.  Moreover, "at issue" waiver would require much more than an acknowledgement that an investigation occurred.  This Court previously explained that "the *quality* and *substance* of an attorney's work product must have been *directly* placed at issue in the litigation by the party asserting the privilege."  Dkt. 168 at 17 (emphasis added).  This is why the *Faragher*/*Ellerth* line of cases discussed

---

[7]   At the same time, the Magistrate Judge denied Baylor's motion for leave to amend its answer to remove these statements.  Baylor's objection regarding this ruling is discussed in Section IV, *infra.*

in the Magistrate Judge's Order found waiver; the employers in those cases relied on their investigations to argue that they "exercised reasonable care to prevent and promptly correct any sexually harassing behavior," and therefore they were obligated to show the underlying files. *See, e.g., Williams v. United States Env't'l. Servs.*, No. CV 15-168-RLB, 2016 WL 617447, at *5 (M.D. La. Feb. 16, 2016) (plaintiff must be able to "assess the full measure of [Defendant's] response in light of what it learned from its investigation"); *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 48 (E.D.N.Y. 2013), *aff'd*, 29 F.Supp.3d 142 (E.D.N.Y. 2014) (quality of the investigation goes to the reasonableness analysis under *Faragher/Ellerth*."). Here, Baylor does not do so.

Such reliance on the quality, substance, or reasonableness of the work is the equivalent to "actual disclosure of any privileged documents" in a way that mere reference is not. *See In re Grand Jury Proceedings*, 219 F.3d at 191 (attorney's testimony regarding a meeting does not place his notes regarding what happened at the meeting at issue). Thus, for example, an allegation in a plaintiff's complaint that referenced an investigation *and its results* did not result in waiver where the plaintiffs did not "expressly indicate their intention to rely upon the investigations . . . as a significant part of their case." *Crostley v. Lamar Cty., Tex.*, No. 5:10CV17, 2011 WL 13134887, at *6 (E.D. Tex. June 23, 2011).

### 2. Baylor's answers do not rely on or defend the quality of Pepper's investigation.

Baylor's answer in *Jane Doe 11* did not *rely on* the Pepper investigation, much less Pepper's work-product, in its defense. To the contrary, Baylor argued that neither the findings themselves, nor the evidence of Baylor's practices between 2012 and 2015, are relevant to Baylor's policies or practices in Spring 2017, when Jane Doe 11 was allegedly assaulted. No. 6:17-CV-228, Dkt. 17 at 6. Likewise, in its answer in *Jane Does 12-15*, far from relying on the Pepper investigation or defending its quality, Baylor *distanced* itself and focused on the period *before* the investigation:

> The findings also do not alter the fact that, prior to the sexual assaults alleged by Jane Does 12, 13, 14, and 15, Baylor employees were devoting time, energy, and resources to the prevention of sexual assault and that Baylor sought opportunities to improve

> campus safety and did in fact improve the campus environment for thousands of
> students. That Baylor's overall compliance effort was found deficient in light of
> evolving legal guidance does not erase these positive and substantial contributions –
> and in no way equates with an institutional intent to subject female students to harm.

No. 6:17-CV-236, Dkt. 40 at 6-7. This language is substantively similar to language used in an earlier

motion that this Court found did *not* constitute waiver:

> While Pepper Hamilton found serious administrative failings, those failings do not
> erase the fact that Baylor had for years been devoting time, energy, and resources to
> the prevention of sexual assault. That these efforts may not have been successful in
> preventing all assaults, or that some employees in individual instances failed to comply
> with the policies that existed, does not evince intentional discrimination.

Dkt. 91 at 4-5; *see also* Dkt. 168 at 17 ("Although Baylor has impliedly connected the Pepper Hamilton

investigation to this litigation" by summarizing its actions taken to prevent sexual assault, "it has not

directly invoked Pepper Hamilton's work as a defense."). Baylor's answers identify numerous Baylor

sexual assault prevention programs that existed between 2010 and 2015, prior to Pepper's hiring. No.

6:17-CV-228, Dkt. 17 at 4-6; No. 6:17-CV-236, Dkt. 40 at 4-6. Merely referencing the investigation

does not place the "quality and substance" of Pepper's work directly at issue.

It is Plaintiffs who seek to *rely on* Pepper's assessment of Baylor's actions. In briefing in the

lead case, Plaintiffs pointed to the Pepper investigation to support their heightened risk theory. *See*

Dkts. 22 at 3 & 11, 23 at 18, 24 at 15, 25 at 17, 26 at 11. Baylor replied by explaining why Pepper's

investigation is not relevant. *See* Dkts. 46 at 22 n.13 (explaining that the information discovered by

Pepper in 2016 did not establish that the board was aware of deficiencies in prior years), 62 at 21

(stating that Jane Doe 7, who alleged a rape in 2009, could not evade the "actual notice" requirement

by referring to the Pepper investigation that occurred years later); *see also* No. 6:17-CV-236, Dkt. 29 at

5-6 ("Plaintiff cannot retroactively characterize the Findings as the embodiment of a pre-existing

policy sanctioned by the university.").[8]  In its Motion to Dismiss in *Jane Doe 11*, Baylor argued that the timing of Jane Doe 11's alleged assault in April 2017, after Pepper's investigation and after adoption of a new policy on "Sexual and Gender-Based Harassment and Interpersonal Violence," made any reliance on the findings by the Plaintiffs improper.  No. 6:17-CV-228, Dkt. 7 at 3-4.  This is not relying on Pepper Hamilton's *work product*.  It merely acknowledged that the publicity of the investigation impacts the causation analysis of Jane Doe 11's claim—would the alleged assailant of Jane Doe 11 have sexually assaulted Jane Doe 11 against the backdrop of the sexual assault awareness campaign at Baylor in 2017?.

    **B.**    **The Order failed to correctly analyze the elements of Plaintiffs' post-reporting and heightened risk claims, leading to the clearly erroneous finding that Baylor needs Pepper's investigative work product to defend itself.**

The Order acknowledged that Baylor "affirmatively disclaims any advice of counsel defense" yet proceeded to find that Baylor necessarily will "offer evidence that directly or indirectly implicate[]" Pepper's work-product.  Dkt. 845 at 17.  No evidence supports the finding that Baylor *will offer* such evidence.  The Order's erroneous conclusion is based on two factually unsupported premises: that Baylor needs Pepper's investigation materials to show that it reasonably responded to the Jane Does' individual assault reports and that it needs the materials to rebut Plaintiffs' assertion that Baylor "intentionally adopted policies or customs" it knew were inadequate.  *Id.* at 25.

The Magistrate Judge found that Pepper's work product is "potentially" relevant to both of Plaintiffs' theories of liability (post-assault reporting and pre-assault/heightened risk), even finding the work product to be relevant to a claim that was previously dismissed due to the statute of limitations.[9]

---

[8]   *See also* Dkts. 49 at 29 n.12, 50 at 19 n.12, 51 at 21 n.12; 63 at 16, 65 at 15; No. 6:17-CV-236, Dkts. 30 at 10, 31 at 4.

[9] The Order acknowledged that Jane Doe 13's post-assault claim was dismissed due to limitations but nonetheless found that Pepper's findings and investigative work product are "relevant" to her dismissed claim.  Dkt. 845 at 19 n.16 & 11 n.12.  Even if the Order's broader relevancy analysis were

Dkt. 845 at 19-20.  But, even assuming relevancy is the standard—which it is not--the Order does not examine the essential elements of those claims, leading to an incorrect conclusion about what evidence is necessary to disprove them.  The flawed analysis is compounded by a misapplication of Title VII case law and the "advice of counsel" line of cases.

> 1.     **The Order's analysis of the post-assault reporting claim is clearly erroneous and contributed to the flawed ruling on waiver.**

While acknowledging Baylor's position that "evidence for post-reporting claims should be limited to the university's specific actions in response to each Plaintiff's report of sexual assault," the Order presumed that Baylor will abandon this position and use Pepper's work product related to Baylor's "practices, policies, and customs" to defend against the post-reporting claim.   Dkt. 845 at 20.  Baylor has never stated that it will rely at trial on the fact findings from Pepper's investigation nor has it represented that it will use Pepper materials to prove that it was not deliberately indifferent to any Jane Doe's specific reports of sexual assault.  The Order relies on the erroneous conclusion that Baylor intends to defend against the Jane Does' individual claims by pointing to Pepper's investigation and recommendations and then "leave out the fact that the investigation and reform work was conducted by Pepper Hamilton."  Dkt. 845 at 21, 25-26. These statements are demonstrably incorrect. Baylor does not, has not, and will not contend that it hired Pepper in response to any Jane Doe's alleged report.

Baylor did not argue in any answer or motion to dismiss that the *Pepper investigation* proves that Baylor was not deliberately indifferent to any Jane Doe's claims. Rather, Baylor's defense is based on investigations and other university responses reflected in student records prepared by *Baylor employees* in Baylor's Judicial Affairs, Title IX, and other offices in response to specific Jane Doe reports.  The

---

not contrary to law, the decision to consider the relevancy of the evidence to a time-barred claim and order waiver based on that supposed relevance is clear error.

Order ignores the critical distinction between (i) records *contemporaneously* prepared by Baylor employees responding to allegations of sexual assault and (ii) records prepared in anticipation of litigation by attorneys who *retrospectively* were asked to assess how Baylor employees responded to past allegations of student sexual assault.

Consistent with Baylor's understanding of circuit law, its defense of the post-assault claims will not depend on evidence of Baylor's institutional customs or Pepper's assessment of Baylor's practices, and any contrary suggestion by the Order is clearly erroneous. The Fifth Circuit's Title IX opinions demonstrate that the post-assault claim inquiry is *individualized* to the plaintiff's personal circumstances: Did an "appropriate" Baylor official with authority to take corrective action have "actual knowledge" of an assault and respond with deliberate indifference, thereby injuring the plaintiff?[10]  This claim does not require or allow proof of the mishandling of other students' reports.

Moreover, because the ultimate inquiry is how each Plaintiff actually was treated, the quality of the school's policies or whether school officials complied with them is of no moment.  Even a school's "failure to comply with the [DOE's] regulations . . . does not establish the requisite actual notice and deliberate indifference." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1989); *see, e.g., K.S.,* 689 F. App'x. at 787 ("Even if the District failed to follow guidelines from the Office for Civil Rights or even its own policies, deliberate indifference is not thereby shown."); *see also Sanches*, 647 F.3d at 165 (failure to follow district policy does not equate to "clearly unreasonable" actions).

---

[10]   *See, e.g., I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 376-77 (5th Cir. 2019) (discussing specific officials' knowledge and investigation of student's complaint); *I.L. v. Hous. Indep. Sch. Dist.*, 776 F. App'x 839, 842-43 (5th Cir., June 24, 2019) (same); *E.M. v. Austin Indep. Sch. Dist.*, 2018 WL 627391 (W.D. Tex., Jan. 30, 2018), *aff'd*, 770 F. App'x 712 (5th Cir., May 29, 2019) (same); *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 689 (5th Cir. 2017) (same); *K.S., et al v. Nw. Indep. Sch. Dist.,* 689 F.App'x. 780 (5th Cir., May 2, 2017) (same); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (same); *see generally Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644-45 (1999).

> a) *Baylor's pleadings rebut the "deliberate indifference" element of Plaintiffs' post-assault claims by relying on Baylor's internal records, not on Pepper's external investigation.*

Baylor does not intend to rely on Pepper's investigative work product to defend against the Jane Does' individual post-assault claims because Pepper was not involved in investigating their complaints. As demonstrated by Baylor's answers in all three cases, Baylor intends to rely on the internal Baylor files related to each Jane Doe's alleged sexual assaults that were generated by Judicial Affairs, the Title IX office, Baylor PD, and other Baylor offices, not Pepper's investigation. *See, e.g.,* No. 6:16-CV-00173-RP, Dkt. 88 at ¶¶ 118 (Baylor police responded to Jane Doe 3's report), 132 (Title IX office and Judicial Affairs responded to Doe 4's report), 214-26 (Title IX office responded to Jane Doe 8's report), 247 (Title IX office responded to Jane Doe 9's report), 258 (Title IX office responded to Jane Doe 10's report); No. 6:17-cv-00228-RP, Dkt. 17 at ¶¶ 51-77 (Title IX office responded to Jane Doe 11's report); No. 6:17-cv-00236-RP, Dkt. 40 at ¶ 31, 53-70, 110, 140-156 (Title IX office responded to reports of Jane Does 12, 14, and 15). Pepper Hamilton played no role in the investigation of, response to, or remediation of any specific complaint; indeed, Plaintiffs have never contended otherwise.

Baylor's internal student records are the "the objective verifiable actions" that Baylor will rely on to defend against Plaintiffs' post-assault claims. Dkt. 837 at 6:6-9. Baylor employees can testify in deposition or at trial regarding their own actions—without relying on any of Pepper's protected work-product, and without "pretend[ing] that Pepper Hamilton's efforts *were* Baylor's" because Pepper was never involved. Dkt. 845 at 27. That attorneys from Pepper may have *later* reviewed some of the past records prepared by Baylor employees does not place Pepper's investigative work product at issue.

> b) *The Magistrate Judge clearly erred in finding that Pepper's investigative work product is needed to disprove the "actual knowledge" element.*

The Order erroneously suggests that Pepper's investigative work product is relevant because "the knowledge and policy decisions of the Regents could provide evidence" that mismanagement of a reported sexual assault was an "isolated misstep" or reflective of "systemic failures."   Dkt. 845 at 20-21.  The Order characterizes the Board's knowledge and intent as a "central" liability fact.  *Id.* at 20.  These conclusions are substantially out of step with circuit law, which demonstrates that the post-assault claim inquiry is individualized to the plaintiff's personal circumstances.  *See* footnote 10, *supra* (collecting cases).  This Court previously explained that actual knowledge is shown through proof that an "appropriate person"—"an official of the recipient entity with authority to take corrective action"—had actual knowledge of harassment and an "opportunity to rectify any violation."  Dkt. 78 at 11-12 (citing *Gebser*, 524 U.S. at 290).  The Court held that the plaintiffs stated a plausible claim because their pleading contained allegations that they had reported their alleged sexual assaults to certain Baylor departments.  *Id.* at 12.

At the trials in these cases, Baylor will defend itself by showing either that no "appropriate" official learned of the alleged assault or that an "appropriate" official responded in a manner that was not deliberately indifferent.[11]  Because no Jane Doe alleges that an "appropriate" official to whom she reported was a Baylor Regent, the knowledge of any individual regent need not be shown or disproved.  The subjective intent of any Baylor official also is immaterial.  Under *Gebser*, the elements of actual knowledge, deliberate indifference, and substantial control are "a proxy for the showing of intentional discrimination that is otherwise required for Title IX claims."  Dkt. 78 at 10.  "Thus, while the school

---

[11]   Among the remaining 10 plaintiffs with a live post-assault claim, a few reported only to confidential health care providers and did not inform a Baylor official with authority to take corrective action.  *See, e.g.*, Dkt. 56, ¶ 57.  These claims were not known until the first Jane Doe lawsuit was filed, which occurred four weeks after the Pepper investigation had concluded.

is not itself committing the sexual harassment, it can be said to be intentionally discriminating if it knows of severe and pervasive sexual harassment occurring within its control and, for example, does nothing." *Id.* (citing *Gebser*, 524 U.S. at 290).

Under the applicable framework, once the student shows that she was harmed due to an "appropriate" official's deliberate indifference, liability is permitted, and it does not matter if the "mismanagement" of her complaint was an "isolated misstep" or if it was part of a systemic failure. These are not elements of the claim, and it is incorrect to conclude that Baylor necessarily will rely on work product to address facts that are irrelevant to the cause of action before the Court.

> c)   *The Magistrate Judge clearly erred in analogizing Pepper's investigation to the employment investigations examined under the Faragher/Ellerth affirmative defense under Title VII.*

The Order relies heavily on case law referencing the *Faragher/Ellerth* affirmative defense under Title VII of the Civil Rights Act of 1964 to conclude that Baylor has placed the Pepper investigation "at issue." Under this defense, an employee may avoid liability by establishing that it conducted a reasonable investigation.[12]   An employer that asserts the defense but refuses to produce the investigation file risks waiver.   *See Doe v. USD No. 237*, No. 16-2801, 2019 WL 1925107 (D. Kan. Apr. 30, 2019), *objections overruled*, 2019 WL 2612941 (D. Kan. June 26, 2019).  This line of cases is inapposite because Baylor has not asserted the *Faragher/Ellerth* defense *as to Pepper's investigation*.  Moreover, this is not a situation in which Baylor has withheld its records relating to the investigations conducted by Baylor employees in response to the Jane Doe assault complaints; those files have been produced. The case of *Doe v. USD*, cited in the Order, is easily distinguishable because the school in that case

---

[12]   This affirmative defense requires an employer to show that: (1) it exercised reasonable care to prevent and promptly correct any sexually harassing behavior; and (2) the employee failed to take advantage of any preventive and corrective opportunities made available. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807(1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

refused to produce the investigation file while relying on it as part of its defense.  2019 WL 1925107 at *1, 7.

The remaining cases cited in the Order do not support waiver in Baylor's case.  The cases draw a bright line between a routine internal investigation in response to an employee's specific complaint and a later investigation related to future litigation.  In *Angelone v. Xerox Corp.*, No. 09-CV-6019-CJS, 2012 WL 537492, at *3 (W.D.N.Y. Feb. 17, 2012), the magistrate judge found that the defendant waived work product protection for an investigation report and underlying investigation documents.  But as to documents created as part of a *later* investigation, *after* the initial investigative report, the court found no waiver, provided the company's *Faragher–Ellerth* defense did not rely on the post-investigation documents or assert the "adequacy of the subsequent investigation."  *Id.*  Once the company shifted to defending against Plaintiff's EEOC claims, the resulting documents became privileged.  *Id.*

Finally, in *Williams*, the employer relied on its "thorough" investigation conducted in the ordinary course of business to raise a *Faragher/Ellerth* defense and to show that it "prevented retaliation" against the plaintiff.  2016 WL 617447, at *5.  Nothing in *Williams* indicates that waiver would occur if the employer at a later date conducted an investigation regarding the human resources department's general handling of past harassment complaints.  In short, the assertion of a *Faragher/Ellerth* defense to a specific claim does not place the work product from the later investigation at issue.  Indeed, such a rule "would eviscerate both the attorney-client privilege and the work product doctrine."  *McGrath v. Nassau Cnty. Health Care Corp.*, 204 F.R.D. 240, 244 (E.D.N.Y. 2001).

> **d)   *The Magistrate Judge's conclusion that "advice of counsel" cases support a finding of at-issue waiver is contrary to the law.***

The Order acknowledges that Baylor expressly "disclaims any advice of counsel defense," Dkt. 845 at 17, but it then proceeds to cite advice-of-counsel cases to support the finding of waiver over Pepper's investigative work product.  But the cited cases stand only for the proposition that Baylor

would waive work product protection if it had asked Pepper to assess Baylor's response to the Jane Does' individual sexual assault reports and then sought to rely on those legal opinions to show that Baylor's responses were not clearly unreasonable.

The Order rejects Baylor's "attempt to disclaim waiver" by pointing to *Edwards*. KB Home, however, is not a work product waiver case. The court only analyzes and finds waiver of the attorney client privilege and the Court explicitly refused to extend its waiver finding to counsel's work product. *Edwards*, 2015 WL 4430998 at *13. Further, *Edwards* involved a defendant who obtained legal advice on whether its employee classification system was lawful under the Fair Labor Standards Act, then sought to argue that "its classification decision was mistaken but made based on a good faith belief *in its lawfulness*." *Id.* at *1. The defendant argued that the employees involved in the classification decision, who communicated with counsel "in connection with the decision" regarding the applicable Department of Labor opinion letters, would testify that "their own independent judgment . . . caused them to conclude *that the classification was lawful*." *Id.* at *1-2. The court found this was "too fine a line" in the context of a defense which "requires a *good faith* belief about the *lawfulness* of a classification decision." *Id.* at *2. This is a far cry from Baylor asking its witnesses to testify about actions Baylor personnel took in response to the Jane Does' reports. Because Baylor is not defending itself based on Pepper's opinions regarding the reasonableness of Baylor's institutional response to Title IX complaints, there is no reason for its witnesses to testify regarding those opinions.

The *Hager* case is similarly inapposite. There the court found waiver of work-product protection for legal memoranda used in crafting attorney opinion letters where the attorney who crafted one of the letters had prepared an expert report in the litigation, the plaintiff did not rule out calling that attorney to testify, and plaintiff did not dispute that he would use the other two opinion letters "to establish . . . that [defendant's] conduct was unlawful." *Id.* at 78-79. Baylor, in contrast, has expressly denied that it will call any Pepper attorneys as witnesses or elicit any Pepper opinions.

"[C]ase law frequently ends the inquiry into 'at issue' waiver once it is established that the party does not intend to use such materials as proof." *Windsor Sec., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 519 (S.D.N.Y. 2017) (quotation omitted).

Nor does *Butler v. Louisiana Dep't of Pub. Safety & Corr.*, No. CIV.A. 12-420-BAJ, 2014 WL 3866100 (M.D. La. Aug. 6, 2014), support a contrary conclusion. In that case, the defendant raised an affirmative defense to a disability discrimination claim that required it to show that it had an objectively reasonable concern that the plaintiff could not perform his job. *Id.* at *5. By raising this affirmative defense and pointing to the fact that a psychiatrist employed by the contractor approved the request for the evaluation as evidence that its concern was reasonable, the defendant placed all of the documents at issue, including the memo prepared by defendant's in-house counsel. *Id.* at *7.

Here, Baylor is not defending against Plaintiffs' post-reporting claims by pointing to Pepper's assessment or opinion regarding whether its responses were deliberately indifferent or to Pepper's opinion regarding Baylor's "practices, policies, and customs." Like the defendant in *Itron,* Baylor has not relied on privileged advice from counsel to make a claim or defense but is relying on its own documents prepared by its own employees. *See Itron*, 883 F.3d at 561. This case also demonstrates that Baylor's actions "[must] be examined under an objective standard." *Id.* at 565 (quotation omitted). Baylor's subjective belief regarding the lawfulness of its actions is of no moment.[13] *See Pederson v. La. State Univ.*, 213 F.3d 858, 880–81 (5th Cir. 2000) ("Appellees need not have intended to violate Title IX, but need only have intended to treat women differently.")

---

[13]   As such, Baylor Regents do not have to pretend that they did not receive information from Pepper regarding the investigation, *see In re Grand Jury Proceedings*, 219 F.3d at 191, so long as they do not testify and Baylor does not argue based on their testimony that any assessment or opinion by Pepper regarding the lawfulness of their actions is a defense to liability. *See also In re County of Erie*, 546 F.3d 222, 230 (2d Cir. 2008) (finding no waiver because the county attorney "properly terminated the inquiries" before the witness revealed the "principal substance" of the advice given by the county attorney's office over revisions to a jail policy)

2.      **The Order's analysis of the heightened risk claim is clearly erroneous and contributed to the flawed ruling on waiver.**

As articulated by this Court, Plaintiffs' heightened risk claim requires proof that Baylor maintained a "discriminatory policy or custom" that increased the risk of sexual assault "throughout the university's student body," and thereby "inflicted the injury of which the plaintiffs complain." Dkt. 78 at 15.  In recognizing the heightened risk claim, the Court determined that *Gebser* "locat[ed] an analogue to the Title IX jurisprudence in the municipal liability doctrine" under 42 U.S.C. § 1983.  *Id.* The Court held that the plaintiff must prove that execution of a custom or policy inflicted her injury as required in the Section 1983 line of cases.  *Id.* (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) and *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992)).  Accordingly, while a post-reporting claim focuses on the time period *after* the alleged victim reported an assault, the heightened risk claim focuses on the policies and policymaker's knowledge *prior* to the assault. Assuming the validity of the "heightened risk" theory under Title IX, the Magistrate Judge improperly expanded this theory of liability and then further erred by using the expanded theory to find waiver.[14]

The Magistrate Judge found that the plaintiff may establish an "official policy" claim by showing an official policy or custom "in much the same way" that a Section 1983 plaintiff establishes liability against a municipality under *Monell*.  Dkt. 845 at 19.  But the Order failed to examine essential elements necessary to establish such a claim. Under Section 1983, the plaintiff must show that:

---

[14]   The validity of the theory as articulated by the Court in Dkt. 78 cannot be challenged in this appeal under FRCP 72.  However, Baylor respectfully notes that it continues to object to the Court's recognition of a theory of liability based on a "heightened risk" or constructive knowledge of a discriminatory "custom." In particular, the term "custom" does not appear in the statutory language of Title IX, and the Supreme Court has held that "constructive knowledge" is not permitted under Title IX.  *See Gebser*, 524 U.S. at 287.  In contrast, the term "custom" actually appears in the statutory language of Section 1983, which therefore permits liability based on the policymaker's constructive knowledge of widespread violations. *See generally Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Pineda v. City of Hous.*, 291 F.3d 325, 329 (5th Cir. 2002).

1.     the constitutional violation was caused as the direct result of the execution of an official "custom" or "policy" within the meaning of *Monell*;

2.     the custom or policy was approved or sanctioned by the entity's "final policymaker";

3.     the final policymaker acted with "deliberate difference" and the custom or policy was the "moving force" behind the violation.

*See generally Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *Pineda*, 291 F.3d at 330.  A policy or custom is official only "when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Jett v. Dall. Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989).

"[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." *City of Ok. City v. Tuttle*, 471 U.S. 808, 823 (1985).  An official "policy" is a policy statement, ordinance, regulation, or decision that is officially adopted or promulgated by the final policymaker. *See Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). A pattern is tantamount to official policy when it is "so common and well-settled as to constitute a custom that fairly represents municipal policy."  *Peterson*, 588 F.3d at 850 (citations and quotations omitted).  "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Id.*  Constructive knowledge may be established, for example, by showing that the alleged violations were the subject of prolonged public discussion.[15]   *See Pineda*, 291 F.3d at 330.

The plaintiff also must show that the policymaker acted with "deliberate difference" and that the custom or policy was the "moving force" behind the violation. *See Bryan Cnty.,* 520 U.S. at 415.

---

[15] As previously noted, *Gebser* holds that "constructive knowledge" is not permissible under Title IX, a Spending Clause case. 524 U.S. at 287.

There must be "a direct causal link" between the policy and the violation, which means that the violation was the "plainly obvious consequence" of the policymaker's decisions; this is "more than a mere 'but for'" causation. *Bryan Cnty.*, 520 U.S. at 415; *Peterson*, 588 F.3d at 848 (citations omitted).

Finally, in cases in which the policymaker becomes aware of certain violations and modifies its policies to address the problem, and the plaintiff is injured after adoption of new policies, the plaintiff must show that the policymakers were deliberately indifferent to the deficiencies in the new policies, not the old policies; the old policies are no longer relevant. *See*, *e.g.*, *Carnaby v. City of Hous.*, 636 F.3d 183, 190 (5th Cir. 2011) (because it was undisputed that the city provided training in 2004, the incidents occurring before 2004 were "irrelevant").

In Baylor's case, the Magistrate Judge found that the Board of Regents (the funding recipient under Title IX) is Baylor's policymaker. Dkt. 845 at 29. At the hearing on May 5, 2020, Plaintiffs agreed that the Board is Baylor's policymaker. Dkt. 837 at 29:1-4. Therefore, the proper inquiry is what the Board of Regents knew *prior* to each plaintiff's alleged sexual assault and whether the Board responded in a manner that directly caused that plaintiff's assault. *See generally Peterson*, 588 F.3d at 850-851 (court must examine the "prior" incidents to determine if a widespread custom existed and directly caused the injury); *Connick v. Thompson*, 563 U.S. 51, 63 n. 7 (2011) (explaining in Section 1983 case that "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the [county] and the opportunity to conform to constitutional dictates....'").

The Order focused on information presented to the Regents by Pepper Hamilton at board meetings in 2016. But the facts learned at those presentations do not show that the board previously was aware of the prior deficiencies and prior incidents. The relevant inquiry is the Board's alleged knowledge *prior* to the Jane Does' alleged rapes. This means, for example, that Jane Doe 2, who alleges a rape in 2004, must show that, *prior* to her alleged rape in 2004, the policymaker was deliberately indifferent to the occurrence of sexual assaults in a context under Baylor's control and that deliberate

indifference was the "moving force" that caused her alleged rape.  Allowing Plaintiffs to question regents about what they learned *after the fact* from Pepper Hamilton will not establish the requisite elements of this claim.

With respect to Jane Doe 11, the only Plaintiff allegedly assaulted after Pepper's presentations and after commencement of the reforms, Jane Doe 11 must show that the Regents were deliberately indifferent to deficiencies in the newly revised policies, and she must show that those new policies were the moving force behind her injury.  What the Regents learned from Pepper in May 2016 about its *prior* policies has no bearing on those questions.  *See Carnaby*, 636 F.3d at 190.  The Magistrate Judge's ruling to the contrary is clear error.

> **C.    The Order's conclusion that release of the investigative work product will do little to undermine the adversary system is clearly erroneous.**

This Court recognized that Baylor retained counsel to investigate its Title IX compliance because of circumstances in August 2015 that caused it to "to expect litigation related to its Title IX compliance."  Dkt. 168 at 15.  The Magistrate Judge now questions that finding because the attorney expert from Pepper Hamilton told the Court at a hearing that her team of attorneys does not act as trial counsel, but instead "exist[s] in a policy, auditing, investigative, regulatory compliance space."  Dkt. 845, pp. 2-3 (quoting Dkt. 672 at 41:3-6).  While the Order does not expressly overturn this Court's prior ruling that the investigation was conducted in anticipation of litigation, the Magistrate Judge finds the fact that the Regents chose to prepare for litigation by hiring expert neutral fact finders to give it (and by extension its trial counsel) their honest assessment of its potential liability means that ordering the production of Pepper's work product "will do little to undermine the adversary system."  Dkt. 845 at 33.  This conclusion is contrary to law.

The question is not whether the attorney a party hires will serve as its trial counsel, but "the primary motivating purpose behind the creation of the document was to aid in possible future litigation."  *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting *United States*

*v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir.1982)).  This Court correctly found that "Baylor would not have engaged Pepper Hamilton to conduct the investigation in question absent the threat of Title IX litigation."  Dkt. 168 at 16 (citing Dkt. 104-2 at ¶ 5, Dkt. 104-3 at ¶¶ 6, 14 and applying *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004)).

Baylor never represented to the Court that Pepper intended to act as trial counsel (*see* Dkt. 104-2, 104-3, 104-4), nor does that fact negate the centrality of Pepper's work to Baylor's defense. The 1970 amendment to Rule 26(b)(3) broadened the applicability of work product protection to the work of a party's "consultant, surety, indemnitor, insurer, or agent."  Fed. R. Civ. P. 26(b)(3)(A).  The plain language of the rule makes clear that the client and any of its representatives, not just trial counsel, can create work product.  The 1970 advisory committee notes indicate that the focus should be on the purpose of the notes, not on the character of who prepared them.  *See* Fed. R. Civ. P. 26 advisory committee's note.  In a Fifth Circuit case decided shortly after the 1970 amendment, the court held that the investigative file of non-lawyers was entitled to work product protection where it "was an integral part of the preparation of the Board's lawsuit."  *J.H. Rutter Rex Mfg. Co., Inc. v. N.L.R.B*, 473 F.2d 223, 234 (5th Cir. 1973).

The Fifth Circuit's reasoning extends to lawyers who were hired because they "had the expertise to both conduct the needed factual investigation and advise the Board regarding potential liability arising out of the University's hand[l]ing of allegations of sexual assault and any other claims that could ensure, such as Title IX litigation, employment related litigation, regulatory investigations, or government enforcement proceedings."  Dkt. 168 at 6 (quoting Dkt. 104-3 at ¶ 6). This comports with how documents prepared by consulting experts are handled, as well as with how documents created by non-trial counsel attorneys are handled when no advice of counsel waiver is found.  *See, e.g.*, *Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*, 242 F.Supp.3d 576, 577 (S.D. Tex. 2017); *La. CNI, LLC v. Landmark Am. Ins. Co.*, 2006 WL 8435025, at * 2 (M.D. La. Aug. 17, 2006).

23

That Baylor chose as its advisors attorneys who view themselves as independent and neutral does not negate that the they were hired in anticipation of litigation.  As this Court opined when discussing the application of the attorney-client privilege to Pepper's advice:

> "Plaintiffs argue that because Pepper Hamilton conducted an 'independent investigation' for Baylor, it was not providing 'legal representation'—thus, the materials related to the investigation are not privileged. As Baylor notes in response, *this distinction has little support in the law*. 'The research undertaken by an attorney to respond to a client's request [for advice] also falls within the reaches of the privilege.' *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999)."

Dkt. 168 at 6 (emphasis added).  Likewise, when anticipating litigation, it is a potential defendant's prerogative to choose neutral expert attorney investigators, recognizing that neutrality may well help those experts better assess the "potential liability arising out of" the defendant's actions.  Dkt. 168 at 6 (citing Dkt. 104-3 at ¶ 6).

Allowing Plaintiffs "to capitalize on [Baylor's] self-evaluation of its past [Title IX] practices rather than to evaluate those practices itself" would substantially undermine the adversarial system. *In re LTV Sec. Litig.*, 89 F.R.D. 595, 613 (N.D. Tex. 1981); *In re Stone Energy Corp.*, 2008 WL 4868086, at *4 (W.D. La. Nov. 4, 2008)("[d]iscovery . . . was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary.").  That is especially true when, as here, the Plaintiffs have the underlying documents and can depose the same witnesses Pepper Hamilton interviewed.  *See, e.g., Dover v. British Airways, PLC (UK)*, No. CV 2012-5567, 2014 WL 4065084, at *2 (E.D.N.Y. Aug. 15, 2014).  Contrary to the Order, permitting Baylor's adversary to use utilize the fruits of the very investigation it undertook for the express purpose of preparing for litigation poses a threat to the integrity of the adversary system and discourages investigation of Title IX compliance in institutions of higher education.[16]

---

[16] For this reason, Baylor also objects to the finding that Pepper's work product is "arguably" discoverable under Federal Rule 26(b)(3) "as the record suggests Plaintiffs have a substantial need for it, and there is no other way for them to obtain it."  *See* Dkt. 845 at 34, n. 23.  Plaintiffs have not identified any facts to satisfy their high burden under this rule.  *See* Fed. R. Civ. P.

IV.     **Baylor objects to the conclusion that Baylor's reliance on its post-investigation reform efforts puts Pepper's implementation work-product at issue.**

A.      **Baylor never put Pepper's implementation efforts "at issue."**

To find work product waiver as to implementation, the appropriate question is whether Baylor put Pepper's work product implementation "at issue" by "*rely[ing] on* the work product to prove its claims in the case." *See* Dkt. 845 at 16 (quoting *Windsor*, 273 F. Supp. 3d at 518-19 (emphasis added)); *see supra*, Section II.C (detailing applicable law on "at issue" waiver).  Because Jane Doe 11 is the only plaintiff whose assault occurred *after* Pepper issued its 105 recommendations and began to assist Baylor with the implementation, any alleged waiver of Pepper's work product related to the implementation only comes in to play—if at all—in defense to Jane Doe 11's claims.

But Baylor has never relied on Pepper's work product implementation efforts to prove its defenses against Jane Doe 11's claims (or any of the other Jane Does' claims).  Instead, Baylor's defense is premised on the argument that the policies and practices in place at the time of each Jane Does' alleged assault, including those in effect at the time of Jane Doe 11's, will reflect that Baylor did not respond to the Jane Does' reports of assault with deliberate indifference and did not have any "official policy" of discriminating against women.

Pepper's role, *if any*, in the drafting of policies and giving advise to Baylor employees who took the laboring oar in implementing the revised policies and recommendations will not be relied on at trial.  *See In re Vioxx Prods. Liab. Litig.*, No. 1657, 2007 U.S. Dist. LEXIS 23164, at *13 (E.D. La. March 5, 2007) (finding no waiver of work product, in part because the party represented it had no intention

---

26(b)(3)(A)(ii); *Hodges, Grant & Kaufmann v. United States Gov't, Dep't of Treasury, IRS*, 768 F.2d 719, 721 (5th Cir. 1985). The requester must show that the materials have a unique value beyond the evidence already in the party's possession and any evidence the party could otherwise acquire. *See, e.g. King v. Odeco Inc.*, No. 95-31171, 1997 U.S. App. LEXIS 43057, at *6 (5th Cir. 1997).  Plaintiffs have the university records made available to Pepper, and they can depose any of the Baylor officials interviewed by Pepper.

of relying on the work product in the litigation).  As such, Baylor is not making any arguments, one way or the other, about Pepper's advice, role or thoughts on its policy reforms.

Yet the Magistrate Judge incorrectly concludes that "[b]ecause Baylor cannot separate its investigation and reform efforts from Pepper's, Baylor's proposed defensive case explicitly relies on Pepper Hamilton's work product."  Dkt. 845 at 27.  First, as explained above, this reasoning is contrary to well-established Fifth Circuit case law that requires direct use of protected work product to find waiver, and instead, finds waiver based on an "indirect" use of Pepper's implementation-related work product.  *See supra*, Section II.C.  Second, this reasoning ignores the fact that Baylor—without Pepper's involvement (and even before hiring Pepper)—implemented a significant number of reforms to its Title IX policies and procedures that it will be relying on as a defense to the Jane Does' allegations, including Jane Doe 11.  *See* No. 6:17-cv-00228-RP, Dkt. 17 at 4-6; No. 6:17-cv-00236-RP, Dkt. 40 at 4-6.  Third, this reasoning, taken to its logical conclusion, would eviscerate the attorney client and work product privileges.  Take, for example, a typical employment discrimination case.  The defendant company is entitled to rely on its anti-harassment policies as part of its defense to plaintiff's claims but doing so does not waive its communications with counsel about the drafting and implementation of those policies.  The same principle holds true here.  While Baylor's policy reforms may be relevant to the question of whether Baylor had a policy of intentional discrimination that caused Jane Doe 11's assault in April 2017, neither Pepper's role in those reforms nor its conclusion that its 105 recommendations had, in fact, been implemented will be part of Baylor's defense at trial.

Nevertheless, the Magistrate Judge's Order concludes that Baylor's "refer[ence]" to Pepper's implementation efforts in Baylor's pleadings is enough, by itself, to support a finding of waiver.  Contrary to this conclusion, Baylor's mere references in its pleadings—as part of the undeniable factual backdrop of this case—that Pepper consulted with Baylor as it put in place a series of sexual assault response reforms does not place Pepper's implementation work product "at issue" for

purposes of waiver.  *See supra*, Section III (detailing Baylor's argument that mere references to Pepper's work in Jane Does 11-15's Answers does not equate to "at issue" waiver).  Likewise, the fact that Baylor directly *responded* to Jane Doe 11's *own* allegations—that she was subjected to a heightened risk under Baylor's *old* policies by pointing out in its Motion to Dismiss that Jane Doe 11's alleged assault did not take place until *after* Baylor's implementation of policy reforms does not equate to Baylor putting Pepper's work product implementation "at issue."  *See Mitre Sports Intern. Ltd. v. Home Box Office Inc.*, 304 F.R.D. 369, 373 (S.D.N.Y. 2015) (although plaintiff attached the product of its investigation to its complaint it did not put the investigation at issue); *see also Arent Fox*, 273 F. Supp. 3d at 518 ("that a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the privileged communication itself 'at issue' in the lawsuit; if that were the case, a privilege would have little effect").

**B.**     **The Order's reliance on the "advice of counsel" and *Faragher/Ellerth* affirmative defense cases to find waiver is misplaced.**

Like the Magistrate Judge's waiver finding as to the investigation, the Order relies primarily on the *Faragher/Ellerth* and "advice of counsel" affirmative defense line of cases to hold Baylor waived Pepper Hamilton's work product as to implementation as well.  But this line of cases is premised on the defendant's reliance on an internal investigation conducted by or with the advice of counsel as evidence that the defendant exercised reasonable care to address and resolve the plaintiff's specific complaint.  *See supra*, Section IV.C.3.  That is not the fact pattern here—where Baylor intends to rely on its *own* internal investigation and response to the Jane Does' sexual assault allegations (including Jane Doe 11) as evidence it acted with reasonable care—not the investigation or reforms of its law firm.  Indeed, Pepper's implementation efforts were not related in any way to, nor were they the result of, Jane Doe 11's specific allegations of assault.  Thus, these cases are simply inapposite.

V.     **Baylor objects to the erroneous factual findings regarding Baylor's alleged discovery history which undergird the waiver ruling.**

A.     **Baylor did not "hide the ball" in a sea of raw data.**

The Order criticizes Baylor for providing Plaintiffs with "a huge amount of [] raw data [that] was completely irrelevant to" Pepper's work, and it erroneously concludes that Baylor "refused to disclose" the documents that Pepper culled out of the raw data.  Dkt. 845 at 40.  Both statements are untrue.  First, Baylor produced "irrelevant" data because the Court ordered Baylor to produce everything exchanged between Baylor and Pepper, and the Court expressly stated that it would not entertain complaints about relevance.  Dkt. 168 at 19-20; *see* also Dkt. 93 at 8, 10 (Plaintiffs' First Motion to Compel); Dkt. 94-1 (Plaintiffs' RFPs).  Baylor explained at the time that Pepper had collected a huge volume of ESI from 52 laptops and 62 mobile devices and that most of the information had no connection to sexual assault.  Dkt. 104 at 1.  The Court ordered Baylor to produce all of the information unless Plaintiffs agreed to "smaller subset."  Dkt. 168 at 19.

Plaintiffs subsequently agreed that Baylor would produce only the "smaller" subset of materials actually reviewed by Pepper after Pepper applied ESI search terms.  Dkt. 173 at 2-3.  Although this agreement reduced the volume, millions of pages and text messages still needed to be produced, and the search terms still hit on irrelevant documents.  Dkts. 336-1 at ¶ 2, 622-1 at ¶ 2.  In short, Baylor did not dump on Plaintiffs the "raw data" *collected by* Pepper; it *did* produce the subset of documents *reviewed by* Pepper as ordered by this Court.  Despite this documented history, the Order states that Baylor "has been able to hide the ball" by burying relevant information.  That finding is based on Plaintiffs' false complaint that they need Pepper's work product to wade through the data they requested and is neither justified nor supported by the law.  Indeed, the law does not permit a party to ask for haystack and then complain about the difficulty of finding the needle in the haystack.  *See Nguyen*, 197 F.3d at 210–11 (discovery is "hardly intended to enable a learned profession to perform

its functions . . . on wits borrowed from the adversary") (quoting *Hickman v. Taylor*, 329 U.S. 495, 516 (1947)).

**B.      Baylor objects that the Order repeated Plaintiff's unsupported false narrative regarding Baylor's discovery conduct.**

The Magistrate Judge credited Plaintiffs' unsupported and demonstrably false and misleading assertion that Baylor did not update its privilege logs after this Court's August 2017 ruling regarding waiver of the attorney-client privilege as to Pepper's investigation.  The Magistrate Judge accepted, without evidence, Plaintiffs' assertion that Baylor "merely changed the designation of the basis for the claim of privilege from 'attorney-client' to 'work product.'"  Dkt. 845 at 8.  In May 2017, *prior* to the Court's first privilege ruling in August 2017, Baylor prepared a four-page privilege log regarding Pepper's materials that identified some documents specifically and others categorically.  Dkt. 113. *After* that ruling and the Court's subsequent ESI order (Dkt. 176), Baylor began producing documents and privilege logs pertaining to the millions of pages reviewed by Pepper.  *See* Dkt. 601-6 at 4-156 (attaching logs dated after Aug. 2017).  These logs were prepared after this Court's ruling and in compliance with it; Plaintiffs' representations to the contrary are false.[17]  Nor does the combined length of Baylor's logs evince wrongdoing.  In addition to the fact that Baylor was reviewing the internal files of its outside legal counsel, Pepper had collected the hard drives of two Office of General Counsel attorneys; therefore, Baylor had to review and log numerous privileged documents regarding unrelated matters.  *See* Dkt. 176 at 10-11 (listing Pepper custodians).[18]

---

[17]   To the extent the Court's subsequent rulings on other matters, such as Ketchum, impacted previously logged materials, Baylor promptly released those items in response to the Court's rulings.  *See*, *e.g.*, Dkt. 645.

[18]   The Magistrate Judge also erred in finding that Baylor failed "to comply with the Court's year-old order to produce" certain materials "which presumably number in the thousands or tens of thousands."  Dkt. 845 at 45.  Baylor acknowledged mis-reading the interaction of two orders.  Dkt. 837 at 69-70. The documents are all from the new time period (June 2016 to Nov. 2017).  The deadline for producing these materials was April 30, 2020, not a year ago.  Upon recognition of

### C.     Baylor objects to the finding that Baylor hid a draft report.

The Magistrate Judge credits Plaintiff's unsupported assertion that an email referencing a draft of the Regents' Findings of Fact is evidence that Baylor has hidden a written "report." Dkt. 845 at 4-5; *see also* Dkts. 618-3 and 622 at 10-11.  The record demonstrates that Baylor publicly released the Findings of Fact—indeed, they were an integral part of the Court's original waiver ruling.  Dkt. 168. Plaintiffs cannot feign surprise that there were preliminary drafts of the findings—**a fact disclosed on Baylor's original May 2017 privilege log**.  Dkt 113 at 3 (first entry).  Pepper's PowerPoint presentation was likewise disclosed in the May 2017 log, as were the tabbed and linked "briefing notebooks" Pepper used in the May 2 presentation that Leslie Gomez referred to in her statement to the Court. *See id.* at 1 (first, third, and fourth entries). These items were also logged in Baylor's later itemized logs of Pepper's work-product protected material.  *See* Dkt. 168 at 19 (allowing Baylor to withhold "presentations" and "data sources" for the findings).

### VI.     To the extent any waiver is upheld, Baylor objects to the failure to connect the scope of the waiver to the information found to be "at issue."

Baylor recognizes that the amount of discovery in this case increases the burden of *in camera* review and that the question of scope of any waiver presents unique challenges, especially given Plaintiffs' failure to "challenge the designation of any specific document or documents."  Dkt. 845 at 35. Plaintiffs' motion instead raised "a global argument that Baylor has waived work product protection as to a whole class of documents."[19]  Dkt. 845 at 35.  Nonetheless, the law requires the Magistrate Judge to issue "particularized findings explaining the connection" between the issue at

---

the misunderstanding at the May 5, 2020 hearing, Baylor promptly produced the (less than 1,000) documents.

[19]   For this reason, it made sense that the Judge stated at the hearing on the motion to compel that he wanted to reserve the question of the extent of any waiver and would seek additional assistance if needed.  Dkt. 837 at 71:18-25.

stake and the materials to be disclosed. *In re Grand Jury Proceedings*, 219 F.3d at 192 (citing *United States v. Nobles*, 422 U.S. 225, 239-40 (1975)).

Plaintiffs' waiver argument centers on (1) Baylor's references in one of its answers to its implementation of reforms after the investigation and (2) Plaintiffs' desire to probe the facts underpinning the investigative Findings. Dkt. 795. These also are central to the Magistrate Judge's analysis.[20] *See* Dkt. 845 at 26-30. Yet the scope of waiver goes far beyond this reasoning and requires production of documents with no connection to the material "at issue" under either theory.

### A.    The waiver finding as to implementation should not have been extended to Pepper's investigation.

To the extent the Magistrate Judge found, and this Court upholds, waiver based on Baylor's factual references to implementation of reforms in its pleadings in the *Jane Doe 11* case constitute reliance on Pepper's work product as to implementation, this does not justify expanding the scope of the waiver to include the *investigation*. In the Title VII employment cases cited in the Order, the question for the jury is retrospective: given what the employer learned during the investigation about the employee's complaint, was the employer's response reasonable? In that situation, the investigative findings and "the process of the investigation itself" are at issue. *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 319 (N.D. Ill. 2010). But here the inquiry would be forward-looking: whether the reforms created a "heightened risk" that caused injury to Jane Doe 11.[21] The results and quality of the prior investigation have no bearing on this question.

In other contexts, placing part of an investigation at issue does not trigger waiver of everything related to it. Thus, in *Nobles*, the respondent sought to adduce testimony of an investigator to contrast

---

[20]    The Magistrate Judge also mistakenly found that Baylor is relying on the Pepper investigation to defend against a claim of deliberate indifference. Because the record clearly shows this to be a factual error, Baylor does not address that reasoning here. The issue is discussed in sections II.A and III.B.1.a.

[21]    Baylor does not concede that it is pointing to Pepper's work product.

his recollection with that of a prosecution's witness.  The Supreme Court noted with approval the district court's decision to find waiver only as to the portion of the investigative report that related to the testimony the investigator would offer. *Nobles*, 422 U.S. at 240-41.

> **B.      The waiver finding cannot extend to Pepper work product that was never transmitted to Baylor.**

To the extent that the Magistrate Judge found, and this Court upholds, waiver based on a determination that Baylor has placed at issue what the Regents learned from Pepper, it was clear error to order production of material that was *never* transmitted to Baylor.  For example, "When a defendant asserts an advice of counsel defense, the defendant waives privilege as to . . . *communicated* work product regarding the subject matter of the [attorney's] opinion because such documents are evidence of a relevant and non-privileged fact, namely what the defendant knew" at the time of the allegedly illegal act. *Autobytel, Inc. v. Dealix Corp.*, 455 F.Supp.2d 569, 572 (E.D. Tex. 2006). But the Order does not limit the waiver to work product that was shared with Baylor.[22]

The error is even more apparent when it comes to *opinion* work product that was not shared with the Regents. "[C]ore work product must be afforded special protection when determining the scope of the waiver." *McGrath v. Nassau Cnty. Health Care Corp.*, 204 F.R.D. 240, 245 (E.D.N.Y. 2001) (citing *In re Grand Jury Proceedings*, 219 F.3d at 191–92).  In *Nguyen v. Excel Corp.*, 197 F.3d 200, 210 (5th Cir. 1999), the Fifth Circuit upheld a waiver ruling that allowed "inquiry into objective facts: what the client said, what counsel said, and when they said it," but it found inquiry into counsels' understanding of the defendant's perceptions or counsels' opinions "impermissible." *Id.* Disclosure of such information would "contravene[ ] the public policy underlying the orderly prosecution and defense of legal claims.'" *Id.* (quoting *Hickman* , 329 U.S. at 510, 511)); *see also In re Stone Energy Corp.*, 2008 WL

---

[22]   While the Order states that Baylor need not produce Peppers' internal communications, it does not limit other categories, such as witness interview summaries or chronologies, to information shared with Baylor.

4868086, at *4, *6 (W.D. La. Nov. 4, 2008) (imposing similar limitations when a party had previously disclosed investigative work product to the SEC; "the memoranda summarizing witness interviews in the [investigating attorneys'] materials must be protected from discover[y]."); *see also S.E.C. v. Brady,* 238 F.R.D. 429, 442 (N.D. Tex. 2006).[23]

## VII.   Baylor objects to the Court's denial of its motion for leave to amend the Jane Doe 11 answer as clearly erroneous.

"Under the liberal pleading presumption" a district court's discretion to deny leave to amend "may be misleading, because Rule 15(a) evinces a bias *in favor* of granting leave to amend." *Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) (quoting Fed. R. Civ. P. 15(a)). Although leave to amend is not automatic, the court must possess a "substantial reason" to deny leave. *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)). Absent a substantial reason—such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party—"the discretion of the district court is not broad enough to permit denial." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal." *N. Cypress Med. Ctr.*, 898 F.3d 461 at 478 (quoting *Mayeaux*, 376 F.3d at 426.). Here, the Order fails to provide an adequate explanation of any "substantial reason" for denying Baylor leave to amend.

---

[23]   The Order seems to suggest that work product that contains attorney's summaries of fact are "fact," not "opinion," work product. But not all materials prepared by an attorney in anticipation of litigation that contain facts relevant to the litigation are necessarily "fact work product." The selection or highlighting of facts may qualify as "opinion work product," including notes and memoranda created by an attorney regarding witness interviews. *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). These types of summaries "are 'suffused' with the investigator's mental impressions and conclusions." *SEC*, 238 F.R.D. at 442.

### A.    Baylor's amendment is not futile.

The Order denies Baylor leave to amend because it finds the amendment would be "futile." Dkt. 845 at 47.  Generally, a motion for leave to amend may be denied on the basis of "futility" where the *plaintiff's* pleading, as amended, would fail to survive a motion to dismiss.  *N. Cypress Med. Ctr.*, 898 F.3d 461 at 478.  The Magistrate Judge adopts that language here, finding that the amendment, removing references to Pepper Hamilton's investigation and implementation, would not change the outcome of his decision on waiver and can therefore be a basis for his denial.  But this circular logic is clearly in error because the Magistrate Judge's decision on waiver is based, in large part, on the very portions of Jane Doe 11's answer Baylor sought to remove.  Dkt. 845 at 23-24.  Baylor's amendment cannot be futile when the Magistrate Judge's Order quotes Baylor's original language in support of his waiver finding.

Moreover, the two cases cited in the Order to support the futility finding are out of circuit and readily distinguishable. *See* Dkt. 845 at 46-47, citing *Inmuno Vital, Inc. v. Telemundo Grp., Inc.*, 203 F.R.D. 561 (S.D. Fla. 2001) and *Doe v. USD No. 237*, No. 16-2801, 2019 WL 3996413, 2019 U.S. Dist. LEXIS 144107 (D. Kan. Aug. 23, 2019).

In *Inmuno* the Court denied the defendants' motion for leave to *add* the "advice of counsel" defense after defendant intentionally limited the discovery of legal advice rendered on the disputed issue to its general counsel, refusing to disclose outside counsel's advice on the same topic. 203 F.R.D. at 564.  The Court denied defendants' motion for leave because: (i) additional discovery to cure any undue prejudice to plaintiff as a result of the amendment was "not a viable option given the proximity of trial," and (ii) the defendant pointed to no case law credibly supporting the position that waiver of the privilege was "limited to the counsel and advice of defendants' choosing."  *Id.*  None of the facts in *Inmuno* supporting denial of leave to amend—particularly undue prejudice resulting from the close proximity to trial—are analogous to the circumstances in this case.

34

In *Doe v. USD No. 237,* the Court denied the defendants' attempt to withdraw their "advice of counsel" defense after finding waiver of the internal investigation conducted by counsel in response to the plaintiff's allegations of sexual harassment.  As an initial matter, Baylor has never asserted "advice of counsel" as an affirmative defense in any of the Jane Doe cases.  Thus, there is no "advice of counsel" defense (or any other affirmative defense) for Baylor to withdraw.

Even if Baylor had asserted an "advice of counsel defense," however, *Doe v. USD 237* would still be distinguishable.  There, unlike Baylor, the defendant failed to request leave to amend its pleading to remove its "advice of counsel" defense, as explicitly ordered by the Court.  2019 U.S. Dist. LEXIS 144107 at *4.  Instead, the defendant attempted to generally withdraw its "advice of counsel" defense in a response brief, while simultaneously relying on a written reprimand that "*spell[ed] out the details of the investigation*" at issue as evidence the school district did not act with deliberate indifference in its summary judgment briefing and pre-trial order.  *Id.* at *14.  Thus, like *Inmuno,* the set of facts that led the Court in *Doe v. USD No. 237* to deny defendant's withdrawal of its "advice of counsel" defense are inapposite to the facts presented here.

### B.    Baylor's amendment is not contrary to the interests of justice.

The Order also found that Baylor's amendment would prejudice plaintiffs because Baylor is attempting to change its defense "four years into the case."  Dkt. 845 at 47.  But the parties are not four years into Jane Doe 11's case.  While the Jane Doe 11 matter was consolidated with an older case, Baylor's Original Answer to Jane Doe 11's Complaint was filed on January 25, 2019.  And it was not until February 11, 2020, that Plaintiffs alleged Baylor's Answer invoked Pepper's investigation and implementation as a defense.  Out of an abundance of caution, Baylor sought leave to amend, clarifying that it has no intention of relying on the Pepper Hamilton investigation or implementation as an "advice of counsel" defense in Jane Doe 11's case.  Baylor has not and will not invoke the Pepper Hamilton investigation or its implementation as a part of its substantive defense.

35

The Order states that it is "too late" for Baylor to withdraw the references to Pepper Hamilton in its Answer (Dkt. 845 at 47), but the Jane Doe 11 matter is early in the discovery process.  No depositions have been taken, and no experts have been designated.  No prejudice will result from allowing Baylor to amend its answer at this stage of the litigation.

In sum, Baylor is the master of its own defense.  That is why in the Fifth Circuit it is an abuse of discretion to deny leave to amend absent a showing of "substantial reason."  But that showing was not made here.  Indeed, in one of the few Fifth Circuit cases heavily relied on by the Magistrate Judge to support the waiver finding, *Edwards*, the Court explicitly stated that "in light of [its] ruling" that defendant's good faith defense waived the attorney client privilege, the defendant "may elect to withdraw its good faith defense, in which case the privilege would still attach."  2015 WL 4430998 at *3.  Baylor should be granted the same relief here.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By:      /s/ *Lisa A. Brown*
       Lisa A. Brown
       State Bar of Texas No. 03151470
       lbrown@thompsonhorton.com
       Ryan H. Newman
       State Bar of Texas No. 24059944
       rnewman@thompsonhorton.com
       Phoenix Tower, Suite 2000
       3200 Southwest Freeway
       Houston, Texas  77027-7554
       (713) 554-6741 (telephone)
       (713) 583-7934 (fax)

       Holly G. McIntush
       State Bar of Texas No. 24065721
       hmcintush@thompsonhorton.com
       8300 N. MoPac Expressway, Suite 220
       Austin, TX 78759
       (512) 615-2350 (telephone)
       (512) 682-8860 (facsimile )

       **WEISBART SPRINGER HAYES LLP**

       Julie A. Springer
       State Bar of Texas No. 18966770
       jspringer@wshllp.com
       Sara E. Janes
       State Bar of Texas No. 24056551
       sjanes@wshllp.com
       Geoff Weisbart
       State Bar of Texas No. 21102645
       gweisbart@wshllp.com
       Mia A. Storm
       State Bar of Texas No. 24078121
       mstorm@wshllp.com
       212 Lavaca Street, Suite 200
       Austin, Texas  78701
       (512) 652-5780
       (512) 682-2074 (facsimile)

       **COUNSEL FOR DEFENDANT**
       **BAYLOR UNIVERSITY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon all counsel of record on June 16, 2020, via the Court's ECF/CMF electronic service system as follows:

Mr. Chad W. Dunn                         *Via ECF:  chad@brazilanddunn.com*
BRAZIL & DUNN, L.L.P.
4407 Bee Caves Road, Suite 111
Austin, Texas  78746

Mr. Jim Dunnam                           *Via ECF:  jimdunnam@dunnamlaw.com*
Ms. Eleeza Johnson                       *Via ECF:  eleezajohnson@dunnamlaw.com*
DUNNAM & DUNNAM, L.L.P.
4125 West Waco Drive
Waco, Texas  76710
P. O. Box 8418
Waco, Texas  76714-8418

Ms. Laura Benitez Geisler                *Via email: lgeisler@textrial.com*
Mr. Sean J. McCaffity                    *Via email: smcaffity@textrial.com*
Ms. Jody L. Rodenberg                    *Via email: jrodenberg@textrial.com*
Ms. Alexandria Risinger                  *Via email: arisinger@textrial.com*
Mr. George (Tex) Quesada                 *Via email:  quesada@textrial.com*
SOMMERMAN, MCCAFFITY,
 QUESADA & GEISLER, LLP
3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas 75219-4461

*/s/ Lisa A. Brown*

38