IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| JANE DOE 1, *et al*,<br><br>    Plaintiffs,<br><br>v.<br><br>BAYLOR UNIVERSITY,<br><br>    Defendant. | § <br>§ Civil Action No. 6:16-CV-00173-RP<br>§<br>§<br>§ *Consolidated with*<br>§ 6:17-CV-228-RP-AWA<br>§ 6:17-CV-236-RP-AWA<br>§<br>§ |

### BAYLOR UNIVERSITY'S OPPOSED MOTION FOR SEPARATE TRIALS

**WEISBART SPRINGER HAYES LLP**

Julie A. Springer
State Bar of Texas No. 18966770
jspringer@wshllp.com
Sara E. Janes
State Bar of Texas No. 24056551
sjanes@wshllp.com
Geoff Weisbart
State Bar of Texas No. 21102645
gweisbart@wshllp.com
Mia H. Storm
State Bar No. 24078121
mstorm@wshllp.com
212 Lavaca Street, Suite 200
Austin, Texas  78701
(512) 652- 5780 (telephone)
(512) 682-2074 (fax)

**THOMPSON & HORTON LLP**

/s/ *Lisa A. Brown*
Lisa A. Brown
State Bar of Texas No. 03151470
lbrown@thompsonhorton.com
Ryan H. Newman
State Bar of Texas No. 24059944
rnewman@thompsonhorton.com
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027-7554
(713) 554-6741 (telephone)
(713) 583-7934 (fax)

Holly G. McIntush
State Bar of Texas No. 24065721
hmcintush@thompsonhorton.com
8300 N. MoPac Expressway, Suite 220
Austin, TX 78759
(512) 615-2351 (telephone)
(512) 682-8860 (fax)

**COUNSEL FOR DEFENDANT
BAYLOR UNIVERSITY**

0

TO THE JUDGE OF THE HONORABLE COURT:

      Baylor University moves for separate trials as follows:

**I.**      **<u>Introduction</u>**

      Plaintiffs are former Baylor students who seek damages from Baylor based on the allegation that they were sexually assaulted by different male students at different times while attending Baylor University between 2004 and 2017. Plaintiffs' claims involve clearly distinct occurrences across a thirteen-year time span – claims so distinct that their disclosures collectively identify more than 75 student witnesses alone. Plaintiffs' heightened risk claims will require a highly individualized assessment of whether Plaintiffs were assaulted and whether Baylor's policies at the time in question caused the alleged assaults. Plaintiffs' post-assault claims will require a highly individualized assessment of what information was reported to Baylor and how Baylor responded to that information. Separate trials are necessary to minimize prejudice to Baylor and avoid the risk that the jury would find in favor of one plaintiff based on anecdotal evidence that is not relevant to that plaintiff's claims.

      In addition to factual differences, there are legal differences that will impact the trials. According to this Court, Department of Education guidance is relevant when determining the appropriateness of Baylor's response to a specific report of assault. Dkt. 78 at 13. However, federal law and agency guidance applicable to a university's obligations under Title IX changed markedly between 2004 and 2017. Because changes in federal guidance cannot apply retroactively, *see Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 654 (5th Cir. 1997), Baylor's response to past assaults must be evaluated in light of federal guidance *then* in existence, which means, for example, that a claim from 2004 will be evaluated differently from a claim from 2014. Given the complex and numerous factual scenarios, the risk of juror confusion and unfair inferences against Baylor is enormous, even with limiting instructions. These dangers strongly favor separate trials.

Finally, decisions on separate trials frequently are made after summary judgment or late in the discovery period when the record is better developed, which helps identify the issues for trial. *See, e.g., Content Guard Holdings Inc. v. Amazon Inc.*, No. 2:13-CV-1112-JRG, 2015 WL 1263346, *9 (E.D. Tex., March 19, 2015) (deferring decision until after the close of expert discovery when "the case should be substantially narrowed and the theories of the case will be fully determined"). Baylor's proposal for separate trials is listed on page 10. While a start date for the initial trial can and should be established now, a final decision on sequencing may be deferred until motions for summary judgment are on file and the cases are closer to being ready for trial. Whether or not summary judgment is granted in part, in full, or not at all, the motions will aid the Court in determining what claims are left to be tried, sequencing, possible combinations, and trial length.

## II.    Standard of Review and Procedural History Related to the Question of Separate Trials

*Standard of Review*.   Federal Rule of Procedure 42(b) provides that a court may order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 773 (5th Cir. 2009). Whether to conduct separate trials is "a matter left to the sound discretion of the trial court on the basis of circumstances of the litigation before it." *Id.* at 774. Factors to consider include: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the posture of discovery suggests that certain claims should not be tried jointly; (3) whether the claims present common questions of fact or law; (4) whether the claims will require testimony of different witnesses and documentary proof; and (5) the prejudice to either party in the event separate trials are ordered. *Thompson v. Sanderson Farms Inc.*, 2006 WL 2559852, *3 (S.D. Miss., Sept. 1, 2006).

*Procedural History.*   Plaintiffs filed three separate lawsuits alleging that that they were sexually assaulted by different male students in separate incidents. No. 6:16-CV-00173-RP, Dkt. 56 ["Case 1"]; No. 6:17-CV-00228-RP, Dkt. 17 ["Case 2"]; No. 6:17-CV-00236-RP, Dkt. 40 ["Case 3"].

2

In 2016, when Case 1 had six plaintiffs, Plaintiffs moved to add Does 7, 8, 9, and 10 as party plaintiffs. Dkt. 33. Baylor opposed that motion and filed a separate motion to sever under Rule 20. Dkt. 36 & 38. The Court denied Baylor's motion without prejudice and granted Plaintiffs' motion to amend. Dkt. 54 & 55. At a subsequent scheduling conference in Case 1, the Court and parties discussed separate trials, with Plaintiffs' counsel stating that they "might not be arguing" against it, provided the trials were "back to back, boom boom boom or relatively back to back." Case 1, Dkt. 431 at 21:1-17 and 22:22-24. The Court stated that it might be possible "to either do the first of many, or some combination of [plaintiffs]; and, you know, it could all be resolved by then for all we know." *Id.* at 23:6-10. The Court's most recent scheduling order stated that the Court will "entertain argument regarding the structure of the trial(s) at a later date." Dkt. 312. In February 2019, the three lawsuits were consolidated for discovery purposes only.

III.   **Factual Background**

Plaintiffs have identified more than 550 witnesses, including 75+ students and 70+ psychologists and other health professionals. *See* Ex. A (Pls' Disclosures). Following Plaintiffs' alleged assaults, they interacted with numerous Baylor employees, including professors, deans, student conduct administrators, police officers, Title IX investigators, human resources officials, residence hall directors, financial aid administrators, university presidents, and others. Ex. B (Baylor's responses to Plaintiffs' interrogatories, item no. 3). Exhibit C provides a snapshot of basic facts showing the highly individualized nature of Plaintiffs' claims.[1]   For example:

- Doe 9 alleges an off-campus rape in 2014. City of Waco police records state that the "case was very weak and had issues of implied consent" and that Doe 9's outcry witness "did not believe her." Ex. C-9. When the Waco detective shared these concerns with Doe 9, Doe 9 identified a new outcry witness, which the Waco detective stated she had never seen happen before. *Id.* Baylor's Title IX Office separately investigated, but Doe 9 declined to participate in the adjudication. *Id.*

---

[1] Exhibit C does not purport to provide a comprehensive review of the facts related to each claim, and Baylor acknowledges that some facts, including consent, are disputed.

3

- Doe 10 reported that she and the respondent were good friends and they sometimes slept in the same bed together platonically.  Exh. C-10.  In February 2016, the respondent allegedly attempted to have sex while Doe 10 was asleep.  The allegations were investigated. The Title IX adjudicator found that the "great trust and demonstrative friendship between the parties over a long period of time" made the case "not easily resolved." *Id.*  However, based on the "totality of the circumstances," the adjudicator was unable to find by a preponderance of the evidence that nonconsensual contact occurred.

- Doe 1 alleges that she was assaulted in 2014 after a private party at a university-owned apartment.  Ex. C-1.  She told a Baylor psychologist and nurse.  *Id.*  They told Doe 1 about reporting options.  *Id.*  She did not report the incident.

- Doe 2 alleges that she was assaulted in September 2004 at a private off-campus party.  Ex. C-2.  She told a friend who told a university chaplain and the dorm director, who called Baylor police.  The 2004 police report states that Doe 2 declined to identify the alleged assailant.  *Id.*

- Doe 7 alleges that she was sexually assaulted in May 2009 in Austin, Texas where she attended a private party with friends.  She reported the alleged assaults (one by a Baylor student and one by a former Baylor student) to the Austin Police Department.  A Travis County grand jury no-billed the alleged assailants.  Ex. C-7.

- Doe 12 alleged that, in March 2016, during a spring break trip to South Padre Island, she slept in a hotel room bed with a student she previously had casually dated and that he put his hands in her shorts without her consent.  Ex. C-12.  The male student was found responsible and was later suspended.  Case 3, Dkt. 14, ¶ 70.  Doe 12's lawsuit alleges that she was "rape[d]" and that Baylor was deliberately indifferent. *Id.*, ¶¶ 69, 178.

- Doe 11 alleges that she was sexually assaulted in April 2017 at a private, off-campus house.  Ex. C-11.  The alleged assault occurred after Baylor published an updated Title IX policy.  Baylor's Title IX office was notified of the alleged assault by the Baylor Police Department. *Id.*  The Title IX Office investigated, and the respondent was found not responsible on the ground that a reasonable person in his position would not have known that Doe 11 was too incapacitated to consent.  *Id.*

Should Plaintiffs' claims survive summary judgment, substantial time at trial will be spent on a fact-intensive examination of the underlying incidents, including the cause of the alleged assaults and the reasonableness of Baylor's response once the incidents were reported.[2]

---

[2] Baylor will seek summary judgment on a variety of grounds *not* related to the merits of the assault allegations. For example, Baylor will move for summary judgment because some of the claims are barred by the statute of limitations and because some of the incidents – including those in Austin and South Padre Island – did not occur in a "program or activity" of Baylor University. *See generally Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645 (1999).

4

IV. **Argument and Authorities**

   A. **Separate trials are needed because Plaintiffs' claims arise out of separate occurrences that will require a fact-intensive examination of whether each assault occurred and whether Baylor proximately caused them.**

Plaintiffs' specific incidents are unrelated to one another and involve no common facts. Exh. C. The alleged assailants are different, and each plaintiff's interactions with Baylor staff related to the individual circumstances of her own alleged assault. *See* Ex. B (Baylor's responses to interrog. no. 3). Likewise, all Plaintiffs claim individualized harm, including psychological harm or distress. Case 1, Dkt. 56, ¶¶ 48, 49, 103, 120, 136-43, 175, 187, 209, 231, 243-45, 261, 270; Case 2, Dkt. 1, ¶ 93; Case 3, Dkt. 14, ¶ 76, 93, 97, 102, 132, 172-73. Even basic documentary evidence, such as relevant Baylor policies and student handbooks, will differ between 2004 and 2017 and will require different witnesses depending on the date of the alleged assault. Likewise, the policymakers and leadership of Baylor changed over time, with seven individuals serving as president or interim president, 41 individuals serving on the Executive Council (senior administrative team), and more than 80 people serving as regents. Ex. D, ¶¶ 4-5. Each Plaintiff's claim presents a factually different scenario that will require individualized factual development.

In employment cases involving multiple plaintiffs, claims are routinely tried separately or severed. *See, e.g.*, *Cruz v. Bristol-Myers Squibb Co., PR*, 699 F.3d 563, 569 (1st Cir. 2012) (severance was proper where "each appellant lost his job under different circumstances"); *McDowell v. Morgan Stanley & Co., Inc.*, 645 F.Supp.2d 690, 692, 695-96 (N.D. Ill. 2009) (severing discrimination claims of four employees despite allegation of "a company-wide discriminatory policy"; because the alleged discriminatory conduct "was rooted in individual decisions, made by different supervisors, at different times, and in four different offices," each plaintiff would have separate witnesses and documentary evidence, risking jury confusion and substantial prejudice to the defendant); *Culpepper v. Deere & Co.*, No. C13-2019, 2013 WL 3872169, at *5 (N.D. Iowa, July 25, 2013) (granting four separate trials where

5

plaintiffs held different jobs in different departments and worked under different supervisors).

Thus, in *Thompson v. Sanderson Farms Inc.*, 2006 WL 2559852 (S.D. Miss., Sept. 1, 2006), the court granted separate trials despite the claim that the defendant had "a company-wide policy of racial discrimination." The court ordered separate trials and denied plaintiffs' request for rejoinder of claims that previously had been severed:

> [T]he plaintiffs' claims of race-based discrimination do not arise out of the same transaction or occurrence; instead, each claim is predicated on a separate and discrete employment decision, which was made by one of several different supervisors, over a three-year period of time, and under different circumstances. Additionally, the Court finds that the plaintiffs' allegation that all of the claimed employment decisions were ultimately made by the SFI Executive Committee does not establish a "common transaction" for the purpose of permissive joinder under Rule 20(a).

*Id.* at *2-3. The court found that separate trials would spare the jury of the "hopeless task of trying to discern who did what and said what to whom and for what reason." *Id.* at *5 (citation omitted). And it would eliminate the risk that the jury would find in favor of one plaintiff "based on the anecdotal evidence presented by other plaintiffs." *Id.*

Here, Plaintiffs share a common defendant, but the claims themselves are unrelated. The facts are far different from *Alaniz*, in which the Fifth Circuit upheld the denial of separate trials where the allegations of discrimination involved "the same *modus operandi*" and "a similar series of transactions" that were committed *by the same doctor* "over a relatively short time span." *Alaniz*, 591 F.3d at 773. The lack of close temporal proximity of Plaintiffs' 15 incidents also favors separate trials. *Compare Richards v. Office of Violent Sex Offender Management*, C.A. No. H-13-1394, 2014 WL 1158993, *6 (S.D. Tex., March 21, 2014) (granting separate trials in case involving ten plaintiffs where the plaintiffs' experiences occurred across a span of more than nine years) *with Johnson v. BAE Sys. Land & Armaments, L.P.*, 2014 WL 1714487, at *36 (N.D. Tex. Apr. 30, 2014) (severance improper where plaintiffs were terminated in the same reduction in force, on the same day, by the same person).

6

Plaintiffs have suggested that, as to their heightened risk claims, a single trial is appropriate and that it would be unnecessary for them to have to individually establish that they were sexually assaulted or that Baylor caused the alleged assaults. Plaintiffs are incorrect on both accounts. Causation and injury are essential elements of their claims for damages. *See* 20 U.S.C. § 1681(a) ("[n]o person in the United States shall, on the basis of sex ... be *subjected to discrimination* under any education program or activity receiving [federal funding]") (emphasis added). "If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment." *Davis*, 526 U.S. at 644; *see also Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019) (a school is liable only if its deliberate indifference "effectively 'cause[d]' the discrimination") (alteration in original); *Karasek v. Regents of Univ. of Calif.*, 948 F.3d 1150, 1112 (9th Cir. 2020) (plaintiff in a pre-assault case must show that the plaintiff suffered harassment "**as a result**" of "a policy of deliberate indifference . . . which created a heightened risk of sexual harassment that was known or obvious") (emphasis added); *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 618 (6th Cir. 2019) (student-victim must show that the school's deliberate indifference "resulted in further actionable sexual harassment against the student-victim, which caused the Title IX injuries");

This Court previously held the Plaintiffs must establish that they were injured and that Baylor caused the injuries. *See* Dkt. 78 at 15 (stating that plaintiffs must prove that Baylor's alleged policy or custom "inflicted the injury of which the plaintiffs complain") (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) and *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992)). Under *Bryan County*, the plaintiff must show that the policymaker acted with "deliberate difference" and that the custom or policy was the "moving force" behind the violation. *See Bryan Cnty.*, 520 U.S. at 415. There must be "a direct causal link" between the policy and the injury, which means that the violation was the "plainly obvious consequence" of the policymaker's decision. *Id.*; *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (citations omitted).

7

Juror confusion and substantial prejudice will occur if all 15 claims are tried together by blurring the lines between the distinct periods of time and occurrences between 2004 and 2017, inappropriately allowing alleged policies in one time frame to influence the evaluation of other time frames, and creating the risk that the jury would find in favor of one plaintiff based on the anecdotal evidence presented by other plaintiffs.  Finally, a single trial for all 15 plaintiffs would unfairly put the imprimatur of court approval on Plaintiffs' theory that the alleged assaults in fact are part of the same occurrence and that Baylor deliberately maintained a policy that sanctioned rape for 13 years.  A single trial will create a prejudicial and insurmountable hurdle for Baylor University.

**B. Changes in federal guidance between 2004 and 2017, combined with Plaintiffs' individualized burden on causation, support separate trials.**

Baylor's legal obligations changed between 2004 and 2017, which creates a substantial risk of confusion as jurors evaluate Baylor's conduct during different periods.  Exhibit E provides a timeline that shows the general evolution of the law regarding campus sexual assault, starting with an informal "Dear Colleague" letter by the U.S. Department of Education (DOE) in 2011.  Plaintiffs' complaints cite this 2011 guidance to define Baylor's obligations despite the fact that this guidance did not even exist when Does 2, 5, 6, and 7 allegedly were assaulted.  *See* Case 1, Dkt. 56 at 22; Case 3, Dkt. 35 at 29.  In fact, prior to that guidance, DOE had opined that Title IX did not impose responsibilities for off-campus sexual assaults that did not take place within a university program or activity.  *See, e.g.,* Exhibit F, U.S. Dep't of Educ., Resolution Letter to Oklahoma State Univ., June 10, 2004, p. 2 (although the university learned of an alleged off-campus rape by four football players, a university "does not have a duty under Title IX to address an incident of alleged harassment where the incident occurs off-campus and does not involve a program or activity of the recipient"). Against this backdrop, trying all of the claims together will inevitably lead to juror confusion and prejudice Baylor in its defense.  If the handling of older claims was compliant with Title IX guidance *then* in existence, the more rigorous standards applicable to subsequent school years will color consideration of the older

8

claims. "[I]t is precisely the need to focus the jury's attention on the merits of each individual plaintiff's case that counsels against proceeding with these cases in one consolidated trial. There is a tremendous danger that one or two plaintiff's unique circumstances could bias the jury against the defendant generally, thus, prejudicing defendant with respect to the other plaintiff's claims." *Ulysse v. Waste Mgmt. Inc.*, C.A. No. 11-CV-80723, 2013 WL 11327137, *4 (S.D. Fla., Sept. 13, 2013).

Properly defining Baylor's legal obligations is essential to avoid the imposition of liability for policies or customs that caused no injury. *See, e.g., Boyd v. City of Houston*, 548 F. App'x 100, 104 (5th Cir., Nov. 26, 2013) (overturning verdict due to overly broad jury instruction on "policy"). Jury questions must be finely tuned to the period of time preceding the plaintiff's alleged injury. *See, e.g., Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 760 (5th Cir. 1993) (jury was asked whether the school district "<u>between January of 1985 and March of 1987</u>" maintained a custom or policy that authorized or condoned sexual abuse of students by teachers); *see also Carnaby v. City of Hous.*, 636 F.3d 183, 190 (5th Cir. 2011) (because it was undisputed that the city changed its policies and provided training regarding use of force in 2004, the incidents occurring before 2004 under the prior policies were "irrelevant"). In this case, the jury ultimately will be asked whether an official policy or custom existed; whether the policymaker knew or should have known about the policy or custom; whether the policymaker was deliberately indifferent; and whether the policy or custom was the "moving force" leading to plaintiff's injury, if any. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil Cases) § 10.5 (revised 2016). However, the plaintiff must do more than just show that the policymaker was aware of the custom; the "[r]elevant inquiry" is whether the entity was aware of the custom *and* was deliberately indifferent to the risk that the custom would cause the violation. *Boyd,* 548 F. App'x at 104. "[A]bsent proof of deliberate indifference," the entity "cannot be held liable for its employees' actions" even when the "actions are alleged to be due to its custom." *Id.* Separate trials are necessary

9

to ensure that the jury is appropriately focused on the policies that actually affected each plaintiff's individual experience rather than on events in the distant past or long after the fact.

### C.       Baylor's proposals for separate trial

Baylor proposes that the four oldest cases from Case 1 be set for trial in June 2021.  These cases lack a post-assault claim[3]; all arose before the DOE's 2011 Dear Colleague Letter; the volume of evidence is smaller than in later time periods; and the cases are unaffected by any discovery disputes relating to Pepper Hamilton because Pepper Hamilton did not investigate the earlier time period. Although Baylor believes that separate trials are warranted, the Court may wish to consider deferring a final decision on sequencing until summary judgment.  These four cases can be trial ready in fairly short order following the discovery deadline.

Baylor proposes that the remaining cases from Case 1 and the cases from Case 3 be set for trial in September 2021, with the Case 1 claims being tried first.  Again, while Baylor believes that separate trials are critical given the distinct facts and temporal spread, the Court can make that decision—as well as any potential decision on trial groupings—after summary judgment. Finally, Case 2 (Jane Doe 11) should be set for a date at the first available trial setting after September 2021.  This is the only case with an alleged rape after 2016, and her claim was governed by a different Title IX policy that did not apply to any other Jane Doe.

## CONCLUSION

For the foregoing reasons, the Defendant prays that the Court will grant this motion and order separate trials for each plaintiff as proposed above.

---

[3] The post-assault claims of Does 2, 5, 6, 7, and 13 were previously dismissed based on limitations. Case 1, Dkt. 78 at 20; Case 3, Dkt. 35 at 29.

to ensure that the jury is appropriately focused on the policies that actually affected each plaintiff's individual experience rather than on events in the distant past or long after the fact.

### C.       Baylor's proposals for separate trial

Baylor proposes that the four oldest cases from Case 1 be set for trial in June 2021.  These cases lack a post-assault claim[3]; all arose before the DOE's 2011 Dear Colleague Letter; the volume of evidence is smaller than in later time periods; and the cases are unaffected by any discovery disputes relating to Pepper Hamilton because Pepper Hamilton did not investigate the earlier time period. Although Baylor believes that separate trials are warranted, the Court may wish to consider deferring a final decision on sequencing until summary judgment.  These four cases can be trial ready in fairly short order following the discovery deadline.

Baylor proposes that the remaining cases from Case 1 and the cases from Case 3 be set for trial in September 2021, with the Case 1 claims being tried first.  Again, while Baylor believes that separate trials are critical given the distinct facts and temporal spread, the Court can make that decision—as well as any potential decision on trial groupings—after summary judgment. Finally, Case 2 (Jane Doe 11) should be set for a date at the first available trial setting after September 2021.  This is the only case with an alleged rape after 2016, and her claim was governed by a different Title IX policy that did not apply to any other Jane Doe.

## CONCLUSION

For the foregoing reasons, the Defendant prays that the Court will grant this motion and order separate trials for each plaintiff as proposed above.

---

[3] The post-assault claims of Does 2, 5, 6, 7, and 13 were previously dismissed based on limitations. Case 1, Dkt. 78 at 20; Case 3, Dkt. 35 at 29.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By:     /s/ *Lisa A. Brown*
      Lisa A. Brown

State Bar of Texas No. 03151470
lbrown@thompsonhorton.com
Ryan H. Newman
State Bar of Texas No. 24059944
rnewman@thompsonhorton.com
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027-7554
(713) 554-6741 (telephone)
(713) 583-7934 (fax)

Holly G. McIntush
State Bar of Texas No. 24065721
hmcintush@thompsonhorton.com
8300 N. MoPac Expressway, Suite 220
Austin, TX 78759
**(512) 615-2350** (telephone)
(512) 682-8860 (facsimile)

**WEISBART SPRINGER HAYES LLP**

Julie A. Springer
State Bar of Texas No. 18966770
jspringer@wshllp.com
Sara E. Janes
State Bar of Texas No. 24056551
sjanes@wshllp.com
Geoff Weisbart
State Bar of Texas No. 21102645
gweisbart@wshllp.com
Mia A. Storm
State Bar of Texas No. 24078121
mstorm@wshllp.com
212 Lavaca Street, Suite 200
Austin, Texas 78701
(512) 652-5780
(512) 682-2074 (facsimile)

**COUNSEL FOR DEFENDANT**

**BAYLOR UNIVERSITY**

**CERTIFICATE OF CONFERENCE**

As indicated on the record at the scheduling conference on June 11, 2020, the parties conferred prior to the conference regarding their respective positions and were unable to reach an agreement regarding how the cases should be tried. During the scheduling conference, Plaintiffs' counsel stated a preference for a single trial on heightened risk, which Baylor continues to oppose.

/s/ *Lisa A. Brown*
Lisa A. Brown

**CERTIFICATE OF SERVICE**

   I hereby certify that a true and correct copy of the foregoing pleading was served upon all counsel of record on June 26, 2020, via the Court's ECF/CMF electronic service system as follows:

| | |
|---|---|
| Mr. Chad W. Dunn<br>BRAZIL & DUNN, L.L.P.<br>4407 Bee Caves Road, Suite 111<br>Austin, Texas  78746 | *Via ECF: chad@brazilanddunn.com* |
| Mr. Jim Dunnam<br>Ms. Eleeza Johnson<br>DUNNAM & DUNNAM, L.L.P.<br>4125 West Waco Drive<br>Waco, Texas  76710<br>P. O. Box 8418<br>Waco, Texas  76714-8418 | *Via ECF: jimdunnam@dunnamlaw.com*<br>*Via ECF: eleezajohnson@dunnamlaw.com* |
| Ms. Laura Benitez Geisler<br>Tex Quesada<br>Sean McCaffity<br>SOMMERMAN, MCCAFFITY,<br> QUESADA & GEISLER, LLP<br>3811 Turtle Creek Boulevard, Suite 1400<br>Dallas, Texas 75219-4461 | *Via email: lgeisler@textrial.com*<br>*Via email:  quesada@textrial.com*<br>*Via email: smcaffity@textrial.com* |

                */s/ Lisa A. Brown*
                Lisa A. Brown

4837-7596-0769

13