# SOMMERMAN, McCAFFITY, QUESADA & GEISLER
### ATTORNEYS & COUNSELORS

3811 TURTLE CREEK BOULEVARD, SUITE 1400
DALLAS, TEXAS 75219

TELEPHONE   214-720-0720
                       817-509-0131
TOLL FREE   800-900-5373
TELECOPIER 214-720-0184
personalinjury@textrial.com
www.textrial.com

*ANDREW B. SOMMERMAN †
SEAN J. McCAFFITY
GEORGE (TEX) QUESADA ††
LAURA BENITEZ GEISLER
JODY L. RODENBERG
ALEXANDRIA RISINGER
REBECCA NEUMANN

*AL ELLIS†**▲
Of Counsel

*Board Certified in Personal Injury Trial Law
**Board Certified in Civil Trial Law
▲ Certified Civil Trial Advocate:
National Board of Trial Advocacy
† College of the State Bar of Texas
†† Licensed in Texas and New Mexico

August 7, 2020

U.S. Magistrate Judge Andrew W. Austin
501 West 5th Street, Suite 4190
Austin, TX 78707

      Re: *Jane Doe 1-10 v. Baylor University*; Cause No. 6:16-cv-173-RP; In the United States District Court, Western District of Texas, Waco Division

Dear Judge Austin,

      Plaintiffs are sending you Plaintiffs' Witness List in a spreadsheet form that will hopefully assist the Court. Viewing the Plaintiffs' Witness List and Baylor's together, there is significant overlap in witnesses and factual development, which counsels against serial separate trials. Despite Baylor's hyperbolic reference to over 550 witnesses spanning multiple incidents over a span of many years, the provided witness lists provide a striking view of just how interrelated the facts and witnesses in this case are. Moreover, the lists make clear that trial of this matter will not be too unwieldy or unworkable due to sheer number of witnesses. As this Court knows, large, complicated matters are tried in civil and criminal courts across this Country all the time. This case is no different in that regard, but, importantly, parsing out the case into individual or smaller trials will deprive the finder of fact from seeing broader institutional patterns and would be an extreme injustice to the victims here.

      There are several important facts that can be drawn form the parties' lists that favor consolidating this case for a single trial, or at a minimum by Cause Number.

      One, the combined total number of individual substantive fact witnesses in this case (excluding each sides' experts and Plaintiffs' treating doctors) is approximately 170 witnesses. Of those witnesses, Plaintiffs' and Defendants' respective witness lists both include 41 mutual witnesses for one or more of the 15 Jane Doe Plaintiffs (not including each sides' respective experts or the Plaintiffs themselves). If one were to include the Plaintiffs and experts likely to testify repeatedly in each claim as well, then nearly half of the total witnesses on the parties' lists have been designated by both sides for use in many of the Plaintiff's claims.

      Two, Baylor omitted from their witness list several institutional witnesses that are clearly relevant across Plaintiff's claims. Plaintiffs included these individuals on their witness lists and believe the institutional witnesses (e.g., Regents and Baylor University administrators with relevant and important knowledge) that will need to be called for use in each of Plaintiffs' cases is at least approximately 20 witnesses. Perhaps the most revealing examples of how Baylor's list



U.S. Magistrate Judge Andrew W. Austin
August 7, 2020
Page 2

omits unquestionably key players, include Baylor Police Chief Jim Doak who is not listed at all, and, incredibly, neither is Reagan Ramsower, whose tenure at Baylor began in 1983 and whose involvement in all Title IX issues for decades is unquestioned. Another key witness excluded from Baylor's witness lists is Shelly Deats; she initially joined Baylor in 1999 and in 2015 was appointed as Clery Compliance Manager. Former Chairman of the Board, Richard Willis, was excluded from Baylor's witness lists despite being chairman during the time that 10 Jane Does were assaulted. Plaintiffs believe these witnesses testimony is relevant and necessary in all 15 cases. There are other examples of witnesses in a similar position.

Further, there are a number of important witnesses the Plaintiffs designated for all claims, but that Baylor inexplicably only designated for some claimants. For example, Bethany McCraw, Baylor's Chief Judicial Officer and part of Baylor's administration since 1982, was only designated by Baylor in 10 of the Jane Doe cases. Similarly, Baylor designated Juan Alejandro for only 3 of the cases, yet Mr. Alejandro joined Baylor as the Director of Internal Audit and Management Analysis in 1994 and was appointed Vice President of Governance and Risk and Chief Compliance Officer in 2014. His involvement extends through all Jane Does. These witnesses are necessary and relevant in all the claims.

Finally, it appears Baylor has only identified approximately 34 unique fact witnesses (not including individual alleged assailants or non-party students) that the Plaintiffs did not designate. Baylor has identified these witnesses across various Jane Doe cases, but not universally. However, the fact that Baylor may have a witness relevant to only one Jane Doe case is not a warrant for holding separate trials. A substantial overlap of witnesses and facts exist in this case, despite Baylor's designation of these additional and, in any event, a consolidated trial can still obviously accommodate these witnesses.

From these points alone, it is obvious that a significant number of the fact witnesses will testify in most or all of the Plaintiffs' cases. Importantly, Plaintiffs' substantive experts, and whose testimony will likely be the lengthiest of any witnesses, will be essential to the policy claims. Having these witnesses testify multiple times in multiple trials serves no judicial interest, particularly in a case about institutional rot that demands a determination of broad patterns of institutional discrimination across many years. Indeed, that is precisely the point. Forcing the Plaintiffs to piecemeal these claims with repeated trials and repeated rounds of testimony for these witnesses will be wasteful for the Court and the witnesses and serve only to open this matter – essentially about decades of intentional policy of discrimination – to potential inconsistent verdicts. It will also be unduly prejudicial to the Plaintiffs' claims, which are premised on Baylor's broad conduct. The post-reporting issues are a result of that broad conduct. Baylor's admitted intent is to put blinders on the fact finder to allow only a limited view of each Plaintiff, thereby denying a jury the right to see the full picture of which each Plaintiff is but a single frame.

Best Regards,

*/s/ Sean J. McCaffity*

Sean J. McCaffity

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing has been filed by ECF and sent to counsel of record via electronic notification on August 7, 2020.

/s/ Sean J. McCaffity
Sean J. McCaffity