IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, JANE DOE 2, <br> JANE DOE 3, JANE DOE 4, <br> JANE DOE 5, JANE DOE 6, <br> JANE DOE 7, JANE DOE 8, <br> JANE DOE 9, JANE DOE 10, <br> JANE DOE 11, JANE DOE 12, <br> JANE DOE 13, JANE DOE 14, AND <br> JANE DOE 15 <br><br> *Plaintiffs,* <br><br> vs. <br><br> BAYLOR UNIVERSITY <br><br> *Defendant.* | § § § § § § § § § § § § § § § § § | Cause No. 6:16-cv-173-RP <br> JURY TRIAL DEMANDED |

## PLAINTIFFS' MOTION RELATING TO UNITEDLEX FINDINGS
### (Made in Response to the Court's Order in ECF 903)

TO THE HONORABLE JUDGE AUSTIN:

Pursuant to the Court's directions in ECF 903, Plaintiffs file this Motion Relating to UnitedLex Findings. In support thereof, Plaintiffs would show the Court as follows:

**I.**    **Background**

Sifting through Baylor's shifting confusing excuses and explanations confirms its discovery abuses. In Summer 2019, after justifiable exasperation with Pepper Hamilton's ("PH") and Baylor's conduct, Judge Pitman ordered all PH material produced to Plaintiffs as Attorneys Eyes Only, preserving Baylor's right to argue inadmissibility with a "claw back" process when and if appropriate. ECF 653. Baylor objected strenuously, arguing that the claw back process would "further delay this

1

case," and pleading that the Court not yet take this step. ECF 667, ECF 672.[1] Baylor requested one last chance to ensure full production by utilizing a third-party review that Baylor claimed would provide "accountability and speed." ECF 672 at 33-35. Since then, the Court itself has reviewed the course of events, representations and filings made by Baylor and PH, including in a December PowerPoint presentation. ECF 743-1. Needless to say, the last sixteen months has made it crystal clear that neither accountability for Baylor's discovery abuse nor speed in this litigation has been achieved.

On January 15, 2020,[2] UnitedLex ("UL") issued its "1st UL Report" following a digital comparison of PH and Baylor materials. UL found a deficiency with 33,377 documents in Baylor's production. ECF 777-1. The report compared (1) the documents PH turned over to UL on July 19, 2019 (i.e. "all materials responsive to the subpoena in its custody or control that were dated, created or received between January 1, 2003 and November 6, 2017"), with (2) the documents Baylor turned over to UL on December 24, 2019 (i.e. all of the PH documents that had been produced or logged to Plaintiffs). ECF 751. Baylor initially claimed that the document deficiencies were the result of UL processing issues, including technical issues within metadata and minor variations within the documents. ECF 836 at Page 3. During a conference call between Baylor, Plaintiffs and UL, UL indicated that a "95% comparison" could be quickly conducted to test whether the deficiencies were indeed slight. At that time, Plaintiffs requested such an analysis and Baylor refused.

On February 17, 2020, Baylor requested and obtained from UL all 33,377 documents that UL said were missing. ECF 829 at 2-3. Pursuant to the Court's order on PH discovery, Baylor was to supplement any non-matched documents. ECF 667. The Court had previously advised that the Court

---

[1] Baylor since has attempted to urge that UL was only retained to facilitate production of PH materials, rather than do a comparison. ECF 898. This runs contrary to the Court's pronouncements and the facts surrounding the three comparisons and reports made by UL to date.
[2] Plaintiffs also refer to ECF 868-2 for a Timeline of events; an updated version is attached hereto as Exhibit A.

anticipated that "the universe of things that would then be left over should be small." December 6, 2019 Hearing Transcript at 33: 14-19, ECF 667. Exhibit B.

On May 12, 2020 Baylor filed an Advisory Regarding the Completion of Review of Documents Processed by Third-Party Vendor UnitedLex and provided Plaintiffs an accompanying spreadsheet "Baylor's Accounting Log" detailing its accounting for the 33,377 missing document sets. ECF 836. Between May 12-14, 2020, Baylor proceeded to produce 2,794 new documents (30,344 pages) to Plaintiffs and logged an additional 3,327 new documents (the number of pages is not yet known). The production came only after UL identified for Baylor the exact 33,377 documents Baylor previously failed to produce. Over Baylor's objection, Plaintiffs requested UL to conduct the 95% comparison to determine whether the document variations were as inconsequential as Baylor claimed. The 95% comparison was completed on June 23, 2020 (the "2nd UL Report"). This comparison revealed that 10,054 documents out of the 33,377 were within a 95% match – thus 23,323 were not. Exhibit C. Thereafter, Baylor filed its Opposed Motion Requesting Confirmation of Accounting Log. ECF 881.

With Baylor's continuing protests and explanations dragging things out for months, UL issued a 3rd UL Report on September 22, 2020 based on a by-hand (i.e. human eye) comparison. Exhibit D (filed under seal). In conducting this by-hand comparison, UL had the full benefit of Baylor's Accounting Log.

Baylor's Accounting Log includes a "Match Category" column, with columns for bates/match bates and "Explanation". Importantly, the Log was provided to UL to reference in its by-hand review and many of the Log columns were incorporated into UL's by-hand review results spreadsheet. In other words, we know that UL used Baylor's Log to try and reconcile and test what it saw in the by-

hand review and Baylor's explanations.[3] As an example, Exhibit E (filed under seal) reflects a copy of UL's spreadsheet filtered to the 8,257 "No Comparison File Provided" documents. UL's designations fall into five categories: (1) Exact Match, (2) Substantive Match (i.e. any variance is non-substantive), (3) No Comparison File Provided (i.e. no matching document provided by Baylor), (4) Technical (i.e. the matching status cannot be confirmed because of the lack of user generated or readable content such as binary files), and (5) Variance (i.e. additional, different or missing substantive content). ECF 897-2. Of the 33,377 document sets, the 3rd UL Report matched substantively or exactly 17,816, designated 3,432 as "technical," designated 8,257 documents as "No Comparison File," and designated an additional 3,872 documents as "Variance." Since UL made its designation directly on Baylor's explanatory Accounting Log, the comparison of what Baylor says and UL found is apples-to-apples.

## III. Arguments

Baylor's discovery conduct throughout this case is well known to the Court from the inception. Baylor's conduct has unquestionably delayed the progress of this case for years and caused extremely increased costs running now into the hundreds of thousands of dollars, not including legal work - repeated delays, repeated non-compliance, routine pleas of "inadvertence,"[4] wholesale mis-interpretations of the Court's orders, ever changing certifications, requests to clarify and requests to re-consider. As demonstrated by the Court's PowerPoint and the attached Timeline, this modus operandi has continued throughout the PH process.

---

[3] According to Baylor's "Explanation," of the 2,794 newly produced documents, 1,641 documents are labeled "Post-June 15, 2016" or "Binder prepared post June 15, 2016 containing Judicial Affairs file previously produced." Should the Court desire, a copy of UL's actual Excel spreadsheet in native format can be provided, thus allowing the Court to sort and see this information on its own. The e-filing system presents difficulty in uploading such a format as an Exhibit to this Motion.

[4] The latest claim of inadvertence in Baylor's letter brief response ECF 898, is "an additional 532 match PH documents previously produced by Baylor to Plaintiffs but the documents inadvertently were not uploaded in the voluminous data transfer to UnitedLex."

As to the specific complaints raised by the third-party document review, Plaintiffs will respond to Baylor's claims by allegation.

1. **Of UL's unmatched, the 931 "easily matched" using MD5Hash or metadata –**

Bottom line, Baylor claims UL does not know how to do its Court appointed job. UL conducted both electronic and by-hand comparisons and could not match these "easily matched" materials. Plaintiffs likewise are not able to determine what documents Baylor is referencing to. Of the 8,257 unmatched designations, at best Baylor's Accounting spreadsheet lists only 609 documents that could conceivably be previously produced and matched by MD5Hash or metadata techniques, and this is only if one presumes the Accounting Log and Baylor's representations are taken as true in the face of UL's findings over three reports. In addition, Baylor contends that 354 documents that UL has identified as "Technical" were actually documents Baylor previously produced to Plaintiffs and that another 395 were previously logged. However, a review of the identified documents using Bates numbers Baylor claims for those files shows these do not meet the criteria for *technical* documents. Instead, all 354 documents are Baylor employee e-mails. Exhibit F an employee email – not a "technical" by UL's definition. This is just one more clear example of why Baylor's representations concerning discovery are simply not credible. It should be observed that if Baylor would allow UL to send these materials that Baylor claims were previously produced directly to Plaintiffs, Plaintiffs could just verify and avoid troubling the Court – yet Baylor refuses.

2. **"Handwritten notes"** – As with the above, UL had Baylor's Accounting and the benefit of Baylor's explanatory notes in conducting the by-hand review, yet UL still determined the documents could not be found. If it were as simple as Baylor claims, an immediate call by Baylor to UL to sort these "easily matched" documents would have been prudent. Fundamentally, Baylor wants the Court to determine UL did not do its job. Should the Court have questions of UL's ability and

work, one would anticipate that UL, as a neutral appointed by the Court, are available to defend its work directly to the Court.

3. **"3,639 were newly produced or logged from the post-June 2016 time period"** – Baylor's own Accounting Log shows the falsity of this claim - not less than 1,123 of the 2,794 documents produced on May 12-14, 2020 are *pre-June 15, 2016* on the Accounting Log. Exhibit E (filed under seal). These pre-June 15, 2016 document sets are not PH created, but the type received from Baylor during its initial data harvest that Baylor certified as produced on October 16, 2019. Examples include Baylor employee emails, underlying data on Patty Crawford text messages, and iPhone logs. Exhibit G. Significantly, Baylor told this Court in December 2019 that "Baylor did not just rely on that Pepper-Hamilton Collection to comply with your order to produce everything pertinent to that investigation . . . .Baylor went to Cozen O'Connor and with Cozen O'Conner and Thompson Horton they collaboratively went through the law firm's own file." ECF 743-1 at 14:12 to 16:23. Baylor claims this was done "exhaustively," that they even looked for things that "have been misfiled." ECF 743-1 at 14. But when pressed by the Court, Baylor went on to admit that the resulting certification was *intentionally* false and inaccurate. *Id.*

4. **The Binders prepared post-June 15, 2016** – According to the "explanation" column on Baylor's Log, 1,641 documents of the 2,794 newly produced document are labeled "Post-June 15, 2016" or "Binder prepared post-June 15, 2016 containing Judicial Affairs file previously produced." However, the newly produced documents labeled as "Binder prepared post June 15, 2016 containing Judicial Affairs file previously produced" shows the majority of those documents *are dated or were created pre-June 15, 2016*. Baylor's justification for not producing these pre-June 15, 2016 documents is because the *binder* was allegedly *not created until after* June 2016. This defies credulity – because the documents themselves within the binder *are pre-June 15, 2016 documents*. Baylor is actually stating that it chose to not produce these pre-June 15, 2016 documents to UL because they were placed in binders after June

6

15, 2016. So if you can create a document on Monday, then staple it on a Wednesday, it magically turns into a Wednesday document. This is yet another example that reeks of gamesmanship, reinforcing evidence of Baylor's misconduct.

**5. Previously Unlogged Documents -** Baylor cannot justify that it was diligent in preserving alleged privileges on the 3,327 new document sets not logged until May 2020. In ECF 667, Baylor was ordered to "produce privilege logs for all materials produced by Pepper Hamilton to the third-party vendor…" This Order required production of all materials regardless of date. On October 16, 2019, Baylor certified, "the production of all pre-June 15, 2016 non-privileged PH material and accompanying privilege logs in Baylor's possession is complete." In making this certification, Baylor noted that UL is still processing the Pepper Hamilton material that was in that law firm's files and that those materials have not been produced to Baylor at this time. ECF 716. More importantly, Baylor's contention that the documents PH produced in response to Plaintiff's subpoena were not in Baylor's possession as of October 2019 cannot be reconciled with prior Baylor statements. Baylor attempts to argue in ECF 898 that it never possessed these documents until UL provided them on February 17, 2020. This flies in the face of PH's statement on April 11, 2019 that "there are no Baylor-related materials in Pepper's custody or control that Baylor does not also possess," as well as Cozen's affidavit that Cozen had "provided Thompson & Horton LLP with access to the materials that Cozen O'Connor had obtained from Pepper" ECF 611-1 at 2, and finally other Baylor's prior declarations. ECF 601 at 3, ECF-1, ECF 601-3, ECF 601-6.

Notwithstanding the culmination of declarations and certifications to the contrary, only after UL revealed the discrepancies did Baylor finally produced over 30,000 new pages of PH materials in May 2020. This alone supports imposition of sanctions against Baylor. And while Baylor attempts to walk back its earlier representations of the exhaustive nature of its review, it is also worthy to note that PriceWaterHouse Coopers housed and still houses the files for Baylor *and* PH *and* Thompson

Horton. This fact, especially when coupled with Baylor's prior discovery tactics makes Baylor's explanation especially weak.

6. **1,126 were not previously produced because they were non-responsive -** Some documents noted on the Accounting Log purport to identify "non-responsive" documents. As an initial matter, Plaintiffs take issue with Baylor's phrase "not previously produced" because it necessarily infers the documents have now been produced when they have not. While 12 document sets have PH2 bates numbers associated with them, the remaining do not — these documents have not been produced. Significantly, Baylor's unilateral withholding for responsiveness violates this Court's order -

> "To the extent Baylor seeks to withhold any specific communication with Pepper Hamilton or other counsel as responsive to Plaintiffs' requests for production as subject to attorney-client privilege, and not waived pursuant to this order, it must produce an itemized privilege log of these communications." ECF 168

Even were Baylor permitted to sidestep that order, Baylor's Log "explanation" actually shows that these "non-responsive" documents are instead responsive. For example, 133 explanations include Tom Hill and Shillinglaw documents and 27 are related to communications with third-party sexual assault claimants.

7. **70 had a "BU Jane Doe" bates number -** Baylor contends that it produced certain BU Jane Doe documents earlier in the case, but even if this is true, Baylor is not justified in its failure to produce them to UL for comparison – the point is to have a full comparison. If Baylor's claim is accurate, then once again it is Baylor complying only as it sees fit, and in such a way that further confuses and delays the case, all despite the Court's directive and Baylor's representations that it had delivered all materials to UL. The unmatched documents in UL's possession that Baylor now claims have been produced include the "70 had a 'BU Jane Doe' bates number ... previously produced to Plaintiffs … and an additional 532 … previously produced by Baylor to Plaintiffs." ECF 898. Yet there is only Baylor's word on this, and no adequate explanation. As stated above, all the Court should

8

needs to know is that as with the other supposedly "previously produced" documents, Baylor still will not allow UL to turn them over to Plaintiffs, something that would allow Plaintiffs to test Baylor's claims and not trouble the Court. Baylor's refusal speaks volumes.

8.     **The 3,872 "Variance" documents –** Baylor gives no understandable explanation for these 3,872 document sets found to be in "Variance" – i.e. they vary substantively between what Baylor gave PH and what was produced or logged to Plaintiffs. ECF 897 at 2. As the Court is aware, Baylor already has a history of document manipulation and over-redaction – even redactions in white. Baylor's Log explanation column for the "Variance" documents includes 511 documents Baylor claims have been previously produced, documents which are highly relevant to Plaintiffs' claims and include Plaintiff specific documents and Title IX documents. Irrespective of whether the documents have been previously produced, UL found that the version Baylor gave Plaintiffs is in "Variance" from the version Baylor gave to PH. Baylor could readily prove any variance is non-substantive by just letting UL turn over the PH versions to Plaintiffs for comparison, but Baylor refuses. Baylor's proven history of white redaction informs the Court of Plaintiffs concerns about even a small variance being material.

9.     **532 documents were previously produced but "inadvertently" not uploaded to UL** - The Court has noted Baylor's continued "inadvertence" in this case. ECF 667 at 3. Of course, Plaintiffs cannot comment on what Plaintiffs cannot view. Again, let UL give those documents to Plaintiffs to see if there is any substance to Baylor's claims. Yet Baylor wholesale refuses.[5]

**IV.    Legal Authority & Relief Requested**

---

[5] Plaintiffs have endeavored to address all matters directed by the Court. However, as the Court can appreciate, making sense of the confusion in Baylor's moving target of excuses is difficult. Plaintiffs strain to limit themselves because of a desire to point out more than page limits allow. However, Plaintiffs are fully prepared to get into minutia to the extent of even technical arguments about this such as "Workspace 4" and "3 Relativity Restores."

As this Court has previously noted, Federal Rule of Civil Procedure 37 provides that "If a party…fails to obey and order to provide or permit discovery…the court where the action is pending may issue further just orders." *Doe v. Baylor Univ.*, No. 6:16-CV-173-RP; 6:17-CV-228-RP; 6:17-CV-236-RP, 2019 U.S. LEXIS 99362, at *42-43 (W.D. Tex. June 7, 2019)(quoting Fed. R. Civ. P. 37(b)(2)). Rule 37(b)(2) specifically provides remedies for a party's failure to comply with Court orders. In the instant case, sanctions are also available pursuant to Rule 37(a) given that the entire UL process is the result of Plaintiffs' motion to compel. Additionally, pursuant to Rule 37(a)(5), reasonable expenses in making the motion, including attorneys' fees, are recoverable. Fed. R. Civ. P. 37(a)(5). Sanctions available for violations of Rule 37 include those enumerated in Rule 37(b)(2)(A) as well as "further just orders" as deemed by the Court. Fed. R. Civ. P. 37(b)(2)(A). This Court has already cautioned Baylor that "even inadvertent violation of a discovery order is eligible for sanctions, and the Court will consider sanctions if Baylor makes further production of Pepper Hamilton materials without adequate explanation." ECF 667 at 3 (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (citation omitted); *Chilcutt v. United States*, 4 F.3d 1313, 1322 (5th Cir. 1993)). The multitude of rulings by the Court regarding Baylor and that of Baylor's surrogates presents a stark portrait of continued refusal to follow the Court's direction and indeed flagrant disregard for this Court's warnings. Additionally, of course, the Court is empowered to issue sanctions thorough its inherent powers to fashion remedies for conduct which abuses the judicial process.[6]

This UL process was proposed by Baylor to supposedly test its discovery compliance with respect to the PH materials in an efficient and rapid manner, but instead has amounted to another tool to shroud and delay. The record before the Court fully justifies sanctions. Plaintiffs request the Court to levy the following sanctions against Baylor:

---

[6] *E.g., Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991).

10

1. Jury instruction that informs the jury of Baylor's consistent efforts to hide materials in discovery and that allows the jury to presume it was successful in preventing the production of at least some damaging material.[7]

2. All docs with UnitedLex are turned over AEO only.  Baylor is permitted to object to their admission based on privilege at trial.

3. Determine Baylor has waived objections and privilege as to these materials (i.e., additional bases in support of the Magistrate's ruling on work-product waiver in ECF 845).

4. Baylor pays all costs of travel and court reporter/video for any deposition reconvened based on new documents.

5. Baylor may no longer withhold document production based on privileges, nor may it obstruct deposition testimony based on privileges.  But the court will entertain privilege as a basis to exclude evidence or testimony at trial.

6. Fine Baylor daily until Baylor complies with the Court's orders.

7. Award Plaintiffs sanctions in an amount equal to what Baylor has paid UL to date.

Sanctions of this nature are fair and proportional to the discovery abuse set forth herein given Baylor's history of litigation abuse throughout this litigation.

Respectfully submitted,

/s/ Chad W. Dunn
**BRAZIL & DUNN, L.L.P.**
Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
3303 Northland Drive, Suite 205
Austin, Texas 78731
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

**AND**

---

[7] *E.g., Mgmt. Registry v. A.W. Cos.*, No. 17-5009(JRT/KMM), 2020 U.S. Dist. LEXIS 68910 (D. Minn. Aug. 21, 2020). See also Fed. R. Civ. P. 37(b)(2)(A).

11

**DUNNAM & DUNNAM, L.L.P.**
Jim Dunnam
State Bar No. 06258010
jimdunnam@dunnamlaw.com
Eleeza Johnson
State Bar No. 24058690
eleezajohnson@dunnamlaw.com
Andrea Mehta
State Bar No. 24078992
andreamehta@dunnamlaw.com
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Facsimile: (254) 753-7434

AND

**SOMMERMAN, MCCAFFITY, QUESADA & GEISLER, L.L.P .**
George (Tex) Quesada
State Bar No. 16427750
Laura Benitez Geisler
State Bar No. 24001722
Sean J. McCaffity
State Bar No. 24013122
Jody L. Rodenberg
State Bar No. 24073133
Alexandria Risinger
State Bar No. 24095215
3811 Turtle Creek Blvd, Suite 1400
Dallas, Texas 75219
Telephone: 214-720-0270
Facsimile: 214-720-0184
quesada@textrial.com
lgeisler@textrial.com
smccaffity@textrial.com
jrodenberg@textrial.com
arisinger@textrial.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF CONFERENCE**

This is to certify that counsel for Plaintiffs have conferred with counsel for Baylor more than a dozen times to resolve the issues associated with the UnitedLex process. This Motion is being filed pursuant to the Court's order.

/*s*/Chad W. Dunn
CHAD W. DUNN

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing has been filed by ECF and sent to counsel of record via electronic notification on November 4, 2020.

/*s*/Chad W. Dunn
CHAD W. DUNN

13