# EXHIBIT A

# EXHIBIT A – Timeline[1]

- May 24, 2017: Plaintiffs filed a Motion to Compel PH materials and a separate Motion to Compel Responses to Plaintiff's First Requests for Production .[2]

- July 26, 2017: The Court granted in part Plaintiffs' Motion to Compel Baylor's responses to production and granted Baylor "protection from requests for documents dated prior to January 1, 2003.[3] "That Order did not entitle Baylor to withhold documents after a certain date and it did not limit the scope of the RFP to Pepper Hamilton's Investigation."[4]

- August 11, 2017: The Court ruled that Baylor waived its attorney-client privilege and that the waiver encompassed "the entire scope of the investigation, and all materials, communications, and information provided to Pepper Hamilton as part of the investigation."[5]

- June 6, 2018: Plaintiffs filed a Motion to Compel Pepper Hamilton Subpoena.[6] Baylor filed a response, Pepper Hamilton did not.[7]

- September 17, 2018: Deadline for Baylor to certify that all PH production was complete.[8] Baylor failed to meet its deadline.

- September 28, 2018: Baylor certified that the PH production was complete.[9] Baylor has subsequently admitted the certification was false.[10]

- March 7, 2019: The Court granted Plaintiffs' Motion to Compel PH Subpoena and directed PH to certify compliance or file objections by March 15, 2019.[11]

- March 15, 2019: PH filed a Motion Objecting to the Production of Documents and Relief ordered by the Court on March 7, 2019.[12] In support of its objections, PH filed a Declaration from Holly McIntush,[13] (a Thompson & Horton attorney representing Baylor) wherein she affirmed: "In order to conduct the review of the Pepper Hamilton Investigative Materials for

---

[1] This timeline is focused on Baylor's the history of discovery related to Pepper Hamilton materials. It attempts to maintain focus on the history of discovery related to Pepper Hamilton materials, without setting out direct parallels to and context of Baylor's other and overall discovery conduct, of which the Court is already familiar. E.g. Plaintiffs' Reply to Defendant's Response to Plaintiffs' Second Motion to Compel. See also ECF 481.
[2] ECF 93 & ECF 94.
[3] ECF 146.
[4] ECF 653 at 31.
[5] ECF 168 at 13-14.
[6] ECF 328.
[7] ECF 332.
[8] ECF 312.
[9] ECF 618-2.
[10] ECF 672 at 16:13-23.
[11] ECF 597.
[12] ECF 601.
[13] Several other Declarations were also filed in conjunction with this document. ECF 601-1—601-5.

> privileged, confidential, and FERPA-protected materials, Cozen provided Thompson & Horton attorneys with access to the materials via an electronic discovery database. Cozen attorneys and Thompson & Horton attorneys have worked together to review, produce, and log privileged material from this database."[14] PH also attached multiple affidavits from Baylor and Cozen confirming that "Pepper Transferred a Full Set of its Baylor-Related Hard Copy Files and Electronic Data to Cozen"[15] and that Thompson & Horton was given full access to all such documents.[16] These sworn representations can be compared with Baylor's current contention that it "never possessed the documents that Pepper Hamilton ("PH") produced in response to Plaintiffs' subpoena until PH produced those documents to UnitedLex and UnitedLex produced them to Baylor."[17]

- March 28, 2019: PH's objections were overruled. PH was ordered to "(1) produce all materials in their custody or control that Baylor (a) does not possess or (b) has not produced, and (2) certify complete production no later than April 11, 2019."[18]

- April 11, 2019: PH certified compliance with (1)(a) only, representing that: "there are no Baylor-related materials in Pepper's custody or control that Baylor does not also possess" supported by affidavit testimony stating that Cozen "provided Thompson & Horton LLP with access to the materials that Cozen O'Conner had obtained from Pepper."[19]

- April 11, 2019: PH filed a Motion for Reconsideration and/or Clarification of Part (1)(b) of the Court's Order Dated March 28, 2019[20] but did not confer with Plaintiffs.[21] In the motion, Plaintiffs and the Court learned for the first time that PH has represented Baylor on other legal matters including "Matter 3" (implementation) and "Matter 4" (third party investigations and litigation).[22]

- April 8-12, 2019: After certifying in September 2018 that production was complete, Baylor supplemented its privilege log by 113 pages and produced an additional 1,192 new PH documents characterized as "found."[23] As recognized by the Court in its ECF 653 order, despite Baylor's certification, that Pepper Hamilton--not Baylor--informed the Court on April 11, 2019 of Baylor's 'discovery'" of additional PH documents.

- April 12, 2019: Baylor filed an Advisory regarding ECF 612 (PH's Motion for Reconsideration)[24] and represented it had "completed the review, logging and production of the additional documents" referred to as still being reviewed in ECF 612, and that it had produced an additional 92 documents to Plaintiffs.

---

[14] ECF 601-6.
[15] ECF 601 at 3 and 601-1 and 601-3.
[16] ECF 601-6.
[17] ECF 898 at 1.
[18] ECF 607.
[19] ECF 611-1 at 2.
[20] ECF 607.
[21] ECF 612.
[22] ECF 612.
[23] ECF 617 at FN 19.
[24] ECF 613.

- April 16, 2019: The Court granted Plaintiffs' Motion to Compel with respect to the Ketchum Materials.[25]

- April 18, 2019: Plaintiffs filed Amended Motion to Compel PH and for Sanctions.[26]

- May 3, 2019: Baylor filed a Motion for Clarification regarding the Ketchum Order.[27]

- May 14, 2019: For the second time, Baylor made a late production of PH materials and produces an additional 2,356 pages of PH documents.[28]

- May 17, 2019: The Court granted Plaintiffs' Motion to Compel Responses to Requests for Production and ordered Baylor to certify compliance with the order and with the Court's prior order on Scope of Discovery by May 31, 2019.[29]

- June 7, 2019: The Court ruled that Baylor waived attorney-client privilege for Pepper Hamilton's work regarding implementation of reforms.[1] The court also overruled all of PH's objections in its Motion for Reconsideration and for Matter 4, third party investigations and litigation..[30]

- June 17, 2019: At a hearing, Julie Springer, counsel for Baylor, in response to Mr. Dunn's statement that Plaintiffs had no idea what documents from Pepper Hamilton had been transferred to Baylor due to Baylor's moving target descriptions, represented to the Court: "[T]here's no evidence that anything was actually transferred from Pepper-Hamilton to Cozen and then to Thompson Horton. We have all the lawyers involved in that process, except for the tech guy who is on extended medical leave at Pepper, who can attest to that process. But all of that is in the record in the form of declarations, that when the Pepper-Hamilton lawyers left they directed that all their files be downloaded and transferred and taken over to Cozen. All of that evidence that has gone, everything that you just heard Mr. Cobb describe, has been downloaded and has been transferred."

- At that same June 17, 2019 hearing, Bill Cobb, an attorney for Pepper Hamilton, testified that Pepper Hamilton feels "that [they] substantially complied, and . . ." thought that "what the Court was trying to do with that March 28th order was lessen some burden on Pepper . . . [and] was saying: Produce what you haven't given to Baylor." Cobb represented that "And we have run that absolutely to the ground and know that all of the data Pepper has in its archives was produced to Baylor, and that's the series of several declarations that the court saw. And I don't think Baylor has any dispute with that."[31]

---

[25] ECF 616.
[26] ECF 618.
[27] ECF 628.
[28] ECF 653 at 32.
[29] ECF 631.
[30] ECF 653.
[31] ECF 672 at 50:13-17.

- June 21, 2019: The Court ordered that PH "may withhold materials for the original ESI period for which Baylor submitted a privilege log to Plaintiffs" by June 21, 2019, that Baylor may assert AC privilege and WP privilege "for materials dated June 15, 2016 -November 6, 2017, which includes 'other matters' that PH worked on in addition to the investigation."[32]  The Court denied "Baylor's request for an order that "Plaintiffs are prohibited from seeking discovery of any communications or documents in connection with the Other Legal Matters from Baylor or any third party, including Pepper Hamilton…The Court will order production of these materials, subject to Baylor's Privilege."  The parties were ordered to select a third-party vendor paid for by Baylor and PH.  The parties were ordered to select an amended deadline for Baylor to certify production of all non-privileged PH documents and accompanying privilege logs. Baylor was ordered to produce to the third-party vendor "unredacted versions of the materials added to the supplemental privilege logs between March 15, 2019 and June 20, 2019…" for the Court to do an in camera privilege review.  Among other things, Plaintiffs' Motion for Sanctions against PH was granted and "The Court cautions Baylor that even inadvertent violation of a discovery order is eligible for sanctions, and the Court will consider sanctions if Baylor makes further production of Pepper Hamilton materials without adequate explanation. See *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (citation omitted); *Chilcutt v. United States*, 4 F.3d 1313, 1322 (5th Cir. 1993)."[33]

- August 20, 2019: Despite the Court's warning regarding requests for extension, Baylor sought to extend its deadline to produce documents to the third-party vendor.[34]  Baylor did not confer with Plaintiffs regarding the request for extension.

- On August 23, 2019 the parties filed a joint advisory related to the deadline by which Baylor had to certify production of PH materials consistent with ECF 667 and July 31, 2019 text Order.  This Joint Advisory states in part - "Baylor's amended deadline to certify that it has completed production of all pre-June 15, 2016, non-privileged Pepper Hamilton material and accompanying privilege logs, pursuant to the Court's July 21, 2019 Order (Dkt. 667) and July 31, 2019 Text Order." ECF 701.

- September 9, 2019: The parties filed a Joint Advisory updating the Court regarding UnitedLex's progress in processing the data stating that upon completion an updated advisory will be filed which identifies "an amended deadline for Baylor to produce and/or log the Pepper Hamilton material post-dating June 15, 2016 produced by Pepper Hamilton to the third party vendor."[35]

- October 16, 2019: Baylor certified that "the production of all pre-June 15, 2016 non-privileged Pepper Hamilton material and accompanying privilege logs in Baylor's possession is complete." In its certification, Baylor stated that UnitedLex was still processing the Pepper Hamilton material that was in that law firm's files and that "those materials have not been produced to Baylor at this time."[36]

---

[32] ECF 667.
[33] ECF 667 at 3 (citations in original).
[34] ECF 698
[35] ECF 706.
[36] ECF 716.

- The Court ordered the retention of a third-party document vendor to be the custodian of Pepper Hamilton materials[37] UnitedLex was eventually appointed with the consent of all parties.[38] Among UnitedLex's tasks was the selection of 100 random document sets for the Court to review in order to evaluate various claims of privilege[39] The Court directed that Pepper Hamilton provide all materials it had received from Baylor to UnitedLex, and that Baylor separately provide all PH-related documents that had been produced to Plaintiffs or logged as privileged.[40] The purpose of these requirements was to allow UnitedLex to test whether or not Baylor had indeed revealed (through either actual production or logging) all materials which had been provided to Pepper Hamilton in its investigation.  At the time this comparison was conducted, Baylor had once again certified full production or logging of all materials to the Court.[41]

- January 15, 2020: UnitedLex completed its comparison, finding that the materials that had been turned over by Pepper Hamilton (i.e., the document sets Baylor had given Pepper Hamilton) included 33,000 document sets over and above what Baylor had logged or produced to Plaintiffs.[42] Baylor's Accounting Log lists a significant number of documents that were not previously produced nor provided for on privilege logs.[43]

- February 2020: The parties had a telephone conference with UnitedLex to determine any explanations for the 33,000 deficiency.  Baylor attributed the discrepancy to a minor difference in the documents that make a text-to-text comparison misleading.  UnitedLex stated that a "near duplicate" analysis could be easily conducted that would test Baylor's contention and weed-out documents that were substantially the same, but with slight variations.  This comparison is generally called a near duplicate comparison.  UnitedLex suggested setting the threshold at 95%, meaning UnitedLex could match documents that were 95% the same, thus taking into consideration that minor difference existed in what were actually duplicates.

- February 17, 2020: Baylor obtained the documents not verified as 100% duplicates from UnitedLex.  Almost 3 months later on May 12, 2020, Baylor filed its advisory in ECF 836, attempting to explain the discrepancy of 33,000 documents.

- February 2020: After learning of the 33,377 discrepancy, Baylor obtained copies of all materials PH had turned over to UnitedLex.

- May 12-14, 2020: Without explanation, Baylor produced 2,794 new document sets for the first time and logs another 3,327 new document sets – 6,121 sets in all, totaling 30,344 pages. These include materials that pre-date 6/15/16 – a date specifically referenced in the Court's orders and in Baylor's certification.

---

[37] ECF667.
[38] ECF 683.
[39] ECF 751.
[40] ECF 667.
[41] ECF 716.
[42] ECF 777.

- May 12, 2020: Baylor filed an Advisory regarding UnitedLex's Completion of the document comparison and provided to Plaintiffs a spreadsheet "Baylor's Accounting Log" accounting for each of the 33,377 nonduplicate document sets identified by UnitedLex.[44]

- Baylor's Advisory Exhibit 2 confirms that Baylor had the documents it now claims it did not. "Two years after Leslie Gomez and Gina Smith moved to Cozen, Baylor through Cozen and its trial counsel prepared a privilege log relating to the sexual assault investigation; the log was based on the hard copies maintained by Cozen. The log reflects the pre-June 15, 2016 hard copy materials. See Baylor's Privilege Log for Pepper Hamilton Investigative Materials, Part 6 (Hardcopy Materials), served April 10, 2019."

- Following the filing of this Advisory, Plaintiffs began attempts to reconcile what Baylor was telling the Court with the materials Plaintiffs had on hand. Plaintiffs were unable to verify Baylor's claims.

- June 19, 2020: At Plaintiffs' insistence, the parties conferred with UnitedLex, about Baylor's Advisory. Plaintiffs, at Plaintiffs own expense, requested UnitedLex to conduct the 95% comparison analysis that Plaintiffs had asked Baylor to consent to in February. UnitedLex presented the results of its analysis which was found 10,054 near duplicates and was inconsistent with what was represented in Baylor's advisory.

- The near duplicate 95% comparison matched documents Baylor said it did not produce, had not produced but "newly produced" and had not logged but "newly logged", to documents that Baylor did produce. Baylor's advisory claims that some of the newly logged and newly produced documents were documents dates post 6/15/16, but there are, even after taking out the near duplicate comparison matches, 1,466 documents accounted for by Baylor as newly logged or newly produced that are not listed as post 6/15/16. Baylor certified to the Court on October 16, 2019 that it had in fact completed and produced or logged all of this material.[45] The full results of the 95% comparison are set forth in ECF 868-2.

- July 30, 2020: UnitedLex undertook a by-hand comparison.

- September 22, 2020: UnitedLex provided the parties with the final results of its by-hand comparison. UnitedLex concluded that 8,257 documents produced by PH had "No Comparison File" within what Baylor had given UnitedLex (i.e. they do not exist). Another 3,872 documents were found to constitute a "Variance," a term defined by UnitedLex as meaning the version of documents Baylor gave or logged to Plaintiffs substantially vary from what Baylor gave PH (see Exhibit B for UnitedLex description of "Variance").

- Below is a table Plaintiffs compiled showing the categories as determined UnitedLex and Baylor's corresponding Accounting. UnitedLex's full findings are set forth in a spreadsheet Exhibit D (filed under seal). Plaintiffs are prepared to submit the spreadsheet in its native format should the Court so desire.

---

[44] ECF 836.
[45] ECF 716.

| ULEX Determination | # of Docs | Baylor's Accounting Log Explanation | Workspace |
|---|---|---|---|
| Exact Match | 1,879 | 1,675 Previously logged | Rel Rest 1 = 6 |
| | | 204 Previously produced | Rel Rest 3 = 27 |
| | | | Wksp 4 = 1,846 |
| Substantive Match | 15,937 | 1 Newly Produced | Rel Rest 1 = 512 |
| | | 49 Non-Responsive (Post 6/15/16 NCAA) | Rel Rest 2 = 5 |
| | | 11,452 Previously Logged | Rel Rest 3 = 269 |
| | | 4,417 Previously Produced | Wksp 4 = 15151 |
| | | 18 Withheld by Agreement | |
| No Comparison File Provided | 8,257 | 18 NA | Rel Rest 1 = 513 |
| | | 3,326 Newly Logged | Rel Rest 2 = 100 |
| | | 2,793 Newly Produced | Rel Rest 3 = 50 |
| | | 1,126 Non-Responsive | Wksp 4 = 7,594 |
| | | 250 Previously Logged | |
| | | 743 Previously Produced | |
| | | 1 Withheld by Agreement | |
| Technical | 3,432 | 2,683 NA | Rel Rest 1 = 1,821 |
| | | 395 Previously Logged (Baylor's Accounting provides Bates# for 352 of 395) | Rel Rest 3 = 397 |
| | | 354 Previously Produced | Wksp 4 = 1,214 |
| Variance | 3,872 | 1 Newly Logged | Rel Rest 1 = 80 |
| | | 50 Non Responsive (Post 6/15/16 NCAA) | Rel Rest 3 = 81 |
| | | 3,300 Previously Logged | Wksp 4 = 3,711 |
| | | 511 Previously Produced | |
| | | 10 Withheld by Agreement | |
| | 33,377 | | |

-