IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **JANE DOE 1, ET AL.** | § | |
| | § | **6:16-CV-173-RP-AA** |
| **v.** | § | *Consolidated with* |
| | § | **6:17-CV-228-RP-AA** |
| **BAYLOR UNIVERSITY** | § | **6:17-CV-236-RP-AA** |

## ORDER

Before the Court are Plaintiffs' Motion for Sanctions Related to the UnitedLex Findings (Dkt. 904) and the parties' respective response and reply briefs.  The Court held a hearing on this matter on November 20, 2020.  Dkt. 915.  Having reviewed the parties' submissions, the Court hereby **GRANTS IN PART and DENIES IN PART** Plaintiffs' motion (Dkt. 904).

### I.  BACKGROUND[1]

Discovery in this case has posed countless challenges for the Court.  Though the sheer number of documents at issue has complicated things greatly, most of the challenges do not stem from that. There have been seemingly endless concerns of privilege and confidentiality.  Baylor's dogged insistence that FERPA required laborious hand-redactions dramatically slowed discovery for nearly a year.  *See* Dkt. Nos. 791, 802.  Not only has Baylor raised numerous privilege and work product issues, but virtually every other Baylor-affiliated third-party (including the former president, former football coach, former athletic director, two separate public relations firms, individual regents, former Baylor employees, and Pepper Hamilton) has done so as well.  *See, e.g.,* Dkt. Nos. 334, 335, 337, 426, 450, 470, 474, 561, 601.  And when it comes to raising privilege objections, in doing so Baylor has been as aggressive as any party the Court has encountered.  The end result is that

---

[1] The history of the discovery process in this case has been chronicled by the Court many times over the past few years.  *See* Dkt. Nos. 607, 653, 667, 743.

discovery has dominated this case for years and has made it take far longer and cost far more than it needed to.

Many of these same challenges are presented in the instant motion, which relates to the findings of third-party vendor UnitedLex regarding the production of Pepper Hamilton materials. In June 2019, in response to various concerns regarding Baylor and Pepper Hamilton's production obligations and discovery conduct related to the production of Pepper Hamilton materials, and the complexity of handling the production through conventional means, to speed and facilitate the production the Court proposed a block production of all Pepper Hamilton materials to Plaintiffs, followed by a "claw back" right that Baylor could exercise. Dkt. 653 at 35. On June 21, 2019, the Court held a hearing on the matter, and Baylor argued against such a claw back process, and offered the alternative that the parties retain a third-party vendor to conduct a comparison and audit of the Pepper Hamilton production to confirm that Baylor had, as it claimed, already produced all responsive materials. *See* Dkt. 672. The Court subsequently entered an order to this effect, and the parties retained UnitedLex to conduct the review. Dkt. 667. In opting for the third-party vendor process, rather than the claw back procedure, the Court ordered that Baylor and Pepper Hamilton bear the cost of the vendor's review. Dkt. 667 at 2.

On January 15, 2020, UnitedLex issued its first report of its findings of a purely digital comparison of Pepper Hamilton's and Baylor's production. *See* Dkt. 777. The report indicated that of the 1,365,293 documents provided by Pepper Hamilton, there were 33,377 documents it classified as "unmatched." Dkt. 777-1.[2] By "unmatched," UnitedLex meant that the documents were not a

---

[2] As used here, "document" to refers to not only single pages of text, but also to multi-page items. Thus, 1,365,293 "documents" is many more pages than that.

digital match of any of the documents that Baylor had previously produced to Plaintiffs, thus suggesting that despite its claims, Baylor had not produced 33,377 documents from the Pepper Hamilton materials.  In response, Baylor (1) provided Plaintiffs a spreadsheet to account for and explain the unmatched documents, (2) produced additional documents, and (3) served two privilege logs on Plaintiffs.  Dkt. 836; Dkt. 913 at 4.  Between May 12-14, 2020, Baylor also produced 2,794 new documents, and claimed a privilege as to 3,327 new documents, which it added to its privilege logs.  Dkt. 904 at 3.  Plaintiffs subsequently asked UnitedLex to conduct a second review with more direction, and on June 23, 2020, UnitedLex issued its second report.  Dkt. 904-3.  In the second report, UnitedLex was able to match 10,054 more documents that it had been unable to match previously.  *Id.*  At Baylor's request, UnitedLex then conducted a third, by-hand comparison, and issued a third report on September 22, 2020.  Dkt. 905-1.  This final report noted that UnitedLex had been able to match more documents, but ultimately 12,129 documents remained unmatched.  *Id.*

On November 4, 2020, Plaintiffs filed this Motion for Sanctions based largely on these findings.  Dkt. 904.  Plaintiffs request that the Court sanction Baylor for discovery abuse.  Plaintiffs request severe sanctions: (a) an instruction informing the jury that Baylor attempted to hide materials during discovery and allowing the jury to presume those efforts were successful in preventing production of at least some damaging materials; (b) an order directing that all of the documents provided by Pepper Hamilton to UnitedLex be produced to Plaintiffs, designated "Attorneys' Eyes Only" and limiting Baylor to only being permitted to object to their admission at trial based on privilege; (c) an order that Baylor pay all costs of travel and court reporter or video costs for any deposition reconvened based on documents ordered produced herein; (d) a finding that Baylor may no longer withhold document production based on privilege nor obstruct deposition testimony based

on privilege; (e) imposition of a daily fine until Baylor complies with the Court's order; and (f) an award of sanctions in an amount equal to what Baylor has paid UnitedLex to date.  Dkt. 904 at 11.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 37 provides that "If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." FED. R. CIV. P. 37(b)(2); *see also, Doe v. Baylor Univ.*, 2019 U.S. LEXIS 99362, at *42-43 (W.D. Tex. June 7, 2019).  In addition to a broad range of sanctions, Rule 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorneys' fees, caused by the failure to obey a discovery order.  *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012).  The district court "has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct."  *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990). "[U]sually . . . a finding of bad faith or willful misconduct [is required] to support the severest remedies under Rule 37(b)—striking pleadings or dismissal of a case."  *Id.*  But lesser sanctions do not require a finding of willfulness.  *Chilcutt v. United States*, 4 F.3d 1313, 1323 n. 23 (5th Cir. 1993) (district courts "have authority to grant a broad spectrum of sanctions" under Rule 37(b), and "neither this Court nor the Supreme Court has ever determined that the lack of willful, contumacious, or prolonged misconduct prohibits all sanctions").  A district court's imposition of sanctions pursuant to Rule 37(b) is reviewed for an abuse of discretion.  *O'Neill v. AGWI Lines*, 74 F.3d 93, 95 (5th Cir. 1996).

## III.  ANALYSIS

After considering the parties' briefs as well as the arguments at the hearing, the Court finds that in its handling of the production of materials gathered and created by the Pepper Hamilton law firm, Baylor did not engage in the type of actionable misconduct that would merit the type of

sanctions Plaintiffs request.  In general, the Court is satisfied with the detailed explanations Baylor has provided for the vast majority of the discrepancies identified by UnitedLex's audit.  The UnitedLex findings, and additional materials and detail presented at the hearing do not demonstrate that Baylor or its counsel engaged in the sort of misconduct that would merit the severe sanctions Plaintiffs request.  Further, Plaintiffs presented no evidence to cause the Court to question the majority of the explanations Baylor offered for the inconsistencies between the materials Baylor had previously produced, and the material Pepper Hamilton provided to UnitedLex for comparison.

This does not mean that Baylor's production of the Pepper Hamilton materials has been laudable.  It took more than three years to get the documents produced, much of which time is attributable to Baylor's actions.  Once the production began, Baylor repeatedly assured the Court that it had produced all responsive material, and filed numerous certifications to this effect, only to be forced to correct and supplement those certifications later.  The UnitedLex work has provided additional evidence that Baylor's assurances and certifications were at best inaccurate.  Further, Baylor has missed deadline after discovery deadline set by the Court.  Under the original scheduling order, Baylor was required to certify complete production of all Pepper Hamilton materials no later than September 17, 2018.  Dkt. 312.  On September 28, 2018, Baylor first certified by email to Plaintiffs that it had "completed the production of all non-privileged Pepper Hamilton and other Court-ordered ESI, subject to the Stipulated Order Regarding the Discovery of Electronically-Stored Information." Dkt. 618-2.  On April 11, 2019, Pepper Hamilton informed the Court that Baylor had discovered "a few hundred documents" responsive to Plaintiffs' discovery requests.  Dkt. 612 at 3.  Baylor conceded this was the case, and subsequently certified that it had produced those additional documents.  Dkt. 613 at 1.  A few weeks later, at the June 17, 2019 hearing, Baylor's counsel once

again stated that all pre-June 15, 2016 Pepper Hamilton documents had been produced.  Dkt. 672, Transcript at 16:3-8.  Again, the UnitedLex audit shows this was not true.

The extent of Baylor's failure remains a topic of dispute.  Baylor contends that UnitedLex's audit in large part confirmed that it did not fail to produce Pepper Hamilton documents to the Plaintiffs, pointing to the fact that the documents in dispute represent less than one percent of the more than 1.3 million Pepper Hamilton documents.   It also claims that UnitedLex's final conclusion—that there are 12,129 Pepper Hamilton documents that Baylor failed to either produce or log—is inaccurate; that the correct number is closer to 1,971 documents; and even that number may be too high, as Baylor is continuing to discover more of these documents were previously produced or logged.[3]  On the other hand, though the Plaintiffs appear to agree that UnitedLex's 12,129-document figure may overstate the discrepancy, they believe that at least 8,069 of these documents had not been produced or logged prior to UnitedLex's audit.[4]  Plaintiffs also point out that Baylor has repeatedly challenged UnitedLex's conclusions and Baylor continues to ask the Court to accept its assurances over UnitedLex's findings. This, Plaintiffs argue, is inconsistent with the entire purpose of the UnitedLex exercise.  As already explained, the Court appointed UnitedLex only after Baylor refused the more direct approach suggested by the Court—Plaintiffs be given all of the Pepper Hamilton materials, with Baylor retaining a "claw back" right to address those that were privileged.  Unwilling to allow Plaintiffs to see the documents and make their own comparisons, Baylor instead advocated that a comparison be done by an independent third party.  Now, unhappy

---

[3] In its most recent filing, Baylor states that since it produced its May 2020 "Accounting Log" it discovered it has previously logged 178 of these, bringing the "newly logged" figure down to 679 (and the "previously logged" figure up by the same 178 document amount).  *See* Dkt. 934 at 5.

[4] Plaintiffs note that they are accepting for purposes of argument only Baylor's claim that several thousand of the documents were not previously produced or logged because they are not responsive to any request.

with some of that third party's conclusions, Baylor wants the Court to disregard them. Plaintiffs insist this is totally inappropriate, noting that "Baylor wants Plaintiffs and the Court to accept its explanations when the only one who tested them, ULEX, says Baylor is wrong. ULEX even had the benefit of Baylor's explanations prior to doing the by-hand comparison, yet ULEX stood by its determinations and still disagrees with Baylor." Dkt. No. 933 at 2.

One thing is certain: the UnitedLex review demonstrates that there is a universe of documents—whether it is 1,793 or 8,069—that Baylor should have produced or logged years ago, and those documents were only discovered by the UnitedLex audit. Failure to timely respond or object to an RFP results in the waiver of all objections to production. *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989); *see also, Marx v. Kelly, Hart & Hallman P.C.*, 929 F.2d 8, 12 (1st Cir. 1991); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992). Thus, for the portion of these documents Baylor claims are privileged or otherwise objectionable, those claims have been waived. The Court previously cautioned Baylor that "even inadvertent" violations of a discovery order could result in sanctions. Dkt. 667 at 3. This statement was the result of the Court's frustration with Baylor repeatedly missing deadlines or "overlooking" documents, and claiming it should not be punished for because these were honest mistakes. Even so, the sheer number of such events and the numerous prior warnings require the Court to take a zero tolerance approach, something it has warned Baylor many times it would do. By failing to timely produce or log these documents, Baylor has waived all objections and privileges related to them.

The problem is that the parties do not agree which documents this ruling applies to—that is, the parties disagree which of the Pepper Hamilton documents that were responsive to requests for production Baylor did not produce or log until UnitedLex's audit. The difference between the

parties' positions stems from the Plaintiffs including in their figures documents Baylor's claims it already produced or placed on a privilege log, but UnitedLex's "by-hand" audit was unable to confirm. Given UnitedLEx's conclusions, Plaintiffs are treating these documents as *not* having been previously produced or logged, while Baylor continues to insist that they have been. Thus, the parties' competing calculations of the responsive documents dated prior to June 15, 2016, that Baylor did not produce or log before the audit are as follows:[5]

| Documents ULEX found did not match | Baylor accounting log explanation (as of 5/12/20) | Pre-6/15/16 documents (per Baylor) | Documents Plaintiffs assert were not produced or logged | Documents Baylor asserts were not produced or logged |
|---|---|---|---|---|
| No comparison file<br><br>7,112 | 3,326 Newly Logged | 1,328 | 2,018 | 679 |
| | 2,793 Newly Produced | 1,246 | 1,246 | 1,114 |
| | 250 Previously Logged | 250 | 250 | 0 |
| | 743 Previously Produced | 743 | 743 | 0 |
| Variance<br>3,812 | 1 Newly Logged | 1 | 1 | 0 |
| | 3,300 Previously Logged | 3,300 | 3,300 | 0 |
| | 511 Previously Produced | 511 | 511 | 0 |
| **Total** | | | **8,069** | **1,793** |

There are two primary areas of disagreement: (1) whether documents that UnitedLex could not match to any comparison file, or that it found varied in substance from what Baylor previously produced to Plaintiffs should be considered "previously produced or logged;" and (2) whether certain

---

[5] There are 10,924 documents addressed in this chart, rather than the 12,129 mentioned in the text, because the Court has excluded 1,176 documents Baylor claims were not responsive to any request for production (a claim that Plaintiffs do not concede, but do not contest here) as well as a small number of documents (29) that were either withheld by agreement or were purely "technical" files as opposed to substantive documents.

The parties' calculations also diverge on how many of the 3,326 documents of the "No comparison file" group that Baylor's accounting log identified as "newly logged" are dated prior to June 15, 2016. Baylor says the number is 1,328. Dkt. 934 at 3. Plaintiffs claim it is 2,018. Dkt. 933 at 2. The difference appears to be their respective treatment of 690 documents Baylor describes as "identified in Accounting Log with language such as 'Binder prepared post June 15, 2016'."

documents should be classified as "post-June 15, 2016," and thus not subject to production prior to the audit. Having considered all of this, the Court orders the following:

*First*, the 1,793 documents that Baylor does not contest were not produced or logged prior to the UnitedLex audit shall be produced to Plaintiffs without redaction, and Baylor has waived all objections and privileges concerning these documents.

*Second*, the 6,276 additional documents on which the parties are in dispute shall be handled as follows:

(1)    For the 1,261 documents that Baylor contends it previously *produced* (743 from the "No comparison file" category, 511 from the "Variance" category, and 7 that Baylor identifies as "unreadable, non-substantive, and previously produced SMS and hardcopy documents," Dkt. 934 at 3), UnitedLex shall provide those documents as received from Pepper Hamilton to counsel for the Plaintiffs, so they can confirm that Baylor did in fact produce the documents previously.

(2)    For the 4,200 documents that Baylor contends it previously *logged*,[6] Baylor shall identify to UnitedLex these 4,200 documents as they appear in the set of documents Baylor provided UnitedLex at the outset of the audit. Baylor shall then identify from the documents Pepper Hamilton provided UnitedLex at the outset of the audit the documents Baylor contends match these 4,200 documents. Baylor may

---

[6] This figure is made up of 250 documents from the "No comparison file" set, 3,300 from the "Variance" set that Baylor classified as "previously logged," 178 of the "No comparison file" group that Baylor recently claimed it discovered were previously logged (Dkt. 934 at 5), as well as 472 more of the "No comparison file" documents Baylor originally classified as "Newly logged," but now contends were previously logged (*id.* at 4) which Baylor describes as follows:

| | |
|---|---|
| 1 | "Variance" document identified on the Hard Copy Materials Index as previously logged |
| 198 | "No comparison" documents identified in "Explanation" column of Accounting Log as previously logged |
| 3 | "No comparison" documents identified in "Notes" column of Hard Copy Materials Index as previously logged |
| 12 | "No comparison" documents identified on Accounting Log as lesser included versions of previously logged documents |
| 258 | Previously produced or logged SMS documents |

not provide any new documents to UnitedLex.[7]  UnitedLex shall determine if the document as it received it from Pepper Hamilton in fact matches the document Baylor identifies as being previously logged.  UnitedLex shall generate a report of its conclusions.  UnitedLex's determination of whether documents match will be conclusive. Baylor shall bear the cost of this additional work by UnitedLex.

(3)     There are 815 documents from the "newly produced" and "newly logged" categories of the "No comparison file" set that Baylor contends were not "newly" produced or logged because they are dated after June 15, 2016.[8]  784 of these appear to relate to binders prepared by Pepper Hamilton after June 15, 2016,  but that contain documents prior to June 15, 2016.  The parties disagree how these should be handled.  The other 31 are described as being explicitly dated after June 5, 2016.  The parties are **ORDERED** to appear for a hearing via Zoom on **Friday May 7, 2021, at 9:30 a.m.** to resolve whether these documents should be considered "newly" or "previously" produced or logged.

Plaintiffs also request monetary sanctions in "an amount equal to what Baylor has paid [UnitedLex] to date."  Dkt. 904 at 11.  As already explained, the Court does not find that any misconduct warranting sanctions of this nature took place.  Further, Baylor's insistence on using a third party to audit the Pepper Hamilton materials came at significant cost to Baylor, with the final tally running (at least) into the hundreds of thousands of dollars.  In this sense, then, Baylor has suffered a significant financial consequence for the manner in which in managed the Pepper Hamilton production. In the context of the facts addressed herein, that consequence is sufficient as far as a monetary sanction is concerned.  The Court will grant, however, Plaintiffs' request that, for

---

[7] As Plaintiffs have pointed out, Dkt. 914-1 at 1, this entire endeavor was to compare two independent sets of documents—Pepper Hamilton's documents and the Pepper Hamilton documents Baylor produced to Plaintiffs —to see if they matched.  There is no place in this exercise for additional documents to be given to UnitedLex.

[8]*See* Dkt. 934 at 3, 4.  Baylor summarizes the documents as follows:

| | |
|---|---|
| 94 | Documents identified on Accounting Log with language such as "Binder prepared post June 15, 2016" |
| 1 | Document identified on hardcopy materials log as post June 15, 2016 |
| 30 | Documents identified on their face as post June 15, 2016 |
| 690 | Documents identified on Accounting Log with language such as "Binder prepared post June 15, 2016" |

any reconvening of a deposition necessitated by the late production of these new documents, Baylor shall pay Plaintiffs' and witnesses' costs of travel and court reporter/videographer fees

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion Related to the UnitedLex Findings (Dkt. 904) is **GRANTED IN PART** and **DENIED IN PART** as set forth in detail above.  Baylor shall produce to Plaintiffs the documents identified in ¶ (1), and it shall provide to UnitedLex the identifications required by ¶ (2), no later than **15 days** from the date of this order. The Court **FURTHER ORDERS** that Baylor shall bear the cost of any deposition reconvened because of the production of these new documents, as described in more detail above, and Baylor shall bear the cost of UnitedLex's additional work as called for in ¶ (2).  All other relief sought by Plaintiffs in the motion is **DENIED**.

SIGNED this 26th day of April, 2021.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE