IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al*, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 6:16-CV-00173-RP-AWA |
| | § | |
| v. | § | *Consolidated with* |
| | § | 6:17-CV-228-RP-AWA |
| BAYLOR UNIVERSITY, | § | 6:17-CV-236-RP-AWA |
| | § | |
| Defendant. | § | |

## BAYLOR UNIVERSITY'S OBJECTIONS REGARDING
## MAGISTRATE JUDGE AUSTIN'S APRIL 26, 2021 ORDER

TO THE HONORABLE JUDGE PITMAN:

Defendant Baylor University ("Baylor") files this Objection to the Magistrate Judge Andrew Austin's April 26, 2021 Order (Dkt. 941) that sanctions Baylor and orders the production of privileged documents.

## I.     Introduction

Despite finding no bad faith by Baylor and no evidence "that Baylor or its counsel engaged in the sort of misconduct that would merit the severe sanctions Plaintiffs' request," Dkt. 941 at 5, Judge Austin's Order proceeds to impose one of the severest sanctions possible—ordering the sweeping production of a large volume of privileged documents. The overwhelming majority of these documents are internal law firm files containing opinion (or core) attorney work product. Through no fault of Baylor or its trial counsel, trial counsel never received or had the opportunity to review these materials prior to the UnitedLex comparison. Under Fifth Circuit law, such a severe sanction is appropriate only when a party has acted in bad faith. But there is no evidence of bad faith here. To the contrary, the evidence shows that the two undersigned law firms took extraordinary efforts to review, produce, and log an enormous amount of information: first, as part of Baylor's response to Plaintiffs' discovery requests and, second, as part of Baylor's effort to ensure that the documents

produced by its former law firm, Pepper Hamilton ("PH"), in response to Plaintiffs' subpoena to the parties' e-discovery vendor, UnitedLex, were properly produced, logged, or accounted for as non-responsive.[1]  The record, as discussed below, shows that the parties and the Court never expected a 100% match between Baylor's own production and the documents provided by PH to UnitedLex. For example, PH performed other work for Baylor in addition to working on the Title IX investigation.  Thus, PH's production to UnitedLex *necessarily* encompassed some documents that neither Baylor nor its trial counsel had seen before.  Baylor's trial counsel did not know the full extent of PH's production until *after* the UnitedLex comparison.

After receiving UnitedLex's list of PH documents that purportedly had not been previously produced or logged by Baylor, Baylor accounted for every document on a log.  **Moreover, Baylor produced or logged all of the documents that were deemed to be new nearly one year ago**. There is no evidence of impropriety.  There is no evidence Baylor is hiding anything.  The severe sanction of privilege waiver is not warranted on the evidence before the Court.

Further, despite undisputed evidence that UnitedLex made significant and costly errors during the comparison process,[2] the Order requires Baylor to pay UnitedLex to perform yet another comparison regarding 4,200 documents that Baylor determined were previously logged.  Dkt. 941 at 9-10.  Baylor objects to the Order's requirement that Baylor not provide any "new documents" to UnitedLex for purposes of this comparison because an accurate comparison of the 4,200 documents is impossible unless UnitedLex has access to *all* the documents that Baylor previously logged.  These additional documents are not "new" but documents that Baylor, in fact, actually logged long before

---

[1] The UnitedLex accounting was conducted under extraordinary circumstances: at the same time Baylor was ordered to produce a voluminous amount of documents based on new ESI searches and while navigating the logistical issues presented by its staff working from home during the pandemic.

[2] Baylor's evidence is undisputed because Plaintiffs never provided any sworn declarations or testimony from UnitedLex.

the hiring of UnitedLex.  Baylor also objects to the Order's directive that "UnitedLex's determination of whether [the 4,200] documents match will be conclusive."  UnitedLex is not a judge or special master but a vendor that never testified regarding its methods, processes, and conclusions, and never explained its errors.  The final decision of whether a document is privileged or not cannot, and should not, rest on a comparison performed by UnitedLex.

Finally, Baylor objects to the portion of the Order that requires the production (and reproduction) of thousands of unredacted educational records by Baylor, including sensitive sexual assault files, without complying with the procedural protections of FERPA and this Court's prior protective order.  The Order encompasses records that previously were produced to Plaintiffs with pseudonyms replacing the students' true names.  Baylor's obligations under FERPA are mandatory, not discretionary.  20 U.S.C. § 1232g(b)(2)(B); 34 C.F.R. § 99.31(a)(9)(i).  The Court's prior orders and the Magistrate Judge's orders have consistently recognized that before Baylor can release third-party student records, Baylor has **no choice** but to send FERPA notices **or** to de-identify student records through redaction. Dkt. 300 at 3-4; Dkt. 156; Dkt. 791; Dkt. 802.  Yet Judge Austin's Order requires Baylor (directly or through UnitedLex) to produce sensitive educational records directly to Plaintiffs without complying with 34 C.F.R. § 99.31(a)(9)(i) or the Court's prior orders.

## II.     Procedural History and Background

### A.  <u>The Pepper Hamilton Subpoena</u>

On March 29, 2017, Plaintiffs served a subpoena on PH requesting documents related to that firm's work for Baylor, including documents that PH collected from Baylor during the Title IX investigation, as well as internal, core attorney work product documents created by PH during the investigation—the vast majority of which were never even shared with Baylor (the "Law Firm Files"). Dkt. 328-1, 328-2.  Meanwhile, in the summer of 2017, the Court ruled on Baylor's privilege objections to Plaintiffs' Rule 34 requests for production, and it entered an order establishing an ESI cut-off date

of June 15, 2016.  Dkt. 168, 176.  Thereafter, in response to Plaintiffs' discovery requests, Baylor began producing and logging the Baylor documents that had been collected by PH during the Title IX investigation.  These Baylor source documents were maintained by PwC, the vendor used by PH during the investigation.  At that time, PwC did not maintain any Law Firm Files.  Those files remained solely with the PH lawyers.  Therefore, producing and logging the Law Firm Files required Baylor's trial counsel to coordinate with the lawyers who had conducted the investigation.  Dkts. 601 at ¶¶ 3-4, 913-1 at ¶¶ 8, 22.  By the summer of 2017, those former PH lawyers had moved to Cozen O'Connor ("Cozen").

Two years after serving the subpoena on PH, Plaintiffs moved to enforce it.  The Court granted Plaintiffs' motion to compel PH to produce documents responsive to the subpoena.[3]  Dkt. 653 at 10.  At Baylor's suggestion, so it could properly assert privilege objections over PH's documents and confirm to the Court and Plaintiffs that it had not improperly withheld documents responsive to Plaintiffs' request for production, the Court ordered the parties to select an independent third-party e-discovery vendor to facilitate the production of PH's documents.[4]  Dkt. 667.  Plaintiffs suggested UnitedLex, and Baylor agreed.  The purpose of using an independent third-party vendor was twofold: (i) to efficiently and accurately identify the PH documents that had already been produced or logged by Baylor during discovery and, therefore, did not need to be produced or logged again; and (ii) for those PH documents that had not already been produced or logged, to allow Baylor to account for the documents that had not been previously produced or logged, and to produce the material or, as

---

[3] By this time, the agreed ESI cut-off date had been extended to November 6, 2017.  Dkt. 645.
[4] As noted in Judge Austin's Order, the Court first ordered that all of PH's materials be produced to Plaintiffs without redaction and that Baylor "claw back" any privileged documents.  Dkt. 653, p.35-36.  But after further consideration and in light of Baylor's position that an order requiring the production of clearly privileged documents and information would be inappropriate, the Court agreed to use a third-party vendor to facilitate PH's production.

appropriate, to log and assert privilege as provided by the Court's prior orders.  Dkt. 667 at p. 2, 4; *see also* Dkt. 751 at p.2.

**B.  The UnitedLex Comparison**

UnitedLex received documents directly from PH in response to Plaintiffs' subpoena. Additionally, pursuant to the Court's Order, Baylor's e-discovery vendor, PwC, provided UnitedLex with the documents that Baylor previously had produced and logged to facilitate the accounting of all documents as either produced, logged, or non-responsive.  **PwC was never the custodian of, and never housed, the Pepper Hamilton files that UnitedLex received.**  Baylor's instruction to PwC on what to transmit to UnitedLex for the comparison was based on Baylor counsel's *belief and understanding* of what PH possessed, as represented to the Court by PH's counsel.  Baylor and PwC informed the Court of this fact at a hearing in December 2019.  Dkt. 913-4, p.3 (12/11/19 hearing transcript at 27:9 – 28:11, 29:5-9).  Further, the parties and the Court knew there would be documents created by PH after the original June 15, 2016 ESI cut-off date that had never been reviewed by Baylor that would need to be logged or produced after the UnitedLex comparison.  Thus, it was understood from the start there would be a sub-set of unmatched, never-before-reviewed documents that would need to be logged or produced by Baylor after the UnitedLex comparison.  Dkt. 906, p. 7 (12/6/19 hearing transcript) (Judge Austin: "So I think that means that Baylor would then need to go through whatever those non-duplicates are [and] produce or log them…."(25:9-11)).  The purpose of the comparison was not—as Judge Austin now holds—to *sanction* Baylor if UnitedLex was unable to match every single one of the 1,365,293 documents that PH provided to UnitedLex.  Instead, UnitedLex was to electronically verify, to the extent it could, what documents had already been produced or logged by Baylor in response to Plaintiffs' discovery requests, and then Baylor was to account for the delta, which would presumably be a very small amount—and indeed, it was.

### C. **The Results of the UnitedLex Comparison**

Initially, UnitedLex verified electronically that 1,331,916 documents of the 1,365,916 documents provided by PH to UnitedLex were previously produced or logged by Baylor.  For the remaining 33,377 documents, Baylor produced a log on May 12, 2020 that accounted for each document UnitedLex was unable to match and that showed how Baylor was able to match an additional 26,031 documents.  Baylor also accounted for, by producing, logging or identifying as non-responsive, the remaining 7,346 documents that were not matched by UnitedLex—two-thirds of which were post June 15, 2016 materials that all parties knew from the beginning would not have been previously logged or produced.  Plaintiffs doubted the accounting log's accuracy.  To aid in a resolution, Baylor agreed to pay UnitedLex for a manual review of the unmatched documents.

On September 22, 2020, UnitedLex validated an additional 21,248 documents as "matched" or "technical files," leaving 12,129 of the documents unmatched—all of which have now been accounted for or produced and have been for almost a year.[5]  To put these numbers in perspective, UnitedLex has now matched all but *less than 1% of the PH documents*.  **Because UnitedLex did not correctly match 21,248 documents the first time—prompting Plaintiffs to accuse Baylor of concealment—and because there is no competent evidence regarding UnitedLex's methods, further analysis by UnitedLex should not be conclusive as to privilege waiver in this case.**

### D. **Plaintiffs' Motion for Sanctions**

Thereafter, Plaintiffs filed a motion for sanctions against Baylor claiming its counsel of intentionally concealing documents.  In response to Plaintiffs' accusations, Baylor submitted detailed briefing to the Court, including sworn declarations and exhibits, accounting for each of the 12,129

---

[5] This was actually UnitedLex's third review of the documents.  At Plaintiffs' request, UnitedLex also conducted a second review using 95% textual matching, which resulted in UnitedLex matching an additional 10,054 documents.

unmatched documents.  Dkt. 913.  For example, Baylor explained some of the unmatched documents were post-June 15, 2016 documents (e.g., from the expanded ESI discovery period) that Baylor had no obligation to produce or log prior to the UnitedLex comparison (Dkt. 913, Section III.A.1); some were appropriately accounted for as non-responsive (e.g., related to a NCAA investigation) (Dkt. 913, Section III.A.2); some were previously produced by Baylor to Plaintiffs with a PH bates number but the documents inadvertently were not uploaded in PwC's voluminous data transfer to UnitedLex (Dkt. 913, Section III.A.4.e); as explained in more detail below, some of the pre-June 15, 2016 documents were not provided by Cozen to Baylor's trial counsel for review or production prior to the UnitedLex comparison (Dkt. 913, Section III.A.4.a); and, significantly, some of the documents UnitedLex categorized as not matching clearly do match—UnitedLex's comparison *still* contained genuine errors. Dkt. 913, Section B.  Plaintiffs presented no competent evidence regarding UnitedLex's process or the accuracy of its audit to contradict Baylor's sworn testimony.  Indeed, Judge Austin's Order notes: "Plaintiffs presented *no evidence* to cause the Court to question the majority of the explanations Baylor offered for the inconsistencies between the materials Baylor had previously produced, and the material Pepper Hamilton provided to UnitedLex for comparison."  Dkt. 941, p.5.  Further, the Court found that "[i]n general, the Court is satisfied with the detailed explanations Baylor has provided for the vast majority of the discrepancies identified by UnitedLex's audit."  *Id.*  Nevertheless, because there was a small sub-set of pre-June 15, 2016 documents that Baylor did not log or produce prior to the UnitedLex audit (at most 1,793 documents that have been logged or produced for almost a year now), the Court sanctioned Baylor by waiving privilege for these documents.

### III.   Grounds for Objection

#### A.   Baylor objects to Judge Austin's order compelling Baylor to produce privileged documents.

According to Judge Austin's Order, the sanction of privilege waiver is appropriate based on Baylor's prior certifications to the Court that all pre-June 15, 2016 PH documents in its possession

had been produced, as well as "the numerous prior warnings [that] require the Court to take a zero tolerance approach" to Baylor's failure to timely produce or log additional documents—even sanctioning Baylor for "honest mistakes." Dkt. 941 at 7. The Order requires Baylor to produce 589 clearly privileged documents to Plaintiffs without redaction—the overwhelming majority of which are the internal Law Firm Files of PH that Baylor and its trial counsel never received from PH or reviewed prior to the UnitedLex comparison.[6]

### i. The standard for the sanction of privilege waiver is bad faith—which Judge Austin explicitly found was not present here.

Contrary to Judge Austin's Order, a "zero tolerance approach" is not the standard for imposing the severe sanction of privilege waiver. The Fifth Circuit has explained that "[i]n exercising its discretion in considering the imposition of sanctions for discovery violations, a district court should consider the following factors: (1) the reasons why the disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of trial; and (4) any other relevant circumstances." *Bennett v. GEO Grp., Inc.*, Nos. 12-60017, 12-60348, 2013 WL 5916765, at *4 (5th Cir. 2013) (unpublished) (quoting *United States v. Garza*, 448 F.3d 294, 299–300 (5th Cir. 2006)). Thus, while broad, the district court's authority to impose sanctions under Federal Rule of Civil Procedure 37(b)(2) is not unlimited. *Chilcutt v. U.S.*, 4 F.3d 1313, 1320 (5th Cir. 1993). "The sanction imposed should be the *least severe* sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances." *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 2018 WL 5885543, at *3 (N.D. Tex. Aug. 31, 2018) (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486. 488–90 (5th Cir. 2012) (emphasis added)). Moreover, any sanction must

---

[6] In total, Judge Austin's Order directs Baylor to produce 679 "newly logged" documents to Plaintiffs. Ninety of those documents include HTML attachments and embedded images with no substantive content (i.e., email attachments that were separated from the privileged parent document during data processing). Baylor is not objecting to producing these 90 documents to Plaintiffs.

be "just." *Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). The selection of the sanction should "be guided by the 'concept of proportionality' between offense and sanction." *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996). Thus, the severe sanction of waiver of privilege is appropriate in cases of "unjustified delay, inexcusable conduct, and bad faith." *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017).

Ignoring this well-established case law, Judge Austin's Order cites one Fifth Circuit opinion to justify the automatic imposition of sanctions for Baylor's failure to timely produce and log pre-June 15, 2016 documents. Dkt. 941, p. 7 (citing *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989)).[7] *In re United States* notes, in *dicta* and in response to the government's *complete failure* to timely respond to discovery requests, that "as a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." 864 F.2d at 1156. But the general rule stated in *In re United States* has no application to this case and is not the end of the analysis. First, unlike the government in *In re United States*, Baylor did timely object to the production of PH's privileged materials in this case. Second, even untimely objections are not waived when a party has acted in good faith. *See In RE/MAX Intern., Inc. v. Trendsetter Realty, LLC*, No. H-07-2426, 2008 WL 2036816, *5 (S.D. Tex. May 9, 2008) (holding "untimely objections are waived *unless the court, for good cause, excuses the failure.*") (emphasis added) (internal citations omitted). Indeed, before imposing the sanction of waiver, courts should:

> Examine the circumstances behind the failure to file a timely response to determine
> whether it was inadvertent, defiant, or part of a larger calculated strategy of

---

[7] Judge Austin's order also cites two inapposite cases outside of the Fifth Circuit, *Marx v. Kelly, Hart & Hallman P.C.*, 929 F.2d 8 (1st Cir. 1991) and *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992). Dkt. 941, p.7. In *Marx,* the First Circuit dismissed a plaintiff's case for wholly failing to comply with an order requiring the production of documents, finding that plaintiff's actions were "taken in bad faith and without intention of compliance." 929 F.2d at 13. In *Richmark* the Ninth Circuit imposed the sanction of privilege waiver on a company held in contempt for failing to produce documents ordered by the court on multiple occasions. Both of these cases demonstrate the egregious conduct required to support the imposition of severe sanctions, such as privilege waiver.

> noncompliance; consider subsequent actions by the party to ascertain whether it was acting in good faith, as opposed to acting in a disinterested, obstructionist or bad faith manner; and take into account any resulting prejudice and the need to preserve the integrity of the rules; and may consider any less appropriate sanction.

*Id*; *see also Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 156 (S.D. Tex. 2009) ("Nevertheless, waiver is not automatic; this Court has discretion to determine whether good cause exists to preclude waiver. One factor frequently considered is whether the party that failed to timely object to the request acted in bad faith."); *accord Kaden v. Schleese Saddlery Serv. Ltd.*, EP-17-CV-00053-KC 2017, WL 7905498, at *3 (W.D. Tex. Nov. 20, 2017); *CGC Royalty Invs. I, LLC v. Bluewater Moorings, LLC*, No. 3:16-CV-899-D, 2017 WL 106795, at *7 (N.D. Tex. 2017).

Applying these standards here, Baylor's production and logging of a fraction of the 1.3 million pre-June 15, 2016 PH documents after the UnitedLex comparison cannot support Judge Austin's severe sanction of privilege waiver. This is not a case where the defendant failed to respond at all or failed to object at all. Baylor objected and made every attempt to guard the privilege over materials created by PH during the Title IX investigation. Indeed, Baylor has been accused of being overzealous. If Baylor were acting in bad faith to conceal the existence of documents, why would it log other documents of the exact same type and character or near duplicates of the same documents?

Further, while Judge Austin may believe that Baylor's privilege objections have been aggressive or time consuming, Plaintiffs repeatedly insisted on the production of clearly privileged information—including core attorney work product files. Baylor has a right to zealously protect such material. *See, e.g., American Nat'l Bank & Trust v. Equitable Life Assurance Society of the U.S.*, 406 F.3d 867, 878-79 (7th Cir. 2005) (citing *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 90 (3d Cir. 1992) (stating in a dispute over the attorney-client privilege that "it is expected that clients and their attorneys will 'zealously' protect documents believed, in good faith, to be within the scope of the privilege"). While Baylor does not desire to appear "obstreperous or unreasonable in front of a judge," where matters of privilege are concerned, "counsel must stake their claim and may not abandon it without being forced to do so."

*Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 103, (S.D. N.Y. 2000). This is true even when disputes over privilege take time to resolve. *See, e.g., Vioxx Products Liability Litigation Steering Committee v. Merck and Co.*, 2006 WL 1726675 (5th Cir. 2006) ("The problem at bottom in this case is the large number of documents demanded and produced with the attending claims of privilege. Traditional procedural protections are not limitlessly malleable. If staying within those traditional constraints takes more time than jumping their traces, that is not justification for doing so. The time it takes is the time it takes."). Baylor and its trial counsel have acted with diligence and integrity at all times during this large-scale, data-intensive case.

> ### ii. There is no evidence that Baylor's production and logging of a small sub-set of pre-June 15, 2016 documents after the comparison was the result of bad faith.

Baylor's prior briefing explained in detail the legitimate, good faith reasons why Baylor had not produced or logged a small sub-set of pre-June 15, 2016 documents prior to May 2020. Dkt. 913. For example, the overwhelming majority of these documents were never received or reviewed by Baylor's trial counsel until after the UnitedLex comparison due to a technical error by Cozen. As explained in Baylor's prior briefing, and as supported by the sworn testimony of Joshua Reed, when the PH attorneys who conducted the Baylor investigation moved to Cozen in 2017, Cozen's IT staff electronically uploaded the PH documents to Cozen's files. Dkt. 913, Section III.A.4.a.; *see also* Dkt. 913-12, Exhibit L (Reed Decl.). One electronic folder had an error during the uploading process and failed to completely upload. *Id.* As a result, when Cozen gave Baylor's trial counsel access to the PH materials for production in response to Plaintiffs' discovery requests, it did not include the files Cozen did not know had failed to properly upload. *Id.* Thus, Baylor and its trial counsel never had access to or reviewed these documents. Dkt. 913-1 ¶22, Exhibit A (McIntush Decl.). Later, these documents were provided by PH to UnitedLex in response to Plaintiffs' subpoena for the comparison, and then UnitedLex provided these documents to Baylor after the comparison was complete. *Id.* After receiving these documents *for the very first time* from UnitedLex, Baylor promptly produced or logged

these documents in May 2020.  Well more than half of the documents Judge Austin found waiver for

fall into this category.  Cozen's uploading error, which prevented Baylor's trial counsel from knowing

about or having access to these documents, does not support the required showing of "bad faith" by

Baylor or its counsel required to support a sanction of privilege waiver.

Similarly, as Baylor's prior briefing to the Court explained, there were also documents that

Cozen did not provide to Baylor's trial counsel in response to Plaintiffs' discovery requests because

Cozen believed those documents were duplicative of documents Baylor was already reviewing for

production.  For example, a small sub-set of documents were coded by Cozen as being stand-alone

Baylor "source" documents (*e.g.*, documents provided to PH by Baylor for purposes of the

investigation) that had been reviewed, selected, and exported from the PwC database by PH attorneys

during the investigation in order to prepare witness interview materials and issue chronologies.  Dkt.

913-15, Exhibit O (Tate Decl.) at Section II.  Cozen did not provide these "source" documents to

Baylor's trial counsel for review in response to Plaintiffs' requests for production because they

understood Baylor was conducting a simultaneous review of duplicate copies of these same Baylor

"source" documents in a separate database.  *Id.*  As a result, some of these documents were not

provided to Baylor's trial counsel for production or review until *after* the UnitedLex comparison, at

which time they were produced or logged.  *Id.*; Dkt. 913-2, Exhibit B (Newman Decl.) at ¶¶ 8(a).

It is a clear abuse of discretion to hold that *Baylor* waived privilege to documents that were not

even in its possession until they were provided by UnitedLex to Baylor after the comparison.  *See, e.g.,*

*Adkins v. Mid-America Growers, Inc.*, 141 F.R.D. 466, 469 (N.D. Ill. 1992) (holding that plaintiffs'

counsel's reliance on plaintiffs' response that they had no responsive documents was appropriate and

did not warrant sanctions).  Moreover, given the volume of production in this case, the unintentional

omission of a small number of pre-June 15, 2016 documents is understandable, not sanctionable.

*Compare Purcell v. Advanced Bionics Corp.*, No. 2010 WL 11534506, at *2 (N.D. Tex. June 11, 2010)

(finding the failure to produce certain documents was an "irregularit[y] which come[s] with voluminous document production" of over 600,000 pages); *see also Osborn v. Griffin*, 2014 WL 12647942, at *5 (E.D. Ky. Jul. 7, 2014) (holding sanctions were not warranted and that "[i]n light of the electronic discovery process and the volume of documents that have changed hands during the course of this litigation, it is unsurprising that some potentially relevant documents were missed or overlooked"); *Palm Bay Int'l, Inc. v. Marchesi di Barolo S.p.A.*, 2010 WL 1688203, at *4 (E.D. N.Y. Apr. 26, 2010) (declining to find the plaintiff had waived all of its objections by failing to produce "15 emails amid the thousands of emails and tens of thousands of documents produced by [the plaintiff] . . . [the plaintiff] states that the failure to produce these documents was inadvertent . . . Plaintiff has provided an explanation which, though unsatisfactory in terms of total and complete compliance, is at least reasonable.."); *Butler Mfg. Co., Inc. v. Americold Corp.*, 148 F.R.D. 275, 277 (D. Kan. 1993) (holding that failure to list a document on the privilege log did not constitute waiver "in light of the vast quantity of documents involved"). Finally, all of the documents have been accounted for as either produced, logged or non-responsive for close to a year. The draconian sanction of waiver of the attorney work product privilege on these documents is not warranted or supported by the case law.

### iii. <u>There is no evidence of prejudice to Plaintiffs.</u>

Judge Austin did not find, and Plaintiffs failed to present, any evidence that the fact that Baylor did not produce and log a small sub-set of pre-June 15, 2016 documents until after the UnitedLex comparison was prejudicial—much less that it is the type of prejudice that cannot be cured by a continuance. First, all the pre-June 15, 2016 documents that Baylor identified as needing to be produced or logged as a result of the UnitedLex comparison have been produced or logged for almost a year now, since May 2020. Baylor has not and is not withholding anything from Plaintiffs. Given that there are no discovery deadlines or trial dates set for these cases and that Judge Austin has already

ordered Baylor to pay for the cost to reconvene any depositions as a result of these newly produced documents, if there were any prejudice, it has been ameliorated.

Moreover, as for the privileged pre-June 15, 2016 logged documents, the overwhelming majority of these documents are PH's internal Law Firm Files—core attorney work product documents that were never even seen or shared with Baylor by PH.  *See* Exhibit A attached (example excerpts from Baylor's logs of the privileged, pre-June 15, 2016 documents Judge Austin ordered Baylor to produce).  Many of these work product files are, for example, drafts of witness interview notes, PowerPoint presentations, and factual chronologies prepared and frequently revised internally by PH's attorneys before sharing with Baylor.  And while these *particular* drafts may not have been logged by Baylor prior to the UnitedLex comparison, other drafts or final versions of the *very same documents* were logged by Baylor prior to the UnitedLex comparison years ago.  *See* Exhibit B attached (examples of substantively duplicative log entries covering variations of same document).  Thus, the fact that these particular documents were not logged until after the UnitedLex comparison did not cause any prejudice to Plaintiffs' case, and Plaintiffs have been well aware that Baylor has asserted privilege on these types of core work product documents for several years.

Simply put, Plaintiffs cannot point to any evidence of prejudice supporting an award of waiver of work product privilege.

**B. Baylor objects to Judge Austin's Order requiring Baylor to submit 4,200 previously logged documents to UnitedLex for another comparison.**

**i. UnitedLex cannot perform this comparison accurately without Baylor supplying copies of the documents that it previously logged.**

For the 4,200 documents that Baylor determined it previously logged, Judge Austin's Order directs Baylor to identify these documents to UnitedLex (both in the set that PH provided to UnitedLex and in the set that PwC/Baylor provided to UnitedLex) and then UnitedLex is to perform yet another comparison to confirm that these documents were in fact previously logged by Baylor.

While Baylor has substantial reservations about UnitedLex's ability to accurately complete this task, Baylor does not object to the overall process.  Rather, Baylor objects to the portion of the order prohibiting Baylor from providing additional documents to UnitedLex for purposes of this comparison for the following reason.  Dkt. 941, p.9-10.

After the UnitedLex comparison, PwC identified 515 documents that actually had been previously produced or logged by Baylor with "PH" bates numbers in production volumes PH_VOL033 and PH_VOL066 but that PwC failed to provide to UnitedLex for the comparison due to differences in the metadata formats.  Dkt. 913-18, Decl. of T. Ranta, ¶6.  Baylor should not be penalized for PwC's inadvertent uploading error and should be allowed to provide these documents— documents that were previously logged or produced to Plaintiffs with a "PH" bates number years ago, prior to October 2019—to UnitedLex for purposes of this comparison.  Otherwise, Baylor could be sanctioned for not logging a document that has in fact been logged for years.

### ii.   UnitedLex's conclusions from this comparison should not be "conclusive."

Judge Austin's Order holds that UnitedLex's findings from the 4,200 document comparison shall be "conclusive," and presumably, any documents UnitedLex is unable to match will also be subject to privilege waiver—even if UnitedLex is incorrect and the documents are in fact identical. But UnitedLex is an e-discovery vendor—not a special master.  At the outset of this process, Baylor understood UnitedLex was going to *facilitate* the production of PH's documents—not determine whether Baylor had met its discovery obligations in this case.  UnitedLex has not even appeared or testified before this Court about how it conducted its comparison work for the parties or the accuracy of its conclusions.

Nor has UnitedLex explained its errors.  For example, UnitedLex erroneously reported **688 documents** as un-matched even though the PH documents and Baylor-produced documents can be matched using very basic electronic methods (i.e., MD5 hash values).  Dkt. 913, Section III.B.1.

UnitedLex's manual comparison of the documents fared no better. For example, a large portion of the documents UnitedLex determined do not match are from hard-copy binders that were scanned by PH and Cozen at different times. As Baylor has explained (Dkt. 836), minor differences emanated from the manner in which PH and Cozen scanned their respective copies of the same binders because they used different vendors at different times. Dkt. 913-1 ¶¶7, 11-13; *see also* Dkt. 913-24 (Exhibit X filed under seal). As a result, non-substantive deviations occurred, such as a PH/UnitedLex binder containing hole-punch shadow marks that are not visible on the Cozen version of the exact same binder. Dkt. 913-25 (Exhibit Y filed under seal). Yet, UnitedLex's reviewers, apparently contract workers, categorized these documents as unmatched. Similarly, many PH/UnitedLex binder documents have imaging errors that render some or all pages unreadable or blank, causing the reviewer to have to use the documents before and after it to confirm the binder as a whole was a match. This matching process proved to be too complex in many instances for UnitedLex's contract reviewers. These hard-copy binders are part of the 4,200 documents that Judge Austin has ordered UnitedLex to re-compare. UnitedLex has not established that it is qualified to conduct this review. Holding that UnitedLex's determination is conclusive of whether the PH-logged or Baylor-logged 4,200 documents match is improper and cannot form this Court's sole basis to further sanction Baylor.

C. **If the Court intends to require Baylor to produce unredacted student records without complying with FERPA's procedural requirements, then Baylor requests an order expressly stating this directive.**

Judge Austin's Order directs Baylor (individually and through UnitedLex) to produce (or re-produce) several thousand student documents, without redaction, to Plaintiffs. This includes not just items that Baylor logged for the first time in May 2020, but also 2,794 items that Baylor *produced to* Plaintiffs in May 2020. Only 31 of these newly produced documents contain privilege redactions—

which Baylor is not objecting to producing without redaction *for privilege*.[8]  However, 247 documents

are educational records that contain student's personal identifying information—including student

third party sexual assault files.[9]  The Order requires that Baylor produce these records unredacted and

without any protections as required by FERPA and this Court's protective order—obviating any

confidentiality protections for third-party students identified in these records who have no connection

to this case.[10]  *See* 20 U.S.C. § 1232g(b)(2)(B); 34 C.F.R. § 99.31(a)(9)(i).

Even more concerning, the Order requires UnitedLex to produce to Plaintiffs unredacted

versions of the 1,261 documents Baylor matched to a document produced *prior to* the UnitedLex

comparison.  Dkt. 941 at 9 ("For the 1,261 documents that Baylor contends it previously *produced*,

UnitedLex shall provide those documents *as received from Pepper Hamilton* to counsel for the Plaintiffs,

so they can confirm that Baylor did in fact produce the documents previously." (first emphasis in

original; second emphasis added)).  Because PH's version of the documents do not contain any

redactions, even though Baylor *timely produced* these documents, Plaintiffs are to receive a version that

---

[8] A few of these documents do contain pseudonym redactions to protect the identities of third-party students, which, as noted above, Baylor objects to producing without the protections afforded by FERPA and this Court's protective order.  One document also contains information revealing confidential settlement communications regarding a student settlement.  This Court previously ruled that student settlement agreements are not relevant and proportional to the needs of this case.  *See generally* Dkt. 631 at p.3 (stating that the plaintiffs had not established that student settlement agreements are relevant or proportional to the needs of the case).

[9] Baylor does not object to re-producing without redaction (either individually or through UnitedLex) those documents that do not contain student's personal identifying information and will proceed to do so in accordance with Judge Austin's Order.

[10] The Court's original protective order requires that students receive advance written notice of their right to object.  Dkt. 156.  When the notice-and-objection process became unwieldy in this case, the parties jointly requested guidance from the Court on a process for de-identifying records so that FERPA notices could be avoided.  Dkt. 289.  The Court then entered an order establishing standards for de-identifying records.  Dkt. 300 at 3-4.  When the redaction process also became time-consuming, Judge Austin revised the FERPA procedure, eliminating the redaction process and requiring Baylor to send FERPA notices except in very limited circumstances.  Dkt. 791 at 1; Dkt. 802.

has no pseudonym redactions (i.e., redactions that replace student names with pseudonyms) or other confidentiality protections under the parties' protective order.

The Order's ruling also has the potential to apply to binders prepared by PH *after* June 15, 2016 that Judge Austin wishes to discuss at the upcoming hearing on Friday, May 7, 2021. Some of these binders are comprised of Baylor files relating to third-party sexual assaults that have already been produced to Plaintiffs' *twice now*. These files contain pseudonym redactions to protect the victims', alleged assailants', and the student witnesses' identities. These records were produced by Baylor prior to the UnitedLex comparison because Plaintiffs requested third-party sexual harassment and assault files as part of their requests for production. Dkt. 913-1 (Exhibit A, Decl. of H. McIntush, ¶23). These records were then produced, yet again, by Baylor *after* the UnitedLex comparison as part of binders collected and put together by PH in the summer of 2016 as part of PH's additional legal work performed for Baylor.[11] Dkt. 913-15 (Exhibit O, Decl. of J. Tate, ¶¶4-7); *see also* Dkt. 621-2 at ¶5. If Judge Austin adopts Plaintiffs' argument and finds that these binders constitute pre-June 15, 2016 materials even though they were organized and prepared after that date, they would become subject to the portion of the Order requiring production without redactions. But requiring Baylor (through UnitedLex) to produce these files—for yet a third time—without any pseudonym redactions to protect the identities of the third-party students in those records is improper and appears to be an unintended consequence of Judge Austin's Order.

Finally, the opinion states that Baylor's "dogged insistence" regarding FERPA has "slowed" discovery in this case, suggesting that Baylor acted inappropriately or bears special responsibility for

---

[11] Baylor scanned these files for electronic transfer to PH in the summer of 2016. Dkt. 913-15 (Exhibit O, Declaration of Joseph Tate, ¶¶4-7). PH staff then printed these documents and placed them in binders. *Id.* Thus, while the post-June 15, 2016 binders were part of the documents produced by PH to UnitedLex in response to Plaintiffs' subpoena, neither Baylor nor its trial counsel had ever seen these binders before nor had they searched for them as they were created after the original ESI cut-off date. Dkt. 913, Section III.4.c.

discovery delays due to compliance with FERPA. Dkt. 941 at 1. FERPA's procedural requirements are indeed time-consuming and tedious. But FERPA is a federal law that Baylor must follow, and its compliance with FERPA should not be a factor in granting sanctions. Moreover, as this Court's protective order recognizes, protecting the identifies of third-party students who have no connection to this case—particularly those who are victims of sexual assault—is important to individual privacy rights.

Baylor therefore objects to this portion of the Order and requests that Baylor and UnitedLex not be required to re-produce any documents that have been already produced with pseudonym redactions. To the extent the Court upholds the waiver ruling as to documents that were previously logged, Baylor further requests that it be allowed to mark any previously withheld documents containing personally identifiable information from student records as "Attorneys Eyes Only" as required by this Court's protective order and pseudonym redact to ensure that these unrelated third party's privacy rights are respected. Dkt. 156, 2.b. In the alternative, if Baylor is required to produce FERPA-protected educational records in an unredacted form, such as third-party sexual assault files, Baylor requests an order that expressly requires Baylor to do so without complying with the procedural requirements of 34 C.F.R. § 99.31(a)(9)(i).

## IV.    Prayer

Therefore, for the reasons stated in this objection, Baylor requests that this Court reverse the Magistrate Judge's April 26, 2021 Order (Dkt. 941) to the extent it: (i) compels the production of privileged documents by Baylor; (ii) refuses to allow Baylor to provide additional documents to UnitedLex for purposes of its 4,200 document comparison; (iii) holds that the results of UnitedLex's 4,200 document comparison shall be "conclusive"; and (iv) requires the production of unredacted educational records with personal identifying student information without any confidentiality protections as afforded by FERPA and this Court's protective order.

Respectfully submitted,

**WEISBART SPRINGER HAYES LLP**

By: /s/ Julie A. Springer
    Julie A. Springer
    State Bar of Texas No. 18966770
    jspringer@wshllp.com
    Sara E. Janes
    State Bar of Texas No. 24056551
    sjanes@wshllp.com
    Geoff Weisbart
    State Bar of Texas No. 21102645
    gweisbart@wshllp.com
    Mia A. Storm
    State Bar of Texas No. 24078121
    mstorm@wshllp.com
    212 Lavaca Street, Suite 200
    Austin, Texas  78701
    (512) 652-5780
    (512) 682-2074 (facsimile)

**THOMPSON & HORTON LLP**

Lisa A. Brown
State Bar of Texas No. 03151470
lbrown@thompsonhorton.com
Ryan H. Newman
State Bar of Texas No. 24059944
rnewman@thompsonhorton.com
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas  77027-7554
(713) 554-6741 (telephone)
(713) 583-7934 (fax)

Holly G. McIntush
State Bar of Texas No. 24065721
hmcintush@thompsonhorton.com
8300 N. MoPac Expressway, Suite 220
Austin, TX 78759
(512) 615-2350 (telephone)
(512) 682-8860 (facsimile )

**COUNSEL FOR DEFENDANT
BAYLOR UNIVERSITY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was served upon Plaintiffs' counsel of record on May 5, 2021, via the Court's ECF/CMF electronic service system as follows:

Mr. Chad W. Dunn (Attorney in Charge)          *Via ECF: chad@brazilanddunn.com*
**BRAZIL & DUNN, L.L.P.**
4407 Bee Caves Road, Suite 111
Austin, Texas 78746

Mr. K. Scott Brazil          *Via ECF: scott@brazilanddunn.com*
**BRAZIL & DUNN, L.L.P.**
13231 Champion Forest Drive, Suite 460
Houston, Texas 77069

Mr. Jim Dunnam          *Via ECF: jimdunnam@dunnamlaw.com*
Ms. Andrea Mehta          *Via ECF: andreamehta@dunnamlaw.com*
Ms. Eleeza Johnson          *Via ECF: eleezajohnson@dunnamlaw.com*
**DUNNAM & DUNNAM, L.L.P.**
4125 West Waco Drive
Waco, Texas 76710

Ms. Laura Benitez Geisler          *Via ECF: lgeisler@textrial.com*
Mr. Sean J. McCaffity          *Via ECF: smccaffity@textrial.com*
Jody L. Rodenberg          *Via ECF: jrodenberg@textrial.com*
Alexandria Risinger          *Via ECF: arisinger@textrial.com*
George (Tex) Quesada          *Via ECF: quesada@textrial.com*
**SOMMERMAN, MCCAFFITY,**
 **QUESADA & GEISLER, LLP**
3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas  75219-4461

/s/ Julie A. Springer
Julie A. Springer