IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al*, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 6:16-CV-00173-RP-AWA |
| | § | |
| v. | § | *Consolidated with* |
| | § | 6:17-CV-228-RP-AWA |
| BAYLOR UNIVERSITY, | § | 6:17-CV-236-RP-AWA |
| | § | |
| Defendant. | § | |

**BAYLOR UNIVERSITY'S REPLY IN SUPPORT OF ITS OBJECTIONS REGARDING
MAGISTRATE JUDGE AUSTIN'S APRIL 26, 2021 ORDER**

Lisa A. Brown
Ryan H. Newman
THOMPSON & HORTON LLP
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027-7554
Tel. (713) 554-6741
Fax (713) 583-7934

Holly G. McIntush
THOMPSON & HORTON LLP
8300 N. MoPac Expressway, Suite 220
Austin, TX 78759
Tel. (512) 615-2350
Fax (512) 682-8860

Julie A. Springer
Sara E. Janes
Geoff Weisbart
Mia A. Storm
WEISBART SPRINGER HAYES LLP
212 Lavaca Street, Suite 200
Austin, Texas 78701
Tel. (512) 652-5780
Fax (512) 682-2074

**Attorneys for Baylor University**

TO THE HONORABLE JUDGE PITMAN:

Defendant Baylor University ("Baylor") files this Reply in Support of its Objections to Magistrate Judge Andrew Austin's April 26, 2021 Order (Dkt. 941) as follows:

## I.  Introduction

Plaintiffs' Response devotes few pages to arguing why the outcome of the UnitedLex comparison supports the magistrate's severe sanction of privilege waiver. Instead, the bulk of their response discusses unrelated discovery disputes claiming that Baylor's overall conduct warrants this severe sanction. As discussed in Section II.D below, Plaintiffs' attempt to portray Baylor as obstructionist and its attorneys as dishonest mischaracterizes the record and relies on assertions that in some instances are patently false.

The evidence relating to the UnitedLex comparison—a highly technical and complex undertaking—demonstrates the exact *opposite* of the false narrative urged by Plaintiffs. There is no evidence that Baylor's counsel delayed the UnitedLex comparison and no evidence that Baylor hid documents or engaged in any improper conduct. To the contrary, the evidence shows that Baylor's counsel was unaware of a small sub-set of pre-June 15, 2016 documents that had not been previously produced or logged. The severe sanction of privilege waiver is unjustified.

## II.  Argument and Authorities

**A.  Waiver of privilege or work product protection is available as a discovery sanction only in cases of egregious or flagrant misconduct.**

According to Plaintiffs, a court has broad discretion to fashion any discovery sanction, including privilege waiver, so long as the sanction is "lesser" than a death-penalty sanction. Dkt. 960 at 11-12. But neither case cited by Plaintiffs involves waiver of privilege or work product. *See Law Funder, L.L.C. v. Munoz*, 924 F.3d 753 (5th Cir. 2019); *Chilcutt v. United States*, 4 F.3d 1313 (5th Cir. 1993). And their argument ignores the requirement that any sanction must be "just," *Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982), and "the *least severe* sanction

1

adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances." *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 2018 WL 5885543, at *3 (N.D. Tex. Aug. 31, 2018) (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488–90 (5th Cir. 2012) (emphasis added)).

Privilege or work product waiver is an extremely serious sanction—potentially more serious than death-penalty sanctions because the waiver can impact other lawsuits. *See Jones v. Am. Gen. Life & Accident Ins. Co.*, 2002 WL 32073037, at *6 (S.D. Ga. 2002) (citing *In re RDM Sports Group, Inc.*, 277 B.R. 415, 424 (N.D. Ga. 2002)) (describing privilege waiver as "the most extreme sanction that a court can impose"); *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1365 (D. Kan. 1995) (noting that the "extreme prejudice" is "compounded" by the risk litigants may be forced to divulge the information in other litigation); *see also U.S. v. Phillip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) (describing waiver of privilege as a "serious sanction"); *Butler v. Mueller Cooper Tube Co.*, 2018 WL 1750500, at *2 (N.D. Miss. 2018) (same); *DL v. Dist. of Columbia*, 274 F.R.D. 320, 325 (D.D.C. 2011) (same); *B&S Equip. Co. v. Truckla Servs., Inc.*, 2011 WL 2637289, at *5 (E.D. La. 2011) (same); *Kelley v. Swank*, 2005 WL 8155611, at *4 (M.D. La. 2005) (same); *cf. PIC Group, Inc. v. LandCoast Insulation, Inc.*, 2011 WL 2669144, at *8 (S.D. Miss. 2011) (although sanctions were proper for "gross negligence" in failing to preserve and produce ESI and "suspicious and inexcusable disregard" of court's discovery order, privilege waiver was a "severe sanction" and not justified). Whether characterized as bad faith, unjustified delay, or inexcusable conduct, a high level of culpability is required to find waiver.

Plaintiffs argue that Baylor misrepresented precedent regarding the level of culpability required for privilege waiver. Dkt. 960 at 10-11. Plaintiffs' focus on an editing error obscures the salient issue before the Court: what level of culpability is required to find waiver of privilege?

In *EEOC*, the Fifth Circuit discussed waiver resulting from "unjustified delay, inexcusable conduct, *or* bad faith," while Baylor's brief stated "unjustified delay, inexcusable conduct, and bad

2

faith." *EEOC v. BDO USA L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (emphasis added). But in *EEOC*, the Court cited *United States v. Phillip Morris*, which used "and," not "or." *Phillip Morris*, 347 F.3d at 954. And the origin of the "unjustified delay, inexcusable conduct, and bad faith" language is *First Savings Bank, F.S.B. v. First Bank System, Inc.*, 902 F. Supp. 1356 (D. Kan. 1995), which the D.C. Circuit cited in *Phillip Morris*. In that case, defendants wholly failed to provide a timely privilege log. *Id.* at 1358. When they finally produced a log two weeks before trial, it was insufficient; the magistrate held it untimely and compelled production of privileged documents. *Id.* at 1359, 1363. The district court reversed, holding that waiver is an appropriate sanction only for "egregious" conduct: "As the federal rules, case law and commentators suggest, waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *Id.* at 1361. The court characterized privilege waiver as "the harshest [of] sanctions" that should be reserved "only for the most flagrant violations." *Id.* (citing *E. Technologies, Inc. v. Chem-Solv, Inc.*, 128 F.R.D. 74, 75 (E.D. Pa. 1989)). Other courts also require bad faith or similar culpable conduct before privilege or work-product waiver may occur. *See, e.g.*, *Am. Nat'l Bank & Trust Co. of Chi. v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005) ("given the absence of bad faith, willfulness, or fault," the sanction of privilege waiver was improper); *B&S Equp. Co., Inc.*, 2011 WL 2637289, at *5 (declining to impose "serious sanction" of privilege waiver absent reason to find defendants' actions were in "bad faith" or "flagrant"); *Parkcrest Builders, LLC v. Hous. Auth.*, 2017 WL 1426933, at *4 (E.D. La. 2017) ("While Liberty's delayed responses and faulty responses might constitute waiver of other objections," the conduct was not "such a flagrant violation so as to waive any claims of privilege.").

The magistrate did not find bad faith or other culpable conduct with regard to any of the privileged material that is the subject of this objection. Dkt. 941 at 4-5 (finding that Baylor did not engage in "actionable misconduct" and that the magistrate was "satisfied with the detailed explanations Baylor has provided for the vast majority of the discrepancies identified by UnitedLex's audit"). The

3

magistrate noted that Plaintiffs presented "no evidence" questioning the majority of Baylor's explanations for the potential inconsistencies found by UnitedLex.[1] *Id.* at 5. Nonetheless, despite the fact that Baylor was not aware of the documents at issue until after the UnitedLex comparison in February 2020 and promptly produced or logged them by May 2020, the magistrate imposed the extreme sanction of waiver for Baylor's failure to log or produce them "years ago." *Id.* at 7.

The magistrate's sanction was not based on Baylor's conduct with regard to the privileged material at issue but was based on a "zero tolerance" standard and the magistrate's belief that Baylor's supplemental productions during this high-volume ESI litigation have delayed the case. Rather than focus on the actual documents and conduct at issue, Plaintiffs use their opening pages to discuss past disputes and press their theme of mendacity. In doing so, they distort the record, as shown below. *See* Section II.D *infra*. Moreover, their allegations do not inform the analysis regarding the severe sanction of privilege waiver for the small sub-set of documents logged by Baylor after the UnitedLex comparison.

**B.      Plaintiffs do not identify any evidence that Baylor's production and logging of a small sub-set of pre-June 15, 2016 documents after the UnitedLex comparison was the result of improper conduct.**

The issue before this Court is whether Baylor's logging of **589** clearly privileged PH documents in May 2020 (out of more than 1.3 million documents)—the overwhelming majority of which are the internal law firm files of PH that Baylor and its trial counsel did not receive from PH prior to the UnitedLex comparison—supports the sanction of privilege waiver as to those documents. Dkt. 947 at 8; Dkt. 941 at 8-9. Instead of directly addressing this question, Plaintiffs argue the following:

> Had the court not ordered the UnitedLex comparison…**over 12,000 unproduced or unlogged documents would have remained hidden in Cozen's IT systems and in PH files**. Under these circumstances, … Baylor cannot hide behind a purported

---

[1] Although the magistrate stated that Plaintiffs presented no evidence regarding the "majority" of Baylor's explanations, in fact Plaintiffs presented no evidence—and the magistrate cited no evidence—rebutting *any* of Baylor's explanations.

4

technical error nor can it dismiss PH's representations to the court in June 2017. Discovery sanctions exist to deter exactly this type of failure.

Dkt. 960 at 17-18.

The reference to "12,000" documents is highly misleading. For example, 30 percent of these documents are post-June 15, 2016 documents, and Baylor had no obligation to produce or log these documents prior to the UnitedLex comparison. *See* Dkt. 906 at 25:19-25 (magistrate acknowledging at hearing that there would be post-June 15, 2016 material that had not been reviewed by Baylor prior to UnitedLex comparison); Dkt. 913-4 at 41:5-7 (Plaintiffs' counsel stating in open court that "obviously, the [documents] after [June 15, 2016], [Baylor] will not have produced, and nobody's going to catch their hair on fire because of that."); *se also* Dkt. 934 at 2-3. The 12,000 figure also includes, for example:

- 1,176 *Non-responsive* documents properly accounted for by Baylor. *See* Dkt. 906 at 24:17-25:4 (magistrate acknowledging that PH's data would include non-responsive documents that had not been produced); *e.g.*, 913-26 (example of non-responsive NCAA document); Dkt. 913-27 at 5 (parties' agreement that documents related to third-party claims after the third-party had retained counsel need not be produced); Dkt. 146 at 8-9 (Baylor need not produce documents related to NCAA investigation); Dkt. 565 at 6 ("Baylor's communications with the NCAA, the Big XII, and the Texas Rangers are not discoverable from any party to this case, including third parties").

- 1,540 Documents that Baylor actually matched to previously produced or logged documents using "MD5 Hash values"—a digital fingerprint that is the gold standard for ESI matching—or other metadata. *See* Dkt. 961 at 70:20-71:23 (magistrate stating that MD5 Hash values are regularly used in other contexts to identify duplicate documents); *see also* Dkt. 913-2 at ¶ 5.

- 4,137 Paper documents that UnitedLex was unable to match because of copy-machine scanning anomalies, such as hole-punch marks being visible on one scanned document but not on its twin or pages with imaging errors. *See* Dkt. 913-1 at ¶¶ 7, 12-20; Dkts. 909-1 – 909-3, 909-7; Dkt. 911-1.

*See also* Dkt. 904-1 at 8; *see also* Dkt. 913 at 8-11, 15-16. The magistrate's privilege waiver sanction was not based on 12,000 "hidden" documents, and there is no evidence of Baylor hiding anything.

Plaintiffs' remaining arguments are without merit. First, Plaintiffs argue even though the 589 documents at issue constitute a "miniscule fraction" of Baylor's overall document production that fact is of no matter—that "elephants are often hidden in mouseholes." Dkt. 960 at 14. The problem with this argument is that there are no elephants here. Baylor's log shows that these particular law firm documents are exactly the types of documents over which Baylor has asserted privilege since commencement of discovery. Dkt. 947-1. Many of the documents are drafts of duplicative or nearly duplicative documents logged by Baylor *prior* to the UnitedLex comparison years ago. Dkt. 947-2.

Second, Plaintiffs argue that waiver is supported by Baylor's "fail[ure] to *timely* assert privilege" over these materials. Dkt. 960 at 15 (emphasis added). But Baylor from the outset objected to producing any work-product materials created by PH during the Title IX investigation. *See* Dkt. 94-2 (objections to RFPs); Dkt. 104 (opposition to motion to compel); Dkt. 113 (June 2017 privilege log). And when Baylor received PH's subpoenaed documents for the first time in February 2020 when UnitedLex transmitted them to Baylor, Baylor accounted for all of them and, in May 2020, produced any unmatched, non-privileged documents as well as logs identifying the 589 privileged documents at issue. Dkt. 836. These 589 documents were timely logged more than a year ago. Cognizant of the Court's busy docket, Baylor performed all of these tasks without guidance from the magistrate.[2]

Third, Plaintiffs dismiss the technical errors that prevented Baylor's trial counsel from obtaining these documents earlier in the litigation, describing them as "purported" and contending that Baylor's trial counsel should have uncovered the errors prior to the UnitedLex comparison. They do not say how. Baylor's declarations—which are uncontested—show that its trial counsel exercised diligence in coordinating with the e-discovery vendor and the lawyers who worked on the Title IX

---

[2]  Although the magistrate ordered UnitedLex to produce a comparison report by January 15, 2020 and stated that "the Court will set a status conference to discuss next steps and deadlines," Dkt. 751, the magistrate never held a status conference and never identified any steps or deadlines for Baylor. Baylor imposed upon itself the May 2020 deadline. Dkt. 829.

investigation to gather all responsive information and ensure that it was logged or produced—ultimately producing millions of pages and spending more than $4.5 million in vendor and contract attorney fees as of May 2019.  Dkt. 622-1 at ¶¶ 3, 5, 9-10; *see also* Dkt. 601-6 at ¶ 7-8.  Baylor reasonably relied, as the Court did, on Cozen's representations that it had provided all of the PH responsive data to Baylor for review, production, and logging.  And Cozen attorneys, too, acted with diligence in gathering responsive information across multiple sources based on the best information available to them at the time.  That a small sub-set of documents was inadvertently not provided to Baylor—a veritable needle in a haystack of various computer platforms—is not Baylor's or its trial counsel's fault.  It is not evidence of bad faith or other culpable conduct on anyone's part, but certainly not by Baylor.  *Cf. Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 341-42 (5th Cir. 2015) (finding that district court abused its discretion and its findings were clearly erroneous when it held an attorney in contempt; evidence showed the attorney's client misled him about whether a thumb drive existed and the attorney did not know at the time of his statements to the court that the thumb drive existed).

Essentially, Plaintiffs want this Court to hold Baylor to a standard of perfection.  But perfection is not the standard for the imposition of sanctions, especially in the context of voluminous ESI discovery.  *See infra* Section IV.  "[T]he Federal Rules of Civil Procedure do not require perfection."  *Slocum v. Int'l Paper Co.*, 2019 WL 8918747, at *3 (E.D. La. Mar. 15, 2019) (quoting *Freedman v. Weatherford Int'l Ltd.*, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014) (noting that "the defendant has reviewed millions of documents and produced hundreds of thousands, comprising nearly 4.4 million pages, in this case.  It is unsurprising that some relevant documents may have fallen through the cracks."); *see also Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013) ("A party may comply in good faith with its discovery obligations and yet there may be supplemental productions or even additional responsive documents that were inadvertently omitted.  Such supplemental productions or responses do not necessarily equate to discovery misconduct."); *The*

7

*Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, Cmt. 4.b., 91 (2018) ("It is neither reasonable nor feasible for a party to search or produce information from every electronic source that might contain information relevant to every issue in the litigation, nor is a party required to do so."). The inadvertent mistakes regarding a subset of documents, unknown to Baylor and its trial counsel, do not support the imposition of a waiver sanction on Baylor.

**C.      Plaintiffs have failed to show any prejudice from the May 2020 logging and production of a small sub-set of pre-June 15, 2016 documents after the UnitedLex comparison.**

Plaintiffs offer no specific evidence of prejudice flowing from the May 2020 production and logging of the documents at issue. Instead, Plaintiffs broadly assert, without any supporting evidence, that they have generally been prejudiced because discovery has taken a long time. Baylor agrees that discovery has taken a long time—but not because of the production or logging of documents in connection with the UnitedLex comparison, which was completed one year ago.

As the Court is well aware, this suit consists of 15 separate plaintiffs alleging different sexual assaults over more than a decade. They filed or joined lawsuits between 2016 and 2018 which were consolidated for discovery in February 2019, which prompted an expansion of the discovery period and essentially restarted the litigation clock due to the addition of new plaintiffs for whom discovery had barely begun. Dkt. 913-3; Dkt. 1; Dkt. 2; Dkt. 14; Dkt. 21. As of May 2019—before the ramp up of discovery involving the new plaintiffs—Baylor had searched the ESI of more than 60 custodians and produced more than 3.3 million pages of documents, plus audio and video records and hundreds of thousands of text messages. Dkt. 622-1 at ¶ 3. Along the way the parties had disputes over the privacy interest of third parties and the scope of discovery, and Plaintiffs themselves also resisted discovery which required court resolution. *See, e.g.*, Dkts. 300-304; Dkt. 146; Dkt. 605; Dkt. 615. Baylor's ESI production in just 2018 took 20,000 hours of attorney, paralegal, and IT time. Dkt. 622-1 at ¶ 5. And all of this was *before* the magistrate ordered in 2020—during a pandemic with lawyers

working on home internet—that Baylor run numerous new ESI searches on additional Baylor custodians. Dkt 819; Dkt. 913-3 at 3; Dkt. 829. This backdrop provides the relevant context for evaluating any delay.

Setting aside the sheer volume of discovery, which has understandably brought complications for both parties, Plaintiffs' discovery requests slowed the discovery process: (i) they repeatedly sought a large volume of plainly privileged attorney client and work product documents, including those from the Office for General Counsel, imposing time-consuming privilege-logging and redactions on Baylor; and (ii) Plaintiffs sought fourteen years' worth of unrelated, third-party sexual assault files that required special handling under federal privacy law and the Court's protective orders. Baylor ultimately de-identified thousands of student names from the sensitive records requested by Plaintiffs. Dkt. 622-1 at ¶ 5; *see also* Dkt. 622-3 at ¶ 5; Dkt. 302 at ¶¶ 3-5.

In short, a confluence of events that predate UnitedLex has brought the parties to this point. Although the magistrate's expression of frustration is understandable, these delays provide no basis for sanctioning Baylor by ordering a privilege waiver. Finally, Plaintiffs have identified no prejudice from the logging of these documents, which occurred more than a year ago.

### D.      Plaintiffs' response distracts from the relevant issues.

Unable to show any improper conduct by Baylor with regard to the documents at issue, Plaintiffs present misleading hit-and-run allegations to suggest that Baylor should be sanctioned for other conduct that is not at issue. None of these allegations supports the waiver sanction.

#### 1.      Baylor did not submit "false" certifications.

A certification must be complete and correct "as of the time it is made." *Ibarra v. Baker*, 338 F. App'x 457, 470 (5th Cir. 2009) (quoting Fed. R. Civ. P. 26(g)(1)). Sanctions are appropriate if a certification violates the rule "*without substantial justification*." *Id.* (emphasis added). Here, neither Plaintiffs' response nor their original motion for sanctions rebuts the evidence that, at the time of the

9

certifications that pre-date the UnitedLex audit, Baylor's counsel was unaware of a small sub-set of pre-June 15, 2016 documents that had not been previously produced or logged. Baylor's counsel reasonably believed that they had obtained access to all responsive materials from the lawyers who conducted the investigation and the vendor that hosted the investigators' data. Dkt. 601-5; Dkt. 601-6; Dkt. 612-1; *see also* Dkt. 913-1 at ¶ 8; Dkt. 913-12; Dkt. 913-15 at ¶¶ 8-11. When Baylor learned of additional documents following the UnitedLex comparison, it promptly produced and logged these documents in May 2020 exactly as contemplated by Rule 26(e) of the Federal Rules of Civil Procedure.

Nevertheless, relying primarily on this Court's order of June 7, 2019 (Dkt. 653), Plaintiffs claim that Baylor gave false certifications. Dkt. 960 at 4. That order did not find that Baylor falsified a certification. In that order, the Court expressed concern that Baylor, having previously certified its production of PH documents in September 2018, had produced or logged additional PH documents in the spring of 2019. Dkt. 653 at 32. The Court scheduled a hearing to receive further information. Dkt. 653 at 31-33. At the hearing, Cozen explained the quality control processes that led to the discovery of inadvertent errors, including a coding error. Dkt. 672 at 19-22. Cozen stated that they identified the documents for trial counsel (*id.* at 21:5-23, 22:2-4), and trial counsel promptly produced or logged them. After receiving Cozen's and Baylor's explanations at the hearing, the Court acknowledged that "there is going to be some margin of error, especially in a case with this complexity with as many moving parts and types of privilege and confidential information." Dkt. 672 at 26:5-11.

Regarding the September 2018 certification referenced by Plaintiffs, the Court's scheduling order required Baylor and Plaintiffs to certify by September 17, 2018, that they had completed the "production" of documents ordered by the Court. Dkt. 312. On September 28, 2018, Baylor certified its "*production* of *non-privileged* documents."[3] Dkt. 653 at 32 (emphasis added); Dkt. 618-2. Baylor's

---

[3] An earlier email on September 18, 2018, stated that the production was nearing completion but that some FERPA redactions were still being applied. Dkt. 604-4.

statement was meant to indicate that it was still logging documents that had been tagged as privileged.[4] Dkt. 672 at 25:15-17. Plaintiffs themselves prepared a similar certification in which they referenced the completion of their production, but they provided no privilege log to Baylor at that time. *See* Dkt. 605 at 2; Dkt. 672 at 25:15-17. Then, in March 2019, six months after certifying their production, Plaintiffs produced 1,500 new documents without explanation. Dkt. 605-14 (email from Plaintiffs' counsel); Dkt. 672 at 25:18-21; Dkt. 605 at 2.

At the June 21, 2019 hearing, Baylor acknowledged that the September certifications of both parties could have been more precise. Dkt. 672 at 25:11-21. Following the hearing, the Court entered an order stating that Baylor had acknowledged that its September certification was "incorrect," and the Court "caution[ed] Baylor that even [an] inadvertent violation of a discovery order is eligible for sanctions." Dkt. 667 at 3. But the Court did not sanction Baylor, presumably because it accepted the honest explanations provided to the Court by Baylor and Cozen. Indeed, the Court concluded the hearing by acknowledging the "goodwill and professionalism of the lawyers in this case." Dkt. 672 at 66:5-12.

Plaintiffs are now asking the Court to uphold a severe sanction of waiver in 2021 based on allegations that the Court reviewed in 2019 that did not result in a sanction. Plaintiffs are focusing on the past because subsequent events provide no support for sanctions. Plaintiffs have not shown any certification to be false. *See, e.g.,* Dkt. 716, Dkt. 829. For example, on October 16, 2019, Baylor

---

[4] Due to the volume and content of the documents, which included university documents from in-house lawyers, Baylor's team of reviewers tagged thousands of documents as containing privileged information or work product. Dkt. 622-1. Preparation of a privilege log of this magnitude required senior attorneys to review the team's preliminary tagging decisions and reconcile potentially inconsistent tagging across email chains and other documents. *Id.* at ¶ 8. Regarding the law firm files, Baylor's trial counsel worked closely with Cozen, regularly re-evaluating tagging decisions in light of the Court's ongoing guidance. Baylor's attorneys occasionally determined that certain items could be redacted, rather than withheld, and that some items tagged as privileged should be released, thus resulting in supplemental production. *Id.* at ¶ 9; Dkt. 612-1.

11

certified that it had produced all pre-June 15, 2016 non-privileged PH material and logs. Dkt. 716. That certification specifically noted that UnitedLex was "still processing" PH material from PH's law firm files "and that those materials have not been produced to Baylor at this time." *Id.* When Baylor's counsel finally received that material in February 2020, it learned that PH had provided to UnitedLex some documents that counsel had not received before. On May 12, 2020, Baylor filed a detailed advisory explaining all the actions that Baylor took in response to the UnitedLex audit, which included preparing an accounting log to account for any unmatched documents and producing or logging any apparently new documents. Dkt. 836.

### 2. Plaintiffs repeat debunked allegations of discovery abuse.

Plaintiffs' false narrative continues with their assertion that Baylor did not disclose until April 2019 that PH continued to perform work for Baylor after the Title IX investigation. Dkt. 621 at 1. This Court initially relied on and credited Plaintiffs' incorrect assertion in an order dated June 7, 2019. Dkt. 653 at 31. In their response to Baylor's objection, Plaintiffs selectively quote from that June 7 order, and they repeat the false statement that Baylor failed to timely disclose this information. But their response fails to disclose that, at the subsequent hearing on June 21, 2019, this Court recognized that Baylor had properly disclosed PH's other legal work. At the hearing, Baylor identified several instances of prior disclosure. Dkt. 672 at 9:21-13:22.[5] The Court acknowledged Baylor's prior disclosures. *Id.* at 13:16-18 ("So you can understand, not having been privy to those discussions, that

---

[5] Baylor objected early on to production of PH's work on the investigation as well as any other matters on which PH had advised Baylor through the present day. *See* Dkt. 94-2 (Nos. 9, 10); Dkt. 330-5 (Nos. 9, 10); Dkt. 336 at 4; Dkt. 532-1 at ¶ 8 (September 2018 declaration from Baylor's general counsel stating "Pepper Hamilton continued to perform additional legal services for Baylor University that were separate from the sexual assault investigation.").

12

it appeared to me as though that was being raised for the first time?"). Plaintiffs' incomplete discussion in their response is misleading.[6]

Plaintiffs' response also falsely accuses Baylor of "whiting out" a paragraph from a Baylor police report before producing the document in 2017.[7] Dkt. 960 at 1-2 (citing Dkt. 144). In 2017, at the dawn of discovery in this case, Baylor produced records regarding Jane Doe 2 from Baylor's Title IX Office. That file included a copy of a September 2004 Baylor police report that the Title IX Office received from the police department back in 2015—before this litigation. Dkt. 169 at 4; Dkt. 169-6 at ¶ 5. When trial counsel produced the Title IX file, it produced the file exactly as it was maintained by the Title IX office. Dkt. 169-6 at ¶ 5. The copy of the police report in the Title IX file did not contain a paragraph marked "Dept Information Only." *Id.* at ¶¶ 5-6. Instead of discussing the matter with Baylor's counsel, Plaintiffs filed the accusation in a pleading with the Court on the eve of an unrelated hearing. Dkt. 153 at 2; 7/28/17 Hearing Tr. at 14:13-22. Baylor asked for the opportunity to investigate and respond, which this Court granted. 7/28/17 Hearing Tr. at 15:1-8, 17:13-17. Baylor's counsel explained in a declaration that the document in the Title IX file was produced exactly as it had been provided to that office by the police department in 2015. Dkt. 169-6.

Finally, Plaintiffs suggest that Baylor is guilty of withholding (or threatening to withhold) documents based on unilateral determinations of relevance. Dkt. 961 at 1, 2. Baylor has done no such thing. Plaintiffs point first to language in this Court's order on Plaintiffs' June 2017 motion to compel, in which the Court stated that "Baylor may not pick and choose what documents it deems relevant to Baylor's claims" and must seek a protective order if wishes to withhold documents. Dkt.

---

[6]   Plaintiffs' response also falsely accuses Baylor of misrepresenting the scope of the PH investigation, based on the fact that a copy of Jane Doe 7's school investigative file was found in the documents that PH gave to UnitedLex. Plaintiffs lodge this accusation without acknowledging the uncontested testimony that PH did not obtain the file until *after* this lawsuit was filed. Dkt. 913-15 at ¶¶ 4-7; *see also* Dkt. 961 (11/20/20 Hearing Tr.) at 47-50, 57-61.

[7]   This document is unrelated to the documents addressed by the magistrate's order.

146 at 12; *see also* Dkt. 582 at 16.  But the quoted language was in response to Baylor's arguments regarding Plaintiffs' discovery requests being overly broad and burdensome; moreover, Baylor made these arguments in timely filed objections, in response to Plaintiffs' motion to compel over Baylor's timely filed objections and *in its own motion for protection*.  Dkt. 94-2; Dkt. 97; Dkt. 100.  Likewise, when Plaintiffs served subpoenas on dozens of current and former employees seeking documentation that Baylor believed to be outside the scope of permissible discovery, it did exactly what the Court suggested and sought a protective order.  Dkt. 335 at 6 ("Baylor prays that the Court issue a protective order forbidding the subpoenas").  While Baylor made relevance arguments in those pleadings—which apparently prompted the Court to make the statements Plaintiffs quote—far from being evidence that Baylor was *unilaterally* and improperly withholding documents, the pleadings show that Baylor was following the court-guided procedure outlined in the federal rules.

Plaintiffs' unrelated and unfounded accusations shed no light on the question of whether the magistrate abused its discretion in ordering a waiver of privilege as to 589 documents that were logged after Baylor's counsel received them from UnitedLex.  The severe sanction of privilege waiver is reserved for instances of egregious conduct.  *See infra* Section II.  Here, there is no evidence of bad faith, unjustified delay, or inexcusable conduct.  The severe sanction of waiver in this case is out of proportion and an abuse of discretion and must be rejected.

  **E.** **Plaintiffs' Response does not address Baylor's objection to UnitedLex's comparison of an additional 4,200 logged documents.**

The magistrate's order also requires Baylor to pay UnitedLex to perform yet another comparison of 4,200 documents that Baylor determined were previously logged.  Dkt. 941 at 9-10.  Plaintiffs' Response does not address Baylor's objection to: (i) the magistrate's refusal to allow Baylor to provide additional documents to UnitedLex for purposes of the 4,200 document comparison, or (ii) the magistrate's holding that the results of that comparison shall be "conclusive."  Therefore,

14

Baylor will not address these issues again, other than to note Plaintiffs' apparent lack of objection to Baylor's position.

### F. Plaintiffs' FERPA argument misstates the law.

Plaintiffs claim that "neither FERPA notices nor anonymization is legally required." Dkt. 960 at 19. This is untrue. As this Court correctly found in 2018, even in a Title IX case, before a university may release a third-party student's education records in response to a court order, the records must be de-identified; otherwise, the student is entitled to advance written notice before disclosure. Dkt. 300; *see also Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d 288, 293-94 (E.D.N.Y. 2008) (no FERPA violation if identifiers are redacted). When unredacted records are at issue, advance notice gives the student a chance to object. 20 U.S.C. § 1232g(b)(2)(B); 34 C.F.R. § 99.31(a)(9)(i) & (ii). A court *then* must evaluate whether the student's privacy rights outweighs the plaintiff's interests. *See, e.g., Doe v. Rollins Coll.*, 2019 WL 11703979, at *5-6 (M.D. Fla. Apr. 10, 2019). Privacy violations are "no less objectionable" merely because the records are released pursuant to a court order. *Yu v. Idaho St. Univ.*, 2017 WL 1158813, at *2 (D. Idaho Mar. 27, 2017) (citation omitted).

In the Title IX cases cited by Plaintiffs, **students received FERPA notices and objected.** The courts ultimately found relevance to the Title IX claims and determined conditions of disclosure. *See Moeck v. Pleasant Valley Sch. Dist.*, 2014 WL 4988274, at *1-3 (M.D. Pa. Oct. 7, 2014); *Bigge v. Dist. Sch. Bd. of Citrus Cty.*, 2011 WL 6002927, at *2-3 (M.D. Fla. Nov. 28, 2011). Far from holding that FERPA interferes with Title IX, the courts followed the procedures as Congress intended—just as this Court did when it set out the procedure for redaction and/or notice for students identified in discovery in this case. Dkt. 156; Dkt. 301; *see also, e.g.*, Dkts. 355-358.

In this case, the magistrate's quick deadline for production deprived Baylor of sufficient time to identify the multitude of affected students and send FERPA notices and created the need for Baylor to file an objection and seek a stay. Thereafter, at the May 7, 2021 hearing, the magistrate indicated

15

that his order was not intended to require the production of third-party student records without pseudonym redactions, and Baylor understands from Plaintiffs' response that they do not object to the production of these documents with pseudonym redactions either. Therefore, Baylor requests: (i) for efficiency's sake, that Baylor and UnitedLex not be required to re-produce any documents that have already been produced with pseudonym redactions to Plaintiffs;[8] and (ii) to the extent Baylor and UnitedLex are required to produce documents that were previously *logged* (i.e., rather than *produced*), that before production Baylor be allowed to mark any documents containing personally identifiable information from student records as "Attorneys Eyes Only" as required by this Court's protective order and pseudonym redact to ensure that these unrelated third party's privacy rights are respected.

### III.   Prayer

Therefore, for the reasons stated in this reply and in Baylor's objection (Dkt. 947), Baylor requests that this Court reverse the magistrate's April 26, 2021 Order (Dkt. 941) to the extent it: (i) compels the production of privileged or work product documents by Baylor; (ii) refuses to allow Baylor to provide additional documents to UnitedLex for purposes of its 4,200 document comparison; (iii) holds that the results of UnitedLex's 4,200 document comparison shall be "conclusive"; and (iv)

---

[8] The magistrate's order directs Baylor (individually and through UnitedLex) to re-produce: (i) 1,114 items that Baylor already produced to Plaintiffs in May 2020; and (ii) 1,261 documents that Baylor matched to a document produced *prior to* the UnitedLex comparison. Dkt. 941 at 8-9. On May 11, 2021, the deadline in the magistrate's order:

(i) As to the first category, Baylor re-produced the 1,114, removing any privilege redactions, but with pseudonym redactions still in place on 33 of the documents, pending the Court's ruling on this objection.

(ii) As to the second category, Baylor provided UnitedLex with a list of the documents that did not contain FERPA redactions and which UnitedLex could re-produce. It did so on May 19, 2021. This leaves 355 documents from this second category that contain FERPA redactions *only* (no privilege redactions) and were not re-produced unredacted.

Requiring Baylor (individually and through UnitedLex) to re-apply pseudonym redactions to these documents—documents that have been in Plaintiffs' possession for over a year now—is unnecessary and will only serve to further delay discovery in this case.

requires the production of unredacted educational records with personal identifying student information without any confidentiality protections as afforded by FERPA and this Court's protective order.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: /s/ Lisa A. Brown
Lisa A. Brown
State Bar of Texas No. 03151470
lbrown@thompsonhorton.com
Ryan H. Newman
State Bar of Texas No. 24059944
rnewman@thompsonhorton.com
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas  77027-7554
(713) 554-6741 (telephone)
(713) 583-7934 (fax)

Holly G. McIntush
State Bar of Texas No. 24065721
hmcintush@thompsonhorton.com
8300 N. MoPac Expressway, Suite 220
Austin, TX 78759
(512) 615-2350 (telephone)
(512) 682-8860 (facsimile )

**WEISBART SPRINGER HAYES LLP**

Julie A. Springer
State Bar of Texas No. 18966770
jspringer@wshllp.com
Sara E. Janes
State Bar of Texas No. 24056551
sjanes@wshllp.com
Geoff Weisbart
State Bar of Texas No. 21102645
gweisbart@wshllp.com
Mia A. Storm
State Bar of Texas No. 24078121
mstorm@wshllp.com
212 Lavaca Street, Suite 200
Austin, Texas  78701
(512) 652-5780
(512) 682-2074 (facsimile)

**COUNSEL FOR DEFENDANT BAYLOR UNIVERSITY**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing motion was served upon Plaintiffs' counsel of record on May 28, 2021, via the Court's ECF/CMF electronic service system as follows:

| | |
|---|---|
| Mr. Chad W. Dunn (Attorney in Charge) | *Via ECF: chad@brazilanddunn.com* |
| **BRAZIL & DUNN, L.L.P.** | |
| 4407 Bee Caves Road, Suite 111 | |
| Austin, Texas 78746 | |
| | |
| Mr. K. Scott Brazil | *Via ECF: scott@brazilanddunn.com* |
| **BRAZIL & DUNN, L.L.P.** | |
| 13231 Champion Forest Drive, Suite 460 | |
| Houston, Texas 77069 | |
| | |
| Mr. Jim Dunnam | *Via ECF: jimdunnam@dunnamlaw.com* |
| Ms. Andrea Mehta | *Via ECF: andreamehta@dunnamlaw.com* |
| Ms. Eleeza Johnson | *Via ECF: eleezajohnson@dunnamlaw.com* |
| **DUNNAM & DUNNAM, L.L.P.** | |
| 4125 West Waco Drive | |
| Waco, Texas 76710 | |
| | |
| Ms. Laura Benitez Geisler | *Via ECF: lgeisler@textrial.com* |
| Mr. Sean J. McCaffity | *Via ECF: smccaffity@textrial.com* |
| Jody L. Rodenberg | *Via ECF: jrodenberg@textrial.com* |
| Alexandria Risinger | *Via ECF: arisinger@textrial.com* |
| George (Tex) Quesada | *Via ECF: quesada@textrial.com* |
| **SOMMERMAN, MCCAFFITY,** | |
| **QUESADA & GEISLER, LLP** | |
| 3811 Turtle Creek Boulevard, Suite 1400 | |
| Dallas, Texas 75219-4461 | |

/s/ Lisa A. Brown
Lisa A. Brown