UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, et al., | § § § | |
| Plaintiffs, | § § | Civil Action No. 6:16-CV-00173-RP |
| v. | § § | Consolidated with |
| BAYLOR UNIVERSITY, | § § | 6:17-CV-228-RP 6:17-CV-236-RP |
| Defendant. | § § | |

**BAYLOR UNIVERSITY'S SECOND MOTION FOR PROTECTION RELATING TO SUBPOENA TO NON-PARTY G.F. BUNTING + CO.**

Much has happened since Baylor filed its first Motion for Protection Relating to Subpoena to Non-Party G.F. Bunting + Co. in September 2019. ECF 705. Among other things, Baylor has been able to see the documents Bunting identified as responsive to the subpoena, the Court has issued numerous orders addressing discovery and privilege in non-Bunting contexts, and the Court has twice issued orders related directly to Bunting. ECF 892, 1024. The Court's most recent Bunting order stated that, "[a]bsent extraordinary circumstances, the Court cannot and will not conduct an *in camera* review of documents . . . ." ECF 1024. Based on these developments, Baylor is withdrawing the overwhelming majority of its privilege assertions, despite its belief that the documents are privileged, and is now asserting privilege on only 132 items. *See* Bunting Privilege Log, attached as Exhibit A. This amended motion for protection addresses these remaining items, which can be grouped into three categories. As shown below, each of these three categories should be protected, for slightly different reasons.

## BACKGROUND

When Baylor filed its original motion for protection in September 2019, it had not yet seen the materials Bunting had identified as responsive to Plaintiffs' subpoena, so the motion requested (among other things) that Baylor be allowed an opportunity to review the responsive materials in Bunting's possession and log any privileged materials. *Id.* Pending a ruling on that motion, Baylor began reviewing Bunting's documents, evaluating them for privilege, and logging them. As a result of conferences with Plaintiffs' counsel, Baylor reduced the number of entries on its Bunting privilege log to around 1000.

In August 2020, the Court ordered Baylor to produce a privilege log as to the Bunting materials if Baylor had not already done so.[1] ECF 892 at 12. The Court denied the remainder of Baylor's motion, without prejudice to re-urging it as to specific documents at a later date. *Id.* at 11-12.

Throughout this process, Baylor has carefully evaluated, and re-evaluated, its privilege assertions and reduced the number of entries on the log. Baylor strongly believes that all of the Bunting documents identified on prior versions of its log were privileged and properly withheld or redacted.[2] However, in light of the Court's most recent order on this matter (ECF 1024) and in a sincere effort to resolve the parties' dispute over the Bunting materials without the need for further Court intervention, Baylor has withdrawn its assertion of privilege to all but 132 entries, which fall into three discrete categories.

---

[1] As noted above, Baylor had already produced such a log to Plaintiffs.
[2] For example, although the log contained approximately 1000 entries as of October 2020, about half of those entries related to the Briles and Shillinglaw litigation discussed below.

# ARGUMENT

**I.   Category One: Materials and communications relating to the Briles and Shillinglaw defamation litigation.**

The first category relates to two state court lawsuits filed in December 2016 and January 2017 by two former Baylor employees, Art Briles and Collin Shillinglaw. After his termination in June 2016, Briles alleged that Baylor administrators and Regents had defamed him with media comments regarding reports of sexual assault and Baylor football players. *See* Exhibit B, Declaration of Christopher W. Holmes, ¶6. Baylor and Briles mediated, unsuccessfully, before Briles filed suit against three Regents and Baylor's Vice-President, Reagan Ramsower, in December 2016. *Id.* at ¶7. Briles threatened to sue Bunting, too. *Id.* Before the lawsuit, Baylor was represented by outside counsel, Norton Rose and Rusty Hardin & Associates. *Id.* at ¶6. After Briles filed suit, Norton Rose represented Ramsower, and Hardin & Associates represented the three Regents. *Id.* at ¶7. Bunting also retained Hardin & Associates to represent its interests in the Briles litigation. *Id*; *see also* Exhibit C, Declaration of Russell "Rusty" Hardin Jr., ¶10. Baylor (on behalf of Ramsower), the Regents, and Bunting all entered into a joint defense agreement with respect to the Briles litigation. *Id*; *see also* Exhibit D, Declaration of David H. Harper, ¶3; Exhibit E, Declaration of David Iler, ¶4. Shillinglaw filed his defamation lawsuit in January 2017, suing Baylor, an additional Regent, interim President David Garland, and Ramsower. Ex. C, ¶11. Shillinglaw's lawsuit also made allegations about an unnamed marketing firm (Bunting) assisting Baylor's Regents in making the allegedly false statements. *Id.* Again, Baylor, the Regents, and Bunting entered into a joint defense agreement. Ex. C, ¶10; *see also* Ex. E, ¶4.

The documents in Category One include (i) emails between Baylor, Bunting, the Regents, Norton Rose, and Hardin & Associates exchanging and commenting on draft pleadings in the Briles and Shillinglaw lawsuits and (ii) an internal chronology prepared by Hardin & Associates for their

clients (the Regents and Bunting) to use in those lawsuits. These documents and communications are protected as work-product.[3]

First, these materials were created in anticipation of or for litigation by the attorneys for Baylor, the Regents, and Bunting. *See* FED. R. CIV. P. 26(b)(3)(A). The documents in Category One contain draft pleadings, prepared by lawyers; the lawyers' edits to and comments on those pleadings; and emails between the lawyers about those pleadings. Ex. B, ¶¶9-11; Ex. C, ¶¶14, 16-17; Ex. F, Declaration of Glenn F. Bunting, ¶¶13, 15-17. Category One also contains a chronology prepared by counsel for the Regents and Bunting. Ex. C, ¶15; Ex. F, ¶14. This is classic attorney work-product. Fed. R. Civ. P. 26(b)(3)(A).[4]

Second, Bunting's edits to, comments on, and emails about these pleadings are also protected work-product, as the doctrine extends to documents "prepared in anticipation of litigation" by a "party or its representative," including but not limited to a party's "attorney, consultant, . . . or agent."[5] *Id.*; *see also In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1238 (5th Cir. 1982) (affirming finding that all documents in "special review binders" were entitled to work product protection when the binders were prepared by an auditor who "was a representative of a party" and "there was a sufficient anticipation of litigation"). Thus, courts within the Fifth Circuit have routinely applied the work product doctrine to materials created by accountants and other consultants in anticipation of litigation. *See, e.g., Osherow v. Vann (In re Hardwood P-G, Inc.)*, 403 B.R. 445, 464-65 (Bankr. W.D. Tex. 2009)

---

[3] These documents should also be protected as attorney-client privileged, for the reasons expressed in Baylor's original motion on the Bunting materials. ECF 705.

[4] Moreover, the lawsuits' accusations extended beyond Baylor to Bunting, forcing Bunting to retain counsel to represent its interests and creating a joint-defense, allied-litigant, and/or common-interest privilege between Baylor, the Regents, and Bunting. *See In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 50 (Tex. 2012) (joint-client and allied-litigant doctrines); *BCR Safeguard Holdings, LLC v. Morgan Stanley Real Estate Advisor, Inc.*, 614 F. App'x 690, 703 (5th Cir. 2015) (common-interest doctrine).

[5] As has been explained elsewhere, Baylor's Office of General Counsel ("OGC") engaged Bunting in October 2016 to provide public relations advice to assist in threatened and pending Title IX related litigation. *See* Ex. B, ¶¶3-5.

(accountant's report prepared in anticipation of litigation); *Wi-Lan, Inc. v. Acer, Inc.*, Nos. 2.-07-CV-473-TJW, 2:07-CV-474-TJW, 2010 U.S. Dist. LEXIS 110351, 2010 WL 4118625, at *4 (E.D. Tex. Oct. 18, 2010) (engineering consultant's report prepared in anticipation of litigation); *Jones v. C.R. Bard, Inc.*, No. 3:13-CV-599-K (BF), 2014 U.S. Dist. LEXIS 182765, at *19-20 (N.D. Tex. 2014) (doctor's report prepared in anticipation of litigation).

Other jurisdictions have held specifically that the work product privilege protects communications with, as well as materials shared with and prepared by, a public relations firm when made in anticipation of litigation. For example, in *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55-56 (S.D.N.Y. 2000), cited by this Court in ECF 892, the court held that a number of PR documents were protected as work product, reasoning:

> It does not follow [] that an otherwise valid assertion of work-product protection is waived with respect to an attorney's own work-product simply because the attorney provides the work-product to a public relations consultant whom he has hired and who maintains the attorney's work-product in confidence. This is especially so if, as plaintiffs here assert, the public relations firm needs to know the attorney's strategy in order to advise as to public relations, and the public relations impact bears, in turn, on the attorney's own strategizing as to whether or not to take a contemplated step in the litigation itself and, if so, in what form.

*Id.* Applying this standard, the court found that several categories of counsel-drafted or counsel-selected materials given by plaintiff's in-house counsel to the PR firm were protected attorney work product. *Id.* In addition, the court found that materials created by the PR firm could be protected under the work-product doctrine as well, explaining, "several categories of documents (such as notes of witness interviews)[,] even though prepared by RLM [the PR firm], appear to implicitly reflect work-product." *Id.*

Similarly, the court in *Pemberton v. Republic Servs.*, 308 F.R.D. 195, 197-98 (E.D. Mo. 2015), citing *Calvin Klein* for support, found that communications with a PR firm were protected work product. In *Pemberton*, a landfill owned by the defendant had a "subsurface smoldering event" that caused a foul odor in surrounding vicinities. *Id.* This event gave rise both to extensive litigation and

intense media scrutiny. *Id.* In order to help manage the defendant's response to media coverage, defense counsel hired a national PR firm, which in turn hired a local PR firm to serve as a consultant for counsel and the defendant. *Id.* As part of the class action, plaintiffs served a subpoena on the local PR consultant, and the defendant asserted privilege. *Id.* The court found that some of the materials were protected as work product:

> All the materials were created by a party and its attorney or an agent of the attorney, and would not have been prepared in substantially similar form but for the prospect of litigation. The Court's review of the documents shows that counsel, their clients, and [the local PR consultant] worked closely together in discussing the information to be provided to the public, all with a view to the impact on future litigation. All of the materials in question were created in an effort to foster a public environment that was less likely to lead to further litigation involving the Landfill. As stated in Mr. Beck's amended declaration, defense counsel retained [the] consultant "to provide public relations advice related to the litigation already occurring and the litigation we believed was coming." As further stated by Ms. Merrigan, all the materials created by [the consultant] were "created at the direction of counsel, in anticipation of litigation." Upon review of the materials, the Court is persuaded that this was indeed the case. The prospect of litigation was very real, as demonstrated by the quick proliferation of lawsuits against Defendants, beginning in 2013 and continuing to the present. Trying to address the media climate in which defense counsel was operating while attempting to provide information to the public was a legitimate activity, and within the scope of proper litigation strategy. Other courts have extended work product protection to public relations work in similar situations.

*Id. (internal citations removed) (citing ADT Sec. Servs., Inc. v. Swenson*, Civ. No. 07-2983 (JRT/AJB), 2010 U.S. Dist. LEXIS 74987, at *5 (D. Minn. July 26, 2010) (holding that public relations documents created to address media scrutiny were work product as they reflected mental impressions of counsel); *Calvin Klein*, 198 F.R.D. at 55-56 (extending work product protection to materials produced by public relations consultant hired by attorney to help manage publicity surrounding client)); *see also Schaeffer v. Gregory Village Partners, L.P.*, No. 13-cv-04358-JST, 2015 U.S. Dist. LEXIS 3966 (N.D. Cal. Jan. 12, 2015) (holding attorney client and work product privilege protected communications between defendants' counsel and public relations firm). Here, the role Bunting played in Baylor's and the Regent's litigation defense strategy in the Briles and Shillinglaw cases went even further than the PR

firms discussed in *Calvin Klein*, *Pemberton*, and the other cases cited above: Bunting actually assisted Baylor's counsel in drafting pleadings in pending litigation.

Moreover, even if this Court were to find that *Bunting's* communications and edits to draft pleadings in the Briles and Shillinglaw litigation are not protected, the fact that Baylor, the Regents, and their counsel disclosed *their own* work product communications and draft pleadings with Bunting does not waive the work product privilege as to those documents. *See Ala. Aircraft Indus. v. Boeing Co.*, No. 2:11-cv-03577-RDP, 2016 U.S. Dist. LEXIS 193204, at *12 (N.D. Ala. 2016) ("However, some of the disputed documents contain attorney work product, and the undersigned concludes that such documents are due to be withheld, in recognition of the accepted notion 'that an otherwise valid assertion of work-product protection is [not] waived with respect to an attorney's own work-product simply because the attorney provides the work-product to a public relations [or lobbying] consultant whom he has hired and who maintains the attorney's work-product in confidence." (quoting *Calvin Klein*, 198 F.R.D. at 55.)). The documents in Category One that were shared with Bunting were not disclosed to any non-confidential, non-privileged third party by Baylor, its outside counsel, Bunting, the Regents, or the Regents' counsel. *See, e.g.*, Exhibit G, Declaration of Stephen C. Dillard, ¶8; Ex. D, ¶6; Ex. F, ¶18.

On these facts – which are supported by the Privilege Log (Exhibit A) and the declarations of Christopher W. Holmes (Exhibit B), Russell "Rusty" Hardin Jr. (Exhibit C), David H. Harper (Exhibit D), David Iler (Exhibit E), Glenn F. Bunting (Exhibit F) and Stephen C. Dillard (Exhibit G) filed with this motion, as well as the declarations attached to Bunting's response – Baylor has met its burden of showing that communications and documents prepared and exchanged with Bunting relating to the Briles and Shillinglaw litigation on its privilege log are protected work product.

**II.     Category Two: Documents provided inadvertently to Bunting remain privileged under the work product doctrine.**

As described in the declaration of Chris Holmes, *see* Ex. B, ¶12-13, Baylor's OGC asked Reagan Ramsower to gather certain communications, related to Patty Crawford's tenure as Title IX coordinator and the work of the Sexual Assault Task Force, so that the OGC could provide these documents to Bunting. Baylor and its OGC did not realize until this litigation that the thumb-drive Dr. Ramsower provided contained other documents that Baylor never intended to disclose to Bunting.[6] Specifically, the thumb drive included (i) communications between Doug Welch, an attorney in the OGC, and other OGC lawyers and Baylor representatives discussing a confidential tolling agreement and settlement negotiations with a third-party sexual assault claimant threatening Title IX litigation against the University in October 2015, *see* Exhibit H, Declaration of Doug Welch; (ii) a letter from outside coverage counsel for Baylor, Brent Cooper, to one of Baylor's insurance carriers for this matter, Ex. B, ¶13, and (iii) an October 15, 2015 email memorandum prepared by Noley Bice, another attorney in the OGC, to OGC lawyers and Baylor representatives regarding another third-party sexual assault claimant, Ex. B, ¶13. All of these documents and communications, which were prepared in anticipation of litigation, are protected work product. Fed. R. Civ. P. 26(b)(3)(A). Under Fifth Circuit law, the disclosure of work product results in waiver of work product protection only if the work product is disclosed to *adversaries* or treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material. *See Ferko v. NASCAR*, 218 F.R.D. 125, 136 (E.D. Tex. 2003); *see also In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000) ("[B]ecause the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party."); *S.E.C. v. Brady,* 238 F.R.D. 429, 444 (N.D. Tex. 2006) (waiver of work product

---

[6] To Baylor's knowledge, Bunting never used any of these documents in its work for Baylor. Ex. B, ¶13.

protection only results if the work product is disclosed to an adversary); *U.S. v. CITGO Petroleum Corp.*, No. C-06-563, 2007 U.S. Dist. LEXIS 27986, at *8 (S.D. Tex. 2007) ("To waive work product protection, the disclosure must be inconsistent with maintaining the secrecy of an attorney's trial preparation."). Baylor's disclosure of these work product documents and communications with Bunting—its own consultant—does not waive the privilege. *See* Part I., above; *Ala. Aircraft Indus. v. Boeing Co.*, 2016 U.S. Dist. LEXIS 193204 at *12.

### III. Category Three: Emails exchanging drafts of Baylor's response to Plaintiffs' Motion to Enforce the Protective Order *in this very case*.

On October 12, 2016, shortly after Baylor retained Bunting, Plaintiffs filed a Motion to Enforce Protective Order in this case seeking to prohibit Baylor from sharing the identity of the Jane Does with Bunting. ECF 44. Because Bunting was the subject of Plaintiffs' motion, Baylor's outside counsel shared work-product drafts of Baylor's response to Plaintiffs' motion with Bunting and OGC to confirm factual accuracy. Bunting, outside counsel, and OGC's communications are reflected in three log entries on the privilege log. *See* Ex. B, ¶14. Because these documents and communications were prepared in anticipation of litigation, they are work product, and as explained above, their disclosure to Bunting does not waive their work product protection.[7]

For the foregoing reasons, Baylor respectfully requests that the Court grant its Second Motion for Protection Relating to Subpoena to Non-Party G.F. Bunting + Co.

---

[7] In addition to the three categories addressed herein, there are also four duplicative documents on the privilege log relating to Phil Stewart that reflect privileged information from Pepper Hamilton's investigation. Bunting has already produced these documents with redactions, pursuant to this Court's order at Docket 1023.

Respectfully submitted,

**WEISBART SPRINGER HAYES LLP**

**BY:** */s/ Julie A. Springer*
    Julie A. Springer
    State Bar of Texas No. 18966770
    jspringer@wshllp.com
    Sara E. Janes
    State Bar of Texas No. 24056551
    sjanes@wshllp.com
    Geoff Weisbart
    State Bar of Texas No. 21102645
    gweisbart@wshllp.com
    Mia A. Storm
    State Bar of Texas No. 24078121
    mstorm@wshllp.com
    Danielle K. Hatchitt
    State Bar of Texas No. 24079080
    dhatchitt@wshllp.com
    212 Lavaca Street, Suite 200
    Austin, Texas  78701
    (512) 652-5780
    (512) 682-2074 (facsimile)

**THOMPSON & HORTON LLP**
Lisa A. Brown
State Bar of Texas No. 03151470
lbrown@thompsonhorton.com
Ryan H. Newman
State Bar of Texas No. 24059944
rnewman@thompsonhorton.com
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas  77027-7554
(713) 554-6741
(713) 583-7934 (facsimile)
Holly G. McIntush
State Bar of Texas No. 24065721
hmcintush@thompsonhorton.com
8300 N. MoPac Expressway, Suite 220
Austin, TX 78759
(512) 615-2350
(512) 682-8860 (facsimile )

**ATTORNEYS FOR BAYLOR UNIVERSITY**

## CERTIFICATE OF CONFERENCE

I certify I conferred with Jim Dunnam, counsel for Plaintiffs, and he is opposed to the relief requested herein.

<div style="text-align: right;">

*/s/ Julie A. Springer*
Julie A. Springer

</div>

Case 6:16-cv-00173-RP   Document 1035   Filed 03/14/22   Page 12 of 12


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was served upon Plaintiffs' counsel of record on March 11, 2022 via the Court's ECF/CMF electronic service system as follows:

| | |
|---|---|
| Mr. Chad W. Dunn (Attorney in Charge) | *Via ECF: chad@brazilanddunn.com* |
| **BRAZIL & DUNN, L.L.P.** | |
| 4407 Bee Caves Road, Suite 111 | |
| Austin, Texas 78746 | |
| | |
| Mr. K. Scott Brazil | *Via ECF: scott@brazilanddunn.com* |
| **BRAZIL & DUNN, L.L.P.** | |
| 13231 Champion Forest Drive, Suite 460 | |
| Houston, Texas 77069 | |
| | |
| Mr. Jim Dunnam | *Via ECF: jimdunnam@dunnamlaw.com* |
| Ms. Andrea Mehta | *Via ECF: andreamehta@dunnamlaw.com* |
| Ms. Eleeza Johnson | *Via ECF: eleezajohnson@dunnamlaw.com* |
| **DUNNAM & DUNNAM, L.L.P.** | |
| 4125 West Waco Drive | |
| Waco, Texas 76710 | |
| | |
| Ms. Laura Benitez Geisler | *Via ECF: lgeisler@textrial.com* |
| Mr. Sean J. McCaffity | *Via ECF: smccaffity@textrial.com* |
| Jody L. Rodenberg | *Via ECF: jrodenberg@textrial.com* |
| George (Tex) Quesada | *Via ECF: quesada@textrial.com* |
| **SOMMERMAN, MCCAFFITY,** | |
|   **QUESADA & GEISLER, LLP** | |
| 3811 Turtle Creek Boulevard, Suite 1400 | |
| Dallas, Texas 75219-4461 | |

                                                 */s/ Julie A. Springer*
                                                 Julie A. Springer