UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al*, | § | Civil Action No. 6:16-CV-00173-RP |
| | § | |
| Plaintiffs, | § | |
| | § | *Consolidated with* |
| v. | § | |
| | § | 6:17-CV-228-RP |
| BAYLOR UNIVERSITY, | § | |
| | § | 6:17-CV-236-RP |
| Defendant. | § | |

**NON-PARTY G.F. BUNTING+CO.'S RESPONSE TO
PLAINTIFFS' REQUEST FOR SANCTIONS (ECF 1037) AND
<u>NON-PARTY G.F. BUNTING+CO.'S COUNTER-MOTION FOR SANCTIONS</u>**

TO THE HONORABLE COURT:

Below is Bunting's response to Plaintiffs' request for sanctions (ECF 1037) and Counter-Motion for Sanctions.

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................ii

SUMMARY OF ARGUMENT........................................................................................................... 1

ARGUMENT & AUTHORITIES ...................................................................................................... 3

    A. Bunting is a non-party represented by independent counsel, who have made independent decisions regarding the production of documents. ................................................................................................................. 3

    B. Bunting timely complied with the subpoena. ................................................................ 4

        1. On October 29, 2019, Bunting requested that Plaintiffs agree to a standard protective order, but Plaintiffs' counsel did not do so until May 18, 2020. This delayed the production of a large subset of documents. .................................................................................................. 5

        2. Bunting originally logged 235 privilege assertions. After the Court's statement that it was skeptical of *Bunting's* right to assert privilege, Bunting withdrew privilege assertions for all but 90 entries................................................................................................................ 6

        3. Starting in December 2019, Bunting offered to allow Plaintiffs' counsel to review the communications being withheld based on proportionality to determine whether any needed to be produced. 7

    C. Bunting has not hidden or concealed any documents. ........................................................ 9

        1. Bunting's production of additional documents was the result of a lawyer's mistake and not any attempt to conceal documents. ................................ 10

        2. As a showing of good faith and continued transparency, Bunting is voluntarily redoing its collection of Slack data based on the availability of new technologies. ............................................................................. 11

        3. Bunting did not delete any Slack communications to hide or conceal information from Plaintiffs. .............................................................................. 11

    D. Bunting was not involved in any conspiracy to conceal the truth. ................................. 15

COUNTER-MOTION FOR SANCTIONS ......................................................................................... 15

CERTIFICATE OF SERVICE ....................................................................................................... 18

CERTIFICATE OF CONFERENCE................................................................................................. 18

ii

## SUMMARY OF ARGUMENT

Plaintiffs' reply does not address ***Bunting's*** assertion of attorney-client privilege. They do not (and cannot) challenge the facts that Bunting hired RH&A in anticipation of litigation and further worked alongside attorneys on draft pleadings in response to false allegations and threats made against Baylor, the Regents, and Bunting. Instead, Plaintiffs seek sanctions based on speculation, false statements, and absent authority.

It is clear that, except for documents withheld on a legitimate and good-faith assertion of privilege and an objection based on proportionality, Bunting (and Baylor and the Regents) completed the production of responsive documents and privilege logging by September 17, 2020. Exhibit A, ¶¶ 11, 18. Months before this, in November 2019 and January 2020, Bunting fully alerted Plaintiffs' counsel to the specific issues of proportionality and privilege. Exhibit B-17, B-26. Moreover, rather than just stand on its proportionality objection and withhold documents, Bunting repeatedly offered Plaintiffs an opportunity to review the communications being withheld in the hopes that this would reduce the costs of production and the number of issues that might require Court intervention. Exhibit B at 17, B-22.[1] Despite initially being receptive to this offer and having multiple discussions during the next two years, Plaintiffs did not accept.

Plaintiffs filed their first advisory regarding the production of documents in October 2020. ECF 899. Bunting briefly responded and requested an opportunity to be fully heard ECF 902. However, the magistrate judge retired shortly after this, and there was no activity in the case for 15 months. Plaintiffs' counsel failed to utilize this time to review the documents withheld based on proportionality. Then, on February 3, 2022, the Court ordered limited briefing on the outstanding issues regarding the production. ECF 1024.

---

[1] As detailed below, these withheld communications were internal communications amongst Bunting employees.

1

The Court's February 3, 2022, order was clear. While Bunting had not presented argument on the two categories of withheld documents, the Court requested that Bunting re-evaluate its positions. The Court then stated that, because of the Court's case load and the amount of time already spent on the case, "absent extraordinary circumstances" the Court would not review documents in camera. In light of this, Bunting felt compelled to withdraw all but a small number of its good faith and legally sound assertions of privilege and fully withdraw its proportionality objection. Baylor and the Regents did the same. ECF 1034, 1035, 1036. This resulted in Bunting producing 1,535 additional documents, 575 of which consisted of internal communications that Plaintiffs' counsel refused to review during the last two years. Exhibit A at 3; B at 33.

Then, approximately two weeks later – and one week after Plaintiffs filed their Motion to Compel – Bunting produced 183 additional documents containing additional internal communications. Exhibit A at 4. After reviewing Plaintiffs' Motion to Compel, which contained arguments and exhibits that Plaintiffs had not previously shared with Bunting, Bunting's counsel discovered a clerical error related to some of Bunting's internal communications using Slack. *Id*. ¶ 12. Despite Plaintiffs' unfounded and offensive speculation that Bunting's lawyers are lying and Bunting is somehow at fault, the undisputed evidence shows that the failure to produce these 183 documents two weeks earlier resulted from a mistake by Bunting's counsel. This error by counsel caused minimal delay – 2 weeks – and should not be a basis for any type of sanctions against Bunting.

Bunting has timely produced documents and privilege logs. Furthermore, it has been transparent about what was being withheld, keenly responsive to Plaintiffs' repeated requests for conferences, and more than willing to work with Plaintiffs in a manner that would have permitted them to review a large number of withheld documents. Plaintiffs simply declined to do so by letting

more than two years pass without accepting Bunting's offer to review withheld documents and failing to confer in good faith over disputes. Now they are attempting to use speculation to argue that Bunting's independent efforts to comply with the subpoena were somehow executed in bad faith. Nothing is further from the truth.

## ARGUMENT & AUTHORITIES

ECF 1037 unmistakably is a motion for sanctions. It requests attorneys' fees and an adverse inference against Baylor. As such, pursuant to Federal Rule of Civil Procedure 26 and 45 and Western District of Texas Local Rule CV-7, Bunting files this response and counter-motion for sanctions.[2] Alternatively, Bunting seeks leave to file this response so that it may have an opportunity to be heard regarding an unfounded attempt by Plaintiffs' counsel to seek sanctions, as Due Process requires. *See generally Snider v. L-3 Communications Vertex Aerospace, L.L.C.*, 946 F.3d 660, 677 (5th Cir. 2019); *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1027 (5th Cir. 1994). Finally, given the severity of the charges leveled by Plaintiffs' counsel, Bunting requests an oral hearing on Plaintiffs' request for sanctions.

**A. Bunting is a non-party represented by independent counsel, who have made independent decisions regarding the production of documents.**

Plaintiffs make the highly speculative and false claim – without any supporting evidence – that "Baylor tried to lead the Bunting production." This claim ignores the uncontroverted evidence detailing independent work by Bunting's counsel in response to Plaintiffs' subpoena. Indeed, Bunting's counsel has devoted more than 5,600 hours in the last two and half years complying with Plaintiffs' incredibly broad subpoena. Exhibit B at 7-36, ¶ 17. Counsel for Baylor and the

---

[2] Because of the overlapping factual and procedural backgrounds, judicial economy is served by Bunting filing a joint response to Plaintiffs' request for sanctions and a counter-motion for sanctions. While this joint document exceeds the 10-page limit permitted for responses, it is less than the 20 pages that would have been allotted if Bunting had filed a separate response and motion. Alternatively, Bunting seeks leave to exceed the 10-page limit set in the local rules and file the present joint response and motion, which exceeds the 10-page limit by seven pages.

3

Regents notified Bunting of documents for which they were claiming privilege and worked with Bunting to prepare an integrated privilege log. But at no time did Baylor, the Regents or their counsel direct or interfere with the Bunting production. Exhibit J ¶ 2.

**B. Bunting timely complied with the subpoena.**

Bunting's counsel agreed to accept service of the subpoena on June 27, 2019, and Plaintiffs provided Bunting with a copy of it on July 27, 2019. Bunting served is responses and objections on September 5, 2019, and worked diligently to collect and review documents for production by November 30, 2019, as stated in its responses. As of that date, Bunting produced 2,105 documents. Bunting was forced to withhold a large subset of documents because Plaintiffs had not responded to Bunting's October 29, 2019 request that Plaintiffs agree to enter a standard protective order allowing Bunting to designate certain materials as confidential. After more than five months, on May 18, 2020, Plaintiffs finally agreed to the standard order proposed by Bunting. Within two weeks of this order being filed, Bunting produced 2,444 more documents. An additional 888 documents were produced by September 17, 2020.[3]  Exhibit A, ¶ 11.

On January 17, 2020, Bunting, Baylor, and the Regents submitted a substantially complete privilege log that contained all but four of the privilege assertions at issue today. *Id*. ¶ 18. By September 14, 2020, Bunting, Baylor, and the Regents completed the final logging of privileged documents. Thus, by September 2020, the remaining production issues were prepared for resolution. However, nothing happened until the Court issued its February 3, 2022 order requesting that Bunting( and by extension Baylor and the Regents) reconsider its position on withholding

---

[3] Originally, Bunting included these 888 documents in the set of internal communications that it suggested Plaintiffs should review. However, after further review, Bunting determined they were external communications and therefore produced them.

documents and further requiring Plaintiffs and Bunting to submit any limited additional briefing starting on February 11, 2022.[4]

Importantly, the only documents that have been withheld have been based on confidentiality, privilege, and proportionality. The record clearly shows that Bunting has worked tirelessly in attempting to resolve the outstanding issues. Indeed, Bunting has not been the cause of any delay in completing production.

1. **On October 29, 2019, Bunting requested that Plaintiffs agree to a standard protective order, but Plaintiffs' counsel did not do so until May 18, 2020. This delayed the production of a large subset of documents.**

On October 29, 2019, Bunting's counsel requested a draft protective order containing language identical to that set forth in the Western District's form protective order. Exhibit B at 14. Plaintiffs' counsel initially agreed to the request and responded on November 4, 2019 by asking for a proposed order. *Id*. Bunting sent the proposed order the next day. *Id*. On December 4, 2019, Plaintiffs sent a new draft agreement of a confidentiality order. *Id*. at 18. On December 11, 2019, Bunting's counsel responded with minor edits. *Id*. Plaintiffs did not respond again until February 2020, after Bunting reminded Plaintiffs' counsel about the outstanding draft. *Id*. at 20.

Soon thereafter, Plaintiffs' counsel asked Bunting to work with new Plaintiffs' counsel to finalize the protective order. *Id.* at 21. Bunting timely did so[5] and on May 18, 2020, Plaintiffs' counsel finally agreed to a protective order that contained the same language that Bunting's counsel originally proposed. *Id*. at 21-22. Within two weeks of the parties agreeing to the confidentiality order, Bunting produced an additional 2,444 documents. Exhibit A ¶ 11.  Thus,

---

[4] Baylor and Plaintiffs both filed unopposed motions for extension of time to file briefing based on Bunting producing additional documents after Bunting, Baylor, and the Regents withdrew privilege assertions and the proportionality objection. Plaintiffs submitted their Motion to Compel on March 4, 2022 and Bunting responded seven days later, on March 11, 2022.

[5] Notably, COVID caused a worldwide shut down around March 12, 2020.

Plaintiffs' counsel—not Bunting–caused the delay of the production of a large number of documents.

2. **Bunting originally logged 235 privilege assertions. After the Court's statement that it was skeptical of _Bunting's_ right to assert privilege, Bunting withdrew privilege assertions for all but 90 entries.**

On September 5, 2019, Bunting noted in its objections that it would be withholding documents based on privilege assertions by Bunting, Baylor, and the Regents. Exhibit B-66. In addition, at the December 4, 2019 status conference hearing, the Court was alerted that there were three different entities (Baylor, Bunting, and the Regents) reviewing and asserting privilege for Bunting's documents. Exhibit F at 60-62. Based on the large amount of documents under review and other outstanding discovery issues that did not concern Bunting, Baylor requested that the Court set January 15, 2020 as the date of submission for the privilege logs. *Id*. In accordance with this, Baylor, Bunting, and the Regents served on Plaintiffs an integrated privilege log with 1,371 entries that reflected all three entities' privilege assertions. All but four of Bunting's existing privilege assertions were included on this initial integrated log.

Since the initial integrated log was produced, Bunting and Baylor have done precisely what the Court asked by conferring with Plaintiffs on privilege assertions. Exhibit B at 20, 31, 33. Plaintiffs' counsel never referenced or discussed a single entry on the logs. Instead, Plaintiffs' constant refrain – then and now – was that the Court's ruling on Ketchum prevents Bunting from asserting privilege. Bunting made several attempts to explain that it was asserting its own privilege, as a client, to these documents. Plaintiffs continued to claim that, because Bunting was hired as a communication strategist, it was somehow prevented from asserting the privilege as a client who had been directly threatened and anticipated litigation. Despite Plaintiffs' unproductive conferences, Bunting, Baylor, and the Regents continued to re-evaluate the log entries and reduce the number. Exhibit A, ¶ 18.

Finally, even though Bunting had not yet had the opportunity to present evidence in support of its privilege assertions, Bunting relented and withdrew its valid privilege assertions as to all but a small subset of documents, leaving only draft pleadings and comments on the log.[6] Plaintiffs' counsel cannot dispute evidence proving that at the time Bunting was assisting with these pleadings it was acting as a client, represented by counsel, and responding to false allegations made against it.

3. **Starting in December 2019, Bunting offered to allow Plaintiffs' counsel to review the communications being withheld based on proportionality to determine whether any needed to be produced.**

On November 25, 2019, Bunting provided Plaintiffs with the specific basis for its proportionality objection:

> In particular, in reviewing documents for production, we encountered internal communications between Bunting employees. These communications have not been shared with Baylor or any external third-party. It is our understanding that all but one of the Plaintiffs has alleged that her/his assault occurred before Bunting was even hired by Baylor. Thus, we think these internal communications are not proportional to the claims of your clients. Finally, Bunting had a reasonable expectation of privacy in these internal communications as they were not a party to this litigation. We believe that any request that we produce internal communications between only Bunting employees is not relevant or proportionate to the issues and needs in this suit.

Exhibit B-17. Shortly thereafter, on December 4, 2019, in an effort to resolve this issue and reduce the time and costs of production, Bunting offered to allow Plaintiffs to review the withheld internal communications and identify any specific communications for which Plaintiffs' counsel would then seek production.[7] *Id*. at 17-18. Plaintiffs' counsel initially appeared receptive to this offer, but as with the proposed confidentiality order, failed to respond until February 2020.

---

[6] Baylor and the Regents also withdrew their privilege assertions on additional entries.

[7] Paragraph 27 of the 2006 Advisory Committee Notes to Rule 26 calls this a "quick peek," and advocates for its use by parties to minimize the costs and delays occasioned by the review process applicable to electronic discovery.

In February 2020, Bunting's counsel again discussed allowing Plaintiffs' counsel to review the withheld internal communications. *Id*. at 20-21. While the parties made headway in setting up this review, COVID stalled the efforts. *Id*. Bunting and Plaintiffs' counsel discussed the issue again in June 2020 but were unable to reach a resolution on how to perform the review due to continued COVID concerns. *Id*. at 24. Importantly, Bunting left the offer open, raising it again in September and October 2020 filings with the Court. ECF 894, 902 at n. 2. Nonetheless, even after COVID restrictions eased, Plaintiffs never took the opportunity to review these documents, including during the 15-month pause between the parties' advisories and this Court's recent order.[8]

Based on the Court's recent order requesting that Bunting reconsider its position on withholding documents, Bunting felt compelled to withdraw its proportionality objection.[9] However, Bunting's objection nonetheless had a good-faith legal foundation. Bunting objected to producing the internal communications because Baylor, the party to this case, never saw these communications, which occurred after all but one of the Plaintiffs' alleged assaults. Furthermore, Bunting had a reasonable expectation of privacy at the time the communications were made. *See* FED. R. CIV. P. 26(b)(1) and 45; *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (concluding that proportionality requires that "courts must give the recipient's nonparty

---

[8] After the Court's order, Bunting relented and produced a substantial number of internal communications. However, to preserve Bunting's reasonable expectation of privacy, it asked Plaintiff to review 21 documents and determine whether Plaintiffs would require production of all documents. In demanding, full production, Plaintiffs' counsel's only comment was that they were entitled to the information and that they did not appreciate why Bunting cared about the documents.

[9] Bunting was also concerned because when Bunting sought clarification that the Court had not intended to overrule its proportionality objection and privilege assertions with a ruling on Baylor's previously filed motion for protection, the Court – frankly, without any basis – admonished Bunting by claiming that it was making the process "more difficult." Again though, at that time, neither Bunting nor Plaintiffs had sought any Court intervention in the dispute. And in fact, prior to its request for clarification, Bunting had only filed one pleading in Court to address Plaintiffs' false attacks against Bunting. Bunting can only assume that the Court got this impression from Plaintiffs' counsel making unsubstantiated allegations against Bunting in other filings that had nothing to do with it.

status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally.").

### C. Bunting has not hidden or concealed any documents.

Plaintiffs request sanctions based on Bunting's production of internal communications by Bunting employees using an application called Slack. In August 2019, Bunting's counsel hired computer forensic and electronic discovery specialists to collect and preserve Bunting's Slack communications. Exhibit I, ¶ 5. The experts collected the entirety of Slack communications that were contained within any public or private channels as well as all direct messages within the individual Slack accounts of all Bunting Employees at the time. *Id.* ¶¶ 6-7. The experts collected 735 megabytes of data from Slack between August 15, 2019 and September 4, 2019, and then provided this data in HTML and text form for processing and loading into Relativity. *Id.* ¶7. Bunting's counsel then processed and reviewed the data for responsive material. Exhibit A ¶ 9.

Slack was used solely by Bunting employees, and it was primarily used to share media, perform office administrative tasks (such as coordinate vacation schedules), coordinate and briefly discuss client task lists, and work through the scheduling of meeting and tasks. The communications on Slack are typically shorthand discussions, similar to the way people use text messaging. Exhibits G ¶¶ 4-5, 12; H ¶¶ 2, 4. Bunting employees would also share documents using the application. Exhibit H ¶ 4. Bunting's clients, including Baylor, were never provided access to Slack and therefore never saw the communications shared over Slack. Exhibits G ¶¶ 4,12. As such, Plaintiffs wrongly claim that Baylor or the Regents had any access to the Slack communications. *Id*. Indeed, Bunting employees have a reasonable expectation of privacy in the communications shared on Slack. *Id*. Plaintiffs' speculation otherwise is false and unsupported by any evidence.

Bunting's Slack communications were withheld pursuant to its proportionality objection. It was only after Bunting withdrew this objection in late February and March 2022, that Bunting produced the Slack communications. Exhibit B at 33-36. And then, it was only after Plaintiffs filed their Motion to Compel that Bunting's counsel realized they had made a clerical error resulting in a subset of Slack communications being initially withheld for production. Exhibit A, ¶ 12. Despite this error, Bunting still completed the production of responsive Slack communications less than two weeks after it withdrew its proportionality objection. *Id.* ¶ 11.

1. **Bunting's production of additional documents was the result of a lawyer's mistake and not any attempt to conceal documents.**

Plaintiffs' counsel speculate that Bunting's counsel is lying about the clerical error that caused the two-week delay in producing a subset of Slack communications. They falsely claim that "the more likely explanation is that Bunting personnel are responsible for the 'mis-tagging.'" Plaintiffs cannot support this outrageous claim with any evidence. Moreover, such an unethical assertion is endemic of how Plaintiffs' counsel have falsely portrayed Bunting's production of documents from the beginning. Throughout this process, Plaintiffs – without any basis in fact – have attempted to paint Bunting as a bad actor. Plaintiffs' counsel appear more concerned with attacking Bunting and asserting false conspiracy theories than actually working with Bunting's counsel to complete the production of documents. To be clear, the uncontroverted evidence establishes that the two-week delay in producing 183 documents was the result of a mistake by Bunting's lawyer and not any type of concealment by Bunting. Exhibit A, ¶¶ 12, 13. Despite Plaintiffs' counsels' wild conjecture, Bunting had nothing to do with the error.

Plaintiffs also wrongly allege that Bunting missed two "court ordered deadlines" when it produced 183 documents one week after Plaintiffs filed their Motion to Compel. This claim also is not true. Again, up until two weeks before the documents were produced, Bunting was

10

withholding internal communications based on its proportionality objection (and Plaintiffs knew this). Even though the Court recently requested that Bunting reconsider its positions on withholding documents – which it did – the Court previously stated that Bunting did NOT have an obligation to produce documents for which it timely preserved an objection to their production. ECF 896.[10]

2. **As a showing of good faith and continued transparency, Bunting is voluntarily redoing its collection of Slack data based on the availability of new technologies.**

Bunting's forensic expert testified that when the Slack data was collected in 2019, the methodology used for collection did not provide a means for capturing attachments sent using Slack. Exhibit I, ¶ 11; *see also* FED. R. CIV. P. 45(e)(1)(D). However, technology has advanced such that the attachments can now be reasonably accessed. *Id*. ¶ 12. Anticipating that Plaintiffs would use the lack of attachments to lodge additional false accusations of wrongdoing, Bunting has agreed to incur the additional expense of using the new functionality to re-collect Slack communications. This is being done to demonstrate yet again that Bunting is acting in good faith and is making every effort to comply with the subpoena.

3. **Bunting did not delete any Slack communications to hide or conceal information from Plaintiffs.**

Finally, Plaintiffs' complaints about the deletion of a Slack channel called "Baylor" is nothing more than another attempt to make innocuous facts appear sinister. Importantly, Bunting deleted the Baylor Slack channel more than 17 months before Plaintiffs even issued the subpoena and more than 14 months before the subpoena was served on Bunting. *Compare* Exhibits G and

---

[10] Bunting's and Plaintiffs' conference about the Slack communications was, as usual, nothing more than perfunctory. Plaintiffs' counsel mentioned the Slack communications for the first time on March 1, 2022. During the call, Plaintiffs' counsel only generally asked whether Bunting had turned over Slack communications. Plaintiffs' counsel never mentioned the arguments they put forth three days later in their Motion to Compel nor the exhibit they attached to the motion. And Bunting's counsel even asked Plaintiffs' counsel to explain why he was concerned about the production, but Plaintiffs' counsel declined. Exhibit B at 35.

H, *with* ECF 442 and Exhibit B at 11. As such, the channel was not and could not have been deleted in attempt to conceal or hide information from Plaintiffs. Instead, the deletion of the channel was consistent with Bunting's normal practice of switching to newly created channels when a new matter arises. The deletion of old channels and the creation of new channels is part of streamlining and maintaining proper communications amongst the different Bunting employees that were involved in the matters. Exhibit H ¶ 6. Indeed, at the time of deletion, the Briles matter had concluded and the Shillinglaw matter had just started. Exhibit H ¶ ; G ¶ 8. Moreover, Baylor had nothing to do with the deletion of the channel. It never directed the deletion and Bunting never discussed it with anyone at Baylor. Exhibit G ¶¶ 2, 7. Again, this was because the channels were only used internally and primarily for administrative functions. *Id*. ¶ 5.

      Regardless, Bunting's deletion of the channel prior to Plaintiffs even issuing the subpoena is not a basis for sanctions. Texas does not recognize a stand-alone tort for alleged spoliation. *Trevino v. Ortega*, 969 S.W.2d 950, 951 (Tex. 1998). Moreover, the Fifth Circuit has held that a party can only be sanctioned if a court concludes that the party acted in bad faith. *See Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005) ("The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'"); *Russell v. Univ. of Texas of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007) ("Typically, we do not draw an inference of bad faith when documents are destroyed under a routine policy."). Bunting is not a party in this case nor is there any evidence (much less clear and

convincing evidence)[11] that Bunting acted in bad faith.[12] *See Bradley v. Fed. Express Corp.*, No. A-04-CA-718 AWA, 2006 WL 1751775, at *4 (W.D. Tex. May 25, 2006) (noting that "a party seeking sanctions is not entitled to an adverse inference instruction to the jury, unless that party can show that its adversary intentionally and in bad faith disposed of the evidence."); *See Whitt v. Stephens County*, 529 F.3d 278, 284 (5th Cir. 2008)(concluding that a party acts in bad faith when it "intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party."). Again, Plaintiffs did not issue the subpoena requesting documents from Bunting until more than 17 months after the channel had been deleted (and did not serve the subpoena until more than 28 months after the channel was deleted).

Equally lacking in Plaintiffs' request for a spoliation sanction is any evidence that Bunting had an obligation to preserve the Baylor channel for this litigation. While Bunting was on notice regarding potential claims from Mr. Briles (which were dismissed in their entirety by February 1, 2017, there is no evidence that Bunting was aware of potential claims from Plaintiffs (and indeed there have been none). Exhibit G. Nor did Bunting have any awareness that, a more than 17 months after deleting the channel, it would receive a subpoena requesting Slack documents.[13] *Id*.

---

[11] *Shepherd v. Am. Broadcasting Cos., Inc.*, 62 F.3d 1469, 1476–78 (D.C. Cir. 1995) (surveying case law and requiring clear and convincing of litigation misconduct before holding parties in civil contempt, imposing attorneys' fees under their inherent power, or imposing any punitive remedy).

[12] In assessing whether sanctions are merited, a court must also evaluate whether the evidence lost was relevant and whether the moving party has been prejudiced by the loss. "Courts have held that speculative or generalized assertions that the missing evidence would have been favorable to the party seeking sanctions are insufficient." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 616 (S.D. Tex. 2010). As discussed, the deleted channel contained were internal communications that Baylor never saw and were made after all but one of the Plaintiffs' alleges she was assaulted. Furthermore, Slack was used primarily for administrative purposes and even though the Baylor channel was deleted, of the 192 Slack documents that were produced, 108 contained Bunting communications that occurred during the same time period – October 1, 2016 and February 8, 2017 – that the Baylor channel was in use.

[13] Plaintiffs filed a Motion for Protection (ECF 44) in October 2016 asking the Court to enforce the Court's protective order and require Baylor to provide assurances that it would not provide certain information to Bunting in violation of this order. Baylor responded (ECF 53) that there was no evidence Baylor had or would violate the Court's order

13

It bears repeating that the Slack communications were never seen by Baylor and were made after all but one of the Plaintiffs allege to have been assaulted.[14] *See* FED. R. CIV. P. 37 Advisory Notes ("In applying the rule, a court may need to decide whether and when a duty to preserve arose. … The fact that a party had an independent obligation to preserve information does not necessarily mean that it had such a duty with respect to the litigation, and the fact that the party failed to observe some other preservation obligation does not itself prove that its efforts to preserve were not reasonable with respect to a particular case."); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1308 (N.D. Ga. 2011) (noting that a party must establish that the alleged spoliator had a duty to preserve evidence ***as to the party seeking sanctions*** and rejecting the plaintiffs "sweeping and novel theory of spoliation" that a duty to preserve evidence as to another could support sanctions when the nonmovant did not owe a duty to the movant to preserve evidence because the litigation at issue did not arise until after the alleged spoliation); *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 1456029, at *1 (S.D. Fla. Apr. 5, 2011) (rejecting the idea that a "shifting duty" to preserve evidence can be used by a party to impose sanctions for spoliation when the duty was not owed to the movant).

Finally, Bunting has researched whether the deleted channel can be recovered. Its forensic experts and the information provided on Slack's website indicate it is not possible. Exhibit I ¶ 13. However, if Plaintiffs have different information about the possibility for recovery, Bunting is more than willing to assist with an attempt to recover the information.

---

and further assured the Court and counsel that Baylor "(1) is mindful of its duties under the Family Educational Rights & Privacy Act and the protective order, (2) has complied with both, and (3) will continue to abide by both." The Court summarily denied Plaintiffs' motion (ECF 55). Nothing therein indicated that Plaintiffs sought to take any direct action against Bunting, that Bunting should anticipate future litigation from Plaintiffs, or that Bunting would have any further involvement in this litigation, including as the target of discovery. Exhibit G ¶ 9.

[14] As for this Plaintiff, she did not file suit until August 2017, which again was at least six months after Bunting deleted the Baylor Slack channel.

**D. Bunting was not involved in any conspiracy to conceal the truth.**

Without actually suing Bunting, Plaintiffs have made a practice of lodging salacious allegations against Bunting. The problem is that Plaintiffs' speculative theories are not true. Despite millions of documents being produced by multiple parties in this case, Plaintiffs have not and cannot produce any evidence showing that Bunting did anything wrong.[15] To the contrary, as detailed in Glenn Bunting's declaration, Bunting always advocated for and participated in promoting transparency and truth-telling. Exhibit G ¶¶ 13-15.

COUNTER-MOTION FOR SANCTIONS

Plaintiffs' counsel had an obligation to take reasonable steps to avoid imposing undue burden or expense on Bunting. Rule 45 is clear: "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." A court may award sanctions if a serving party's counsel fails to meet this burden. *See Fintiv, Inc. v. STMicroelectronics, Inc.*, No. 1:21-CV-00044-ADA, 2021 WL 2784560, at *2 (W.D. Tex. Apr. 20, 2021) (awarding sanctions where Fintiv moved to compel compliance with 100% of its subpoena, which asked for a broad range of technical and financial documents regarding all chips STMicroelectronics provides to Apple, regardless of whether such chips were relevant to the underlying case against Apple, demonstrating that Fintiv made no effort to avoid imposing an undue burden on STMicroelectronics); *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 58 (N.D. Tex. 2015) (awarding fees where the issuing party did not take reasonable steps to limit the burden imposed by a facially broad subpoena, as it did not offer to narrow the subpoena at all prior to a hearing on a motion to compel and instead pressed the court to issue an order requiring full compliance and production of

---

[15] The best evidence of this is perhaps the fact that Plaintiffs did not sue Bunting.

essentially every document); *Saint-Jean v. Emigrant Mortgage Co.*, No. 11-CV-2122 (SJ), 2015 WL 13735434, at *5 (E.D.N.Y. Oct. 7, 2015) (issuing sanctions and noting several ways in which the issuing party could have reduced the burden on the responding party, such as by seeking the information earlier in the discovery process (rather than one week before the close of discovery) or from other parties).

Here, Plaintiffs' counsel violated their obligation to avoid imposing undue burden or expense. First and foremost, despite being provided access to review the internal communications and narrow the documents for more than two years, Plaintiffs' counsel refused to do so. This not only resulted in delaying resolution of the issue, but it also required Bunting to expend additional resources and incur substantial costs to review and prepare the documents for formal production.

Second, Plaintiffs' counsel did not confer in good faith, refusing to discuss specific matters of concern.[16] The purpose of a conference is not to create "gotcha" situations, but instead to discuss specific issues in an attempt to resolve disputes. It is not sufficient to merely demand compliance with the requests. *See Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999). Yet, this is precisely what Plaintiffs' counsel did. Despite repeated requests that they do more than lodge generic allegations of alleged failures to produce documents, Plaintiffs' counsel only provided specific arguments about their concerns when they filed complaints in Court. ECF 896, 1032. Indeed, Plaintiffs' Motion to Compel is the first time Bunting was alerted to specific allegations by Plaintiffs' counsel regarding Slack communications.

Ultimately, actions by Plaintiffs' counsel caused delay and additional expense. They purposefully prevented Bunting's meaningful engagement in the process by failing to serve

---

[16] The exception to this was in June and July 2020, when Bunting was working with different counsel for Plaintiffs. Exhibit B at 2-26.

16

Bunting with pleadings containing allegations against Bunting;[17] intentionally waited to serve the subpoena on Bunting until after the Court ruled on the Ketchum materials (which kept Bunting from briefing the issues presented to the Court);[18] repeatedly maligned Bunting in filings that had nothing to do with it;[19] and, even though Rule 45 places the burden on Plaintiffs' counsel to seek to compel documents being withheld, they made the calculated choice not to do so for more than two years.[20]

There is no disputing that Bunting is a non-party in this case and has spent an incredible amount of time and money complying with the subpoena. Exhibit B ¶ 17. Much of this was unnecessary. Accordingly, Bunting requests that the Court find that Plaintiffs' counsel failed to take reasonable steps to avoid imposing undue burden and expense and failed to confer in a manner that would permit Bunting and Plaintiffs to resolve issues prior to seeking Court intervention. As a result, Bunting further requests that the Court find that Plaintiffs' counsel has waived its right to complain about any withheld documents. Finally, Bunting requests that the Court order Plaintiffs' counsel, going forward, to confer by providing specific information regarding their complaints and further by providing to Bunting, for use at the conference, any documents that will be attached to possible future motions against Bunting.

## **CONCLUSION**

Accordingly, Plaintiffs' request for sanctions should be denied and Bunting's request for sanctions should be granted.

---

[17] ECF 713.

[18] ECF 710 at 6-7.

[19] ECF 44, 250, 363, 426, 643, 795.

[20] Exhibit B at 7-36.

        Respectfully submitted,

        */s/ Rusty Hardin*
        Rusty Hardin
        Attorney-in-Charge
        Texas Bar No. 08972800

OF COUNSEL:
RUSTY HARDIN & ASSOCIATES, LLP
Lara Hudgins Hollingsworth
Texas Bar No. 00796790
John MacVane
Texas Bar No. 24085444
Street, Suite 2250
Houston, Texas  77010
Telephone:  (713) 652-9000
Facsimile:  (713) 652-9800
rhardin@rustyhardin.com
lhollingsworth@rustyhardin.com
jmacvane@rustyhardin.com

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served to all parties and/or counsel of record via ECF on March 23, 2022, pursuant to the Federal Rules of Civil Procedure.

        */s/ Lara Hudgins Hollingsworth*
        Lara Hudgins Hollingsworth

### CERTIFICATE OF CONFERENCE

I certify that on March 23, 2022, I emailed Plaintiffs' counsel to inform them of Bunting's intention to file a response to their request for sanctions and a counter-motion for sanctions.  I informed counsel that Bunting believed it was entitled to file this joint pleading and was within the page limits.  However, it also informed Plaintiffs that it would alternatively seek leave to file this pleading.  Finally, I set forth the basis for Plaintiffs' limited request for sanctions.  Plaintiffs' counsel has not responded.

        */s/ Lara Hudgins Hollingsworth*
        Lara Hudgins Hollingsworth