IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, JANE DOE 2, <br> JANE DOE 3, JANE DOE 4, <br> JANE DOE 5, JANE DOE 6, <br> JANE DOE 7, JANE DOE 8, <br> JANE DOE 9, JANE DOE 10, <br> JANE DOE 11, JANE DOE 12, <br> JANE DOE 13, JANE DOE 14, AND <br> JANE DOE 15 <br><br> *Plaintiffs,* <br><br> vs. <br><br> BAYLOR UNIVERSITY <br><br> *Defendant.* | § § § § § § § § § § § § § § § § § § | Cause No. 6:16-cv-173-RP <br><br> *Consolidated with* <br> 6:17-cv-228-RP-AWA <br> 6:17-cv-236-RP-AWA |

**PLAINTIFFS' POSITION STATEMENT
ON PEPPER HAMILTON DOCUMENTS FOR THE SPECIAL MASTER**

TO SPECIAL MASTER ANDREW MACRAE:

Plaintiffs respectfully submit this Position Statement on Pepper Hamilton Documents as requested by the Special Master.

**OVERVIEW**

Plaintiffs provide responses to the inquiries by topic as listed below. Recognizing the Special Master's statement that prior motions, briefing and orders will be reviewed, Plaintiffs will attempt direct responses only to the specific questions posed and attempt to resist repetitive arguments previously made. Plaintiffs have also added a few additional matters that would appear to fall within the present subject matter and arise from certain uncertainties.

**QUESTIONS AND ANSWERS**

I.     The Pepper Hamilton documents already produced.[1]

In anticipation of the need for an accurate and up-to-date summary, Plaintiffs requested and obtained a report from UnitedLex ("ULEX") on June 28th that details the production of PH material from Baylor and production of PH materials produced by PH in response to a Rule 45.[2] This report was emailed to counsel after Judge Pitman entered the Order appointing a Special Master. The full email string, which goes back months, is provided as **Exhibit A**.

As to the first question, according to ULEX, the PH documents ULEX has received and produced to date are summarized as follows:

| Production Numbers | | |
|---|---|---|
| Set | Pepper Hamilton | Baylor |
| Total Docs Received | 1,371,660 | 563,602 |
| Total Docs Produced | 7,854 | 15,979 |
| Total Docs Produced with Redactions | 930 | 1,435 |

Unfortunately, the above is not as simple as it would appear. The table only references "Docs," which is obviously different than "Pages" or "Bates Numbers," and matching the "Docs" to

---

[1] Plaintiffs have recently briefed this issue: ECF 1033 at 2-3 and ECF 1044 at 1.
[2] UnitedLex is the independent vendor the Court appointed after reconsidering a "claw back" order. ECF 607; 653; 667; 751. Baylor is charged with paying ULEX. Baylor was ordered to produce to ULEX its universe of PH, and PH was ordered to produce directly to ULEX "all documents dated, created or received between January 1, 2003 and November 6, 2017." ULEX then was tasked with matching 1) the materials Baylor claimed to have produced to Plaintiffs and 2) those being withheld by Baylor under a privilege log with 3) what PH maintained was the full universe of its files. This match, initially completed in January 2020, was necessary because Plaintiffs alleged that Baylor had not actually produced and logged all the PH materials despite Baylor's certification to the Court and the parties. The comparison resulted in a report from ULEX noting significant discrepancies, including 33,377 documents that did not fully match. ECF 777.

Baylor's Log entries is exceedingly problematic. Throughout the PH ordeal, Baylor's refusal to simply use Bates numbers makes it impossible to do more than guess about the completeness of production. Instead, Baylor uses different terminology - "document" / "document set" / "log entry" as well as a "Control Number" developed by ULEX. This shifting terminology contributes greatly to the confusion surrounding the ongoing PH dispute, confusion that could be greatly reduced or eliminated were Baylor to simply stick only to Bates numbers and ranges. Without such, a once and for all apples-to-apples understanding of production deficiencies cannot be known.

Explaining the issue in writing is perhaps convoluted, but appreciating how terminology has clouded understanding is important. For example, on March 28, 2022, in support of its February 4, 2022 contention that "Baylor therefore has completed its PH work product production pursuant to the terms of this Court's Waiver Order," Baylor reported that it had produced 9,745 "documents" – and that admittedly sounds like a lot.[3] However, it is really an illusion, for this claim and the method of production leaves unknown the number of actual and corresponding Log "entries" produced – and more importantly what remains withheld. A single Log entry can account for hundreds of documents and thousands of pages. Take Baylor's latest Master Log where there is one identified Bates Range of "PH_3190703—PH_91703.2836." Again, this seems like a lot, but this range corresponds to only 5 consecutive "entries" on Baylor's Log. Yet, only when one actually spends the hours necessary to wade through the actual production to review the individual pages does one learn that these mere 5 entries contain 486 separate documents. This paints a misleading picture of actual compliance. Essentially, as of the date of Baylor's ECF 1045 Advisory claiming completion, and even to the present date, the produced documents make up only a small fraction of the thousands of PH WP log entries. In short, when Baylor claims that 9,745 documents have been produced, it does not mean that 9,745

---

[3] ECF 1025 and ECF 1044 at 1

entries have been removed from its privilege Log.[4] Indeed, 5% of the production (486 of the 9,745 documents) relates to only 5 Log entries. And, even among those asserted to have been produced, review confirms that entire attachments to produced documents have been withheld. This would be patently evident if the Bates numbers were disclosed, but instead Plaintiffs are compelled to hunt and peck through material to unearth such deficiencies. Importantly, ULEX is only allowed to produce to Plaintiffs materials that Baylor allows. Thus, the numbers produced are not what ULEX believes is appropriate after comparing the PH to Baylor universes - it is only what Baylor has permitted.[5]

That is admittedly a long explanation, and Plaintiffs must resist the urge to be even more detailed. But, the above is a needed and hopefully beneficial one to qualify the ULEX report of June 28th as it relates to this and the other questions now raised.

## II. The Pepper Hamilton documents not produced.[6]

Per Exhibit A, as of June 28, 2022, the remaining PH documents not provided to Plaintiff or provided with redactions are:[7]

---

[4] E.g. ECF 1041 at 1.

[5] Baylor still maintains that the waiver order requires only production by Baylor, not ULEX, which if true calls into question the point of the entire three-year ULEX exercise. ECF 1044. However, there have been numerous filings and hearings on this very subject, and one in which Judge Austin went to great lengths to present his own PowerPoint on these related issues to demonstrate his concern and skepticism of Baylor's claims and assurances. Hearing of December 6 and 11, 2019 before Judge Austin; ECF 743-1; ECF 751.

[6] The parties have recently briefed this issue: e.g. ECF 1025 at 2-3, ECF 1033 at 1, 3, and 4, ECF 1041 at 1, and ECF 1044-1 at 11.

[7] As first mentioned in FN 2 above, the reason these tables are broken down between Baylor and Pepper Hamilton is because Baylor first tried to make production of the PH materials and then certified that it had. Plaintiffs complained that they were not given the complete production, and the Court ordered a claw-back procedure. When Baylor asked the Court to reconsider, the Court, at Baylor's suggestion, ordered the appointment of a vendor, UnitedLex, who was to receive all the files from PH directly as well as all the files Baylor purported to maintain from PH and make a comparison. Thus, ULEX reports on PH materials from both the set PH produced to it and the PH documents Baylor provided from its possession. Two facts are inescapable at this point: 1) Baylor did not produce all of the PH files as it certified to the Court and the parties; and 2) Baylor's PH files do not match PH's actual files. This is not the only incidence of Baylor representing all items were produced when they were not, and the issue now bring the appointment of a Special Master.

Baylor:

    1. Documents not turned over to Plaintiffs by ULEX at all: 547,623
    2. Document turned over with redactions: 1,435

Pepper Hamilton:

    1. Documents not turned over to Plaintiffs by ULEX at all: 1,363,806
    2. Document turned over with redactions: 930

Going back to the previous question, what this really means in practical terms is unknown. However, it is safe to conclude that meaningful gaps remain in both production, redactions and Baylor's Logs. Presumably some of the documents ULEX confirms have not been turned over have been produced by Baylor at some point, but what they are cannot be assured. Were ULEX permitted to simply produce those materials, it would be easy to confirm. Why Baylor will not let ULEX produce materials Baylor maintains it has already itself produced has never been adequately explained. Any burden of such would only be on Plaintiffs having to review them, a burden Plaintiffs must accept. But at this point, Plaintiffs do not have a list of the matched documents to know for certain even which category into which they fall.

### III.    The universe of Pepper Hamilton documents still at issue.[8]

Unfortunately, because of issues such as those discussed above, Plaintiffs contend all of the materials in ULEX's possession (both those given by Baylor and those given by PH) that have not been produced <u>by ULEX</u> remain at issue, as well as those that have been produced by ULEX with redactions. Both Baylor's set and PH's set remain in dispute. If forced to guess, Plaintiffs calculations reveal that only 1,772 log entries may have been released and that closer to 9,395 work-product entries remain. However, this only speaks to work-product entries, not attorney-client entries that remain withheld despite the Court's prior waiver ruling on that privilege.

---

[8] Plaintiffs have recently briefed this issue: ECF 1033 at 4 and ECF 1041-1.

**IV.     Whether the documents at issue can be divided into categories, and if so, what those categories are.**[9]

Plaintiffs are not certain what "categories" is being referenced, but presume that the term relates to Baylor's recent discussion in ECF 1044 of four categories of "particularly sensitive documents," etc. "Categories" have also been used in connection with ULEX reports on comparison of PH with Baylor produced materials – e.g. "match," "partial match," "substantive variance," etc. There are also categories discussed in the past resulting from Baylor decisions to divvy up documents by "document sets."

If the issue is the recent "particularly sensitive documents," Plaintiffs frankly don't know what these are other than various statements and representations by Baylor counsel during repeated conferences, statements that have never really made sense.

However, should the Special Master be convinced that categories are useful, Plaintiffs request that categories be assigned by Bates range and not by document sets or Log entries. ULEX can produce the full Bates ranges in question, of both redacted and unproduced documents, and Baylor could then be required to prepare its own table breaking those documents (by Bates range) into the categories the Special Master desires. Much simpler, Plaintiffs can be provided access to these materials as part of "the entire universe of PH documents that are in dispute," review same and then either agree with Baylor or report to the Special Master what remains in dispute.

Again, so much of the problem up until now have been defining the PH documents by set or group, but not linking those categories to actual Bates ranges. Plaintiffs contend the proposal it makes below obviates the need for categories at this stage.

---

[9] Plaintiffs have recently briefed this issue: ECF 1044-1 at 24 and ECF 1044-3.

V. **Your clients' position(s) on the categories of documents still at issue.[10]**

Plaintiffs cannot respond beyond what they have already articulated above. Plaintiffs see little value in breaking the remaining production into categories given the Court's rulings on attorney-client and work-product privilege waiver and the latest order appointing the Special Master. To date, categories have only obscured and obstructed the process.

VI. **Identification of the documents that would be part of a "quick peek," as mentioned in the Order.[11]**

Judge Pitman provided the following in his recent order: "After the years of delay and litigation and with a strong protective order in place, Baylor may not withhold the four categories of documents it deems 'particularly sensitive' from Plaintiffs' 'quick peek.' Instead, both sides and the special master will have access to the entire universe of Pepper Hamilton documents that are in dispute."[12] The order further provides, "the Court defers to the special master to craft a plan that allows Plaintiffs—or Plaintiffs' counsel—access to all the documents for the limited purpose of resolving this dispute."[13]

Plaintiffs position is that all the remaining items listed in ULEX's possession should be produced without redactions (and those produced with redactions be produced with no redactions). Once that production has been made, Plaintiffs' counsel believe they can make an initial determination of how long a more meaningful review will take. Plaintiffs would hope this initial review can be conducted within two weeks of receipt with Plaintiffs' document management system.[14] After that initial review (and likely conference with Baylor to see where agreements can be reached), Plaintiffs should be able to report to the Special Master a more definite length of time needed for a review

---

[10] Plaintiffs have recently briefed this issue: ECF 1041-2.
[11] Plaintiffs have recently briefed this issue: ECF 1044 at 2-3.
[12] ECF 1054 at 3 (emphasis added).
[13] *Id.*
[14] Assuming ULEX produces the material in the customary format, it generally takes Plaintiffs 48 hours to load the data and work out any logistical issues with ULEX. At that point the actual volume in terms of documents and pages will be hopefully known.

sufficient for Plaintiffs to provide a listing that the Special Master needs to understand what Plaintiffs can agree is appropriately withheld and what is not and why. The Special Master can be assured that Plaintiffs have no benefit in delay and will work in earnest to bring all issues to head for final determination so that a realistic scheduling order and trial date can be set.

At that stage, the Special Master can undertake whatever review is appropriate and make a recommendation to Judge Pitman as ordered in the last paragraph of the recent order: "IT IS FINALLY ORDERED that the special master shall file a timely report and recommendation as to whether Baylor must produce the remaining Pepper Hamilton documents."[15] For any documents that the Special Master and Court do not permit Plaintiffs to retain, if any, Plaintiffs will destroy all such documents and so certify, and none of those documents may be permitted for any use in the case by any party unless later allowed by the Court.

### VII. The universe of Pepper Hamilton documents still at issue.

Plaintiffs contend that all the documents shown in the ULEX tables above, whether produced redacted or not produced at all, remain at issue.

### VIII. What documents constitute the category of "particularly sensitive."[16]

Aside from hearing various attempts at explanation by Baylor, Plaintiffs cannot speak to this issue. Since Judge Pitman has already ruled that whether or not something is "particularly sensitive," these materials cannot be excluded from access to the entire universe in dispute. The Court is correct that only through Plaintiffs' ability to have access will Plaintiffs be able to respond.

If Baylor wants to identify these documents by specific Bates number, Plaintiffs stand ready to review and respond just like all the other materials withheld with either agreement they may be withheld or why these should not be withheld.

---

[15] ECF 1054 at 5 (emphasis omitted).
[16] Plaintiffs have recently briefed this issue: ECF 1001 at 1 and ECF 1044 at 3.

## IX. The completeness of the Baylor privilege log.[17]

Since before the appointment of ULEX and continuing thereafter, Baylor has repeatedly certified that its PH logs are complete, only to thereafter revised those Logs, "find" new documents, or discover "mistakes" in the Logs. The most recent Master Log giving assurance of the completion of production was made in connection with ECF 1025 in February 2022. However, despite this last certification, additional PH materials not contained on that Master Log have subsequently been produced. And it should be pointed out that in the delivery of that final Master Log on February 18, 2022, Baylor claims that "We are also preparing an amended log reflecting release of the PH documents recently ordered by the court in Dkt. 1026 as well as the release of Bunting documents." This amended Log has yet to be provided. So, in short, it is clear the Log is still not complete, but to what extent is unknown.

Moreover, and as stressed above, the manner in which Baylor logs the PH materials is particularly unhelpful because it does not refer to actual, Bates pages from the production materials in a manner than can be correlated with ULEX reports and Baylor Logs. Regardless, Plaintiffs' access to the entire PH universe should eliminate or significantly reduce the need for question.

Under Plaintiffs' proposal above, after Plaintiffs review the PH materials and identified those Plaintiffs seek to retain, Baylor should be required to update its privilege Log and reference, by Bates pages, those materials it continues to maintain it should be allowed to rescind from Plaintiffs.

## X. Identification and categorization of the "pulled-back" documents mentioned in the Order.

This reference in the Order is not clear to Plaintiffs. Under Plaintiffs' proposal, any documents (from both the redacted and unproduced PH files, and from both the Baylor and PH sets) that

---

[17] Plaintiffs have recently briefed this issue: ECF 1025-2, ECF 1033 at 4, and ECF 1044-1 at 11.

Plaintiffs agree to return/destroy after review and any documents the Special Master and Court rule are to be returned/destroyed, will be so handled.

## XI.     Additional Topic: Privilege Log Items Not Pepper Hamilton Related.

The recent email from the Special Master asked for counsel to identify additional topics that should be discussed. One other Log-related item is that Baylor's Master Log includes a number of non-PH entries of documents being withheld or produced only with redactions (Plaintiffs believe this number to be 5,249 non-PH Log entries). These items should be produced in this same review process so all can be resolved at once, and any that remain in dispute presented to the Special Master for consideration.

## XII.    Additional Topic: Confidentiality Designations.

This topic applies to PH production as well as non-PH production. Baylor routinely, and without basis, identifies as "Confidential" many of its production documents. The Court has been very specific in its orders on protective order (orders issued after extensive briefing)[18] as to what is and is not subject to protection. Essentially, if the document is embarrassing to Baylor, it is more often than not marked "Confidential," even where it clearly falls outside the realm of the Protective Order. Plaintiffs wholly agree that student records and identifying information should be maintained confidential. Disagreements regarding application of FERPA and Baylor's use of FERPA that have hindered discovery from the get-go should be fully resolved by the Court's ongoing orders and clarification.[19] However, something that is just harmful and embarrassing to Baylor's position does not warrant protection, and limitations of their use just obstruct discovery. While Plaintiffs agree and indeed are ordered to keep "quick-peek" documents confidential and attorneys' eyes only, there remain an extensive number highly relevant documents that Baylor has marked "Confidential," and

---

[18] ECF 155; ECF 156.
[19] E.g. ECF 987

those materials that just don't fall within the parameters of the Protective Order  Counsel have conferred on this issue many times and have not arrived at an agreement.

The "Confidential" designation issues is one that hinders ongoing discovery, and specifically disrupts Plaintiffs from undertaking witness interviews and other informal discovery.  This issue is also delaying Plaintiffs' efforts to resume depositions.  The Protective Order strictly provides how Confidential marked material case be used. Baylor should be directed to do a review of all the materials it truly maintains meet the Protective Order requirements and promptly report to Plaintiffs and the Special Master. Plaintiffs will then do a final review and provide to the Special Master a table of materials that Plaintiffs believe are not correctly marked.  Thereafter, the Special Master can determine whether the remaining disputed confidential markings are sustained or denied.

### XIII. Additional Topic: Non-Pepper Hamilton Related Discovery Issues.

It appears to Plaintiffs from the Court's Order that the Special Master is empowered to address all pending discovery matters, not only those that are PH related.  However, this could be in need of clarification.  Contrast these two excerpts from the court order:

> "IT IS FURTHER ORDERED that the special master shall proceed with all reasonable diligence to manage *all* discovery in this case, to resolve this discovery dispute, and to schedule appropriate discovery in this action. The special master may act independently and need not seek prior approval of the Court before taking any action to reach a recommendation." *Id.* at 3 (emphasis added and omitted).

> "IT IS FURTHER ORDERED that the Court appoints Andrew MacRae as Special Master in this action to oversee this Pepper Hamilton discovery dispute in this case." *Id.* at 4 (emphasis omitted).

If Plaintiffs' interpretation is correct, there are numerous outstanding discovery issues, such as the Confidentiality issue discussed above, that do not relate to PH production, but that stymie discovery and the ultimate trial of this case.  Below is a non-exhaustive list of such issues:

1. Redactions.  Baylor has redacted much of its PH and non-PH production.  The vast majority of these redactions were inappropriate at the time but since the Court has

overruled several of Baylor's positions, Baylor has yet to re-produce materials without redaction. Plaintiffs propose that Baylor review its entire production, log all such redactions it continues to believe are appropriate, provide the basis for each and then Plaintiffs will review and present the matter to the Special Master, if necessary.

2. Depositions. Depositions in this case have not proceeded in many months. Some of the depositions that have occurred, the Court has ordered reconvened because either Baylor obstructed the questioning with objections and instructions to the witness and/or Baylor had not produced and/or obstructed the witness from producing, relevant materials needed for the deposition inquiry. The continued dispute over the PH production has also prevented a 30(b)(6) deposition ordered by the Court and other witness depositions. It served little purpose to proceed with costly and time-consuming depositions knowing full well that hundreds of thousands of potentially relevant materials remained unproduced. When depositions would proceed, Baylor would often instruct witnesses not to answer based on claims since rejected by the Court. Baylor's right to instruct witnesses to not answer questions based on privileges that have been determine waived should be decided.

3. Third-party subpoenas. The remain before Judge Pitman several pending motions pertaining to discovery requested by Rule 45 subpoena from third parties. Will the Special Master be addressing those such issues?

4. Baylor's continued use of documents snapped back under the protective order. Baylor's counsel has used at deposition documents after they were required to be destroyed by Baylor.

**CONCLUSION**

Thus, for the reasons above, Plaintiffs respectfully request that their counsel be provided access directly from ULEX to the remaining PH redacted and unproduced materials held in the Baylor and the PH sets and permit the review and Special Master process outlined above.

Respectfully submitted,

 /s/ Chad W. Dunn
BRAZIL & DUNN, L.L.P.
Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
4407 Bee Cave Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com
scott@brazilanddunn.com

AND

DUNNAM & DUNNAM, L.L.P.
Jim Dunnam
State Bar No. 06258010
Andrea Mehta
State Bar No. 24078992
Eleeza Johnson
State Bar No. 24058690
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Facsimile: (254) 753-7434
jimdunnam@dunnamlaw.com
andreamehta@dunnamlaw.com
eleezajohnson@dunnamlaw.com

AND

SOMMERMAN, MCCAFFITY, QUESADA
 & GEISLER, L.L.P.
George (Tex) Quesada
State Bar No. 16427750

                                        Laura Benitez Geisler
                                        State Bar No. 24001722
                                        Sean J. McCaffity
                                        State Bar No. 24013122
                                        Jody L. Rodenberg
                                        State Bar No. 24073133
                                        3811 Turtle Creek Blvd, Suite 1400
                                        Dallas, Texas 75219
                                        Telephone: 214-720-0270
                                        Facsimile: 214-720-0184
                                        quesada@textrial.com
                                        lgeisler@textrial.com
                                        smccaffity@textrial.com
                                        jrodenberg@textrial.com

                                        ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

       This is to certify that a true and correct copy of the above and foregoing has been filed by ECF and sent to counsel of record via electronic notification on July 1, 2022.


                                        */s/Chad W. Dunn*
                                        CHAD W. DUNN