**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **JANE DOE 1, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | **Civil Action No. 6:16-CV-00173-RP** |
| | § | |
| **v.** | § | **Consolidated with** |
| | § | **6:17-CV-228-RP** |
| **BAYLOR UNIVERSITY,** | § | **6:17-CV-236-RP** |
| | § | |
| **Defendant.** | § | |

## BAYLOR UNIVERSITY'S POSITION STATEMENT IN RESPONSE TO REQUEST OF SPECIAL MASTER

Baylor University ("Baylor") files this position statement in response to the request of Special Master Andrew MacRae for information regarding the parties' dispute related to the Pepper Hamilton work product documents ("PH WP") that Baylor continues to withhold as privileged following the Court's ruling on August 5, 2021. Dkt. 988 (the "Waiver Order"). This submission explains the relevant procedural history, describes the current PH WP dispute (and addresses the bullet points in the Special Master's June 28 email), describes UnitedLex's role, and concludes with some initial thoughts on the logistics of the "quick peek" process.

## I.       Procedural History (How We Got Here).

### A.  Baylor retains Pepper Hamilton.

In August 2015, Baylor, through its Board of Regents, hired outside counsel—Gina Smith and Leslie Gomez from the law firm of Pepper Hamilton ("Pepper")—to investigate Baylor's response to student reports of sexual assault during the 2012-15 school years and to provide legal advice and recommendations for potential policy changes. Dkt. 104-3, ¶ 12; Dkt. 866-2, Ex. A.  To facilitate their investigation, Baylor gave Pepper full access to Baylor employees and files, including employee computers and cell phones.  Dkt. 104-3, ¶¶ 11-12; Dkt. 672:40.  All told, Pepper imaged the devices

of dozens of employees, including Baylor's General Counsel and Associate General Counsel. Dkt. 662-6 ¶ 3. Pepper then developed search terms to apply to the collected data. The search terms generated approximately 450,000 documents, over 2.4 million pages of material, which Pepper attorneys and contract attorneys reviewed (the "PH Collection"). Dkt. 622-1 ¶ 2. During the nine-month investigation, Pepper interviewed 65 witnesses, some more than once. Dkt. 93-3 at 2-3; Dkt. 622-1. Following their review and analysis, Pepper attorneys prepared witness interview materials, including pre-witness interview memoranda, chronologies, and witness interview binders with key documents for use by Smith and Gomez during their interviews. Dkt. 104-2; 104-4; 104-5; 805-2. Pepper's work product also included post-interview summaries, "issue" binders and chronologies, PowerPoint slides, document summaries, outlines, and multiple drafts of the above. *Id.* The work product also included thousands of internal communications exchanged between Pepper attorneys as they performed their work. *Id.*

In May 2016, the Board of Regents heard two days of oral presentations by Pepper attorneys regarding their conclusions. Dkt. 672:41. The attorneys used PowerPoint slides as an aid in these presentations. *Id.* Thereafter, Pepper worked with Baylor's in-house and outside counsel to draft a thirteen-page investigation summary entitled "Board of Regents Findings of Fact," which was publicly released on May 26, 2016. Dkt. 805-1. The investigation found that, between 2012-15, Baylor's compliance with "emerging" legal guidance had been "slow" and "uncoordinated," resulting in a "fundamental failure" to comply with Title IX. Dkt. 93-3 at 1, 4. Pepper also provided 105 Recommendations for policy and operational changes at Baylor. Dkt. 93-4.

In June 2016, Baylor organized task forces composed of faculty, staff, administrators, and students to implement the 105 Recommendations. Dkt. 805-1, ¶¶ 6-7. Baylor consulted the Pepper attorneys on new policies and programs during 2016 and 2017. Dkt. 805-1. Legal counsel was necessary because some of the operational changes related to compliance with federal laws, and

because federal lawsuits and other legal proceedings were pending.  *Id.*  As Baylor's task forces' work concluded, Pepper attorneys prepared a report verifying Baylor's implementation of the 105 Recommendations.  Dkt. 805-2.

In addition to conducting the investigation and assisting Baylor with the implementation of the 105 Recommendations, Pepper attorneys also assisted Baylor on various other legal matters, including providing advice with respect to claims of third parties and investigations by various entities such as the U.S. Office for Civil Rights, the Texas Rangers, an academic accrediting agency, the Big XII, and the NCAA.  Dkt. 805-2.

Important to this dispute, Smith and Gomez left the Pepper firm on February 6, 2017 and joined the firm of Cozen O'Connor.  When they left, Smith and Gomez had Pepper transfer the firm's Baylor files to Cozen.  Pepper, however, retained a copy of those files, as well as a hard drive housing the original Baylor source documents generated using Pepper's search terms, *i.e.* the PH Collection.[1]

### B.  Plaintiffs Jane Does 1-10 file suit and seek Pepper's materials.

In June 2016, Plaintiffs Jane Does 1-6 filed suit against Baylor.  Dkt. 1.  In October 2016, Plaintiffs Jane Does 7-10 joined the suit.  Dkt. 56.  They allege that they were sexually assaulted by other Baylor students between 2004 and 2016.  *Id.*  Plaintiffs subsequently served wide-ranging requests for production that sought, among other items, all of the materials generated *by* Pepper as part of its work for Baylor as well as the underlying source data that Pepper collected *from* Baylor. After Baylor asserted objections to Plaintiffs' requests, including attorney-client privilege and work-product objections, Plaintiffs filed a motion to compel in May 2017.  Dkt. 93.  The Court subsequently held that Baylor had waived the attorney-client privilege with respect to Pepper's work on the

---

[1] This group of documents is also sometimes referred to in the parties' briefing as "Project Bear Collection."

investigation, but that Baylor did not waive protection as to Pepper's work product. Dkt. 168.[2]  That same month, the Court established an ESI cut-off date of June 15, 2016, meaning that Baylor was required to produce and log responsive materials only through June 15, 2016.  Dkt. 176.

Baylor subsequently produced and logged the voluminous PH Collection documents, Baylor's original source data, which contained thousands of privileged documents from Baylor's Office of General Counsel related to other matters and third-party litigation.  With the assistance of Smith, Gomez, and other Pepper lawyers who had moved to Cozen, Baylor also produced and logged Pepper's law firm files (which contained the PH WP).  In addition, the vast majority of the documents also contained confidential student information protected by the Family Educational Rights & Privacy Act (FERPA), a federal law that required Baylor to send detailed notices to affected students, as well as apply extensive redactions to the records to protect the student's privacy interests, in accordance with the Court's Orders.[3]

### C.  Plaintiffs Jane Does 11 and 12-15 file suit, and the cases are consolidated.

In August 2017, Jane Doe 11 sued Baylor alleging that she was sexually assaulted by another student in April 2017.  In September 2017, Jane Does 12-14 filed suit, and Jane Doe 15 joined in February 2018, alleging assaults between 2012 and 2016.

---

[2] In that Order, the Court held that the waiver ruling on attorney-client privilege applied only to Pepper's communications with Baylor related to the investigation.  Thus, the privilege was not waived for other Baylor attorney-client communications (i.e., privileged communications that did not relate to the investigation)—even if those communications were in documents collected and reviewed by Pepper as part of its investigation.  *See* Dkt. 168.

[3] Under FERPA, Baylor is prohibited from releasing educational records containing "personally identifiable information" absent written consent from the student, a judicial order directing such disclosure, or a lawfully issued subpoena. 20 U.S.C. § 1232g; 34 C.F.R. § 99.3. When disclosure is pursuant to a judicial order or subpoena, students still must be "notified of all such orders or subpoenas *in advance* of the compliance therewith by the educational institution."  § 1232g(b)(2)(B) (emphasis added).  This means that before Baylor could produce unredacted student records, it was required to make "a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action." 34 C.F.R. § 99.31(a)(9)(i) & (ii).

In February 2019, the Jane Doe 11 and Jane Does 12-15 cases were consolidated with the Jane Does 1-10 case for purposes of discovery.  Case No. 6:17-cv-228, Dkt. 21.  Unlike Jane Doe 11, who alleged an assault in April 2017, the other Jane Does' alleged assaults occurred between September 2004 and March 2016 (before the May 2016 issuance of the Findings of Fact from Pepper's investigation).  The Court subsequently entered an Order establishing a new ESI cut-off date of November 6, 2017.  Dkt. 819.  Once again, Baylor began the extensive process of producing and logging responsive documents, including the internal law firm files of Pepper, which included the PH WP, for the extended time period between the original June 15, 2016 ESI cut-off date and the November 6, 2017 cut-off date.  Because Smith and Gomez had moved to Cozen in February 2017, this also meant that Baylor had to produce and log responsive materials from Cozen's internal files, too.  As before, Baylor attorneys worked closely with Smith, Gomez and other Cozen attorneys to do so.

### D.  With certain exceptions, the Court rules that Baylor waived its objections on the PH WP in the Jane Doe 11 case.

In June 2020, Magistrate Judge Andrew Austin ruled that Pepper's work product had been waived in the three consolidated lawsuits as to both Pepper's work on the investigation and its work implementing its recommendations.  Dkt. 845.  Judge Austin also ordered Baylor to prepare a single, combined privilege log containing all of the entries on its privilege logs prepared to date (the "Master Privilege Log").[4]  *Id.*

Baylor appealed and, on August 5, 2021, the Court upheld Judge Austin's waiver ruling in the Jane Doe 11 suit but reversed the ruling and found no waiver in the Jane Does 1-10 and Jane Does

---

[4] Baylor's Master Privilege Log reflects different categories, including: (i) Baylor documents collected and reviewed by counsel as a result of search terms agreed to by the parties, (ii) documents from Baylor's Title IX office relating to unrelated, third-party sexual assaults, (iii) Baylor documents collected by Pepper as part of their investigation, including SMS messages (i.e., the PH Collection); (iv) Baylor documents specific to the Jane Does, including Jane Doe 11; (v) third-party logs (such as Bunting); and (vi) the logs of PH WP that are the subject of this dispute.

12-15 suits. Dkt. 855, 988 (the Waiver Order). On page 11 of the Waiver Order, the Court identified certain excepted documents that Baylor could continue to withhold as privileged despite the finding of waiver. Those documents include materials that Pepper did not consider when doing its work; internal emails or communications between Pepper attorneys that were not also sent to a Baylor representative; legal research by Pepper; and materials Pepper attorneys prepared to aid in conducting witness interviews.[5] Dkt. 988 at 11. The Waiver Order did not find any waiver as to Pepper's work product on other legal matters for Baylor such as, for example, third-party litigation, the Office for Civil Rights investigation and other regulatory matters. *See* Dkt. 988. Thus, the Waiver Order applies only to Pepper's investigation and implementation work. This is consistent with Judge Austin's Order (Dkt. 845, n.9) as well as Plaintiffs' briefing on the issue which only addressed Pepper's implementation and investigation. *See* Dkt. 795 (Plaintiffs' allegation that "[a]t this point in the litigation, through its ongoing conduct, Baylor has waived work-product privilege for all materials pertaining to Pepper Hamilton's investigation and reform implementation.").

### E. The Parties confer on dates and logistics of production.

In the Waiver Order, the Court ordered the parties to "confer and reach an agreement about the timing and logistics of the production of Pepper Hamilton documents on or before August 12, 2021." Dkt. 988 at 24. As part of that conference, Baylor informed Plaintiffs' counsel that it intended to seek mandamus relief from the Waiver Order at the Fifth Circuit and proposed a production date for the PH WP of one week after appellate resolution of the mandamus petition or by October 8, 2021, whichever was later. The reason for the proposed date was because Baylor knew it would take time for Baylor to complete the review of the thousands of privileged Pepper documents, particularly:

---

[5] In Judge Austin's Order, which contained the same exceptions adopted by Judge Pitman in the Waiver Order, the exception for materials prepared to aid in conducting witness interviews explicitly includes both witness chronologies and witness binders prepared by Pepper attorneys. Dkt. 845 at 43.

(i) to identify any documents that would result in Baylor having to send additional FERPA notices to affected students based on the Court's July Order directing such notice, Dkt. 987; [6] and (ii) to identify documents that are excluded by the page-11 exceptions in the Waiver Order.

Although not required by the Waiver Order, Plaintiffs requested that Baylor coordinate a second production of duplicative Pepper documents through UnitedLex, the third-party e-discovery vendor that the parties had used with respect to another dispute described below. Baylor agreed but, because UnitedLex is a third-party not subject to Baylor's control, Baylor told Plaintiffs that it could not promise a date by which UnitedLex would complete its production. On August 27, 2021, the parties filed a Joint Advisory setting forth their agreements and areas of dispute with respect to the logistics of the PH WP production. Dkt. 1001. Significantly, Plaintiffs did not dispute at that time that it would take additional time for UnitedLex to complete the PH WP production and that Baylor could not agree to a date certain by which UnitedLex's production would be complete.

On October 20, 2021, the Fifth Circuit denied Baylor's petition for mandamus relief. Baylor produced PH WP subject to the Waiver Order on October 27, 2021, consistent with the parties' agreement. Baylor completed its production of the FERPA-protected PH WP documents by February 4, days after the Court resolved the final FERPA objections on those documents on January 31, 2021. Dkt. 1025. After completing its production, Baylor updated its privilege log for the Jane Doe 11 case to remove items that it had produced. As part of that process, Baylor identified 250 log entries for documents that it believed needed to be released based on the Waiver Order (mostly

---

[6] Baylor had not previously provided notice to many of the students named in the PH WP documents because, under the Court's prior Orders, Baylor was required to produce "[a]ny tangible thing that can be excised or redacted of personally identifiable information . . . without notice to the affected student." Dkt. 300. In July 2021, in an effort to avoid time consuming redactions which had become laborious for Baylor, the Court ordered Baylor to stop redacting personally identifiable information and to instead only send FERPA notices. Dkt. 987. If the students did not timely file an objection, Baylor could produce the records without redaction after a period of time. *Id.*

duplicates of documents already released).  In total, in response to the Waiver Order, Baylor has produced 9,745 documents (comprising 2,343 entries, which consists of document families) to Plaintiffs.  Thereafter, UnitedLex completed its second production of the PH WP documents on April 8, 2022.[7]

To date, Baylor has produced more than four million pages of documents and logged thousands.  The production and logging of Pepper's documents by Baylor has taken thousands of hours of attorney time.[8]

## II.   The Current Dispute over the Production of the PH WP Documents.

On December 21, 2021, before the Court ruled on the remaining FERPA objections referenced above, and before UnitedLex completed its production, Plaintiffs' counsel sent a letter alleging that Baylor had failed to comply with the Waiver Order.  Dkt. 1044-1 ¶6.  The parties conferred on January 11, 2022 about Plaintiffs' letter.  *Id.*  During that conference, Baylor's counsel explained: (i) a significant number of additional PH WP documents would be produced after the Court ruled on 19 pending non-party student FERPA objections (many of these student records were incorporated into the PH WP), and (ii) that Baylor was continuing to withhold PH WP that fell expressly within the exceptions to the Waiver Order (Dkt. 988, page 11) as well as PH WP that is not related to Pepper's investigation or implementation of its 105 Recommendations.  *Id.*  In an effort to resolve the matter, Baylor's counsel asked if Plaintiffs believed that there were no exceptions to the Waiver Ruling, but they did not answer.  *Id.*  On January 14, 2022, Baylor sent a letter to Plaintiffs again, asking if Plaintiffs believed the Waiver Order had no exceptions, and if so to please inform

---

[7] Following completion of this production, there was a minor outstanding issue related to UnitedLex's production of additional attachments.  The parties have resolved that issue by agreement.
[8] Plaintiffs also requested and Baylor produced hundreds of third-party sexual assault files totaling more than 40,000 documents.

Baylor of that position because Baylor would need clarification from the Court. *Id.* Plaintiffs did not respond. *Id.*

After several more emails with Plaintiffs' counsel attempting to resolve the PH WP dispute, Baylor's counsel sent Plaintiffs' counsel an email on March 3, 2022, requesting an in-person meeting in Waco to discuss Plaintiffs' position. *Id.* at 9. At that meeting, Plaintiffs' counsel confirmed for the first time that they understood there were exceptions to the Court's waiver ruling, but that they believed Baylor was interpreting those exceptions too broadly. *Id.* Plaintiffs did not: (i) explain how or why they thought Baylor was interpreting the exceptions too broadly, or (ii) provide any specific examples of PH WP on Baylor's privilege log that they believe still needed to be released. *Id.* Ultimately, Plaintiffs proposed that Baylor produce every document on its privilege log—whether it related to the PH WP or not—and then Baylor could claw back those documents. *Id.*

On March 18, 2022, in an effort to avoid burdening the Court with more motion practice on the issue, Baylor sent an email to Plaintiffs' counsel stating that Baylor would agree to a claw back process for the PH WP documents, as long as that disclosure would not constitute a general waiver of privilege, and with the exception of four discrete categories of particularly sensitive documents: (i) pre-witness interview memoranda and drafts of same; (ii) witness chronologies prepared for witness interviews; (iii) attorney notes of interviews; and (iv) documents related to non-investigation/implementation matters, such as third-party litigation and government investigations. *Id.* at ¶10. For these four categories, Baylor proposed that it submit these documents directly to a special master. *Id.* Plaintiffs rejected this proposal. *Id.* Thereafter, in a further effort to resolve this dispute, Baylor sent an email proposing additional processes that would allow Plaintiffs to further ensure the particularly sensitive documents presented to the Special Master were being properly withheld. *Id.* at ¶11. Plaintiffs rejected this proposal as well. *Id.*

On March 24, 2022, Plaintiffs filed their Motion to Compel the production of the PH WP documents (Dkt. 1041), and Baylor responded on March 28, 2022.  Dkt. 1044.  The Court issued its Order on June 27, 2022, denying Plaintiffs' Motion without prejudice and appointing a Special Master to assist in the resolution of the dispute.  Dkt. 1054.[9]

On June 28, 2022, the Special Master sent an email to the parties requesting a position statement on the dispute, including information on the specific issues outlined below:

### A.  The Pepper Hamilton documents already produced.

Baylor has produced 9,746 PH WP documents, corresponding to 2,343 entries on its privilege logs, subject to the court's Waiver Order.   Of these, 622 entries were produced with some redaction.

### B.  The Pepper Hamilton documents not produced.

Baylor's Master Privilege Log contains 5,406 entries for PH WP documents either (i) withheld completely because they are not subject to the Waiver Order, or (ii) withheld or produced with redactions subject to the specific exceptions in the Waiver Order.

### C.  The universe of Pepper Hamilton documents still at issue.

Plaintiffs' counsel has never identified particular documents or categories of documents that they believe to be wrongfully withheld.  Accordingly, to Baylor's knowledge, all PH WP documents remaining on Baylor's Master Privilege Log are still in dispute.  These documents are identified in the following sections or mini-logs in Baylor's Master Privilege Log: (i) the Pepper Hamilton Investigative Materials Log, (ii) the Pepper Hamilton Investigative Materials (Hardcopy Binders) Log, (iii) the Pre-June 15, 2016 UnitedLex Log, and (iv) the Post-June 15, 2016 UnitedLex Log.

Baylor understands that the other, privileged, non-PH WP documents on Baylor's Master Privilege Log are not the subject of this dispute, including the PH Collection (Baylor's original university documents given to Pepper) and Baylor's Jane Doe 11 log.

---

[9] Attached as Exhibit A to this brief is a timeline of key events related to the PH WP dispute.

### D. Whether the documents at issue can be divided into categories, and if so, what those categories are.

Baylor believes the documents at issue can be divided into categories and that doing so would assist in the Special Master's analysis.  The categories of documents excepted from the Waiver Order are as follows:

1.  Documents <u>not</u> related to Pepper's investigation or implementation of Pepper's 105 Recommendations (for example, other third-party litigation or regulatory matters Pepper performed work on for Baylor);

2.  Materials that Pepper did not consider when doing its work;

3.  Internal emails or communications between Pepper attorneys that were not also sent to a Baylor representative;

4.  Legal research by Pepper attorneys;

5.  Materials Pepper attorneys prepared to aid in conducting witness interviews (for example, witness preparation memorandums and witness chronologies); and

6.  Notes taken by Pepper attorneys during interviews.

Based on the above exceptions, Baylor proposes five  categories: (i) documents not related to Pepper's investigation or implementation work but instead reflecting work on matters such as third-party litigation or regulatory matters; (ii) memoranda prepared to assist Pepper attorneys in conducting witness interviews; (iii) witness chronologies and binders prepared to assist Pepper attorneys in conducting witness interviews; (iv) notes taken by Pepper attorneys during interviews; and (v) all other PH WP materials, including internal communications, legal research, other materials used to aid Pepper attorneys in conducting their interviews, etc.

### E. Your clients' position(s) on the categories of documents still at issue.

The categories of PH WP documents that Baylor continues to withhold are privileged and are either not related to Pepper's investigation or implementation work or fall within one of the enumerated exceptions set forth in the Waiver Order.

**F.  Identification of the documents that would be part of a "quick peek," as mentioned in the Order.**

Baylor's understanding of the Court's Order appointing the Special Master is that Plaintiffs and the Special Master will have access to all PH WP documents that Baylor has withheld for a "quick peek" "for the limited purpose of resolving this dispute" and that if the parties have any dispute about how the "quick peek" will work, the Special Master will craft an appropriate plan for the process.  Dkt. 1054 at 3.

**G.  What documents constitute the category of "particularly sensitive."**

The categories of documents Baylor has identified as particularly sensitive are: (i) pre-witness interview memoranda created by Pepper attorneys, (ii) witness chronologies prepared by Pepper attorneys for witness interviews, (iii) Pepper attorneys' notes from their witness interviews, and (iv) documents related to other legal matters such as third-party litigation and regulatory matters, and not investigation or implementation.  Dkt. 1044, Ex. 1 at ¶ 10.

**H.  The completeness of the Baylor privilege log.**

Baylor's Master Privilege Log, which includes a log of every document Baylor is withholding on the basis of privilege in the three cases—of which PH WP is a very small subset—was completed on September 30, 2021, pursuant to Judge Austin's Order that directed production of one consolidated log.  Dkt. 845.  Following Baylor's production of the waived PH WP documents in the Jane Doe 11 case, on February 18, 2022, Baylor provided Plaintiffs with an amended Master Privilege Log, (i) removing entries for documents that had been produced, and (ii) updating privilege descriptions for redacted documents, only where necessary, to accurately describe the current redactions.  Plaintiffs objected to these amendments, arguing that Judge Austin's prior Order prohibited Baylor from amending the Master Privilege Log.  Dkt. 845.  Due to Plaintiffs' objection, even though Baylor has released additional documents from the log based on subsequent Court rulings, it has not yet updated the log to reflect the release of these documents.  Baylor proposes that it be allowed to amend its

Master Privilege Log to reflect the release of all PH WP documents that are no longer being held as privileged and to do so again, if necessary, once the Special Master resolves this PH WP dispute.

### I. Identification and categorization of the "pulled-back" documents mentioned in the Order.

Baylor has not pulled back any documents. The portion of the Order that mentions "pulled-back" documents refers to Baylor's proposed "claw back" method for resolution of the dispute. *See* Dkt. 1044.

### J. Anything else you want me to know and/or consider at this stage.

Baylor has provided additional, historical information in this position statement, including about the role of UnitedLex below, for the Special Master to consider or know at this stage. Baylor has also included key documents Baylor believes will be helpful to the Special Master as Exhibit B to this brief.

## III. The Role of UnitedLex.

Separate and apart from the parties' dispute over the privileged nature of the remaining PH WP documents, the parties had another dispute over whether Baylor had produced and/or logged all of the Pepper documents. This separate dispute arose because, in addition to requesting the Pepper documents from Baylor, Plaintiffs also served a subpoena directly on the Pepper law firm on March 29, 2017, requesting documents related to that firm's work for Baylor. Dkt. 328-1, 328-2. At the time Plaintiffs served the subpoena on the Pepper firm, Smith and Gomez had already transferred their practice to Cozen.

More than a year after issuing the subpoena to Pepper and stating that they did not trust that Baylor had produced all of the responsive Pepper material in response to Rule 34 discovery requests, Plaintiffs moved to enforce the Pepper subpoena on June 6, 2018. Dkt. 328. Baylor objected, arguing that requiring Baylor to re-review, re-log, and re-redact essentially the same documents a second time was redundant and unduly burdensome. In response, Plaintiffs proposed that Pepper produce all of

its records directly to Plaintiffs—with no redactions for privilege or FERPA—and that Baylor "claw

back" any privileged documents.  Baylor objected to producing all of Pepper's documents and

suggested, as an alternative, that the Court direct Pepper to provide its documents to an independent

third-party vendor who would match the documents against the Pepper documents Baylor had already

logged or produced.  Baylor would then account for the delta in the documents by either producing

any new documents or logging them as privileged or non-responsive.  The Court subsequently entered

an Order directing the comparison.  Dkt. 667.  Plaintiffs suggested UnitedLex serve as the neutral

third-party vendor, and Baylor agreed.  By this time, the agreed ESI cut-off date had been extended

to November 6, 2017.  Dkt. 819.  As a result, any Pepper documents from the time period between

June 15, 2016 and November 6, 2017 would have to be produced directly from Baylor as UnitedLex

was only in possession of Pepper documents through February 2017. [10]

　　　After performing a comparison, UnitedLex stated that it had verified electronically that

1,331,916 documents of the 1,365,293 documents provided by Pepper to UnitedLex were previously

produced or logged by Baylor.  Dkt. 777-1.  For the remaining 33,377 documents that UnitedLex

reported it could not match electronically, Baylor and its litigation vendor, PwC, began the

painstakingly detailed task of analyzing those documents.  *Id.*; Dkt. 836.  After the review was

completed, Baylor filed a detailed advisory on May 12, 2020. Dkt. 836. Baylor also provided a detailed

accounting log to Plaintiffs.  *Id.*  Baylor's log accounted for the 33,377 documents by explaining: (1)

whether the document was a duplicate of a previously produced or logged document, (2) what method

Baylor used to match documents (e.g., electronic or other method), and (3) the bates range and

---

[10] The purpose of using an independent third-party vendor was twofold: (i) to efficiently and accurately identify the PH documents that had already been produced or logged by Baylor during discovery and, therefore, did not need to be produced or logged again; and (ii) for those PH documents that had not already been produced or logged, to allow Baylor to account for the documents and to produce the material or, as appropriate, to log and assert privilege as provided by the Court's prior Orders.  Dkt. 667 at p. 2, 4; *see also* Dkt. 751 at p.2.

document ID for the duplicate document.  *Id.*[11]  Baylor was ultimately able to match an additional 26,031 documents.  Dkt. 898.  Baylor also accounted for, by producing, logging, or identifying as non-responsive, the remaining 7,346 documents that were not matched—two-thirds of which were post June 15, 2016 materials that all parties knew from the beginning would not have been previously logged or produced because there had been no obligation to do so until the Court entered the Order extending the ESI cut-off date to November 7, 2017.  *Id.*

In an effort to alleviate Plaintiffs' concerns about the accuracy of the log, Baylor shared its accounting log with UnitedLex for their review and confirmation.  With the work of Baylor's counsel and PwC as a guide, UnitedLex attempted two more comparisons of the documents.  Ultimately, UnitedLex validated an additional 21,248 documents as "matched" or "technical files," leaving only 12,129 documents reported as unmatched—all of which have now been accounted for or produced. Dkt. 898.

After the final UnitedLex comparison was complete, Plaintiffs moved the Court to enter severe sanctions against Baylor based on the UnitedLex comparison, including requesting an instruction informing the jury that Baylor attempted to hide materials during discovery, an order directing that all of the documents provided by Pepper to UnitedLex be produced to Plaintiffs and limiting Baylor to only being permitted to object to their admission at trial, an order that Baylor no longer withhold documents based on privilege, and an order that Baylor pay monetary sanctions.  Dkt. 904.  After a hearing and briefing, Judge Austin denied the severe sanctions requested by Plaintiffs. Dkt. 941.  However Judge Austin did find that because Baylor had not previously produced or logged 1,793 documents from pre-June 15, 2016 time period, Baylor waived all privileges as to those

---

[11] While PwC was able to match the majority of documents using electronic methods, some documents had to be manually reviewed by Baylor's counsel, such as scanned copies of hard-copy attorney binders. This was a time-consuming process that involved conducting individual searches for documents to determine if each had been previously logged or produced.

documents and was required to produce them, which Baylor subsequently did.  *Id.*  Judge Austin also made additional rulings, to which Baylor filed an appeal to the district court.  After reviewing Baylor's appeal, the Court entered an Order directing UnitedLex to re-compare 4,200 privileged Pepper documents that Baylor represented it had previously logged but which UnitedLex was unable to match.  Dkt. 1026.  UnitedLex completed this new comparison on April 26, 2022, finding an additional 3,118 matching documents, but reporting that it could not match 948 documents and that 134 documents did not have a "comparison file" provided by Baylor to match the document to.  Baylor reviewed UnitedLex's determinations, and again, found their analysis to include many errors and that virtually all of the remaining documents in fact were substantive matches.  However, as part of the sanction, the Court's Order on this issue states that UnitedLex's conclusions as a result of this final comparison are to be "conclusive."  Accordingly, Baylor instructed UnitedLex to produce these documents, and United Lex produced them to Plaintiffs.

The UnitedLex comparison is now complete, having been finally settled by the Court's February 8, 2022 Order.  Dkt. 1026.  The only role UnitedLex has in the current dispute over the PH WP is that, just as it agreed to do with its initial PH WP production, Baylor is willing to facilitate a second production through UnitedLex of those PH WP documents that are in dispute that UnitedLex has in its possession and that the Special Master may determine are not privileged and should be produced.[12]

## IV.    Thoughts on How the "Quick Peek" Process Will Work.

In anticipation of the upcoming discussion with the Special Master regarding the logistics of the "quick peek" process, Baylor offers the following preliminary thoughts and suggestions on how that process might work.  As a threshold matter, Baylor believes that the process should be conducted within certain parameters such that the PH WP documents remain protected from improper

---

[12] Attached as Exhibit C to this brief is a timeline of key events related to the UnitedLex dispute.

disclosure or use—particularly in other Baylor cases where the Waiver Order does not apply. (As previously noted, the Waiver Order applies only in the Jane Doe 11 case.  Judge Pitman expressly reversed Judge Austin's ruling that applied waiver to the Jane Does 1-10 and 12-15 cases.) To this end, Baylor envisions a process whereby Plaintiffs and the Special Master are provided access to the documents in an electronic database that does not permit Plaintiff to download, copy, print, or take "screenshots" of the documents and that Plaintiff's counsel's access to the documents be limited to a defined window of time.  For the four categories of particularly sensitive documents, Baylor would suggest that Plaintiff's counsel have a more limited window to review the documents in the electronic database—only as much as would be necessary for Plaintiff's counsel to view each of the documents and determine whether they have any objection to them being withheld.  Many of the particularly sensitive documents, such as the pre-witness interview memoranda, witness chronologies, and attorney notes, are readily identifiable from the very first page as qualifying for an exception to the Waiver Order, and as such will not require any extensive analysis by Plaintiff's counsel to confirm this fact.

Baylor also understands that the Special Master will need certain preliminary information to assess Baylor's privilege assertions, including a copy of the portions of Baylor's privilege log that correspond to the PH WP being withheld, and potentially a chart or list identifying the individuals who are parties to the communications or authors of the documents, almost all of which will be attorneys but may include some support personnel or third-party vendors.  To the extent that the privileged nature of the materials is not evident from the face of the document and additional information is necessary for the Special Master to make a final determination of privilege, Baylor would request the opportunity to provide that information in a format to be determined, whether by declaration or some other method.

Baylor appreciates that there is significant background on this dispute and that the parties and the Court have the benefit of that background from being involved in this case for a number of years. To the extent the Special Master requires any additional information or clarification regarding issues that arise, Baylor and its counsel will make themselves available to provide it in a timely and complete manner. Baylor appreciates the Special Master's time and attention to this dispute and looks forward to final resolution so that the parties may work towards completion of discovery.

Respectfully submitted,

**WEISBART SPRINGER HAYES LLP**
212 Lavaca Street, Suite 200
Austin, Texas 78701
512.652.5780
512.682.2074 fax

By:   */s/ Julie A. Springer*
      Julie A. Springer
      Texas Bar No. 18966770
      jspringer@wshllp.com
      Sara E. Janes
      Texas Bar No. 24056551
      sjanes@wshllp.com
      Geoffrey D. Weisbart
      Texas Bar No. 21102645
      gweisbart@wshllp.com
      Mia A. Storm
      Texas Bar No. 24078121
      mstorm@wshllp.com
      Danielle K. Hatchitt
      Texas Bar of Texas No. 24079080
      dhatchitt@wshllp.com

**THOMPSON & HORTON LLP**

Lisa A. Brown
Texas Bar No. 03151470
Ryan H. Newman
Texas Bar No. 24059944
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027-7554
713.554.6741
713.583.7934 fax
lbrown@thompsonhorton.com
rnewman@thompsonhorton.com

Holly G. McIntush
Texas Bar No. 24065721
400 West 15th Street, Suite 1430
Austin, Texas 78701
512.615.2350
512.682.8860 fax
hmcintush@thompsonhorton.com

**COUNSEL FOR DEFENDANT
BAYLOR UNIVERSITY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing response was served upon Plaintiffs' counsel of record on July 1, 2022, via the Court's ECF/CMF electronic service system as follows:

Mr. Chad W. Dunn (Attorney in Charge)  *Via ECF: chad@brazilanddunn.com*
**BRAZIL & DUNN, L.L.P.**
4407 Bee Caves Road, Suite 111
Austin, Texas 78746

Mr. K. Scott Brazil  *Via ECF: scott@brazilanddunn.com*
**BRAZIL & DUNN, L.L.P.**
13231 Champion Forest Drive, Suite 460
Houston, Texas 77069

Mr. Jim Dunnam  *Via ECF: jimdunnam@dunnamlaw.com*
Ms. Andrea Mehta  *Via ECF: andreamehta@dunnamlaw.com*
Ms. Eleeza Johnson  *Via ECF: eleezajohnson@dunnamlaw.com*
**DUNNAM & DUNNAM, L.L.P.**
4125 West Waco Drive
Waco, Texas 76710

Ms. Laura Benitez Geisler  *Via ECF: lgeisler@textrial.com*
Mr. Sean J. McCaffity  *Via ECF: smccaffity@textrial.com*
Jody L. Rodenberg  *Via ECF: jrodenberg@textrial.com*
Alexandria Risinger  *Via ECF: arisinger@textrial.com*
George (Tex) Quesada  *Via ECF: quesada@textrial.com*
**SOMMERMAN, MCCAFFITY,**
 **QUESADA & GEISLER, LLP**
3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas  75219-4461

*/s/ Julie A. Springer*
Julie A. Springer