# EXHIBIT B

**INDEX**

| DKT NO. | DESCRIPTION |
|---------|-------------|
| 845 | Magistrate Judge Austin's PH WP Waiver Order |
| 988 | Judge Pitman's PH WP Waiver Order |
| 1001 | Parties' August 27th Joint Advisory |
| 1041 | Plaintiffs' Motion to Compel PH WP |
| 1044 | Baylor's Response to Plaintiffs' Motion to Compel PH WP |
| 667 | Order Directing Parties' Use of UnitedLex and Comparison |
| 1026 | Final UnitedLex Comparison Order |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, ET AL. | § | 6:16-CV-173-RP-AWA |
| | § | |
| v. | § | *Consolidated with* |
| | § | 6:17-CV-228-RP-AWA |
| BAYLOR UNIVERSITY | § | 6:17-CV-236-RP-AWA |

## ORDER

Before the Court is Plaintiffs' Motion to Compel Pepper Hamilton Work Product. Dkt. 795. In what is the latest battle in the war over Pepper Hamilton's work product, Plaintiffs ask the Court to compel Baylor to produce all work product materials relating to the Pepper Hamilton investigation and implementation of reforms. They argue that by putting that work product at issue in this litigation, Baylor has waived the material's protection from discovery. Baylor disputes it has done any such thing (Dkt. 805), and has filed a Motion for Leave to Amend its Answer in *Jane Doe 11* to remove any explicit reference to Pepper Hamilton. Dkt. 815. The parties filed responsive briefing, and the Court held a hearing on the motions on May 5, 2020. Dkt. 837.[1]

## I. BACKGROUND

### A. Pepper Hamilton's Work for Baylor

The Baylor University Board of Regents engaged the Pennsylvania law firm Pepper Hamilton LLP in August 2015, "to conduct an independent and external review of Baylor University's institutional responses to Title IX and related compliance issues through the lense of specific cases."

---

[1] In setting the hearing, the Court directed Baylor to demonstrate how it would present its defense at trial "in a fashion that is both factually sincere and fair to the Plaintiffs' right to question and respond to this defense." Dkt. 823. In addition to its statements at the hearing, Baylor submitted a list of the witnesses it would call at trial on the topic of the investigation and reforms (Baylor's Ex. 1, Dkt. 835), and after the hearing Plaintiffs filed an excerpt from the deposition of Regent William K. Robbins, Jr. (Pls.' Ex. 1, Dkt. 833).

Dkt. 93-1 at 2-3 (Engagement Letter).[2] The engagement letter said nothing about Pepper Hamilton bring hired in relation to any litigation, anticipated or actual. Five months later, however, Baylor and Pepper Hamilton amended their agreement to state specifically that "[i]t is the shared understanding of Baylor University and Pepper that all material prepared and communications made by Baylor University, Pepper, and their representatives in the course of the review are in anticipation of litigation and are privileged work product." Dkt. 93-2 (Addendum). Based on this, as well as on declarations of Baylor's general counsel and members of the Board of Regents, the Court concluded in 2017 that Baylor retained Pepper Hamilton to conduct its investigation in anticipation of litigation. Dkt. 168 at 15-16.

The investigation was extremely detailed, covering Baylor's Title IX practices and compliance during the three academic years immediately prior to the firm's hiring. The investigation was led by two Pepper Hamilton partners, Leslie Gomez and Gina Maisto Smith. Leslie Gomez described their investigative approach as follows:

> One of the things that was critically important in our investigation is that it be extremely document intensive, document focused; and that was part of our reason for identified employee PST files from records custodians and pulling the cell phone records from particular records custodians, and that's where that very large terabyte number comes from.

> In terms of the preparation for our work, prior to every interview . . . we, of course, created investigative chronologies, interview memos for interviewing witnesses, and then the context of that document in our interviews.

> We necessarily view an investigation as iterative, that you don't understand all of the places it may go at the outset and so there was a continual refinement process.

---

[2] The formal engagement letter is dated October 5, 2015. *See* Dkt. 93-1. But former Pepper Hamilton partner Leslie Gomez has testified that the firm was "engaged in August 2015." Hr'g Tr., Dkt. 672 at 40:6.

It was very apparent to us from very early on that Baylor clearly wanted us to be transparent, open, forthcoming, to call it as we see it. And my partner, Gina Maisto Smith, and I worked very hard to maintain that reputation across the country. We are not litigators. We don't sue schools. We don't defend schools. We exist in a policy, auditing, investigative, regulatory compliance space.[3]

Dkt. 672 at 40-41. Pepper Hamilton made two presentations of its investigative findings to the

Baylor Board of Regents. Dkt. 672 at 41:12-13; 21-23. Gomez explained:

On May 2nd we did a very detailed presentation that included our work-product presentation aids, our draft findings and our draft recommendations and draft chronology. And that chronology included tabs and links to documents for us to do about a ten-hour presentation to the board. And that was a subset of the Board's.

Following that, on May 11th and May 12th, we came to Baylor and we presented our findings of fact and our recommendations. That was done with the presentation aid of a PowerPoint that included reference to documents. All of those documents that we relied on underlying have been provided and produced as the raw data that we collected.

Dkt. No. 672 at 41-42. It is not clear from the record how the later presentation differed from the

first presentation on May 2, or if the Board members who viewed the first presentation provided any

direction to Pepper Hamilton for the second presentation.

Later that month, Baylor published two documents summarizing Pepper Hamilton's

investigative findings and recommendations. First, on May 26, 2016, Baylor published a thirteen-

page summary of the investigation and its conclusions entitled "Findings of Fact," which described

---

[3] As noted earlier, though Baylor's original engagement letter with Pepper Hamilton said nothing about litigation, five months into Pepper Hamilton's work the parties amended the engagement letter to explicitly state that their "shared understanding" was that everything Pepper Hamilton was doing was in anticipation of litigation. Gomez's 2019 testimony undercuts the statement inserted into the amended engagement letter in 2016. The fact that she and Smith "work very hard" to maintain a reputation for transparency, and doggedly avoid getting engaged in litigation, operating solely in a "policy, auditing, investigative, regulatory compliance space," supports the arguments Plaintiffs originally made in 2017 when they sought production of this material. But the parties have not re-urged the question of whether the investigation and implementation were conducted in anticipation of litigation, nor will the Court re-visit it here.

findings based on "a high-level audit of all reports of sexual harassment or violence for three academic years from 2012-2013 through 2014-2015." Dkt. 93-3 at 1. Second, Baylor published a list of 105 recommendations—on Pepper Hamilton letterhead—titled "Baylor University Report of External and Independent Review Recommendations." Dkt. 93-4.[4]

After Pepper Hamilton's presentation to the Regents, the Baylor administration classified Pepper Hamilton's 105 recommendations as "mandates" and created a Sexual Assault Task Force. Dkt. 805 at 2; Holmes Decl., Dkt. 805-1. On November 3, 2017, Baylor published a 755-page External Report on the Completion of the 105 Recommendations. Dkt. 617-2.[5] It was written by Gomez and Smith, who began implementation of the 105 recommendations while they were still partners at Pepper Hamilton and continued to do so when they left to join the law firm Cozen O'Connor in February 2017. *Id.* at 7 n.1. The 2017 External Report was therefore published under Cozen O'Connor's name, but refers to Pepper Hamilton's work throughout much of the implementation process. *See id.*

As has been detailed in several prior pleadings and orders, there is discussion in Pepper Hamilton emails and billing records—not produced by Baylor until mid-2019—suggesting that Pepper Hamilton prepared one or more documents chronicling its investigative findings, and stating that the attorneys sent Baylor a "draft report." *See, e.g.* Dkt. 618 at 8; 636 at 8 n.14. When they became aware of these documents, Plaintiffs sought production of any "report," regardless of its

---

[4] Both were published on Baylor's website. *See* BAYLOR UNIVERSITY BOARD OF REGENTS FINDINGS OF FACT (May 26, 2016), available at https://www.baylor.edu/thefacts/doc.php/266596.pdf; BAYLOR UNIVERSITY REPORT OF EXTERNAL AND INDEPENDENT REVIEW RECOMMENDATIONS (undated), available at https://www.baylor.edu/thefacts/doc.php/266597.pdf.

[5] The report was published on Baylor's website. *See* EXTERNAL REPORT RE: COMPLETION OF 105 RECOMMENDATIONS (Nov. 3, 2017), available at https://www.baylor.edu/thefacts/doc.php/301337.pdf.

form.  *See* Dkt. 618 at 8; Dkt. 795 at 8. Despite the emails and billing records, Baylor and Pepper Hamilton insisted that "[b]eyond the presentation of the findings to the Board and assisting with the preparation of the written "Findings of Fact" [that Baylor released publicly], Pepper Hamilton did not prepare a written narrative 'report.'"  Dkt. 622-2 at ¶ 3 (Declaration of Leslie Gomez).  The dispute regarding the phantom "report" ultimately led to Gomez appearing before the Court to respond to these concerns.  After explaining that the references in the emails and billing records related to notes used to make the presentation, and an internal Pepper Hamilton post-representation report, Gomez stated "there was—never has been—as far as I understand, never will be—a further narrative written report, whatever word we want to assign it, beyond the Findings of Fact."  Dkt. 672 at 44.  Following the hearing, the Court did not make specific findings on the issue, other than to state that:

> the Court asked Baylor to explain references to a report in certain billing records and emails. At the hearing, Baylor proffered statements by a Pepper Hamilton attorney who testified that [the references to a report] *refer to internal attorney work product*. If Plaintiffs have remaining concerns about this issue, they may raise that with the Court.

Dkt. 667 at 3 (emphasis added).  Among other records, the present motion once again raises the Plaintiffs' request for any report Pepper Hamilton made to the Regents.

## B.    This Litigation

The lead case in this lawsuit was filed in June 2016, about a month after Baylor released the Findings of Fact.  *See* Dkt. 1.[6]  After this litigation began, Plaintiffs served subpoenas on Pepper Hamilton and moved to compel production of all materials provided to and produced by Pepper

---

[6] *Jane Doe 11* and *Jane Doe 12–15* followed in 2017, and the Court consolidated the three cases for all discovery and pre-trial proceedings on February 6, 2019.  *Jane Doe 11*, 6:17-cv-228 (Dkt. 21).

Hamilton in connection with the investigation.  Dkt. 93.  Baylor objected on the basis of attorney-client privilege and work product protection.  Dkt. 104.

In an Order on August 11, 2017, the Court ruled that Baylor waived its attorney-client privilege by making repeated public disclosures regarding the Pepper Hamilton investigation, and found that the waiver encompassed "the entire scope of the investigation, and all materials, communications, and information provided to Pepper Hamilton as part of the investigation."  Dkt. 168 at 13-14 (reported as  *Doe 1 et al. v. Baylor Univ.*, 320 F.R.D. 430, 440 (W.D. Tex. 2017)).  Noting that it requires more to waive work product protection than the attorney-client privilege, the Court found that Baylor had *not* waived its work product protection at that time because "[a]lthough Baylor has impliedly connected the Pepper Hamilton investigation to this litigation"—for example, by including Pepper Hamilton's work in a summary of actions taken by the University—"[Baylor] has not directly invoked Pepper Hamilton's work as a defense."  *Id.* at 17 (*see Doe 1*, 320 F.R.D. at 442).  The Court warned: "Should Baylor directly invoke the Pepper Hamilton investigation as part of a substantive defense to Plaintiffs' claims in the future, the Court will entertain a motion by Plaintiffs re-urging waiver."  *Id.*

Nearly two years later, the Court found that Baylor had also waived attorney-client privilege for the portion of Pepper Hamilton's representation that involved the implementation of reforms.[7]  Dkt. 653.  The Court found that when Baylor published the External Report on November 3, 2017, Baylor waived attorney-client privilege for "the entire scope of the implementation of Pepper Hamilton's recommendations, and all materials, communications, and information provided to

---

[7]  Specifically, the Order resolved Pepper Hamilton's Motion for Reconsideration, Baylor's Motion for a Protective Order Regarding Pepper Hamilton's Work Separate From the Investigation, and Plaintiffs' Amended Motion to Compel and Motion for Sanctions.  Dkts. 653, 677.

Pepper Hamilton as part of the implementation of the recommendations and preparation of the 755-page External Report re: Completion of 105 Recommendations." Dkt. 653 at 21-22 (citing 2017 External Report, Dkt. 617-2). With regard to any protection for Pepper Hamilton's work product regarding the implementation of reforms, the Court made no finding of waiver, noting that "[n]either party has provided any detailed briefing or evidence to assist the Court in determining what materials . . . might be protected work product, or what work product protection Baylor might have waived." *Id.* at 22-23.[8]

In summary, the Court has already concluded that Baylor waived the attorney-client privilege for both the investigation and the implementation of reforms conducted by Pepper Hamilton. *See* Dkts. 168, 653. The motion before the Court seeks the production of Pepper Hamilton's work product for the same two matters. Dkt. 795.[9] Throughout discovery, Baylor has asserted the work product doctrine to withhold a large volume of material. Though the precise number is not available

---

[8] The Court noted that "[t]o the extent that Baylor has 'actually disclosed' any documents to any third party, including the public, in the course of preparation and publication of the 2017 External Report (or with respect to any of the Other Matters), Baylor has waived work product privilege for those documents." Dkt. 653 at 23. Baylor maintains it has made no such disclosures. Dkt. 805 at 7 n.3.

[9] For absolute clarity in the record, the materials at issue here concern the two aspects of Pepper Hamilton's work for Baylor that it designated for billing purposes as "Matter 2" and "Matter 3." Pepper Hamilton provided a series of legal services for Baylor and designated each with a separate matter number. *See* Mot. Reconsid., Dkt. 612 at 5-6; Order, Dkt. 653 at 10-11. "Matter 1" is purely administrative and addressed only the law firm's internal process to register Baylor as a new client. "Matter 2" referred to the "independent and external review" Pepper Hamilton conducted of Baylor's Title IX practices "through the lense of specific cases." "Matter 3" concerned "legal advice on Title IX matters including implementation of recommendations and Title IX policies and practices." "Matter 4" concerned legal advice and electronic discovery for various third party litigation and investigations, and "Matter 5" concerned legal advice and electronic discovery for the Office for Civil Rights investigation. *Id.* The Plaintiffs' motion asks the Court to order production of "all the PH materials, except for 'Matter 4.'" Since Plaintiffs never mention the Office of Civil Rights investigation (Matter 5) in their briefing the Court assumes the inclusion of Matter 5 in the motion was a typographical error. Thus, what is at issue in the motion to compel is Pepper Hamilton's work product as to Matters 2 and 3.

from the record, Baylor has designated thousands, and perhaps tens of thousands, of documents as Pepper Hamilton work product. Plaintiffs advise that as of February 11, 2020, Baylor's privilege log listed over 23,000 documents. Dkt. 795 at 11. It is difficult for the Court to estimate what proportion of the 23,000 documents might be withheld as Pepper Hamilton work product. On a number of occasions in recent hearings, Plaintiffs have complained that Baylor's privilege logs did not change after the Court found Baylor had waived its attorney-client privilege; instead, they claim that Baylor merely changed the designation of the basis for the claim of privilege from "attorney-client" to "work product." *E.g.,* Dkt. 837 at 24. As will be discussed below, throughout this case Baylor has taken an expansive view of what is attorney-client privileged and work product protected, and has at least twice either "misread" orders or "accidentally" failed to produce Pepper Hamilton materials the Court had ordered produced.

Baylor's basic claim is, and has been, that "all of Pepper's work (including the Investigation) is protected as work product." Dkt. 621 at 4. It has thus withheld Pepper Hamilton memoranda, emails, and the presentations to the Board of Regents, contending that these contain the attorneys' mental impressions. To the extent the documents also contain discoverable facts, Baylor claims "Plaintiffs have or will have been provided *all* the underlying documents and facts." Dkt. 805 at 2. It is not entirely clear to the Court how Baylor defines "underlying facts," because Baylor has asserted, and continues to assert, work product protection for what is clearly fact work product. Baylor argues, for example, that "Plaintiffs can ask Regents about facts of which they were aware or on which they relied to form the basis of any of the specific findings, as long as [Plaintiffs] do not directly ask what [facts] Pepper Hamilton attorneys presented to them as part of its presentation." Dkt. 805 at 10 n.6. Baylor takes the position that the facts the attorneys chose to present to Baylor

or a Regent amount to the mental impression of the attorney, as it demonstrates which, of the terrabytes of factual data Pepper Hamilton gathered in its investigation, the attorney thought was worthy of inclusion. Plaintiffs have argued throughout discovery that this has prevented them from questioning the Regents about the most basic facts regarding their knowledge and decision making because the Regents relied very heavily on Pepper Hamilton for factual information. *See, e.g.*, Dkt. 529 at 10; Dkt. 792 at 2; Dkt. 795 at 5.

**C.     Plaintiffs Impacted by this Order**

It is important to note before getting too far that this motion does not pertain to all fifteen of the Doe cases, as Pepper Hamilton's work product is not even potentially relevant to some of the plaintiffs. Almost all of Baylor's briefing, and much of its hearing argument, focused on the Jane Doe 11 case. Baylor notes that Jane Doe 11 is the only plaintiff whose alleged assault occurred after Pepper Hamilton had completed its investigation and implemented most of its reforms. *See, e.g.*, Dkt. 837 at 6:11-14 ("The Jane Doe 11 case is different from other cases in that the alleged assault took place on April the 3rd of 2017. It is the only alleged assault that is post the work that was done by Pepper Hamilton."). As far as it goes, that is a correct statement. But Baylor's telescopic focus on Jane Doe 11 appears to have caused it to lose sight of the details of the other plaintiffs' claims. For example, Baylor asserted at the hearing that "[t]he other women, Jane Does 1 through 10 and 12 through 15, *all of those alleged rapes occurred before Pepper Hamilton was either on the scene or before any findings at issue*." *Id.* at 46:6-9 (emphasis added). That is incorrect. Jane Does 3, 10, 11, 12, 14, and 15 all allege they were assaulted after August 2015, when Pepper Hamilton was engaged.

9

Of the fifteen claims consolidated for discovery and pre-trial proceedings, the earliest is based on a sexual assault in September 2004 (Dkt. 56 ¶ 74) and the latest on an assault in April 2017 (*Jane Doe 11*, 6:19-cv-228 (Dkt. 14 at 5)). The majority of the alleged assaults on which the Plaintiffs base their claims took place in 2012 or later.[10] Though Baylor did not hire Pepper Hamilton until August 2015, Pepper Hamilton's investigation looked back three years, covering the 2012-2013 through 2014-2015 academic years. Dkt. 93-3 at 1. Thus, not only is it incorrect to say that only Jane Doe 11 bases her claim on an alleged assault that took place after Pepper Hamilton was hired, it is also incorrect to use the hiring date as a starting point for relevance purposes. For plaintiffs whose alleged assaults occurred as far back as September 2011 or later, the investigation may provide evidence of Baylor's practices, policies, or customs at the time of those assaults and during the one year period following them (the "post-reporting" period).[11] So, for example, a plaintiff allegedly assaulted in September 2011 could point to Pepper Hamilton's findings related to what was happening in September 2012 as evidence of Baylor's practices at what would be the end of her post-reporting period. This means the Pepper Hamilton materials may be relevant to all of the plaintiffs' claims except those of Jane Doe 2 (*see* Dkt. 56 ¶ 74 (alleged assault in September 2004)), Jane Doe 5 (*see id.* ¶ 152 (November 2005)), Jane Doe 6 (*see id.* ¶ 177) (during the 2007-2008 academic year)), and Jane Doe 7 (*see id.* ¶ 192 (May 2009)). For these four plaintiffs, their

---

[10] Jane Does 1, 3, 4, 8, 9, 10, 11, 12, 13, 14, and 15 allege that they were assaulted in 2012 or later. *See Jane Doe 1–10* (Dkt. 56 ¶¶ 54, 74, 107, 124, 211, 235, 254); *Jane Doe 11* (Dkt. 1 ¶ 51); *Jane Doe 12–15* (Dkt. 14 ¶¶ 69, 78, 84, 96, 106-09, 136).

[11] The Court assumes that the relevant post-reporting period for each plaintiff was approximately one year from the date of the alleged assault. The Court adopted the same time period for post-reporting claims in the recent Final Order on ESI and Custodians for the Extended ESI Period. Dkt. 819 at 5. That assumption does not preclude the parties from arguing at trial that a post-reporting period might be different for a particular plaintiff. *See id.* at 6 n.7.

post-reporting periods all expired in May 2010 or earlier, well before the beginning of Pepper Hamilton's investigation period in September 2012. But for the remaining plaintiffs (Jane Does 1, 3, 4, and 8-15), the Pepper Hamilton materials are potentially relevant to their claims.[12]

## II. PEPPER HAMILTON'S WORK PRODUCT

Plaintiffs argue that by relying on the materials as part of Baylor's substantive defense in this litigation, Baylor has waived work product protection for all Pepper Hamilton materials pertaining to its investigation and the implementation of the reforms it recommended. Dkt. 795 at 1. As one example of how Plaintiffs contend Baylor has put this work product at issue, they point to Baylor's Answer to Jane Doe 11's complaint, which repeatedly references the Pepper Hamilton investigation and implementation of reforms. *Id.* at 9 (citing *Jane Doe 11*, 6:17-cv-228 (Dkt. 17 at 6-8)). Baylor raises the same defense in its Answer to Jane Does 12, 13, 14 and 15. *Jane Doe 12–15*, 6:17-CV-236 (Dkt. 40 at 6-7). Plaintiffs also argue that because "central fact questions for the jury relate to the intent of Baylor and Baylor's notice of student on student harassment," a jury cannot fairly evaluate Baylor's defense if Baylor is permitted to release some information about Pepper Hamilton's investigation and reforms for Baylor, but withhold the rest. *Id.* at 8-10. Plaintiffs note

---

[12] Though very close to what the Plaintiffs proposed in their briefing, this conclusion is slightly broader. Plaintiffs argued that the Pepper Hamilton materials are relevant for Plaintiffs who were assaulted during the period of the investigation and for Plaintiffs who were assaulted after the issuance of the Findings. Dkt. 795 at 8-9. By including a period of time for each Plaintiff's post-reporting claims, the Court's conclusion captures one claim that Plaintiffs' proposal does not: the first alleged assault in Jane Doe 13's case. She alleges that she was sexually assaulted on three separate occasions, in April 2012, Fall 2012, and some time before November 2014. *Jane Doe 12–15* (Dkt. 14 ¶¶ 78, 84, 96; Dkt. 35 at 27). Because the first assault took place before September 2012 (the earliest date contained within the scope of Pepper Hamilton's investigation), Plaintiffs' proposal would exclude the materials being relevant to that assault. Under the Court's conclusion, the materials are relevant to that claim, because her post-reporting period would extend into April 2013, when Pepper Hamilton *was* investigating the university's practices. Accordingly, the Court finds that the materials are relevant for all of the alleged assaults for Jane Does 1, 3, 4, and 8-15, without any exceptions.

that Baylor has repeatedly invoked the Pepper Hamilton investigation and implementation to limit questioning in depositions. Dkt. 795 at 5 (citing Dkt. 529 at 2). Plaintiffs contend that, as a result, Baylor is using the work product doctrine to block discovery and testimony on essential relevant facts. Many Regents have testified that they relied on Pepper Hamilton for their information, yet Baylor has objected to the discovery of any facts a Regent was told by Pepper Hamilton, claiming such material is work product. *See, e.g.*, Dkt. 529 at 10; 792 at 2. "Because of this shield, Plaintiffs still have not learned the who, what, where, when, why, and how behind the Findings of [Fact] by the Regents, because the Regents learned those facts from the PH investigation." Dkt. 792 at 2. In their motion to compel regarding the deposition of former Baylor Regent Phil Stewart, Plaintiffs stated:

> [W]hen Plaintiffs ask 'who were the 'senior administrators' responsible for the failure' that a Regent found, Baylor can object that the facts and information the Regent learned to identify that 'senior administrator' came from PH's work-product. When Plaintiffs question 'how did Baylor use the Code of Conduct to retaliate against sexual assault victims,' Baylor can object that Plaintiffs cannot ask that question since the information the Regent learned to answer the question came from PH's work-product. The same goes for any fact behind each Finding of failure—if the Regent obtained those facts from PH, then Plaintiffs cannot ask what those facts were.

Dkt. 792 at 2. Stewart's deposition transcript confirms this. *See* Dkt. 529-2 at 89:23-91:13.

Baylor counters that it has not put any of the Pepper Hamilton work product at issue in this case, and its assertion of the doctrine is proper:

> Baylor is not relying on the investigation as a defense in any way. And while Baylor will rely on its *own* implementation efforts, it is not relying and will not rely on *Pepper Hamilton's* role in the implementation or Pepper Hamilton's ultimate conclusion that Baylor had, in fact, successfully implemented reforms.

12

Dkt. 805 at 2 (emphasis original). To further buttress this position, after the briefing on Plaintiffs'

motion was complete, Baylor filed a Motion for Leave to Amend its Answer in *Jane Doe 11* to

remove any explicit reference to Pepper Hamilton. Dkt. 815.

## A.    Legal Standard

"The scope of discovery is broad and permits the discovery of 'any nonprivileged matter that

is relevant to any party's claim or defense.'" *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258,

262 (5th Cir. 2011) (citing FED. R. CIV. P. 26(b)(1)). "Ordinarily, a party may not discover

documents and tangible things that are prepared in anticipation of litigation or for trial." FED. R.

CIV. P. 26(b)(3)(A). "The work product doctrine is not an umbrella that shades all materials prepared

by a lawyer . . . . The work product doctrine focuses only on materials assembled and brought into

being in anticipation of litigation." *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).

"The work-product doctrine is distinct from and broader than the attorney-client privilege." *United

States v. Nobles*, 422 U.S. 225, 238 (1975) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). "The

attorney-client privilege exists to protect confidential communications and to protect the

attorney-client relationship," while "[t]he work product privilege . . . does not exist to protect a

confidential relationship but to promote the adversary system by safeguarding the fruits of an

attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger

& Co.*, 864 F.2d 379, 382 (5th Cir. 1989); *see also In re Grand Jury Subpoena*, 220 F.3d 406, 409

(5th Cir. 2000).

The work product doctrine applies to "documents and tangible things that are prepared in

anticipation of litigation or for trial by or for another party or its representative." FED. R. CIV. P.

26(b)(3)(A); *Hickman v. Taylor*, 329 U.S. 495, 511-12 (1947). The doctrine does not place work

product outside the scope of discovery, but instead "creates a form of qualified immunity from discovery" for materials prepared in anticipation of litigation. *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 n.2 (5th Cir. 1993). The level of protection depends on whether the materials constitute "opinion" work product or non-opinion, "fact" work product. *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017); *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982). The "mental impressions, conclusions, opinions or legal theories of an attorney" are opinion work product subject to a higher showing for production. *In re Int'l Sys.*, 693 F.2d at 1240 (citing FED. R. CIV. P. 26(b)(3)(B)). Fact work product, on the other hand, is any material "prepared in anticipation of litigation or for trial by or for another party or its representative" under Rule 26(b)(3)(A) but "not the 'mental impressions, conclusions, opinions or legal theories of an attorney'" under subsection (b)(3)(B). *In re Int'l Sys.*, 693 F.2d at 1240 (quoting FED. R. CIV. P. 26(b)(3)). Rule 26(b)(3) recognizes that a party may obtain non-opinion, fact work product if the party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii); *In re Int'l Sys.*, 693 F.2d at 1240-41. Importantly, and as discussed in detail below, while opinion work product is afforded a higher level of protection, it is not beyond discovery, and may be waived when a party discloses it, or places it at issue in the case.

The party seeking discovery bears the burden to demonstrate waiver of work product. *In re Grand Jury Proceedings*, 43 F.3d 966, 970 (5th Cir. 1994) (citing *Hickman v. Taylor*, 329 U.S. 495, 512 (1947)). "What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances." *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 467 (N.D. Tex. 2016) (quoting *United States v. Nobles*, 422 U.S. 225, 239 n. 14 (1975)). In general, there are

14

three distinct grounds on which a party may seek the production of work product: disclosure to a

third party, placing the material "at issue," and "substantial need" under FED. R. CIV. P. 26(b)(3).

*See, e.g.*, *In re Itron, Inc.*, 883 F.3d 553, 558 (5th Cir. 2018). These often overlap in practice.[13]

The Fifth Circuit has not addressed the precise test for "at issue" waiver of work product, but

a consistent standard has been applied by district courts in the Circuit as well as by other Circuits.

"Like the attorney client privilege, opinion work product may be disclosed when the holder waives

the protection by placing the protected material 'at issue' in the litigation." *Mir*, 315 F.R.D. at 470

(citation omitted); *see also Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242 (D.D.C. 2013)

("Allowing the privilege to shield documents at the heart of the proponent's case would undermine

the adversary system, and would let the work-product privilege be used as a tool for manipulation

of the truth-seeking process."); *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000)

("[A] party cannot partially disclose privileged communications or affirmatively rely on privileged

communications to support its claim or defense and then shield the underlying communications from

scrutiny by the opposing party."); *Koumoulis v. Indep. Fin. Marketing Group, Inc., LPL*, 295 F.R.D.

28, 40-41 (E.D.N.Y. 2013) ("Both the attorney-client privilege and work product privilege may be

waived if a party puts the privileged communications at issue by relying on it to support a claim or

---

[13] "At issue" waiver is sometimes called "subject matter waiver" or "implied waiver," while waiver resulting from voluntary disclosure of privileged material is sometimes termed "express waiver." *See In re Tron*, 883 F.3d at 558 (considering waiver in the context of attorney-client privilege) (citing *Bittaker v. Woodford*, 331 F.3d 715, 718–20 (9th Cir. 2003) (en banc)). "In practice, however, the two often overlap, and it is unclear that the differing labels are of material significance." *Id.*; *see, e.g.*, *S.E.C. v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006) ("Subject matter waiver of work product immunity occurs when it would be inconsistent with the purposes of the work product privilege to limit the waiver to the actual documents disclosed, for example when the facts relevant to a narrow issue are in dispute and have been disclosed in such a way that it would be unfair to deny the other party access to other facts relevant to the same subject matter.") (cleaned up)).

defense. Such a waiver may be implied in circumstances where it is called for in the interests of fairness.") (cleaned up).[14]

To place work product at issue in litigation, a party must "rely on" the work product "to prove its claims in the case." *Windsor Securities, LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 518-19 (S.D.N.Y. 2017) (finding no waiver because plaintiff client "made clear that it does not intend to rely on any communications with its replacement counsel in order to prove its claims in this case"). Mere relevance is not sufficient to place work product at issue. *Id.* at 518 (citations omitted) ("If the rule were otherwise, that would gut the privilege."). A party also does not "rely on" work product to prove its claims if it only uses the work product for the purposes of impeachment or corroboration. *Mir*, 315 F.R.D. at 471-72.

Courts have held that when a party refers to work product in its pleadings it is "relying on" work product. *See, e.g.*, *Hager v. Bluefield Regional Medical Center, Inc.*, 170 F.R.D. 70, 79 (D.D.C. 1997) (finding plaintiff waived work product protection for attorney opinion letters and draft memoranda by referring to the opinion letters throughout the complaint, and it was undisputed that one of the attorneys could be called as an expert witness). The court explained in *Hager* that without discovery of the work product, the defendant would be "unable to ascertain the basis and facts upon which the [attorney's] opinions are based," and this would "undoubtedly impair [the defendant's]

---

[14] Some courts have confused this area by incorrectly treating "substantial need" as an element of proof for obtaining work product based on it being at issue, or having been disclosed. But at issue waiver is a totally separate basis from "substantial need" for obtaining work product. *See, e.g.*, *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 472 (N.D. Tex. 2016) (treating at-issue waiver and substantial need as wholly separate bases for work product waiver); *Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242, 254 (D.D.C. 2013) ("if the work-product protection has been waived, the moving party is entitled to discovery of such work product, even without showing substantial need."). Further, the adoption of Rule 26(b)(3) made clear that substantial need is an independent basis for obtaining work product, and is not part of a claim of either waiver by disclosure or by putting the work product "at issue." *See* FED. R. CIV. P. 26(b)(3).

ability for effective cross-examination on a crucial issue." *Id.* (quoting *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 930 (N.D. Cal. 1976)).

Here, the issue is raised not by what the Plaintiffs are intending to use to prove their claims, but instead by the facts Baylor intends to rely upon to defend against those claims. In the context of attorney-client privilege, which is instructive here, the Fifth Circuit has ruled that "[r]aising a good-faith defense does not effect waiver when there is no assertion of reliance on the advice of counsel." *In re Itron*, 883 F.3d at 564 (citing *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002)). In that context, courts have held that waiver does not occur unless a party "'explicitly relies' on the existence or absence of privileged communications." *Id.* (citing *In re Burlington N., Inc.*, 822 F.2d 518, 533 (5th Cir. 1987)). The law is less clear regarding what happens when a defendant affirmatively disclaims any advice of counsel defense, but nonetheless intends to offer evidence that directly or indirectly implicates the work product of their attorney. That is the situation here.

While the Fifth Circuit has not addressed this question, many district courts have ruled that a party waives work product when it asserts a claim or defense that relies on work product to prove its intent, knowledge of the law, or the reasonableness of its conduct.[15] Courts in our circuit have found that when a party cites to an investigation "to show that it exercised reasonable care to

---

[15] *See, e.g., Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 47 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014) (finding defendant waived work product waiver by asserting, as an affirmative defense in its Answer "the reasonableness of their efforts to 'prevent and correct promptly any discriminatory behavior' and the reasonableness of their 'policies and procedures for investigating and preventing discrimination'"); *The Navajo Nation v. Peabody Holding Co.*, 255 F.R.D. 37, 44 (D.D.C. 2009) (A party waives work product privilege when it "raises an affirmative defense that makes [its] intent and knowledge of the law relevant.") (citations omitted); *Liberty Mut. Ins. Co. v. Tedford*, 644 F. Supp. 2d 753, 764 (N.D. Miss. 2009) (finding waiver of work product where allegations in counterclaim that "put[] into question the attorneys' opinions and work product," including whether the attorney's advisement of rights to an employee was adequate, and whether an insurance carrier relied on deficient legal services when it allegedly mishandled insurance claim).

promptly correct any harassing behavior," the party waives work product "with respect to the investigative report and any underlying documents." *Mir*, 315 F.R.D. at 470-71 (citing *Tedford*, 644 F. Supp. 2d at 764 (finding waiver of work product where allegations in counterclaim "put into question the attorneys' opinions and work product"); *Williams v. United States Envtl. Servs*., LLC, 2016 WL 617447, at *5 (M.D. La. Feb. 16, 2016) (finding that defendant waived work product protection by citing to sexual harassment investigation in its briefing on a motion to compel "to show that it exercised reasonable care to promptly correct any harassing behavior" after receiving reports of harassment, and thereby defend against plaintiff's sexual harassment and retaliation claims); *Butler v. La. Dep't of Pub. Safety & Corr*., 2014 WL 3866100, at *5 (M.D. La. Aug. 6, 2014) (finding, in a disability discrimination case, that defendant waived work product for an attorney memo regarding the plaintiff's fitness for employment where defendant voluntarily disclosed the memo to a healthcare provider and placed the memo at issue by raising a business necessity defense based in part on the healthcare provider's recommendation, which may have relied on the attorney memo).

At least one court has specifically applied this principle in a Title IX case comparable to this one. *See Doe v. USD No. 237*, 2019 WL 1925107, at *7 (D. Kan. Apr. 30, 2019), *affirmed,* 2019 WL 2612941 (D. Kan. Jun. 26, 2019). There, the magistrate judge rejected a school district's argument that it had not waived work product protection for a pre-litigation investigation report because it was not affirmatively asserting the investigation or report as a defense, and concluded that the school district had waived work product by putting at issue the actions it took "as a result of" the investigation. 2019 WL 1925107, at *7-8.

18

## B.     Plaintiffs' Claims

All but five Plaintiffs assert two Title IX claims.[16]  First, they assert a claim that even before

their own reports of sexual assault, Baylor maintained discriminatory practices in handling student

reports of sexual assault—such as discouraging victims from reporting assaults and failing to

investigate claims or punish assailants.  They contend that these actions amounted to a policy or

practice of intentional discrimination on the basis of gender, and substantially increased Plaintiffs'

risk of being sexually assaulted.[17]  Second, Plaintiffs assert that Baylor's response to their reports

of sexual assault was deficient, and deprived them of educational opportunities and benefits on the

basis of their gender.[18]

To describe these briefly, a plaintiff may seek to hold a university liable for discrimination

by showing it had an "official policy" that violated Title IX.  This requires proof of the existence of

a discriminatory policy or custom in much the same way that a § 1983 plaintiff demonstrates the

liability of a municipality under the *Monell* line of cases.  *See Gebser v. Lago Vista Indep. Sch. Dist.*,

524 U.S. 274, 290 (1998) (distinguishing claims involving an "official policy" of discrimination

from those seeking to hold an institution liable for discriminatory acts by individual employees);

*Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1177 (10th Cir. 2007) ("The [Supreme] Court

---

[16]  *See Jane Doe 1 et al. v. Baylor University*, No. 6:16-cv-173 (W.D. Tex. Jun. 15, 2016) (*"Jane Doe 1-10"*) (Am. Compl., Dkt. 56), *Jane Doe 11 v. Baylor University*, No. 6:17-CV-228-RP (W.D. Tex. Aug. 21, 2017) ("*Jane Doe 11*") (Compl., Dkt. 1), and *Jane Doe 12 et al. v. Baylor University*, No. 6:17-cv-236 (W.D. Tex. Sept. 1, 2017) ("*Jane Doe 12-15*") (Am. Compl., Dkt. 14).  There are five plaintiffs whose post-reporting claims are time-barred. *See Jane Doe 1–10* (Dkt. 78) (dismissing post-reporting claims by Jane Does 2, 5, 6, and 7 as time-barred); *Jane Doe 12–15* (Dkt. 35) (dismissing Jane Doe 13's post-reporting claim as time-barred).

[17]  Throughout the case these claims have been referred to as the "heightened risk" claims.

[18]  These have been referred to as the "post-reporting" claims.

19

did not elaborate on what it meant by 'involve official policy,' but the essence of the point is suggested by its reliance in the following paragraph on the doctrine regarding the imposition of liability on municipalities under 42 U.S.C. § 1983 for civil rights violations."). The Tenth Circuit explained in *Simpson* that "the standard [for Title IX liability] changes when the claim 'involve[s] official policy,' although the underlying principle—liability only for intentional acts by the institution itself—remains the same." *Simpson*, 500 F.3d at 1178 (citing *Gebser*, 524 U.S. at 290).

The Plaintiffs' post-reporting claims, on the other hand, rely on the assertion that Baylor "itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of . . . harassment of which it had actual knowledge." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999) (citations omitted). Liability arises from "an official decision by the [educational institution] not to remedy the violation [of Title IX]." *Id.* (quoting *Gebser*, 524 U.S. at 290). For example, in *Pederson v. Louisiana State University*, the Fifth Circuit found that LSU intentionally violated Title IX when it "ma[de] a decision not to provide equal athletic opportunities for its female students because of paternalism and stereotypical assumptions about their interests and abilities." 213 F.3d 858, 880 (5th Cir. 2000).

All of which is to say that the facts that Baylor and its Board of Regents were aware of, and the intentions of Baylor and the Board, are central liability facts under both of the Title IX theories Plaintiffs are pursuing, which means that Pepper Hamilton's work is potentially relevant to both the claims raised in this case. Although Baylor has argued that evidence for post-reporting claims should be limited to the university's specific actions in response to each Plaintiff's report of sexual assault, *see, e.g.*, Dkt. 837 at 46:23-47:3, the knowledge and policy decisions of the Regents could provide evidence that Baylor adopted sincere and comprehensive reforms, or that any

mismanagement of a reported sexual assault was an isolated misstep. On the other hand, the evidence could show that Baylor's policymakers knowingly took actions that contributed to systemic failures in response to a Plaintiff's later report of sexual assault.

## C.     Baylor's Prior Reliance on Pepper Hamilton's Work

At the hearing, Baylor maintained that it will not mention Pepper Hamilton at trial and would even file a motion in limine to prohibit all parties and witnesses from mentioning the law firm or its work during trial proceedings. Dkt. 837 at 60:23-61:11. This is a significant departure from Baylor's defense strategy up until this point. For most of the four years these cases have been pending, Baylor has repeatedly cited to the Pepper Hamilton investigation and subsequent implementation of reforms to demonstrate that the University was not deliberately indifferent to reports of sexual assault and did not intentionally discriminate against female students. Significant examples come from answers filed in five of the cases, and Baylor's motion to dismiss in Jane Doe 11's case. Importantly, all of these pleadings were filed *after* Judge Pitman specifically warned Baylor that it would risk waiving work product protection if it "directly invoke[d] the Pepper Hamilton investigation as part of a substantive defense to Plaintiffs' claims in the future." Dkt. 168 at 17.

To be specific, on February 5, 2018, Baylor filed its Motion to Dismiss Jane Doe 11's complaint, which cited the Pepper Hamilton investigation and implementation of reforms to dispute causation for Jane Doe 11's claims: "the alleged assault in this case occurred in April 2017—after the Pepper Hamilton investigation, after Baylor implemented Pepper Hamilton's recommendations, and after adoption of a brand new [Title IX] policy." *Jane Doe 11*, 6:17-CV-228 (Dkt. 7 at 1). Baylor continued: "Plaintiff does not allege that her alleged assailant assaulted her because of

21

Baylor's [revised Title IX] policy. In light of the Pepper Hamilton investigation and the resulting recommendations, the extensive press coverage of Baylor's efforts to implement the recommendations, and the fact that sexual assault is a crime under Texas law, such an attenuated causation allegation would not be plausible anyway." *Id.* at 19.[19] On October 25, 2018, Baylor filed an Answer to Jane Does 12, 13, 14, and 15 that referred to the Pepper Hamilton investigation again. *Jane Doe 12-15*, 6:17-CV-236 (Dkt. 40). In support of its statement that "Baylor did not maintain a policy or practice that caused Plaintiffs or other female students to be sexually assaulted or that created a substantial risk of sexual assault," Baylor stated that "[d]uring the time that Jane Does 12, 13, 14, and 15 attended Baylor University—a period of time between 2011 and 2016—Baylor University was actively engaged in activities aimed at reducing the risk of sexual assault and providing resources and assistance to students who may have been assaulted." *Id.* at 4. Among these, Baylor referred to the fact that "the Board of Regents engaged a law firm to investigate the handling of sexual assault claims during the period between 2012-2013 and 2014-2015." *Id.* at 6-7. "Although the investigation found deficiencies during the period under review, the investigation also demonstrated that some areas of concern already had been addressed prior to the investigation." *Id.* at 7. This reference again relies on the Pepper Hamilton investigation in order to show that Baylor was acting in a way that was non-discriminatory, *i.e.*, even if there were deficiencies in its Title IX practices, Baylor was working to investigate and address sexual assault issues on campus.

---

[19] The Court denied the motion to dismiss, stating: "Baylor's investigation and implementation of certain reforms do not preempt Plaintiff's claim as a matter of law. If, in fact, Baylor did take meaningful action that brought the university into compliance with Title IX, that factual finding is for a later stage of this case—it is not the question before the Court in a motion to dismiss." *Jane Doe 11*, 6:16-cv-228 (Dkt. 14 at 18).

22

On January 25, 2019, Baylor filed an Answer to Jane Doe 11's complaint that repeatedly references Pepper Hamilton's investigation and reform implementation. *Jane Doe 11*, 6:17-cv-228 (Dkt. 17). There, Baylor states that "[d]uring and leading up to the time that Jane Doe 11 attended Baylor, from 2014 through 2017, Baylor was actively engaged in activities aimed at reducing the risk of sexual assault and providing resources and assistance to students who may have been assaulted." *Id.* at 4. Among these, "[i]n 2016, the Board of Regents published findings, based on an investigation conducted by the law firm Pepper Hamilton, stating that Baylor's Title IX compliance efforts during the period from 2012-2015 had been slow, uncoordinated, and ultimately deficient." *Id.* at 6. "However, the investigation also demonstrated that some areas of concern had already been addressed prior to the investigation." *Id.* Baylor's Answer continues: "Pepper Hamilton's investigation made 105 recommendations to improve Baylor's Title IX efforts, which the Board adopted in their entirety . . . . The same lawyers who conducted the Pepper Hamilton investigation and made the 105 recommendations worked with the University to meaningfully implement the changes." *Id.* Further, Baylor states that in October 2017, "the same lawyers who made the 105 recommendations published a draft detailed report of Baylor's improvements," and in November 2017, the same lawyers published a "finalized" report that "confirmed that all 105 recommendations had been implemented." *Id.* at 7-8. In sum, Baylor specifically points to the Pepper Hamilton investigation and implementation work to assert that Baylor was not deliberately indifferent or intentionally discriminatory—rather, Baylor alleges that it was actively engaged in activities aimed at reducing the risk of sexual assault and providing resources and assistance to students, that the Baylor Board of Regents adopted 105 reform recommendations designed by Pepper Hamilton, that Baylor meaningfully implemented the reforms by working with Pepper Hamilton, and that Pepper

Hamilton confirmed to Baylor that the reforms had been implemented. Baylor's Answer to Jane Doe 11 also refers to specific documents prepared by Pepper Hamilton: the "105 recommendations," a "draft report of Baylor's improvements" in October 2017, and the "finalized" report in November 2017. *Id.* at 7-8. Both the 105 recommendations and the Final Report are public documents, and, as discussed above, the Final Report was the basis of the Court's finding that Baylor waived attorney-client privilege for Pepper Hamilton's implementation of Title IX reforms. It is not clear from the record whether the draft report has ever been published or produced.[20]

These are just three examples drawn from Plaintiffs' briefing and the immediate recollection of the Court. A review of the voluminous record in these cases would likely identify more instances where Baylor has pointed to Pepper Hamilton's work to negate liability or support a defensive claim. Even assuming these are Baylor's only references in the record to Pepper Hamilton's work, it is difficult to take at face value the claim that "Baylor is not relying on the investigation as a defense in any way." *See* Dkt. 805 at 2.

### D. Baylor's Current Position on Pepper Hamilton's Work

Baylor's position in its response to the motion to compel, which it repeated multiple times at the hearing, is that it will not rely at trial on any of the extensive work Pepper Hamilton had done. It also has requested leave to amend its answer in the Jane Doe 11 case, to make clear it is not relying on Pepper Hamilton's advice. Dkt. 815 at 2. This argument raises a series of questions—Is it possible for Baylor to omit any reference to Pepper Hamilton in its trial presentation without (at

---

[20] Given that the Final Report indicates that the draft report was presented to Southern Association of Colleges and Schools Commission on Colleges (SACSCOC), disclosure to that third party waives work product for the draft report to the extent that Baylor has asserted the privilege for that document. *See Jane Doe 11*, 6:17-CV-228 (Dkt. 17-27 at 11) ("On October 2, 2017, we prepared a preliminary draft of this report for the SACSCOC in anticipation of the special committee site visit.").

least) stretching the truth? And, would it be appropriate for the Court to affirmatively prevent the Plaintiffs from mentioning Pepper Hamilton in their case in chief, or in their cross examination of Baylor's witnesses? Finally, even if Baylor is not explicitly raising an advice of counsel defense, does Baylor's proposed trial approach still implicitly rely on Pepper Hamilton's work product?

To address these questions, the Court invited Baylor at the hearing to demonstrate its ability to carry out its plan at trial "in a fashion that is both factually sincere and fair to the Plaintiffs' right to question and respond to this defense." Dkt. 823. To begin, Baylor does not dispute that it intends to rely on the factual findings of the investigation, and the recommended reforms, to defend itself at trial. *See* Dkt. 805 at 2. At the hearing, Baylor explained that it intends to show that the University acted reasonably and without deliberate indifference through testimony by current and former Baylor employees, representatives of the Baylor University and Waco Police Departments, and former students. *See* Baylor Ex. 1, Dkt. 835 (Proposed Witness List). Baylor repeated multiple times that it is not asserting an advice of counsel defense. Instead, Baylor stated that it will present evidence of "the objective verifiable actions that were taken, not that it received advice from its lawyers to [take those actions]." Dkt. 837 at 6:6-9.

Thus, although Baylor has not pled an "advice of counsel" defense, it admits that, in an effort to demonstrate that Plaintiffs cannot make out the elements of a Title IX claim, it will explicitly rely on evidence that the university conducted an investigation, though performed solely by Pepper Hamilton, and instituted reforms, albeit implemented entirely under Pepper Hamilton's direct supervision and guidance. But, in an effort to avoid raising an advice of counsel defense and triggering the resulting disclosure of work product, Baylor proposes that in telling the jury this narrative, it will simply leave out the fact that the investigation and reform work was conducted by

25

Pepper Hamilton. What Baylor is proposing is that it be permitted to explicitly rely on the work and advice of Pepper Hamilton, while leaving the Pepper Hamilton "branding" off the work. So the jury will hear testimony that an extensive investigation into Baylor's Title IX policies and practices covering three academic years was conducted, and will hear that from this investigation 105 proposed reforms were developed. And Baylor will argue to the jury that this evidence rebuts the Plaintiffs' assertions that it failed to implement adequate Title IX policies, or intentionally adopted policies or customs it knew were inadequate, or was deliberately indifferent to sexual assaults it was aware of.

**E.      Analysis**

So where does this leave matters? Plaintiffs must demonstrate by a preponderance of the evidence that Baylor had policies or practices regarding responding to student reports of sexual assault that created an environment that heightened the risk of female students being assaulted, and that it intentionally discriminated against women in the manner in which it responded to reports of sexual assault, or that it was deliberately indifferent to those reports. It is the Plaintiffs' burden to demonstrate that the actions Baylor relies on—the investigation and the implementation of reforms—are not enough to rebut the Plaintiffs' evidence. This necessarily includes questioning the integrity, scope and conduct of the investigation, as well as the quality of the implementation of reforms. But to criticize the investigation, Plaintiffs must criticize the work of Pepper Hamilton. The same is the case for the reform implementation. Trying to do so through the Baylor witnesses would be pointless, as it would inevitably lead to those witnesses invoking Pepper Hamilton's work. The deposition testimony of one of the Baylor Regents lays this fact plain:

Q.      And do you view the sexual assault issues at Baylor to have been resolved?

26

> A.  I don't know what you mean by resolved.
> Q.  Well, the board passed a resolution in May of --
> A.  You're talking about the 105 recommendations and all that have been put into place? Yeah.
> Q.  You believe that to have been done?
> A.  Yes, sir.
> Q.  Based on what knowledge?
> A.  Based upon what we've been assured by Pepper Hamilton and others on behalf of the university administration itself, by Pepper Hamilton assuring us that it's been done and then implemented and carried out. And is being carried out today.
> Q.  And you trust those representations?
> A.  I do, yes, sir.
> Q.  And you haven't done anything to look behind them to see if they're accurate?
> A.  No, sir.

Dkt. 833-1 at 77:1-20.

Because Baylor cannot separate its investigation and reform efforts from Pepper Hamilton's, Baylor's proposed defensive case explicitly relies on Pepper Hamilton's work product. This supports a finding of waiver. *See In re Itron*, 883 F.3d at 564 (citing *In re Burlington*, 822 F.2d at 533) ("Waiver does not occur unless a party "'explicitly relies' on the existence or absence of privileged communications."). The record indicates that this is not a situation where a university conducted its own investigation and implemented its own reforms, while consulting with a law firm for guidance. Pepper Hamilton, not Baylor, conducted the investigation, designed the reforms, and implemented many if not most of the changes, and Baylor's policymakers depended heavily on Pepper Hamilton for knowledge of the relevant facts and for advice in how to respond to those facts. Given this, it is impossible for the Court, the parties, or a jury to separate Baylor's efforts from Pepper Hamilton's, much less to do as Baylor proposes, and pretend that Pepper Hamilton's efforts *were* Baylor's.

At least one court has confronted a similar scenario in a Title IX case. *See Doe v. USD No. 237*, 2019 WL 1925107, at *7, *affirmed, Doe v. USD 237*, 2019 WL 2612941. There, the magistrate judge rejected a school district's argument that it had not waived work product protection for a pre-litigation investigation report because it was not affirmatively asserting the investigation or report as a defense. The judge concluded that the school district had waived work product by putting at issue the actions it took "as a result of" the investigation. 2019 WL 1925107, at *7-8. Specifically, the court found the school district "[placed] the investigation, and therefore the Report, at issue by asserting the defense that it 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' took action [against responsible parties] after the investigation, and took other 'personnel actions,' including by providing training, as a result of the investigation." *Id.* at *7. The court rejected the school's claim that it did not intend to rely on the report: "[t]o the extent Defendants argue they do not intend to affirmatively rely on the Report itself but rather the corrective actions taken, that argument 'misses the point.'" *Id.* at *7.

In affirming the magistrate judge's order, the district court found that by relying on the reasonableness of the corrective actions it took after the investigation, the school district implicitly put the reasonableness of the investigation at issue and thus waived work product protection with respect to the contents of the investigation. *Doe v. USD 237*, 2019 WL 2612941, *6 (D. Kan. June 26, 2019). The district court also later rejected the school district's attempt to amend its answer to withdraw the defense in order to preserve its work product protection. *Doe v. USD No. 237*, 2019 WL 3996413, at *3 (D. Kan. Aug. 23, 2019). The court found that even though the school district "purported to withdraw" the investigation as a defense, the school continued to rely on it implicitly, which was "manifestly unfair to Plaintiffs." *Id.* at *5-6.

28

The Southern District of Texas rejected a similar attempt to disclaim the advice of counsel defense in *Edwards v. KB Home*, 2015 WL 4430998 (S.D. Tex. July 18, 2015). The defendant in an FLSA action argued that it acted in good faith in its classification of employees and attempted to avoid waiver of attorney-client privilege by asserting that it was "not relying on advice of counsel in its defenses." *Id.* at *1. The defendant proposed that witnesses would testify that they classified employees based on their "independent judgment" of various sources, including some legal guidance, but witnesses would not say "lawyers advised us that the employees do not qualify as outside salespeople." *Id.* at *2. The court concluded that "pars[ing] its defense to rely solely on its own nonlawyers' understanding of the FLSA's outside sales exemption and thus maintain as privileged the attorney communications on the same topic" was "drawing too fine a line." *Id.*

Similarly here, Baylor is asking the court to parse its defense so that Baylor can rely on its policymakers' and administrators' "independent" assessment of sexual assault problems at the University, and their "independent" ideas for reform. Allowing Baylor to present a defense that it conducted an investigation and implemented reforms, but omit all reference to Pepper Hamilton, does not solve Baylor's problem, as it still implicitly relies on Pepper Hamilton's work product. Indeed, doing so would be allowing Baylor to present what is, for all intents and purposes, a narrative everyone but the jury would know to be false, as the Court has thus far seen no evidence in the record that Baylor originated *any* findings or reforms without Pepper Hamilton's assistance. Baylor's proposed witness list, for example, contains witnesses who "ha[ve] knowledge" of topics such as "Title IX policies and procedures," but includes no one who adopted those policies or procedures. *See* Dkt. 835. To prove their case, the Plaintiffs must put on evidence of Baylor's policies, and the decisions of Baylor's policymakers. The policymakers at Baylor are its Regents,

29

and yet not a single Board member, past or present, was included on Baylor's list of the witnesses it proposes to call regarding the investigation and the adoption of reforms. *Id.*

The *Edwards* case out of the Southern District of Texas notes another practical consideration in an analysis like this: "as a psychological matter, it seems very difficult, if not impossible, for a witness to compartmentalize his reliance on what he may have independently understood regarding the law and what he was told by attorneys." 2015 WL 4430998 at *2. This is more than a theoretical problem in this case. Here, Baylor's policymakers will inevitably rely on information conveyed by Pepper Hamilton to explain their knowledge and decision making. The extensive record in this case indicates that many Regents—perhaps even a majority of them—relied entirely on Pepper Hamilton for their knowledge of relevant facts and for their ultimate policy decisions. That is why they hired the firm. Indeed, the record indicates that Baylor's reforms came primarily or exclusively from Pepper Hamilton's advice. The previously quoted excerpt from Regent William B. Robbins, Jr.'s deposition is but one example of this. Baylor's proposed motion in limine would require a Regent like Mr. Robbins to alter his testimony—falsely—as Robbins cannot explain his decision making about the implementation of reforms without reference to Pepper Hamilton. Baylor's attorneys may claim that they are not relying on the advice of counsel defense, but the entire Board of Regents will likely testify that *they* relied on Pepper Hamilton to help them understand and manage the situation at Baylor.[21] *See Makula v. Sanwa Bus. Credit Corp.*, 1997 WL 460935, at *3 (N.D. Ill. Aug. 8, 1997) (defendant waived privilege because, while his attorney denied that

---

[21] To think otherwise seems naive. It is certain that the Plaintiffs will vigorously cross examine the Regents at trial, and press them to explain why their actions were reasonable. To believe that any of the Regents—a group comprised of lawyers, bankers, doctors, and executives—are *not* going to defend their actions by pointing out that they hired and relied on Title IX legal experts is wishful thinking.

defendant would use the advice of counsel defense, defendant was clearly attempting to use it in his deposition).

Baylor's motion in limine would require witnesses to testify in half truths in order to pretend that Baylor conducted its own investigation and originated its own policy reforms. Baylor is effectively asking its witnesses to lie. Setting aside the problem that the proposed motion in limine would be asking the Court to permit—indeed, *require*—false testimony, prohibiting mention of Pepper Hamilton would also present significant logistical challenges for trial. To start, because Pepper Hamilton's work is factually central to many of Baylor's policy decisions, policing the parties for compliance with the motion in limine would require counsel and the Court's constant attention. The likelihood of a violation would be high. Additionally, jury selection, which is already going to be a challenge (due largely to Baylor's extensive PR campaigns), would be even more difficult, as the Court would have to select a jury that was unaware of Pepper Hamilton's substantial work for Baylor, while at the same time never mentioning Pepper Hamilton during the jury selection. This would likely lead to a contaminated jury pool.

In the end, this is a classic case of a party trying to use the work product doctrine as a sword and a shield. Baylor seeks to show that it responded properly to reports of student sexual assault and that it adopted policy reforms by pointing to "the objective verifiable actions that were taken, not that it received advice from its lawyers to [take those actions]." Dkt. 837 at 6:6-9. Baylor intends to rely on the fact that it conducted an investigation and the fact that it implemented reforms. The pleadings illustrate the centrality of Pepper Hamilton to Baylor's response to sexual assault claims. The words "Pepper Hamilton" have appeared hundreds, and perhaps thousands, of times in the briefing in this case. At the same time, throughout this litigation, Baylor has doggedly opposed every request for

discovery of any materials connected to Pepper Hamilton.[22] As the Court stated in the hearing, the reason this case is four years old is because Baylor wants to dramatically restrict the discovery of facts in this case by restricting discovery of Pepper Hamilton's work, but Baylor still wants to get the benefit of relying on the investigation and reforms that Pepper Hamilton carried out.  The court in *Doe v. USD* rejected this same effort:

> Defendants seek to use the investigation and Report to support their defense that they took corrective action in response (*i.e.* that they were not deliberately indifferent) to Plaintiffs' complaints, while at the same time invoking the privilege to deny Plaintiffs access to the Report to determine how Defendants' corrective action compares to [their attorney's] recommendations. But this is precisely the sword and shield approach that the courts have rejected.

*Doe v. USD No. 237*, 2019 WL 1925107, at *7.

Because Baylor cannot separate its investigation and reform efforts from Pepper Hamilton's, by relying on the investigation and reforms Baylor places Pepper Hamilton's work product at issue, and therefore has waived protection over that work product.  Baylor is explicitly relying on the *existence* of Pepper Hamilton's work product in the form of its investigation, findings and implementation of reforms. And Baylor has used work product as both a sword and shield by defending itself by pointing to the investigation and reforms, and claiming they were reasonable

---

[22] *See, e.g.*, Baylor's motion to prohibit discovery of Pepper Hamilton-related material from current and former employees (Dkt. 282), which the Court granted in part (Dkt. 582); Baylor's opposition to production of PR materials because they referred to Pepper Hamilton's work product (Dkt. 434), which the Court overruled because Baylor failed to identify any plausible work product (Dkt. 616);  Baylor's opposition to Plaintiffs' motion to compel Pepper Hamilton materials (Dkt. 332), which resulted in three rounds of highly contentious briefing, including Pepper Hamilton's Motion for Reconsideration (Dkt. 612), Baylor's Motion for Protection Regarding All Work Separate from the Investigation (Dkt. 621), and Plaintiff's Amended Motion to Compel and Motion for Sanctions (Dkt. 621), two hearings, and two detailed rulings by this Court (Dkts. 653, 667).  These examples do not include the many third parties who have filed motions to quash based in part on Baylor's assertion of attorney-client privilege and work product arising from Pepper Hamilton's work.

responses, while simultaneously restricting Plaintiffs' discovery of the facts underlying the very same investigation and reform efforts.

In the context of this case, this conclusion should not be controversial. The primary rationale for granting qualified protection to attorney work product is to shield an attorney's case planning and strategy from his adversary in litigation. "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Noble*, 422 U.S. 225, 238 (1975). As the Fifth Circuit explained it, "[t]he work product privilege . . . does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields*, 864 F.2d at 382. Determining when this protection has been waived is for all practical purposes a balancing of the interest of promoting the adversarial system against the interest of determining the truth in a given case. "When a party seeks a greater advantage from its control over work-product than the law must provide to maintain a healthy adversary system, the privilege should give way." *Pamida, Inc. v. E.S. Originals*, 281 F.3d 726, 732 (8th Cir. 2002). As has already been noted, though Baylor and Pepper Hamilton amended their engagement letter to state that they believed Pepper Hamilton's work was being done in anticipation of litigation, they appear to have known from the start that Pepper Hamilton would not be defending Baylor in any of that litigation. As Leslie Gomez stated it, she and her partner Gina Smith "are not litigators. We don't sue schools. We don't defend schools. We exist in a policy, auditing, investigative, regulatory compliance space." Dkt. 672 at 41. Given this, ordering the production of the "policy, auditing, or investigative" work Pepper Hamilton did for Baylor will do little to undermine the adversary system,

33

since the work the firm did was only tangentially related to the defense of any litigation, and did not involve case planning or strategy.

The Court is conscious that a finding of work product waiver has important policy implications. Nothing in this ruling suggests that a university that hires outside counsel to investigate and assist with Title IX compliance waives all work product protection for that work; the waiver found here is based on the facts of this case. Accordingly, a finding of waiver based on the narrow and unique facts of this litigation is not likely to discourage a university from relying on counsel for their Title IX compliance efforts. Conversely, allowing Baylor to maintain work product protection in this situation would risk enabling universities to withhold materials with potentially embarrassing or incriminating facts, even when the university had placed them at issue, solely because the facts were gathered by outside counsel.[23]

## F. Scope of the Waiver

This conclusion requires that the Court enter the fraught territory of identifying the information made discoverable by Baylor's waiver. This is yet one more way in which this case stands out from others. Discovery in this case has involved hundreds of gigabytes, if not terabytes,

---

[23] Pepper Hamilton's work product is also arguably discoverable under Rule 26(b)(3), as the record suggests Plaintiffs have a substantial need for it, and there is no other way for them to obtain it. *See* FED. R. CIV. P. 26(b)(3). As the Court has noted in the text, the information that Baylor and the Regents were aware of, and Baylor and the Regents' intentions, are central liability facts under both of Plaintiffs' Title IX claims. The Plaintiffs have the burden of proof on these claims. As is clear from this Order, the Regents obtained their factual information almost exclusively from Pepper Hamilton's investigation, and in making policy decisions they relied heavily on Pepper Hamilton as well. To have a fair chance of proving their case, then, Plaintiffs arguably have a compelling need to obtain the Pepper Hamilton materials to demonstrate what the Regents knew, and how they made their policy decisions. And—as discovery has demonstrated—Plaintiffs have been unable to obtain this information even through depositions of the Regents. Thus, even if Baylor's reliance on the Pepper Hamilton investigation and reforms had not put the work at issue in the case, Plaintiffs arguably would be entitled to discover the information under Rule 26(b)(3). Having said this, neither the Plaintiffs nor Baylor addressed Rule 26 and its application here, so the Court does not reach any conclusions on this point either.

of material, and this motion does not challenge the designation of any specific document or documents, but rather raises a global argument that Baylor has waived work product protection as to a whole class of documents. In nearly every one of the cases the Court has reviewed on these issues, the universe of disputed documents was a fraction of the size at issue here, and in many cases the Court reviewed the records *in camera* to identify the scope of the waiver. The Court does not have that luxury here, as such a review is impossible given the amount of material involved. All of which means that the most the Court can do at this point is make general pronouncements regarding the scope of production that must follow from this order, and to give examples regarding types or categories of documents.

The scope of an "at issue" waiver depends on the facts of the case, and what has been put "at issue." "[T]he scope of any waiver is defined by the context of the waiver and the prejudice to the other party that limiting the waiver would cause." *McGrath v. Nassau Cty. Health Care Corp.*, 204 F.R.D. 240, 243 (E.D.N.Y. 2001). Some courts have limited the scope of a waiver to the portion or category of material that a party would offer in evidence. *See Nobles*, 422 U.S. at 240-41 (finding no abuse of discretion where court found waiver of "only the portion of the report that related to the testimony the investigator would offer."). Others have found a broader waiver, based on what the discovering party fairly needs to assess and challenge the veracity of what the producing party intends to offer at trial. *Grigson v. Farmers Grp., Inc.*, 2019 WL 3781439, at *3 (W.D. Tex. Aug. 12, 2019) (finding waiver of work product for all insurance rate models prepared for litigation where defendant produced and relied on some of the rate models to attempt to show that plaintiffs were not damaged). Whether that is only part of the attorney's materials underlying its communications to their client, or all of it, depends on the case. *See, e.g., Angelone v. Xerox Corp.*, 2011 WL 4473534,

35

at *2-3 (W.D.N.Y. Sept. 26, 2011) ("the clear majority view is that when a . . . defendant affirmatively invokes a . . . defense that is premised, in whole in or part, on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation.").

Importantly, an "at issue" waiver of work product is not confined to fact work product. Unlike when a party obtains work product based on a substantial need, when disclosure is ordered because the work product has been put "at issue," the waiver applies to everything that has been put "at issue," whether they be facts or opinions. "Like the attorney client privilege, opinion work product may be disclosed when the holder waives the protection by placing the protected material 'at issue' in the litigation." *Mir*, 315 F.R.D. at 470. *See also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 92(1)(a) (2000) ("[w]ork-product immunity is waived for *any* relevant material") (emphasis added); *In re Sealed Case*, 676 F.2d 793, 811 (D.C. Cir. 1982) (noting that opinion work product "need not be produced *unless the ... implied waiver doctrine[ ] appl[ies]*."); *McGrath,* 204 F.R.D. at 240 ("Parties may waive any work product protection by putting the privileged information at issue."). Thus, in *Angelone v. Xerox* the court found that by putting its investigation and remedial efforts at issue, the defendant waived work product protection for "not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation." 2011 WL 4473534, at *2.

Baylor's defense is founded on the facts and advice it and its Regents received from Pepper Hamilton. For a jury to decide whether Baylor's actions were reasonable, the jury has to know the facts and advice Baylor relied on, so it can determine whether Baylor's reliance on those facts and

36

advice was reasonable.  This is no different than the situation created when a defendant explicitly raises an advice of counsel defense, where the defendant is required to produce the work product demonstrating what the attorney's advice was.  *See, e.g., Simmons, Inc. v. Bombardier*, *Inc.*, 221 F.R.D. 4, 9-10 (D.D.C. 2004).  As one court has noted,

> It would be patently unfair for a party to assert that they relied upon the advice of counsel, yet deprive the opponent of the opportunity to understand why the advice was given, what other alternatives were looked at, why certain advice was rejected, and how the advice was interrelated to other business decisions. Plaintiffs are entitled to understand and ask questions about the validity of counsel's advice, and Defendants may not use the assertion of the privilege both "as a sword and a shield."

*In re Fresh & Process Potatoes Antitrust Litig.*, 2014 WL 1413676, at *6 (D. Idaho Apr. 11, 2014) (citation omitted).

Similarly, several courts have noted that in employment cases, where the employer defends itself by relying upon an investigation to demonstrate its response to the plaintiff's allegations was reasonable, "the adequacy of the employer's investigation becomes critical to the issue of liability." *E.g., Musa-Muaremi v. Florists' Transworld Delivery, Inc.,* 270 F.R.D. 312, 319 (N.D. Ill. 2010). Further, where the employer relies on remedial actions it took as a result of the investigation, "*the advice it received* and whether it followed that advice is in issue." *Pray v. New York City Ballet Co.*, 1997 WL 266980, at *3, n.4 (S.D.N.Y. May 19, 1997) (emphasis added).  In reaching this conclusion, the court in *Pray* rejected the employer's argument that only the factual substance of the investigation was discoverable.  In other words, where an employer asserts as a defense remedial actions based on the results of an investigation and the recommendations of its attorney, the waiver pertains to all work product—fact or opinion.  So the waiver here is not confined to facts.

What all of this means in this case is that Plaintiffs are entitled to discover the information that Pepper Hamilton conveyed to the Regents or other decision makers regarding (1) Pepper

Hamilton's investigation into Baylor's handling of sexual assault reports between 2012-2015, (2) its recommended reforms, and (3) the implementation of those reforms. *Doe v. USD No. 237*, 2019 WL 1925107, at *7 (finding that plaintiffs were entitled to "all documents reflecting the School District's investigation into their complaints and its remedial response, not only the documents Defendants think support their cause."); *Harding v. Dana Transport, Inc.*, 914 F.Supp. 1084, 1096, 1099 (D. N.J. 1996) (granting discovery of all investigation documents, including the attorney's interviews and reporting of those interviews). And where there is no written record of communications from Pepper Hamilton on these topics, then any other documentary evidence of what was conveyed is discoverable.[24]

But the waiver extends beyond just the facts and advice Baylor received from Pepper Hamilton. The scope of an "at issue" waiver extends also to the material on that subject matter necessary to litigate the issue fairly. One of the primary questions the jury is going to decide in this case is whether Baylor's actions regarding student reports of sexual assault were reasonable. Because Baylor's actions were based so heavily on Pepper Hamilton's work, to fairly litigate the reasonableness of Baylor's actions, Plaintiffs need the material underpinning Pepper Hamilton's work. As a court explained in another Title IX case, because the defendant placed its investigation and remedial actions at issue, the underlying work product was discoverable because it was "likely to speak directly to whether [the defendants] had actual knowledge of all of the circumstances

---

[24] Rule 26 refers to work product as "documents and tangible things." FED. R. CIV. P. 26(b)(3). But it is clear that work product also includes information that has not been reduced to writing. For example, Federal Rule of Evidence 502 defines work product to include "tangible material (or its intangible equivalent)." FED. R. EVID. 502(g)(2). And the case that first bestowed protection on work product specifically recognized that "recollections" were encompassed within the protection. *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Thus, there appears to be universal agreement that *Hickman* makes it clear that work product includes intangible material, such as conversations. *See, e.g. In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3rd. Cir. 2003).

surrounding the allegations and whether their response to such allegations was 'clearly unreasonable,' the two key elements in a Title IX claim." *Chivers v. Cent. Noble Cmty. Sch.*, 2005 WL 6567356, at *4 (N.D. Ind. Aug. 4, 2005). This means that documents setting out the factual basis for Pepper Hamilton's conclusions and recommendations are discoverable. Thus, if witness interviews were recorded, the recordings are discoverable. If written reports or summaries of witness interviews were created and do not contain attorney comment, they are discoverable.[25] If reports contain attorney commentary they are discoverable, with the attorney commentary redacted.

Likewise, records that cast light on the independence and integrity of the investigation and recommendations are discoverable. So any documents or information indicating attempts by Baylor to influence Pepper Hamilton's work, or casting any doubt on its independence are discoverable. This could include things such as the drafts of findings, so that Plaintiffs can see if changes were made based on input from Baylor. *See McGrath*, 204 F.R.D. at 246 (granting discovery of outside attorney's "incomplete report to [defendant], her handwritten investigative notes and any sections of her reports that were deleted or redacted"). It would also encompass emails, memos or other records of any communications between any Regent or Baylor representative on the one hand and a Pepper Hamilton attorney on the other (which frankly should already have been produced based on the Court's finding that Baylor had waived its attorney-client privilege). Likewise with the implementation of reforms. Materials that summarize the implementation work, or document what Pepper Hamilton encountered doing that work, are discoverable. Records indicating the facts that formed the basis for the implementation report are also discoverable.

---

[25]As noted later, outlines or preparatory notes for interviews are not discoverable.

And though the waiver is not confined to fact work product, fact work product remains discoverable. Baylor's position to date has been that its discovery responses have been faithful to the settled principle that "work product immunity protects only the documents themselves and not the underlying facts," *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982), because "Plaintiffs either have or will have been provided *all* the underlying documents and facts." Dkt. 805 at 2 (emphasis original). It is important to understand exactly what Baylor means by this. As Leslie Gomez explained, and Baylor has told the Court numerous times, at the outset of its investigation, Pepper Hamilton gathered a huge amount of data, including a large volume of ESI. Dkt. 672 at 4 (Dunnam, summarizing Baylor's public and in-court statements on quantity of data gathered, which range from 27 terabytes to 280 gigabytes); *Id.* at 40 (Gomez, referring to "terabytes" and describing the types of information gathered). But those are not actually the facts on which Pepper Hamilton *based* its advice. Pepper Hamilton engaged an ESI consultant, and used search terms to identify which of the millions of documents it had assembled actually had something to do with the matters it was investigating. Unsurprisingly, a huge amount of the raw data was completely irrelevant to, and played no part in, Pepper Hamilton's investigation or recommendations. Yet Baylor has taken the position that it has not shielded the "underlying facts" from discovery because it has included all of the Pepper Hamilton raw data in the ESI it has allowed Plaintiffs to run search terms against. But this is disingenuous, because the majority of the raw data was never even looked at by Pepper Hamilton. Through this approach Baylor has been able to hide the ball, as it has refused to disclose to Plaintiffs what search terms Pepper Hamilton used, or the documents Pepper Hamilton culled out of the raw data—the documents Pepper Hamilton actually relied on in its investigation. Because Baylor has placed the investigation and reform work at issue in this case, Plaintiffs are

40

entitled to know the search terms Pepper Hamilton used and to have access to the smaller universe of factual data that Pepper Hamilton actually based its investigation and recommendations on.

To give another example, these conclusions make any materials documenting Pepper Hamilton's presentation to the Board of Regents on May 2, 11 and 12, 2015, discoverable. Leslie Gomez, one of the attorneys who led the investigation, provided the Court a helpful description of these presentations, and some of the underlying work product that is now discoverable. As related above, after Plaintiffs discovered records suggesting the existence of an investigative report, Gomez provided testimony to the Court to explain why, despite that evidence, no such report existed. In that testimony, she explained references to a "report" in an email[26] from Gina Smith (Gomez's co-counsel) to Ray Cotton (Baylor's consultant), stating:

> So if we look at the particular correspondence dated May 21st of 2016, from my colleague, Gina Maisto Smith, to Ray Cotton copying me on that, indicating:
>
>> Time sensitive. As discussed, attached are the drafts of the overall findings and recommendations. These are shared for your review per David Iler, privilege counsel.
>>
>> Please call David to discuss any use of these beyond your review. We will keep you updated in the progress of the narrative of the findings and recommendations.
>
> And this had two attachments to it. I don't know if you have those attachments here today.
>
> *Those two attachments would be our internal work-product documents that we gave the May 11th and May 12th presentation from.* Those were shared with the counsel for the board at the request of Baylor's outside privilege counsel.

Dkt. 672 at 42-43 (emphasis added). As discussed in detail, in approving the public release of the 13-page Findings of Fact (drafted largely by Pepper Hamilton), and in deciding to adopt the reforms

---

[26] *See* Dkt. 618-3.

Pepper Hamilton recommended—the very reforms Baylor will rely on at trial—the Regents relied heavily on these presentations. Baylor has repeatedly stated that there is no transcript, recording or other record of the presentations. Thus, the documents from which the attorneys presented their investigative findings to the Board, the tabbed chronology and associated linked documents, along with any other documents that record in any way what the Regents were told at the presentation, are part of the work product Baylor has put in issue through its defense. Baylor must produce all of this work product, whether it be PowerPoint slideshows, attorney outlines or notes for the presentation, chronologies, background documents and other similar materials.

These conclusions also mean that Baylor may no longer prevent witnesses from testifying about a matter, or redact information from a document simply because the information was provided to the witness by Pepper Hamilton. Baylor's position has been "that Plaintiffs can ask Regents about the facts of which they were aware or on which they relied to form the basis of any specific findings, as long as they do not directly ask what PH attorneys presented to them as part of its presentation or use such questioning as a basis for arguing a broader waiver." Dkt. 805 at 11. To the extent that position was ever correct, it no longer has any application. In light of the conclusions reached in this order, the very fact that Pepper Hamilton was the source of information is discoverable, as is the underlying information.

Given that the attorney-client privilege and work product protection have been waived for Pepper Hamilton's investigative and reform work, the materials *not* subject to discovery on those two matters should be much smaller than that the materials that *are* discoverable. Things not discoverable would be materials that were not considered by Pepper Hamilton in its investigation or reform work, internal emails or communications between Pepper Hamilton attorneys (not copied

to any Baylor representative),[27] legal research, materials Pepper Hamilton attorneys prepared to aid in conducting witness interviews (witness binders, chronologies, etc.), and notes taken by attorneys during interviews.

## G. Closing Notes

As mentioned at the outset of the prior section, the Court is writing in a vacuum, as this discussion is not based on documents submitted to the Court, which means many of the Court's statements are necessarily general. This leaves room for mischief in how the order is carried out. To mitigate that, the Court will strictly enforce the requirements of Rule 26(b)(5)(A) for any document that Baylor withholds on a claim that it falls outside the scope of this waiver. Not only must the document be identified on a privilege log, but it must be identified with sufficient detail to allow the Plaintiffs to assess the claim that the document is not discoverable due to this order. Failure to do so will result in the waiver of work product protection. The sheer size of the discovery database in this case will not permit the Court to referee the implementation of this order document-by-document.

Baylor's privilege log has been a moving target to date, shifting with the Court's rulings on waiver. It is time to start over. The Court will therefore order that by July 15, 2020, Baylor shall serve on Plaintiffs a single privilege log that takes into account this and all previous orders regarding privileges, and contains only those documents Baylor continues to withhold based on a claim of privilege or immunity from discovery. This is a one-time opportunity to log documents. A privilege claim regarding any document not contained on this log will be waived. And because there should

---

[27]In contrast, any email pertaining to either of the two relevant matters between one or more Pepper Hamilton attorney that includes a Baylor representative is discoverable—indeed, should already have been produced given the Court's attorney-client privilege waiver ruling.

not be any "new" documents at this late date, the log may not contain any document that has not previously been claimed as privileged, absent good cause. As mentioned, any privilege claim regarding a document inadequately logged will also be waived. In short, the Court will not permit or tolerate the sloppiness of the past on these issues.

In a further effort to reduce ongoing disputes, the Court reminds Baylor that this is a discovery order, and only a discovery order. Simply because a document is produced does not make it admissible at trial. The scope discussion has solely been one regarding the scope of discovery. *See, e.g.*, *In re Fresh & Process Potatoes Antitrust Litig.*, 2014 WL 1413676, at *5. ("Even if negative evidence contained in the attorney's files may not reflect upon the client's state of mind, and may not be admissible as evidence, the evidence may still lead to discovery of relevant and admissible evidence."). The battle over admissibility should be fought at trial, and not in discovery. For their part, the Court reminds the Plaintiffs not to let perfection be the enemy of good. At some point soon, Plaintiffs surely will have enough evidence to try these cases. One would hope we are close to that point. The Court will shortly be setting a final scheduling order for this case, and the remaining time allowed for discovery will not be long. And when it comes to trial, Judge Pitman does not intend to allocate the weeks and weeks the discovery to date suggests the parties will take to try the case. It is time to move beyond discovery.

Finally, the Court will not tolerate any more misreadings of a court order. Baylor has made a habit of avoiding discovery compliance by interpreting orders in its favor even when the order directs otherwise. On at least two occasions, Baylor has "accidentally" failed to produce court-ordered production, both involving Pepper Hamilton materials. Last spring, after Baylor had certified complete production of all Pepper Hamilton materials, Baylor "discovered" over a thousand

documents just days before Pepper Hamilton's production deadline. *See* Dkt. 653 at 33; Dkt. 667 at 3. And in the briefing on the instant motion, the Court learned that Baylor believed that the Court had "reconsidered" its order finding Baylor had waived attorney-client privilege for all Pepper Hamilton materials related to implementation of the 105 recommendations. Dkt. 805 at 13. This briefing revealed that Baylor had failed to comply with the Court's year-old order to produce those materials, which presumably number in the thousands or tens of thousands. *See* Dkt. 795 at 6. The Court addressed this briefly at the hearing on May 5th, 2020. Dkt. 837 at 68:13-70:23. Baylor dropped the argument at the hearing, apologized for its misunderstanding, and has since produced the materials. Dkt. 836 at 4. Regardless, this pattern is problematic. The Court warns Baylor it will impose sanctions if Baylor fails to comply in good faith with this Order.

### III. MOTION FOR LEAVE TO AMEND THE ANSWER

After Plaintiffs filed their motion to compel, relying in part on statements in the answer Baylor filed in *Jane Doe 11 v. Baylor University*, Baylor filed a motion seeking leave to remove all references to Pepper Hamilton and its recommendations from that answer, stating that it would like to do so "to reinforce that it is not relying on the advice of Pepper Hamilton attorneys in its defense in this case." Dkt. 815 at 1-2. Plaintiffs oppose the amendment. Dkt. 817. Given the ruling on Plaintiffs motion to compel, this discussion is, to a large extent, academic.

### A.    Legal Standard

The Federal Rules of Civil Procedure permit a party to amend its pleading "once as a matter of course" within 21 days of service or certain motions under Rule 12, and afterwards "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(1)-(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias

in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002). But leave to amend "is by no means automatic." *Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991). A district court may deny leave to amend if it has a "substantial reason" to do so. *Lyn–Lea Travel Corp.*, 283 F.3d at 286.

## B. Discussion

Baylor argues that justice requires leave to amend its Answer because "[n]o scheduling order has been entered in the Jane Doe 11 matter," no deadlines have been set for the amendment of pleadings, expert designations, or the close of discovery, and Baylor is not adding any factual allegations or defenses. Dkt. 815 at 2. Baylor contends that the amendment will not prejudice Jane Doe 11 or any other plaintiff. *Id.*

In light of the Court's ruling on waiver, Baylor's request for leave to amend the *Jane Doe 11* Answer would be futile and contrary to the interests of justice. Amending the Answer does not change Baylor's implicit reliance on Pepper Hamilton's work or the fact that Baylor cannot separate its own work from Pepper Hamilton's. Baylor's attempt to amend one of its Answers is a concession, not a clarification of its position. Indeed, Baylor states that it does not seek leave to amend the answers in *Jane Doe 1-10* or *Jane Doe 12-15*, as none of them mention Pepper Hamilton or its recommendations. Dkt. 817 at 2 (citing *Jane Doe 1-10*, 6:16-CV-173 (Dkt. 88); *Jane Doe 12-15*, 6:17-CV-236 (Dkt. 40)). But Baylor is mistaken—Baylor *does* refer to the Pepper Hamilton investigation and recommendations in its Answer to Jane Does 12-15 by repeatedly referring to "a law firm," even though it does not refer to Pepper Hamilton by name. *Jane Doe 12–15*, 6:17-CV-236 (Dkt. 40 at 4, 6-7). The amendment cannot cure Baylor's reliance on Pepper Hamilton's work product in this litigation. *See Doe*, 2019 WL 3996413, at *3 (affirming the magistrate judge's ruling

and rejecting school district's attempt to amend its answer to withdraw its advice of counsel defense in order to preserve its work product protection in Title IX action); *cf. Inmuno Vital, Inc. v. Telemundo Grp., Inc.*, 203 F.R.D. 561, 564 (S.D. Fla. 2001) (denying motion to amend an answer to add an advice of counsel defense and stating that "[b]y blocking Plaintiff's attempt to obtain discovery on the legal advice rendered from outside counsel on the disputed issue, Defendants unfairly attempted to use the privilege as a sword to bolster and protect its advice of counsel defense.").

Moreover, Baylor added these statements to its answers after the Court specifically warned it that doing so would put its work product protection in peril:

> Although Baylor has impliedly connected the Pepper Hamilton investigation to this litigation, it has not directly invoked Pepper Hamilton's work as a defense. *Baylor's answer in this case, for example, includes no reference to the Pepper Hamilton investigation.* While Plaintiffs argue that Baylor will use the investigation as part of its defense in the future, such speculation is insufficient, at this time, to satisfy Plaintiffs' burden to show broad, subject-matter waiver. *Should Baylor directly invoke the Pepper Hamilton investigation as part of a substantive defense to Plaintiffs' claims in the future, the Court will entertain a motion by Plaintiffs re-urging waiver.*

Dkt. 168 at 17 (emphasis added, citation omitted). To allow Baylor to amend the answers to withdraw its invocation of Pepper Hamilton's advice after it received this warning would be contrary to the interests of justice. Baylor has had more than enough time to settle on a defense to this case, and allowing yet another change four years into the case is unwarranted. Baylor was on notice of the impact relying on Pepper Hamilton's work would have, and it is too late for it to withdraw those references.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel Pepper Hamilton's Work Product for the investigation and implementation of reforms (Dkt. 795) is **GRANTED** on the terms detailed in this Order, and Baylor's Motion for Leave to Amend Answer in *Jane Doe 11 v. Baylor University* (Dkt. 815) is **DENIED**.

Baylor shall produce the Pepper Hamilton work product made discoverable by this Order, and shall serve on Plaintiffs the new privilege log described herein, **no later than July 15, 2020**.

SIGNED this 2nd day of June, 2020.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al.*, | § | |
| | § | |
| | § | 6:16-CV-173-RP |
| Plaintiffs, | § | |
| | § | *Consolidated with* |
| v. | § | 6:17-CV-228-RP |
| | § | 6:17-CV-236-RP |
| BAYLOR UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**ORDER**

On June 2, 2020, United States Magistrate Judge Andrew W. Austin issued an order granting Plaintiffs' Motion to Compel, (Dkt. 795), and denying Baylor's Motion for Leave to Amend Answer, (Dkt. 815). (Order, Dkt. 845). Before the Court are Baylor's Objections and Statement of Appeal Regarding Magistrate Judge Austin's Order, (Dkt. 855), Plaintiffs' Response, (Dkt. 868), Dolores Lozano's[1] ("Lozano") Response, (Dkt. 885), and Baylor's Reply, (Dkt. 886). Baylor also filed a supplement to its Objections. (Supp., Dkt. 867).

This Court issued a preliminary order that (1) "if the Court denies any portion of Plaintiffs' Motion to Compel and/or grants any portion of Baylor's Motion for Leave to Amend Answer and Baylor nevertheless relies on or puts at issue evidence for which it has asserted work product protection—despite its representations to the Court that it will not do so—the Court would find that Baylor's conduct constitutes waiver of the work product protection. The consequences of that finding would be severe;" and (2) the parties shall submit simultaneous briefs presenting their arguments about the elements of Plaintiffs' and Lozano's Title IX pre-assault claims, including a

---

[1] This Court permitted Lozano to intervene in the consolidated cases for the limited purpose of responding to Baylor's Objections and Statement of Appeal. (Order, Dkt. 879).

1

clear and concise statement of the claim elements. (Order, Dkt. 916). The parties filed their briefs on

December 4, 2020. (Pls. Br., Dkt. 917; Lozano Br., Dkt. 918; Baylor Br., Dkt. 919).

With all of that briefing before the Court, as well as the record and the relevant law, the

Court will affirm in part and reverse in part Judge Austin's Order on Plaintiffs' motion to compel

and Baylor's motion for leave to amend.

## I. BACKGROUND

The appeal before this Court relates to two motions that are interconnected: Plaintiffs'

motion to compel, (Pls. Mot. Compel, Dkt. 795), and Baylor's motion for leave to amend its answer

in *Jane Doe 11 v. Baylor University*, (Baylor Mot. Am. Answer, Dkt. 815). In their Motion to Compel

Pepper Hamilton Work-Product, Plaintiffs argued that Baylor had waived work product protection

for materials pertaining to Pepper Hamilton's investigation and reform implementation. (Pls. Mot.

Compel, Dkt. 795). A bit of procedural history will help provide context for Plaintiffs' motion. In

addition to motion practice about the attorney-client privilege, this Court gave Baylor clear

instructions about work product early in the case. In 2017, the Court issued an order allowing Baylor

to withhold Pepper Hamilton work product unless Baylor "directly invoke[d] the Pepper Hamilton

investigation as part of a substantive defense to Plaintiffs' claim in the future." (Order, Dkt. 168, at

17). Should Baylor do that, the Court stated it would entertain another motion by Plaintiffs that re-

urged waiver.

In this more recent motion to compel, Plaintiffs contended that Baylor had done just that

through its pleadings and motion practice. For example, Plaintiffs cited Baylor's answer in the Doe

11 case in which "Baylor explicitly invoked the [Pepper Hamilton] investigation and work as proof"

that it made changes and "Baylor leaned into the Board [of Regents'] findings 'based on an

investigation conducted by the law firm Pepper Hamilton.'" (*Id.* at 2-3). Plaintiffs argued that Baylor

2

invoked the Pepper Hamilton investigation "as a defense to Doe 11's claims that Baylor had been intentionally noncompliant with Title XI, boasting that '[t]he same lawyers who conducted the Pepper Hamilton investigation and made the 105 recommendations worked with [Baylor] to meaningfully implement the changes.'" (*Id.* at 3, 9).

Plaintiffs also made a fairness argument: "Baylor's failure to comply with the attorney-client privilege communication waiver found by the Court also supports finding waiver of work-product." (*Id.* at 5). According to Plaintiffs, Baylor was not complying with previous court orders related to privileged Pepper Hamilton documents which has caused delay and Baylor's "obstinance" supported a finding that it "abused any right to protect these materials." (*Id.* at 10). Noting "Baylor's continued refusal to heed the Court's rulings," Plaintiffs argued that even if there are reasons to protect the Pepper Hamilton documents as work product, those reasons are overcome by Baylor's litigation conduct. (*Id.* at 11).

In response, Baylor countered that it is "not relying on the investigation as a defense in any way." (Resp. Mot. Compel, Dkt. 805, at 2). Baylor argued that it had "not put Pepper Hamilton's work product . . . directly at issue in this litigation, which is what the law would require to find waiver." (*Id.*). Baylor distinguished this case from employment cases in which the employer sought to avoid liability by arguing they had performed an internal investigation to address complaints by contending that the Pepper Hamilton report did not reveal Baylor's compliance with the law but "regrettably revealed the opposite: deficiencies." (*Id.* at 8). In other words, Baylor claimed it is not defending itself by relying on Pepper Hamilton's investigation. (*Id.*). Baylor also argued that Baylor will not rely on Pepper Hamilton's "implementation work or its view of the implementation as a defense in this litigation." (*Id.* at 12). Instead, Baylor represented that Baylor's implementation efforts will be relevant to whether it had a policy of intentional discrimination. (*Id.*). Finally, Baylor

defended its answer to Jane Doe 11's complaint—in which Baylor invokes Pepper Hamilton's 105 recommendations—as not mentioning "the lawyers or their work product as part of any defense or affirmative defense." (*Id.* at 12).

Related to Baylor's handling of Jane Doe 11's complaint, Baylor filed a motion for leave to file an amended answer in *Jane Doe 11*, No. 6:17-cv-228-RP. (Dkt. 815). In that motion, Baylor sought to "eliminate all references to Pepper Hamilton and its recommendations." (*Id.* at 1). Baylor argued it was "simply clarifying, to avoid any doubt, that it will not rely on the advice of Pepper Hamilton in its defense of this litigation." (*Id.* at 2). Instead, Baylor claimed it would rely on (1) Baylor's policies that were in place, (2) expert testimony on the adequacy of those policies, and (3) evidence and testimony about how Baylor responded to Jane Doe 11's report that she had been sexually assaulted. (*Id.* at 3).

In response, Plaintiffs argued that "Baylor made a clear decision to invoke [Pepper Hamilton] throughout this case, urging it as a grounds for dismissal of Jane Doe 11's claims, then fighting tooth and nail regarding discovery related to PH," which prolonged the case by years. (Resp., Dkt. 817, at 2). Plaintiffs explain that Baylor repeatedly relied on Pepper Hamilton documents in its motion to dismiss and quote extensively from Baylor's motion to dismiss to show how Baylor treated the Pepper Hamilton documents in its motion to dismiss. (*Id.* at 7). Rather than viewing Baylor's proposed amendment as a clarification, Plaintiffs characterized it as a "180-degree about face on its defenses." (*Id.* at 5). Plaintiffs also attacked Baylor's request as untimely, stating that Baylor asked for leave to amend almost 14 months after its answer was filed, "after use of [Pepper Hamilton] as grounds to dismiss Doe 11's claims, use to obstruct delay [sic] discovery, and well after the briefing on work-product waiver was submitted." (*Id.* at 2–3). Plaintiffs contended that

4

Baylor waited too long to move to amend its answer and that Baylor admitted that its move to amend was made in direct response to Plaintiffs' motion to compel. (*Id.* at 4).

Judge Austin set both motions—Plaintiffs' motion to compel, (Dkt. 795), and Baylor's motion for leave to amend its answer in *Jane Doe 11*, (Dkt. 815)—for a hearing. (Order, Dkt. 823). On May 5, 2020, Judge Austin held a hearing by video. (Minute Entry, Dkt. 832). On June 2, 2020, Judge Austin issued an order granting Plaintiffs' motion to compel and denying Baylor's motion for leave to amend its answer. (Dkt. 845). In his 48-page order, Judge Austin extensively and thoroughly analyzed the motions and their place in the "war over Pepper Hamilton's work product."[2] (*Id.* at 1). This Court will now turn to Baylor's appeal from Judge Austin's order.

## II. LEGAL STANDARD

A district judge may reconsider any pretrial matter determined by a magistrate judge where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). District courts apply a "clearly erroneous" standard when reviewing a magistrate judge's ruling under the referral authority of that statute. *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995). The clearly erroneous or contrary to law standard of review is "highly deferential" and requires the court to affirm the decision of the magistrate judge unless, based on the entire evidence, the court reaches "a definite and firm conviction that a mistake has been committed." *Gomez v. Ford Motor Co.*, No. 5:15-CV-866-DAE, 2017 WL 5201797, at *2 (W.D. Tex. Apr. 27, 2017) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). The clearly erroneous standard "does not entitle the court to reverse or reconsider the order simply because it would or could

---

[2] For brevity's sake, this Court will not repeat Judge Austin's comprehensive description of the factual background but evaluates it and finds no error. Indeed, Baylor does not appear to challenge Judge Austin's background on the case and the motions.

decide the matter differently." *Id.* (citing *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015)).

## III. DISCUSSION

In its appeal, Baylor makes six objections: (1) Baylor objects to the finding that it intends to rely on the factual findings of the investigation, and the recommended reforms, to defend itself at trial and thereby would place Pepper Hamilton's investigative and implementation work product at issue; (2) Baylor objects to the conclusion that it placed Pepper Hamilton's investigative work product at issue; (3) Baylor objects to the conclusion that Baylor's reliance on its post-investigation reform efforts puts Pepper Hamilton's implementation work-product at issue; (4) Baylor objects to the erroneous factual findings regarding Baylor's alleged discovery history which undergird the waiver ruling; (5) to the extent waiver is upheld, Baylor objects to the failure to connect the scope of the waiver to the information found to be at issue; and (6) Baylor objects to the denial of its motion for leave to amend the Jane Doe 11 answer as clearly erroneous. (Objs., Dkt. 855). The Court will consider whether any of these grounds of appeal establish that the magistrate judge's order was clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A).

### A. Pepper Hamilton Work Product

The Court starts its analysis by accepting Baylor's representation that Baylor will not rely on the factual findings or work product of the Pepper Hamilton investigation to defend itself in the future. (*See, e.g.*, Objs., Dkt. 855, at 6). Having accepted Baylor's representation, it bears repeating that: "if the Court denies any portion of Plaintiffs' Motion to Compel and/or grants any portion of Baylor's Motion for Leave to Amend Answer and Baylor nevertheless relies on or puts at issue evidence for which it has asserted work product protection—despite its representations to the Court that it will not do so—the Court would find that Baylor's conduct constitutes waiver of the work

product protection. The consequences of that finding would be severe. For example, the Court could (1) order Baylor to produce all documents that were previously protected by the work product doctrine; (2) reopen discovery, including ordering Baylor to respond anew to discovery requests and allowing Plaintiffs to take additional deposition testimony and/or reopen witness testimony at trial; (3) instruct the jury to draw an adverse inference, potentially a mandatory adverse inference; (4) impose costs and fees; (5) consider other appropriate sanctions; and (6) take any other actions within its power and discretion." (Preliminary Order, Dkt. 916, at 1–2).

While the Court accepts Baylor's representation about how Baylor will defend itself going forward, the Court disagrees that Baylor has not already put Pepper Hamilton's work product at issue. As a starting point, this Court finds that Judge Austin's overview of what constitutes putting work product at issue is not clearly erroneous or contrary to law. (*See* Order 845, at 15–18).[3] Applying it here, the Court focuses on Baylor's filings in the Jane Doe 11 case. Baylor contends that its motion to dismiss and answer in Jane Doe 11 "did not *rely* on the Pepper investigation, much less Pepper's work-product, in its defense." (Baylor Objs., Dkt. 855, at 11). Despite Baylor's protestations, it did more than "[m]erely referenc[e] the investigation." (Baylor Objs., Dkt. 855, at 12).

On February 5, 2018, Baylor filed a motion to dismiss in Jane Doe 11. (Mot. Dismiss, 6:17-cv-228, Dkt. 7). In its motion to dismiss, Baylor discussed the Pepper Hamilton investigation. For example, Baylor argued that it had taken "unprecedented action in its effort to prevent sexual assault by and against its students . . . including adopting and implementing all 105 of Pepper Hamilton's recommendations." (*Id.* at 3). Baylor made no distinction between Pepper Hamilton's

---

[3] Baylor largely does not object to Judge Austin's description of the current state of the law regarding what it means to put work product at issue for the Fifth Circuit and for other courts that have examined this issue. (Baylor Objs., Dkt. 855, at 10–11). Rather, Baylor objects to his application of the law to these cases. (*Id.* at 10–13).

recommendations and what Baylor implemented. (*See, e.g.*, *id.* ("after Baylor implemented *Pepper Hamilton's* recommendations") (emphasis added)). Baylor continued that by May 2017, it had "heavily publicized having implemented the 105 recommendations . . . given . . . by the Pepper Hamilton Law Firm" in an attempt to show that Baylor had made changes before Jane Doe 11's assault. (*Id.* at 7). Then to drive the point home, Baylor stated: "Plaintiff does not allege that her alleged assailant assaulted her *because* of Baylor's policy. In light of the Pepper Hamilton investigation and the resulting recommendations, the extensive press coverage of Baylor's efforts to implement [Pepper Hamilton's] recommendations, and the fact that sexual assault is a crime under Texas law, such an attenuated causation allegation would not be plausible anyway." (*Id.* at 19). Baylor made Pepper Hamilton's work product, including Pepper Hamilton's recommendations which it explicitly admitted it adopted, part of its defense in Jane Doe 11. Indeed, Baylor connected its defense to Pepper Hamilton's work after this Court had warned Baylor in 2017 that it would risk waiving work product protection if it "directly invoke[d] the Pepper Hamilton investigation as part of a substantive defense to Plaintiffs' claims in the future," (Order, Dkt. 168, at 17).

About a year later, Baylor filed its answer in Jane Doe 11. (Jane Doe 11 Answer, 6:17-cv-228, Dkt. 17). Baylor not only did not retreat from its reliance on Pepper Hamilton's work, but Baylor also defended itself in its answer by explicitly and repeatedly invoking Pepper Hamilton in no uncertain terms. Baylor stated that during and leading up to the time Jane Doe 11 attended Baylor (2014 to 2017), Baylor "was actively engaged in activities aimed at reducing the risk of sexual assault and providing resources and assistance to student who may have been assaulted. These substantial efforts included[:]

- In 2016, the Board of Regents published findings, based on an investigation conducted by the law firm Pepper Hamilton, stating that Baylor's Title IX compliance efforts during the period from 2012-2015 had been slow, uncoordinated, and ultimately deficient in light of evolving guidelines from the Department of Education. The Board

found university-wide failings that impacted Baylor's ability to consistently provide a prompt and equitable response to student claims during the period under review. However, the investigation also demonstrated that some areas of concern had already been addressed prior to the investigation.

- In May 2016, Pepper Hamilton made 105 recommendations to improve Baylor's Title IX efforts, which the Board adopted in their entirety. Baylor immediately initiated a coordinated, University-wide action plan to implement the recommendations.

- The same lawyers who conducted the Pepper Hamilton investigation and made the 105 recommendations worked with the University to meaningfully implement the changes.

- In May 2017, the Board of Regents announced the structural completion of the implementation of all 105 recommendations and released a comprehensive report, called *Our Commitment. Our Response. Our Progress*, outlining Baylor's Title IX initiatives and programs."

(*Id.* at 6–7) (exhibit references omitted).

In this instance, the Court finds that Baylor did more than refer to Pepper Hamilton's investigation and recommendations; Baylor relied on Pepper Hamilton's work product in defending the lawsuit brought by Jane Doe 11. As discussed by Judge Austin, Baylor relied on Pepper Hamilton's "investigation and implementation work to assert that Baylor was not deliberately indifferent or intentionally discriminatory." (Order, Dkt. 845, at 23). Baylor invoked and relied on Pepper Hamilton's work in its defense by raising Pepper Hamilton's investigation despite the Court's warnings about invoking Pepper Hamilton. In its answer, Baylor described what the Board of Regents did "based on" Pepper Hamilton's investigation; explained the outcome of Pepper Hamilton's investigation in detail ("105 recommendations to improve Baylor's Title IX efforts"), alleged that Baylor adopted those recommendations "in their entirety;" claimed that Baylor "initiated a coordinated, University-wide action plan to implement [Pepper Hamilton's] recommendations;" relied on the "same lawyers who conducted the Pepper Hamilton investigation and made the 105 recommendations" to work with Baylor to implement the recommended changes; asserted that

Baylor implemented all of those recommendations and publicly announced the completion of the implementation; described in detail some of the changes made; stated that the "same lawyers who made the 105 recommendations" then "published a draft detailed report of Baylor's improvements" which was finalized a month later; and explicitly summarized those efforts by stating: "[t]hese positive and substantial efforts in no way equate with an institutional intent to subject female students to harm." (Jane Doe Answer, 6:17-cv-228, Dkt. 17, at 6–8). Baylor's own words show that Baylor relied on Pepper Hamilton's work as part of its defense in Jane Doe 11. Baylor therefore has waived work product protection for Pepper Hamilton's investigation and reform implementation in that case. The Court affirms Judge Austin's order as to Jane Doe 11.[4]

Baylor also objects to the scope of wavier found by Judge Austin. Baylor argues that if this Court upholds waiver in the Jane Doe 11 case, the Court should exclude documents that were part of Pepper Hamilton's investigation. (Objs., Dkt. 855, at 34). Essentially, Baylor contends that Pepper Hamilton's investigation is not relevant because the inquiry in Jane Doe 11 would be "forward-looking: whether Baylor's reforms created a 'heightened risk' that caused injury to Jane Doe 11." (*Id.*). Baylor mischaracterizes the inquiry in this case. Jane Doe 11 alleges she was sexually assaulted in April 2017. (Jane Doe Compl., 6:17-cv-228, Dkt. 1, at 11). It was only after Jane Doe 11's alleged sexual assault that Baylor announced that it had completed its reforms by implementing all 105 recommendations from Pepper Hamilton. (*See* Jane Doe 11 Answer, 6:17-cv-228, Dkt. 17, at 6) ("In May 2017, the Board of Regents announced the structural completion of the implementation of all 105 recommendations."). Moreover, Baylor relied on Pepper Hamilton's investigation as part of its

---

[4] Based on the record and the arguments presented by the parties, the Court vacates Judge Austin's work product waiver finding as to the cases brought by Jane Does 1-10 and Jane Does 12-15. The Court's ruling is limited to the bases raised by Plaintiffs. For example, the Court notes that Plaintiffs did not argue that Pepper Hamilton's work product is discoverable under Federal Rule of Civil Procedure 26(b)(3). (*See* Order, Dkt. 845, at 34) (noting that Pepper Hamilton's work product is "arguably discoverable under Rule 26(b)(3), as the record suggests Plaintiffs have a substantial need for it, and there is no other way for them to obtain it").

defense, describing it as one of the many efforts it had taken to "reduc[e] the risk of sexual assault and provid[e] resources and assistance to students who may have been assaulted" and describing Pepper Hamilton's investigation, including that Pepper Hamilton "made 105 recommendations to improve Baylor's Title IX efforts." (*Id.* at 5–6). If Pepper Hamilton's investigation was not connected to the inquiry, then Baylor would not have invoked the investigation as part of its defense. But Baylor did invoke Pepper Hamilton's investigation, and its invocation led to waiver of work product.

The Court therefore affirms the scope of waiver found by Judge Austin. In Jane Doe 11, Baylor has waived the attorney work product protection for all Pepper Hamilton documents and must produce those documents without delay and without work product redactions. Moreover, in that case, witnesses may testify about Pepper Hamilton documents and Pepper Hamilton's investigation, findings, recommendations, and implementation work, including drafts. The only nondiscoverable Pepper Hamilton documents would be materials that Pepper Hamilton did not consider when doing its work; internal emails or communications between Pepper Hamilton attorneys that were not also sent to a Baylor representative; legal research by Pepper Hamilton attorneys; materials Pepper Hamilton attorneys prepared to aid in conducting witness interviews; and notes taken by Pepper Hamilton attorneys during interviews. However, if a document merely contains an attorney comment, the document must be produced, and the attorney note may be redacted.

### B. Lozano's Response to Baylor's Objections

Lozano's response to Baylor's Objections focuses on a different aspect of work product— whether Lozano has a substantial or compelling need for ordinary work product documents under Federal Rule of Civil Procedure 26(b)(3). (Lozano Resp., Dkt. 885). Lozano argues that Pepper

Hamilton's work product is relevant to her and Plaintiffs' claims and she and Plaintiffs have a substantial need for it. (*Id.* at 10–12). Lozano quotes a footnote in Judge Austin's order, where Judge Austin noted that Pepper Hamilton's work product is "arguably discoverable under Rule 26(b)(3)" because, regardless of whether Baylor put the Pepper Hamilton materials at issue, Plaintiffs "arguably have a compelling need to obtain" them. (*Id.* at 11) (quoting Order, Dkt. 845, at 34). In their motion to compel, Plaintiffs did not make an argument under Rule 26(b)(3); instead, they argued Baylor waived work product protection. (*See* Mot. Compel, Dkt. 795). Therefore, a motion pursuant to Rule 26(b)(3) is not currently before this Court.

Similarly, Lozano contends that she and Plaintiffs are entitled to discover the underlying facts learned during Pepper Hamilton's investigation. (Lozano Resp., Dkt. 885, at 13–14). Lozano believes she is entitled to purely factual information uncovered by Pepper Hamilton. (*Id.* at 13). For example, Baylor should turn over information about personnel decisions, including decisions about Ian McCaw and Art Briles's employment, as it formed the basis of the "'Findings of Fact' and Pepper Hamilton's recommendations adopted by the Board." (*Id.* at 14). According to Lozano, Baylor is "cloaking" discoverable documents as work product "just because the Regents learned about it from Pepper Hamilton." (*Id.*). Baylor responds that it agrees Lozano and Plaintiffs are entitled to the facts learned during Pepper Hamilton's investigation and contends that Plaintiffs have access to "*all* the 'facts learned'—Lozano has Baylor's document production and has the ability to depose any witness that Pepper [Hamilton] interviewed." (Baylor Reply to Lozano, Dkt. 886, at 3). Again, the Court is currently considering Plaintiffs' motion to compel and whether Baylor waived work product protection for Pepper Hamilton materials, not whether Baylor has failed to produce or has improperly restricted Lozano's ability to access the underlying factual information that may have informed or formed the basis for Pepper Hamilton's work.

Finally, Lozano criticizes Baylor's "misapprehen[sions]" and "mischaracteriz[ations]" of her and Plaintiffs' Title IX pre-assault claims. (Lozano Resp., Dkt. 885, at 2–10). Lozano's concerns are well taken and will be discussed below in Section D, *infra*.

### C. Baylor's Attempt to Amend Its Answer in Jane Doe 11

Baylor filed answers in all of the Doe cases. (Answer, 6:16-cv-173, Dkt. 88; Answer, 6:17-cv-228, Dkt. 17; Answer, 6:17-cv-236, Dkt. 40). Baylor's answer in Jane Doe 11, however, stands out among the others because of Baylor's explicit and repeated reliance on Pepper Hamilton's work product to defend itself against Plaintiffs' allegations. Baylor filed that answer on January 25, 2019 and made no attempt to amend it until more than one year later, on March 23, 2020. (*See* Mot. Amend, Dkt. 815). Baylor asked to amend its answer *after* Plaintiffs' motion to compel pointed to Baylor's answer in Jane Doe 11 as being replete with references to Pepper Hamilton materials and Baylor having made Pepper Hamilton part of its defense during almost three years of litigation in Jane Doe 11.

A motion to amend an answer cannot be used as a tool to later modify the scope of the work product doctrine to suit the current needs of a case. If the Court allowed Baylor to use a motion to amend in that manner and at this juncture, it would effectively eviscerate the idea that a pleading can put certain information in play and outside the protection of the work product doctrine. It bears repeating, again, that the Court warned Baylor in 2017 that it would risk waiving work product protection if it "directly invoke[d] the Pepper Hamilton investigation as part of a substantive defense to Plaintiffs' claims in the future." (Order, Dkt. 168, at 17). Yet, Baylor did just that in its Jane Doe 11 answer and cannot use a motion to amend in 2020 to try to fix its blunder.

Rule 15 provides that a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Allowing Baylor to amend would be contrary to the interests of justice. Plaintiffs have

relied on Baylor's defenses in this case for years, as Baylor initially raised it in its motion to dismiss on February 5, 2018, (Dkt. 7), and then again in its answer on January 25, 2019, (Dkt. 17). Plaintiffs opposed Baylor's request to amend, in part, as "undeniably prejudicial." (Resp. Mot. Amend., Dkt. 817, at 8–9). As Plaintiffs argue, Baylor moved to amend two years after using Pepper Hamilton as grounds to dismiss Jane Doe 11's claims, more than a year after its answer was filed, and "well after the briefing on work-product waiver was submitted." (*Id.* at 2–3). Baylor gave no explanation for its delay to "clarif[y]" its position. (Mot. Amend, Dkt. 815, at 2). The Court agrees with Judge Austin that "Baylor has had more than enough time to settle on a defense to this case . . . [and] was on notice of the impact relying on Pepper Hamilton's work would have." (Order, Dkt. 845). Baylor knowingly imperiled work product protection for the Pepper Hamilton documents when it invoked Pepper Hamilton's work as part of its defense and cannot rid itself of that position now that it understands the consequences. The Court affirms Judge Austin's ruling denying Baylor leave to amend its answer in Jane Doe 11.

### D. Claim Elements

The Court next turns to the question of the claims in this case and what Plaintiffs must show at trial to prevail. In her response to Baylor's objections, Lozano argues that "her good faith discovery efforts to support her claims [have been] repeatedly thwarted by Baylor" and that "Baylor use[d] its objections . . . as a vehicle for advancing its strategy to undermine the plaintiffs' heightened risk claims by attempting to lead the Court erroneously into applying a Section 1983 municipal liability analysis." (Lozano Resp., Dkt. 885, at 1–2). Baylor disagrees with Lozano's characterization but states that "it does demonstrate the need for this Court to articulate the elements of Plaintiffs' claims." (Baylor Reply to Lozano, Dkt. 886, at 7). In its Preliminary Order, the Court, in response to Lozano's Response and Baylor's Reply, ordered the parties to each file a short brief regarding "the

14

elements of Plaintiffs' and Lozano's Title IX pre-assault claims" to afford the Court an opportunity to clarify, if necessary. (Order, Dkt. 916). Although not technically part of the motions that were before Judge Austin, the question of claim elements is connected to Pepper Hamilton work product, and the Court desires to make it as clear as possible what Plaintiffs and Lozano must prove at trial.

Plaintiffs allege two theories of liability for Baylor's conduct before each Plaintiff's sexual assault: (1) "Baylor maintained intentional policies and customs that subjected Plaintiffs to a discriminatory educational environment, which included, but was not limited to rendering them vulnerable to sexual assault" and (2) "Baylor's intentional policies and customs heightened the risk of sexual assault on campus, that Baylor had notice of this and was deliberately indifferent, and therefore the school is liable for the acts of harassment each Plaintiff was subjected to." (Pls. Br., Dkt. 917, at 1). Plaintiffs point out that the Court already addressed the viability of Plaintiffs' claims in its ruling on Baylor's motions to dismiss. (*See* Orders, Dkt. 78, at 15–17; Jane Doe 11 Order, 6:17-cv-228, Dkt. 14, at 14–21; Jane Does 12-15 Order, 6:17-cv-236, Dkt. 35, at 18–24).

Specifically, Plaintiffs urge this Court to adopt the following claim elements for Plaintiffs' claim of intentional policy or custom: (1) a federally funded educational institution[5] (2) intended (3) to exclude from participation in, deny the benefits of, or subject to discrimination (4) female students (5) from any education program or activity (6) on the basis of sex. (Pls. Br., Dkt. 917, at 2). Plaintiffs intend to prove that Baylor intentionally violated Title IX. (*Id.* at 4). Plaintiffs provide preliminary proposed jury questions and instructions for liability. (*Id.* at 4–5). For their deliberate indifference claim, Plaintiffs urge the Court to follow the framework set out in *Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093 (9th Cir. 2020). The *Karasek* Court determined that a pre-assault claim in an educational setting requires a plaintiff to prove: "(1) a school maintained a policy of deliberate

---

[5] This element is not in dispute.

indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual

harassment (3) in a context subject to the school's control, and (4) the plaintiff was harassed as a

result." 948 F.3d at 1169. Plaintiffs provide a proposed jury question, as well. (Pls. Br., Dkt. 917, at

9).

      Lozano similarly notes that this Court has "repeatedly recognized" her and Plaintiffs' claims

for heightened risk based both on "an official policy of discrimination *and* 'pre-assault' deliberate

indifference." (Lozano Br., Dkt. 918, at 1). Lozano requests that the Court "adopt and apply the

framework for heightened risk claims set out by the Ninth Circuit in *Karasek*." (*Id.* at 11). Lozano

explains how *Karasek* fits within the Supreme Court's jurisprudence on Title IX claims and argues

that the Ninth Circuit rejected the University of California's attempt to impose an "actual

knowledge" notice standard. (*Id.* at 2–3). Lozano acknowledges that the Tenth Circuit, in *Simpson v.

University of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007), analogized to *Monell*,[6] though it "did not

apply the stringent 'final policymaker' analysis Baylor insists it did." (Lozano Br., Dkt. 918, at 10–

11). Lozano also raises *Doe v. University of Tennessee*, 186 F. Supp. 3d 788 (M.D. Tenn. 2016). There,

the Middle District of Tennessee followed *Simpson* in deciding the university's motion to dismiss in

case where several women—who alleged they had been subjected to sexual assault by football and

basketball team members—claimed the university was aware of assaults for more than twenty years.

(*Id.* at 792, 794–800). Lozano also addresses *Poloceno v. Dallas Independent School District*, 826 Fed.

App'x 359 (5th Cir. 2020), where the Fifth Circuit clarified that it has "never recognized a general

'heightened risk' of sex discrimination" and recognized that other circuits have limited heightened

risk claims to "context in which students committed sexual assault on other students," an allegation

that was not present in *Poloceno*. (*Id.* at 6–7). Lozano also notes many district courts, in and outside

---

[6] *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).

the Ninth Circuit, that have followed *Karasek*, including the Southern District of Texas. (*Id.* at 8–9).

Lozano concludes by distinguishing between Title IX liability and Section 1983 liability. (*Id.* at 10).

Baylor presents an opposing view of Plaintiffs' and Lozano's pre-assault claims. Baylor

believes they must show:

> (1) Actionable Sexual Harassment Leading to Loss of Educational Benefits: The plaintiff must show: (a) that she experienced sexual harassment that was so severe, pervasive, and objectively offensive that (b) it had the systemic effect of denying the plaintiff equal access to an educational program or activity of the university.

> (2) University Control: Plaintiff must show that the sexual harassment occurred while she and the alleged offender were participating in an education program or activity of the university. The university must have exercised substantial control over both the alleged offender and the context in which the harassment occurred.

> (3) Causation - Four Pathways: Plaintiff must prove that the university caused the assault and loss of educational benefits. Causation can be established in one of four ways:

> (a) Prior to the assault, (i) an official with authority to take corrective action knew that the alleged offender had engaged in sexual misconduct toward the plaintiff or others and knew that there was a substantial risk of serious harm, and (ii) the official was deliberately indifferent to that risk, and, as a result, plaintiff was sexually assaulted resulting in the loss of educational benefits.

> (b) Prior to the assault, (i) an official with authority to take corrective action knew that sexual harassment was occurring in a specific university program or activity and knew that, without administrative intervention, the program presented a substantial risk of serious harm, and (ii) the official was deliberately indifferent to that risk, and, as a result, plaintiff was sexually assaulted, resulting in the loss of educational benefits.

> (c) Prior to the assault, the board of regents or other university official with unreviewable policymaking authority adopted an official policy that directly caused the assault resulting in the loss of educational opportunity or benefits.

> (d) Prior to the assault, the board of regents or other university official with unreviewable policymaking authority was aware of and sanctioned a widespread and well settled practice of university employees responding with deliberate indifference to student sexual assaults, which had occurred for so long or so frequently that it was the expected practice of employees; (ii) the custom created a heightened risk about which the final policymaker was aware; and (iii) the custom was the moving force that caused plaintiff's assault resulting in loss of educational benefits.

17

(Baylor Br., Dkt. 919, at 2–3).

     Baylor insists that Plaintiffs and Lozano must prove that "prior to her assault, an official with authority to discipline knew that a *specific student* posed a substantial risk of serious harm but the official responded with deliberate indifference, which subjected plaintiff to harm," (*id.* at 5–6), or that, adopting Section 1983's policymaker standard, Plaintiffs and Lozano must demonstrate that "prior to her assault, the [Baylor Board of Regents] or other university official with unreviewable policymaking authority adopted a policy that was the 'moving force' behind the plaintiff's injury," (*id.* at 7), or, purportedly following *Simpson* and other cases, Plaintiffs and Lozano must demonstrate that, "prior to her assault, the [Baylor Board of Regents] or other university official with unreviewable policymaking authority was aware of the custom and was deliberately indifferent to the risk, and that the custom was the moving force that caused plaintiff's injury," (*id.* at 10).

     Baylor rejects the "alternative approach" taken in *Karasek*. (*Id.* at 11). Baylor contends that the Ninth Circuit "failed to consider Spending Clause principles, . . . provides no method for attributing a *de facto* policy to the funding recipient[, and] failed to acknowledge its own circuit precedent, which adopted the "final policymaker" approach." (*Id.*). Baylor prefers the *Simpson* model which it sees as being in contrast to *Karasek*. (*Id.*).

     As noted by Plaintiffs and Lozano, this Court already has recognized Plaintiffs' and Lozano's pre-assault theories. In its orders on motions to dismiss, this Court considered Baylor's arguments that Plaintiffs and Lozano's allegations were insufficient to state a claim. In *Jane Does 1-10*, the Court looked to Supreme Court precedent, considered the Tenth Circuit's decision in *Simpson*, and found that Does 1-10's claims "fit squarely within the official-policy rubric previously identified by the [Supreme] Court." (Order, Dkt. 78, at 15). This Court stated that it was, and remains, "sensitive to concerns that application of this rubric to claims involving a school-wide risk of sexual assault may

18

be taken to imply that higher education institutions, due to the prevalence of sexual assault among college-aged individuals, would face near-constant liability. . . . But the official-policy rubric's extension of liability is limited by its demand that plaintiffs demonstrate the misconduct complained of was 'not simply misconduct that happened to occur [at the school] among its students . . . but was in fact caused by an official policy or custom of the university.'" (*Id.* at 16) (quoting *Simpson*, 500 F.3d at 1177).

In its order on Baylor's motion to dismiss in *Jane Does 12-15*, the Court evaluated Baylor's arguments that Does 12-15 failed to raise sufficient allegations to pursue their pre-assault claims. *Does 12-15 v. Baylor University*, 336 F. Supp. 3d 763 (W.D. Tex. 2018). The Court explained, in detail, that Baylor relied on arguments that were not supported by the applicable case law. *Id.* at 780–82. This Court concluded that Does 12-15's allegations, "construed as true, raise a right to relief above the speculative level that Baylor's policy or custom of inadequately handling and even discouraging reports of peer sexual assault constituted an official policy of discrimination that created a heightened risk of sexual assault, thereby inflicting the injury of which Plaintiffs complain." *Id.* at 783 (omitting quotation marks and citation)). Several months later, in *Jane Doe 11*, this Court rejected Baylor's arguments in its motion to dismiss Jane Doe 11's Title IX claims finding that Jane Doe 11 had a right to relief for Baylor's alleged "inadequate handling of reports of peer sexual assault [that] continued even after the adoption of certain reforms[,] constituted an official policy of discrimination, and created a heightened risk of sexual assault for students, thereby inflicting the injury of which Plaintiff complains." (Order, Jane Doe 11, 6:17-cv-228, Dkt. 14, at 21). Likewise, in *Lozano*, the Court found that Lozano plausibly alleged pre-assault claims and denied Baylor's motion to dismiss. *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 880–83, 904 (W.D. Tex. 2019).

Since this Court issued orders in 2017, 2018, and 2019, Title IX law in this area has filled out more, most notably with the Ninth Circuit's decision in *Karasek*. 956 F.3d 1093. In that case, three undergraduates (the "Students") at the University of California, Berkeley ("Berkeley") were sexually assaulted and brought Title IX claims, including pre-assault claims. *Id.* at 1099. The Students alleged that Berkeley "maintained a policy of deliberate indifference to sexual misconduct that created a sexually hostile environment for [them] and heightened the risk that [they] would be sexually assaulted." *Id.* at 1111-12 (internal quotation marks omitted). Similar to Baylor's position in this case, Berkeley argued that the Students' "pre-assault theory of Title IX liability 'fails as a matter of law' because it is 'contrary to Supreme Court precedent.'" *Id.* at 1112 (ellipse omitted). The district court agreed. *Id.* The Ninth Circuit vacated and held that the Students' claim was a cognizable theory of Title IX liability. *Id.*

In reaching their holding, the Ninth Circuit parsed the Tenth Circuit's decision in *Simpson*, 500 F.3d 1170. In *Simpson*, the Tenth Circuit confronted the same legal question as to whether a plaintiff must allege and show actual notice on the part of a university to successfully pursue a pre-assault claim. The facts there were that two students at the University of Colorado Boulder were sexually assaulted by football players and recruits. *Id.* at 1173. "Part of the sales effort was to show recruits 'a good time.' To this end, recruits were paired with female 'Ambassadors' . . . . At least some of the recruits who came to [plaintiff's] apartment had been promised an opportunity to have sex." *Id.* At the time, "there were a variety of sources of information suggesting the risks that sexual assault would occur if recruiting was inadequately supervised [and the] local district attorney initiated a meeting with top [university] officials, telling them that [the university] needed to develop policies for supervising recruits and implement sexual-assault-prevention training for football players. Yet [the university] did little to change its policies or training following that meeting." *Id.* Moreover, the

20

coaching staff had been informed of sexual harassment and assault by players and "responded in ways that were more likely to encourage than eliminate such misconduct." *Id.* at 1173–74.

The plaintiffs sought relief under Title IX, claiming that the university "knew of the risk" and "failed to take any action to prevent further harassment *before* their assaults." *Id.* at 1174 (emphasis added). The district court granted summary judgment in favor of the university, finding that the plaintiffs failed to establish actual notice and deliberate indifference. *Id.* The Tenth Circuit reversed and held that a federal funding recipient, like the university in that case, has "'intentionally acted in clear violation of Title IX' when the violation is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient." *Id.* at 1178 (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999)). The *Simpson* Court reasoned that the "notice standards established for sexual-harassment claims in *Gebser*[7] and *Davis*"[8] did not apply because "the institution itself, rather than its employees (or students), [is] the wrongdoer." *Id.* at 1177–78. In *Karasek*, the Ninth Circuit found that *Simpson*, and the *Gebser* and *Davis* cases, "supports imposing Title IX liability when a school's official policy is one of deliberate indifference to sexual harassment in any context subject to the school's control." 956 F.3d at 1113. While the *Simpson* facts centered on establishing a causal link between the university's policy of deliberate indifference and the underlying harassment in a particular university department, *Karasek*

---

[7] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) (holding that a recipient of federal funds may be liable under Title IX where it is deliberately indifferent to known acts of sexual harassment by a teacher).
[8] 526 U.S. 629, 642, 646–47 (noting that Supreme Court precedent "does not bar a private damages action under Title IX where the funding recipient engages in intentional conduct that violates the clear terms of the statute" and concluding that "recipients of federal funding may be liable for subjecting their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority") (internal quotation marks omitted).

concluded that a plaintiff "could adequately allege causation even when a school's policy of deliberate indifference extends to sexual misconduct occurring across campus." *Id.*

Based on its thorough analysis of *Simpson*, *Gebser*, and *Davis*, the Ninth Circuit held that a "pre-assault claim should survive a motion to dismiss if the plaintiff plausibly alleges that (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was 'so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school.'" *Id.* (quoting *Davis*, 526 U.S. at 650). The heightened risk must be known or obvious even if the school did not have actual knowledge of a particularized risk. This Court finds *Karasek*'s reasoning and holding persuasive.

Furthermore, the Fifth Circuit has not foreclosed the possibility of the heightened risk theory in Title IX cases with similar facts. In *Poloceno*, the Fifth Circuit noted that it has not "recognized or adopted a Title IX theory of liability based on a general 'heightened risk' of sex discrimination" and declined to do so in that case. The plaintiff in *Poloceno*, unlike Plaintiffs and Lozano, brought a Title IX sex discrimination claim against the Dallas Independent School District because her 11-year-old daughter developed rhabdomyolysis, the breakdown of muscle tissue, from doing hundreds of ceiling jumps as punishment for failing to wear proper gym clothes to PE class. 826 F. App'x at 361. Although the Fifth Circuit declined to recognize a claim for "general heightened risk of sex discrimination," it noted that its sister circuits do recognize such a claim in the context of sexual assault on other students. *Id.* at 363. Likewise, the Southern District of Texas, in *Roe v. Cypress-Fairbanks Independent School District*, considered a student's Title IX claim against a school district stemming from a sexual assault in a stairwell at school by another student. No. CV H-

22

18-2850, 2020 WL 7043944, at *3–4 (S.D. Tex. Dec. 1, 2020). The *Roe* Court considered *Karasek*, *Simpson*, and this Court's orders on Baylor's motions to dismiss and applied the *Karasek* factors to determine whether to grant summary judgment in favor of the school district. *Id.* at *10–14. The court found that plaintiff failed to raise genuine issues of material fact on three of the four *Karasek* factors. *Id.* at 14.

This Court, like many courts across the country both within the Ninth Circuit, outside of it, and within the Fifth Circuit, believes the *Karasek* factors fit within the Supreme Court's Title IX jurisprudence and represent a workable and fair framework for pre-assault Title IX claims like those brought here.[9] (*See* Lozano Br., Dkt. 918, at 8–9) (citing *Barlow v. Washington*, No. C20-5186 BHS, 2020 WL 7028061 (W.D. Wash. Nov. 30, 2020); *D.G. v. Tucson Unified Sch. Dist.*, No. CV-18-00583-TUC-JGZ(MSA), 2020 WL 7041348 (D. Ariz. Nov. 30, 2020); *Barnett v. Kapla*, No. 20-cv-03748-JCS, 2020 WL 6737381 (N.D. Cal. Sept. 28, 2020); *Dutchuk v. Yesner*, No. 3:19-cv-136-HRH, 2020 WL 5752848 (D. Alaska Sept. 25, 2020)); *see also Posso v. Niagara Univ.*, No. 19-CV-1293-LJV-MJR, 2021 WL 485699, at *7 (W.D.N.Y. Feb. 10, 2021) (positively citing and examining *Karasek*'s framework); *Reed v. S. Ill. Univ.*, No. 3:18-CV-1968-GCS, 2020 WL 3077186, at *5–7 (S.D. Ill. June 10, 2020) (recognizing a pre-assault official policy claim and analyzing allegations under *Karasek*) ("To suggest that Supreme Court precedent does not recognize an official policy claim is unsupported by precedent and analysis in other Circuits."). Without prejudice to the parties having full opportunities in the future to urge jury instructions and questions that they believe are supported by the law, the

---

[9] While Baylor may believe this Court should impose an actual notice standard, Baylor discounts the challenges of meeting the factors outlined in *Karasek*. Like the Ninth Circuit, this Court views the *Karasek* framework as imposing a causality requirement that is not easy to satisfy. *See Karasek*, 956 F.3d at 1114 ("We reiterate that Title IX does not require [the university] to purge its campus of sexual misconduct to avoid liability. A university is not responsible for guaranteeing the good behavior of its students. The element of causation ensures that Title IX liability remains within proper bounds. To that end, adequately alleging a causal link between a plaintiff's harassment and a school's deliberate indifference to sexual misconduct across campus is difficult.") (citations omitted).

Court will rely on the *Karasek* framework for pre-assault claims brought against Baylor in Title IX cases on its docket.

## IV. CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Baylor's Objections and Statement of Appeal Regarding Magistrate Judge Austin's June 2, 2020 Order, (Dkt. 855).

Accordingly, the Court **AFFIRMS IN PART** and **REVERSES IN PART** Judge Austin's June 2, 2020 order. (Dkt. 845). This Court **REVERSES** the order with respect to the finding of waiver of the work product doctrine in Plaintiffs' cases other than the Jane Doe 11 case. In addition to adopting Judge Austin's factual and procedural summary and description of the law of the work product doctrine and its waiver, the Court **AFFIRMS** Judge Austin's order in all other respects, including: (1) the finding that Baylor waived work product protection for Pepper Hamilton documents in the Jane Doe 11 case; (2) the scope of that waiver (but now only in the Jane Doe 11 case); and (3) the denial of Baylor's motion for leave to amend its answer in the Jane Doe 11 case.

**IT IS ORDERED** that, in the Jane Doe 11 case, Baylor produce, without delay, all Pepper Hamilton documents—including all documents logged as Pepper Hamilton work product on Baylor's privilege logs—in accordance with this Order.

**IT IS FINALLY ORDERED** that the parties shall confer and reach an agreement about the timing and logistics of the production of Pepper Hamilton documents on or before **August 12, 2021**. Again, the Court emphasizes that it expects Baylor to comply with this Order expeditiously.

**SIGNED** on August 5, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

24

**WSH** | WEISBART SPRINGER HAYES

**Julie A. Springer**
jspringer@wshllp.com
direct 512.652.5782

August 27, 2021

**VIA ECF**
The Honorable Robert Pitman
United States District Court
501 West 5th Street, Suite 5300
Austin, Texas 78701

> Re:   Cause No. 6:16-CV-00173-RP, *consolidated with* 6:17-CV-228-RP and 6:17-CV-236-RP; *Jane
> Doe 1 et al v. Baylor University, et al.*; In the United States District Court for the Western
> District of Texas

Dear Judge Pitman:

Pursuant to the Court's August 23, 2021 Order (Dkt. 988), the parties have conferred on the timing and logistics of the production of Pepper Hamilton's work product materials. The parties jointly file this letter brief to advise the Court as directed. Baylor's positions are listed first and then Plaintiffs' positions to all of Baylor's contentions are outlined at the end of this Advisory.

## *BAYLOR'S POSITION*

## I.   <u>Timing and Logistics of Production</u>

Baylor has proposed a production date of one week after Baylor's mandamus petition at the Fifth Circuit is finally resolved or October 8, 2021, whichever is later. The reason for the proposed date is because it will take time for Baylor to complete the review of the thousands of privileged Pepper Hamilton documents, primarily for two reasons: (i) to identify any documents that will result in Baylor having to send FERPA notices to affected students based on this Court's recent July Order, Dkt. 987, directing such notice; and (ii) to identify documents that are excluded from the ruling as set forth on page 11 of the Court's August 5 Order. Baylor has informed Plaintiff's counsel that if it appears that Baylor will not be able to meet this deadline because, for example, some of its' counsel or their staff contract COVID or have to quarantine, or have other unforeseeable emergencies, they will immediately inform Plaintiff's counsel and the Court of any need for additional time.

Baylor has proposed the October 8 production date based on the assumption that the Fifth Circuit upholds this Court's waiver ruling without modification. Should the Fifth Circuit modify the scope of the waiver ruling, Baylor may need additional time to re-analyze and produce documents consistent with the Fifth Circuit's ruling, and the parties will confer again on the timing of production, if needed, at that time.

Baylor has agreed it will coordinate production through UnitedLex. However, UnitedLex only has documents in its possession through February 22, 2017. The August 5 waiver order extends through November 6, 2017. Baylor will produce the documents within the scope of the waiver ruling through this second time period directly to Plaintiff. Baylor will produce documents that are subject to the Court's waiver ruling and in UnitedLex's possession through UnitedLex. Baylor will report the Control Number of any documents that have no redactions to UnitedLex, and UnitedLex will produce



both the Pepper Hamilton and the Baylor versions for those documents directly to Plaintiffs. For those documents that contain redactions (because of other privileges which may apply and FERPA objections that may be lodged to their production by third parties), Baylor will report the Control Number of such documents to UnitedLex along with direction as to the material to be redacted. UnitedLex will conduct the redactions on both the Pepper Hamilton and Baylor versions and directly produce same to Plaintiffs. As to any documents that were subject to FERPA notices, Baylor will direct UnitedLex to produce the documents once the FERPA objections are resolved. There is no need for any comparison since Baylor agrees to allow the production through UnitedLex.

Additionally, Baylor's proposed production date is the date by which Baylor will provide to UnitedLex the Control Numbers of the documents to be produced, as well as instructions on redactions (subject to any documents that may need to be withheld from production pending the Court's ruling on FERPA objections). Because UnitedLex is a third party not under Baylor's control, Baylor cannot agree to how long it will take UnitedLex to redact and produce the documents once they have received that information from Baylor.

Finally, Plaintiff proposes that UnitedLex produce the 3,576 previously or newly logged documents for which UnitedLex reported there was no match/comparison of a Baylor document with a Pepper document. As outlined above, to the extent those documents fall within the scope of the August 5 Order, Baylor will provide UnitedLex the Control Numbers so they can do so. To the extent they are privileged on some other basis, such as they relate to third-party litigation, etc., they will not be produced.

## II.    Scope of Production

Plaintiff has included a statement on "Scope of Production" below referencing "other statements" by Baylor's counsel (not cited) which indicate that Baylor has some confusion about the scope of the Court's waiver order and that it believes the scope of the waiver order is "narrow and the exceptions are broad." The undersigned, who is the only person who has spoken to Plaintiff's counsel on this issue, has never made any such statements. Baylor's position, as Plaintiff has quoted it from the mandamus filing, is correct. There is no discrepancy to reconcile. Baylor will comply with this Court's August 5 Order.

## III.    FERPA Notices

Baylor is already in the process of preparing FERPA notices pursuant to this Court's recent July 16, 2021 Order (Dkt. 987) in the event this Court's waiver ruling is upheld by the Fifth Circuit. However, Baylor does not believe it is appropriate to send these notices to potentially affected students unless and until their records are actually set to be released. First, as a matter of judicial efficiency, it does not make sense to burden this Court with having to rule on potential FERPA objections from students whose records may never be produced depending upon the disposition of Baylor's work product objection. Second, FERPA notices to non-party students cause stress and anxiety about the release of their sensitive, personal information—particularly, those students who are victims of sexual assault. There is no reason to put non-party students through this stress or the FERPA objection



August 27, 2021
Page 3

---

process unless and until it is determined that their records are being released. Finally, once the FERPA notices are sent, the objection period under this Court's most recent order is only 10 days. There will be very little delay in the production of documents as a result of sending FERPA notices after the Fifth Circuit makes a final decision on the waiver ruling. Again, Baylor is already working to identify affected students and prepare FERPA notices so that the notices can immediately be sent to students pending the outcome of the mandamus petition.

### *PLAINTIFFS' POSITION*

### *Timing of Production*

Plaintiffs must accept Baylor's representation that it needs additional time to comply with production ordered in ECF 988; Plaintiffs have little way to argue otherwise. As such, Baylor's proposal that production be made October 8th is agreeable. Obviously, if the Fifth Circuit alters parameters of production, that will impact timelines, and Baylor's request for a deadline 7-days after such a ruling is likewise not objectionable to Plaintiffs.

### *Logistics of Production*

Plaintiffs have requested production through UnitedLex given that this was a core original purpose of testing Baylor's discovery compliance. It should be recalled that UnitedLex has already archived all documents, and the documents (both PH and Baylor versions) share the same Control Number. As such, Plaintiffs propose that Baylor will report the Control Number of any documents that have no redactions of material subject to ECF 988's exception to wavier, and UnitedLex will produce both the PH and the Baylor versions for those documents directly to Plaintiffs (the Court will recall that UnitedLex reported 3,301 previously or newly logged documents sets that had "substantive variation" between the Baylor and PH versions).

UnitedLex reported another 3,576 previously or newly logged documents for which there was no match/comparison of a Baylor document with a PH document. For those documents, UnitedLex will likewise produce the PH version, as well as any late produced Baylor version. The Control Numbers of these documents are also already known.

For documents that fit within ECF 988's exception to waiver and require redaction, Plaintiffs propose Baylor report the Control Number of such documents to UnitedLex along with direction as to material to be redacted. UnitedLex will conduct the redactions on both the Pepper Hamilton and Baylor versions and directly produce same to Plaintiffs.

For documents dated after February 22, 2017 (the date PH attorneys moved to Cozzen, thus they are not in the possession of UnitedLex), Baylor will produce those documents directly to Plaintiffs.

By producing both the Baylor and PH versions of documents, confidence in production can be better assured. If this Court considers Baylor's arguments regarding allowing Baylor to produce



August 27, 2021
Page 4

directly, Plaintiffs request that they be able to provide Baylor's production to UnitedLex and UnitedLex, in turn, would perform a comparison to ensure the proper documents had been turned over. Of course, this would create more work and delay, as opposed to UnitedLex simply producing directly.

Plaintiffs anticipate prompt compliance by UnitedLex. In order to reduce expense, UnitedLex archived materials awaiting further instruction, and UnitedLex has indicated that it will take them 2-3 days to restore the archive. After that is done, the history of UnitedLex's ability to timely conduct its work should cause all to anticipate UnitedLex will perform its assigned tasks in a matter of days.

### Scope of Production

While Baylor has stated on one hand that Baylor has no confusion about the scope of the waiver order, other statements to Plaintiffs' counsel indicate otherwise. For example, statements to counsel regarding the present issue on timing and logistics have indicated Baylor believes the scope of waiver is narrow and the exceptions are broad. However, Baylor's position as filed with the Fifth Circuit is that the waiver is very broad and the exceptions narrow - "that the work-product privilege was waived for *all* work product underlying implementation of *all* the Recommendations, *with very limited exceptions* (as to type of work product but not the scope of waiver)." Mandamus at 39. Plaintiffs are unable to reconcile this discrepancy, and although Plaintiffs believe the orders in ECF 845 and ECF 988 are clear, waiting until October 8th to discover how Baylor interprets the Court's orders will only result in unnecessary delay.

### FERPA

Regarding FERPA, Plaintiffs do not see any reason FERPA should cause delay in production, as Baylor should have enough time to identify any students that may need a notice between now and October 8th, if not immediately in light of how long the rulings have been out As previously noted, Plaintiffs believe that notices should go out now, and not await further ruling, to avoid prior experience of further weeks delays when Baylor sends out notice only after its final efforts to avoid production have been made. Regardless, the Court's Order, ECF 987, allows for FERPA notices to be sent contemporaneously with production. If Baylor is in earnest about affording FERPA recipients notice prior to production, such notice should go out now. However, Plaintiffs believe the ECF 897 procedure is proper.

Very truly yours,

/s/ *Julie A. Springer*

Julie A. Springer

/s/ *Jim Dunnam*

Jim Dunnam



August 27, 2021
Page 5

---

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing advisory was served upon all

counsel of record on August 27, 2021, via the Court's ECF/CMF electronic service system as follows:

Mr. Chad W. Dunn (Attorney in Charge)　　　　*Via ECF: chad@brazilanddunn.com*
**BRAZIL & DUNN, L.L.P.**
4407 Bee Caves Road, Suite 111
Austin, Texas 78746

Mr. K. Scott Brazil　　　　　　　　　　　　*Via ECF: scott@brazilanddunn.com*
**BRAZIL & DUNN, L.L.P.**
13231 Champion Forest Drive, Suite 460
Houston, Texas 77069

Mr. Jim Dunnam　　　　　　　　　*Via ECF: jimdunnam@dunnamlaw.com*
Ms. Andrea Mehta　　　　　　　*Via ECF: andreamehta@dunnamlaw.com*
Ms. Eleeza Johnson　　　　　　*Via ECF: eleezajohnson@dunnamlaw.com*
**DUNNAM & DUNNAM, L.L.P.**
4125 West Waco Drive
Waco, Texas 76710

Ms. Laura Benitez Geisler　　　　　　　*Via ECF: lgeisler@textrial.com*
Mr. Sean J. McCaffity　　　　　　　*Via ECF: smccaffity@textrial.com*
Jody L. Rodenberg　　　　　　　*Via ECF: jrodenberg@textrial.com*
Alexandria Risinger　　　　　　　*Via ECF: arisinger@textrial.com*
George (Tex) Quesada　　　　　　*Via ECF: quesada@textrial.com*
**SOMMERMAN, MCCAFFITY,**
 **QUESADA & GEISLER, LLP**
3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas  75219-4461


*/s/ Julie A. Springer*
Julie A. Springer



**JIM DUNNAM**
jimdunnam@dunnamlaw.com
(254) 753-6437

March 24, 2022

Re:  *Jane Doe 1-10 v. Baylor University*; Cause No. 6:16-cv-173-RP; In the United States District
Court, Western District of Texas, Waco Division

TO THE HONORABLE ROBERT PITMAN:

The PH work product production is not complete; only 1,772 log entries have been turned over – at
least 9,395 entries referencing WP remain. The ULEX process Baylor proposed has turned out to be
inordinately expensive, time consuming, and now, because Baylor will not allow ULEX to fully
produce what the Court has ordered, pointless. The Court should return to the claw back procedure
it entered earlier (ECF 653), reject new Baylor ideas that will involve months and months of more
litigation, and award Plaintiffs fees and expenses.

This 2-page letter filing (under the procedure Judge Austin ordered and this Court adopted) follows
multiple unsuccessful attempts to resolve Pepper Hamilton matters, including in-person conference.
Baylor opposes Plaintiffs' requested relief.

Baylor formally advised this Court that "Baylor therefore has completed its PH work product
production pursuant to the terms of this Court's Waiver Order."[1] This was not true. One, Baylor
continues to offer piecemeal additional production after it advised the Court production was complete.
Moreover, Plaintiffs cannot conceive of how a reasonable person would certify such a statement based
on the production events since the Fifth Circuit denied the latest mandamus petition.

The PH materials on Baylor's Master Log, which are "responsive materials…dated, created, or
received between January 1, 2003 and November 6, 2017…" (ECF 667 at 4), include entries Baylor
has labeled with PH and BU-Jane Doe(s) bates prefixes. Below is a short summary of the total entries
logged by privilege assertion:

| Privilege | 9.30.21 Master Log | 2.18.22 Master Log |
|---|---|---|
| AC | 12500 | 12486 |
| WP | 7624 | 5934 |
| AC&WP | 3529 | 3461 |
| | 23653 | 21881 |

As the Court can see, only 1,772 log entries have been turned over between the 9.30.21 and 2.18.22
Master Logs. Moreover a "log entry" can mean one document or several hundred documents, few or
thousands of pages. At this point, it is still impossible to ascertain how many actual documents remain
withheld. Plaintiffs have asked ULEX and Baylor for this information. It has not been provided.

Additionally, the manner of production is inconsistent with the Court's orders. Baylor refuses to allow
ULEX to make the production of all waived PH materials; rather, Baylor limits, picks, or chooses

---

[1] ECF 1025.

what to instruct ULEX to turnover, which results in frustrating delays and a continued opaque process. Under the Court ordered procedure, for the pre-2/2017 materials, ULEX was to produce both the Baylor and PH versions to assure transparency. This is not happening – because Baylor prohibits it.

The parties can file pages of briefing sorting through the various particulars, which has become ridiculously complicated due to Baylor's conduct. The bottom line: the lion's share of ordered materials are still with ULEX and not with Plaintiffs' counsel.

On June 7, 2019, this Court ordered a claw back procedure regarding PH material.[2] Baylor obtained reconsideration of this order. In doing so, Baylor's counsel promised their ULEX suggestion would result in "accountability and speed." ECF 672 at 35:23. It has been anything but. The court should return to the claw back process it earlier ordered.

Plaintiffs have proposed this in attorney conferences to no avail. Baylor now suggests it produce only some outstanding PH documents under a limited claw back procedure, but still be permitted to entirely withhold documents under four very broad categories, which Baylor alone will interpret and determine. Baylor also proposes any disputes over what is withheld or clawed back would be submitted to a new special master at its expense. Plaintiffs rejected this proposal because 1) it would take many more months, 2) it would take a ton of work to bring a special master up to speed on the factual nuances necessary to do a meaningful review – if that is even realistic, 3) history shows that any category of permitted withholding will be used expansively by Baylor resulting in yet another set of logs/document review, and 4) Baylor has been given an opportunity to handle this exactly as Baylor proposed, and Baylor's process has failed abysmally.

The Court should also be advised that ULEX charges today total $813,079.31. Judge Austin, in deciding not to impose monetary sanctions in the past, noted that Baylor's having to pay ULEX was a level of sanction. However, at this point, Baylor must view the costs it is paying its own team and ULEX as worth the price. Plaintiffs oppose yet another costly and burdensome process.

Plaintiffs have endured the heavy burden of reviewing document production, then reviewing again when materials were produced a different way, then comparing with prior production the additional production fragments that come in small waves, and on and on. Whichever path forward the Court adopts, most of Plaintiffs' PH document review work the last year and a half has been wasted. Plaintiffs' payments to their data hosting vendor during the ULEX process is $220,968.03, just since the Court reconsidered its claw back order.

The Court should enter an order returning to claw back procedure, order ULEX to make production without any further action by Baylor, order Baylor to produce all other PH work product that is not in ULEX's possession, and pay Plaintiffs' fees and expenses for work on the ULEX process.

Finally, the Court should know that there remain other issues to be resolved. Baylor continues to withhold redacted materials and non-PH production that the Court has ruled must be produced. The non-PH redaction and withholding log remains voluminous. Hopefully, counsel can resolve this issue once the Court rules on PH matters.

---

[2] ECF 653.

Respectfully,

/s/Jim Dunnam
Jim Dunnam

## **CERTIFICATE OF CONFERENCE**

I certify that I have conferred with Defendant regarding the relief requested in this Motion and Defendant is opposed.

/s/Jim Dunnam
JIM DUNNAM

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing has been filed by ECF and sent to counsel of record via electronic notification on March 24, 2022.

/s/Jim Dunnam
JIM DUNNAM

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, JANE DOE 2, | § | |
| JANE DOE 3, JANE DOE 4, | § | |
| JANE DOE 5, JANE DOE 6, | § | |
| JANE DOE 7, JANE DOE 8, | § | |
| JANE DOE 9, JANE DOE 10, | § | |
| JANE DOE 11, JANE DOE 12, | § | |
| JANE DOE 13, JANE DOE 14, AND | § | |
| JANE DOE 15 | § | Cause No. 6:16-cv-173-RP |
| | § | JURY TRIAL DEMANDED |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | |
| | § | |
| BAYLOR UNIVERSITY | § | |
| | § | |
| *Defendant.* | § | |

**[PROPOSED] ORDER**

Came on to be heard Plaintiffs' Motion to Compel and for Sanctions. After considering the pleadings, motions, response, reply, authorities, and arguments of counsel, the Court finds that the motion is well-founded and should be granted as set forth herein.

IT IS THEREFORE ORDERED that Plaintiffs' motion be and is hereby GRANTED.

IT IS FURTHER ORDERED the Court's ORDER (ECF 653) be and is hereby re-adopted and applies to the production of Pepper Hamilton materials. UnitedLex is ordered to produce directly to Plaintiffs all Pepper Hamilton materials in its possession. Baylor is ordered to produce to Plaintiffs all other Pepper Hamilton communications and work product that is not in ULEX's possession. Baylor is ordered to confer with Plaintiffs to compensate them for the fees and expenses they incurred in the ULEX process. If agreement on fees and expenses is not reached, Plaintiffs shall file a five-page motion with the Court.

.

1

_____

HON. ROBERT PITMAN
PRESIDING JUDGE



March 28, 2022

**Re:** Case No. 6:16-cv-00173-RP *consolidated with* 6:17-CV-228-RP and 6:17-CV-236-RP; In the United States District Court for the Western District of Texas – Waco Division

To the Honorable Judge Pitman:

This letter, supported by the declarations of Julie Springer and Danielle Hatchitt (Exhibits 1 & 2), responds to Plaintiffs' March 24th motion. Plaintiffs' letter makes outrageous and unfounded allegations of unethical conduct with respect to Baylor's production of Pepper Hamilton's work product ("PH WP"), the subject of the Court's August 23, 2021 order (Dkt. 988, the "Waiver Order"). Plaintiffs offer *no evidentiary support* for any of the serious claims they have made against Baylor, and the Court should deny their request outright. Alternatively, given the gravity of Plaintiffs' allegations against counsel for Baylor, and as a matter of due process, the undersigned asks the Court for a hearing to permit counsel to personally address the Court and respond to Plaintiffs' allegations. Plaintiffs have failed to comply with their duties of candor to the Court in violation of the Texas Lawyers' Creed. Further, Plaintiffs have failed to confer with Baylor in good faith and have chosen to present these issues to the Court in an inappropriately distorted manner.[1]

First, Plaintiffs falsely complain that the PH WP production is not complete. This is not true. **Baylor's production of PH WP is complete**. Baylor produced 9,745 documents (comprising 2,343 entries, which consists of document families) to Plaintiffs. It is a second production of PH WP through discovery vendor ULEX that is still in progress. The Waiver Order required the production by Baylor, not ULEX, of PH WP related to PH's investigation and implementation of reforms (subject to certain exceptions on page 11 of the Order). Baylor did exactly what the Waiver Order required. Plaintiffs requested an additional production through ULEX, and Baylor agreed as an act of cooperation. But because ULEX is a third-party not subject to Baylor's control, Baylor expressly stated in a joint advisory to the Court that it could not promise a date by which ULEX would complete its production. Dkt. 1001. Contrary to Plaintiffs' claim, Baylor did not propose using ULEX to comply with the Waiver Order. At an earlier point in time, Baylor suggested using ULEX for an entirely different purpose: as an alternative to a proposed clawback procedure to account for the production of the PH documents Plaintiffs subpoenaed directly from PH, not for the production of the PH WP that is the subject of the Waiver Order. Plaintiffs are improperly weaponizing a second ULEX production that *they* requested, and was not Court-ordered, to claim that Baylor's PH WP production is delayed or incomplete.

Second, Plaintiffs allege that Baylor's February 4 advisory to the Court was false. This is also untrue. As Baylor informed the Court, Baylor completed its production by February 4, doing so as soon as the Court resolved the remaining FERPA objections. Dkt. 1025. After completing its production, Baylor updated its privilege log. As part of that process, Baylor identified 250 entries that it believed needed to be released based on the Court's Waiver Order (mostly duplicates of already released documents). On February 18, Baylor produced these supplemental documents and its amended privilege log. Baylor's advisory was true when made, based on counsel's reasonable diligence

---

[1] Baylor exceeds the two-page limit on letter briefs by one full paragraph because of the seriousness of the allegations and Plaintiffs' requested relief.

in preparing the original production. Baylor's prompt supplement in compliance with Rule 37 does not mean its advisory was false. Instead, it reflects Baylor's ongoing efforts at good faith production.

Third, Plaintiffs imply that Baylor has withheld more than 20,000 document families as PH WP. This is not true. Baylor's Master Privilege Log contains *thousands* of entries for privileged documents that are *not* PH WP (such as documents from the "PH Collection," the university documents that PH collected from employee devices as part of its investigation, and which are logged pursuant to another Court Order, Dkt. 168). PH's WP originally made up only 7,127 entries on the Master Privilege Log. Of those entries, 2,343 have been released with or without redactions. The remaining PH WP entries on the log either: (i) fall within an exception to the Waiver Order, or (ii) are not related to PH's investigation or implementation work and thus not required to be released. Finally, Plaintiffs falsely claim that Baylor "prohibits" or "refuses to allow ULEX to make the production of all waived PH materials" as allegedly ordered by the Court. Again, Plaintiffs' statements are categorically false. As noted above, this Court never ordered production of the PH WP documents through ULEX. The only time Baylor has ever told ULEX to hold production involved some attachments to documents because Baylor had not had a chance to review them. Plaintiffs wanted the attachments to be released without Baylor having a chance to review them. Because it was likely that some of the attachments had already been produced, Baylor proposed a clawback procedure whereby ULEX would produce the attachments to Plaintiffs, but Baylor would have an opportunity to clawback any privileged documents. Plaintiffs never responded to this reasonable proposal. There is no factual basis for Plaintiffs' outrageous representation to the Court that Baylor is prohibiting ULEX from completing the PH WP production.

None of the sanctions Plaintiffs request are warranted. Although they call it a "clawback," what Plaintiffs are actually seeking is a "quick peek" of *all* the privileged PH WP that remains on Baylor's log. For the post 2/2017 PH WP materials not in ULEX's possession, they want even more, asking the Court (without any basis), to order the production of that PH WP material without any clawback at all. But "[a]lthough Rule 502(d) provides broad powers to a federal court, it does not give the Court the power to order parties to produce privileged information where there has been no finding of waiver. . . . [T]he court cannot order a 'quick peek' process over the objection of the producing party." 17 Sedona Conf. J. 95. In *Winfield v. City of New York*, 2018 U.S. Dist. Lexis 79281, at *2 (S.D.N.Y. 2018), plaintiffs sought an order virtually identical to what Plaintiffs seek—an order allowing them a "quick peek" of all the approximately 3300 documents on defendants' privilege log. Ex. 3. The court denied the request, finding it could not order the production of privileged materials, instead appointing a special master to conduct a privilege review of the withheld documents, and explaining that a court "may not run roughshod over a party's assertion of privileges merely to expedite discovery or relieve itself from determining a party's substantive or common law rights." *Id* at *25. Here, the *only* PH WP documents remaining on the log in *Jane Doe 11* are documents withheld because they fit an exception to the Waiver Order, *see* ECF 988 at 11, or they relate to non-investigation/implementation matters, such as third-party litigation or governmental investigations. Privilege has not been waived for these documents, so a mandated "quick peek" procedure would be improper.

The fact that Plaintiffs base their request for such severe sanctions on falsehoods and untruths is compounded by their failure to confer on the issues in good faith. On December 21, 2021—*before* the Court had resolved the outstanding FERPA objections necessary for Baylor to complete the vast majority of its PH WP production—Plaintiffs' counsel sent a letter threatening to file a contempt motion for violation of the Court's Waiver Order. Despite multiple attempts to confer, which included

Baylor's counsel driving to Waco to meet personally with Plaintiffs' counsel, Plaintiffs have never articulated any reason that Baylor's PH WP production is deficient (beyond vague and baseless statements of distrust). They have never pointed to a single example of PH WP logged documents Plaintiffs believe were improperly withheld. They have just doggedly insisted on their "clawback" procedure that would allow them to see all the privileged work product.

Nevertheless, acutely aware of the Court's desire to avoid further motion practice on discovery, Baylor proposed a compromise: to allow Plaintiffs a "quick peek" with an appropriate Rule 502(d) order as to all PH WP on the log, except for four discrete categories of particularly sensitive documents (including core work product and documents related to third-party litigation and government investigations, some of which are still ongoing). As part of this "quick peek" process, Plaintiffs would have the ability to see the documents, and Baylor could pull them back. Any dispute over pulled-back documents would be presented to a Special Master—appointed by the Court and paid for by Baylor. As to the four exceptions, those documents would be submitted to the Special Master for a final determination on whether the documents were properly withheld. Even as to those documents, Baylor's proposal would allow Plaintiffs to obtain information about those documents from the Special Master to ensure they were properly withheld. Plaintiffs refused to agree. Unlike Plaintiffs' proposal, which at its core is a request for sanctions, Baylor's proposal is consistent with the principles of the Sedona Conference, provides tremendous transparency, relieves the Court of dealing with the inevitable document disputes that would arise from Plaintiffs' proposed clawback procedure, and contrary to Plaintiffs' statement, could be done in an efficient manner. Finally, there is no basis to sanction Baylor with an award of fees when it is Plaintiffs who wanted the second, duplicative ULEX production of PH WP and Baylor has done everything it can to facilitate it.

Respectfully submitted,


By: */s/ Julie A. Springer*

Julie A. Springer

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing response was served upon Plaintiffs' counsel of record on March 28, 2022, via the Court's ECF/CMF electronic service system as follows:

Mr. Chad W. Dunn (Attorney in Charge)        *Via ECF: chad@brazilanddunn.com*
**BRAZIL & DUNN, L.L.P.**
4407 Bee Caves Road, Suite 111
Austin, Texas 78746

Mr. K. Scott Brazil                          *Via ECF: scott@brazilanddunn.com*
**BRAZIL & DUNN, L.L.P.**
13231 Champion Forest Drive, Suite 460
Houston, Texas 77069

Mr. Jim Dunnam                               *Via ECF: jimdunnam@dunnamlaw.com*
Ms. Andrea Mehta                             *Via ECF: andreamehta@dunnamlaw.com*
Ms. Eleeza Johnson                           *Via ECF: eleezajohnson@dunnamlaw.com*
**DUNNAM & DUNNAM, L.L.P.**
4125 West Waco Drive
Waco, Texas 76710

Ms. Laura Benitez Geisler                    *Via ECF: lgeisler@textrial.com*
Mr. Sean J. McCaffity                        *Via ECF: smccaffity@textrial.com*
Jody L. Rodenberg                            *Via ECF: jrodenberg@textrial.com*
Alexandria Risinger                          *Via ECF: arisinger@textrial.com*
George (Tex) Quesada                         *Via ECF: quesada@textrial.com*
**SOMMERMAN, MCCAFFITY,**
  **QUESADA & GEISLER, LLP**
3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas  75219-4461

*/s/ Julie A. Springer*
Julie A. Springer

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al*, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 6:16-CV-00173-RP |
| | § | |
| v. | § | *Consolidated with* |
| | § | 6:17-CV-228-RP |
| BAYLOR UNIVERSITY, | § | 6:17-CV-236-RP |
| | § | |
| Defendant. | § | |

## DECLARATION OF JULIE A. SPRINGER

1. My name is Julie Springer. I am over eighteen 18 years of age and am fully competent to testify to the matters stated in this declaration. The statements within this declaration are based upon my personal knowledge.

2. I am a partner at the law firm Weisbart Springer Hayes LLP ("WSH") and am lead counsel for Baylor University on the *Jane Doe 11* case.

3. I have reviewed Plaintiffs' March 24, 2022 letter brief requesting sanctions based on Baylor's alleged deficiencies in the production of the Pepper Hamilton work product documents ("PH WP"), as ordered by this Court in Docket 988. The numerous inaccurate representations in Plaintiffs' letter brief are addressed in Baylor's response letter brief filed in conjunction with my declaration and in the declaration of Danielle K. Hatchitt. All of the facts stated in Baylor's response letter brief are true and correct.

4. Following this Court's Order regarding production of the PH WP, I conferred with Plaintiffs' counsel, Jim Dunnam, regarding the timing and logistics of the production as directed by the Court. Dkt. 988. During our conversations, Mr. Dunnam requested that the PH WP be produced through UnitedLex ("ULEX"), an e-discovery vendor. Baylor does not control ULEX, but to accommodate Plaintiffs' request, I told Mr. Dunnam that Baylor would voluntarily agree to facilitate the production of the PH WP through ULEX and would bear the cost of that additional work by ULEX. In the Joint Advisory that Mr. Dunnam and I worked on together, Baylor agreed that it would report the control numbers of the PH WP documents that needed to be produced to ULEX for production and that it would explain to ULEX the redactions to those documents, if needed, prior to production. *See* Dkt. 1001. Baylor also agreed to produce all of the PH WP documents ordered by the Court from Baylor's own records as well. *Id.* Because ULEX only had PH WP documents in its possession through February 22, 2017, it was not possible to coordinate a production through ULEX of the PH WP dated after February 22, 2017.

5. I never told Mr. Dunnam that ULEX would complete its production of the PH WP by a certain date. In fact, in the Joint Advisory, Baylor confirmed what it had told Plaintiffs' counsel: that it could not guarantee when the documents would ultimately be produced by an independent third-party vendor over which Baylor had no control. *See* Dkt. 1001, p.2:

6.      On December 21, 2021, Plaintiffs sent a letter alleging that Baylor failed to comply with the production of the PH WP ordered by the Court pursuant to Dkt. 988.  *See* Exhibit 1-A attached.  The parties conferred on January 11, 2022 about Plaintiffs' letter.  During that call, I explained: (i) a significant number of additional PH WP documents would be produced after the Court ruled on 19 non-party student FERPA objections that were pending as to the production of those documents, and (ii) that Baylor was continuing to withhold PH WP that fell expressly within the exceptions to the waiver ruling in the Order (Dkt. 988 at page 11) as well as PH WP that is not related to Pepper Hamilton's investigation or implementation of its 105 recommendations.  I asked twice if the Plaintiffs believed that there were no exceptions to the waiver ruling but they not provide an answer.  Thereafter, on January 14, 2022, I sent a letter to Plaintiffs again asking that if Plaintiffs did not believe any exceptions applied to the PH WP production ordered by the Court to please let us know because if that was Plaintiffs' position, we needed clarification from the Court.  *See* Exhibit 1-B attached.  Plaintiffs did not respond to my letter.

7.      On January 26, 2022, an attorney in my office, Colleen Murphey, and I participated in a phone conference with Mr. Dunnam and Ms. Eleeza Johnson, as well as representatives of ULEX, regarding the PH WP attachment issue referenced in Ms. Hatchitt's Declaration filed simultaneously herewith.  On that call, I told Mr. Dunnam that Baylor could not agree to release the attachments because we were not able to review them for privilege.  I told ULEX on that call it was appropriate to release all the other documents.  As explained by Ms. Hatchitt in her declaration we subsequently offered to produce the attachments under a clawback process, but Plaintiffs never responded to that offer.  During that call, Mr. Dunnam again stated that he believed Baylor was wholly deficient in its PH WP production.  I asked Mr. Dunnam in what way Baylor was deficient, including whether Plaintiffs believed there were no exceptions to the waiver order.  Mr. Dunnam again refused to identify any specific deficiencies other than to complain generally about Baylor's production.

8.      On February 8, 2022, Mr. Dunnam sent me an email stating "[w]e wanted to ask if the order today in ECF 1026 alters Baylor's position on our intended Motion to Compel."  Again, I responded by telling Mr. Dunnam that I did not understand what relief he was seeking by his motion and if Plaintiffs could please advise whether they believe no exceptions exist as to the production of the PH WP pursuant to Dkt. 988.  Again, Plaintiffs refused to answer my question.  *See* Exhibit 1-C attached.

9.      On March 3, 2022, I sent Plaintiffs' counsel an email requesting an in-person meeting in Waco to discuss why Plaintiffs believed Baylor was not in compliance with the Court's order on the PH WP.  *See* Exhibit 1-D attached.  Subsequently, Geoff Weisbart, Danielle Hatchitt, and I met with Plaintiffs' counsel, Mr. Dunnam and Ms. Eleeza Johnson, in Waco.  Ms. Lisa Brown and Ms. Holly McIntush attended via zoom.  At that meeting, Plaintiffs confirmed that they understood there were exceptions to the Court's waiver ruling, but that they believed Baylor was interpreting those exceptions too broadly.  Baylor's counsel asked for clarification.  But Plaintiffs did not: (i) explain how or why they thought Baylor was interpreting the exceptions too broadly, and (ii) provide any specific examples of PH WP remaining on Baylor's privilege log that they believe still needs to be released.  Instead, Plaintiffs' primary complaint appeared to be that they did not trust Baylor's logging and therefore wanted to look at all of Baylor's privileged documents to confirm "they are what we say they are" on the log.  Ultimately, Plaintiffs proposed that Baylor produce every document on its privilege log— whether it related to the PH WP or not—and then Baylor could clawback those documents.

10.     On March 18, 2022, I sent an email to Plaintiffs stating that Baylor would agree to clawback process for the PH WP documents only, as long as that disclosure would not constitute a general waiver of privilege, and with the exception of four discrete categories of documents in the Waiver Order: (i) pre-witness interview memoranda and drafts of same; (ii) witness chronologies prepared for witness interviews; (iii) attorney notes of interviews; and (iv) non-investigation/implementation matters, such as third-party litigation and government investigations I did not believe I could agree to a clawback process for these four categories because of the sensitive nature of the materials (core attorney work product materials never seen by Baylor and specifically called out by this Court's waiver order, and other litigation and government investigations, some of which is still ongoing). For these four categories, I proposed that we submit these documents to a Special Master who would make final decisions about whether the documents were properly withheld. The Special Master would also determine any disputes the parties have over whether the other PH WP documents were properly clawed back. I further stated that Baylor would agree to pay the Special Master's fees. *See* Exhibit 1-E attached. Plaintiffs refused this proposal.

11.     Thereafter, on March 23, 2022, in response to Plaintiffs' objection to the special master proposal and in a further effort to resolve this dispute, I sent an email further agreeing that in addition to the procedure I proposed on March 18, 2022, that Baylor would also agree for the first three categories of documents listed above that the proposed Special Master could meet with Baylor and Plaintiffs' counsel in person and show Plaintiffs any documents that they were concerned the Special Master incorrectly determined should be withheld, and that Plaintiffs could tell the Special Master why they believed it should not be withheld. And on the fourth category of documents, non-investigation and implementation matters, such as other litigation and government investigations, I suggested that the parties could come up with some type of process that would allow Plaintiffs to similarly engage with the Special Master to ensure there was proper context for the Special Master to make decisions about whether those documents were properly withheld. I also suggested that the parties submit briefs to the Special Master before he/she started their review of the documents to provide context and an overview of the case. *See* Exhibit 1-F attached. Plaintiffs refused this proposal as well.

12.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed in Austin, Texas on the 28th day of March, 2022.

JULIE A. SPRINGER

# EXHIBIT 1-A



**DUNNAM & DUNNAM**
ATTORNEYS AT LAW
*Since 1925*

VANCE DUNNAM
   BOARD CERTIFIED-FAMILY LAW
VANCE DUNNAM, JR.
   BOARD CERTIFIED-ESTATE PLANNING AND PROBATE LAW
   BOARD CERTIFIED-RESIDENTIAL REAL ESTATE LAW
   BOARD CERTIFIED-COMMERCIAL REAL ESTATE LAW
MERRILEE L. HARMON
   BOARD CERTIFIED-FAMILY LAW
JIM DUNNAM
   BOARD CERTIFIED-CIVIL TRIAL LAW
   BOARD CERTIFIED-FAMILY LAW
   Licensed in Texas and Colorado
GERALD R. VILLARRIAL
ANDREA MEHTA
ELEEZA JOHNSON
BRITTANY MARTINEZ
MASON VANCE DUNNAM

W.V. DUNNAM
(1891-1974)
W.V. DUNNAM, JR.
(1927-2006)

4125 WEST WACO DRIVE
WACO, TEXAS 76710

TELEPHONE (254)753-6437
FAX (254)753-7434

MAILING ADDRESS:
P.O. BOX 8418
WACO, TEXAS 76714-8418

WEBSITE: DUNNAMLAW.COM

December 21, 2021

**Via Electronic Mail**
Lisa A. Brown, Esq.
**Thompson & Horton LLP**
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027-7554

**Via Electronic Mail**
Julie A. Springer
**Weisbart Springer Hayes LLP**
212 Lavaca Street, Suite 200
Austin, Texas 78701

Re:   Doe 1, et. al. v. Baylor University, Cause No. 6:16-cv-173-RP, In the United States District Court for the Western District of Texas, Waco Division

I am writing in to confer regarding several discovery related matters. The PH issues below have been discussed at length, but we need to know if you are opposed to a motion on those issues.

Baylor has not complied with the Court's WP waiver order. Of the approximately 18,000 PH docs logged by Baylor, only 2801 have been produced. Those that have been produced still contain WP redactions, some of which include entire pages redacted WP. You have indicated that eventually you may produce another 3,000 documents, but that the remaining 12,000 will not be forthcoming. The deadline to deliver list of documents to UnitedLex for production and deadline to produce documents directly to Plaintiffs (for second time period) was October 27.

Some history of this case informs our position. On June 2, 2020, Judge Austin issued the first order providing for waiver of the PH work product. He set a deadline of July 15, 2020 to produce the PH work product documents. Importantly, the Court's order included this admonishment: "the Court will not tolerate any more misreading of a court order. Baylor has made a habit of avoiding discovery compliance by interpreting orders in its favor even when the order directs otherwise." ECF 845 at p. 44.

Recognizing the impending deadline, Baylor immediately filed an appeal to Judge Pitman. Therewith included a motion to stay Judge Austin's deadline. Judge Pitman did not receive notice of the motion to stay and Baylor did not call his chambers to inquire. Instead, Baylor filed with the Fifth Circuit its first mandamus petition on the PH work product issue and claimed it would be required to produce a "large volume of core attorney work product," and Baylor made no mention that its logs were, once again, going to be revised if the appeal was unsuccessful. Pet. at 6. Baylor argued it required relief the day of the filing given the pending court-imposed deadline.

After the first mandamus on this issue was dismissed, Judge Pitman issued his own ruling finding PH work product waiver. In none of this briefing did Baylor claim its logs were inaccurate or would require yet another round of revisions. Judge Pitman's order requires:

> **IT IS ORDERED** that, in the Jane Doe 11 case, Baylor produce, without delay, all Pepper Hamilton documents—including all documents logged as Pepper Hamilton work product on Baylor's privilege logs—in accordance with this Order.

> **IT IS FINALLY ORDERED** that the parties shall confer and reach an agreement about the timing and logistics of the production of Pepper Hamilton documents on or before August 12, 2021. Again, the Court emphasizes that it expects Baylor to comply with this Order expeditiously.

ECF 988 at p. 24 (emphasis in original).

Baylor being under the imminent duty to produce the PH documents, filed yet another mandamus petition.

In this petition, Baylor argued:

> The challenged order compels Baylor to produce thousands of documents that are protected work product. The documents were created in anticipation of litigation by Baylor's outside counsel, Pepper Hamilton ("Pepper"), in two contexts: (1) a broad investigation in 2015-16 that looked back at Baylor's responses to student reports of sexual assault during 2012-15 and (2) the implementation in 2016-17 of Recommendations Pepper made following the investigation.

Pet. at 14.

The Fifth Circuit ultimately denied this mandamus on October 20, 2021. It is now almost two months later and only a fraction of the documents logged have been produced. Baylor is now long out of compliance with the court's orders on PH work product.

To make matters worse, Baylor has claimed part of the delay in producing these documents is to await sending FERPA notices and receiving back possible objections. Baylor takes this position even though Judge Pitman has specifically overruled Baylor's interpretation of FERPA procedural requirements. ECF 987. Baylor's insistence, despite admonishments from Judge Austin and Judge Pitman to continue to handle FERPA how it wants instead of how the Court has ordered it, is yet another violation of court orders.

As the NCAA and Big 12 investigations have concluded we would like to confer regarding the related document production.

In light of the foregoing, Plaintiffs intend to file a motion to hold Baylor in Contempt of Court for violation of the orders above. We have conferred by phone on multiple occasions and have exchanged countless emails on this subject. We understand that you are opposed to this relief. If you

think an additional phone conference would assist in resolving this matter, we are available for that purpose.

In addition, with the Clery and NCAA investigations now completed, and since discovery of those matter will no longer impact the results of those investigations, Plaintiffs intend to file a motion to reconsider and order production of those materials. Baylor has admitted and accepted of the respective findings, including findings that support Plaintiffs' positions and contradict Baylor's positions in the present case, and we believe such a motion is now timely. Please advise if you are opposed.

Respectfully,

Jim Dunnam

CC:

Mr. Chad W. Dunn
**BRAZIL & DUNN, L.L.P.**
4407 Bee Caves Road, Suite 111
Austin, Texas 78746

Laura Benitez Geisler
Mr. Sean J. McCaffity
Jody L. Rodenberg
George (Tex) Quesada
**SOMMERMAN, MCCAFFITY,**
 **QUESADA & GEISLER,** LLP
3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas 75219-4461

# EXHIBIT 1-B



WEISBART SPRINGER HAYES

**Julie A. Springer**
jspringer@wshllp.com
direct 512.652.5782

January 14, 2022

**VIA EMAIL:**

Jim Dunnam
Eleeza Johnson
DUNNAM & DUNNAM, L.L.P.
4125 West Waco Drive
Waco, Texas 76710
jdunnam@dunnamlaw.com
ejohnson@dunnamlaw.com

Chad W. Dunn
BRAZIL & DUNN, L.L.P.
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
chad@brazilanddunn.com
scott@brazilanddunn.com

George (Tex) Quesada
SOMMERMAN, McCAFFITY,
 QUESADA & GEISLER, LLP
3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas  75219-4461
lgeisler@textrial.com
smccaffity@textrial.com
jrodenberg@textrial.com
quesada@textrial.com

Re:     Case No. 6:16-CV-228-RP; *Jane Doe 11 v. Baylor University*; In the United States District
        Court for the Western District of Texas – Waco Division

Counsel,

As a follow up to our phone conference Tuesday, I wanted to confirm the status of Baylor's
production of the Pepper Hamilton work product materials to date.

First, consistent with its representation to the Court in the parties' Joint Advisory (Dkt. 1001),
Baylor has produced Pepper Hamilton work product documents related to the investigation and
implementation, except those expressly excepted from the waiver ruling in the Order (Dkt. 988 at 11),
subject to any documents that have been withheld because they are the subject of pending FERPA
objections by third-party students.  As we informed you on the phone, 19 students have submitted
objections to the release of their records with the Court, several of whom figure prominently in Pepper
Hamilton's investigation.  Once the FERPA objections are resolved, Baylor anticipates producing
approximately 6,000 more documents.  We believe a status conference to discuss the FERPA
objections makes sense because once the Court learns that Baylor has already produced documents
identifying some of the students (because their names appear in pure work product such as witness
summaries and outlines as opposed to educational records), he may overrule the objections and just
order them produced AEO.  Until he does so, however, Baylor is obligated to comply with the Court's
most recent FERPA Order (Dkt. 987) which affords affected students the opportunity to file
objections with the Court.



January 14, 2022
Page 2

_____

      Baylor continues to withhold Pepper Hamilton work product that falls within the express exceptions to the waiver ruling in the Order (Dkt. 988 at 11) and work product that is not related to Pepper Hamilton's investigation or Baylor's implementation of Pepper Hamilton's 105 recommendations.  Because some of the materials previously withheld, such as attorney work notebooks, contained some materials that fell within the scope of the waiver and some that did not (for example, witness summaries which are required to be produced, and raw witness interview notes which fall within the exception to the waiver order), we produced the notebooks with WP redactions for those materials that are properly withheld such as the witness interview notes.  Since Baylor previously logged the entire notebook as an "attorney work notebook," our intent is to produce an updated privilege log which will more specifically identify any documents that are being withheld, such as notes within an attorney work notebook.  This updated privilege log will only be produced in the Jane Doe 11 case since that is the only case to which the waiver ruling applies.

      I asked twice on the call if Plaintiffs believed that there was not any exception to the waiver ruling (again, Baylor believes the order provides that certain documents, a limited carve-out, may continue to be withheld at Dkt. 988 at 11), and I do not believe my question was answered.  If Plaintiffs, in fact, believe those limited exceptions do not apply, would you please let us know.  If that is Plaintiffs' position, we absolutely need to get clarification from the Court and should be able to do so at a status conference.

      Thank you.


                        Sincerely,


                        Julie A. Springer

# EXHIBIT 1-C

| | |
|---|---|
| **From:** | Julie Springer |
| **Sent:** | Tuesday, February 8, 2022 2:22 PM |
| **To:** | Jim Dunnam; Danielle Hatchitt; Jan Blair; Eleeza Johnson; chad@brazilanddunn.com; Andrea Mehta; lbrown@thompsonhorton.com; Holly McIntush; Ryan Newman; Danielle Hatchitt; Jan Blair |
| **Cc:** | Sara E. Janes; lgeisler@textrial.com; quesada@textrial.com; smccaffity@textrial.com; Mia Storm; jrodenberg@textrial.com; Geoff Weisbart; Nicole Ratliff; Gwendolyn Kelly; Deanna Inman; scott@brazilanddunn.com; Colleen Murphey |
| **Subject:** | RE: Doe v Baylor |

Jim,

We intend to fully comply with today's Order.

As to a Motion to Compel, I still do not understand what relief you are seeking by your Motion.  We have produced to you the Pepper Hamilton materials covered by the WP Waiver order and only withheld documents that fall within the carve-out to the waiver ruling in the Order, or are privileged for some other reason and the privilege has not been waived (such as the OCR investigation, third-party litigation, etc.).  As we represented in the Advisory, we are preparing an updated privilege log which reflects the release of those documents.

If you will advise as to how you believe Baylor has not complied with the Pepper WP Waiver Order (such as whether you believe no carve-out exists), that would be helpful.

Also please make sure and copy Lisa's team on future emails.

Thank you.

Julie

**JULIE A. SPRINGER**
direct 512.652.5782      888.844.8441
jspringer@wshllp.com

 **WEISBART SPRINGER HAYES** LLP
212 Lavaca, Suite 200   Austin, TX 78701
**wshllp.com**

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

**From:** Jim Dunnam <jimdunnam@dunnamlaw.com>
**Sent:** Tuesday, February 8, 2022 2:08 PM
**To:** Danielle Hatchitt <dhatchitt@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>
**Cc:** Julie Springer <JSpringer@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>; lgeisler@textrial.com; quesada@textrial.com; smccaffity@textrial.com; Mia Storm <MStorm@WSHLLP.com>; jrodenberg@textrial.com; Geoff Weisbart <Gweisbart@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; Gwendolyn Kelly <gwen@brazilanddunn.com>; Deanna Inman <dinman@textrial.com>; scott@brazilanddunn.com; Colleen Murphey <cmurphey@WSHLLP.com>
**Subject:** RE: Doe v Baylor

Julie / Lisa

We wanted to ask if the order today in ECF 1026 alters Baylor's position on our intended Motion to Compel.

Jim Dunnam
Dunnam & Dunnam LLP
4125 W. Waco Drive
Waco, TX 76710
(254) 753-6437 Telephone
(254) 753-7434 Facsimile
jimdunnam@dunnamlaw.com

 



 



This electronic mail transmission contains confidential information intended only for the person(s) named. Any use, distribution, copying or disclosure by any other person is strictly prohibited. If you received this transmission in error, please notify the sender by reply e-mail and then destroy the message.

Important/Confidential: This communication and any files or documents attached to it are intended only for the use of the person or entity to which it is addressed. It contains information that may be privileged, confidential and exempt from disclosure under applicable law. If you are the intended recipient, please be aware that forwarding this message to others may result in a waiver of these privileges. If you are not the intended recipient of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited. If you have

received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.

# EXHIBIT 1-D

| From: | Julie Springer |
|---|---|
| Sent: | Thursday, March 3, 2022 4:11 PM |
| To: | Jim Dunnam |
| Cc: | Danielle Hatchitt; Jan Blair; Eleeza Johnson; chad@brazilanddunn.com; Andrea Mehta; lbrown@thompsonhorton.com; Holly McIntush; Ryan Newman; Sara E. Janes; lgeisler@textrial.com; quesada@textrial.com; smccaffity@textrial.com; Mia Storm; jrodenberg@textrial.com; Geoff Weisbart; Nicole Ratliff; Gwendolyn Kelly; Deanna Inman; scott@brazilanddunn.com; Colleen Murphey |
| Subject: | RE: Jane Doe 11 v Baylor |
| Attachments: | RE: Doe v Baylor |

Jim,

This email relates to your allegations that Baylor is somehow not in compliance with the Court's Order requiring Baylor to produce certain Pepper Hamilton work product materials as result of its waiver ruling.

We did speak in February and during that conversation, I asked you to tell me how Plaintiffs believed that Baylor was out of compliance with Judge Pitman's order. You mentioned the documents that were being withheld because of FERPA. At the time Judge Pitman had not ruled on the FERPA objections, an issue we discussed during the call. Since that time, Judge Pitman overruled the FERPA objections and we have produced the remaining Pepper Hamilton documents subject to the waiver ruling.

I also asked you twice during the call whether you believed that a carve-out to the waiver ruling existed (as Baylor believes does on page 11 of Judge Pitman's order). You did not respond on the call.

You never said how you believed Baylor was noncompliant with the Order on the call.

Following the call, I sent you an email (attached) again asking for the basis of a Motion to Compel as to the Waiver Order and whether you believed a carve-out to the Order existed. You never responded. It would be very helpful if you would let us know your position on this issue as if your position is there is no carve-out, I agree we need to get this issue in front of the Court.

At this point, Geoff, Dani and I would very much like to meet in person to discuss these issues and hopefully avoid future motion practice. However, we have obligations tomorrow and the first part of next week. I talked to Geoff and we can make next Friday work. That is only one week. We are not seeking to delay anything.

Please let me know if next Friday work or early the following week.

Thank you.

Julie

**JULIE A. SPRINGER**
direct 512.652.5782      888.844.8441
jspringer@wshllp.com



**WEISBART SPRINGER HAYES** LLP
212 Lavaca, Suite 200  Austin, TX 78701
**wshllp.com**

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

**From:** Jim Dunnam <jimdunnam@dunnamlaw.com>
**Sent:** Thursday, March 3, 2022 9:18 AM
**To:** Julie Springer <JSpringer@WSHLLP.com>
**Cc:** Danielle Hatchitt <dhatchitt@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lbrown@thompsonhorton.com; Holly McIntush <hmcintush@thompsonhorton.com>; Ryan Newman <rnewman@thompsonhorton.com>; Sara E. Janes <SJanes@WSHLLP.com>; lgeisler@textrial.com; quesada@textrial.com; smccaffity@textrial.com; Mia Storm <MStorm@WSHLLP.com>; jrodenberg@textrial.com; Geoff Weisbart <Gweisbart@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; Gwendolyn Kelly <gwen@brazilanddunn.com>; Deanna Inman <dinman@textrial.com>; scott@brazilanddunn.com; Colleen Murphey <cmurphey@WSHLLP.com>
**Subject:** Re: Jane Doe 11 v Baylor

Julie

I can be available to meet via Zoom tomorrow on any of these issues.  But we have conferred multiple times and Baylor's position and our position have been made very clear, and our final conference in February regarding on our need to file motion to compel and for sanctions against Baylor, and Baylor's states opposition, left things very clear on both our ends.  At this point, delay of another 2 weeks is just more delay.  So if Baylor feels something has changed in its position let's talk about it now.  After all this time and dozens of conferences there is no way our respective positions and what we believe deficient is not clear.

We are always ready to avoid a motion, so if you want to get on a video conference tomorrow or even this weekend, I will find a way to make myself available.  I might even can drive down to Austin if necessary.  But we are not willing to continue to have Baylor drag this out.

Jim

> On Mar 3, 2022, at 8:27 AM, Julie Springer <JSpringer@wshllp.com> wrote:
>
> Good morning Jim,

2

As you have mentioned on the phone (and I agree), the Court has made it apparent in its last series of orders that it would like to move on from the document issues in this case. To that end, we would like to discuss with you any outstanding issues that need to be addressed regarding the Pepper Hamilton work product documents that we produced in the Jane Doe 11 case related to the investigation and implementation. Shortly before Christmas and in a phone conference following that letter, you indicated that Plaintiffs believe that Baylor is not in compliance with the Court's order with respect to those documents. We have now provided you with an updated log that reflects the release of the work product documents subject to the exceptions on page 11 in the Court's Order and other privileges that may apply (such as the OCR investigation, third-party litigation, etc.). If it works for you, Geoff, Dani and I would like to come to Waco and meet with you and Eleeza (and whomever else from Plaintiffs' team) and identify any remaining areas of dispute with respect to the Pepper Hamilton work product documents so that we can hopefully, resolve any remaining issues. We are in depositions next week but would like to meet in person the week of March 14th. Can you let us know your availability.

Thanks.

Julie

**JULIE A. SPRINGER**
direct 512.652.5782     888.844.8441
jspringer@wshllp.com

 **WEISBART SPRINGER HAYES** LLP
212 Lavaca, Suite 200   Austin, TX 78701
**wshllp.com**

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

Important/Confidential: This communication and any files or documents attached to it are intended only for the use of the person or entity to which it is addressed. It contains information that may be privileged, confidential and exempt from disclosure under applicable law. If you are the intended recipient, please be aware that forwarding this message to others may result in a waiver of these privileges. If you are not the intended recipient of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited. If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.

| **From:** | Julie Springer |
| **Sent:** | Tuesday, February 8, 2022 2:22 PM |
| **To:** | Jim Dunnam; Danielle Hatchitt; Jan Blair; Eleeza Johnson; chad@brazilanddunn.com; Andrea Mehta; lbrown@thompsonhorton.com; Holly McIntush; Ryan Newman; Danielle Hatchitt; Jan Blair |
| **Cc:** | Sara E. Janes; lgeisler@textrial.com; quesada@textrial.com; smccaffity@textrial.com; Mia Storm; jrodenberg@textrial.com; Geoff Weisbart; Nicole Ratliff; Gwendolyn Kelly; Deanna Inman; scott@brazilanddunn.com; Colleen Murphey |
| **Subject:** | RE: Doe v Baylor |

Jim,

We intend to fully comply with today's Order.

As to a Motion to Compel, I still do not understand what relief you are seeking by your Motion.  We have produced to you the Pepper Hamilton materials covered by the WP Waiver order and only withheld documents that fall within the carve-out to the waiver ruling in the Order, or are privileged for some other reason and the privilege has not been waived (such as the OCR investigation, third-party litigation, etc.).  As we represented in the Advisory, we are preparing an updated privilege log which reflects the release of those documents.

If you will advise as to how you believe Baylor has not complied with the Pepper WP Waiver Order (such as whether you believe no carve-out exists), that would be helpful.

Also please make sure and copy Lisa's team on future emails.

Thank you.

Julie

**JULIE A. SPRINGER**
direct 512.652.5782     888.844.8441
jspringer@wshllp.com

 **WEISBART SPRINGER HAYES** LLP
212 Lavaca, Suite 200   Austin, TX 78701
**wshllp.com**

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

**From:** Jim Dunnam <jimdunnam@dunnamlaw.com>
**Sent:** Tuesday, February 8, 2022 2:08 PM
**To:** Danielle Hatchitt <dhatchitt@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>
**Cc:** Julie Springer <JSpringer@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>; lgeisler@textrial.com; quesada@textrial.com; smccaffity@textrial.com; Mia Storm <MStorm@WSHLLP.com>; jrodenberg@textrial.com; Geoff Weisbart <Gweisbart@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; Gwendolyn Kelly <gwen@brazilanddunn.com>; Deanna Inman <dinman@textrial.com>; scott@brazilanddunn.com; Colleen Murphey <cmurphey@WSHLLP.com>
**Subject:** RE: Doe v Baylor

Julie / Lisa

We wanted to ask if the order today in ECF 1026 alters Baylor's position on our intended Motion to Compel.

Jim Dunnam
Dunnam & Dunnam LLP
4125 W. Waco Drive
Waco, TX 76710
(254) 753-6437 Telephone
(254) 753-7434 Facsimile
jimdunnam@dunnamlaw.com








This electronic mail transmission contains confidential information intended only for the person(s) named. Any use, distribution, copying or disclosure by any other person is strictly prohibited. If you received this transmission in error, please notify the sender by reply e-mail and then destroy the message.

Important/Confidential: This communication and any files or documents attached to it are intended only for the use of the person or entity to which it is addressed. It contains information that may be privileged, confidential and exempt from disclosure under applicable law. If you are the intended recipient, please be aware that forwarding this message to others may result in a waiver of these privileges. If you are not the intended recipient of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited. If you have

received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.

# EXHIBIT 1-E

| From: | Julie Springer |
|-------|----------------|
| Sent: | Friday, March 18, 2022 3:03 PM |
| To: | Jim Dunnam |
| Cc: | Danielle Hatchitt; Jan Blair; Eleeza Johnson; chad@brazilanddunn.com; Andrea Mehta; lbrown@thompsonhorton.com; Holly McIntush; Ryan Newman; Sara E. Janes; lgeisler@textrial.com; quesada@textrial.com; smccaffity@textrial.com; Mia Storm; jrodenberg@textrial.com; Geoff Weisbart; Nicole Ratliff; Gwendolyn Kelly; Deanna Inman; scott@brazilanddunn.com; Colleen Murphey |
| Subject: | RE: Jane Doe 11 v Baylor - Proposal following conference |

Jim,

Following our meeting with you last Friday, we have conferred with the client and are prepared to propose the following regarding the Pepper Hamilton Work Product production that Baylor withheld from the recent production in the Jane Doe 11 case. As previously noted, those privileged documents were withheld either because they fit one of the exceptions on page 11 of the waiver Order or because they did not involve investigation/implementation work (the documents on Baylor's Pepper Hamilton Investigative Materials from Cozen Privilege Log, Baylor's Pepper Hamilton Investigative Materials Electronic and Hard Copy Binders Privilege Log, Baylor's Post-June 15, 2016 United Lex Privilege Log, and Baylor's Pre-June 15, 2016 United Lex Privilege Log). The following proposal is subject to your agreement, which you expressed last week, that a disclosure to you under a clawback process would not constitute a general waiver of privilege. We will agree to such a process except for the following four categories:

1. Pre-witness interview memoranda and drafts of same;
2. Witness chronologies prepared for witness interviews;
3. Attorney notes of interviews; and
4. Non-investigation/implementation matters such as third-party litigation and government investigations.

We propose that we submit the above four categories directly to a special master who would make a final decision about whether the documents were properly withheld. The special master also would determine any disputes the parties have over whether documents are properly clawed back. The special master's decision would be binding on the parties. Baylor would pay the special master's fees.

We would need to work through a few logistics, such as how we present these documents to the special master, and how the special master is appointed.

Let us know your thoughts and if Plaintiffs would agree to such a proposal. We would need to get approval from the carriers to pay for the special master, but we wanted to make this general proposal now so we can work out any issues around protocol, timing, etc. A qualified special master should be able to accomplish the review efficiently and make final decisions, and there would be no need to burden the Court with further disputes over these records that arise out of the clawback procedure you propose.

Thank you.

Julie

**JULIE A. SPRINGER**
direct 512.652.5782     888.844.8441
jspringer@wshllp.com



**WEISBART SPRINGER HAYES** LLP
212 Lavaca, Suite 200   Austin, TX 78701
**wshllp.com**

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

# EXHIBIT 1-F

| | |
|---|---|
| **From:** | Julie Springer |
| **Sent:** | Wednesday, March 23, 2022 1:55 PM |
| **To:** | Jim Dunnam |
| **Cc:** | Danielle Hatchitt; Jan Blair; Eleeza Johnson; chad@brazilanddunn.com; Andrea Mehta; lbrown@thompsonhorton.com; Holly McIntush; Ryan Newman; Sara E. Janes; lgeisler@textrial.com; quesada@textrial.com; smccaffity@textrial.com; Mia Storm; jrodenberg@textrial.com; Geoff Weisbart; Nicole Ratliff; Gwendolyn Kelly; Deanna Inman; scott@brazilanddunn.com; Colleen Murphey |
| **Subject:** | RE: Jane Doe 11 v Baylor - Proposal following conference |

Jim,

In talking with our team after the call regarding the special master proposal, we concluded that it could be helpful to address your concerns expressed on our call today that the master would not have the proper context to make privilege determinations.  As an initial matter, at the beginning of the review process, both parties could submit briefs providing an overview of the case.   Then, as to the first three of the four categories listed below that would go to the special master for review, we would agree that, after the master made initial determinations about whether the documents were properly withheld or not, counsel for the parties would have the opportunity to meet together with the master, and go through the rulings of the master and raise any issues about those rulings at that time.  The master could then take the document and show it to both parties and if Plaintiffs had any concerns about it being improperly withheld, they could tell the master why they believed it should not be withheld.  Similarly, if Baylor had any concerns about a ruling that the document was not properly withheld, Baylor could raise those concerns.  This would give both sides the opportunity to provide the master with the context you described.  Particularly, as to the first three categories of the four listed below, this should be a fairly straight-forward process.

On the fourth category, non-investigation/implementation matters such as other litigation and government investigations, I would think we could come up with some type of process with the master that would allow you to similarly engage with the master to make sure there is proper context without having to actually review all of the documents.

If you have any interest, please let us know.  We are around.

Julie

**JULIE A. SPRINGER**
direct 512.652.5782    888.844.8441
jspringer@wshllp.com

 WEISBART SPRINGER HAYES LLP
212 Lavaca, Suite 200   Austin, TX 78701
**wshllp.com**

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the

intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

---

**From:** Jim Dunnam <jimdunnam@dunnamlaw.com>
**Sent:** Tuesday, March 22, 2022 7:55 PM
**To:** Julie Springer <JSpringer@WSHLLP.com>
**Cc:** Danielle Hatchitt <dhatchitt@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lbrown@thompsonhorton.com; Holly McIntush <hmcintush@thompsonhorton.com>; Ryan Newman <rnewman@thompsonhorton.com>; Sara E. Janes <SJanes@WSHLLP.com>; lgeisler@textrial.com; quesada@textrial.com; smccaffity@textrial.com; Mia Storm <MStorm@WSHLLP.com>; jrodenberg@textrial.com; Geoff Weisbart <Gweisbart@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; Gwendolyn Kelly <gwen@brazilanddunn.com>; Deanna Inman <dinman@textrial.com>; scott@brazilanddunn.com; Colleen Murphey <cmurphey@WSHLLP.com>
**Subject:** Re: Jane Doe 11 v Baylor - Proposal following conference

Julie

Sorry for the delay.  We have gone over Baylor's new proposal.  I think it easier and more likely to be productive if we can get on the phone or a Zoom to discuss.  Can we make that happen in the morning?

JD

On Mar 18, 2022, at 3:03 PM, Julie Springer <JSpringer@wshllp.com> wrote:

Jim,

Following our meeting with you last Friday, we have conferred with the client and are prepared to propose the following regarding the Pepper Hamilton Work Product production that Baylor withheld from the recent production in the Jane Doe 11 case. As previously noted, those privileged documents were withheld either because they fit one of the exceptions on page 11 of the waiver Order or because they did not involve investigation/implementation work (the documents on Baylor's Pepper Hamilton Investigative Materials from Cozen Privilege Log, Baylor's Pepper Hamilton Investigative Materials Electronic and Hard Copy Binders Privilege Log, Baylor's Post-June 15, 2016 United Lex Privilege Log, and Baylor's Pre-June 15, 2016 United Lex Privilege Log).  The following proposal is subject to your agreement, which you expressed last week, that a disclosure to you under a clawback process would not constitute a general waiver of privilege.  We will agree to such a process except for the following four categories:

1.  Pre-witness interview memoranda and drafts of same;
2.  Witness chronologies prepared for witness interviews;

3. Attorney notes of interviews; and
4. Non-investigation/implementation matters such as third-party litigation and government investigations.

We propose that we submit the above four categories directly to a special master who would make a final decision about whether the documents were properly withheld.  The special master also would determine any disputes the parties have over whether documents are properly clawed back.  The special master's decision would be binding on the parties. Baylor would pay the special master's fees.

We would need to work through a few logistics, such as how we present these documents to the special master, and how the special master is appointed.

Let us know your thoughts and if Plaintiffs would agree to such a proposal.  We would need to get approval from the carriers to pay for the special master, but we wanted to make this general proposal now so we can work out any issues around protocol, timing, etc.  A qualified special master should be able to accomplish the review efficiently and make final decisions, and there would be no need to burden the Court with further disputes over these records that arise out of the clawback procedure you propose.

Thank you.

Julie


**JULIE A. SPRINGER**
direct 512.652.5782      888.844.8441
jspringer@wshllp.com

 WEISBART SPRINGER HAYES LLP
212 Lavaca, Suite 200   Austin, TX 78701
**wshllp.com**

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.



Important/Confidential: This communication and any files or documents attached to it are intended only for the use of the person or entity to which it is addressed. It contains information that may be privileged, confidential and exempt from disclosure under applicable law. If you are the intended recipient, please be aware that forwarding this message to others may result in a waiver of these privileges. If you are not the intended recipient of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited. If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.
Important/Confidential: This communication and any files or documents attached to it are intended only for the use of the person or entity to which it is addressed. It contains information that may be privileged, confidential and exempt from disclosure under applicable law. If you are the intended recipient, please be aware that forwarding this message to

others may result in a waiver of these privileges. If you are not the intended recipient of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited. If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.

Important/Confidential: This communication and any files or documents attached to it are intended only for the use of the person or entity to which it is addressed. It contains information that may be privileged, confidential and exempt from disclosure under applicable law. If you are the intended recipient, please be aware that forwarding this message to others may result in a waiver of these privileges. If you are not the intended recipient of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited. If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al*, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 6:16-CV-00173-RP |
| | § | |
| v. | § | *Consolidated with* |
| | § | 6:17-CV-228-RP |
| BAYLOR UNIVERSITY, | § | 6:17-CV-236-RP |
| | § | |
| Defendant. | § | |

## <u>DECLARATION OF DANIELLE K. HATCHITT</u>

1.      My name is Danielle K. Hatchitt.  I am over eighteen 18 years of age and am fully competent to testify to the matters stated in this declaration.  The statements within this declaration are based upon my personal knowledge.

2.      I am a partner at the law firm Weisbart Springer Hayes LLP ("WSH") and am one of the attorneys of record for Baylor University in this case.  I was one of the primary attorneys as WSH who worked on and coordinated the production of the Pepper Hamilton work product ("PH WP") materials ordered by the Court in the fall of 2021 before I left for maternity leave on November 5, 2021.  After returning from maternity leave on February 1, 2022, I continued to work on this matter.

3.      I have reviewed Plaintiffs' March 24, 2022 letter brief requesting sanctions based on Baylor's alleged deficiencies in the production of the PH WP, as ordered by this Court in Docket 988.

4.      Plaintiffs' claim that Baylor is refusing to allow UnitedLex ("ULEX") to make the production of the PH WP as agreed by the parties is incorrect.  I believe this allegation stems from a dispute relating to approximately 440 document attachments in ULEX's possession.  As a result of some complications from how ULEX numbered and matched documents, ULEX identified additional attachments to PH WP documents in its possession that Baylor had not instructed ULEX to release.  Because Baylor did not know the contents of these attachments, Baylor initially told ULEX that the attachments should not be produced by ULEX because they were not matches to the documents Baylor produced as part of its PH WP production.  However, because the attachments likely contained documents already produced, and after conferring with Plaintiffs' counsel further in an effort to resolve this dispute, Baylor proposed that ULEX produce these attachments to Plaintiffs and Baylor and then Baylor be permitted to clawback privileged documents, if any, that did not fit within the scope of the Court's PH WP waiver ruling.  Plaintiffs have not responded to this proposal—which was proposed verbally, via email and in a proposed letter agreement.  *See* Exhibit 2-A attached hereto.

5.      Plaintiffs also complain that Baylor supplemented its document production since its February 4, 2021 advisory to the court, Dkt. 1025, which notified the Court that Baylor had completed its production of the PH WP as ordered by the Court after the resolution of 19 non-party FERPA objections and that Baylor would be preparing an amended privilege log to reflect the release of the

PH WP within approximately 14 days. The only supplementation of the PH WP documents after that date was on February 18, 2022 and accompanied Baylor's amended privilege log. *See* Exhibit 2-B attached. These supplemental documents (669 documents comprising 250 distinct document families) were released because, as we were amending the log, our firm went back through each of the log entries relating to the PH WP, again, in an effort to ensure Baylor's compliance with Dkt. 988 and in doing so identified additional documents that we believed needed to be released. Most of these documents were duplicative of documents already in Plaintiffs' possession but were released to ensure consistency in the document production and log. Baylor's supplementation of its document production was in compliance with Rule 37.

6.  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed in Austin, Texas on the 28th day of March 2022.

DANIELLE K. HATCHITT

# EXHIBIT 2-A

| | |
|---|---|
| **From:** | Danielle Hatchitt |
| **Sent:** | Friday, March 18, 2022 1:52 PM |
| **To:** | Jim Dunnam; Eleeza Johnson |
| **Cc:** | Julie Springer; Jan Blair; Colleen Murphey |
| **Subject:** | RE: Baylor - Upcoming Production Issue re Work-Product Privilege |
| **Attachments:** | 22-031822 Ltr to J. Dunnam and E. Johnson.pdf; FW: Baylor - Upcoming Production Issue re Work-Product Privilege |

Jim and Eleeza, please see the attached proposed letter agreement.

Thanks,
Dani

**From:** Jim Dunnam <jimdunnam@dunnamlaw.com>
**Sent:** Thursday, March 17, 2022 2:35 PM
**To:** Danielle Hatchitt <dhatchitt@WSHLLP.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>
**Cc:** Julie Springer <JSpringer@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Colleen Murphey <cmurphey@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Can you draft a proposed letter agreement with everything you think needs to be in there?

**From:** Danielle Hatchitt <dhatchitt@WSHLLP.com>
**Sent:** Thursday, March 17, 2022 2:26 PM
**To:** Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>
**Cc:** Julie Springer <JSpringer@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Colleen Murphey <cmurphey@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Hi Eleeza,

I would propose that once Baylor and Plaintiffs receive these attachments from United Lex that Baylor has 30 days to: (i) provide a list of the documents that do <u>not</u> need "AEO" branding to Plaintiffs and United Lex and then United Lex can proceed to re-produce those documents without "AEO" branding for the parties to use in the litigation; and (ii) provide a list of the documents to Plaintiffs that Baylor seeks to clawback.

Let us know if this works.

Thanks,
Dani

**From:** Eleeza Johnson <eleezajohnson@dunnamlaw.com>
**Sent:** Thursday, March 17, 2022 12:26 PM
**To:** Danielle Hatchitt <dhatchitt@WSHLLP.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>
**Cc:** Julie Springer <JSpringer@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Colleen Murphey <cmurphey@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Hi Dani, will you send us your specific proposal with deadlines/timeframes to review, de-designate and/or clawback?

---

**From:** Danielle Hatchitt <dhatchitt@WSHLLP.com>
**Sent:** Wednesday, March 16, 2022 7:38 PM
**To:** Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>
**Cc:** Julie Springer <JSpringer@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Colleen Murphey <cmurphey@WSHLLP.com>
**Subject:** FW: Baylor - Upcoming Production Issue re Work-Product Privilege

Hi Eleeza and Jim, based on our conversation on Friday, I would like to move forward with requesting that United Lex produce the attachments that have been in dispute in the Jane Doe 11 case with the understanding: (i) We are going to ask United Lex to initially tag all of these documents as "AEO" because we do not know their content and they may contain student information. We will de-designate any documents that are not "AEO" after we have an opportunity to review them, and (ii) Once we have an opportunity to review the documents, Baylor will be permitted to claw back any documents it believes are not within the scope of the Court's waiver ruling, and any disputes as to those documents will be presented to the Court. Is this agreeable? If so, I will send the below email to United Lex.

\*\*\*

Hi Dana,

Baylor would like United Lex to produce to the parties the additional attachments you identified for the documents Baylor instructed United Lex to produce in VOL005 and VOL009. To avoid any confusion about which attachments we're referring to, below is your original email raising the issue regarding these additional attachments and attached is the spreadsheet you provided Baylor identifying them. As United Lex only identified additional attachments for the documents received from Pepper Hamilton, and not for the documents received from Baylor, please follow the same instructions for production of Pepper Hamilton documents in this production generally, i.e.:

1. All documents are to be marked "Confidential JD 11 PHWP."
2. For documents provided by Pepper Hamilton: all documents--bates stamp on the face of the document (i.e., not just in the accompanying metadata) with the UnitedLex Control Number and UnitedLex Bates Number.
3. Deliver links identified by set with a load file. Please provide the same fields in the load file as were provided in the previous productions.

In addition, because Baylor is not able to review these documents prior to production, please produce each page stamped <u>Attorney's Eyes Only</u> for now. Baylor will work with Plaintiffs' counsel to de-designate any documents that do not need "AEO" classification after the parties have an opportunity to review the documents. Additionally, please note that Baylor is not waiving its assertion of privilege as to these documents and retains the right to claw back these documents from Plaintiffs if they are not within the scope of the Court's work product waiver ruling in the Jane Doe 11 case.

Thanks,
Dani



**WEISBART SPRINGER HAYES**

**Danielle Hatchitt**
dhatchitt@wshllp.com
direct 512.652.5791

March 18, 2022

<u>VIA EMAIL:</u>
Jim Dunnam
Eleeza Johnson
DUNNAM & DUNNAM, L.L.P.
4125 West Waco Drive
Waco, Texas 76710
jdunnam@dunnamlaw.com
ejohnson@dunnamlaw.com

     Re:    Case No. 6:16-CV-228-RP; *Jane Doe 11 v. Baylor University*; In the United States District Court for the Western District of Texas – Waco Division

Eleeza and Jim,

    I am writing this letter at Mr. Dunnam's request to address our proposed agreement regarding the "attachment" or "document family" dispute the parties have been attempting to work through relating to the production of the Pepper Hamilton work product documents in the Jane Doe 11 case through United Lex.

    Based on our conversation on Friday, March 11, 2022, I understand that Plaintiffs are amenable to Baylor instructing United Lex to produce these disputed documents to Baylor and Plaintiffs with a clawback procedure in place.

    I propose the following agreement to facilitate this production:

- Baylor will instruct UnitedLex to produce the disputed documents as set forth in the proposed email, attached hereto.

- UnitedLex will brand all of the documents as "AEO" – in case any of the documents contain student information.

- Once Baylor and Plaintiffs receive the documents from UnitedLex, Baylor will have 30 days to:

    (i)    Provide a list of the documents by bates number that do <u>not</u> need "AEO" branding to Plaintiffs and UnitedLex, and then UnitedLex can proceed to re-produce those documents without "AEO" branding for the parties to use in the litigation; and

    (ii)    Provide a list of the documents by bates number to Plaintiffs that Baylor seeks to clawback as continuing to be privileged and not subject to the Court's Pepper Hamilton work product waiver ruling.



March 18, 2022
Page 2

- If Plaintiffs disagree with the documents Baylor seeks to clawback, the parties will confer and if they are unable to reach agreement, they will present any disputed issues to the Court.

Additionally, UnitedLex is still in the process of producing additional Pepper Hamilton work product documents identified by Baylor. If a similar "attachment" issue arises with these document productions, we agree to follow this same procedure with UnitedLex.

Please let us know if you have any comments or changes. Otherwise, please confirm this represents our agreement.

Sincerely,

Danielle Hatchitt

AGREED:

_____
Jim Dunnam
Attorney for Plaintiffs

| | |
|---|---|
| **Subject:** | FW: Baylor - Upcoming Production Issue re Work-Product Privilege |
| **Attachments:** | VOL005 and VOL009 Documents and Additional Family Members.xlsx |

Hi Dana,

Baylor would like United Lex to produce to the parties the additional attachments you identified for the documents Baylor instructed United Lex to produce in VOL005 and VOL009. To avoid any confusion about which attachments we're referring to, below is your original email raising the issue regarding these additional attachments and attached is the spreadsheet you provided Baylor identifying them. As United Lex only identified additional attachments for the documents received from Pepper Hamilton, and not for the documents received from Baylor, please follow the same instructions for production of Pepper Hamilton documents in this production generally, i.e.:

1. All documents are to be marked "Confidential JD 11 PHWP."
2. For documents provided by Pepper Hamilton: all documents--bates stamp on the face of the document (i.e., not just in the accompanying metadata) with the UnitedLex Control Number and UnitedLex Bates Number.
3. Deliver links identified by set with a load file. Please provide the same fields in the load file as were provided in the previous productions.

In addition, because Baylor is not able to review these documents prior to production, please produce each page stamped <u>Attorney's Eyes Only</u> for now. Baylor will work with Plaintiffs' counsel to de-designate any documents that do not need "AEO" classification after the parties have an opportunity to review the documents.

Thanks,
Dani

**From:** Dana Fischer <Dana.Fischer@unitedlex.com>
**Sent:** Tuesday, January 11, 2022 3:54 PM
**To:** Colleen Murphey <cmurphey@WSHLLP.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; David West <David.West@unitedlex.com>; Jamie McConnell <Jamie.McConnell@unitedlex.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>; ULX_Baylor_Doe_et_al_v_Baylor <ULX_Baylor_Doe_et_al_v_Baylor@unitedlex.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Hi Colleen –

Certainly.

Please see the attached spreadsheet which contains two tabs. The additional 440 family members are on the first tab and the second tab contains the full families so that you can see them all together in case that's helpful. The handful of files without a document extension listed are PDFs. The BegAttach and EndAttach-related fields will indicate the family number ranges.

Please let us know if you have any questions and/or need additional information.

Thank you

Dana

**Dana Fischer** | Project Manager, Litigation Professional Services | <span style="color:red">UnitedLex</span> | +1.804.629.0913

---

**From:** Colleen Murphey <[cmurphey@WSHLLP.com](mailto:cmurphey@WSHLLP.com)>
**Sent:** Tuesday, January 11, 2022 3:54 PM
**To:** Dana Fischer <[Dana.Fischer@unitedlex.com](mailto:Dana.Fischer@unitedlex.com)>; Eleeza Johnson <[eleezajohnson@dunnamlaw.com](mailto:eleezajohnson@dunnamlaw.com)>; David West <[David.West@unitedlex.com](mailto:David.West@unitedlex.com)>; Jamie McConnell <[Jamie.McConnell@unitedlex.com](mailto:Jamie.McConnell@unitedlex.com)>; Danielle Hatchitt <[dhatchitt@WSHLLP.com](mailto:dhatchitt@WSHLLP.com)>; Christopher Burton <[christopher.burton@unitedlex.com](mailto:christopher.burton@unitedlex.com)>; Jim Dunnam <[jimdunnam@dunnamlaw.com](mailto:jimdunnam@dunnamlaw.com)>; Julie Springer <[JSpringer@WSHLLP.com](mailto:JSpringer@WSHLLP.com)>; Nicole Ratliff <[nicole@dunnamlaw.com](mailto:nicole@dunnamlaw.com)>; [chad@brazilanddunn.com](mailto:chad@brazilanddunn.com); Andrea Mehta <[andreamehta@dunnamlaw.com](mailto:andreamehta@dunnamlaw.com)>; [lgeisler@textrial.com](mailto:lgeisler@textrial.com)
**Cc:** Jeff Brown <[Jeff.Brown@unitedlex.com](mailto:Jeff.Brown@unitedlex.com)>; Geoff Weisbart <[Gweisbart@WSHLLP.com](mailto:Gweisbart@WSHLLP.com)>; Jan Blair <[JBlair@WSHLLP.com](mailto:JBlair@WSHLLP.com)>; Vedran Camdzic <[vedran.camdzic@unitedlex.com](mailto:vedran.camdzic@unitedlex.com)>; Mia Storm <[MStorm@WSHLLP.com](mailto:MStorm@WSHLLP.com)>; Sara E. Janes <[SJanes@WSHLLP.com](mailto:SJanes@WSHLLP.com)>; ULX_Baylor_Doe_et_al_v_Baylor <[ULX_Baylor_Doe_et_al_v_Baylor@unitedlex.com](mailto:ULX_Baylor_Doe_et_al_v_Baylor@unitedlex.com)>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

[EXTERNAL EMAIL]

Hi Dana,

Could you send us some information on the 201 family members for VOL005 and 239 family members for VOL009? We'd appreciate if you could tell us for each document:

- United Lex Control Number
- Associated bates numbers (if any)
- Hash value
- File type
- Bates range and United Lex control number for the family/parent document

Thank you,
Colleen

<span style="color:#b8860b">**COLLEEN MURPHEY**</span>
direct 512.652.5785    toll-free 888.844.8441    fax 512.682.2074
[cmurphey@wshllp.com](mailto:cmurphey@wshllp.com)

 **WEISBART SPRINGER HAYES** LLP
212 Lavaca Street, Suite 200  Austin, TX 78701
wshllp.com

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

---

**From:** Dana Fischer <[Dana.Fischer@unitedlex.com](mailto:Dana.Fischer@unitedlex.com)>
**Sent:** Monday, January 10, 2022 5:24 PM
**To:** Eleeza Johnson <[eleezajohnson@dunnamlaw.com](mailto:eleezajohnson@dunnamlaw.com)>; David West <[David.West@unitedlex.com](mailto:David.West@unitedlex.com)>; Jamie McConnell <[Jamie.McConnell@unitedlex.com](mailto:Jamie.McConnell@unitedlex.com)>; Colleen Murphey <[cmurphey@WSHLLP.com](mailto:cmurphey@WSHLLP.com)>; Danielle Hatchitt <[dhatchitt@WSHLLP.com](mailto:dhatchitt@WSHLLP.com)>; Christopher Burton <[christopher.burton@unitedlex.com](mailto:christopher.burton@unitedlex.com)>; Jim Dunnam

<[jimdunnam@dunnamlaw.com](mailto:jimdunnam@dunnamlaw.com)>; Julie Springer <[JSpringer@WSHLLP.com](mailto:JSpringer@WSHLLP.com)>; Nicole Ratliff <[nicole@dunnamlaw.com](mailto:nicole@dunnamlaw.com)>; [chad@brazilanddunn.com](mailto:chad@brazilanddunn.com); Andrea Mehta <[andreamehta@dunnamlaw.com](mailto:andreamehta@dunnamlaw.com)>; [lgeisler@textrial.com](mailto:lgeisler@textrial.com)
**Cc:** Jeff Brown <[Jeff.Brown@unitedlex.com](mailto:Jeff.Brown@unitedlex.com)>; Geoff Weisbart <[Gweisbart@WSHLLP.com](mailto:Gweisbart@WSHLLP.com)>; Jan Blair <[JBlair@WSHLLP.com](mailto:JBlair@WSHLLP.com)>; Vedran Camdzic <[vedran.camdzic@unitedlex.com](mailto:vedran.camdzic@unitedlex.com)>; Mia Storm <[MStorm@WSHLLP.com](mailto:MStorm@WSHLLP.com)>; Sara E. Janes <[SJanes@WSHLLP.com](mailto:SJanes@WSHLLP.com)>; ULX_Baylor_Doe_et_al_v_Baylor <[ULX_Baylor_Doe_et_al_v_Baylor@unitedlex.com](mailto:ULX_Baylor_Doe_et_al_v_Baylor@unitedlex.com)>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Hello Everyone –

David West and I are colleagues, and I am providing assistance on this project.

We have the below update for your review and consideration as we prepare for the production:

- ULX is able to double brand for numbering as well as confidentiality, where needed. For the placement of such branding, we will plan to use our standard locations – Bates branding on bottom right footer and confidential branding on bottom left footer, unless instructed otherwise
  - All documents will receive **Confidential JD 11 PHWP** and for the documents coded as **Attorneys' Eyes Only**, those documents will contain both confidentiality branding
  - The 589 documents on the JD11VOL005 spreadsheet will be branded with the ULX Control Number (this displays as the BegDoc field in Relativity), as well as the ULX Production Bates number which begins with the prefix, ULPH
  - The 689 documents on the JD11VOL009 spreadsheet will be branded with the BegDoc/ULX Control Number, as well as the provided PH Bates number
- Regarding instruction #6 to produce documents with attachments, we ran the searches *with families* in Relativity and the counts for both populations <u>increased</u>
  - VOL005 now contains 790 documents, adding 201 family members
  - VOL009 now contains 928 documents with families, adding 239 family members
  - The additional family members do not contain corresponding PH Bates numbers. While some of these additional documents show values in the **Baylor Identified Match** field, a search for them in another Relativity workspace only yielded a handful of exact matches, based on the assigned MD5 Hash values. If these additional family members need to be produced, then please advise on:
    - Whether they require any additional document review, redactions, etc.
    - How to treat the numbering for them. All of them have BegDoc/ULX Control Numbers and ULX Production Bates numbers, which are sufficient for stamping documents in the JD11VOL005 set. However, the families in JD11VOL009 are the group of documents without the second layer of numbering being requested – the PH Bates numbers
- As for other production specifications:
  - We reviewed samples of prior productions and they all used the same list of metadata fields. Please see the attached list of these fields and let us know if you have any questions or would like to see different metadata fields provided in the production's DAT file
  - Confirm that Excels and WAV audio files should be produced natively along with an accompanying placeholder image slip sheet.
  - Confirm that a Technical Issue slip sheet can be used for 3 PDF files that are corrupt, not viewable, and will not image. These 3 documents are on the JD11VOL005 list
  - Confirm the Volume Name/Number to be used for each data set if different from the current names of JD11VOL005 and JD11VOL009
  - Confirm the PH number format for the following 14 documents on the VOL009 list since they are different from other entries. This is what they look like in Relativity and how they will appear on the image placeholder along with the BegDoc/Control number:

| | BegDoc | PH Beg Bates | PH End Bates |
|---|---|---|---|
| | Filter | PH_3203182®PH_3203183 | Filter |
| | CONTROL0013238 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |
| | CONTROL0013239 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |
| | CONTROL0013259 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |
| | CONTROL0013260 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |
| | CONTROL0013274 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |
| | CONTROL0013275 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |
| | CONTROL0013278 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |
| | CONTROL0013279 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |
| | CONTROL0013294 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |
| | CONTROL0013295 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |
| | CONTROL0013443 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |
| | CONTROL0013444 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |
| | CONTROL0013464 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |
| | CONTROL0013465 | PH_3203182®PH_3203183 | PH_3203182®PH_3203183 |

Please let us know any questions that you might have and provide guidance regarding how to treat the family members that are not on the JD11VOL005 and JD11VOL009 lists.

Thank you

Dana

**Dana Fischer** | Project Manager, Litigation Professional Services | UnitedLex | +1.804.629.0913

---

**From:** Eleeza Johnson <eleezajohnson@dunnamlaw.com>
**Sent:** Friday, January 7, 2022 12:58 PM
**To:** David West <David.West@unitedlex.com>; Jamie McConnell <Jamie.McConnell@unitedlex.com>; Colleen Murphey <cmurphey@WSHLLP.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>; ULX_Baylor_Doe_et_al_v_Baylor <ULX_Baylor_Doe_et_al_v_Baylor@unitedlex.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

[EXTERNAL EMAIL]

David, the instructions sent on 11/9 include the specifics for bates numbers. Please let us know if you have any questions.

Thank you,

Eleeza Johnson
Dunnam & Dunnam LLP
4125 W. Waco Drive
Waco, TX 76710
(254) 753-6437
(254) 753-7434
eleezajohnson@dunnamlaw.com



Important/Confidential: This communication and any files or documents attached to it are intended only for the use of the person or entity to which it is addressed. It contains information that may be privileged, confidential and exempt from disclosure under applicable law. If you are the intended recipient, please be aware that forwarding this message to others may result in a waiver of these privileges. If you are not the intended recipient of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited. If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.

**From:** David West <David.West@unitedlex.com>
**Sent:** Friday, January 7, 2022 11:03 AM
**To:** Jamie McConnell <Jamie.McConnell@unitedlex.com>; Colleen Murphey <cmurphey@WSHLLP.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com, chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>; ULX_Baylor_Doe_et_al_v_Baylor <ULX_Baylor_Doe_et_al_v_Baylor@unitedlex.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Hi all,

We are working to run and export this production. We have one question right now. Are we using the Bates numbers as provided in the spreadsheets for the documents as the Bates numbers for this production, or using something new altogether?

Thanks.

**David West** | Project Manager, Litigation Professional Services | UnitedLex | +1 (224) 221-8527

**From:** Jamie McConnell <Jamie.McConnell@unitedlex.com>
**Sent:** Wednesday, December 22, 2021 9:30 PM
**To:** Colleen Murphey <cmurphey@WSHLLP.com>; David West <David.West@unitedlex.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton

<christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Julie Springer
<JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com>; Andrea Mehta
<andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair
<JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Mia Storm <MStorm@WSHLLP.com>; Sara
E. Janes <SJanes@WSHLLP.com>; ULX_Baylor_Doe_et_al_v_Baylor <ULX_Baylor_Doe_et_al_v_Baylor@unitedlex.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Hello Colleen,

Thank you for the confirmation.  We will disregard these documents and follow-up if we have any additional questions.

Happy Holidays!

Thank you,

**Jamie McConnell** | Associate Project Manager, Litigation Professional Services | UnitedLex | +1.913.205.7766

---

**From:** Colleen Murphey <cmurphey@WSHLLP.com>
**Sent:** Wednesday, December 22, 2021 10:15 AM
**To:** David West <David.West@unitedlex.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Danielle Hatchitt
<dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam
<jimdunnam@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>;
chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair
<JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Mia Storm <MStorm@WSHLLP.com>; Sara
E. Janes <SJanes@WSHLLP.com>; ULX_Baylor_Doe_et_al_v_Baylor <ULX_Baylor_Doe_et_al_v_Baylor@unitedlex.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

[EXTERNAL EMAIL]

Hi David,

It looks like those documents were included with the redacted images we provided in error.  Baylor produced them, but
you are correct that they are not listed in the spreadsheets we provided for your production.  You can disregard those
and apologies for the confusion.

Thank you,
Colleen

**COLLEEN MURPHEY**
direct 512.652.5785    toll-free 888.844.8441    fax 512.682.2074
cmurphey@wshllp.com

 **WEISBART SPRINGER HAYES** LLP
212 Lavaca Street, Suite 200  Austin, TX 78701
wshllp.com

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected
by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are
hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly

prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

**From:** David West <David.West@unitedlex.com>
**Sent:** Monday, December 20, 2021 4:02 PM
**To:** Colleen Murphey <cmurphey@WSHLLP.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>; ULX_Baylor_Doe_et_al_v_Baylor <ULX_Baylor_Doe_et_al_v_Baylor@unitedlex.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Hi all,

I wanted to provide an update as well as follow-up questions on this matter.

We have completed over 95% of the redaction work thus far.  We have a few documents which we have thus far been unable to actually find/identify and want to confirm with you. You can see these below. For these, can you please confirm the starting Bates number of the document so we can try and find the pages? Once we are able to confirm the documents for these, we will be able to have them redacted, work on the final production, and provide that to you.

Thank you.

| |
|---|
| PH_2847310 |
| PH_2847311 |
| PH_2847312 |
| PH_2847313 |
| PH_2847314 |
| PH_2847315 |
| PH_2847316 |
| PH_2847317 |
| PH_2847433 |
| PH_3002655 |
| PH_3045716 |
| PH_3045717 |
| PH_3045718 |
| PH_3045719 |

| |
|---|
| PH_3045720 |
| PH_3045721 |

**David West** | Project Manager, Litigation Professional Services | UnitedLex | +1 (224) 221-8527

---

**From:** David West <David.West@unitedlex.com>
**Sent:** Wednesday, December 1, 2021 6:05 PM
**To:** Colleen Murphey <cmurphey@WSHLLP.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>; ULX_Baylor_Doe_et_al_v_Baylor <ULX_Baylor_Doe_et_al_v_Baylor@unitedlex.com>
**Subject:** Re: Baylor - Upcoming Production Issue re Work-Product Privilege

Thanks Colleen. We'll get these downloaded tomorrow and let you know if we have other questions.

**David West** | Project Manager, Litigation Services | UnitedLex | +1 (224) 221-8527

---

**From:** Colleen Murphey <cmurphey@WSHLLP.com>
**Sent:** Wednesday, December 1, 2021 5:49:45 PM
**To:** David West <David.West@unitedlex.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com <chad@brazilanddunn.com>; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com <lgeisler@textrial.com>
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>; ULX_Baylor_Doe_et_al_v_Baylor <ULX_Baylor_Doe_et_al_v_Baylor@unitedlex.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

[EXTERNAL EMAIL]

Hi David,

Your understanding is correct as to the procedure for the production.

Below are new links to the redacted documents. The password is the same as for the previous links. Please note these links will also expire after six days.

JD11VOL005
To view and download your file(s), visit:
https://www.sendthisfile.com/fFrNTbeEQbLzqnbvmbJSWVDe

JD11VOL009
To view and download your file(s), visit:
https://www.sendthisfile.com/XshINUBJlWYPZdPyCXmaqdSE

Please let us know if you have any issues accessing the documents or any other questions.

Thanks,
Colleen

**COLLEEN MURPHEY**
direct 512.652.5785    toll-free 888.844.8441    fax 512.682.2074
cmurphey@wshllp.com

 WEISBART SPRINGER HAYES LLP
212 Lavaca Street, Suite 200  Austin, TX 78701
wshllp.com

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

**From:** David West <David.West@unitedlex.com>
**Sent:** Tuesday, November 30, 2021 2:57 PM
**To:** Colleen Murphey <cmurphey@WSHLLP.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>; ULX_Baylor_Doe_et_al_v_Baylor <ULX_Baylor_Doe_et_al_v_Baylor@unitedlex.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Hi Colleen,

Apologies for the delay in getting back to you on this.

First, I should let you know that when we tried to download the files at the links provided in the Word document, those links seemed to have expired. Can we have those re-loaded for us to download please?

Second, in reviewing this, I want to make sure that my understanding is correct so that we can provide the correct output.

- o   We have been provided two spreadsheets with lists of documents based on control number
- o   All of these documents are to be produced per the instructions provided under the heading "Production" in the Word document sent
- o   The documents which are at the links have had redactions applied, and we are instructed to apply those same redactions to the corresponding documents in Relativity
- o   Once redactions are applied, all documents listed will be produced

If you can please confirm that, and then provide new download then we will work on getting this completed as quickly as possible.

Thank you and let me know if you have any questions.

**David West** | Project Manager, Litigation Professional Services | UnitedLex | +1 (224) 221-8527

---

**From:** Colleen Murphey <cmurphey@WSHLLP.com>
**Sent:** Tuesday, November 9, 2021 12:41 PM
**To:** David West <David.West@unitedlex.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

[EXTERNAL EMAIL]

David, attached please find the instructions the parties have agreed on for this production. Please let us know if you would like to schedule a call to discuss and answer any questions you may have.

Thanks,
Colleen

**COLLEEN MURPHEY**
direct 512.652.5785    toll-free 888.844.8441    fax 512.682.2074
cmurphey@wshllp.com

 **WEISBART SPRINGER HAYES** LLP
212 Lavaca Street, Suite 200  Austin, TX 78701
wshllp.com

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

---

**From:** David West <David.West@unitedlex.com>
**Sent:** Tuesday, November 9, 2021 8:06 AM
**To:** Colleen Murphey <cmurphey@WSHLLP.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Thanks Colleen. I am reviewing what was provided and will wait to hear from all regarding additional information and instructions.

**David West** | Project Manager, Litigation Professional Services | UnitedLex | +1 (224) 221-8527

**From:** Colleen Murphey <cmurphey@WSHLLP.com>
**Sent:** Monday, November 8, 2021 6:13 PM
**To:** David West <David.West@unitedlex.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege


[EXTERNAL EMAIL]


David, we realize you will need additional information to produce the documents and are still expecting that the parties will be able to work out instructions.


Thanks,
Colleen

**COLLEEN MURPHEY**
direct 512.652.5785    toll-free 888.844.8441    fax 512.682.2074
cmurphey@wshllp.com

 **WEISBART SPRINGER HAYES** LLP

212 Lavaca Street, Suite 200  Austin, TX 78701
wshllp.com

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

**From:** David West <David.West@unitedlex.com>
**Sent:** Monday, November 8, 2021 4:50 PM
**To:** Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Colleen Murphey <cmurphey@WSHLLP.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Eleeza,

We will review and get back to you.

**David West** | Project Manager, Litigation Professional Services | UnitedLex | +1 (224) 221-8527

**From:** Eleeza Johnson <eleezajohnson@dunnamlaw.com>
**Sent:** Monday, November 8, 2021 4:20 PM
**To:** David West <David.West@unitedlex.com>; Colleen Murphey <cmurphey@WSHLLP.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege


[EXTERNAL EMAIL]

David, the parties were not able to reach an agreement regarding instructions. The parties Joint Advisory regarding the logistics for production is attached. Baylor previously provided two spreadsheets identifying by control number the documents to be produced in this first round of production. After reviewing the advisory please let us know what additional information you need.

Thank you,


Eleeza Johnson
Dunnam & Dunnam LLP
4125 W. Waco Drive
Waco, TX 76710
(254) 753-6437
(254) 753-7434
eleezajohnson@dunnamlaw.com



Important/Confidential: This communication and any files or documents attached to it are intended only for the use of the person or entity to which it is addressed. It contains information that may be privileged, confidential and exempt from disclosure under applicable law. If you are the intended recipient, please be aware that forwarding this message to others may result in a waiver of these privileges. If you are not the intended recipient of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited. If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.


**From:** David West <David.West@unitedlex.com>
**Sent:** Monday, November 8, 2021 2:59 PM
**To:** Colleen Murphey <cmurphey@WSHLLP.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Thanks for the update Colleen. Let me know if there is anything we can do to help facilitate on our end.

Thanks.

**David West** | Project Manager, Litigation Professional Services | UnitedLex | +1 (224) 221-8527

---

**From:** Colleen Murphey <cmurphey@WSHLLP.com>
**Sent:** Monday, November 8, 2021 2:58 PM
**To:** David West <David.West@unitedlex.com>; Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

[EXTERNAL EMAIL]

Hi David,

We are still working on the instructions for the production with Plaintiffs' counsel. We hope to have them to you soon.

Thank you,
Colleen

**COLLEEN MURPHEY**
direct 512.652.5785    toll-free 888.844.8441    fax 512.682.2074
cmurphey@wshllp.com

**WEISBART SPRINGER HAYES** LLP
212 Lavaca Street, Suite 200  Austin, TX 78701
wshllp.com

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

---

**From:** David West <David.West@unitedlex.com>
**Sent:** Monday, November 8, 2021 2:32 PM
**To:** Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>; Colleen Murphey <cmurphey@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Good afternoon everyone.

I am following up on the call we had on 10/29. At the end of that we were told we would receive documentation that would provide us the information we needed to produce more documents from the existing workspaces which we have restored. We have not yet received that and I wanted to check in and see if we should be expecting that soon.

Thank you.

**David West** | Project Manager, Litigation Professional Services | UnitedLex | +1 (224) 221-8527

---

**From:** Danielle Hatchitt <dhatchitt@WSHLLP.com>
**Sent:** Thursday, October 28, 2021 4:36 PM
**To:** David West <David.West@unitedlex.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>; Colleen Murphey <cmurphey@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege


[EXTERNAL EMAIL]

Hi David,

The parties are available for a call tomorrow (10/29) at 10:00 AM CST if that still works for your team.

Thanks,
Dani

**DANIELLE HATCHITT**
direct 512.652.5791    toll-free 888.844.8441    fax 512.682.2074
dhatchitt@wshllp.com

 **WEISBART SPRINGER HAYES** LLP
212 Lavaca, Suite 200 Austin, TX 78701
**wshllp.com**

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

---

**From:** David West <David.West@unitedlex.com>
**Sent:** Wednesday, October 27, 2021 5:09 PM
**To:** Danielle Hatchitt <dhatchitt@WSHLLP.com>; Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff <nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta

<andreamehta@dunnamlaw.com>; lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair
<JBlair@WSHLLP.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>; Geoff Weisbart
<Gweisbart@WSHLLP.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes <SJanes@WSHLLP.com>; Colleen
Murphey <cmurphey@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

Hi Danielle,

We have availability during the following windows:

10/28 11 AM – 12 PM CST
10/28 3 PM – 3:30 PM CST
10/29 9 AM – 11 AM CST
10/29 3 PM – 3:30 PM CST

If none of these windows work please let me know and we can look at something for next week.

**David West** | Project Manager, Litigation Professional Services | UnitedLex | +1 (224) 221-8527

---

**From:** Danielle Hatchitt <dhatchitt@WSHLLP.com>
**Sent:** Wednesday, October 27, 2021 5:02 PM
**To:** Christopher Burton <christopher.burton@unitedlex.com>; Jim Dunnam <jimdunnam@dunnamlaw.com>; Eleeza
Johnson <eleezajohnson@dunnamlaw.com>; Julie Springer <JSpringer@WSHLLP.com>; Nicole Ratliff
<nicole@dunnamlaw.com>; chad@brazilanddunn.com; Andrea Mehta <andreamehta@dunnamlaw.com>;
lgeisler@textrial.com
**Cc:** Jeff Brown <Jeff.Brown@unitedlex.com>; Geoff Weisbart <Gweisbart@WSHLLP.com>; Jan Blair
<JBlair@WSHLLP.com>; David West <David.West@unitedlex.com>; Vedran Camdzic <vedran.camdzic@unitedlex.com>;
Geoff Weisbart <Gweisbart@WSHLLP.com>; Mia Storm <MStorm@WSHLLP.com>; Sara E. Janes
<SJanes@WSHLLP.com>; Colleen Murphey <cmurphey@WSHLLP.com>
**Subject:** RE: Baylor - Upcoming Production Issue re Work-Product Privilege

[EXTERNAL EMAIL]

Hi Chris,

I represent Baylor University. I am writing to confirm whether or not UnitedLex has completed its restoration of
the Relativity workspaces from archive of the materials. Once the restoration is complete, the parties would like
to set up a call with United Lex so that Baylor can facilitate the production of certain documents through United
Lex to the parties. Attached is a listing of the documents by control number that we will need United Lex to
produce to the parties with certain specifications (including redactions). The parties will confer on appropriate
directions for this process and then we can set up a call. We will also be requesting additional document
productions from United Lex once certain documents that are subject to FERPA protections are clear to be
released.

Please let us know the status of the restoration.

Thank you,
Dani

**DANIELLE HATCHITT**

direct 512.652.5791    toll-free 888.844.8441    fax 512.682.2074
dhatchitt@wshllp.com



**WEISBART SPRINGER HAYES** LLP
212 Lavaca, Suite 200 Austin, TX 78701
**wshllp.com**

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information
belonging to the sender which is protected by the attorney-client privilege. The information is intended only for
the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure,
copying, distribution or the taking of any action in reliance on the contents of this information is strictly
prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in
error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

Important/Confidential: This communication and any files or documents attached to it are intended only for the use of
the person or entity to which it is addressed. It contains information that may be privileged, confidential and exempt
from disclosure under applicable law. If you are the intended recipient, please be aware that forwarding this message to
others may result in a waiver of these privileges. If you are not the intended recipient of this communication, you are
hereby notified that the copying, distribution or other use of this communication is strictly prohibited. If you have
received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms
of this communication (electronic or paper). Thank you.
Important/Confidential: This communication and any files or documents attached to it are intended only for the use of
the person or entity to which it is addressed. It contains information that may be privileged, confidential and exempt
from disclosure under applicable law. If you are the intended recipient, please be aware that forwarding this message to
others may result in a waiver of these privileges. If you are not the intended recipient of this communication, you are
hereby notified that the copying, distribution or other use of this communication is strictly prohibited. If you have
received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms
of this communication (electronic or paper). Thank you.
Important/Confidential: This communication and any files or documents attached to it are intended only for the use of
the person or entity to which it is addressed. It contains information that may be privileged, confidential and exempt
from disclosure under applicable law. If you are the intended recipient, please be aware that forwarding this message to
others may result in a waiver of these privileges. If you are not the intended recipient of this communication, you are
hereby notified that the copying, distribution or other use of this communication is strictly prohibited. If you have
received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms
of this communication (electronic or paper). Thank you.

# EXHIBIT 2-B

| | |
|---|---|
| **From:** | Danielle Hatchitt |
| **Sent:** | Friday, February 18, 2022 6:30 PM |
| **To:** | Jim Dunnam; Eleeza Johnson |
| **Cc:** | Julie Springer; Colleen Murphey; Jan Blair; lgeisler@textrial.com; quesada@textrial.com; jrodenberg@textrial.com; smccaffity@textrial.com; Gwendolyn Kelly; Eleeza Johnson; Julie Springer; Holly McIntush; Sara E. Janes; Lori Perez; Geoff Weisbart; Jan Blair; Ryan Newman; Chad Dunn; Andrea Mehta; Nicole Ratliff; Lisa Brown |
| **Subject:** | Jane Doe 11 Amended Privilege Log |
| **Attachments:** | 22-021822 Baylor's Master Privilege Log (Jane Doe 11 v. Baylor University).pdf |

Jim and Eleeza,

Since I did not hear back from you in response to my email asking for additional time to prepare an amended log to reflect the documents released this week, we are attaching an amended privilege log for the Jane Doe 11 case, which reflects the release of the Pepper Hamilton work product documents pursuant to the Court's Order, Dkt. 988. In addition, we are sending a link to additional documents we identified in amending the log that, with a few exceptions, are for the most part duplicative of documents previously produced to Plaintiffs. We are producing these to ensure consistency in our production and logging of the Pepper Hamilton work product documents. We will be sending UnitedLex a list of control numbers reflecting the documents that have been produced following the Court's ruling on the FERPA objections and these documents so that UnitedLex can produce documents to you.

Please note that this log is for the Jane Doe 11 case only and not Jane Does 1-10 or Jane Does 12-15. We are also preparing an amended log reflecting the release of the Pepper Hamilton documents recently ordered by the court in Dkt. 1026, as well as the release of Bunting documents.

I hope everyone has a nice weekend.

Thank you,
Dani

**DANIELLE HATCHITT**
direct 512.652.5791    toll-free 888.844.8441    fax 512.682.2074
dhatchitt@wshllp.com

 WEISBART SPRINGER HAYES LLP
212 Lavaca, Suite 200 Austin, TX 78701
**wshllp.com**

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information
belonging to the sender which is protected by the attorney-client privilege. The information is intended only for
the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure,
copying, distribution or the taking of any action in reliance on the contents of this information is strictly
prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in
error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

---

**From:** Danielle Hatchitt
**Sent:** Thursday, February 17, 2022 4:41 PM
**To:** Jim Dunnam <jimdunnam@dunnamlaw.com>; Eleeza Johnson <eleezajohnson@dunnamlaw.com>

**Cc:** Julie Springer <JSpringer@WSHLLP.com>; Colleen Murphey <cmurphey@WSHLLP.com>; Jan Blair <JBlair@WSHLLP.com>
**Subject:** Jane Doe 11 Amended Privilege Log

Jim and Eleeza,

We are working to finalize the privilege log in the Jane Doe 11 case to reflect all of the documents that have been released as a result of the waiver ruling and subsequent court orders. I was hoping to have that completed by tomorrow, but because several hundred documents were released this week as a result of the Court's UnitedLex order (Dkt. 1026) and as a result of the Bunting subpoena, I have not had a chance to reflect that on our log yet. Would you be opposed to giving us until Monday, February 28 to serve the amended log? I really would appreciate the extra time.

Thanks,
Dani

**DANIELLE HATCHITT**
direct 512.652.5791    toll-free 888.844.8441    fax 512.682.2074
dhatchitt@wshllp.com

 **WEISBART SPRINGER HAYES** LLP
212 Lavaca, Suite 200 Austin, TX 78701
**wshllp.com**

CONFIDENTIALITY NOTICE
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

# EXHIBIT 3

# *Winfield v. City of New York*

United States District Court for the Southern District of New York

May 10, 2018, Decided; May 10, 2018, Filed

15-cv-05236 (LTS) (KHP)

**Reporter**

2018 U.S. Dist. LEXIS 79281 *; 106 Fed. R. Evid. Serv. (Callaghan) 432; 2018 WL 2148435

JANELL WINFIELD, TRACEY STEWART, and SHAUNA NOEL, Plaintiffs, -against- CITY OF NEW YORK, Defendant.

**Prior History:** *Winfield v. City of New York, 2016 U.S. Dist. LEXIS 146919 (S.D.N.Y., Oct. 24, 2016)*

**Counsel:** **[*1]** For Janell Winfield, Tracey Stewart, Shauna Noel, Plaintiffs: Craig Gurian, LEAD ATTORNEY, New York, NY; Eric J. Hecker, Mariann Meier Wang, LEAD ATTORNEYS, Heather Clare Gregorio, Cuti Hecker Wang, LLP (nyc), New York, NY; Roger Daniel Maldonado, LEAD ATTORNEY, New York, NY.

For City of New York, Defendant: Jasmine M. Georges, LEAD ATTORNEY, NYC Law Department, Office of the Corporation Counsel (NYC), New York, NY; Melanie Vogel Sadok, LEAD ATTORNEY, Frances I Polifone, William Henri Vidal, New York City Law Department, New York, NY; Gati Dalal, Sheryl Rebecca Neufeld, NYC Law Department, Office of the Corporation Counsel, New York, NY.

**Judges:** KATHARINE H. PARKER, United States Magistrate Judge.

**Opinion by:** KATHARINE H. PARKER

# Opinion

## OPINION AND ORDER

KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE

At a case management conference on April 9, 2018, Plaintiffs Janell Winfield, Tracey Stewart, and Shauna Noel raised a concern with the quantity of documents on Defendant New York City's privilege log and indicated they wished to challenge the privilege designations. The Court directed the parties to meet and confer about Plaintiffs' concerns. At a case management conference on April 20, 2018, Plaintiffs requested **[*2]** that the Court order Defendant to allow them a "quick peek" at all of the approximately 3,300 documents listed on Defendant's privilege log for purposes of allowing them to determine whether they would challenge the privilege designations based on their review of the privileged documents and (most likely) narrowing the scope of documents at issue in their anticipated motion. The City opposes Plaintiffs' request. The Court requested briefing and heard from the parties on the proposed "quick peek" procedure again at a May 7, 2018 case management conference. For the reasons discussed below, Plaintiffs' request for a compelled "quick peek" procedure is DENIED.

## BACKGROUND

In June 2017, the City moved for return of a privileged document that it had inadvertently produced during

discovery pursuant to agreed-upon procedures set forth in the parties' Stipulation of Confidentiality and this Court's Protective Order (the "Clawback Demand"). (*See* Doc. No. 82 for Protective Order.) This led to a broader and ongoing dialogue between the parties about the City's privilege designations. Plaintiffs have long contended that the City has over-designated documents as privileged. The City disputes this, **[*3]** but admitted that its initial privilege review was difficult given a lack of clarity as to what documents were subject to the deliberative process privilege, in particular.

On July 21, 2017, in response to the first concern raised, the Court directed Plaintiffs to identify a subset of 80 documents from the City's privilege log that the City had withheld on the basis of the deliberative process privilege. (Doc. No. 167 at 74:16-18.) The Court further ruled that the City would have an opportunity to re-review the 80-document subset identified by Plaintiffs and determine whether it intended to maintain its privilege claim as to each document.

Following the City's review of the sample set of 80 documents, the City advised that it maintained a claim of privilege over only 27 documents and withdrew its privilege designation as to 51 documents and produced them. This Court subsequently ordered the City to submit all 80 documents to this Court for *in camera* review for purposes of assessing the validity of the initial and remaining privilege designations.

Plaintiffs also contested certain of the City's directions not to answer at the depositions of Vicki Been, former Commissioner of the New York **[*4]** City Department of Housing Preservation and Development (HPD), and Carl Weisbrod, former Director of the New York City Department of City Planning, on the basis of attorney-client, work product, and/or deliberative process privilege. On September 1, 2017, Plaintiffs submitted a letter to the Court seeking privilege rulings on 20

questions to which the City's witnesses were directed not to respond — specifically, four questions posed to Mr. Weisbrod and 16 questions directed to Ms. Been. The City subsequently withdrew its privilege objections as to the four questions directed to Mr. Weisbrod, as well as to Been Deposition Question Nos. 15 and 16, and provided Plaintiffs with responses to these questions in declarations.

On February 1, 2018, this Court issued a lengthy ruling granting the City's Clawback Demand and granting in part and denying in part Plaintiffs' motion to compel production of certain documents from the sample set of documents designated as privileged by the City on its privilege log. The Court also granted in part Plaintiffs' motion to compel answers to questions posed to Ms. Been during her deposition. Plaintiffs objected to this Court's February 1, 2018 privilege rulings, **[*5]** and their objection is now pending before the Honorable Laura Taylor Swain.

This Court directed the City to re-review its privilege designations in light of this Court's February 1, 2018 opinion.[1] Based on this review, the City de-designated certain documents as privileged and produced them. Subsequently, in connection with the review of a particular email exchange between Ms. Been and Mayor De Blasio, the City identified a few additional documents from the chain that were marked as privileged that it is now de-designating and producing. (*See* Doc. No. 362).

At an April 9, 2018 case management conference,

---

[1] Relatedly, Plaintiffs have asserted that the City has over-designated certain electronic documents ("ESI") as non-responsive during its review and insufficiently trained the software it is using to assist with the review. Through a meet-and-confer process, and after several conferences with this Court on the matter, the City agreed to supplement its TAR training and produce additional nonprivileged responsive documents, if any, that are located in the process.

Plaintiffs raised a concern with the volume of documents designated by the City as privileged. There are approximately 3,300 documents designated as privileged on the City's log. Designations include attorney-client, work product, deliberative process, and legislative privileges. Some documents have more than one designation. The log is consistent with *Local Rule 26.2* but less than ideal for use in evaluating a claim of privilege, as is true with most privilege logs. Nevertheless, Plaintiffs were able to identify a number of documents from the City's Planning Department that they believe may have been **[*6]** improperly designated as privileged. They also pointed to several instances where "final" talking points were designated (they contend improperly) as privileged. They also noted that 80% of the Planning Department's documents are being withheld based on deliberative process privilege, even though the Planning Department is not involved in deliberations over the Community Preference Policy at issue in this case. Plaintiffs also raised concerns about directions not to answer on privilege grounds at certain depositions. The Court directed the parties to meet and confer concerning a proposal to address Plaintiffs' concerns.

At an April 20, 2018 case management conference, Plaintiffs proposed that the Court order the City to turn over all 3,300 documents designated as privileged so they could take a "quick peek" at them. They contend that this procedure will be fast and efficient and promise to review the documents within several weeks. The City, which has already spent significant time reviewing its documents for privilege prior to producing them, vigorously objects to a Court-mandated "quick peek" procedure. The Court ordered briefing on the proposal in advance of a May 7, 2018 case management **[*7]** conference. The Court addresses the reasons for its rejection of Plaintiffs' proposal below.

## DISCUSSION

### I. Scope Of Discovery Under The Federal Rules Of Civil Procedure And Burden Of Demonstrating Privilege

This Court begins its analysis of the appropriateness of Court-mandated disclosure of documents on a privilege log prior to a specific challenge to the privilege designation with *Federal Rule of Civil Procedure ("Rule") 26(b)*. Under *Rule 26(b)*, "[p]arties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Fed. R. Civ. P. 26(b)(1)* (emphasis added). Thus, when describing the scope of discovery, the Federal Rules of Civil Procedure explicitly exclude privileged information from the category of information that is discoverable.

Nevertheless, a party seeking discovery may challenge a privilege designation. When a party withholds information otherwise discoverable **[*8]** on the ground of privilege or work product protection, *Rule 26(b)(5)* states that such party must "(i) expressly make the claim [of privilege]; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Fed. R. Civ. P. 26(b)(5)(A)*. Local Civil Rule 26.2 encourages "[e]fficient means of providing information regarding claims of privilege" and agreements on "measures that further this end." *S.D.N.Y. Civ. R. 26.2*. The Local Rule explicitly states: "[W]hen asserting

privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category. A party receiving a privilege log that groups documents or otherwise departs from a document-by-document or communication-by-communication listing may not object solely on that basis, but may object if the substantive information required by this rule has not been provided in a comprehensible form." *Id.* Ultimately, the burden is on the party asserting privilege to demonstrate privilege. *Von Bulow by Auersperg v. Von Bulow, 811 F.2d 136, 146 (2d Cir. 1987).*

When faced with a challenge **[*9]** to documents listed on a privilege log, courts typically review the documents *in camera* and may determine after such review that a document is not privileged, that the privilege is waived, or that the document otherwise must be produced pursuant to another applicable legal exception to privilege.

## II. Recent Amendments To The Federal Rules Of Civil Procedure And Rules Of Evidence To Facilitate Production Of ESI And Protect Privilege

As part of the 2006 amendments to the Federal Rules of Civil Procedure (effective December 1, 2006), and in response to increasing concerns about the risk of privilege waiver in connection with the production of ESI in particular, *Rule 26(f)*, which requires the parties to discuss a discovery plan at the outset of a case, was amended "to provide that the parties should discuss any issues relating to assertions of privilege . . . including *whether the parties can facilitate discovery by agreeing on procedures* for asserting claims of privilege or protection after production and whether to ask the court to enter an order that includes any agreement the parties reach." *Fed. R. Civ. P. 26* advisory committee's note to 2006 Amendment; *see also Fed. R. Civ. P. 26(f)*

(emphasis added). *Rule 16(b)*, in turn, was modified so that the Court could include in a scheduling order "any *agreements the parties reach* for asserting claims of privilege . . . after information **[*10]** is produced, including agreements reached under *Federal Rule of Evidence 502*." *Fed. R. Civ. P. 16(b)(3)(B)(iv)* (emphasis added).

In 2008, *Federal Rule of Evidence 502* also was amended (effective September 19, 2008) for two main purposes: (1) to resolve disputes involving inadvertent disclosure of information protected by the attorney-client or work product privilege and subject matter waiver due to the disclosure; and (2) to provide parties with a "uniform set of standards" pursuant to which they can determine the consequences of a disclosure of information protected by the attorney-client or work product privilege. *Fed. R. Evid. 502* advisory committee's note (revised 11/28/2007). Under the amended evidence rule, a disclosure in a federal proceeding of information protected by the attorney-client or work product privilege does not operate as a waiver if the disclosure was inadvertent, the producing party took reasonable steps to prevent disclosure, and the producing party promptly took reasonable steps to rectify the error, including following *Rule 26(b)(5)(B)*.[2] *Fed. R. Evid. 502(b)*. *Rule 26(b)(5)(B)* directs that if a party produces privileged information during discovery, it may notify the receiving party, who must promptly return, sequester, or destroy the information and must

---

[2] *Federal Rule of Evidence 502(a)* provides that a voluntary disclosure of information protected by the attorney-client or work product privilege, if a waiver, generally results in waiver only of the document disclosed and not a waiver of all privileged documents and information concerning the subject matter of the disclosed document. *See Fed. R. Evid. 502(a)*; *Fed. R. Evid. 502* advisory committee's note (revised 11/28/2007).

not use or disclose the information until the claim, including [*11] an assertion of privilege waiver, is resolved. *See Fed. R. Civ. P. 26(b)(5)(B)*. *Federal Rule of Evidence 502* also empower a federal court to enter an order that "privilege . . . is not waived by disclosure connected with the litigation pending before the court," and, if such an order is entered, the disclosure will not constitute a waiver in any other federal or state proceeding. *Fed. R. Evid. 502(d)*.

The Advisory Committee Notes discussing *Federal Rule of Evidence 502(d)* recognize the high costs of electronic discovery, and the rule contemplates enforcement of voluntary agreements reached by parties in their initial meeting pursuant to *Rule 26(f)* such as "claw-back" and "quick peek" arrangements as a way "to avoid the excessive costs of pre-production [privilege] review." *Fed. R. Evid. 502* advisory committee's note (revised 11/28/2007); *see also Fed. R. Evid. 502(e)* (parties can agree to limit the effect of disclosure of privileged information). According to the Advisory Committee Notes, the new *Federal Rule of Evidence 502(d)* allows the parties to "plan in advance to limit the prohibitive costs of privilege" review. *Fed. R. Evid. 502* advisory committee's note (revised 11/28/2007). The rule incentivizes parties to voluntarily agree to procedures that will alleviate the burdens of pre-production privilege reviews by offering protection from waiver of privilege to the producing [*12] party. "*Rule 502(d)* does not authorize a court to require parties to engage in 'quick peek' and 'make available' productions and should not be used directly or indirectly to do so." The Sedona Conference, *The Sedona Conference Commentary on Protection of Privileged ESI*, 17 Sedona Conf. J. 1, 137 (2016).

Importantly, amended *Federal Rule of Evidence 502* "governs only certain waivers by disclosure." *Fed. R. Evid. 502* advisory committee's note (revised 11/28/2007). It does not alter federal or state law on

privilege nor "supplant applicable waiver doctrine generally." *Id.* It likewise does not address privileges other than attorney-client and work product. *See Fed. R. Evid. 502(g)*.

## III. Case Law Concerning Compelled Disclosure Of Privileged Documents

The Second Circuit has held that "compelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception, is contrary to well established precedent." *In re Dow Corning Corp., 261 F.3d 280, 284 (2d Cir. 2001)*. The rationale for this rule is that such an order, even if it included protections against disclosure to non-parties, is an "inadequate surrogate for the privilege." *Id.*; *see also Chase Manhattan Bank, N.A. v. Turner & Newall, PLC, 964 F.2d 159, 160-162, 166 (2d Cir. 1992)* (issuing a *writ of mandamus* vacating a district court order directing the producing party to disclose, on an attorneys'-eyes-only basis, privileged documents so that the opposing counsel could determine which documents it agreed were privileged and which [*13] would be subject to motion practice).

Plaintiffs contend that this case law predates new *Federal Rule of Evidence 502(d)* and therefore is non-binding. They also point to an October 2017 decision from the United States Court of Federal Claims, *Fairholme Funds, Inc. v. United States, 134 Fed. Cl. 680 (2017)*, as well as to *Summerville v. Moran, No. 14-cv-02099 (WTL) (TAB), 2016 U.S. Dist. LEXIS 6384, 2016 WL 233627 (S.D. Ind. Jan. 20, 2016)* and *Good v. Am. Water Works Co., No. 14-cv-01374, 2014 U.S. Dist. LEXIS 154788, 2014 WL 5486827 (S.D.W. Va. Oct. 29, 2014)*, for the proposition that the Court does have the power to mandate disclosure of privileged information pursuant to *Federal Rule of Evidence 502(d)*.

## A. The *Fairholme* *Decision*

*Fairholme Funds* involved a claim by shareholders of non-cumulative preferred stock issued by the Federal National Mortgage Association (Fannie Mae) and Federal Home Loan Mortgage Corporation (Freddie Mac) contending that denial of dividend payments constituted a taking in violation of their rights under the *Fifth Amendment to the U.S. Constitution*. Plaintiffs moved to compel production of about 1,500 documents withheld from production by the government on the grounds of deliberative process and bank examination privileges. Without conducting oral argument and before conducting an *in camera* review of the documents, the court ordered the government to turn over the documents to plaintiffs for a "quick peek" so that plaintiffs could identify those documents on the privilege **[*14]** log that they believed were relevant and not privileged. It further ordered the government to meet and confer with plaintiffs concerning the documents identified to resolve differences "without further court involvement." *Fairholme Funds, 134 Fed. Cl. at 688-689*. The court allowed for a renewed motion to compel if the parties could not resolve differences on documents that were relevant and not privileged.

The court noted that the parties' stipulation of confidentiality and protective order contemplated a "claw back" procedure that would be governed by *Federal Rule of Evidence 502(d)*. Although there was no claim that the government failed to satisfy its discovery obligations, the court noted that the government's production of documents was "piecemeal." *Id. at 686*. Thus, in an effort to "facilitate speedy and efficient conclusion of jurisdictional discovery," the court ordered production of the privileged documents, subject to *Federal Rule of Evidence 502(d)*, over the government's objection. *Id.* It reasoned that it had broad power to fashion any discovery order it deemed appropriate, including the mandatory "quick peek" order. *Id. at 687*. It

also reasoned that, absent the "quick peek" order, it would be faced with a motion to review *in camera* all 1,500 documents on the government's privilege log. Therefore, **[*15]** in light of the court's heavy caseload and limited resources, the court viewed the "quick peek" order as "a much more viable and attractive option." *Id.* Although noting that the purpose of *Federal Rule of Evidence 502(d)* was to address two specific issues (noted above), it reasoned that *Rule 502(d)* allows a court to provide protection against waiver in other federal and state proceedings and therefore can be used to compel a "quick peek" procedure on theory that the party whose privilege is at issue will be protected from waiver. *Id.*

This Court respectfully disagrees with the court in *Fairholme* for a number of reasons. First, while it is true that the trial court has broad discretion to fashion discovery orders, it nevertheless must do so in accordance with the Federal Rules of Civil Procedure. As a general matter, *Rule 26(b)(1)* limits the scope of discoverable information to *nonprivileged* information. *Fed. R. Civ. P. 26(b)(1)*; 6 *Moore's Federal Practice, § 26.47[1][a]* (recognizing that discovery is not permitted as to privileged matters). Therefore, information that is properly protected by a privilege is presumptively not discoverable absent a waiver, voluntary disclosure, or other legally recognized exception.

Second, contrary to what the court in *Fairholme* apparently concluded, the Federal Rules **[*16]** of Evidence do not abrogate common law privileges. Rather, *Federal Rule of Evidence 501* prescribes that federal common law regarding privileges applies to federal question cases and state common law regarding privileges applies in diversity cases. *Fed. R. Evid. 501*. The Advisory Committee Notes to *Federal Rule of Evidence 501* state that the rule "left the law of privileges in its present state and further provided that

2018 U.S. Dist. LEXIS 79281, *16

privileges shall continue to be developed by the courts of the United States under a uniform standard applicable both in civil and criminal cases." *Fed. R. Evid. 501* advisory committee's note to 1974 Enactment. *Federal Rule of Evidence 502(d)*, on which the court in *Fairholme* relied, authorizes a court to issue an order *protecting* privilege — it does not create an exception to the law of privilege or authorize a court to compel disclosure of privileged information in the absence of a legally recognized exception to the law of privilege. And, other rules contemplate only a voluntary agreement between parties for a "quick peek" procedure. *Fed. R. Civ. P. 26(f)*, *16(b)(3)(B)(iv)*.

Moreover, in authorizing the U.S. Supreme Court to prescribe general rules of practice and procedure and rules of evidence, the Rules Enabling Act explicitly prohibits such rules from abridging, enlarging, or modifying any substantive right. *28 U.S.C. § 2072*, *see also [*17] Fed. R. Evid. 501*; *Fed. R. Evid. 501* advisory committee's note to 1974 Enactment; H. Rep. No. 93-650, at 9 (1973) ("The rationale underlying the proviso is that federal law should not supersede that of the States in substantive areas such as privilege absent a compelling reason."). It is well-established that the attorney-client privilege is a substantive right. *Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 555 n.2 (2d Cir. 1967)* ("Rules of privilege are not mere 'housekeeping' rules. . . . Such rules 'affect people's conduct at the stage of primary private activity and should therefore be classified as substantive or quasi-substantive.'") (quoting *Massachusetts Mut. Life Ins. Co. v. Brei, 311 F.2d 463, 466 (2d Cir. 1962)*; *see also Fed. R. Evid. 501* advisory committee's note to 1974 Enactment (recognizing various non-constitutional privileges which federal courts must recognize including lawyer-client and secrets of state and other official information). The legislative and deliberative process privileges likewise are substantive rights. *See U.S.*

*Const. art. I, § 6, cl. 1*); *N.Y. Const. art. III, § 11*; *Supreme Ct. of Va. v. Consumers Union of U.S., Inc., 446 U.S. 719, 732-33 (1980)* (state legislators, like Members of Congress, are entitled to absolute "immunity from liability for their legislative acts" as a matter of federal common law); *Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 501-503, 95 S. Ct. 1813, 44 L. Ed. 2d 324 (1975)*; *Tenney v. Brandhove, 341 U.S. 367, 372, 71 S. Ct. 783, 95 L. Ed. 1019 (1951)*; *United States v. Biaggi, 853 F.2d 89, 102-103 (2d Cir. 1988)*; *Marisol A. v. Giuliani, No. 95-cv-10533 (RJW), 1998 U.S. Dist. LEXIS 3719, 1998 WL 132810, at *6 (S.D.N.Y. Mar. 23, 1998)* (quoting *Hopkins v. H.U.D., 929 F.2d 81, 84 (2d Cir. 1991)*; *People v. Ohrenstein, 77 N.Y.2d 38, 53-54, 565 N.E.2d 493, 563 N.Y.S.2d 744 (1990)* (recognizing that the New York State Constitution "provide[s] at least as much protection as the immunity granted **[*18]** by the [*Speech or Debate Clause*]"); *see generally Citizens Union of the City of New York v. Attorney Gen. of the State of New York, 269 F. Supp. 3d 124, 2017 WL 3836057 (S.D.N.Y. 2017)* (discussing legislative and deliberative process privileges). In short, the court is precluded from interpreting the Federal Rules of Civil Procedure and the Federal Rules of Evidence in a manner that infringes on a substantive right, including privilege rights, as such rules may not by statute abridge substantive rights. *See 28 U.S.C. § 2072*.[3]

Unlike the legal privileges discussed above, the work-

---

[3] Some commentators have suggested compelled disclosure or mandatory "quick peek" procedures may implicate due process concerns as well. The Sedona Conference, *The Sedona Conference Commentary on Protection of Privileged ESI*, 17 Sedona Conf. J. 1, 137-38 (2016); Martin R. Lueck & Patrick M. Arenz, *Federal Rule of Evidence 502(d) & Compelled Quick Peek Productions*, 10 Sedona Conf. J. 229, 230-31 (2009).

product privilege is a judicial doctrine developed to protect attorney mental impressions and work in anticipation of litigation. *Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947)*; *Jansson v. Stamford Health, Inc., No. 16-cv-260 (CSH), 312 F. Supp. 3d 289, 2018 U.S. Dist. LEXIS 76475, 2018 WL 2095169 (D. Conn. May 7, 2018)* (discussing history of work product doctrine) (citing *United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996)* (referring to work product doctrine as work product privilege)); *see also* Bradley J. Bondi, *No Secrets Allowed: Congress's Treatment and Mistreatment of the Attorney-Client Privilege and the Work-Product Protection in Congressional Investigations and Contempt Proceedings*, *25 J.L. & Pol. 145, 146 (2009)* (discussing history of attorney-client privilege and work product doctrine and Congress's authority to compel testimony; work product protection "is primarily a procedural [*19] right regarding the permissible scope of discovery during a judicial proceeding"). So, in theory, the doctrine could be abrogated by the Federal Rules of Evidence and Federal Rules of Civil Procedure. But, *Rule 26* and *Federal Rule of Evidence 502(d)* recognize and accept the work product doctrine — they do not establish a procedure for compelling disclosure of work product over a party's objection.

Third, the court in *Fairholme* incorrectly held that *Federal Rule of Evidence 502(d)* allowed it to issue an order providing protection for information protected by the deliberative process and bank examination privileges — the privileges cited by the government in that case for withholding the 1,500 documents. But the rule does not address those privileges; rather, it is directed solely to the attorney-client and work product privileges. *See Fed. R. Evid. 502(d)*. This Court is unaware of a rule that would permit it to issue an order that would allow the parties to disclose information protected by the deliberative process and legislative

privileges — or any privileges other than attorney-client and work product — and avoid waiver of such privileges in other federal and state proceedings.

Fourth, to the extent the court in *Fairholme* justified its order on the ground that it needed [*20] to move discovery along and did not have the time or resources to conduct an *in camera* review, it did so in complete disregard of *Federal Rule of Civil Procedure 53*, which allows for the appointment of a special master to address pretrial matters "that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." *Fed. R. Civ. P. 53(a)(1)(C)*. The Advisory Committee Notes to *Rule 53* explicitly contemplate appointment of a special master for "reviewing discovery documents for privilege." *Fed. R. Civ. P. 53* advisory committee's note to 2003 Amendment. In other words, the rules themselves provide an option for a court faced with a time-intensive *in camera* privilege review that does not involve compelled disclosure to an adversary. For all of the above reasons, this Court does not agree with *Fairholme*'s reasoning or reliance on *Federal Rule of Evidence 502(d)* as the basis for its order.

## B. The *Summerville* And *Good* *Decisions*

Plaintiffs also cite to *Summerville* and *Good* in support of their contention that a court has the power to compel a producing party to disclose privileged documents to its adversary for a "quick peek" over its objection. Neither case is controlling or persuasive, however. In *Summerville*, the court was presented with "inadequate objections [*21] and an inadequate privilege log" and thus found that the party withholding documents on the basis of attorney-client privilege, an attorney, had failed to meet his burden that the privilege applied to the documents in question. *2016 U.S. Dist. LEXIS 6384, 2016 WL 233627, at *5*. The court also expressed

2018 U.S. Dist. LEXIS 79281, *21

frustration with the parties' conduct in discovery and admonished them to read the Advisory Committee Notes to *Federal Rule of Civil Procedure 1* and "recognize their shared responsibility to cooperate and employ the Federal Rules." *Id*. Although the court did indicate it would compel a "quick peek" of 12 of 479 documents on the privilege log if certain conditions were not met, it did so in the context of finding that the party withholding the documents had failed to meet his burden that a privilege applied. Moreover, it did not compel disclosure of all documents on the privilege log — just a portion to facilitate discussion and potentially obviate the need for *in camera* review of the remainder of the documents on the log. *Id*.

*Summerville* is distinguishable on the facts. Unlike in *Summerville*, this Court has reviewed the City's privilege log and finds that it is in conformance with *Local Rule 26.2* and certainly was not prepared in bad faith. There are many entries on the log that appear **[*22]** to be valid privilege designations; there are also entries identified by Plaintiffs' counsel where the designation may be inappropriate. Additionally, *Summerville's* contingent "quick peek" procedure was limited and did not entail reliance on *Federal Rule of Evidence 502(d)*, cite any authority for the procedure, or contain any rationale for use of the procedure. As discussed above, this Court does not interpret *Rule 502(d)* as authorizing a compelled "quick peek" procedure. Thus, this Court respectfully disagrees with the *Summerville* court's procedures for resolving the dispute over the withheld documents to the extent it compelled disclosure of documents that were validly protected by the attorney-client privilege over the objection of the party who possessed the privilege.

The *Good* case involved a dispute between the parties at the outset of discovery concerning the handling of attorney-client and work product information

inadvertently disclosed. *2014 U.S. Dist. LEXIS 154788, 2014 WL 5486827, at *1*. The defendants wished to conduct some manual privilege review prior to producing ESI. The plaintiffs, who feared delays in the production of information, objected and contended that the protections afforded pursuant to *Federal Rule of Evidence 502(d)* were sufficient protection for defendants such that a "quick **[*23]** peek" procedure should be used, meaning that there would be no manual review for privilege prior to production of ESI. The Court noted that nothing in *Federal Rule of Evidence 502(d)* prohibited defendants' proposed approach and adopted defendants' proposed approach based on their representation that they would conduct the manual privilege review quickly. The Court did state that if there were delays in production, the plaintiffs could move for a change to the mandatory "quick peek" procedure they advocated. *Id*. However, the Court did not engage in any analysis as to whether such a procedure could be compelled or cite the source of its authority to order such a procedure. Thus, *Good* is distinguishable on the facts and not instructive on the law.

## C. *Federal Rule Of Evidence 502(d)*

Finally, contrary to Plaintiffs' suggestion, *Federal Rule of Evidence 502(d)* did not supersede Second Circuit case law that clearly states a court may not compel disclosure of privileged information absent waiver or other applicable exception. *See In re Dow Corning, 261 F.3d at 284-85* (criticizing district court for ordering a party to turn over documents protected by work product and attorney-client privileges); *see also United States v. Zolin, 491 U.S. 554, 572, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989)* (stating court could not require the defendant to turn over attorney-client communications for *in camera* review unless **[*24]** the government could show that the communications fell under the crime-fraud exception to the privilege). As discussed above, the rule

explicitly did not abrogate privilege law. *Fed. R. Evid. 501.*

Controlling precedent, along with the structure and commentary on the Federal Rules of Civil Procedure and Federal Rules of Evidence discussed above, make clear that the court may not run roughshod over a party's assertion of privileges merely to expedite discovery or relieve itself from determining a party's substantive or common law rights. What would be expedient here is simply not right in terms of the resolution of the parties' dispute. Moreover, given that a large number of the documents are being withheld by the City pursuant to the deliberative process privilege, a *Rule 502(d)* order is of no help. Once these documents are turned over, the privilege will be subject to waiver arguments in other proceedings.

## IV. Procedure For Resolving Dispute Over Privilege Designations

At the case management conference on May 7, 2018, Plaintiffs' counsel indicated that, absent this Court granting a compelled "quick peek" procedure, they would request *in camera* review of all of the documents being withheld by the City as privileged. **[*25]** The task of reviewing 3,300 documents is enormous and one that this Court cannot complete before the end of fact discovery on July 31, 2018 given other demands in this and other cases. Appointment of a Special Master to conduct the privilege review pursuant to *Rule 53* is therefore warranted. The scope of the appointment will be to prepare a report the recommends to the Court (1) documents, identified by privilege log number, that the City has improperly withheld and must produce, and (2) documents, identified by privilege log number, that are partially privileged and that the City must produce in redacted form.

This Court proposes the appointment of the Honorable Frank Maas (Ret.) of JAMS, who recently retired as a Magistrate Judge in this District and is available to conduct a review. In accordance with *Rule 53(b)(1)*, the parties may file a letter regarding their position on the appointment of a Special Master, whether they have identified any conflict-of-interest issues that would preclude appointment of Judge Maas, and suggest other candidates for appointment if they so desire. The parties shall file their letters by no later than May 16, 2018.

Given the costs of a Special Master, Plaintiffs are directed **[*26]** to evaluate whether they can narrow the documents for review so as to reduce the time and thus the costs of the review.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion is DENIED.

**SO ORDERED.**

Dated: May 10, 2018

New York, New York

/s/ Katharine H. Parker

KATHARINE H. PARKER

United States Magistrate Judge

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **JANE DOE 1, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | **Civil Action No. 6:16-CV-00173-RP** |
| | § | |
| **v.** | § | |
| | § | **Consolidated with** |
| **BAYLOR UNIVERSITY,** | § | **6:17-CV-228-RP** |
| | § | **6:17-CV-236-RP** |
| **Defendant.** | § | |

## ORDER

On this date came on for consideration Plaintiff's Motion to Compel Pepper Hamilton Materials. Dkt. 1041. The Court, after reviewing the Motion, Response and pleadings on file, finds that the Motion should be DENIED.

IT IS, THEREFORE, ORDERED that Plaintiff's Motion to Compel Pepper Hamilton Materials is DENIED in its entirety.

Signed this _____ day of _____, 2022.

_____
HONORABLE ROBERT PITTMAN
United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | 6:16-CV-173-RP |
| | § | |
| | § | *Consolidated with* |
| v. | § | 6:17-CV-228-RP |
| | § | 6:17-CV-236-RP |
| BAYLOR UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

The Court has set a hearing on certain discovery matters for July 16, 2019. (Order, Dkt. 674). Before the Court is the parties' joint motion to reschedule the hearing and extend Baylor's deadline to file an advisory with the Court. (Dkt. 676).

The Court's schedule now unfortunately cannot accommodate the requested date. However, the Court could conduct the hearing on July 23 or July 24. The Court therefore asks the parties to confer and advise if one or both of these dates would be a suitable alternative. The Court will reset Baylor's deadline to file an advisory upon resetting the hearing. The Court asks the parties to advise the Court of their availability on July 23 and July 24 on or before **Tuesday, July 9, 2019, at 12:00 p.m. CST**. If a joint telephone call to the Court would be more efficient, the parties are welcome to communicate their scheduling needs in that manner.

**SIGNED** on July 8, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

**FILED**
February 08, 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____
Julie Golden
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al.*, | § | |
| | § | |
| | § | 6:16-CV-173-RP |
| Plaintiffs, | § | |
| | § | *Consolidated with* |
| v. | § | 6:17-CV-228-RP |
| | § | 6:17-CV-236-RP |
| BAYLOR UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On April 26, 2021, United States Magistrate Judge Andrew W. Austin issued an order

granting in part and denying in part Plaintiffs' Motion for Sanctions Related to the UnitedLex

Findings, (Dkt. 904). (Order, Dkt. 941). Before the Court are Baylor's Objections Regarding

Magistrate Judge Austin's April 26, 2021 Order, (Dkt. 947), Plaintiffs' Response, (Dkt. 960), Baylor's

Reply, (Dkt. 966), and Plaintiffs' Advisory Regarding ECF 947, (Dkt. 985). Having reviewed the

parties' briefs, the record, and relevant law, the Court will deny Baylor's objections.

## I. BACKGROUND

In 2019, the United States Magistrate Judge Andrew W. Austin proposed that Baylor

produce all Pepper Hamilton documents—and then exercise a clawback of privileged documents—

because of the size and complexity of the production and because of Baylor's ongoing discovery

conduct. (Dkt. 653, at 35). Baylor objected and proposed, in the alternative, to retain a third-party

vendor to conduct a comparison and audit of the Pepper Hamilton production to confirm that

Baylor had, as it claimed, already produced all responsive materials. (*See* Dkt. 672). The Court agreed

to Baylor's plan. (Dkt. 667). The parties retained UnitedLex to conduct the review, with Baylor

bearing the cost. (*Id.* at 2).

1

As set out in Judge Austin's Order, UnitedLex issued a series of findings. (Dkt. 941, at 2–3). In summary, in each report, UnitedLex found problems with Baylor's production, including tens of thousands of missing documents. (*Id.*). In its final report and after conducting a third, by-hand comparison, UnitedLex still found 12,129 documents that did not match any documents previously produced by Baylor. (*Id.* at 3).

A few months later, Plaintiffs filed their Motion for Sanctions largely based on UnitedLex's findings. (Dkt. 904). Plaintiffs requested "severe" sanctions: "(a) an instruction informing the jury that Baylor attempted to hide materials during discovery and allowing the jury to presume those efforts were successful in preventing production of at least some damaging materials; (b) an order directing that all of the documents provided by Pepper Hamilton to UnitedLex be produced to Plaintiffs, designated "Attorneys' Eyes Only" and limiting Baylor to only being permitted to object to their admission at trial based on privilege; (c) an order that Baylor pay all costs of travel and court reporter or video costs for any deposition reconvened based on documents ordered produced herein; (d) a finding that Baylor may no longer withhold document production based on privilege nor obstruct deposition testimony based on privilege; (e) imposition of a daily fine until Baylor complies with the Court's order; and (f) an award of sanctions in an amount equal to what Baylor has paid UnitedLex to date." (Order, Dkt. 941, at 3–4) (citing Dkt. 904, at 11).

Judge Austin's Order began: "Discovery in this case has posed countless challenges for the Court." (*Id.* at 1). It continued: "And when it comes to raising privilege objections, in doing so Baylor has been as aggressive as any party the Court has encountered. The end result is that discovery has dominated this case for years and has made it take far longer and cost far more than it needed to." (*Id.* at 1–2). Relying on Federal Rule of Civil Procedure 37, Judge Austin entered sanctions against Baylor for its recurring discovery violations, carefully considering the nature of the

2

Baylor's conduct in comparison with the sanctions requested by Plaintiffs. In his Order, Judge

Austin found that "Baylor did not engage in the type of actionable misconduct that would merit the

type of sanctions Plaintiffs request." (*Id.* at 4–5). Judge Austin was "satisfied with the detailed

explanations Baylor has provided for the vast majority of the discrepancies identified by UnitedLex's

audit." (*Id.* at 5). However, Judge Austin took issue with (1) Baylor's "repeated[]" assurances that it

had produced all responsive material [and its] numerous certifications to this effect" were "at best

inaccurate," and (2) Baylor's failure to meet discovery "deadline after discovery deadline set by the

Court." (*Id.*). All the while, Baylor "repeatedly challenged UnitedLex's conclusions," which Plaintiffs

argued was "inconsistent with the entire purpose of the UnitedLex exercise." (*Id.* at 6). While the

parties disputed the number of missing documents, Judge Austin found that the "UnitedLex review

demonstrates that there is a universe of documents—whether it is 1,793 or 8,069—that Baylor

should have produced or logged years ago, and those documents were only discovered by the

UnitedLex audit." (*Id.* at 7). Based on Baylor's repeated failures to timely respond to production

requests and Baylor's failure to heed the Court's repeated warnings, Judge Austin concluded that

Baylor had waived its objections and claims of privilege. (*Id.*).

Specifically, Judge Austin ordered Baylor to produce 1,793 documents without redaction that

it did not contest were not produced or logged prior to the UnitedLex audit. (*Id.* at 9). For the

additional 6,276 documents in dispute, Judge Austin ordered:

> (1) For the 1,261 documents that Baylor contends it previously produced (743
> from the "No comparison file" category, 511 from the "Variance" category, and 7
> that Baylor identifies as "unreadable, non-substantive, and previously produced SMS
> and hardcopy documents," Dkt. 934 at 3), UnitedLex shall provide those documents
> as received from Pepper Hamilton to counsel for the Plaintiffs, so they can confirm
> that Baylor did in fact produce the documents previously.

> (2) For the 4,200 documents that Baylor contends it previously logged, Baylor
> shall identify to UnitedLex these 4,200 documents as they appear in the set of
> documents Baylor provided UnitedLex at the outset of the audit. Baylor shall then

3

identify from the documents Pepper Hamilton provided UnitedLex at the outset of the audit the documents Baylor contends match these 4,200 documents. Baylor may not provide any new documents to UnitedLex. UnitedLex shall determine if the document as it received it from Pepper Hamilton in fact matches the document Baylor identifies as being previously logged. UnitedLex shall generate a report of its conclusions. UnitedLex's determination of whether documents match will be conclusive. Baylor shall bear the cost of this additional work by UnitedLex.

(3) There are 815 documents from the "newly produced" and "newly logged" categories of the "No comparison file" set that Baylor contends were not "newly" produced or logged because they are dated after June 15, 2016. 784 of these appear to relate to binders prepared by Pepper Hamilton after June 15, 2016, but that contain documents prior to June 15, 2016. The parties disagree how these should be handled. The other 31 are described as being explicitly dated after June 5, 2016. The parties are ORDERED to appear for a hearing via Zoom on Friday May 7, 2021, at 9:30 a.m. to resolve whether these documents should be considered "newly" or "previously" produced or logged.

(*Id.* at 9–10).

Finally, Judge Austin noted that Baylor chose to proceed with a third-party audit, rather than to produce all documents and claw back privileged documents, and now is dissatisfied with the result—both UnitedLex's findings that Baylor failed to produce documents and the significant cost borne by Baylor by using a third-party vendor. (*Id.* at 10).

After holding an additional hearing on May 7, 2021, Judge Austin issued an order regarding the remaining 815 documents from UnitedLex's review that Baylor had categorized as "newly logged" or "newly produced." (Order, Dkt. 953). Baylor did not object to producing the documents, except for one category of documents that were in binders prepared by Pepper Hamilton to prepare for visits to Baylor and to interview witnesses. (*Id.* at 2). Judge Austin found that Baylor appropriately logged those documents.[1] (*Id.*).

## II. LEGAL STANDARD

---

[1] To the extent specific facts and factual findings are not repeated in this Order, the Court adopts the factual statements and findings in Judge Austin's Order and defers to Judge Austin's rendition of the events leading up to his Order since, at the time, all discovery motions were referred to him and he was working with the parties and/or their disputes on a daily basis.

4

A district judge may reconsider any pretrial matter determined by a magistrate judge where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). District courts apply a "clearly erroneous" standard when reviewing a magistrate judge's ruling under the referral authority of that statute. *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995). The clearly erroneous or contrary to law standard of review is "highly deferential" and requires the court to affirm the decision of the magistrate judge unless, based on the entire evidence, the court reaches "a definite and firm conviction that a mistake has been committed." *Gomez v. Ford Motor Co.*, No. 5:15-CV-866-DAE, 2017 WL 5201797, at *2 (W.D. Tex. Apr. 27, 2017) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). The clearly erroneous standard "does not entitle the court to reverse or reconsider the order simply because it would or could decide the matter differently." *Id.* (citing *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015)).

## III. DISCUSSION

In its appeal, Baylor raises three objections: (1) Judge Austin's Order required a finding of bad faith and prejudice to Plaintiffs; (2) Baylor should not be required to submit 4,200 previously logged documents to UnitedLex for comparison; and (3) Judge Austin's Order disallows Baylor from following FERPA procedures. (Objs., Dkt. 947). The Court will consider whether any of these grounds of appeal establish that Judge Austin's Order was clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A).

### A. No Clear Error in Imposing Sanctions for Discovery Violations Under Rule 37

The Court starts with Baylor's objection to Judge Austin's imposition of a sanction for its repeated discovery violations. Arguing that Judge Austin's Order did not follow the standard for "imposing the severe sanction of privilege waiver," Baylor relies on an unpublished Fifth Circuit

opinion that states a court "should consider the following factors: (1) the reasons why the disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of trial; and (4) any other relevant circumstances." (Objs., Dkt. 947, at 8) (citing *Bennett v. GEO Grp., Inc.*, Nos. 12-60017, 12-60348, 2013 WL 5916765, at *4 (5th Cir. 2013) (unpublished)). This Court finds that Judge Austin did not clearly err by not explicitly following an unpublished opinion. Moreover, Judge Austin's Order did consider those factors—why Baylor had not produced the documents, how Baylor's repeated failures have delayed discovery for not just months but years (impliedly making a continuance of trial an unworkable option), and many other relevant circumstances as detailed in the Order. This Court concurs. Baylor has abused the discovery process, and their abuse has caused years of delay as chronicled in many court orders. "Plaintiffs' counsel have expended hundreds upon hundreds of attorney hours seeking to unravel Baylor's false certifications and inadequate production and logging. . . . Plaintiffs have been hamstrung for years because of Baylor's discovery abuses." (Resp., Dkt. 960, at 18). Baylor's continued discovery failings and delays have not only slowed, if not halted, discovery but also made it nearly impossible to move these cases towards trial.

After making his findings, Judge Austin also carefully considered Plaintiffs' requests for "severe" sanctions, rejected those sanctions, and chose a less severe sanction that was appropriately tailored to the violation. Judge Austin did not enter a death penalty sanction. Indeed, far from being permanent, the sanction imposed still allows Baylor to object to the admission of these documents at trial and keep the documents from the jury. He also declined to impose any monetary sanction. While this Court likely would not have found a harsher sanction to be clearly erroneous, the sanction imposed was just and proportionate.

Finally, Baylor presents no persuasive case law support for its contention that Judge Austin was required to make a finding of bad faith to impose a sanction under Rule 37. In fact, Baylor misquotes a Fifth Circuit case to support its contention.[2] Baylor's brief states: "Thus, the severe sanction of waiver of privilege is appropriate in cases of 'unjustified delay, inexcusable conduct, *and* bad faith.'" (Objs., Dkt. 947, at 9) (quoting *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (emphasis added)). In that case, the Fifth Circuit states, in full: "Continual failure to adhere to Rule 26's prescription may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, *or* bad faith." *BDO USA, L.L.P.*, 876 F.3d at 697 (emphasis added). The actual language from the *BDO USA* case aligns with Rule 37's grant of broad discretion to find a privilege waiver, as observed by the Fifth Circuit. *See Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019) ("[Rule 37] allows a district court to impose sanctions when a party fails to comply with a discovery order, and the court has broad discretion in fashioning a sanction when it does so."); *Chilcutt v. United States*, 4 F.3d 1313, 1322 n.23 (5th Cir. 1993) ("[N]either this Court nor the Supreme Court has ever determined that the lack of willful, contumacious, or prolonged misconduct prohibits all sanctions."). Thus, this Court finds that Judge Austin's Order was not clearly erroneous in imposing a sanction of privilege waiver against Baylor for its repeated discovery violations.

### B. Additional Documents for UnitedLex's Comparison Procedure

Baylor objects to the portion of the Order that states:

> For the 4,200 documents that Baylor contends it previously logged, Baylor
> shall identify to UnitedLex these 4,200 documents as they appear in the set of
> documents Baylor provided UnitedLex at the outset of the audit. Baylor shall then
> identify from the documents Pepper Hamilton provided UnitedLex at the outset of

---

[2] In its reply, Baylor calls the misquote an "editing error," but then doubles down saying that the original quote, which comes from a District of Kansas case, did use an "and" instead of an "or." Regardless, the Fifth Circuit clearly changed the "and" to an "or," and this Court follows the Fifth Circuit.

the audit the documents Baylor contends match these 4,200 documents. Baylor may not provide any new documents to UnitedLex. UnitedLex shall determine if the document as it received it from Pepper Hamilton in fact matches the document Baylor identifies as being previously logged. UnitedLex shall generate a report of its conclusions. UnitedLex's determination of whether documents match will be conclusive. Baylor shall bear the cost of this additional work by UnitedLex.

(Order, Dkt. 941, at 9–10). Baylor "does not object to the overall process" but believes it should be able to provide 515 new documents for UnitedLex's comparison. Plaintiffs did not appear to address this particular issue in their response to Baylor's objections. In light of there being no opposition, Baylor may provide additional documents to UnitedLex *only if* those documents were previously logged or previously produced to Plaintiffs. If problems continue to arise from this subset of 515 documents, the Court will be skeptical and err on the side of ordering production. Baylor also objects that UnitedLex's findings should not be conclusive because UnitedLex may make errors. This is a potential problem created by Baylor, not clear error by the Court. Baylor chose to have a third-party vendor audit its production rather than producing all of the documents and then clawing back privileged documents. Baylor cannot now unwind that process, even if it is imperfect.

### C. Student Records Subject to FERPA

Baylor objects that Judge Austin's Order requires Baylor to produce unredacted documents that are educational records to subject to FERPA protections. (Objs., Dkt. 947, at 17–19). Baylor argues it cannot comply with the Order and with FERPA. (*Id.* at 17). Baylor requests that "Baylor and UnitedLex not be required to re-produce any documents that have been already produced with pseudonym redactions." (*Id.* at 19). Plaintiffs state that they would accept documents "with personal identifiers anonymized," but that Baylor did not make that request. (Resp., Dkt. 960, at 19). Moreover, according to Plaintiffs, when there is a conflict between FERPA and Title IX requirements, Title IX controls. (*Id.* at 19–20). To the extent that Baylor has not issued FERPA notices since filing its objections, Baylor shall immediately proceed with issuing FERPA notices. If

8

the former student objects, this Court will rule on their objection. Baylor shall produce, unredacted and without delay, any and all documents for which the FERPA notice does not generate an objection and for any and all documents for which the Court denies the objection. Alternatively, if the parties can reach an agreement, as suggested by Plaintiffs, then Baylor may produce redacted documents or documents with personal identifiers anonymized. Because it is unclear whether Judge Austin's Order demanded that Baylor not comply with FERPA, this Court neither grants nor denies Baylor's objection and, instead, clarifies Judge Austin's Order.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that the Court **GRANTS IN PART and DENIES IN PART** Baylor's Objections Regarding Magistrate Judge Austin's April 26, 2021 Order, (Dkt. 947), and **AFFIRMS IN PART and REVERSES IN PART** Judge Austin's Order, (Dkt. 941). Specifically, the Court denies Baylor's objection that the sanction was improperly imposed. The Court grants Baylor's objection regarding providing new documents to UnitedLex and allows Baylor to provide the 515 additional documents to UnitedLex, provided that those documents were previously logged or produced. Finally, the Court clarifies Judge Austin's order as it relates to student records. For any remaining unredacted student records that require a FERPA notice, Baylor shall send FERPA notices immediately. In the event no FERPA objection is filed or, if a FERPA objection is filed but the Court denies the objection, Baylor shall immediately produce the unredacted student record.

**IT IS ORDERED** that Baylor produce documents, except for student records subject to FERPA objections, in accordance with this Order **on or before February 15, 2022**.

9

**IT IS FINALLY ORDERED** that, if applicable, Baylor shall immediately initiate the

FERPA process for any remaining unredacted student records. The Court continues to rule on

pending objections.

**SIGNED** on February 8, 2022.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE