IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 1, *et al.*, | § § | |
| Plaintiffs, | § § | 6:16-CV-173-RP |
| | § | *Consolidated with* |
| v. | § § | 6:17-CV-228-RP |
| | § | 6:17-CV-236-RP |
| BAYLOR UNIVERSITY, | § § | |
| Defendant. | § | |

## ORDER

Before the Court is the report and recommendation of Special Master Andrew MacRae concerning the years-long dispute between the parties about the product of Pepper Hamilton documents, including Plaintiffs' Motion to Compel Attorney Work Product, (Dkt. 1060), and Baylor's Amended Motion to Preserve Confidentiality Designation, (Dkt. 1068). (R. & R., Dkt. 1082). The 44-page report and recommendation provides a detailed overview of this discovery dispute and makes five specific recommendations: (1) require the entire Pepper Hamilton "universe" to be produced to Plaintiffs; (2) broadly define the Pepper Hamilton "universe" to avoid further disputes over production; (3) enter a claw back order, permitting Baylor to identify Pepper Hamilton documents it contends should not be subject to discovery and specifying procedures for that claw back process; (4) maintain all Pepper Hamilton documents as confidential, for now; and (5) require a discovery control plan and mediation related to this discovery dispute. The report and recommendation provides an in-depth plan of what the parties will do, at varying intervals, to execute the next steps and mediation. Both sides timely filed objections to the report and recommendation, and Baylor filed a response to Plaintiffs' objections. (Objs., Dkts. 1085, 1086, 1089). Plaintiffs' objections "largely support the findings and recommendations of the Special Master" but raise several issues. (Objs., Dkt. 1085, at 1).

A party may serve and file specific, written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the report and recommendation and, in doing so, secure *de novo* review by the district court. 28 U.S.C. § 636(b)(1)(C). Because the parties timely objected to the report and recommendation, the Court reviews the report and recommendation *de novo*. Having done so, the Court overrules the parties' objections and adopts the report and recommendation as its own order.

Additionally, the report and recommendation addresses Plaintiffs' request that the Court reconsider its 2017 work product ruling and recommends that the Court should revisit its ruling that work product arising out of the Pepper Hamilton investigation of Baylor's compliance with Title IX is protected from discovery under the attorney work product doctrine. The report and recommendation states that that the Court "could conclude that the subsequent evidence is substantially different [than what was presented in 2017], and suggests the previous decision was based on incomplete and/or misleading evidence and may well work a manifest injustice." (R. & R., Dkt. 1082, at 25).  As explained by the report and recommendation, this Court made its earlier attorney work product determination based on declarations from Baylor's general counsel and a member of the Baylor Board of Regents. (*Id.* at 19). There were also two identical declarations from Pepper Hamilton. (*Id.*). At the time, the Court questioned whether Pepper Hamilton's work was done in anticipation of litigation but noted that the parties had not re-urged that issue and so it would not be considered by the Court. (*Id.* at 20). Now this "question has been re-urged." (*Id.*).

The test for whether a document is protected attorney work-product is whether "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000); *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982). The report and recommendation details how Baylor's position that everything Pepper Hamilton did was in anticipation of litigation is undercut by the evidence. (*Id.* at

2

20–23). Leslie Gomez ("Gomez"), a Pepper Hamilton attorney who provided one of the Pepper Hamilton declarations in 2017, testified in court in 2019, and her testimony "indicates the primary motivating purpose of the documents Pepper Hamilton created in its investigation was not to aid in possible future litigation, but instead to assist Baylor with policy, auditing, investigation, transparency and regulatory compliance." (*Id.* at 21) (citing Dkt. 845, at 3 n. 3). While her affidavit mentions anticipation of litigation, the Court agrees with the Special Master that Gomez's in-court testimony is more credible. In addition, the sealed evidence attached to Plaintiffs' Motion to Compel, (Dkt. 1060; Sealed Exhs., Dkt. 1062), tends to show that Pepper Hamilton was not engaged primarily in anticipation of litigation. For example, one exhibit contains Gomez's notes from the initial September 2015 call between Pepper Hamilton and a Baylor Board of Regents committee, and nothing in the notes indicates that potential litigation was in the scope of Pepper Hamilton's representation. (*See* Dkt. 1060, at 5). Pepper Hamilton's own communications confirm that understanding. Gomez disclaimed litigation assistance saying they were "not carrying the mantle for active or ongoing cases." (Notes, Dkt. 1062, at 2).

In its response to the motion to compel, Baylor tries to rehabilitate Gomez's testimony by saying that she did not deny Baylor anticipated litigation. (Resp., Dkt. 1074, at 9–10). This is insufficient. As the party resisting discovery under the work product doctrine, Baylor carries the burden of establishing that it hired the Pepper Hamilton team—who testified they are not litigators—primarily in anticipation of litigation and not primarily to perform an investigation. (*See* Order, Dkt. 845, at 3) ("We are not litigators. We don't sue schools. We don't defend schools. We exist in a policy, auditing, investigative, regulatory compliance space."). Moreover, even if Gomez's testimony somehow was misunderstood, Baylor later submitted a corrected declaration from Gomez, and that subsequent declaration does not mention the 2019 hearing or provide any clarification about her testimony during the hearing. As summarized in the report and

3

recommendation: "The issue has now been re-urged, with additional evidentiary support provided by Plaintiffs that refutes Baylor's claim that the investigation was conducted in anticipation of litigation. But instead of providing additional evidence to support its position, or having Ms. Gomez clarify her testimony, Baylor chose instead to disagree with [the Court's] assessment, claiming Ms. Gomez's testimony is consistent with Baylor's position. It is not. It contradicts Baylor's position." (R. & R., Dkt. 1082, at 23).

Baylor additionally argues that the Court cannot reconsider its previous ruling because that ruling is the law of the case, relying on *Christianson v. Colt Indus. Operating Group*, 486 U.S. 800, 817 (1988). *Christianson* does not preclude this Court from revisiting a ruling. In fact, the Supreme Court held that courts have "the power to revisit prior decisions of its own . . . in any circumstance," although they should be reticent to do so absent extraordinary circumstances. (*Id.*). Even assuming extraordinary circumstances are a requirement, this Court can revisit the 2017 ruling because the circumstances are extraordinary. Baylor hired Pepper Hamilton primarily to undertake a Title IX compliance investigation and in the eight years since, Baylor has repeatedly refused to disclose the documents produced by that investigation, and there have been questions about whether Baylor has been fully forthcoming about its production efforts and privilege logs and about Baylor's chosen tactics to prevent disclosure of those documents. (*See, e.g., id.* at 24). While it is not clear to the Court that the law of the case doctrine affects its ability to reconsider a previous decision, the Court finds that the unique and extraordinary circumstances present in this case and the additional evidence and context compel the Court to revisit its initial determination and now conclude that the attorney work product doctrine does not protect the universe of Pepper Hamilton documents from disclosure.

Baylor will produce the universe of Pepper Hamilton documents except for the following categories: (1) materials that Pepper Hamilton did not consider when doing its work; (2) internal

4

emails or communications between Pepper Hamilton attorneys that were not also sent to a Baylor representative; (3) legal research by Pepper Hamilton attorneys; (4) materials Pepper Hamilton attorneys prepared to aid in conducting witness interviews; and (5) notes taken by Pepper Hamilton attorneys during interviews. (*See* Dkt. 988, at 11).

Finally, the Court acknowledges that the parties may believe that this ruling may have a significant impact on the parties' litigation strategies. The Court has revisited its work product decision after careful deliberation, a thorough understanding of the unique issues in this case, and a comprehensive review of the underlying motions and their responsive briefing, the lengthy and detailed report and recommendation, and the objections and Baylor's response to Plaintiffs' objections, as well as dozens of other orders and briefs in this case. The Court has overseen discovery in this case for seven years, the complexity of which has been unmatched, and has afforded the parties opportunities—often several times over—to engage in meaningful, fair, and productive discovery. It is now time to complete the document production stage of discovery.

Accordingly, the Court **ORDERS** that the report and recommendation of the Special Master, (Dkt. 1082), is **ADOPTED** with modifications consistent with this Order. **IT IS FURTHER ORDERED** that Baylor shall produce the universe of Pepper Hamilton materials and that those materials be designated, for now, as confidential pursuant to the Protective Order. **IT IS FURTHER ORDERED** that Baylor shall produce those materials and updated logs, if any, in accordance with this Order and the report and recommendation, including footnote 17, **on or before March 7, 2023**. If Baylor believes it needs more time or there are other disagreements about this production, the parties are ordered to meaningfully meet and confer before filing any motions.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Attorney Work Product, (Dkt. 1060), is **GRANTED** and Baylor's Amended Motion for Order Preserving Confidentiality Designation, (Dkt. 1068), is **GRANTED IN PART** and **DENIED IN PART** as set out in this Order.

**SIGNED** on February 21, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE